1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

CEDAR PARK ASSEMBLY OF GOD OF
KIRKLAND, WASHINGTON,

          Plaintiff,

     v.

MYRON "MIKE" KREIDLER, in his official
capacity as Insurance Commissioner for the State
of Washington; JAY INSLEE, in his official
capacity as Governor of the State of Washington,

          Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)

Civil No. \_\_\_-_____

**VERIFIED COMPLAINT
FOR INJUNCTIVE AND
DECLARATORY RELIEF**

Plaintiff, Cedar Park Assembly of God of Kirkland, Washington, by and through its undersigned attorneys, files this Complaint for Injunctive and Declaratory Relief against the Defendants, in their official capacities, and allege as follows:

## **INTRODUCTION**

1.     In January 1973, the Supreme Court created a constitutional right to abortion in *Roe v. Wade*. Recognizing that many churches and people of faith believed that having an abortion, performing an abortion, or participating in an abortion are sinful acts, federal and state governments acted immediately to protect religious conscience rights. The federal government passed legislation known as the Church Amendments, 42 U.S.C. § 300a-7 *et seq.*, to protect the conscience rights of individuals and entities who object to performing or assisting in abortion when

VERIFIED COMPLAINT          1

ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, Arizona 85260
(480) 444-0020

doing so is contrary to the provider's moral convictions or religious beliefs. The Church Amendments also prohibit government contractors and grant or loan recipients from discriminating against physicians or health-care personnel in employment for declining to perform an abortion based on moral convictions or religious beliefs. Legislation in some 45 states was enacted to protect nurses, physicians, and medical students from being compelled to participate in abortion. The Public Health Service Act ties federal funding to nondiscrimination against individuals and institutions declining to perform abortions. And the Hyde Amendment bars the use of federal taxpayer funds to pay for abortion except in very limited circumstances.

2.     How times have changed. In 2018, the State of Washington acted in concert with Planned Parenthood—the nation's largest abortion provider—and NARAL Pro-Choice Washington to draft, promote, pass, and implement SB 6219, which requires all Washington employers to provide abortion and abortifacient coverage in their employee health plans. SB 6219 contains numerous exemptions; but none of those exemptions are available to churches or any other religious organization. Indeed, churches like the Plaintiff Cedar Park are now obligated to provide and pay for a health plan that covers abortions. Even when the federal government was requiring religiously-motivated private businesses to offer health plans that covered abortion, it exempted churches. Not so the State of Washington.

3.     Washington's attack on people of faith is intentional. It represents the kind of deliberate religious persecution that our country was founded to prevent. This Court should preliminarily and permanently enjoin SB 6219.

## NATURE OF THE CASE

4.     This is a pre-enforcement federal civil rights action brought under 42 U.S.C. § 1983, challenging the constitutionality of Washington Senate Bill 6219, codified at RCW §§ 48.43.072 & 48.43.073. SB 6219 was signed into law by Governor Jay Inslee on March 21,

VERIFIED COMPLAINT                            2

2018. A copy of SB 6219 is attached hereto as Exhibit A.

5.      Plaintiff Cedar Park Assembly of God of Kirkland, Washington is a Christian church. Cedar Park's deeply held religious belief is that abortion is the ending of a human life, and is a grave sin. Therefore, in furtherance of such beliefs, Cedar Park does not provide coverage for abortion or abortifacient contraceptives in its employee health insurance plan.

6.      Cedar Park challenges the constitutionality and the legality of Washington State Senate Bill 6219, which mandates insurance coverage for abortion if plans provide coverage for maternity care. SB 6219 further requires coverage of contraceptives that act to destroy an embryo post-fertilization, and are therefore abortifacients.

7.      The requirement that Cedar Park provide coverage for abortion and abortifacient contraceptives violates its sincerely held religious beliefs.

8.      SB 6219's provisions apply to health insurance plans issued or renewed on or after January 1, 2019. Cedar Park's Plan renews on August 1, 2019. Therefore, preliminary injunctive relief is needed before that date to prevent irreparable harm to Plaintiff.

## JURISDICTION AND VENUE

9.      This action arises under 42 U.S.C. § 1983 *et seq*. (the "Civil Rights Act") and the First and Fourteenth Amendments to the United States Constitution.

10.      The Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1343.

11.      The Court has jurisdiction to issue the requested declaratory relief under 28 U.S.C. §§ 2201 & 2202 and Federal Rule of Civil Procedure 57.

12.      The Court has jurisdiction to award the requested injunctive relief under 28 U.S.C. § 1343(a)(3), and Federal Rule of Civil Procedure 65.

13.      The Court has jurisdiction to award reasonable attorneys' fees and costs under 42 U.S.C. § 1988.

VERIFIED COMPLAINT                           3

14.     Venue lies in the Federal District Court for the Western District of Washington under 28 U.S.C. § 1391(b) and (e), because a substantial part of the events or omissions giving rise to all claims occurred in this district, and Defendants reside in this district.

## PARTIES

15.     Plaintiff Cedar Park Assembly of God of Kirkland, Washington is a non-profit Christian church organized exclusively for religious purposes within the meaning of Section 501(c)(3) of the Internal Revenue Code and is located in Bothell, Washington.

16.     Defendant Myron "Mike" Kreidler is the Insurance Commissioner for the State of Washington, and he is sued in his official capacity only. The Insurance Commissioner is an elected official of the executive branch. Defendant Kreidler is responsible for the enforcement of all Washington state insurance laws, including SB 6219.

17.     Defendant Jay Inslee is the Governor of the State of Washington, and he is sued in his official capacity only. He is the chief executive of the State of Washington and is responsible for overseeing the executive branch, including the Insurance Commissioner.

## FACTS

**Cedar Park Assembly of God**

18.     Cedar Park was founded in 1970 and has been serving the Bothell and greater Eastside communities in Washington for nearly 50 years.

19.     Cedar Park is affiliated with the Assemblies of God and is also a part of the Northwest Ministry Network. Weekly attendance at Cedar Park's worship services is approximately 1,500. The church has over 600 members.

20.     Cedar Park has approximately 185 employees that are eligible for health insurance coverage.

21.     Jason "Jay" Smith is the Senior Pastor of Cedar Park.

VERIFIED COMPLAINT                                    4

ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, Arizona 85260
(480) 444-0020

22.      Cedar Park operates various ministries to serve the needs of its congregants and the community, including, *inter alia*: a funeral home and chapel; an auto repair shop offering benevolent discount rates; a university level ministry program; a counseling program staffed by licensed mental health professionals; and various community groups and ministries that serve women, men, young adults, and children.

23.      Cedar Park's ministry also includes operating Cedar Park Christian Schools, which includes five school campuses and a pre-school program. Cedar Park Christian Schools also offers a childcare program. The Bothell campus of Cedar Park Christian Schools has over 1,000 students, ranging from pre-school to 12th grade. Cedar Park Christian Schools is not a separate entity, but operates as part of Cedar Park Assembly of God of Kirkland, Washington.

**Cedar Park's Beliefs Regarding the Sanctity of Human Life and Abortion**

24.      Cedar Park holds and actively professes historic and orthodox Christian beliefs on the sanctity of human life, including the belief that each human life, from the moment of conception, is formed by and bears the image and likeness of God.

25.      Cedar Park operates according to its Constitution and Bylaws. Contained in the Constitution and Bylaws is Cedar Park's "Position Regarding Sanctity of Human Life," which reads as follows:

> Under the *Imago Dei* principle, all human life is sacred and made by God, in His image. Because all humans are image-bearers, human life is of immeasurable worth in all of its dimensions, including pre-born babies, the aged, the physically or mentally challenged, and every other stage or condition from conception through natural death. As such, we as Christians are called to defend, protect, and value all human life.

Psalm 139.

26.      Cedar Park therefore believes and teaches its members and others that abortion ends a human life.

ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, Arizona 85260
(480) 444-0020

1    27.    Cedar Park believes and teaches that abortion violates the Bible's command against

2  the intentional destruction of innocent human life.

3    28.    Cedar Park believes and teaches that abortion is inconsistent with the dignity

4  conferred by God on humankind, who are made in His image.

5    29.    Cedar Park believes and teaches that participation in, facilitation of, or payment for

6  abortion in any circumstance is a grave sin.

7    30.    Consistent with its religious beliefs, Cedar Park seeks to recognize and preserve the

8  sanctity of human life from conception until natural death.

9    31.    Cedar Park expects its employees to abide by and agree with the church's moral

10  and ethical standards, including its religious beliefs and teachings on abortion, in both their work

11  life and private life.

12    32.    Accordingly, Cedar Park requires all employees to sign a statement agreeing to

13  abide by its standards of conduct. The standards of conduct provide:

14    Cedar Park employees must conduct their professional and personal lives
      in a manner that provides clear evidence of a Christian life and character

15    that commends the Gospel, strengthens the Church and honors God.
      Cedar Park expects its employees to refrain from behavior that conflicts

16    or appears inconsistent with evangelical Christian standards as
      determined in the sole and absolute discretion of Cedar Park. Among

17    other things, Cedar Park expects employees to follow biblical standards
      for human sexuality. These standards prescribe a heterosexual

18    monogamous relationship within the covenant of marriage and sexual
      chastity for those who are unmarried. Fornication, adultery,

19    homosexuality, and cohabitation are prohibited. Cedar Park also
      prohibits the abuse of alcohol, prescription and non-prescription drug

20    abuse and inappropriate speech, which may include, but is not limited to,
      use of vulgar or sexually suggestive words, gossip, and insubordinate

21    speech. Cedar Park expects all of its employees to strive toward living a
      life that reflects the values, mission, and faith of Cedar Park.

22

23    33.    Cedar Park promotes and supports its pro-life mission with a variety of events,

      ministries, and partnerships.

24

VERIFIED COMPLAINT    6

34.     Cedar Park hosts a Sunday service known as "Presentation Sunday" annually. At this service, Cedar Park prays for and supports couples experiencing infertility. This religious service has been held for approximately 30 years.

35.     Cedar Park partners with a local pregnancy center, and has hosted a mobile ultrasound unit at Cedar Park's campus. This unit is used to perform ultrasounds on expectant mothers who may be considering abortion so that they will learn the truth about the human life growing inside them and choose to preserve it.

36.     Cedar Park has seen and facilitated approximately 1,000 embryo adoptions in recent years.

37.     Cedar Park staff and members attend the annual March for Life in Olympia, Washington annually, to promote the organization's pro-life views.

38.     Cedar Park hosts a local chapter of the Royal Family Kids Camp, an annual camp for children in foster care. At this camp, Cedar Park hosts approximately 75 children annually.

**Cedar Park's Employer-Sponsored Health Insurance**

39.     Cedar Park seeks to promote the physical, emotional, and spiritual well-being of its employees and their families and thus offers health insurance to its employees as a benefit of employment.

40.     Cedar Park believes that it has a religious obligation to provide for the personal needs of its employees, which includes the provision of health insurance coverage.

41.     Cedar Park believes that it can only provide this coverage consistent with its religious beliefs.

42.     Cedar Park evaluated its various options and determined that purchasing a group health insurance plan was the best way for the church to provide health care coverage consistent with its call to care for its employees and its legal obligations under the Patient Protection and

VERIFIED COMPLAINT                    7

1    Affordable Care Act ("ACA").

2        43.    Cedar Park has evaluated becoming self-insured and determined that it is not a

3    viable option. It would cost Cedar Park approximately $243,125 in additional costs to become self-

4    insured, and that number is expected to double within the next several years due to increase in plan

5    use. Those are monies that Cedar Park chooses to spend on its many religious ministries.

6        44.    Therefore, Cedar Park has determined that offering group health insurance is its

7    only viable option.

8        45.    As part of its commitment to care for its employees and their families, Cedar Park

9    provides comprehensive insurance coverage for maternity care. Cedar Park believes that maternity

10   care is an integral part of its call to provide for the health of its employees and their families.

11       46.    Because of its religious beliefs, however, Cedar Park offers health insurance

12   coverage to its employees in a way that does not also cause it to pay for abortions or abortifacient

13   contraceptives, including, *inter alia*, emergency contraception and intrauterine devices.

14       47.    To that end, Cedar Park's current group health plan excludes coverage for

15   abortions or abortifacient contraceptives.

16   **Senate Bill 6219**

17       48.    SB 6219 provides that "if a health plan issued or renewed on or after January 1,

18   2019, [sic] provides coverage for maternity care or services, the health plan *must also provide a*

19   *covered person with substantially equivalent coverage to permit the abortion of a pregnancy*."

20   Exh. A at § 3(1) (emphasis added). Furthermore, a health plan subject to this requirement "*may*

21   *not limit in any way* a person's access to services related to the abortion of a pregnancy." *Id*. at

22   § 3(2)(a) (emphasis added).

23       49.    SB 6219 further requires all insurance plans issued or renewed on or after

24   January 1, 2019 to provide coverage for "*[a]ll* contraceptive drugs, devices, and other products,

VERIFIED COMPLAINT                                    8

[sic] approved by the federal food and drug administration, including over-the-counter contraceptive drugs, devices, and products, approved by the federal food and drug administration," "voluntary sterilization procedures," and "[t]he consultations, examinations, procedures, and medical services that are necessary to prescribe, dispense, insert, deliver, distribute, administer, or remove the drugs, devices, and other services" related to the same. Exh. A at § 2(1) (emphasis added).

50.    SB 6219 does not include an exemption for group health insurance plans purchased by churches or other employers that have religious beliefs against abortion or abortifacient contraceptives.

51.    Discovery and investigation will demonstrate that Washington state actors worked with various pro-abortion organizations including, *inter alia*, Planned Parenthood and NARAL Pro-Choice Washington, to draft, promote, pass, and implement SB 6219.

52.    Discovery and investigation will demonstrate that this law targets organizations that have religious and moral beliefs against abortion. Washington State has a history of targeting religious and moral pro-life organizations and individuals.

53.    The strong statutory language, lack of any church exception, and anticipated evidence that pro-abortion groups assisted in drafting and enacting SB 6219, indicates that Washington and its officials deliberately targeted religious organizations and intentionally violated those organizations' religious beliefs.

54.    SB 6219 provides that "[i]f the application of this section [requiring insurance coverage for abortion] to a health plan results in noncompliance with federal requirements that are a prescribed condition to the allocation of federal funds to the state, this section is inapplicable to the plan to the minimum extent necessary for the state to be in compliance. The inapplicability of this section to a specific health plan under this subsection does not affect the operation of this

VERIFIED COMPLAINT                    9

section in other circumstances." Exh. A at § 3(5). Pursuant to this provision, SB 6219 allows for exemptions in cases where denial of an exemption would result in the violation of federal conditions on state funding.

55.     Under Washington State law, "[n]o individual health care provider, religiously sponsored health carrier, or health care facility may be required by law or contract in any circumstances to participate in the provision of or payment for a specific service if they object to so doing for reason of conscience or religion. No person may be discriminated against in employment or professional privileges because of such objection." RCW § 48.43.065.

56.     Discovery and investigation will demonstrate that the Insurance Commissioner has exempted at least one insurance carrier from complying with SB 6219's provisions requiring insurance coverage of abortion services.

57.     Washington State law exempts various insurance plans from the definition of "health plans" to which SB 6219 is applicable. RCW § 48.43.005(26). Washington law therefore exempts various insurance plans from SB 6219, including:

(a)     Long-term care insurance governed by chapter 48.84 or 48.83 RCW;

(b)     Medicare supplemental health insurance governed by chapter 48.66 RCW;

(c)     Coverage supplemental to the coverage provided under chapter 55, Title 10, United States Code;

(d)     Limited health care services offered by limited health care service contractors in accordance with RCW 48.44.035;

(e)     Disability income;

(f)     Coverage incidental to a property/casualty liability insurance policy such as automobile personal injury protection coverage and homeowner guest medical;

(g)     Workers' compensation coverage;

VERIFIED COMPLAINT                    10

(h)     Accident only coverage;

(i)     Specified disease or illness-triggered fixed payment insurance, hospital confinement fixed payment insurance, or other fixed payment insurance offered as an independent, noncoordinated benefit;

(j)     Employer-sponsored self-funded health plans;

(k)     Dental only and vision only coverage;

(l)     Plans deemed by the insurance commissioner to have a short-term limited purpose or duration, or to be a student-only plan that is guaranteed renewable while the covered person is enrolled as a regular full-time undergraduate or graduate student at an accredited higher education institution, after a written request for such classification by the carrier and subsequent written approval by the insurance commissioner; and

(m)     Civilian health and medical program for the veterans affairs administration (CHAMPVA).

RCW § 48.43.005(26)

58.     Pursuant to the Washington State law, "any person violating any provision of [the insurance code] is guilty of a gross misdemeanor and will, upon conviction, be fined not less than ten dollars nor more than one thousand dollars, or imprisoned for not more than three hundred sixty-four days, or both, in addition to any other penalty or forfeiture provided herein or otherwise by law." RCW § 48.01.080.

59.     Refusal to provide insurance coverage for abortion may constitute an unfair practice pursuant to RCW § 48.30.010. Section (1) of the statute states that "[n]o person engaged in the business of insurance shall engage in unfair methods of competition or in unfair or deceptive acts or practices in the conduct of such business as such methods, acts, or practices are defined pursuant to subsection (2) of this section." RCW § 48.30.010(1). Section (2) provides: "[i]n addition to such unfair methods and unfair or deceptive acts or practices as are expressly defined and prohibited by this code, the commissioner may from time to time by regulation promulgated pursuant to chapter

VERIFIED COMPLAINT                    11

1   34.05 RCW, define other methods of competition and other acts and practices in the conduct of

2   such business reasonably found by the commissioner to be unfair or deceptive after a review of all

3   comments received during the notice and comment rule-making period." RCW § 48.30.010(2).

4         60.    Refusal to provide insurance coverage for abortion may also constitute an unfair

5   practice pursuant to RCW § 48.30.300, which provides: "A person or entity engaged in the

6   business of insurance in this state may not refuse to issue any contract of insurance or cancel or

7   decline to renew such contract because of the sex, marital status, or sexual orientation as defined

8   in RCW 49.60.040, or the presence of any sensory, mental, or physical handicap of the insured or

9   prospective insured. The amount of benefits payable, or any term, rate, condition, or type of

10   coverage may not be restricted, modified, excluded, increased, or reduced on the basis of the sex,

11   marital status, or sexual orientation, or be restricted, modified, excluded, or reduced on the basis

12   of the presence of any sensory, mental, or physical handicap of the insured or prospective insured.

13   This subsection does not prohibit fair discrimination on the basis of sex, or marital status, or the

14   presence of any sensory, mental, or physical handicap when bona fide statistical differences in risk

15   or exposure have been substantiated."

16         61.    Unfair acts and practices, such as those contained in RCW § 48.30.010 and RCW

17   § 48.30.300, are punishable by "a sum not to exceed two hundred and fifty dollars for each

18   violation committed" following statutory notice from the Insurance commissioner. RCW §

19   48.30.010(5). Additionally, "the [insurance] commissioner may take such other or additional

20   action as is permitted under the insurance code for violation of a regulation." RCW §

21   48.30.010(6).

22   **The Effect of SB 6219 on Cedar Park**

23         62.    Because Cedar Park's employee health care plan provides comprehensive coverage

24   for maternity care, SB 6219 requires Cedar Park to also provide coverage for abortions.

VERIFIED COMPLAINT          12

63.     Defendants have made no allowance for the religious freedom of religious employers and churches, such as Cedar Park, who object to paying for, facilitating access to, or providing insurance coverage for abortion or abortifacient contraceptives under any circumstance.

64.     Given the number of Cedar Park's full-time employees, the ACA requires Cedar Park to provide health insurance to their employees.

65.     The ACA requires that Cedar Park provide full coverage for maternity care.

66.     Moreover, the ACA imposes crippling monetary penalties on employers that do not provide health insurance in accordance with its standards to their employees.

67.     SB 6219 thus forces Cedar Park to choose between violating state law and violating its deeply held religious beliefs by paying for abortion coverage.

68.     Cedar Park relies on tithes and donations from members to fulfill its Christian mission.

69.     Upon information and belief, members who give to Cedar Park do so with an understanding of Cedar Park's Christian mission and with the assurance that Cedar Park will continue to adhere to and transmit authentic Christian teaching on morality and the sanctity of human life.

70.     Cedar Park cannot use donated funds for purposes known to be religiously and morally repugnant to its members and in ways that violate the implicit trust of the purpose of their tithes and donations.

71.     SB 6219 imposes a burden on Cedar Park's ability to recruit and retain employees and places Cedar Park at a competitive disadvantage by creating uncertainty as to whether it will be able to offer group health insurance in the future.

72.     Without injunctive and declaratory relief as requested herein, Cedar Park will suffer irreparable harm beginning on August 1, 2019.

VERIFIED COMPLAINT                    13

ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, Arizona 85260
(480) 444-0020

1    73.    Cedar Park has no adequate remedy at law.

2                              **COUNT I**

3              **Violation of the Free Exercise Clause of the
              First Amendment to the United States Constitution**

4    74.    Plaintiff realleges all matters set forth in paragraphs 1–73 and incorporates them

5    herein.

6    75.    Cedar Park's religious beliefs prohibit it from providing coverage for voluntary or

7    elective abortions or abortifacient contraceptives.

8    76.    Cedar Park's religious beliefs further prohibit it from purchasing or contracting for

9    a group health insurance plan that covers voluntary or elective abortions or abortifacient

10   contraceptives.

11   77.    Cedar Park has a sincere religious objection to providing coverage for abortions

12   and abortifacient contraceptives because it believes that abortion ends an innocent human life.

13   78.    As part of its religious beliefs, Cedar Park supports families through the provision

14   of health insurance. In order to adequately provide for those families, maternity coverage is

15   essential. Moreover, Cedar Park's pro-life religious beliefs compel it to care for mothers by

16   providing maternity care as part of its insurance plans. Plus, the Affordable Care Act requires that

17   Cedar Park provide maternity care coverage.

18   79.    When Cedar Park complies with its sincerely held religious beliefs regarding the

19   sanctity of human life, it exercises religion within the meaning of the Free Exercise Clause

20   80.    SB 6219 imposes a substantial burden on Cedar Park's religious exercise and

21   coerces it to change or violate its religious beliefs.

22   81.    Defendants substantially burden Cedar Park's religious exercise when they force it

23   to choose between following its religious beliefs and suffering debilitating penalties or violating

24

VERIFIED COMPLAINT                     14

ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, Arizona 85260
(480) 444-0020

1    its convictions in order to avoid those penalties.

2         82.    SB 6219 is neither neutral nor generally applicable.

3         83.    SB 6219 is not neutral because it requires churches and other religious employers

4    to provide insurance coverage for abortion, despite such coverage violating the religious beliefs of

5    myriad religious organizations.

6         84.    Discovery and investigation will demonstrate that this law targets organizations that

7    have religious and moral beliefs against abortion. Washington State has a history of targeting

8    religious and moral pro-life organizations and individuals.

9         85.    Discovery and investigation will demonstrate that Washington state actors worked

10   with various pro-abortion organizations including, *inter alia*, Planned Parenthood and NARAL

11   Pro-Choice Washington, to draft, promote, pass, and implement SB 6219. SB 6219 is therefore

12   not neutral.

13        86.    SB 6219 is not generally applicable because it contains exemptions to its

14   requirements.

15        87.    Pursuant to Washington State law, "[n]o individual health care provider, religiously

16   sponsored health carrier, or health care facility may be required by law or contract in any

17   circumstances to participate in the provision of or payment for a specific service if they object to

18   so doing for reason of conscience or religion." RCW § 48.43.065. Therefore, SB 6219 is not

19   generally applicable because individual health care providers, religiously sponsored health

20   carriers, and health care facilities are exempt if they object to providing insurance coverage for

21   abortion for reasons of conscience or religion.

22        88.    Under SB 6219, "[i]f the application of this section [requiring insurance coverage

23   for abortion] to a health plan results in noncompliance with federal requirements that are a

24   prescribed condition to the allocation of federal funds to the state, this section is inapplicable to

VERIFIED COMPLAINT                    15

the plan to the minimum extent necessary for the state to be in compliance. The inapplicability of this section to a specific health plan under this subsection does not affect the operation of this section in other circumstances." Exh. A at § 3(5). Pursuant to this provision, SB 6219 allows for exemptions in cases where denial of exemption would result in the violation of federal conditions on state funding, and is therefore not generally applicable.

89. Discovery and investigation will demonstrate that the Insurance Commissioner has exempted at least one insurance issuer from SB 6219's requirements. SB 6219 is therefore not generally applicable.

90. SB 6219 is also not generally applicable because it exempts plans that do not provide comprehensive maternity care coverage from its requirement that group health plans provide abortion coverage.

91. Washington State law exempts various insurance plans from the definition of "health plans" to which SB 6219 is applicable. RCW § 48.43.005(26). SB 6219 is therefore not generally applicable.

92. The Free Exercise Clause prohibits the government from disapproving of or showing hostility toward a particular religion or religion in general.

93. SB 6219 disapproves of or shows hostility toward religious organizations who believe that abortion and abortifacients are a sin.

94. SB 6219 furthers no compelling governmental interest.

95. Guaranteeing unfettered access to elective and voluntary abortions through employee health insurance plans is not a significant social problem.

96. Guaranteeing unfettered access to elective and voluntary abortions through employee health insurance plans is not a problem for employers who only hire employees who ascribe to the religious belief that abortion and abortifacients are a sin.

VERIFIED COMPLAINT                                    16

97.     Compelling Cedar Park and other religious organizations to pay for elective and voluntary abortions or abortifacient contraceptives is not the least restrictive means of advancing any interest that the government might have.

98.     SB 6219 constitutes government-imposed coercion on Cedar Park to change or violate its sincerely held religious beliefs.

99.     SB 6219 chills Cedar Park's religious exercise.

100.    SB 6219 exposes Cedar Park to substantial monetary and criminal penalties for its religious exercise.

101.    SB 6219 exposes Cedar Park to substantial competitive disadvantages because of uncertainties about its health insurance benefits caused by SB 6219.

102.    SB 6219 imposes a burden on Cedar Park's employee recruitment efforts by creating uncertainty as to whether or on what terms it will be able to offer health insurance or will suffer penalties therefrom.

103.    As a matter of religious belief, Cedar Park provides health insurance to its employees. It cannot refuse to provide health insurance in order to avoid application of SB 6219 without violating its sincerely held religious beliefs.

104.    As a matter of religious belief, Cedar Park provides maternity coverage in its employee health care plan. It cannot refuse to provide maternity coverage in order to avoid application of SB 6219 without violating its sincerely held religious beliefs.

105.    If Cedar Park drops maternity coverage to avoid application of SB 6219, it will be in violation of federal law and will experience a competitive disadvantage in its efforts to recruit and retain employees.

106.    Defendants' implementation and enforcement of SB 6219 violates the Free Exercise Clause of the First Amendment of the United States Constitution, as applied to Cedar

ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, Arizona 85260
(480) 444-0020

1    Park.

2        107.    SB 6219 also violates Cedar Park's "hybrid" rights under the Free Exercise Clause

3    in conjunction with their right to Equal Protection guaranteed by the Fourteenth Amendment.

4        108.    The First Amendment's Free Exercise Clause requires the government to satisfy

5    strict scrutiny before it may burden an organization's exercise of religion in conjunction with its

6    right to equal protection.

7        109.    Defendants cannot show a compelling interest for imposing SB 6219 on Cedar

8    Park, nor can they demonstrate that SB 6219 pursues its goals in a means least restrictive of Cedar

9    Park's rights.

10        110.    Accordingly, SB 6219 violates Cedar Park's hybrid rights of Free Exercise

11    guaranteed by the First Amendment and Equal Protection guaranteed by the Fourteenth

12    Amendment.

13        111.    SB 6219 further violates the Free Exercise Clause because it requires Cedar Park

14    to violate long-established historical religious practices involving the sanctity of human life and

15    opposition to abortion.

16        112.    It violates the Free Exercise Clause to require Cedar Park to provide insurance

17    coverage for abortion in its employee insurance plan regardless of whether SB 6219 is neutral or

18    generally applicable.

19        113.    WHEREFORE, Cedar Park respectfully requests that the Court grant the relief set

20    forth in the prayer for relief.

21                            **COUNT II**

22                **Violation of the Equal Protection Clause of the**
                **Fourteenth Amendment to the United States Constitution**

23        114.    Plaintiff realleges all matters set forth in paragraphs 1–73 and incorporates them

24    herein.

VERIFIED COMPLAINT                    18

1   115.   The Fourteenth Amendment to the United States Constitution guarantees Cedar

2   Park equal protection of the laws, which prohibits Defendants from treating Cedar Park differently

3   than similarly situated persons and businesses.

4   116.   The government may not treat some employers disparately as compared to similarly

5   situated employers, based on a fundamental right.

6   117.   Washington State law exempts health care providers, religiously sponsored health

7   carriers, and health care facilities from being forced "to participate in the provision of or payment

8   for a specific service if they object to so doing for reason of conscience or religion." RCW

9   § 48.43.065. Therefore, health care providers, religiously sponsored health carriers, and health care

10  facilities that have a conscientious or moral objection to providing insurance coverage for abortion

11  are exempt from SB 6219.

12  118.   SB 6219 therefore treats employers who are not health care providers, religiously

13  sponsored health carriers, or health care facilities differently than other employers that have

14  conscientious or moral objections to providing insurance coverage for abortion or abortifacient

15  contraceptives.

16  119.   SB 6219 exempts plans that do not provide comprehensive maternity care coverage

17  from its requirement that group health plans provide abortion coverage.

18  120.   SB 6219 treats employers who do not provide comprehensive maternity care

19  coverage differently than employers who do provide such coverage.

20  121.   Therefore, SB 6219 treats similarly situated employers differently.

21  122.   Defendants lack a rational or compelling state interest for such disparate treatment

22  of Cedar Park and other religious employers because guaranteeing unfettered access to elective

23  and voluntary abortions through employee health insurance plans is not a significant social

24  problem.

VERIFIED COMPLAINT                    19

123.   Defendants lack a rational or compelling state interest for such disparate treatment of Cedar Park and other religious employers because guaranteeing unfettered access to elective and voluntary abortions through employee health insurance plans is not a significant problem for employers who only hire employees who ascribe to the religious belief that abortions and abortifacients are a sin.

124.   Defendants' disparate treatment of Cedar Park and other religious employers is not narrowly tailored because compelling Cedar Park and other religious employers to pay for abortions in violation of their religious beliefs is not the least restrictive means of advancing any legitimate interest the government may have.

125.   Defendants' implementation and enforcement of SB 6219 violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, as applied to Cedar Park.

126.   WHEREFORE, Cedar Park respectfully requests that the Court grant the relief set forth hereinafter in the prayer for relief.

## COUNT III

### Violation of the Establishment Clause of the
### First Amendment to the United States Constitution

127.   Plaintiff realleges all matters set forth in paragraphs 1–73 and incorporates them herein.

128.   The Establishment Clause of the First Amendment prohibits the government from disapproving of or showing hostility toward a particular religion or religion in general.

129.   SB 6219 discriminates between religions and denominations and exhibits hostility towards certain religious beliefs.

130.   In implementing SB 6219, Defendants have adopted a particular theological view of what is acceptable moral complicity in provision of abortion and imposed it on all churches and

VERIFIED COMPLAINT                         20

1   religious employers who must either conform or incur ruinous fines.

2   131.   Defendants implemented and enforce SB 6219 with full knowledge that some

3   religions and denominations object to participating in, paying for, facilitating, or otherwise

4   supporting abortion, while others do not.

5   132.   No exemption is available to religious employers who, like Cedar Park, believe that

6   paying for abortion or abortifacient contraceptives is sinful.

7   133.   SB 6219 was designed to make it impossible for Cedar Park and other religious

8   employers to comply with their religious beliefs.

9   134.   SB 6219 suppresses the religious exercise of Cedar Park and other similarly situated

10   churches and religious employers.

11   135.   SB 6219 unconstitutionally prefers those religions and denominations that do not

12   have religious objections to abortion or abortifacient contraceptives and exhibits hostility towards

13   those that do by forcing them to pay for abortions and abortifacient contraceptives in violation of

14   their sincerely held religious beliefs.

15   136.   Defendants' implementation and enforcement of SB 6219 violates the

16   Establishment Clause of the First Amendment to the United States Constitution, as applied to

17   Cedar Park.

18   137.   WHEREFORE, Cedar Park respectfully requests that the Court grant the relief set

19   forth hereinafter in the prayer for relief.

20   ## COUNT IV

21   **Violation of Religious Autonomy Guaranteed by the Religious Clauses**
**of the First Amendment to the United States Constitution**

22

23   138.   Plaintiff realleges all matters set forth in paragraphs 1–73 and incorporates them

24   herein.

VERIFIED COMPLAINT                   21

ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, Arizona 85260
(480) 444-0020

139.   SB 6219 as-applied violates Cedar Park's rights under the Religion Clauses of the First Amendment to the United States Constitution.

140.   The Free Exercise and the Establishment Clauses of the First Amendment, together, invest in churches the power to ordain their own affairs, including to decide for themselves, free from state interference, matters of church government, faith, doctrine, the communication of that doctrine, and operation of their own institutions.

141.   This freedom extends to Cedar Park's ability to choose employee insurance coverage that is consistent with Cedar Park's religious beliefs.

142.   Cedar Park has determined that its insurance plan must be consistent with their religious beliefs regarding the sanctity of life and abortion. Therefore, Cedar Park cannot provide insurance coverage for abortion or abortifacient contraceptives in its employee health plan consistent with its religious beliefs.

143.   SB 6219 directly and substantially interferes with Cedar Park's First Amendment right to order their own internal affairs in matters involving church government, faith, doctrine, the communication of that doctrine, and the operation of the church, and entangles the government in the internal affairs of Cedar Park.

144.   SB 6219 is subject to strict scrutiny because it implicates more constitutional rights than just the Free Exercise rights of Cedar Park.

145.   SB 6219 may not infringe on Cedar Park's rights under the Religion Clauses of the First Amendment, absent a compelling governmental interest.

146.   The government has no compelling interest that would justify infringing upon Cedar Park's free exercise and antiestablishment rights by interfering with matters of internal governance.

147.   Any interest the government does possess in infringing Cedar Park's free exercise

VERIFIED COMPLAINT                          22

1    and antiestablishment rights is not advanced in the least restrictive means available.

2       148.   Defendants' implementation and enforcement of SB 6219 violates the Free

3    Exercise and Establishment Clauses, as applied to Cedar Park.

4       149.    WHEREFORE, Cedar Park respectfully requests that the Court grant the relief

5    set forth hereinafter in the prayer for relief.

6                                **PRAYER FOR RELIEF**

7       WHEREFORE, Plaintiff respectfully requests that:

8       A)     This Court render a Declaratory Judgment, adjudging and declaring that SB 6219

9    violates the First and Fourteenth Amendments to the United States Constitution, as applied to

10   Cedar Park;

11      B)     This Court enter an injunction preliminarily and permanently enjoining

12   Defendants and their agents from enforcing SB 6219 as applied to Cedar Park;

13      C)     This Court issue the requested injunctive relief without a condition of bond or

14   other security being required of Cedar Park;

15      D)     This Court award Plaintiff attorney fees and costs against the Defendants under 42

16   U.S.C. § 1988, and any other applicable statute; and

17      E)     This Court award such other and further relief as it deems equitable and just.

18

19          Respectfully submitted this 8th day of March, 2019,

20                                       By: s/Kristen K. Waggoner
                                         Kristen K. Waggoner (WSBA #27790)
21                                       Kevin H. Theriot (AZ Bar #030446)*
                                         Elissa M. Graves (AZ Bar #030670)*
22                                       ALLIANCE DEFENDING FREEDOM
                                         15100 N. 90th Street
23                                       Scottsdale, Arizona 85260
                                         Telephone: (480) 444-0020
24                                       Facsimile:  (480) 444-0025

VERIFIED COMPLAINT                          23

1

2

Email: kwaggoner@adflegal.org
         ktheriot@adflegal.org
         egraves@adflegal.org

3

David A. Cortman (GA Bar #188810)*
Alliance Defending Freedom
1000 Hurricane Shoals Rd. NE
Suite D-1100
Lawrenceville, GA 30040
Telephone: (770) 339-0074
Email: dcourtman@adflegal.org
*Counsel for Plaintiff*

4

5

6

7

* Motions to appear *pro hac vice* submitted

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

VERIFIED COMPLAINT

24

1

**DECLARATION UNDER PENALTY OF PERJURY**

2      I hereby declare under penalty of perjury, including pursuant to 28 U.S.C. § 1746, that the

3 foregoing factual allegations are true and correct.

4      Executed on this ___7th___ day of March, 2019 in the United States.

5

6

7      Jason "Jay" Smith
       Senior Pastor, Cedar Park Assembly of God of Kirkland, Washington

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

Verified Complaint