Honorable Benjamin H. Settle

1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

9

10

11

12

13

14

15

16

| | |
|---|---|
| CEDAR PARK ASSEMBLY OF GOD OF KIRKLAND, WASHINGTON,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>MYRON "MIKE" KREIDLER, in his official capacity as Insurance Commissioner for the State of Washington; JAY INSLEE, in his official capacity as Governor of the State of Washington,<br><br>　　　　Defendants. | Civil No. 3:19-cv-05181<br><br>**PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION AND MEMORANDUM IN SUPPORT**<br><br>NOTE ON MOTION CALENDAR: Friday, June 7, 2019<br><br>ORAL ARGUMENT REQUESTED |

17

18

19

20

21

22

23

24

25

26

27

Plaintiff's Motion for Preliminary Injunction and
Memorandum in Support
3:19-cv-05181

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ...........................................................................................

INTRODUCTION ..................................................................................................1

FACTUAL BACKGROUND ..................................................................................3

I.    Plaintiff Cedar Park Assembly of God of Kirkland, Washington .....................3

II.    Washington Senate Bill 6219..........................................................................5

       A.    SB 6219 requires churches to provide insurance coverage for abortion .................5

       B.    SB 6219 includes numerous broad exemptions, but only a narrow religious exemption that fails to protect Cedar Park...........................................6

       C.    The penalties for violating SB 6219 include fines and jail time.............................3

III.    The Effect of SB 6219 on Cedar Park ...........................................................6

ARGUMENT ..........................................................................................................7

I.    Cedar Park is likely to succeed on the merits of its Free Exercise claim primarily because SB 6219 is not neutral and generally applicable. ....................................7

       A.    SB 6219 imposes an impermissible burden on Cedar Park's exercise of religion. ..........................................................................................8

       B.    SB 6219 is neither neutral nor generally applicable. .............................9

           1.    SB 6219 provides secular exemptions that undermine Defendants' stated interest in providing women access to health benefits. ....................9

           2.    SB 6219 is not neutral in its operation......................................11

               a.    SB 6219 is impermissibly gerrymandered....................................12

               b.    SB 6219 treats churches less favorably than other religious organizations..........................................................................13

               c.    SB 6219 intentionally discriminates against religious organizations like Cedar Park. ...........................................................14

       C.    SB 6219 does not survive strict scrutiny.................................15

           1.    SB 6219 does not serve a rational, much less compelling, government interest..........................................................................15

Plaintiff's Motion for Preliminary Injunction and
Memorandum in Support
3:19-cv-05181

i

ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, Arizona 85260
(480) 444-0020

2.   SB 6219 is not narrowly tailored, nor is it the least restrictive means of accomplishing Washington's stated interest. ............................16

D.   SB 6219 violates the Free Exercise Clause because it requires Cedar Park to violate its long-established historical religious beliefs regarding abortion. ...............................................................................................17

E.   SB 6219 violates Cedar Park's hybrid Free Exercise rights because the law violates additional fundamental rights. ...............................................18

F.   *Smith* should be overruled........................................................................19

II.   Cedar Park is likely to succeed on the merits of its church autonomy claim. ...................19

III.   Cedar Park is likely to succeed on the merits of its Equal Protection claim. ...................20

IV.   Cedar Park is likely to succeed on the merits of its Establishment Clause claim.............21

V.   Cedar Park has fulfilled the remaining preliminary injunction factors.............................21

CONCLUSION........................................................................................................................23

CERTIFICATE OF SERVICE ................................................................................................24

Plaintiff's Motion for Preliminary Injunction and
Memorandum in Support
3:19-cv-05181

ii

ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, Arizona 85260
(480) 444-0020

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>

*ACLU v. Ashcroft,*
   322 F.3d 240 (3d Cir. 2003)..................................................................................22

*Alliance for the Wild Rockies v. Cottrell,*
   632 F.3d 1127 (9th Cir. 2011) ........................................................................7, 22

*Angelotti Chiropractic, Inc. v. Baker,*
   791 F.3d 1075 (9th Cir. 2015) ...........................................................................7

*Braunfeld v. Brown,*
   366 U.S. 599 (1961)..........................................................................................8

*Brown v. Entertainment Merchants Ass'n,*
   564 U.S. 786 (2011)..........................................................................................16

*Burwell v. Hobby Lobby,*
   573 U.S. 682 (2014)..........................................................................................17

*Canyon Ferry Road Baptist Church v. Unsworth,*
   556 F.3d 1021 (9th Cir. 2009) ..........................................................................9

*Church of Lukumi Babalu Aye v. City of Hialeah,*
   508 U.S. 520 (1993).............................................................................. *passim*

*Clark v. Jeter,*
   486 U.S. 456 (1988)..........................................................................................20

*Colo. Christian Univ.  v. Weaver,*
   534 F.3d 1245 (10th Cir. 2008) .........................................................................13

*Committee for Public Education & Religious Liberty v. Nyquist,*
   413 U.S. 756 (1973)..........................................................................................21

*Elrod v. Burns,*
   427 U.S. 347 (1976)..........................................................................................22

*Employment Division, Department of Human Resources of Oregon v. Smith,*
   494 U.S. 872 (1990)..........................................................................2, 7, 8, 18

*Florida Star v. B.J.F.,*
   491 U.S. 524 (1989)..........................................................................................2

*Fraternal Order of Police Newark Lodge No. 12 v. City of Newark,*
   170 F.3d 359 (3d Cir. 1999)...........................................................9, 11, 12

Plaintiff's Motion for Preliminary Injunction and
Memorandum in Support
3:19-cv-05181

iii

ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, Arizona 85260
(480) 444-0020

*Frisby v. Schultz*,
      487 U.S. 474 (1988)..................................................................................16

*Gonzales v. O Centro Espirita Beneficente Uniao do Vogetal*,
      546 U.S. 418 (2006)............................................................................15, 16

*Grutter v. Bollinger*,
      539 U.S. 306 (2003)..................................................................................17

*Hosanna-Tabor Evangelical Lutheran Church & School v. EEOC*,
      565 U.S. 171 (2012)..................................................................................18

*Kedroff v. St. Nicholas Cathedral*,
      344 U.S. 94 (1952) ............................................................................. 19-20

*Kennedy v. Bremerton School District*,
      139 S. Ct. 634 (0019)................................................................................19

*Larson v. Valente*,
      456 U.S. 228 (1982)..................................................................................13

*Masterpiece Cakeshop, Ltd. v. Colo. Civil Rights Commission*,
      138 S. Ct. 1719 (2018)....................................................................9, 14, 18

*Midrash Sephardi, Inc. v. Town of Surfside*,
      366 F.3d 1214 (11th Cir. 2004) ...............................................................10

*Miller v. Reed*,
      176 F.3d 1202 (9th Cir. 1999) .......................................................2, 18, 19

*Opulent Life Church v. City of Holly Springs, Miss.*,
      697 F.3d 279 (5th Cir. 2012) ....................................................................22

*Plyler v. Doe*,
      457 U.S. 202 (1982)..................................................................................20

*Presbyterian Church v. Mary Elizabeth Blue Hull Memorial Presbyterian Church*,
      393 U.S. 440 (1969)..................................................................................19

*Sammartano v. First Judicial District Court*,
      303 F.3d 959 (9th Cir. 2002) ....................................................................22

*Serbian Eastern Orthodox Diocese v. Milivojevich*,
      426 U.S. 696 (1976)..................................................................................19

*Sherbert v. Verner*,
      374 U.S. 398 (1963)..............................................................................2, 15

*Stormans v. Wiesman*,
      794 F.3d 1064 (9th Cir. 2015) ...........................................................10, 11

Plaintiff's Motion for Preliminary Injunction and
Memorandum in Support
3:19-cv-05181

iv

ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, Arizona 85260
(480) 444-0020

*Thomas v. Review Bd. of the Ind. Employment Security Division*,
    450 U.S. 707 (1981).............................................................................16

*Thompson v. Western States Medical Center*,
    535 U.S. 357 (2002)............................................................................2

*Trinity Lutheran Church of Columbia, Inc. v. Comer*,
    137 S. Ct. 2012 (2017)................................................................. 17-18

*United States v. Playboy Entertainment Group, Inc.*,
    529 U.S. 803 (2000).....................................................................16, 17

*Viacom Int'l, Inc. v. FCC*,
    828 F. Supp. 741 (N.D. Cal. 1993))...................................................22

*Watson v. Jones*,
    80 U.S. 679 (1871)............................................................................19

**Statutes and Regulations**

45 C.F.R. § 147.131(a)..............................................................................1

RCW § 9A.08.030..................................................................................21

RCW § 48.01.080.............................................................................6, 21

RCW § 48.43.005.................................................................6, 10, 17, 20

RCW § 48.43.065 ........................................................................ *passim*

RCW § 48.43.072...........................................................................1, 5, 13

RCW § 48.43.073 ...............................................................................1, 13

**Other Authorities**

AGO 2002 No. 5, Interpretation of "Conscientious Objection" Statute Allowing Employers to
    Refrain from Including Certain Items in the Employee Health Care Benefit Package
    (Aug. 8, 2002), available at https://www.atg.wa.gov/ago-opinions/interpretation-
    conscientious-objection-statute-allowing-employers-refrain-including ...........................13

Douglas Laycock, *Theology Scholarships, the Pledge of Allegiance, and Religious Liberty:
    Avoiding the Extremes but Missing the Liberty*, 118 HARV. L. REV. 155 (2004). ........8, 11

Matt Markovich, *Catholic Bishops of Wash. ask Gov. Inslee to Veto Abortion Insurance Bill*,
    KOMO News (Mar. 5, 2018), https://bit.ly/2Uuu5Nf (last visited Apr. 11, 2019). ..........15

Michael W. McConnell, *Free Exercise Revisionism and the Smith Decision*, 57 U. CHI. L.
    REV. 1109 (1990). .............................................................................19

Plaintiff's Motion for Preliminary Injunction and
Memorandum in Support
3:19-cv-05181

v

ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, Arizona 85260
(480) 444-0020

Proposed Amendment to Substitute Senate Bill 6219 by Senator O'Ban,
https://bit.ly/2UtTAye (last visited Apr. 11, 2019).............................................15

Proposed Amendment to Substitute Senate Bill 6219 by Senator Shea,
https://bit.ly/2G4krqE (last visited Apr. 11, 2019). ..........................................15

Richard F. Duncan, *Free Exercise is Dead, Long Live Free Exercise*, 3 U. Pa. J. Const. 850
(2001). ...............................................................................................................9, 10

Plaintiff's Motion for Preliminary Injunction and
Memorandum in Support
3:19-cv-05181

vi

ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, Arizona 85260
(480) 444-0020

Plaintiff Cedar Park Assembly of God of Kirkland, Washington, moves under Fed. R. Civ. P. 65 to preliminarily enjoin Defendants' enforcement of Senate Bill 6219 (codified as RCW § 48.43.072 and .073), facially and as-applied to Cedar Park, because it violates the First and Fourteenth Amendments to the United States Constitution. Cedar Park is a non-profit Christian church that believes participation in, facilitation of, or payment for abortion or abortifacient drugs and devices (collectively referred to as "abortion") in any circumstance is forbidden. Many of the Church's ministries, such as assisting foster children and embryo adoption, are built around this core teaching. But SB 6219 forces Cedar Park to provide insurance coverage for abortion, in violation of these beliefs. Cedar Park's current group health insurance plan must be renewed by August 1, 2019. On that date, SB 6219 will become enforceable by Defendants against Cedar Park, subjecting the Church to fines and its pastor and other leaders to criminal liability and up to 364 days of jail time. Cedar Park therefore requires relief before that date.

## INTRODUCTION

Since *Roe v. Wade* was decided in 1973, Americans have long shared a value that government should never force churches to participate in or facilitate abortion in violation of their religious beliefs. Even when the federal government mandated that all employers provide abortifacients as part of their employee health plans, the government still had the good sense to exempt churches. 45 C.F.R. § 147.131(a).

The State of Washington has emphatically rejected such religious plurality. In 2018, the State acted in concert with abortion advocates to draft, promote, pass, and implement SB 6219, which requires Washington employers to provide abortion and abortifacient coverage in their employee health plans. Tellingly, while SB 6219 contains numerous exemptions, none adequately protect churches like Cedar Park, who believe that abortion, and any participation in, facilitation of, or payment for abortion, is a grave sin. First Amended Verified Complaint ("VC") ¶ 29. Churches and other religious organizations are forced to choose between their sincerely held religious beliefs and crippling government penalties, including jail time.

Plaintiff's Motion for Preliminary Injunction and
Memorandum in Support
3:19-cv-05181

1

ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, Arizona 85260
(480) 444-0020

The State of Washington cannot compel a church to affirm a practice repugnant to its beliefs through criminal and civil penalties without surviving strict scrutiny—the most demanding constitutional test. *See Sherbert v. Verner*, 374 U.S. 398, 402 (1963). Because SB 6219 cannot pass this exacting test, it violates numerous constitutional protections.

Washington's abortion mandate is not neutral or generally applicable making it subject to strict scrutiny under the Free Exercise Clause. *See Emp. Div. Dep't of Hum. Res. of Or. v. Smith*, 494 U.S. 872 (1990). SB 6219 is also subject to strict scrutiny because it requires Cedar Park to violate long-established historical religious practices involving the sanctity of human life and opposition to abortion, and because it violates the hybrid-rights doctrine of *Smith* that the Ninth Circuit recognized in *Miller v. Reed*, 176 F.3d 1202, 1207 (9th Cir. 1999).

SB 6219 fails strict scrutiny's narrowly tailored compelling interest test for three, independent reasons. First, myriad exemptions eliminate any argument that the law is narrowly tailored. *See Church of Lukumi Babalu Aye v. City of Hialeah*, 508 U.S. 520, 547 (1993) (stating that a law "cannot be regarded as protecting an interest of 'the highest order'" where the existing exemptions already permit "appreciable damage to that supposedly vital interest")(quoting *Florida Star v. B.J.F.*, 491 U.S. 524, 541–542 (1989) (Scalia, J., concurring in part and concurring in judgment) (citation omitted)). Second, forcing a church to pay for abortion coverage serves no *rational*—let alone compelling—government interest. And third, there are a multitude of less restrictive alternatives that Washington can pursue before compelling churches to violate their religious beliefs. Restriction of the right to free exercise "must be a last—not first—resort." *Thompson v. W. States Med. Ctr.,* 535 U.S. 357, 373 (2002).

SB 6219 fails for many other reasons, including because it violates the church autonomy doctrine of the religion clauses of the First Amendment, the Equal Protection Clause, and the Establishment Clause. And because Cedar Park will be subject to irreparable harm of jail time and fines when the Church's health plan comes up for renewal on August 1, 2019, preliminary injunctive relief is warranted.

Plaintiff's Motion for Preliminary Injunction and
Memorandum in Support
3:19-cv-05181

2

ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, Arizona 85260
(480) 444-0020

# FACTUAL BACKGROUND

### I.      Plaintiff Cedar Park Assembly of God of Kirkland, Washington

Cedar Park Assembly of God has been serving Bothell and the greater Eastside of the Seattle area for nearly 50 years. VC ¶ 18. Based on its teaching that all humankind has dignity and value because we are made in God's image, a substantial part of the Church's ministry is focused on preserving and celebrating life from its very beginning till its natural end. VC ¶¶ 27-30. Cedar Park hosts an annual service known as "Presentation Sunday" where church leaders and members pray for and support couples experiencing infertility, and it has facilitated almost 1,000 embryo adoptions. *Id.* ¶¶ 34, 36. It supports expectant mothers by partnering with a local pregnancy center and hosting an ultrasound unit on its campus. *Id.* at ¶ 35. And the Church hosts an annual free camp for about 75 children in foster care. *Id.* at ¶ 38. Cedar Park also cares for those at the end of life with its funeral home and chapel. *Id.* at 22. This pro-life focus is over and above the countless other ways the church serves the community through Cedar Park Christian Schools; a university-level ministry program; a counseling program; and various community groups and ministries that enhance the lives of women, men, young adults, and children. VC at ¶¶ 22–23.

Cedar Park has over 600 members, and approximately 1,500 people attend the Church's weekly worship services across all of its locations. *Id.* at ¶ 19. The Church operates according to its Constitution and Bylaws, including its "Position Regarding Sanctity of Human Life":

> Under the *Imago Dei* principle, all human life is sacred and made by God, in His image. Because all humans are image-bearers, human life is of immeasurable worth in all of its dimensions, including pre-born babies, the aged, the physically or mentally challenged, and every other stage or condition from conception through natural death. As such, we as Christians are called to defend, protect, and value all human life.

*Id.* at ¶ 25. The Church believes and teaches its members and others that abortion ends a human life, and is therefore a violation of the Bible's command against the intentional destruction of the innocent. *Id.* at ¶¶ 27–28. Accordingly, Cedar Park believes and teaches that participation in, facilitation of, or payment for abortion or abortifacient drugs and devices in any circumstance is a

Plaintiff's Motion for Preliminary Injunction and
Memorandum in Support
3:19-cv-05181

3

ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, Arizona 85260
(480) 444-0020

1    grave sin. *Id*. at ¶ 29.

2           Cedar Park expects its employees to abide by and agree with the Church's moral and ethical

3    standards, including its religious beliefs and teachings on the sanctity of life, in both their work

4    life and private life. VC ¶ 31. All employees are required to sign a statement agreeing to abide by

5    Cedar Park's standards of conduct, which provides, in pertinent part:

6                  Cedar Park employees must conduct their professional and personal
                   lives in a manner that provides clear evidence of a Christian life and
7                  character that commends the Gospel, strengthens the Church and
                   honors God. *Cedar Park expects its employees to refrain from*
8                  *behavior that conflicts or appears inconsistent with evangelical*
                   *Christian standards as determined in the sole and absolute*
9                  *discretion of Cedar Park….* Cedar Park expects all of its employees
                   to strive toward living a life that reflects the values, mission, and
10                 faith of Cedar Park.

11

12   *Id*. at ¶ 32 (emphasis added).

13          The Church promotes the physical, emotional, and spiritual well-being of its employees

14   and their families by offering health insurance to its employees. VC ¶ 39. Maternity care is an

15   integral part of this commitment. *Id*. at ¶ 45. Cedar Park believes that it has a religious obligation

16   to provide for the personal needs of its employees, which includes the provision of health insurance

17   coverage (with maternity care). *Id*. at ¶ 41. Because of its religious beliefs, Cedar Park offers health

18   insurance coverage to its employees in a way that does not cause it to pay for abortions or

19   abortifacient drugs and devices, such as emergency contraception and intrauterine devices. *Id*. at

20   ¶ 47. Its current group insurance plan excludes coverage for these items. *Id*. Paying premiums or

21   fees for any plan that covers these procedures or items, whether expressly or surreptitiously under

22   another label like "overhead expense," would violate Cedar Park's beliefs regarding the sanctity

23   of life. Smith Decl. at ¶ 4.

24          Cedar Park has about 185 employees who are eligible for health insurance coverage. VC ¶

25   20. Group health insurance is the only viable way for the Church to provide coverage consistent

26   with its call to care for its employees and its legal obligations under the Patient Protection and

27   Affordable Care Act ("ACA"). *Id*. at ¶ 42. Cedar Park has evaluated becoming self-insured and

Plaintiff's Motion for Preliminary Injunction and
Memorandum in Support
3:19-cv-05181                          4          ALLIANCE DEFENDING FREEDOM
                                                  15100 N. 90th Street
                                                  Scottsdale, Arizona 85260
                                                  (480) 444-0020

1    determined that it is not a viable option. It would cost the Church roughly $243,125 annually, and
2    that number is expected to double within the next several years due to increase in plan use. *Id.* at
3    ¶ 43. More importantly, switching to a self-insurance plan is likely to have a catastrophic effect on
4    employees and family members currently battling serious illness. For instance, one child of an
5    employee will need a kidney transplant soon and the Church would not have the ability to pay for
6    it if self-insured. Smith Decl. at ¶ 6. And an employee undergoing expensive cancer treatment
7    would likely no longer be covered should the Church switch to self-insurance on August 1. Smith
8    Decl. at ¶ 7. Group health insurance is Cedar Park's only viable option to fulfill its commitment
9    to its employees. VC at ¶ 44.

## II.    Washington Senate Bill 6219

### A.    SB 6219 requires churches to provide insurance coverage for abortion.

12       In 2018, the State of Washington passed and implemented SB 6219, codified at RCW
13   § 48.43.073, which provides that "if a health plan issued or renewed on or after January 1, 2019,
14   provides coverage for maternity care or services, the health plan must also provide a covered
15   person with substantially equivalent coverage to permit the abortion of a pregnancy." *See also,* VC
16   Ex. A at § 3(1). Remarkably, even a health plan of a church committed to the sanctity of unborn
17   life like Cedar Park "may not limit in any way a person's access to services related to the abortion
18   of a pregnancy." *Id.* at § 3(2)(a). SB 6219 further requires all insurance plans issued or renewed
19   on or after January 1, 2019, to provide coverage for "[a]ll contraceptive drugs, devices, and other
20   products, approved by the federal food and drug administration, including over-the-counter
21   contraceptive drugs, devices, and products, approved by the federal food and drug administration,"
22   and "[t]he consultations, examinations, procedures, and medical services that are necessary to
23   prescribe, dispense, insert, deliver, distribute, administer, or remove the drugs, devices, and other
24   services" related to the same. VC Ex. A at § 2(1), codified at RCW § 48.43.072.

ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, Arizona 85260
(480) 444-0020

1
2

**B.      SB 6219 includes numerous broad exemptions, but only a narrow religious exemption that fails to protect Cedar Park.**

3
4
5
6
7
8

SB 6219 and the other state laws informing its application contain numerous exemptions. Thirteen different types of insurance plans are exempted from the definition of "health plan," including plans for the disabled, self-funded plans, and student-only plans. RCW § 48.43.005(27). SB 6219 also exempts plans if compliance with the legislation might jeopardize federal funding to Washington. VC Ex. A at § 3(5). And the law does not apply to employer-sponsored plans that do not provide maternity-care coverage. *Id.* at 3(1).

9
10
11

Washington state law also affords a comprehensive exemption for a select class of religious health care providers, carriers, and facilities. RCW § 48.43.065(2)(a). But it provides only a narrow, inadequate exemption for other religious organizations like Cedar Park.

12

**C.      The penalties for violating SB 6219 include fines and jail time.**

13
14

Cedar Park, as well as its pastor, board members, and other leaders are subject to fines and even jail time of up to 364 days for failing to comply with SB 6219:

15
16
17
18

> [A]ny person violating any provision of [the insurance] code is guilty of a gross misdemeanor and will, upon conviction, be fined not less than ten dollars nor more than one thousand dollars, or imprisoned for not more than three hundred sixty-four days, or both, in addition to any other penalty or forfeiture provided herein or otherwise by law.

19

RCW § 48.01.080.

20

**III.    The Effect of SB 6219 on Cedar Park**

21
22
23
24
25
26
27

Because Cedar Park provides comprehensive maternity care coverage in its employee health care plan, SB 6219 requires the Church to provide abortion coverage. VC ¶ 63.  Defendants make no allowance for the religious freedom of religious employers and churches, such as Cedar Park, who object to paying for, facilitating access to, or providing insurance coverage for abortion under any circumstance. *Id.* at ¶ 64. Given the number of Cedar Park's full-time employees, the ACA requires the Church to provide health insurance to its employees, including full coverage for

Plaintiff's Motion for Preliminary Injunction and
Memorandum in Support
3:19-cv-05181
6

ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, Arizona 85260
(480) 444-0020

maternity care. *Id.* at ¶¶ 65–66. Failure to provide health insurance in accordance with ACA requirements subjects Cedar Park to crippling monetary penalties. *Id.* at ¶ 67. SB 6219 imposes a burden on Cedar Park's ability to recruit and retain employees, and it places Cedar Park at a competitive disadvantage by creating uncertainty as to whether it will be able to offer group health insurance in the future. *Id.* at ¶ 72.

In sum, SB 6219 impermissibly forces Cedar Park to choose between violating state law and violating its deeply held religious beliefs by paying for abortion coverage. And without injunctive relief, Cedar Park will suffer irreparable harm beginning on August 1, 2019.

## **ARGUMENT**

In considering a preliminary injunction, the Court reviews whether a plaintiff is "likely to succeed on the merits, . . . likely to suffer irreparable harm in the absence of preliminary relief,' whether 'the balance of equities tips in [its favor],' and whether 'an injunction is in the public interest.'" *Angelotti Chiropractic, Inc. v. Baker*, 791 F.3d 1075, 1081 (9th Cir. 2015) (quoting *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011)). "Serious questions going to the merits and hardship balance that tips sharply towards plaintiff can also support issuance of a preliminary injunction, so long as there is a likelihood of irreparable injury and the injunction is in the public interest." *Baker,* 791 F.3d at 1081 (quoting *Cottrell*, 632 F.3d at 1132).

## I. **Cedar Park is likely to succeed on the merits of its Free Exercise claim primarily because SB 6219 is not neutral and generally applicable.**

Free exercise jurisprudence is largely governed by two Supreme Court cases: *Emp't Div. v. Smith* and *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah.* An "across-the-board criminal prohibition" on possession of the hallucinogenic drug peyote was upheld in *Smith* because it was neutral and generally applicable. 494 U.S. at 879, 884. Three years later the Court struck down a targeted ordinance prohibiting the killing of animals for religious reasons, but allowing it in almost all other circumstances, including hunting and slaughterhouses. *Lukumi*, 508 U.S. at 543-44. Read together, these seminal cases and their progeny describe the outer limits of the constitutionality of government restrictions on religious liberty as well as the legal principles used

Plaintiff's Motion for Preliminary Injunction and
Memorandum in Support
3:19-cv-05181

7

ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, Arizona 85260
(480) 444-0020

1  to analyze all free exercise claims.

2      The most important of these principles is that laws targeting religion are only the baseline

3  of what the Free Exercise Clause of the First Amendment protects against. In other words, "[b]ad

4  motive may be one way to pursue a violation, but first and foremost, Smith-Lukumi is about

5  objectively unequal treatment of religion and analogous secular activities." Douglas Laycock,

6  *Theology Scholarships, the Pledge of Allegiance, and Religious Liberty: Avoiding the Extremes*

7  *but Missing the Liberty*, 118 HARV. L. REV. 155, 210 (2004). Laws burdening religiously-

8  motivated conduct are also subject to the highest level of scrutiny under the Free Exercise Clause

9  when they lack neutrality or general applicability. *Smith*, 494 U.S. at 879.

10     Cedar Park is likely to succeed on its Free Exercise Claim because SB 6219 is targeted at

11 religion, not neutral, and not generally applicable.

12   **A.    SB 6219 imposes an impermissible burden on Cedar Park's exercise of religion.**

13

14     Cedar Park believes that abortion ends a human life and therefore teaches that participation

15 in, facilitation of, or payment for abortion in any circumstance is a grave sin. This includes indirect

16 payments. VC at ¶ 29; Smith Decl. at ¶ 4. SB 6219's requirement that the Church pay for abortion

17 coverage violates Cedar Park's religious beliefs. The religious exemption in RCW § 48.43.065(3)

18 does not alleviate this burden. It authorizes the insurance carrier to increase Cedar Park's premiums

19 to cover the cost of abortions not expressly included in the plan. *See* Plaintiff's Opp. to MTD at 4-

20 8.

21     Accordingly, SB 6219 renders "unlawful the religious practice itself," by directly requiring

22 Cedar Park to provide insurance coverage for abortion under threat of criminal liability and jail

23 time. *See Braunfeld v. Brown*, 366 U.S. 599, 606 (1961). This is a prototypical substantial burden.[1]

24

25

26 _____

[1] To trigger Free Exercise protection, Cedar Park need only show that its religion is burdened, not that it is substantially
burdened. *Lukumi*, 508 U.S. at 531 (laws are subject to the Free Exercise Clause even if they only have "the incidental

27 effect of *burdening* a particular religious practice.") (emphasis added). Regardless, SB 6219 substantially burdens
Cedar Park Church's free exercise of religion.

Plaintiff's Motion for Preliminary Injunction and
Memorandum in Support
3:19-cv-05181

8

ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, Arizona 85260
(480) 444-0020

**B.**     **SB 6219 is neither neutral nor generally applicable.**

SB 6219's network of exemptions and the State's intent to require religious organizations to provide insurance coverage for abortion despite their deep religious objections to doing so, render SB 6219 neither neutral nor generally applicable. The statute fails this test because it:

(1) Provides **exemptions** for secular conduct, but not for similar religious conduct. *Fraternal Order of Police Newark Lodge No. 12 v. City of Newark*, 170 F.3d 359, 365 (1999) (Alito, J.);

(2) Is **gerrymandered** so that it singles out religious conduct for disfavored treatment. *Lukumi*, 508 U.S. at 532-40;

(3) Applies **differential treatment** among religions or types of religious organizations. *id.* at 536; and

(4) Was enacted with **discriminatory intent** or hostility toward religious conduct, *Masterpiece Cakeshop, Ltd. v. Colo. Civil Rights Comm'n*, 138 S. Ct. 1719, 1729-31 (2018).

**1.     SB 6219 provides secular exemptions that undermine Defendants' stated interest in providing women access to health benefits.**

SB 6219 is not generally applicable because it has a wide variety of exemptions—all of which significantly undermine the Defendants' stated interest in providing women with better access to health benefits. "[S]elective laws that fail to pursue legislative ends with equal vigor against both religious practice and analogous secular conduct are not governed by *Smith*; such underinclusive laws are subject to surpassingly strict scrutiny under the Free Exercise Clause and *Lukumi*." Richard F. Duncan, *Free Exercise is Dead, Long Live Free Exercise*, 3 U. Pa. J. Const. 850, 883 (2001).

Even a single exemption undermining a state's asserted interest eliminates general applicability. *Canyon Ferry Rd. Baptist Church v. Unsworth*, 556 F.3d 1021, 1035 (9th Cir. 2009) (Noonan, J., concurring) (stating that restrictions on church's speech on referendum issue were not neutral and generally applicable where there was an exception for newspapers); *Fraternal Order of Police*, 170 F.3d at 366 (striking down a prohibition on police officers growing beards because

Plaintiff's Motion for Preliminary Injunction and
Memorandum in Support
3:19-cv-05181

9

ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, Arizona 85260
(480) 444-0020

it allowed a medical exemption); *Midrash Sephardi, Inc. v. Town of Surfside,* 366 F.3d 1214, 1234–35 (11th Cir. 2004) (holding that a single exemption for clubs and lodges to zoning district limited to retail shopping "violate[d] the principles of neutrality and general applicability because private clubs and lodges endanger [the town's] interest in retail synergy as much or more than churches and synagogues").[2]

There are numerous exemptions here: Washington law exempts 13 different types of insurance plans from the definition of "health plans" including temporary plans, plans for the disabled, and student-only plans. RCW § 48.43.005(27).[3] SB 6219 also allows for an exemption if necessary to avoid violating federal conditions on state funding. VC Ex. A at § 3(5). And it exempts plans that do not provide comprehensive maternity care coverage. *Id.* at § 3(1).

All of these exemptions undermine Defendants' stated purpose of protecting women's access to benefits, especially for reproductive health. MTD at 19. If exempting religious organizations like Cedar Park from paying for abortion undercuts that interest, so does exempting colleges and universities that have health insurance policies for their students. The same is true for plans that do not cover maternity, may only exist for a year, solely cover people with disabilities, or that might jeopardize state funding.

Importantly, any independent secular reasons for exempting these plans are not considered in this analysis. "In determining whether a particular law is under inclusive, the relevant governmental purposes are those that justify the scheme of restrictions, not those that justify the exemptions or selective coverage." Duncan, 3 U. Pa. J. Const. L. at 869. For example, the City of Hialeah had the same independent, secular public health interest in regulating disposal of garbage from restaurants as it did in disposal of sacrificed animals. Yet the Court held the ordinance's

---

[2] Defendants argue in their motion to dismiss that one exemption does not affect general applicability, relying on *Stormans v. Wiesman,* 794 F.3d 1064 (9th Cir. 2015). MTD at 18. But here there are many exemptions and the language quoted by Defendants is from that court's individualized exemption analysis, which has no application to the categorical exemptions at issue in this case.

[3] The fact that these exemptions are contained in a related statute is irrelevant for the purposes of this analysis. *Lukumi,* 508 U.S. at 526, 537, 539, 544-45 (analyzing the entire body of Florida law on the treatment of animals in assessing general applicability).

Plaintiff's Motion for Preliminary Injunction and
Memorandum in Support
3:19-cv-05181

10

ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, Arizona 85260
(480) 444-0020

failure to restrict restaurant garbage the same way it did animal sacrifice rendered it underinclusive and therefore not generally applicable. *Lukumi*, 508 U.S. at 544-45. Otherwise, "the requirement to general applicability would be entirely vacuous" because "every law is generally applicable to whatever it applies to." Laycock, 118 HARV. L. REV. at 207.

The Ninth Circuit's holding in *Stormans* confirms this point. It focused on whether the categorical exemptions there undermined the government's stated purpose for the law at issue. 794 F.3d 1080. And for good reason. "[*C*]*ategories* of selection are of paramount concern when a law has the incidental effect of burdening religious practice." *Lukumi*, 508 U.S. at 542.

> [T]he Court's concern [with] the prospect of the government's deciding that secular motivations are more important than religious motivations . . . is only further implicated when the government does not merely create a mechanism for individualized exemptions, but instead, actually creates a categorical exemption for individuals with a secular objection but not for individuals with a religious objection.

*Fraternal Order of Police*, 170 F.3d at 365.

The same health interests Defendants use to justify SB 6219 are undermined by the categorical exemption of multiple other plans. There is no reason why the state is any less interested in the access to health care for women who are students or disabled, who only have access to plans for a limited amount of time, or who work for an employer that does not cover maternity. By failing to exempt religious plans like Cedar Park's, Defendants make the impermissible value judgment that secular reasons for not covering abortion are important enough to overcome the State's interest in promoting women's health, but religious reasons are not. *See Id. at* 366.

### 2.    SB 6219 is not neutral in its operation.

"Neutrality and general applicability are interrelated, and…failure to satisfy one requirement is a likely indication that the other has not been satisfied." *Lukumi*, 508 U.S. at 531. Justice Scalia, the author of *Smith*, went even further, asserting that neutrality and general applicability "are not only interrelated, but substantially overlap." *Id.* at 557 (Scalia, J.,

Plaintiff's Motion for Preliminary Injunction and
Memorandum in Support
3:19-cv-05181

11

ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, Arizona 85260
(480) 444-0020

1    concurring). SB 6219 is not neutral because it is gerrymandered to disfavor religious objectors, it

2    treats religious health care companies more favorably than churches like Cedar Park, and it targets

3    conscientious objectors like Cedar Park.

### a.    SB 6219 is impermissibly gerrymandered.

5         SB 6219's numerous exemptions eliminate general applicability and indicate it is not neutral.

6    An impermissible objective of suppressing religious belief is not only assessed facially, but also

7    from "the effect of a law in its real operation." *Lukumi,* 508 U.S. at 535. A law is impermissibly

8    gerrymandered against religious individuals like Cedar Park if it favors secular conduct, *id.* at 537,

9    or "proscribe[s] more religious conduct than is necessary to achieve [its] stated ends." *Id.* at 538.

10   SB 6219 suffers from both of these maladies.

11        By offering multiple secular exemptions, Washington has failed to pursue its proffered

12   objectives "with respect to analogous non-religious conduct," *See id.* at 546. The First Amendment

13   prevents Cedar Park and other similarly situated organizations from "being singled out for

14   discriminatory treatment" by Defendants' refusal to grant them an exemption that would have no

15   worse effects on the government's stated interest than those already approved. *Id.* at 538.

16   Defendants' obstinance in this regard "devalues [Cedar Park's] religious reasons" for objecting to

17   assisting in the destruction of embryonic life. *See id.* at 537. Providing secular exemptions "while

18   refusing religious exemptions is sufficiently suggestive of discriminatory intent so as to trigger

19   heightened scrutiny under *Smith* and *Lukumi*." *Fraternal Order of Police*, 170 F.3d at 365.

20        SB 6219 also broadly proscribes more conduct than is necessary to achieve its stated end of

21   furthering women's access to healthcare. *Lukumi*, 508 U.S. at 542 (holding that a law hindering

22   "much more religious conduct than is necessary in order to achieve the legitimate ends asserted in

23   [its] defense," is "not neutral"). Exempting Cedar Park would only affect the church's employees,

24   all of whom share the Church's beliefs about abortion. *See* VC ¶¶ 25–32. Employees specifically

25   agree to abide by Cedar Park's bylaws and constitution, including Cedar Park's "Position

26   Regarding Sanctity of Human Life" delineating the Church's beliefs against abortion. *Id*. at ¶ 25.

27   Forcing Cedar Park to provide abortion coverage that would not be used by its employees makes

Plaintiff's Motion for Preliminary Injunction and
Memorandum in Support
3:19-cv-05181

12

ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, Arizona 85260
(480) 444-0020

SB 6219 broader than necessary and further demonstrates it is impermissibly gerrymandered.

>   **b.**   **SB 6219 treats churches less favorably than other religious organizations.**

A second way to prove a law is not neutral is to show that it produces "differential treatment of two religions." *Lukumi*, 508 U.S. at 536. Differential treatment of types of religious organizations is enough. There is no need to show the government favors one creed over another. *Larson v. Valente*, 456 U.S. 228, 246 n.23 (1982) (striking law treating "well-established churches" more favorably than "churches which are new"); *Colo. Christian Univ. v. Weaver*, 534 F.3d 1245, 1258 (10th Cir. 2008) (striking law treating "sectarian" universities more favorably than "pervasively sectarian universities").

SB 6219 is codified at RCW § 48.43.072 and .073, which is part of the same statutory scheme as Washington's exemption for religious organizations in RCW § 48.43.065. But this exemption still requires Cedar Park to continue to indirectly pay for abortion pursuant to SB 6219 via increased premiums, while completely exempting health care religious organizations.

RCW § 48.43.065 exempts religious organizations like Cedar park subject to the following condition: "The provisions of this section shall not result in an enrollee being denied coverage of, and timely access to, any service or services excluded from their benefits package as a result of their employer's or another individual's exercise of the conscience clause in (a) of this subsection." RCW § 48.43.065(3)(b). In other words, if Cedar Park excludes abortion coverage from its employee benefit plan, its insurance carrier must still cover abortion for Cedar Park's employees. And subsection (4) provides that an insurance carrier cannot be forced to pay for that additional coverage and can charge Cedar Park for it. RCW § 48.43.065(3) and (4). Importantly, the Washington Attorney General postulated that the way to solve this conundrum is for the carrier to increase the employer's premium to cover abortion, but to characterize the increase as "an administrative, overhead, contingency, or other expense or allowance". AGO 2002 No. 5.[4] This

---

[4] Interpretation of "Conscientious Objection" Statute Allowing Employers to Refrain from Including Certain Items in the Employee Health Care Benefit Package (Aug. 8, 2002), *available at* https://www.atg.wa.gov/ago-opinions/interpretation-conscientious-objection-statute-allowing-employers-refrain-including.

Plaintiff's Motion for Preliminary Injunction and
Memorandum in Support
3:19-cv-05181

13

ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, Arizona 85260
(480) 444-0020

"solution" would not work for Cedar Park because the Church objects to facilitating abortion both directly and indirectly, even if it is characterized as an administrative expense. VC at ¶¶ 29, 46; Smith Decl. at ¶ 4.

There is no similar requirement for religious health care providers, carriers, or facilities, which are exempted from SB 6219 by RCW § 48.43.065(2)(a). The only condition placed on that exemption says, "The provisions of this section are *not intended* to result in an enrollee being denied timely access to any service included in the basic health plan services." RCW § 48.43.065(2)(b) (emphasis added). That condition is satisfied when the *insurance carrier* notifies enrollees of the lack of coverage and provides them with prompt written information about how they might access these services. *Id.*

Health care providers, religiously sponsored health carriers, and health care facilities that have a conscientious or moral objection to providing insurance coverage for abortion are completely exempt without being subject to additional fees. Cedar Park is not, making SB 6219 not neutral. *Masterpiece Cakeshop, Ltd. v. Colo. Civil Rights Comm'n*, 138 S. Ct. 1719, 1731 (2018) ("The Free Exercise Clause bars even subtle departures from neutrality on matters of religion.") (cleaned up).

### c.    SB 6219 intentionally discriminates against religious organizations like Cedar Park.

Discriminatory intent is not necessary to show lack of neutrality, but it can be an indicator of an anti-religious objective. "[U]pon even slight suspicion that proposals for state intervention stem from animosity to religion or distrust of its practices, all officials must pause to remember their own high duty to the Constitution and the rights it secures." *Lukumi*, 508 U.S. at 547. "Factors relevant to the assessment of governmental neutrality include the historical background of the decision under challenge, the specific series of events leading to the enactment or official policy in question, and the legislative or administrative history, including contemporaneous statements made by members of the decisionmaking body." *Masterpiece*, 138 S. Ct. at 1731 (cleaned up).

Washington legislators specifically requested that SB 6219 be amended to add exemptions

Plaintiff's Motion for Preliminary Injunction and
Memorandum in Support
3:19-cv-05181                                        14                    ALLIANCE DEFENDING FREEDOM
                                                                               15100 N. 90th Street
                                                                              Scottsdale, Arizona 85260
                                                                                  (480) 444-0020

for religious organization such as Cedar Park, but those requests were rejected.[5] Moreover, Washington State Senator Steve Hobbs, SB 6219's sponsor, stated that religious organizations can sue if they do not want to provide insurance coverage for abortion. Matt Markovich, *Catholic Bishops of Wash. Ask Gov. Inslee to Veto Abortion Insurance Bill*, KOMO News, Mar. 5, 2018, https://bit.ly/2Uuu5Nf (last visited Apr. 11, 2019). Responding to religious organizations' concern that SB 6219 would compel them to pay for and facilitate abortions, Senator Hobbs quipped: "Health care is about the individual, not about [religious organizations]." *Id.*

These contemporaneous statements from the bill's sponsor, combined with the historical background of the statute, indicate that SB 6219 was enacted to target organizations like Cedar Park that have religious views requiring it to respect life. The law is not neutral. And its lack of neutrality along with the numerous exemptions outlined above make SB 6219 neither neutral nor generally applicable. It is therefore subject to strict scrutiny.

**C.    SB 6219 does not survive strict scrutiny.**

Under strict scrutiny, "a law restrictive of religious practice must advance interests of the highest order and must be narrowly tailored in pursuit of those interests." *Lukumi*, 508 U.S. at 546 (cleaned up). In applying strict scrutiny, courts "look[ ] beyond broadly formulated interests" and instead "scrutinize [ ] the asserted harm of granting specific exemptions to particular religious claimants." *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 431 (2006). For a government interest to be compelling, it must combat "the gravest abuses, endangering paramount interest[s]." *Sherbert*, 374 U.S. at 406 (cleaned up).

**1.    SB 6219 does not serve a rational, much less compelling, government interest.**

SB 6219's various exemptions demonstrate it "cannot be regarded as protecting an interest of the highest order" because the existing exemptions permit "appreciable damage to that

---

[5] *See* Proposed Amendment to Substitute Senate Bill 6219 by Senator O'Ban, *available at* https://bit.ly/2UtTAye (last accessed Apr. 5, 2019); Proposed Amendment to Substitute Senate Bill 6219 by Senator Shea, *available at* https://bit.ly/2G4krqE (last accessed Apr. 5, 2019). Both of these proposed amendments would have allowed Cedar Park and other similarly-situated employers to refuse to comply with the provisions of SB 6219 requiring abortion coverage if they object to compliance on the basis of conscience or religion.

Plaintiff's Motion for Preliminary Injunction and
Memorandum in Support
3:19-cv-05181

15

ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, Arizona 85260
(480) 444-0020

supposedly vital interest." *Lukumi*, 508 U.S. at 547 (cleaned up). Stated differently, an interest is not compelling when the government "fails to enact feasible measures to restrict other conduct producing substantial harm or alleged harm of the same sort." *Id.* at 546–47. The underinclusiveness of SB 6219 demonstrated above "is alone enough to defeat" the asserted state interest. *Brown v. Entm't Merch. Ass'n*, 564 U.S. 786, 802 (2011); *see also Lukumi*, 508 U.S. at 546–47.

In *O Centro*, the government's ban on hallucinogenic tea was not subject to an excemption. But the existence of a *single* exemption for peyote in another part of the controlled substances law indicated no compelling interest justified banning the tea. 546 U.S. 418. The exemptions to SB 6219 are far more vast and varied than in *O Centro*, so the government must show that "granting the requested religious accommodations would seriously compromise its ability to administer the program." *Id.* at 435. Washington cannot do so because it has "seriously compromised" SB 6219's universality through multiple exemptions.

Moreover, the only people affected by an exemption for Cedar Park would be its employees, all of whom share the Church's beliefs about abortion. *See* VC ¶¶ 25–32. Forcing Cedar Park to pay for abortion coverage for people who will not use it defies common sense. The government does not have a *rational*—much less compelling—interest in forcing a pro-life church to provide abortion coverage for its pro-life employees.

### 2. SB 6219 is not narrowly tailored, nor is it the least restrictive means of accomplishing Washington's stated interest.

"A statute is narrowly tailored if it targets and eliminates no more than the exact source of the evil it seeks to remedy" *Frisby v. Schultz*, 487 U.S. 474, 485 (1988) (cleaned up). Under strict scrutiny, the government must also show that SB 6219 "is the least restrictive means of achieving" its interests. *Thomas v. Review Bd. of the Ind. Emp't Sec. Div.,* 450 U.S. 707, 718 (1981). If means less burdensome on religious freedom exist, the government "must use [them]." *United States v. Playboy Entm't Grp., Inc.*, 529 U.S. 803, 813 (2000).

Plaintiff's Motion for Preliminary Injunction and
Memorandum in Support
3:19-cv-05181

16

ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, Arizona 85260
(480) 444-0020

Washington has multiple ways to accomplish its alleged interests without compelling churches to violate their sincerely held religious beliefs. First and foremost, it could provide religious organizations an exemption from SB 6219 that does not require them to facilitate abortion by paying correspondingly higher premiums. This would allow the government to enforce the law against those who do not object on the basis of religion, while respecting the religious beliefs of churches like Cedar Park. The government has already demonstrated it can make such an exemption.  Religious health care providers, health carriers, and health care facilities are excused without having to pay anything to subsidize the conduct that violates their convictions. RCW § 48.43.065(2)(a); *accord Burwell v. Hobby Lobby,* 573 U.S. 682, 730–31  (2014) (noting that the government had demonstrated its ability to provide an exemption to the Petitioners because it had granted such an exemption to a different class of religious objectors). Moreover, Washington law completely exempts 13 different types of health care plans by excluding them from the definition of "health plan". RCW § 48.43.005(27). This provision should be extended to Cedar Park and other similarly situated religious employers. Finally, the government itself could provide abortion coverage directly to employees whose health plans exclude coverage of abortion.

All these options are "workable," *Grutter v. Bollinger*, 539 U.S. 306, 339 (2003), and much "less restrictive" of religious freedom, *Playboy*, 529 U.S. at 824.  The abortion mandate in SB 6219 is not narrowly tailored because other, less restrictive, means are available for the State to achieve its stated interest.

### D.     SB 6219 violates the Free Exercise Clause because it requires Cedar Park to violate its long-established historical religious beliefs regarding abortion.

SB 6219 further violates the Free Exercise Clause because it requires Cedar Park to violate long-established historical religious practices involving the sanctity of human life and opposition to abortion. While satisfying the *Smith* test is a necessary threshold to surviving scrutiny under the Free Exercise Clause, it is not always sufficient. The Supreme Court has expressly rejected the idea "that any application of a valid and neutral law of general applicability is necessarily constitutional under the Free Exercise Clause." *Trinity Lutheran Church of Columbia, Inc. v.*

Plaintiff's Motion for Preliminary Injunction and
Memorandum in Support
3:19-cv-05181

17

ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, Arizona 85260
(480) 444-0020

*Comer*, 137 S. Ct. 2012, 2021 n.2 (2017). And there is "no merit" to the assertion that *Smith* neutrality is sufficient to exclude long-established historical religious practices from Free Exercise Clause protection. *Hosanna-Tabor Evangelical Lutheran Church & Sch. v. EEOC*, 565 U.S. 171, 190 (2012) (unanimously barring application of employment discrimination laws against teacher in religious school on free exercise grounds, without applying the *Smith* test).

In *Hosanna-Tabor*, the Court explained that "*Smith* involved government regulation of only outward physical acts," whereas the case before it "concern[ed] government interference with an internal church decision that affects the faith and mission of the church itself." *Id*. at 190. "[A] church's selection of its ministers," in other words, "is unlike an individual's ingestion of peyote." *Id*. Making the same point, the Court recently noted that—notwithstanding what might be required of *secular* officiants through "neutral and generally applicable" laws—it would be unconstitutional to compel objecting clergy "to perform [a same-sex wedding] ceremony." *Masterpiece Cakeshop*, 138 S. Ct. at 1727.

The Free Exercise Clause does not permit government to require churches to violate their long-established historical practice of conforming personnel policies to religious teaching. Defendants have done just that by coercing Cedar Park to participate in or facilitate abortion through their employer-sponsored health care plan. This is an additional independent reason why Cedar Park is likely to succeed on its Free Exercise claim.

### E.    SB 6219 violates Cedar Park's hybrid Free Exercise rights because the law violates additional fundamental rights.

SB 6219 is also subject to strict scrutiny under the Ninth Circuit's recognition of the "hybrid" effect of the free exercise of religion and equal protection interests at issue here. Under *Smith*, "strict scrutiny [is] imposed in 'hybrid situation[s]' in which a law 'involve[s] not the Free Exercise Clause alone, but the Free Exercise Clause in conjunction with other constitutional protections," exempting such "hybrid rights" from *Smith's* general "rational basis test." *Miller*, 176 F.3d at 1207 (citing *Smith*, 494 U.S. at 881–82). To establish a hybrid-right claim, a "free exercise plaintiff must make out a colorable claim that a companion right has been violated."

Plaintiff's Motion for Preliminary Injunction and
Memorandum in Support
3:19-cv-05181

18

ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, Arizona 85260
(480) 444-0020

*Miller*, 176 F.3d at 1207. As discussed in Section III, below, SB 6219 violates the Equal Protection Clause, and is therefore subject to strict scrutiny under the hybrid rights doctrine.

### F.     *Smith* should be overruled.

In *Kennedy v. Bremerton School District*, U.S. Supreme Court No. 18-12, four Justices concurring in the denial of a petition for certiorari opined that *Smith* "drastically cut back on the protection provided by the Free Exercise Clause," implicitly suggesting that a party in a future case should ask the Court to revisit that decision. 139 S. Ct. 634, 637 (0019) (Alito, J., joined by Thomas, J., Gorsuch, J., and Kavanaugh, J.) Cedar Park acknowledges that this Court lacks the authority to overrule *Smith*, but Cedar Park preserves that argument for a future appeal, if necessary. *Smith* is contrary to the original understanding and logic of the First Amendment. *See generally* Michael W. McConnell, *Free Exercise Revisionism and the Smith Decision*, 57 U. CHI. L. REV. 1109 (1990). It should be overruled.

## II.     Cedar Park is likely to succeed on the merits of its church autonomy claim.

SB 6219 impermissibly interferes with Cedar Park's internal operating procedures in violation of the Free Exercise and Establishment Clauses of the First Amendment. History teaches—and our Constitution recognizes—that religious freedom demands a government that does not interfere with the internal affairs of religious institutions. *Watson v. Jones*, 80 U.S. 679, 730 (1871). Indeed, in *Smith*, the Supreme Court acknowledged the continuing validity of earlier cases protecting a church's right to institutional autonomy—specifically, *Serbian E. Orthodox Diocese v. Milivojevich*, 426 U.S. 696 (1976); *Presbyterian Church v. Mary Elizabeth Blue Hull Mem'l Presbyterian Church*, 393 U.S. 440 (1969); and *Kedroff v. St. Nicholas Cathedral*, 344 U.S. 94 (1952). *See Smith*, 494 U.S. at 877.

Those cases hold that First Amendment protection extends not only to matters of faith, but also to "church administration," *Serbian E. Orthodox Diocese*, 426 U.S. at 710, "internal organization," *id*. at 713, and "the operation of … churches," *Kedroff*, 344 U.S. at 107. In other words, church autonomy has a carefully defined scope that gives religious organizations and denominations independence from secular control. Churches have the power to decide for

Plaintiff's Motion for Preliminary Injunction and
Memorandum in Support
3:19-cv-05181

19

ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, Arizona 85260
(480) 444-0020

themselves—free of state interference—matters of church governance as well as those of faith and doctrine. *Kedroff*, 344 U.S. at 116.

SB 6219 necessarily interferes with Cedar Park's internal administration and operations. Washington orders the Church to provide specific employee benefits—insurance coverage for abortion—directly at odds with Cedar Park's religious beliefs. SB 6219 therefore violates the church autonomy doctrine and is unconstitutional.

**III.    Cedar Park is likely to succeed on the merits of its Equal Protection claim.**

SB 6219 treats similarly situated organizations differently in violation of the Equal Protection Clause of the Fourteenth Amendment. "The Equal Protection Clause directs that all persons similarly circumstanced shall be treated alike." *Plyler v. Doe*, 457 U.S. 202, 216 (1982) (cleaned up). Distinctions among similarly-situated groups that affect fundamental rights "are given the most exacting scrutiny," *Clark v. Jeter*, 486 U.S. 456, 461 (1988), and discriminatory intent is presumed, *see Plyler,* 457 U.S. at 216–17 (1982) ("[W]e have treated as presumptively invidious those classifications that … impinge upon the exercise of a 'fundamental right.'").

Washington state law exempts religious health care organizations from paying for objectionable procedures like abortion, *and* does not condition this exemption on subjecting those organizations to increased premiums to facilitate those procedures. RCW § 48.43.065(2)(a)(b). Exempted health care organizations are treated more favorably than religious organizations like Cedar Park whose exemption is conditioned upon their being subject to a premium increase to pay for the very items they object to. RCW § 48.43.065 (3) and (4). *See supra* Section I(B)(2)(b).

Washington state law also exempts 13 different types of insurance plans from the definition of "health plans" to which SB 6219 applies, RCW § 48.43.005(27). Some of these are comprehensive health care plans similar to Cedar Park's. For example, RCW § 48.43.005(7)(l) excludes from the definition of "health plan" "short-term limited purpose or duration" and "student only" health care plans approved by the insurance commissioner following a written request for exclusion. So schools providing comprehensive health insurance to their students are not required to comply with SB 6219. There is no constitutionally relevant difference between a church

Plaintiff's Motion for Preliminary Injunction and
Memorandum in Support
3:19-cv-05181

20

ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, Arizona 85260
(480) 444-0020

employee benefit plan excluding abortion and a student benefit plan excluding abortion. The same is true for a plan that excludes maternity coverage or one that is limited in duration. Washington cannot treat these organizations differently absent a showing that SB 6219 meets strict scrutiny.

Because Washington treats similarly-situated organizations dissimilarly based on a fundamental right (religious freedom), it is subject to strict scrutiny, which it cannot meet. *See* Section I.C., above. SB 6219 therefore violates the Equal Protection Clause.

## IV.   Cedar Park is likely to succeed on the merits of its Establishment Clause claim.

The Establishment Clause of the First Amendment prohibits the government from disapproving of or showing hostility toward a particular religion or religion in general. SB 6219 discriminates between religions organizations like Cedar Park and religious health care organizations. Discrimination based on religious status is especially odious because a "proper respect for both the Free Exercise and the Establishment Clauses compels the State to pursue a course of 'neutrality' toward religion." *Comm. for Pub. Educ. & Religious Liberty v. Nyquist*, 413 U.S. 756, 792–793 (1973).

Defendants enacted SB 6219 with full knowledge that many religious organizations object strenuously to participating in, paying for, facilitating, or otherwise supporting abortion. Yet no exemption is available to religious employers who, like Cedar Park, believe that paying for abortion—directly or indirectly—is sinful. Indeed, SB 6219 was designed to make it impossible for the Church and other similarly-situated religious employers to comply with their religious beliefs. As discussed above, in Section I.B, SB 6219 is not neutral toward religion because it contains a vast scheme of exemptions, treats religious organizations like Cedar Park differently, and was motivated by the desire to suppress religious conduct. SB 6219 therefore violates the Establishment Clause.

## V.   Cedar Park has fulfilled the remaining preliminary injunction factors.

Without an injunction, Pastor Smith, as well as members of Cedar Park's board risk a criminal conviction resulting in jail time of almost a year (364 days), and fines. RCW § 48.01.080; RCW § 9A.08.030(3) ("A person is criminally liable for conduct constituting an offense which he

Plaintiff's Motion for Preliminary Injunction and
Memorandum in Support
3:19-cv-05181

21

ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, Arizona 85260
(480) 444-0020

or she performs or causes to be performed in the name of or on behalf of a corporation to the same extent as if such conduct were performed in his or her own name or behalf."). The irreparable harm to the ministry and reputation of Cedar Park resulting from its leaders being arrested and jailed is immeasurable.

In addition, loss of constitutional rights for even minimal periods of time is presumed to be irreparable injury. *Elrod v. Burns*, 427 U.S. 347, 373 (1976). "[T]he fact that a case raises serious First Amendment questions compels a finding that there exists 'the potential for irreparable injury, or that at the very least the balance of hardships tips sharply in [the movant's] favor.'" *Sammartano v. First Jud. Dist. Ct*., 303 F.3d 959, 973 (9th Cir. 2002) (quoting *Viacom Int'l, Inc. v. FCC*, 828 F. Supp. 741, 744 (N.D. Cal. 1993)). "When an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary." *Opulent Life Church v. City of Holly Springs, Miss*., 697 F.3d 279, 295 (5th Cir. 2012) (citing 11A FED. PRAC. AND PROC. CIV. § 2948.1 (2d ed. 1995)) (cleaned up).

There should be no dispute about the balance of equities. A preliminary injunction will stop Washington's infringement of Cedar Park's constitutional rights during the pendency of this litigation. Conversely, such an injunction will not harm Washington at all. It will merely prevent the State from imposing abortion coverage for Cedar Park employees—all of whom believe abortion is murder. And if the State finds it necessary to provide abortion coverage for Cedar Park's pro-life employees, it may easily do so by other means.

Injunctive relief is in the public interest. There is no public "interest in the enforcement of an unconstitutional law." *ACLU v. Ashcroft*, 322 F.3d 240, 251 n.11 (3d Cir. 2003) (cleaned up). And accommodating Cedar Park does not undermine Washington's application of the abortion-coverage mandate to the many other employers in the State who do not share the Church's religious objections.

Finally, Cedar Park notes that in the Ninth Circuit, when the balance of hardships tips sharply in the plaintiff's favor, as here, the plaintiff need not show a likelihood of success, only "serious questions going to the merits." *Cottrell*, 632 F.3d at 1134–35 (cleaned up). The Church's

Plaintiff's Motion for Preliminary Injunction and
Memorandum in Support
3:19-cv-05181

22

ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, Arizona 85260
(480) 444-0020

Verified Complaint raises numerous serious constitutional questions about Washington intentionally forcing churches like Cedar Park to provide abortion coverage in violation of religious beliefs regarding the sanctity of life. And this Court should not permit SB 6219 to irreparably harm Cedar Park while such serious questions remain unanswered.

## CONCLUSION

The government should never force a church to pay for abortions, particularly a church that dedicates its ministry to protecting and celebrating life from conception. Yet Washington has gone out of its way to bully Cedar Park and other churches at the behest of the powerful abortion lobby. The Supreme Court has consistently rejected such hostility toward, and targeting of, people of faith. Accordingly, Cedar Park respectfully requests that the Court preliminarily enjoin SB 6219's enforcement, as-applied to Cedar Park and on its face.

Respectfully submitted this 13th day of May 2019,

By: s/Kristen K. Waggoner
Kristen K. Waggoner (WSBA #27790)
Kevin H. Theriot (AZ Bar #030446)*
Elissa M. Graves (AZ Bar #030670)*
ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, Arizona 85260
Telephone: (480) 444-0020
Facsimile:  (480) 444-0025
Email: kwaggoner@adflegal.org
          ktheriot@adflegal.org
          egraves@adflegal.org

David A. Cortman (GA Bar #188810)*
Alliance Defending Freedom
1000 Hurricane Shoals Rd. NE
Suite D-1100
Lawrenceville, GA 30040
Telephone: (770) 339-0774
Email: dcortman@adflegal.org

*Attorneys for Plaintiff Cedar Park Assembly of God of Kirkland, Washington*

* Admitted *pro hac vice*

1

## **CERTIFICATE OF SERVICE**

2      I hereby certify that on May 13, 2019, I electronically filed the foregoing document with

3  the Clerk of Court using the CM/ECF system, which will send notification of such filing to the

4  following:

5                                      Jeffrey Todd Sprung
                                        Paul M. Crisalli
6                              ATTORNEY GENERAL'S OFFICE
                                        800 5th Ave
7                                        Ste 2000
                                     Seattle, WA 98104
8

9                                       Joyce A Roper
                               ATTORNEY GENERAL'S OFFICE
10                                     PO Box 40109
                                    Olympia, WA 98504
11

12                                     Marta U DeLeon
                               ATTORNEY GENERAL'S OFFICE
13                                     PO Box 40100
                                    Olympia, WA 98504
14                                  *Counsel for Defendants*

15

16      DATED: May 13, 2019            s/Kristen K. Waggoner
                                        Kristen K. Waggoner (WSBA #27790)
17                                      Kevin H. Theriot (AZ Bar #030446)*
                                        Elissa M. Graves (AZ Bar #030670)*
18                                      ALLIANCE DEFENDING FREEDOM
                                        15100 N. 90th Street
19                                      Scottsdale, Arizona 85260
                                        Telephone: (480) 444-0020
20                                      Facsimile:  (480) 444-0025
                                        Email: kwaggoner@adflegal.org
21                                             ktheriot@adflegal.org
                                               egraves@adflegal.org
22

23

24                                      David A. Cortman (GA Bar #188810)*
                                        ALLIANCE DEFENDING FREEDOM
25                                      1000 Hurricane Shoals Rd. NE
                                        Suite D-1100
26                                      Lawrenceville, GA 30040
                                        Telephone: (770) 339-0774
27                                      Email: dcortman@adflegal.org

*Attorneys for Plaintiff Cedar Park Assembly of God of Kirkland, Washington*

\* Admitted *pro hac vice*

Plaintiff's Motion for Preliminary Injunction and
Memorandum in Support
3:19-cv-05181

25

ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, Arizona 85260
(480) 444-0020