The Honorable Benjamin H. Settle

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON
### AT TACOMA

CEDAR PARK ASSEMBLY OF GOD OF KIRKLAND, WASHINGTON,

Plaintiff,

v.

MYRON "MIKE" KREIDLER, et al.,

Defendants.

NO. 3:19-cv-05181-BHS

DEFENDANTS' RESPONSE TO MOTION FOR PRELIMINARY INJUNCTION

NOTED: JUNE 21, 2019

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................. 2

II.   RELIEF REQUESTED ........................................................................................ 2

III.  FACTS ................................................................................................................ 2

      A.   Washington Law Allows Organizations to Refuse to Purchase Health Care
           Coverage to Which They Have a Moral or Religious Objection............................ 2

      B.   Washington Enacted a Law Requiring Health Plans to Cover Contraception and
           to Include Abortion Care if They Include Maternity Care Without Modifying
           RCW 48.43.065 ................................................................................................. 4

      C.   Cedar Park Challenges SSB 6219 But Never Mentions That It Can Avoid
           Purchasing a Plan That Includes Coverage for Services That Offend Its
           Religious Beliefs ............................................................................................... 6

IV.   ARGUMENT ....................................................................................................... 8

      A.   Legal Standard .................................................................................................. 8

      B.   Cedar Park Is Unlikely to Succeed on the Merits ............................................. 9

           1.   Cedar Park lacks standing because it suffered no injury in fact and its
                claims are not ripe ....................................................................................... 9

                a.   There is no injury in fact ........................................................................ 9

                b.   The claims are not ripe ......................................................................... 10

           2.   Even if there were standing, Cedar Park's claims lack merit........................... 11

                a.   The free exercise clause claim fails ........................................................ 11

                b.   The religious autonomy claim fails ........................................................ 16

                c.   The equal protection claim fails............................................................. 17

                d.   The establishment claim fails ............................................................... 18

      C.   Cedar Park Fails to Present Any Evidence That It Will Suffer an Irreparable
           Injury Absent a Preliminary Injunction ............................................................ 18

      D.   Balancing the Equities and the Public Interest Tip in Favor of Denying the
           Preliminary Injunction .................................................................................... 19

V.    CONCLUSION ................................................................................................... 21

# TABLE OF AUTHORITIES

## Cases

*Am. Family Ass'n, Inc. v. City & Cty. of San Francisco*, 277 F.3d 1114 (9th Cir. 2002) ......... 18

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .................................................................................. 11

*Bassett v. ABM Parking Servs., Inc.*, 883 F.3d 776 (9th Cir. 2018) ........................................ 9

*Biel v. St. James Sch.*, 911 F.3d 603 (9th Cir. 2018) ............................................................... 16

*Bollard v. Cal. Province of Society of Jesus*, 211 F.3d 1331 (9th Cir. 2000) ........................... 16

*Caribbean Marine Servs. Co., Inc. v. Baldrige*, 844 F.2d 668 (9th Cir. 1988) ....................... 18

*Catholic League for Religious & Civil Rights v. City & Cty. of San Francisco*, 624 F.3d 1043 (9th Cir. 2010) ........................................................................................................ 18

*Church of Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520 (1993) ........................ 11

*Disney Enters., Inc. v. VidAngel, Inc.*, 869 F.3d 848, (9th Cir. 2017) ................................... 8, 9

*Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073 (9th Cir. 2014) ............................................ 9

*Emp't Div., Dep't of Human Res. of Ore. v. Smith*, 494 U.S. 872 (1990) ............................... 11

*Five Corners Family Farmers v. State*, 268 P.3d 892 (Wash. 2011) ........................................ 3

*Friends of the Earth, Inc. v. Laidlaw Envtl. Sys. (TOC), Inc.*, 528 U.S. 167 (2000) ................. 9

*Jones v. Wolf*, 443 U.S. 595 (1979) ....................................................................................... 16

*Stormans, Inc. v. Selecky* (*Stormans I*), 586 F.3d 1109 (9th Cir. 2009) ........................... 10, 11

*Stormans v. Wiesman* (*Stormans II*), 794 F.3d 1064 (9th Cir. 2015) ......................... 11, 15, 17

*Thornton v. City of St. Helens*, 425 F.3d 1158 (9th Cir. 2005) .............................................. 17

*Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7 (2008) .................................................. 8, 18

## State Statutes

2018 Wash. Sess. Laws, ch. 119 § 1 ........................................................................... 5, 12, 15

RCW 48.43 ........................................................................................................................... 12

RCW 48.43.005 ................................................................................................................. 2 12

RCW 48.43.007 ................................................................................................................... 13

RCW 48.43.012 ................................................................................................................... 13

DEFENDANTS' RESPONSE TO MOTION
FOR PRELIMINARY INJUNCTION
NO. 3:19-cv-05181

ii

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue. Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

RCW 48.43.015 ............................................................................................................. 13

RCW 48.43.065 ..................................................................................................... passim

RCW 48.43.072 ........................................................................................................ 4, 5

RCW 48.43.073 .................................................................................................. 4, 5, 13

Senate Bill Report, SSB 6219 .................................................................................. 5, 6

Substitute Senate Bill 6219 ................................................................................... passim

## State Regulations

WAC 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 ....................................................................................................... 3

## Opinions of the Washington State Attorney General

Wash. Op. Att'y Gen. 5 (2002) ................................................................................... 3

Wash. Op. Att'y Gen. 10 (2006) .......................................................................... 4, 14

## Other Authorities

Comm. on Adolescent Health Care Long-Acting Reversible Contraception Working Grp, Am. Coll. of Obstetricians & Gynecologists, "Committee opinion no. 539: adolescents and long-acting reversible contraception: implants and intrauterine devices," Obstetrics & Gynecology Vol. 120, issue 4, at 983-88 (Oct. 2012). ...................................... 7

Office of Ins. Comm'r, "Health Plan Coverage of Reprod. Healthcare & Contraception Rulemaking," Sept. 20, 2018 ..................................................................................... 6

Wash. House Health Care & Wellness Comm., Public Hrg. Feb. 7, 2018 ................................. 6

Wash. Senate Health & Long-Term Care Comm., Public Hrg. June 10, 2019 ......................... 6

DEFENDANTS' RESPONSE TO MOTION
FOR PRELIMINARY INJUNCTION
NO. 3:19-cv-05181

iii

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue. Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

# I.  INTRODUCTION

The Court should deny Cedar Park's Motion for Preliminary Injunction. Cedar Park repeats the same flawed premise articulated in its complaint and response to motion to dismiss—that it will be forced to purchase coverage for health services to which it objects. But Wash. Rev. Code 48.43.065(3) clearly allows employers to refuse to purchase coverage for services to which they object. As a result, Cedar Park is not likely to succeed on the merits of its complaint because it lacks standing and because its claims all rely on that false premise. There is no irreparable injury because the law already allows Cedar Park the relief it seeks. And balancing the equities shows that a preliminary injunction would cause confusion and affect the services guaranteed to enrollees.

# II.  RELIEF REQUESTED

The Court should deny Cedar Park's motion for preliminary injunction.

# III.  FACTS

**A.  Washington Law Allows Organizations to Refuse to Purchase Health Care Coverage to Which They Have a Moral or Religious Objection**

Since at least 1995, Washington carefully crafted a balance in health insurance so that individuals and organizations may exercise their right to religious beliefs and conscience while ensuring that enrollees receive the full range of services covered under their health plans.[1] RCW 48.43.065. The Legislature "recognizes that every individual possesses a fundamental right to exercise their religious beliefs and conscience" and "that in developing public policy, conflicting religious and moral beliefs must be respected." RCW 48.43.065(1).

To strike that balance, the Legislature provided that no one with a religious belief opposed to a particular health service had to purchase coverage for that service:

> No individual or organization with a religious or moral tenet opposed to a specific service may be required to purchase coverage for that service or services if they object to doing so for reason of conscience or religion.

RCW 48.43.065(3)(a). The Legislature also ensured that enrollees could not be denied

---

[1] Health plans can cover not just the enrollee, but also their spouse and dependent children. RCW 48.43.005(12); 48.43.065(5).

DEFENDANTS' RESPONSE TO MOTION
FOR PRELIMINARY INJUNCTION
NO. 3:19-cv-05181

1

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue. Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

coverage or access to coverage as a result of someone else's refusal to purchase coverage for such services because of conscience or religious belief:

> The provisions of this section shall not result in an enrollee being denied coverage of, and timely access to, any service or services excluded from their benefits package as a result of their employer's or another individuals exercise of the conscience clause in (a) of this subsection.

RCW 48.43.065(3)(b). And the Legislature tasked the Insurance Commissioner to adopt rules establishing a process where health carriers can offer the required basic health plan services to individuals and organizations to implement RCW 48.43.065. RCW 48.43.065(3)(c). Consistent with that statute, the Insurance Commissioner adopted a rule that protects the conscience rights of health insurance purchasers. WAC 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.[2]

The Attorney General has issued formal opinions analyzing the conscience objection statute.[3] In a 2002 opinion, the Attorney General addressed (1) whether a carrier can charge enrollees for the costs caused when an employer objects to coverage of services because of a conscience objection; and (2) whether a carrier can include the cost of objectionable services in the actuarial analysis of the carrier's rates (such as an administrative, overhead, contingency, or other expense or allowance) where employers do not directly purchase those services. Wash. Op. Att'y Gen. 5 (2002). The opinion concludes that it would be an unfair practice for a carrier to provide a generally comprehensive prescription drug plan that excludes prescription

---

[2] WAC 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 states:

(1) All carriers required pursuant to law to offer and file with the commissioner a plan providing benefits identical to the basic health plan services (the model plan) shall file for such plan a full description of the process it will use to recognize an organization or individual's exercise of conscience based on a religious belief or conscientious objection to the purchase of coverage for a specific service. This process may not affect a nonobjecting enrollee's access to coverage for those services.

(2) A religiously sponsored carrier who elects, for reasons of religious belief, not to participate in the provision of certain services otherwise included in the model plan, shall file for such plan a description of the process by which enrollees will have timely access to all services in the model plan.

(3) The commissioner will not disapprove processes that meet the following criteria:
    (a)    Enrollee access to all basic health plan services is not impaired in any way;
    (b)    The process meets notification requirements specified in RCW 48.43.065 and
    (c)    The process relies on sound actuarial principles to distribute risk.

[3] Formal attorney general opinions "are generally 'entitled to great weight'" in Washington courts. *Five Corners Family Farmers v. State,* 268 P.3d 892, 899 (Wash. 2011) (quoting *Seattle Bldg. & Constr. Trades Council v. Apprenticeship &. Training Council*, 920 P.2d 581, 588 (Wash. 1996)).

DEFENDANTS' RESPONSE TO MOTION
FOR PRELIMINARY INJUNCTION
NO. 3:19-cv-05181

2

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue. Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

contraceptives. *Id.* The opinion made clear, though, that it was not addressing the ways carriers could absorb the costs without having objecting employers purchase the coverage. *Id.*

On the second question, the opinion explains that RCW 48.43.065(4) "reflect[s] the overall principle that the provision of these services should be in accordance with recognized insurance principles." *Id.* Subsection four does not impose "any additional restrictions over and above the insurance principles that govern premiums and rates." *Id.* A carrier can include the costs of the objected service as a component in the actuarial analysis of the carrier's rates, so long as it does not require the employer to directly purchase the objectionable health service, the enrollee is not denied coverage or access to the service, the enrollee does not have to make additional payments, and carriers can provide the service with appropriate payment of premium or fee. *Id.* The opinion would "not attempt to analyze the details of particular concepts or proposals." *Id.*

A 2006 AGO opinion provided additional clarification that the 2002 opinion addressed how carriers dealt with the conscience objection. Wash. Op. Att'y Gen. 10 (2006). The 2006 opinion explained that the 2002 opinion "concluded that it would be an unfair practice for the *carrier to charge the employers to recoup the additional cost of including contraceptive coverage.*" *Id.* (emphasis in original). The 2002 opinion "did not directly conclude that the employers would violate the law by declining to pay for contraceptives for their employees." *Id.* And the 2006 opinion reiterated that there may be other lawful ways for employers to exercise their conscience clause rights, but an AGO opinion "is not an appropriate vehicle to examine how that might be done as a matter of employment and insurance practices, or whether there would be legal pitfalls in any particular approach." *Id.*

**B.     Washington Enacted a Law Requiring Health Plans to Cover Contraception and to Include Abortion Care if They Include Maternity Care Without Modifying RCW 48.43.065**

In 2018, the Legislature passed, and the Governor signed, Substitute Senate Bill (SSB) 6219 (codified as RCW 48.43.072 & .073), which requires that health plans provide contraceptive coverage and that a health plan providing coverage for maternity care or services

DEFENDANTS' RESPONSE TO MOTION
FOR PRELIMINARY INJUNCTION
NO. 3:19-cv-05181

3

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

also include substantially coverage for abortion services. The Legislature found that access to a full range of health benefits and preventative services "provides all Washingtonians with the opportunity to lead healthier and more productive lives;" that neither a woman's income level nor her type of insurance should prevent her from having access to comprehensive reproductive health care, including contraception and abortion services; that access to contraception has been directly connected to the economic success of women and the ability of women to participate in society equally; and that restricting abortion coverage interferes with a woman's personal, private pregnancy decision-making, her well-being, and her constitutionally protected right to safe and legal abortion care. 2018 Wash. Sess. Laws, ch. 119, § 1.

Relevant here, the law has two parts. First, health plans issued or renewed after January 1, 2019 must provide coverage for all contraceptives approved by the federal Food and Drug Administration, voluntary sterilization procedures, and any services necessary to provide the contraceptives. RCW 48.43.072(1). This coverage cannot be subject to cost sharing or a deductible, unless the health plan is part of a health savings account. RCW 48.43.072(2)(a). Carriers cannot deny coverage when the contraceptive method changes within a 12-month period, and the health plan cannot impose any restrictions or delays on the enrollee's ability to receive this coverage. RCW 48.43.072(3), RCW 48.43.072(4). These benefits must be offered to all enrollees, their enrolled spouses, and their enrolled dependents. RCW 48.43.072(5).

Second, health plans issued or renewed after January 1, 2019, that provide coverage for maternity care or services must "also provide a covered person with substantially equivalent coverage to permit the abortion of a pregnancy." RCW 48.43.073(1).[4]

During public testimony on SSB 6219, opponents argued that the bill would "violate the constitutionally protected rights of religious organizations and individuals" Senate Bill Report, SSB 6219. Some legislators proposed adding a religious exemption to the bill, but

---

[4]This requirement does not apply to multistate plans, and if the application of this law to a health plan results in noncompliance with federal requirements that are a prescribed condition to allocating federal funds to the state, then the law is inapplicable to the minimum extent necessary for the state to be in compliance. RCW 48.43.073(4), (5), . The "inapplicability of this section to a specific health plan under this subsection does not affect the operation of this section in other circumstances." RCW 48.43.073(5).

DEFENDANTS' RESPONSE TO MOTION
FOR PRELIMINARY INJUNCTION
NO. 3:19-cv-05181

4

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue. Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

those amendments were rejected.[5] Proponents responded that the bill "is a compromise bill that protects religious organizations but still protects women's reproductive health. Senate Bill Report, SSB 6219. [6]Those with conscience or religious objections could still utilize the protections of RCW 48.43.065 to avoid purchasing services with which they hold a moral or religious objection. Wash. House Health Care & Wellness Comm., Public Hrg. Feb. 7, 2018, available at: https://www.tvw.org/watch/?eventID=2018021058 at 33:12 through 39:20 (last accessed June 10, 2019).

The Insurance Commissioner has proposed new rules implementing SSB 6219. Office of Ins. Comm'r, "Health Plan Coverage of Reprod. Healthcare & Contraception Rulemaking," Sept. 20, 2018, https://www.insurance.wa.gov/sites/default/files/2018-09/2018-10-stakeholder-draft.pdf (last accessed June 10, 2019). The proposed rules make clear that SSB 6219 does not preclude someone from exercising their rights under RCW 48.43.065: "This subchapter does not diminish or affect any rights or responsibilities provided under RCW 48.43.065." *Id.* at 2. Based on the statutory text, the legislative history, and the proposed rulemaking, individuals or organizations can refuse to purchase coverage for services to which they have a conscience or religious objection.

## C.   Cedar Park Challenges SSB 6219 But Never Mentions That It Can Avoid Purchasing a Plan That Includes Coverage for Services That Offend Its Religious Beliefs

Cedar Park filed suit against the Insurance Commissioner and the Governor, challenging SSB 6219. Dkt. # 20. Its amended complaint alleges that Cedar Park is a Christian church, affiliated with the Assemblies of God and part of the Northwest Ministry Network. Dkt. # 20, ¶¶ 18-19. Cedar Park has deeply held religious beliefs that abortion and what it calls

---

[5]S. Amend. 380 to Substitute S.B. 6219, (proposed by Sen. O'Ban) (not adopted 1/31/2018), available at http://lawfilesext.leg.wa.gov/biennium/2017-18/Pdf/Amendments/Senate/6219-S%20AMS%20OBAN%20S4639.2.pdf (last accessed June 10, 2019); Amend. 1311 to Substitute S.B. 6219 (proposed by Rep. Shea) (not adopted 2/28/2018):http://lawfilesext.leg.wa.gov/biennium/2017-18/Pdf/Amendments/House/6219-S%20AMH%20SHEA%20MORI%20133.pdf (last accessed June 10, 2019).

[6]  *See also* Wash. Senate. Health & Long-Term Care Comm., Public Hrg., available at: https://www.tvw.org/watch/?eventID=2018011287 at 28:19 through 28:48 (last accessed June 10, 2019.

5

"abortifacient"[7] contraceptives are wrong and constitute sin. Dkt. # 20, ¶¶ 24-38. Cedar Park contends that SSB 6219 violates its rights under the First and Fourteenth Amendments and asks the Court to preliminarily and permanently enjoin SSB 6219. Dkt. # 20, ¶¶ 75-151.

Cedar Park alleges it has about 185 employees eligible for health insurance coverage. Dkt. # 20, ¶ 20. As a result, it has purchased a group health plan. Dkt. # 20, ¶¶ 39-44. The health plan includes comprehensive coverage for maternity care, but Cedar Park does not offer coverage in a way that causes it to pay for abortions. Dkt. # 20, ¶¶ 45-47.

Cedar Park alleges that its current plan does not cover "abortifacient" contraceptives, but the Defendants' copies of Cedar Park's plan documents indicate its current health plan covers all FDA approved contraceptives for women. Declaration of Deputy Insurance Commissioner Molly Nollette in Support of Defendants' Opposition to Plaintiff's Motion for Preliminary Injunction at ¶ 27. Cedar Park alleges that its health plan expires July 31, 2019, meaning that it will have to renew its plan or obtain a new plan by August 1, 2019. Dkt. # 20, ¶ 8. But the Defendants' copies indicate that the plan expires September 1, 2019. Nollette Decl. at ¶¶ 24–25; Exs. A, C.

While Cedar Park mentions an unrelated section of RCW 48.43.065 allowing religious accommodation for health care providers and carriers, Cedar Park's complaint nowhere discusses RCW 48.43.065(3)'s religious objection protections for individuals and organizations. *See* Dkt. # 20, ¶¶ 56, 88, 118. In its opposition to the motion to dismiss and in this motion, Cedar Park appears to recognize Washington's accommodation for its religious beliefs but contends that it will nonetheless have to pay to cover the services to which it objects. *See, e.g.*, Dkt. # 28, pp. 1, 5-6; # 29, pp. 6-8.

But Cedar Park has never alleged or presented a fact showing that it has attempted to

---

[7]Cedar Park defines abortifacient contraceptives as contraceptives "that act to destroy an embryo post-fertilization." Dkt. # 20, ¶ 6. According to national experts in women's reproductive health, these include intrauterine devices (which are ubiquitous and have a low failure rate) as well as emergency contraception. Dkt. # 20, ¶ 46; *see* Comm. on Adolescent Health Care Long-Acting Reversible Contraception Working Grp, Am. Coll. of Obstetricians & Gynecologists, "Committee opinion no. 539: adolescents and long-acting reversible contraception: implants and intrauterine devices," Obstetrics & Gynecology Vol. 120, issue 4, at 983-88 (Oct. 2012).

DEFENDANTS' RESPONSE TO MOTION
FOR PRELIMINARY INJUNCTION
NO. 3:19-cv-05181

6

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue. Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

purchase a new health care plan or renew its current plan in a way that excludes coverage of abortion or "abortifacient" contraceptives. It does not allege that such a plan is unavailable in the market because of SSB 6219. It does not allege that the Insurance Commissioner has denied approval of health plans that exclude coverage of abortions or "abortifacient" contraceptives on religious grounds. Cedar Park does not allege that any carriers currently active in the Washington market have refused to sell them a plan that will accommodate their religious objections or that any other religious employers who have renewed their health plans since SSB 6219 became effective have been unable to find coverage that accommodates their objections. Nor has Cedar Park alleged that the Insurance Commissioner or the Governor directed carriers to ignore or reject religious objections to the abortion and contraceptive services required by SSB 6219. Instead, Cedar Park notes that the Insurance Commissioner *has* exempted at least one insurance carrier from complying with SSB 6219's provisions requiring insurance coverage of abortion or contraception services. Dkt. # 20, ¶ 57; # 28, p. 8.

Defendants moved to dismiss, arguing that the Cedar Park lacks Article III standing because it failed to allege sufficient facts showing it suffered an injury in fact and that its claims are ripe, and because it failed to state a claim for relief. Dkt. # 25. While awaiting the ruling on that motion, Cedar Park moved to preliminarily enjoin SSB 6219 as applied to Cedar Park and on its face. Dkt. # 29.

## IV.    ARGUMENT

### A.    Legal Standard

A preliminary injunction is a matter of equitable discretion and is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). A party can obtain a preliminary injunction by showing that (1) it is likely to succeed on the merits, (2) it is likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in its favor, and (4) an injunction is in the public interest. *Disney Enters., Inc. v. VidAngel, Inc.*, 869 F.3d 848, 856 (9th Cir. 2017). When the government is a party, the last two factors merge.

DEFENDANTS' RESPONSE TO MOTION
FOR PRELIMINARY INJUNCTION
NO. 3:19-cv-05181

7

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue. Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

*Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014).

**B.     Cedar Park Is Unlikely to Succeed on the Merits**

Cedar Park cannot show a likelihood of success on the merits because Cedar Park lacks standing to bring the claims it raises and the merits of Cedar Park's claims lack legal or factual bases. Likelihood of success on the merits is "the most important" factor; if a movant fails to meet this "threshold inquiry" the Court does not need to consider the other factors. *Disney*, 869 F.3d at 856. As such, this Court should deny Cedar Park's motion.

> **1.     Cedar Park lacks standing because it suffered no injury in fact and its claims are not ripe**

As explained in the Defendants' motion to dismiss, this Court lacks Article III jurisdiction to adjudicate Cedar Park's claims because Cedar Park cannot demonstrate an injury in fact traceable to the Defendants and because its claims are not ripe. *E.g.,* Dkt. # 25, pp. 9-12. To satisfy Article III's "case or controversy" requirement, a plaintiff "must show that (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Sys. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000); *Bassett v. ABM Parking Servs., Inc.*, 883 F.3d 776, 779 (9th Cir. 2018). The harm or risk of real harm must actually exist and be real, not abstract. *Bassett*, 883 F.3d at 779.

> **a.     There is no injury in fact**

Cedar Park does not suffer an injury because it can refuse to purchase coverage for services to which it objects. RCW 48.43.065(3) allows organizations to refuse to purchase coverage for a service if they object to that service for reasons of conscience or religion. Cedar Park has neither alleged nor presented any fact showing that it tried to assert its religious objection when purchasing or renewing its health plan. It also does not allege that there is no group health plan on the market available for purchase that matches its religious objections. In fact, as Cedar Park admits, the Insurance Commissioner exempted at least one carrier from

DEFENDANTS' RESPONSE TO MOTION
FOR PRELIMINARY INJUNCTION
NO. 3:19-cv-05181

8

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

complying with SSB 6219's provisions requiring coverage of abortion or contraception services. Dkt. # 20 at ¶ 57; # 28 at p. 8; #29 at p. 17. A preliminary injunction is inappropriate if Cedar Park can get the health plan it desires (but has made no apparent effort to do so).

Cedar Park argues that it must still purchase coverage for the services to which it objects and will have to pay increased premiums or fees for the unwanted services. Dkt. # 29, pp. 13-14. Since Cedar Park has not tried to locate a health plan without the health care services to which it objects, this argument is conjectural. No fact or legal theory supports the claim that Cedar Park will have to purchase coverage for the services to which it objects through increased premiums or fees. Cedar Park is free to negotiate with its carriers on how to approach this issue consistent with Cedar Park's beliefs. *See infra.* at pp. 13-15.

### b.    The claims are not ripe

For similar reasons, Cedar Park's claims are not ripe. It has not been denied the ability to purchase a group health plan that excludes abortion or "abortifacient" contraceptives. "[R]ipeness is peculiarly a question of timing, designed to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements." *Stormans, Inc. v. Selecky* (*Stormans I*), 586 F.3d 1109, 1122 (9th Cir. 2009) (internal quotations). The courts' role is to adjudicate live cases and controversies, not issue advisory opinions or declare rights in a hypothetical case. *Id.*

Nowhere in its amended complaint, opposition to motion to dismiss, or this motion does Cedar Park allege or put forth facts showing that: (1) it attempted to purchase a new health care plan or to renew its current plan in a way that excludes coverage of abortion or abortifacient contraceptives; (2) such a plan is unavailable because of SSB 6219; (3) the Insurance Commissioner rejected health plans that exclude coverage of abortions or contraceptives it views as "abortifacient" on religious grounds; or (5) the Insurance Commissioner or the Governor directed carriers to ignore or reject religious objections to services required by SSB 6219. Dkt. # 20, 28, 29. Absent any of these facts, no one knows how Cedar Park will exercise its religious objection, let alone the Defendants' response, if any.

DEFENDANTS' RESPONSE TO MOTION
FOR PRELIMINARY INJUNCTION
NO. 3:19-cv-05181

9

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

Cedar Park thus fails to present a concrete plan of action that violates Washington law, that the Defendants have communicated any intent to prosecute Cedar Park, or that there has been any history of past prosecution or enforcement under SSB 6219. *Stormans I*, 586 F.3d at 1122. As explained in the motion to dismiss, the Defendants have no intention to bring an enforcement action, let alone criminally prosecute, an employer validly exercising its objection rights under RCW 48.43.065(3). Cedar Park is unlikely to succeed because its claims are not ripe.[8]

## 2. Even if there were standing, Cedar Park's claims lack merit

### a. The free exercise clause claim fails

An individual's religious beliefs do not excuse complying with an otherwise valid law prohibiting conduct that the government is free to regulate. *Emp't Div., Dep't of Human Res. of Ore. v. Smith*, 494 U.S. 872, 878-79 (1990); *see Church of Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 533-34 (1993). Laws incidentally burdening religion or religious practice are upheld if they are valid and neutral laws of general applicability rationally related to a legitimate government purpose. *Stormans v. Wiesman* (*Stormans II*), 794 F.3d 1064, 1075-76 (9th Cir. 2015). Non-neutral or non-generally applicable laws are subject to strict scrutiny, but otherwise, the laws are reviewed for a rational basis. *Id.* at 1076.

SSB 6219 and RCW 48.43.065 allow employers to refuse to purchase health plans that cover abortion or "abortifacient" contraceptives while ensuring enrollees receive the services they desire. SSB 6219 is neutral because it does not operate as a "covert suppression of particular religious beliefs" that was enacted "because of, not merely in spite of" its impacts on a particular religion or religious belief or practice. *Ashcroft v. Iqbal*, 556 U.S. 662, 676-77, 681 (2009); *Stormans II*, 794 F.3d at 1077. SSB 6219 applies to plans equally. In fact, since individuals and organizations can refuse to purchase health plans that cover services that conflict with their religious beliefs, SSB 6219 was not enacted "because of" the impacts it

---

[8]As explained in the motion to dismiss, the Court could also dismiss without prejudice under the primary jurisdiction doctrine to allow the Insurance Commissioner the opportunity to promulgate proposed rules that would make clear that SSB 6219 does not affect an employer's right to object to purchase coverage on religious grounds. *See* Office of Ins. Comm'r, "Health Plan Coverage of Reprod. Healthcare & Contraception Rulemaking." Sept 20, 2018, available at: https://www.insurance.wa.gov/sites/default/files/2018-09/2018-10-stakeholder-draft.pdf (last accessed June 10, 2019).

10

would have on a particular religious belief. With the religious accommodation in RCW 48.43.065, Cedar Park's religious beliefs are not burdened but accommodated.

SSB 6219 was enacted, and operates, for the religious-neutral, generally applicable purposes identified by the Legislature, which include:

- promoting gender equity and women's reproductive health;

- ensuring that a woman's income level does not prevent her from receiving the full range of care;

- reducing negative health and social outcomes from unintended pregnancies, such as delayed prenatal care, maternal depression, increased physical violence during pregnancy, low birth weight, decreased mental and physical health during childhood, and lower education attainment for the child;

- ensuring women obtain access to contraceptive methods that are most effective for their health; and

- ensuring women maintain their rights to personal, private pregnancy decision-making, consistent with their constitutionally protected right to safe contraceptive and abortion care.

2018 Wash. Sess. Laws, ch. 119 § 1. Neither these purposes nor the language focuses on religion.

Cedar Park makes much of the fact that the definition of "health plan" or "health benefit plan" in RCW 48.43.005(26) exempts certain kinds of insurance plans and health care coverage mechanisms from RCW 48.43. Dkt. # 29, pp. 9-13. But these exemptions apply to all of RCW 48.43, not just SSB 6219 and RCW 48.43.065. That is because the Legislature chose to focus on individual and employer-sponsored health plans in RCW 48.43, rather than address all possible forms of insurance or health coverage.[9]

Following Cedar Park's logic, since there are exemptions in RCW 48.43.005(26), *any* use of the term "health plan" or "health benefit plan" in RCW 48.43 makes the statute not neutral or generally applicable. Dkt. # 29, pp. 9-11. That would mean most of RCW 48.43

---

[9]Cedar Park points to student-only plans as an example. Dkt. # 29, p. 11. But this kind of plan, which by definition is restricted to only those who are enrolled full time as undergraduate or graduate students at an accredited higher education institution (RCW 48.43.005(26)(l)), is subject to different laws and different market forces than individual and employer-sponsored health plans. And there is no exemption for "plans for the disabled" as Cedar Park claims. Dkt. # 29, p. 10. There is an exemption for disability income, RCW 48.43.005(26)(e), but that is because disability income covers only income replacement when there is a disability.

DEFENDANTS' RESPONSE TO MOTION
FOR PRELIMINARY INJUNCTION
NO. 3:19-cv-05181

11

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue. Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

would be subject to strict scrutiny on free exercise challenges. For a few examples, a statute requiring carriers of health plans to offer transparency tools would be subject to strict scrutiny on any free exercise challenge (RCW 48.43.007); a statute prohibiting denying an individual a health plan for preexisting conditions would be subject to strict scrutiny on any free exercise challenge (RCW 48.43.012 & .015); and requirements that carriers provide annual reports of all officers, directors, and trustees, and expense reimbursements would be subject to strict scrutiny on any free exercise challenge (RCW 48.43.045). That makes no sense. RCW 48.43's requirements extend to specific health insurance plans and are not gerrymandered to burden religion. Nothing indicates that SSB 6219 was motivated by religious discrimination.

Cedar Park incorrectly implies that the Legislature provided secular exemptions but no religious exemptions. Dkt. # 29, pp. 11-12. As explained, RCW 48.43.065(3) provides an exemption to churches like Cedar Park to refuse to purchase coverage of services to which it objects. This is not the situation where a Legislature created a law with secular exemptions whose effect singled out those with religious beliefs, as Cedar Park argues. To the contrary, SSB 6219 applies to carriers and employers *except* those with religious beliefs, who can refuse to purchase coverage for services to which they object.

The exemptions in SSB 6219 do not show discrimination to religion. They provide that the abortion provisions do not apply if it would violate state or federal law. RCW 48.43.073(2)(b)(ii), (4), (5). In other words, the Legislature made clear that SSB 6219 did not supplant state or federal laws regarding how health plans can or cannot allow for abortion. These exemptions do not lead to the conclusion that religious organizations are singled out in any way.

In addition to misreading RCW 48.43.065, Cedar Park mischaracterizes the 2002 AGO opinion as to require carriers "to increase the employer's premium to cover abortion, but to characterize the increase as 'an administrative, overhead, contingency, or other expense or allowance.'" Dkt. # 29, p. 13. Both the 2002 and 2006 AGO opinions make clear that no such requirement exists. The opinions explain that carriers and employers could agree to have the

DEFENDANTS' RESPONSE TO MOTION
FOR PRELIMINARY INJUNCTION
NO. 3:19-cv-05181

12

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue. Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

carrier cover the costs for objected contraception by having the carrier pay out of its own pocket, that is, through a pool of funds separate from what an objecting employer pays towards. As explained by Lichiou Lee, the Chief Actuary for the OIC, a carrier paying out of its own pocket for these services makes actuarial sense. Declaration of Lichiou Lee in Support of Defendants' Opposition to Plaintiff's Motion for Preliminary Injunction, ¶¶ 4–5. Paying for contraceptives and abortion could be a cost saving measure in the long run, given the costs of maternity and pediatric care. *Id.*

Nonetheless, the 2002 opinion "did not directly conclude that the employers would violate the law by declining to pay for contraceptives for their employees." Wash. Op. Att'y Gen. 10 (2006). The opinions were careful to note that there are other lawful ways to allow employers to express their religious objections, but an opinion is not the right vehicle for suggesting options. *Id.* And the OIC recognizes that there are many ways to accommodate the objection and will work with employers on how to approach carriers regarding their objection. Nollette Decl. at ¶¶ 29–32. This is a far cry from a mandate that employers still pay for services to which they object.

Even under Cedar Park's incorrect and unsubstantiated theory that the *only* way for a carrier to accommodate religious objections is to recover actuarially predicted abortion costs as overhead applicable to all customers, such action does not burden Cedar Park and would be neutral and generally applicable.[10] Any burden on Cedar Park would be incidental, as it is when Cedar Park purchases goods or services from a variety of entities. For example, it could be that the catering service Cedar Park uses for events, the wholesale warehouse it uses to purchase paper goods and supplies for its school and office, its lawn and gardening contractor, or its building maintenance service have different views about abortion than Cedar Park. Any of these types of entities may include abortion coverage in their own employee's health plans. In paying these entities for the goods and services they provide, Cedar Park theoretically is

---

[10]Cedar Park nowhere alleges much less proves that the only way for a carrier to accommodate an objection is to pay such costs out of overhead.

DEFENDANTS' RESPONSE TO MOTION
FOR PRELIMINARY INJUNCTION
NO. 3:19-cv-05181

13

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue. Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

contributing to those entities' employees' abortion coverage. This incidental result, however, is the same for all other customers of these contractors; it is neutral and generally applicable rather than covertly suppressing religious beliefs or targeting Cedar Park's religious beliefs.

Likewise, the carrier's payment of enrollees' abortion costs from the "contribution to surplus" portion of its rates, *see* Nollette Decl.,¶ 13, would be neutral and generally applicable because the costs would be spread among all purchasers that contribute to the surplus regardless of religious beliefs. Illustrating Cedar Park's attenuated theory even further, there is no allegation in any event that its carrier makes any profit from Cedar Park's insurance policy to put into a surplus fund that would pay for the objected services.

SSB 6219 is neutral and generally applicable so the Court examines whether it is rationally related to a legitimate governmental purpose. *Stormans II*, 794 F.3d at 1084. It is rationally related to the many purposes identified in the legislative findings; particularly that it promotes public health and gender equality by providing women with contraceptive coverage and abortions through their health plans. 2018 Wash. Sess. Laws, ch. 119 § 1. Cedar Park argues it is irrational to force it and its employees to pay for abortion coverage since they all share the same beliefs concerning abortion. This ignores how insurance works. Insurance pools groups of people together to share risks and costs, which means that some members of the group's premiums will cover more than the benefits they receive, while other members might receive more benefits than the amount of premiums they actually pay. It could be that Cedar Park already receives more benefits than the amount of premiums, meaning that none of Cedar Park's premiums will go to paying for the unwanted services. The record makes no mention whether this is the case.

Further, the reality is that family members of Cedar Park employees might have different views regarding the morality of these services. Cedar Park does not and cannot allege that all enrollees, including spouses and dependents, share Cedar Park's religious views. SSB 6219 and RCW 48.43.065 are neutral and generally applicable in that they ensure that Cedar Park can object to purchasing coverage for the services to which it objects, while these

DEFENDANTS' RESPONSE TO MOTION
FOR PRELIMINARY INJUNCTION
NO. 3:19-cv-05181

14

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue. Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

dependents can receive the coverage for these services, consistent with their divergent religious beliefs.

Even if strict scrutiny applied, SSB 6219 serves Washington's compelling state interest in promoting and ensuring the health of its citizens, particularly those health consequences caused by unintended pregnancies. The legislative findings bear out the benefits that result from that governmental interest, including better health for its citizens at reduced costs. The law is narrowly tailored to achieve those ends while respecting religion, particularly where it allows churches and religious organizations to refuse to purchase health plans that cover services to which they object. Washington's carefully crafted law ensures women receive the services that make a healthier Washington and reduce health costs while accommodating the exercise of religious beliefs.

### b. The religious autonomy claim fails

As Defendants explained in their motion to dismiss, religious bodies have the power to decide for themselves, free from state interference, matters of church governance as well as those of faith and doctrine. *Bollard v. Cal. Province of Society of Jesus*, 211 F.3d 1331, 1332 (9th Cir. 2000). But this does not mean that a church has "carte blanche" to do as it pleases outside of those decisions directing church administration. *Biel v. St. James Sch.*, 911 F.3d 603, 611 (9th Cir. 2018). Courts can adjudicate matters dealing with churches if the dispute requires "neutral principles of law, developed for use" in those kinds of disputes. *Jones v. Wolf*, 443 U.S. 595, 599-605 (1979).

To the extent the religious autonomy doctrine applies, Cedar Park retains the right to object to purchasing health plans that include coverage for abortion and "abortifacient" contraceptives, which means that even in making the decision to enter the health insurance market—an area courts have developed neutral principles of law—Cedar Park can still exercise its beliefs. But no case has held that a church can dictate to the State what private companies must make available on the insurance market when the church chooses to purchase a health plan (or how a carrier must structure itself to accommodate religious objections). And no case

DEFENDANTS' RESPONSE TO MOTION
FOR PRELIMINARY INJUNCTION
NO. 3:19-cv-05181

15

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue. Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

requires private companies outside the church to adhere to the church's religious views in how they handle profits received from churches.

### c.  The equal protection claim fails

Cedar Park continues to insist that SSB 6219 discriminates between religious organizations. Dkt # 29, pp. 20-21. But SSB 6219 does not make any distinctions between religious organizations—it simply addresses health plan requirements. And RCW 48.43.065 allows both religious health providers *and* employers to express their religious objections to services. To the extent RCW 48.43.065 distinguishes between religious health providers and employers, it is because of their respective roles in the market, not anything connected to their religion. It would make no sense for the Legislature to say that employers purchasing health plans can refuse to provide certain health services when those employers are not health care providers in the first place. That is why the Legislature requires carriers with an objection to still provide written notice to enrollees about how to access objected services in an expeditious manner. RCW 48.43.065(3)(b). Carriers have that role in the market, while employers purchasing plans likely do not. As a result, providers and purchasers are not similarly situated in that they serve different roles in the market.

"Evidence of different treatment of unlike groups does not support an equal protection claim. *Thornton v. City of St. Helens*, 425 F.3d 1158, 1167-68 (9th Cir. 2005). Cedar Park's claim fails because Cedar Park improperly "conflat[es] all persons not injured into a preferred class receiving better treatment than the plaintiff." *Id.* at 1167 (internal quotations omitted). And Cedar Park's arguments about the exemptions to the definition of "health plan" fail for the same reasons as they do in Cedar Park's free exercise claim. *See Stormans II*, 794 F.3d at 1085 (affirming dismissal of equal protection claim because the analysis is coextensive with dismissed free exercise claim).

DEFENDANTS' RESPONSE TO MOTION
FOR PRELIMINARY INJUNCTION
NO. 3:19-cv-05181

16

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue. Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

### d.   The establishment claim fails

Cedar Park provides no facts or analysis that SSB 6219 "(1) has a predominantly religious purpose; (2) has a principal or primary effect of advancing or inhibiting religion; or (3) fosters excessive entanglement with religion." *Catholic League for Religious & Civil Rights v. City & Cty. of San Francisco*, 624 F.3d 1043, 1060 (9th Cir. 2010). SSB 6219 does not have a religious purpose but is intended to provide better health care to women and teens, improves public health, and promotes gender equality, among other things. Nothing in the law or its purpose is religious in nature. And it does not have a principal or primary effect to advance or inhibit religion, particularly since both religious and nonreligious alike have competing views about contraceptives and abortion. While SSB 6219 addresses controversial, potentially divisive issues, that is not a ground to strike down the law. *Am. Family Ass'n, Inc. v. City & Cty. of San Francisco*, 277 F.3d 1114, 1123 (9th Cir. 2002).

### C.   Cedar Park Fails to Present Any Evidence That It Will Suffer an Irreparable Injury Absent a Preliminary Injunction

A plaintiff seeking preliminary relief must 'demonstrate that irreparable injury is likely in the absence of an injunction." *Winter*, 555 U.S. at 22. "Speculative injury does not constitute irreparable injury sufficient to warrant granting a preliminary injunction. A plaintiff must do more than merely allege imminent harm sufficient to establish standing; a plaintiff must *demonstrate* immediate threatened injury as a prerequisite to preliminary injunctive relief." *Caribbean Marine Servs. Co., Inc. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988).

Here, at most, Cedar Park relies on unsubstantiated speculation that it will be fined and its leaders arrested to demonstrate irreparable harm. Dkt. # 29, pp. 21-22. Cedar Park cannot point to a defendant who can or will bring an enforcement or prosecution action against Cedar Park for exercising its religious objection rights to refuse to pay for coverage of services to which it objects. Neither Defendant has authority to bring an enforcement proceeding against an employer refusing to purchase coverage for services to which it has a religious objection. The lone declaration Cedar Park submits does not claim a fear of enforcement or prosecution. Nor does the declaration explain how it will exercise its objection rights in a way that will

DEFENDANTS' RESPONSE TO MOTION
FOR PRELIMINARY INJUNCTION
NO. 3:19-cv-05181

17

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

violate the law. There is no concrete injury, let alone an irreparable one, if Cedar Park can exercise its rights in a way that does not violate the law.

In fact, the Defendants take the position that employers like Cedar Park can refuse to purchase coverage for services to which they object. Nollette Dec. at ¶¶ 28–29. The OIC will work with employers objecting to covering services in how to approach carriers so that their objections are respected while the enrollees receive the services required by law. Nollette Dec. at ¶¶ 29–32.There can be no irreparable injury if a plaintiff already has an avenue to do what it seeks.

Cedar Park's argument that because there is a constitutional violation there is an irreparable injury puts the cart before the horse. Dkt. # 29, p. 22. In fact, the horse has not yet been hitched to the cart for anyone to determine if they are in the right order—no one knows how Cedar Park will assert its religious objection when purchasing its new plan (the horse), so no one can know whether that objection complies with the applicable law, causing injury (the cart). In any event, as explained above, there is no constitutional violation, so there is no resulting injury.

## D.     Balancing the Equities and the Public Interest Tip in Favor of Denying the Preliminary Injunction

The equities weigh heavily against a preliminary injunction. Washington and its residents will suffer severe harm if the Court were to grant Cedar Park's request for an injunction. Enjoining SSB 6219 entirely, as Cedar Park's proposed order seeks, would deny enrollees all health care services to which their employers objected on religious grounds. Nollette Decl., at ¶ 38. Allowing employers to entirely deny women employees access to contraception they deem "abortifacients" would undermine the Legislature's public health goals. The same is true if employers could override a woman's medical decisions, when she is exercising her privacy and due process rights under the Fourteenth Amendment, should she confront an untended, medically dangerous, or unwanted pregnancy, or when making a personal health care decision among contraceptive options. Banning these employees' access

DEFENDANTS' RESPONSE TO MOTION
FOR PRELIMINARY INJUNCTION
NO. 3:19-cv-05181

18

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

to such services would increase the incidence of unintended pregnancies and multiply State health care costs for labor and deliveries. It would harm the economic success of women and their ability to participate equally in society, which were among the legislative goals of SSB 2619.

Further, a preliminary injunction will cause confusion for the OIC, employers, carriers, and enrollees, as it will have to provide more protection than RCW 48.43.065. *Id.* ¶¶ 38-40. A preliminary injunction will cause confusion for the OIC as there are plans already in place that follow SSB 6219, and it will be unclear what the OIC can require of carriers. *Id.* at ¶¶ 38-40. Carriers could be confused and suffer financial harm because they might have to change their plans to come into conformance with any injunction. *Id.* at ¶ 40. Carriers also will not know whether to follow the federal requirements regarding contraceptive services that are part of SSB 6219. *Id.* at ¶ 38. Enrollees will be confused about what is included in their plans, particularly for plans that have already been filed since SSB 6219 took effect. *Id.* at ¶ 38.

Even an injunction applied exclusively to Cedar Park would still mean that its enrollees, including employees, their spouses, and their dependents, would lose the ability to receive the services required by SSB 6219. The end result is the loss of coverage for services to which enrollees are entitled, and it would mean an employer can override a woman's privacy right to make personal health care decisions as guaranteed by the Constitution.

By contrast, Cedar Park's asserted equities are negligible. Cedar Park already has a right to refuse to purchase coverage for services to which it objects. It has yet to try to assert that objection in the context of coverage for services identified in SSB 6219.  Cedar Park's claims are speculative, and no one knows what its new health plan will look like. Since the law already balances the interests of the objecting employers, carriers, and enrollees, the equities and public interest tip in favor of denying a preliminary injunction. A preliminary injunction at best would cause confusion and at worst tip the scales in favor of objecting employers over everyone else.

DEFENDANTS' RESPONSE TO MOTION
FOR PRELIMINARY INJUNCTION
NO. 3:19-cv-05181

19

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue. Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

1

## V.      CONCLUSION

2

The Court should deny the Motion for Preliminary Injunction.

3

DATED this 10th day of June,2019.

4

ROBERT W. FERGUSON
Attorney General

5

6

*/s/ Paul M. Crisalli*
JEFFREY T. SPRUNG, WSBA #23607
PAUL M. CRISALLI, WSBA #40681

7

MARTA DELEON, WSBA #35779
JOYCE A. ROPER, WSBA #11322

8

Assistant Attorneys General
Attorneys for Defendants

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

1

## DECLARATION OF SERVICE

2        I hereby declare that on this day I caused the foregoing document to be electronically

3   filed with the Clerk of the Court using the Court's CM/ECF System which will send notification

4   of such filing to the following:

5        Kristen K. Waggoner
         Kevin H. Theriot
         Elissa M. Graves
6        Alliance Defending Freedom
         15100 N 90th Street
7        Scottsdale, AZ 85260
         KWaggoner@adflegal.org
8        KTheriot@adflegal.org
         EGraves@adflegal.org
         *Attorneys for Plaintiff*

9
         David A. Cortman
10       Alliance Defending Freedom
         1000 Hurricane Shoals Rd. NE
11       Suite D-1100
         Lawrenceville, GA  30040
12       DCortman@adflegal.org
         *Attorney for Plaintiff*

13       DATED this 10th day of June, 2019, at Seattle, Washington.

14
                                        */s/ Paul M. Crisalli*
15                                      PAUL M. CRISALLI, WSBA #40681
                                        Assistant Attorney General

16

17

18

19

20

21

22

23

24