UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| CEDAR PARK ASSEMBLY OF GOD OF KIRKLAND, WASHINGTON,<br><br>                              Plaintiff,<br><br>        v.<br><br>MYRON KREIDLER, Insurance Commissioner for the State of Washington, and JAY INSLEE, Governor of the State of Washington,<br><br>                              Defendants. | CASE NO. C19-5181 BHS<br><br>ORDER GRANTING DEFENDANT'S MOTION TO DISMISS, DENYING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION, AND GRANTING PLAINTIFF'S MOTION FOR LEAVE TO AMEND |

This matter comes before the Court on Defendants Myron Kreidler, Insurance Commissioner for the State of Washington, and Jay Inslee's, Governor of the State of Washington, ("State") motion to dismiss, Dkt. 25, Plaintiff Cedar Park Assembly of God of Kirkland, Washington's ("Cedar Park") motion for preliminary injunction, Dkt. 29, and Cedar Park's motion for leave to amend, Dkt. 42. The Court has considered the pleadings filed in support of and in opposition to the motions and the remainder of the file and hereby grants the State's motion to dismiss, denies Cedar Park's motion for

preliminary injunction, and grants Cedar Park's motion for leave to amend for the reasons stated herein.

## I. PROCEDURAL HISTORY AND FACTUAL BACKGROUND

Since at least 1995, Washington law has provided conscience exemptions for participants in the health care and health insurance markets. The dispute in this case involves the differences between the conscience exemptions for different market participants, a caveat to the conscience exemptions that health carriers, facilities, and providers do not have to provide services for free, and a new law which requires that health insurance cover comprehensive reproductive health services including abortion and all Food and Drug Administration-approved ("FDA") contraceptive drugs, devices, and products.[1]

### A. Legal and Regulatory Background

For health insurance purchasers, Washington law provides that "[n]o individual or organization with a religious or moral tenet opposed to a specific service may be required to purchase coverage for that service or services if they object to doing so for reasons of conscience or religion." RCW 48.43.065(3)(a). While individuals and organizations do not have to purchase that coverage, enrollees must still be able to access it:

> The provisions of this section shall not result in an enrollee being denied coverage of, and timely access to, any service or services excluded from their benefits package as a result of their employer's or another individual's exercise of the conscience clause in (a) of this subsection.

---

[1] The Court will use the term "reproductive health services" in this opinion to refer to FDA-approved contraceptive drugs, devices, and products as well as abortion and abortion-related drugs, procedures, and services.

RCW 48.43.065(3)(b). Implementing regulations require each relevant insurance carrier to file "a full description of the process it will use to recognize an organization or individual's exercise of conscience based on a religious belief or conscientious objection to the purchase of coverage for a specific service." WAC 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(1).

Regarding health insurance carriers and providers, RCW 48.43.065(2)(a) provides in part that "[n]o individual health care provider, religiously sponsored health carrier, or health care facility may be required by law or contract in any circumstances to participate in the provision of or payment for a specific service if they object to doing so for reasons of conscience or religion." Religiously sponsored carriers which for reasons of religious belief offer plans which exclude certain services covered in the model insurance plan "shall file for such plan a description of the process by which enrollees will have timely access to all services in the model plan." WAC 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(2).

Finally, RCW 48.43.065(4) provides that "[n]othing in this section requires a health carrier, health care facility, or health care provider to provide any health care services without appropriate payment of premium or fee."

In 2002, the Washington Office of the Attorney General ("AGO") issued an advisory opinion interpreting RCW 48.43.065 in response to an inquiry from the Washington Office of the Insurance Commissioner ("OIC"), setting forth its opinion in relevant part that "[t]he insurance commissioner has authority to require health care insurance carriers to include the cost of prescription contraceptives as a component in the rate[-]setting actuarial analysis, where an employer raises a conscientious objection to paying these costs directly as a part of that employer's employee health care benefit

package." AGO 2002 No. 5. The opinion explained in part that "conceptually, OIC could require a carrier include the cost of contraceptive coverage as an expense component in its rate setting actuarial analysis; a more definite answer would have to be tailored to a more specific proposal." *Id.* In 2006, the AGO issued another opinion analyzing the extent of an employer's option to provide employee health insurance without including coverage of prescription contraceptives in response to an inquiry from two Washington State legislators. AGO 2006 No. 10. The 2006 opinion explained that the AGO had reviewed the 2002 opinion, stating in part that:

> The upshot of our 2002 analysis is that, while employers may exercise their 'conscience clause' rights under RCW 48.43.065(3), they may not do so by contracting with a state-regulated health carrier for a benefits package that excludes contraceptives while including coverage of other prescription drugs, or a package requiring employees to pay for their own contraceptive coverage. There may be other, lawful ways in which employers may exercise their 'conscience clause' option . . . Perhaps they might also offer a health care benefits plan that does not involve purchasing a health plan from a state-regulated carrier. An Attorney General's Opinion is not an appropriate vehicle to examine how that might be done as a matter of employment and insurance practices, or whether there would be legal pitfalls in any particular approach. We simply note that the statutes and WAC do not foreclose the exercise of 'conscience clause' rights by employers.

*Id.*

In 2018, the State enacted SB 6219. 2018 Wash. Sess. Laws 1. Relevant here, SB 6219 was codified as RCW 48.43.072 and RCW 48.43.073. Dkt. 20, ¶ 4. RCW 48.43.072 requires all health plans issued or renewed on or after January 1, 2019 to cover all FDA-approved prescription and over-the-counter contraceptive drugs, devices, and products. RCW 48.43.073 requires all health plans issued or renewed on or after January 1, 2019

which provide coverage for maternity care or services to provide the covered person

"with substantially equivalent coverage to permit the abortion of a pregnancy."

On September 20, 2018, OIC published a stakeholder draft of proposed rules ("OIC Rulemaking Draft") implementing SB 6219 for public comment. OIC, "Health plan coverage of reproductive healthcare and contraception (R 2018-10) (R 2019-07)," https://www.insurance.wa.gov/health-plan-coverage-reproductive-healthcare-and-contraception-r-2018-10-r-2019-07. The draft was available for comment through October 23, 2018. OIC, "Health Plan Coverage of Reproductive Healthcare & Contraception Rulemaking," September 20, 2018, https://www.insurance.wa.gov/sites/default/files/2018-09/2018-10-stakeholder-draft.pdf. The "Coverage required" section of the OIC Rulemaking Draft pertaining to coverage for reproductive health services required by SB 6219 provides in subsection four that "[t]his subchapter does not diminish or affect any rights or responsibilities provided under RCW 48.43.065." *Id*.

**B.     The Instant Dispute**

Cedar Park is a Christian church in Kirkland, Washington. Dkt. 20, ⁋ 5. In furtherance of its "deeply held religious belief that abortion is the ending of a human life, and is a grave sin," Cedar Park alleges that it "does not provide coverage for abortion or abortifacient contraceptives in its employee health insurance plan." *Id*. Cedar Park also alleges that it "offers health insurance coverage to its employees in a way that does not also cause it to pay for abortions or abortifacient contraceptives, including, *inter alia*, emergency contraception and intrauterine devices" and that its "current group health plan

excludes coverage for abortions or abortifacient contraceptives." *Id.* ¶¶ 46–47.

Approximately 185 of Cedar Park's employees are eligible for its health insurance

coverage. *Id.* ¶ 20. Employees are required to sign a statement agreeing to follow Cedar

Park's standards of conduct which include its teachings on the sanctity of life both at

work and outside of work. *Id.* ¶¶ 31–32. Cedar Park's current employee health insurance

plan renews on August 1, 2019. *Id*. ¶ 8.[2]

Cedar Park filed suit in this Court on March 8, 2019, alleging that SB 6219

violates the Free Exercise and Establishment Clauses of the First Amendment, violates

Cedar Park's right to religious autonomy guaranteed by those clauses, and also violates

the Equal Protection Clause of the Fourteenth Amendment. Dkt. 1. Cedar Park seeks

declaratory and injunctive relief against SB 6219. *Id*.

On April 17, 2019, the State moved to dismiss. Dkt. 25. On May 13, 2019, Cedar

Park responded. Dkt. 28. Also on May 13, 2019, Cedar Park moved for a preliminary

injunction. Dkt. 29. On May 24, 2019, the State replied to Cedar Park's response to its

motion to dismiss. Dkt. 32. On June 10, 2019, the State responded to Cedar Park's

motion for preliminary injunction. Dkt. 35. On June 21, 2019, Cedar Park replied to the

State's response to its motion for preliminary injunction. Dkt. 38.

---

[2] In its motion for leave to amend, Cedar Park informs the Court that since filing its First Amended Complaint, it has discovered that its current employee health insurance plan "inadvertently includes coverage for abortifacients (contrary to information previously provided by the Church's insurance broker)" and that its employee health insurance plan must be renewed by September 1, 2019, not August 1, 2019. Dkt. 42 at 1–2.

On July 3, 2019, Cedar Park filed a motion for leave to amend. Dkt. 42. On July 15, 2019, the State responded. Dkt. 43. On July 19, 2019, Cedar Park replied. Dkt. 44.

## II.   DISCUSSION

"Federal jurisdiction is limited to actual cases and controversies." *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1119 (9th Cir. 2009). The State argues that the Court should dismiss Cedar Park's complaint pursuant to Fed. R. Civ. P. 12(b)(1) for failure to allege facts establishing subject matter jurisdiction. Dkt. 25 at 5, 11. The State makes two arguments on this point: (1) that Cedar Park lacks standing and (2) that Cedar Park's claims are not justiciable because they lack ripeness. *Id.* at 5. Additionally, the State argues that the Court should invoke the primary jurisdiction doctrine to allow OIC to finalize rules "that recognize []SB 6219 does nothing to affect an organization's rights under RCW 48.43.065(3)." *Id.*

### A.    Motion to Dismiss

#### 1.    Standing

The State argues that because RCW 48.43.065(3)(a) permits Cedar Park to refuse to pay for coverage of services with which it disagrees, Cedar Park has not suffered an injury-in-fact sufficient for standing. Dkt. 25 at 12–13. Cedar Park counters that RCW 48.43.065(3)(a) does not provide meaningful protection for its rights. Dkt. 28 at 11.

##### a.    Standard

In order to have standing in federal court, a plaintiff must show that she has suffered an injury-in-fact that is fairly traceable to the actions of the defendant and that her injury is likely to be redressed by a favorable decision. *See, e.g., Ass'n of Public*

*Agency Customers v. Bonneville Power Admin.*, 733 F.3d 939, 950 (9th Cir. 2013). The injury must be concrete and particularized, as well as actual or imminent, not conjectural or hypothetical. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) (internal quotations and citations omitted). The party invoking federal jurisdiction has the burden to establish standing. *Id.* Standing is "claim-and relief-specific, such that a plaintiff must establish Article III standing for each of her claims and for each form of relief sought." *In re Adobe Systems, Inc. Privacy Litig.*, 66 F.Supp.3d 1197, 1218, 2014 WL 4379916, at *10 (N.D. Cal. Sept. 4, 2014); *see also DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006) ("[O]ur standing cases confirm that a plaintiff must demonstrate standing for each claim he seeks to press.").

### b. Analysis

Cedar Park's challenge to SB 6219 is both facial and as-applied. Dkt. 28 at 10–11. "[A] facial challenge is a challenge to an entire legislative enactment or provision." *Hoye v. City of Oakland*, 653 F.3d 835, 857 (9th Cir. 2011). "If it does not charge statutory overbreadth, a facial challenge must fail where the statute has a plainly legitimate sweep." *Id.* (citing *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449 (2008)).

Regarding Cedar Park's facial challenge, the State argues that the standard is the one articulated in *Foti v. Menlo Park*, 146 F.3d 629, 635 (9th Cir. 2011), that a statute is facially unconstitutional 'if it is unconstitutional in every conceivable application, or it seeks to prohibit such a broad range of protected conduct that it is unconstitutionally overbroad.'" Dkt. 25 at 12. Cedar Park argues that the Court should apply the

overbreadth standard articulated in *United States v. Stevens*, 559 U.S. 460, 473 (2010), under which a law may be invalidated if "a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." Dkt. 28 at 10–11. It is unclear whether Cedar Park invokes the overbreadth doctrine because it permits third-party standing—"a litigant whose own activities are unprotected may nevertheless challenge a statute by showing that it substantially abridges the First Amendment rights of other parties not before the court"—or for another reason. *Vill. of Schaumburg v. Citizens for a Better Env't*, 444 U.S. 620, 634 (1980). Under either standard, Cedar Park fails to convince the Court that it has standing to bring a facial challenge to SB 6219.

Regarding a typical facial challenge, Cedar Park does not argue that SB 6219 is unconstitutional as applied to secular health insurance carriers, or in Cedar Park's overall framing, unconstitutionally impacts secular *employers* purchasing health insurance for employees in Washington. Therefore, Cedar Park does not make the case that SB 6219 is unconstitutional in every conceivable application. *See Foti*, 146 F.3d at 635. Regarding a facial challenge for overbreadth, Cedar Park does not articulate that it seeks to show third-party standing, does not cite authority applying the overbreadth doctrine outside the context of speech or expression, and does not analogize authority applying the doctrine and its correspondingly relaxed standing rules to the actions it wishes to take. *See Vill. of Schaumburg*, 444 U.S. at 634 (explaining that courts permit third-party standing in the speech context "because of the possibility that protected speech or associative activities may be inhibited by the overly broad reach of the statute."). Cedar Park fails to make the

1 case that it should be permitted to invoke the overbreadth doctrine's relaxed standing

2 rules. Finding Cedar Park has failed to show it may bring a facial challenge, the Court

3 grants the motion to dismiss as to a facial challenge.

4      Next, the State argues that Cedar Park cannot demonstrate an injury-in-fact to

5 support an as-applied challenge. Cedar Park argues that it will be injured when it renews

6 or selects new health insurance coverage for its employees because it will be forced to

7 pay increased premiums to cover the reproductive health services to which it objects.

8 Dkt. 28 at 11.

9      Cedar Park bases its argument on the interaction of three provisions of

10 Washington law and an interpretation of Washington law issued by the AGO. *Id*. at 11–

11 13. First, SB 6219 requires insurance carriers to include certain reproductive health

12 services in comprehensive health insurance. RCW 48.43.072, .073. Second, health

13 carriers, health care facilities, and health care providers do not have to provide healthcare

14 services without payment. RCW 48.43.065(4). Third, the AGO has interpreted

15 Washington law to say that "[t]he insurance commissioner has authority to require health

16 care insurance carriers to include the cost of prescription contraceptives as a component

17 in the rate setting actuarial analysis, where an employer raises a conscientious objection

18 to paying these costs directly as a part of that employer's employee health care benefit

19 package." Dkt. 28 at 12 (citing AGO 2002 No. 5). Cedar Park concludes that therefore, it

20 "can be forced to provide coverage, payment, and facilitation of the very services to

21 which it objects on the basis of conscience." Dkt. 28 at 12. Cedar Park predicts that

22 "under the plain language of SB 6219, that is exactly what will occur." *Id*.

The State counters that because RCW 48.43.065(3)(a) permits organizations to refuse to purchase health insurance coverage for a service if they object to that service on religious or moral grounds and because Cedar Park does not allege that it has invoked or was denied the opportunity to invoke its rights under RCW 48.43.065(3)(a) when attempting to purchase or renew health insurance coverage for its employees, Cedar Park has failed to take advantage of Washington law protection for its religious beliefs. Dkt. 25 at 14. The State argues that this failure renders any resulting injury self-inflicted. *Id.* (citing *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 416–18 (2013) (a plaintiff's injury is not fairly attributed to a defendant when plaintiffs "inflict harm on themselves based on fears of a hypothetical future harm that is certainly not impending.")). The State also notes that Cedar Park could choose to self-insure but chooses not to based on concerns about cost for which Cedar Park does not provide evidence. Dkt. 25 at 14 n.6 (citing Dkt. 20, ¶¶ 39–44).

The Court finds that the State is correct that Cedar Park has provided insufficient evidence to support a conclusion that it has been or will certainly be injured by the requirements of SB 6219. While AGO 2002 No. 5 expresses an opinion about how insurance costs may be calculated or charged, Cedar Park has not provided evidence that insurance costs are in fact calculated or charged in a manner to which it has a religious objection, even without invocation of RCW 48.43.065(3). Moreover, AGO opinions are not law. *Stormans*, 586 F.3d at 1125 (quoting *Wash. Educ. Ass'n v. Wash. State Pub. Disclosure Comm'n*, 150 Wn.2d 612 (2003) (en banc) ("[t]he Washington Supreme Court has held that 'an agency's written expression of its interpretation of the law does not

implement or enforce the law and is advisory only.'") (internal quotation marks and parenthetical omitted)).

In this record, there is no evidence about how insurance carriers have responded to an employer's attempt to invoke its conscience objections under RCW 48.43.065(3). Without this evidence, the Court's analysis would amount to an advisory opinion on a hypothetical insurance cost structure or other hypothetical harm. *Lujan*, 504 U.S. at 561. Therefore, the Court grants the State's motion to dismiss for lack of jurisdiction because Cedar Park has failed to establish an injury-in-fact as required for standing.

**2.     Justiciability**

The State argues that because Cedar Park has not attempted to renew its employee health plan or purchase a new plan since SB 6219 went into effect on January 1, 2019, Cedar Park's claims are not ripe for adjudication. Dkt. 25 at 13.

**a.     Standard**

"Ripeness is a justiciability doctrine designed 'to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties.'" *Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 807–08 (2003) (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 148–49 (1967)). "[R]ipeness can be characterized as standing on a timeline." *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1139 (9th Cir. 2000). "If a claim is unripe, federal courts lack subject matter jurisdiction and the complaint must be

dismissed." *West Linn Corp. Park L.L.C. v. City of West Linn*, 534 F.3d 1091, 1099 (9th Cir. 2008).

"[W]hen a litigant brings a preenforcement challenge, [the Ninth Circuit has] found that 'a generalized threat of prosecution' will not satisfy the ripeness requirement"—instead, a threat of prosecution must be both genuine and imminent. *Stormans*, 586 F.3d at 1122 (quoting *Thomas*, 220 F.3d at 1139). Courts in the Ninth Circuit consider three factors when analyzing whether a preenforcement challenge alleging a threat of prosecution constitutes injury: "whether the plaintiffs have articulated a concrete plan to violate the law in question, whether the prosecuting authorities have communicated a specific warning or threat to initiate proceedings, and the history of past prosecutions or enforcement under the challenged statute." *Id. Stormans*, 586 F.3d at 1122 (internal quotation marks omitted).

### b.    Analysis

Cedar Park argues that its claims are ripe for two reasons: (1) because it will be required to purchase a health plan that violates is religious beliefs when it renews its employee health plan and (2) because it faces a genuine threat of prosecution if it does not do so. Dkt. 28 at 13.

Regarding the impact of SB 6219 on Cedar Park's obligations, the State argues that because Cedar Park has not tried to purchase or renew its employee health coverage under the conditions put in place by SB 6219, Cedar Park is asking the Court "to declare rights in a hypothetical case, which the ripeness doctrine forbids." Dkt. 25 at 15 (citing *Stormans*, 586 F.3d at 1122). The State also argues that RCW 48.43.065(3)(a)'s

continued application would permit Cedar Park to do what it argues it wants to do—purchase comprehensive employee health insurance which excludes coverage for certain reproductive health services. Dkt. 25 at 15. The Court finds that on Cedar Park's first basis, that it will be compelled to purchase a plan which includes coverage to which it objects, the claim is not ripe for the same reasons addressed in the Court's discussion of standing. Cedar Park has not presented the Court with a concrete assessment of the way the new law will impact its interests. *Nat'l Park Hosp. Ass'n*, 538 U.S. at 807–08. It may be difficult for Cedar Park to produce such an assessment because of the complex interrelationship of Cedar Park's right not to pay for certain reproductive health services, the expectation that Cedar Park employees will decline those reproductive health services due to their agreement with Cedar Park's religious principles, potential uncertainty about the reproductive health needs and beliefs of Cedar Park employees' spouses and dependents, and the potential that decreased utilization of contraception and abortion coverage would drive increased prenatal and delivery coverage utilization.

Regarding the threat of prosecution, Cedar Park fails to articulate a basis to support each of the three required factors for a preenforcement challenge. *See Stormans*, 586 F.3d at 1122. First, Cedar Park's intent to violate the law in question is not clearly articulated. Cedar Park argues that it current insurance plan does not cover the reproductive health services to which it objects and implies that Cedar Park intends to purchase this same plan for its employees going forward. Dkt. 28 at 14 ("Cedar Park's current insurance plan excludes coverage for abortion, and plans to continue to offer a plan excluding such coverage when its insurance plan is renewed on August 1, 2019.").

1    Accepting for the sake of argument Cedar Park's contention that SB 6219 in effect

2    imposes the same coverage requirements on health insurance purchasers that it does on

3    health insurance carriers, Cedar Park's intent to *purchase* a plan that violates SB 6219

4    would still require an insurance carrier to *sell* Cedar Park a plan that violates SB 6219.

5    Cedar Park does not explain whether it expects its current insurer to willingly sell Cedar

6    Park insurance coverage which violates SB 6219 or whether Cedar Park intends to violate

7    SB 6219 in another manner.

8         Second, a plaintiff cannot satisfy the element of a threat of enforcement by citing a

9    generalized threat that a law will be enforced—the threat of enforcement or warning of

10   enforcement must be particular to the plaintiff. *Stormans*, 586 F.3d at 1125. The State

11   argues that Cedar Park "does not allege that it attempted to purchase its desired health

12   plan but was told it could not," characterizing the complaint as implicitly admitting that

13   "Cedar Park has not talked to carriers about what plans they provide." Dkt. 25 at 15. The

14   Court agrees that there is no information in the record that shows Cedar Park has sought

15   and been refused a plan that complies with both RCW 48.43.065(3)(a) and SB 6219. *See*

16   Dkt. 25 at 15. As noted, there is also no information in the record that shows Cedar Park

17   has identified an insurer willing to sell it coverage in violation of SB 6219. While Cedar

18   Park correctly notes that Washington law "does not explain how to reconcile these

19   provisions that create an exemption, require continued coverage for the objectionable

20   items, and do not require the carrier to provide them for free," Dkt. 28 at 11, there is

21   nothing in the record to show that these propositions will be reconciled in an

22   unconstitutional manner, either in general or in the context of specific insurance coverage

Cedar Park intends to purchase. While Cedar Park cites a number of laws it believes it would violate by refusing to comply with SB 6219, it cites no communications from or statements of the State which could form the basis of Cedar Park's belief that it will be subject to enforcement. *See* Dkt. 28 at 14–15.

Third, the State argues that because Cedar Park fails to allege it or any other entity has been subject to prosecution or enforcement under SB 6219, Cedar Park has failed to satisfy the history of enforcement element. Dkt. 25 at 16. The State argues that Cedar Park's citation to OIC's authorization of a health insurance plan from a religiously sponsored health insurance carrier that does not follow SB 6219's requirements underscores this lack of enforcement. Dkt. 25 at 16 (citing Dkt. 20, ¶ 57).

Cedar Park counters that Washington law functions to permit this religiously sponsored insurance carrier to entirely avoid paying for the reproductive health services to which that insurer objects but will subject Cedar Park to increased insurance cost due to the requirement that Cedar Park's insurance carrier provide coverage for reproductive health services to which Cedar Park objects. Dkt. 28 at 15. Cedar Park concludes that it is thus treated less favorably than the religious insurance carrier. Dkt. 28 at 15.[3] While this argument may be relevant to the merits of Cedar Park's equal protection claim, it does not show a history of prosecution or enforcement which would lead a court to authorize a preenforcement challenged. *Stormans*, 586 F.3d at 1122. The Court finds that on the

---

[3] Cedar Park also does not explain why it cannot purchase insurance from this carrier.

record before it, enforcement of SB 6219 against insurance purchasers like Cedar Park is only hypothetical.

Finding Cedar Park has failed to satisfy any of the elements of a preenforcement challenge, the Court finds no basis to conclude that Cedar Park's claims are ripe. *West Linn Corp. Park*, 534 F.3d at 1099. Lack of ripeness provides an alternative basis for the Court to grant the motion to dismiss. *Id.*

### 3. Primary Jurisdiction

The primary jurisdiction doctrine permits courts to stay a case or dismiss claims without prejudice when an issue is pending resolution "within the special competence of an administrative agency." *Clark v. Time Warner Cable*, 523 F.3d 1110, 1114 (9th Cir. 2008). The doctrine is appropriate for cases of first impression or particularly complex issues legislatively committed to a regulatory agency. *Id.* (citing *Brown v. MCI WorldCom Network Servs.*, 277 F.3d 1166 (9th Cir. 2002)).

The State describes the OIC's pending rules as making clear or reiterating that SB 6219 "does not affect an individual's or organization's rights set forth in RCW 48.43.065" and argues that if finalized, the rules "would eliminate any ambiguity Cedar Park apparently believes to exist about how the religious and conscience rights of individuals and organizations will harmonize with the requirements imposed on carriers to provide particular services." Dkt. 25 at 17. Cedar Park counters that the OIC Rulemaking Draft "does not change the fact that RCW 48.43.065 will still require Cedar Park to provide payment for abortion through increased premiums or fees." *Id*. at 17.

On one hand, in the Court's reading, the OIC Rulemaking Draft does not currently specify how an insurer may distribute risk or cost from reproductive health services to which a prospective purchaser objects. OIC Rulemaking Draft. On the other hand, there may be a number of strategies available to insurers to comply with both SB 6219 and RCW 48.43.065 involving different insurance principles and actuarial tools, alternate funding sources, and/or broad or siloed distribution of costs. *See* Dkt. 32 at 9; *see* also Dkt. 36, Declaration of Molly Nolette, Deputy Insurance Commissioner for Rates and Forms. It appears likely that a final rule would not enumerate approved strategies for insurer compliance and would simply reiterate, as does the current OIC Rulemaking Draft, that "[t]his subchapter does not diminish or affect any rights or responsibilities provided under RCW 48.43.065." OIC Rulemaking Draft.

Therefore, it is possible that the final OIC rule could aid a court's decision about whether a religious insurance purchaser's rights are or are likely to be protected or violated. It is also possible that under a final OIC rule similar to the rulemaking draft, Cedar Park could make an argument that insurer cost distribution strategies which OIC views as compliant with both SB 6219 and RCW 48.43.065 in fact violate Cedar Park's rights. However, on Cedar Park's claims as currently structured, it is unnecessary for the Court to invoke the prudential doctrine of primary jurisdiction. *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 760 (9th Cir. 2015). Efficiency and judicial economy are the primary considerations in deciding whether to invoke primary jurisdiction. *Id.* (citing *Rhoades v. Avon Prods., Inc.*, 504 F.3d 1151, 1165 (9th Cir. 2007)). Given the lack of particularity in Cedar Park's claims as currently articulated the Court finds that invoking

primary jurisdiction would be superfluous at this point in the litigation. If the Court makes a different conclusion at a later point, it would consider Cedar Park's objections to the doctrine's applicability. Dkt. 28 at 16.

**B.      Motion for Preliminary Injunction**

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Without standing, the Court cannot find Cedar Park is likely to succeed on the merits. Moreover, as the Court has found that on the facts before it Cedar Park has not demonstrated injury required for standing, the Court cannot on those same facts conclude that Cedar Park has shown "irreparable injury is *likely* in the absence of an injunction." *Id*. at 22.

In Cedar Park's reply to its motion for preliminary injunction, Cedar Park argues for the first time that the disparate treatment of church employers versus religious health care provider, religiously sponsored health carrier, and religious health care facility employers constitutes injury-in-fact sufficient for standing. Dkt. 38 at 9–10. Submission of arguments or evidence for the first time in a reply is improper because it unfairly deprives the non-movant of an opportunity to respond. *See Provenz v. Miller*, 102 F.3d 1478, 1483 (9th Cir. 1996). Disparate treatment as a basis for injury-in-fact is also not clearly articulated in the operative complaint and is the primary subject of Cedar Park's motion to amend. *See, e.g.*, Dkt. 42 at 3; Dkt. 42-1, ¶¶ 59–72; Dkt. 44 at 1. As discussed

below, the Court grants the motion to amend. The Court finds that full briefing on this basis for standing in a motion for preliminary injunction or any other motion submitted following a second amended complaint would afford the State the due process protection of adequate notice and opportunity to respond.

Therefore, the Court denies Cedar Park's motion for preliminary injunction.

**C.    Motion for Leave to Amend**

Cedar Park seeks leave to amend to add a specific challenge to the constitutionality of the 'conscience clause' exception in RCW 48.43.065 and to correct two factual discrepancies related to its current employee health insurance plan. Dkt. 42 at 1.

Fed. R. Civ. P. 15(a)(2) provides that following a first amended pleading, "a party may amend its pleading only with the opposing party's written consent or the court's leave." In determining whether amendment is appropriate, the Court considers five potential factors: (1) bad faith, (2) undue delay, (3) prejudice to the opposing party, (4) futility of amendment, and (5) whether there has been previous amendment. *United States v. Corinthian Colleges*, 655 F.3d 984, 995 (9th Cir. 2011). Leave to amend "shall be freely given when justice so requires." *AmerisourceBergan Corp. v. Dialysist West, Inc.*, 465 F.3d 946, 951 (9th Cir. 2006).

"[A] proposed amendment is futile only if no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense." *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988). Leave to amend should be denied when "it appears beyond doubt that the proposed pleading would

be subject to dismissal." *Wizards of the Coast LLC v. Cryptozoic Entm't LLC*, 309

F.R.D. 645, 654 (W.D. Wash. 2015).

Cedar Park's proposed second amended complaint alleges that the religious or moral right of refusal for health care providers, religiously sponsored health carriers, and health care facilities is broader than the right of refusal for health care purchasers. Dkt. 42-1. Cedar Park characterizes this difference as violating Cedar Park's rights by treating it less favorably than religious organizations which are health care providers, carriers, and facilities, subjecting it to religious discrimination which "results in ongoing harm to [Cedar Park] apart from SB 6219." Dkt. 44 at 2.

The State argues that Cedar Park's proposed amendments should be denied because the amendments fail to create standing, show that Cedar Park's claims are ripe, or show that the primary jurisdiction doctrine should not apply. Dkt. 43 at 5. The State explains that SB 6219 and RCW 48.43.065 "distinguish between the functions entities have in the health insurance market—whether they are health care providers, insurers, or employers—and not between religious organizations." *Id*. at 4. It is not clear to the Court that this difference does not simply mean that, as the State explained in its opposition to Cedar Park's motion for preliminary injunction, Dkt. 35 at 20, that when an entity is acting as a health care provider or insurance carrier, it has the right to refuse to provide or pay for a particular service, and when an individual or entity, including those same health care providers or insurance carriers, is acting as a health insurance purchaser, that individual or entity has the right not to purchase a particular service.

However, there is some conceivable set of facts under which Cedar Park could show as alleged that the health insurance which health care providers, health insurance carriers, and health care facilities purchase for their employees is exempt from SB 6219's requirements in a way that the health insurance which Cedar Park purchases for its employees is not and that this constitutes a cognizable injury. *See* Dkt. 42-1, ¶ 64. The Court would require a fully briefed motion to determine whether the primary jurisdiction doctrine would be appropriate on that set of facts. Given the liberal standard for amended pleadings, the Court concludes Cedar Park should be granted leave to amend its complaint.

## III.  ORDER

Therefore, it is hereby **ORDERED** that the State's motion to dismiss, Dkt. 25, is **GRANTED**; Cedar Park's motion for preliminary injunction, Dkt. 29, is **DENIED**; and Cedar Park's motion for leave to amend, Dkt. 42, is **GRANTED**.

Dated this 2nd day of August, 2019.

BENJAMIN H. SETTLE
United States District Judge