UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | | |
|---|---|---|
| CEDAR PARK ASSEMBLY OF GOD OF KIRKLAND, WASHINGTON, | ) ) ) | Civil No. 3:19-cv-05181 |
| Plaintiff, | ) ) ) | **PLAINTIFF'S RENEWED MOTION FOR PRELIMINARY INJUNCTION AND MEMORANDUM IN SUPPORT** |
| v. | ) ) | |
| MYRON "MIKE" KREIDLER, in his official capacity as Insurance Commissioner for the State of Washington; JAY INSLEE, in his official capacity as Governor of the State of Washington, | ) ) ) ) | NOTE ON MOTION CALENDAR: Friday, November 15, 2019 |
| | ) ) | ORAL ARGUMENT REQUESTED |
| Defendants. | ) | |

Plaintiff's Renewed Motion for Preliminary
Injunction and Memorandum in Support
3:19-cv-05181

ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, Arizona 85260
(480) 444-0020

# **TABLE OF CONTENTS**

Table of Authorities ...................................................................................................... iii

INTRODUCTION ........................................................................................................... 1

FACTUAL BACKGROUND ............................................................................................ 2

I.     Plaintiff Cedar Park Assembly of God of Kirkland, Washington ......................... 2

II.    Washington Senate Bill 6219 and RCW § 48.43.065........................................... 4

       A.     SB 6219 requires churches to provide insurance coverage for abortion. ............... 4

       B.     There are numerous broad exemptions to SB 6219, but only a narrow religious exemption that discriminates against organizations like Cedar Park. ....................................................................................................... 5

       C.     The penalties for violating SB 6219 include fines and jail time............................ 7

III.   The Effect of the Statutes on Cedar Park............................................................ 7

ARGUMENT ................................................................................................................... 8

I.     Cedar Park has standing to pursue its claims........................................................ 8

       A.     Cedar Park is currently compelled to pay for abortion coverage in its employee health care plan............................................................................ 8

       B.     Unequal treatment is sufficient injury to confer standing for Plaintiff's Free Exercise, Equal Protection, and Establishment Clause claims. ............................. 8

       C.     Cedar Park's injury is due to Defendants' conduct. ............................................. 9

II.    Cedar Park's claims are ripe. .............................................................................. 10

III.   Cedar Park is likely to succeed on the merits of its Free Exercise claim primarily because SB 6219 and RCW § 48.43.065 are not neutral and generally applicable............ 10

       A.     The Statutes impose an impermissible burden on Cedar Park's exercise of religion. ....................................................................................................... 11

       B.     The Statutes are neither neutral nor generally applicable. ................................... 11

            1.     The Statutes provide exemptions that undermine the Defendants' stated interest in providing women access to health benefits. ................ 12

            2.     The Statutes are not neutral in their operation. ......................................... 14

Plaintiff's Renewed Motion for Preliminary
Injunction and Memorandum in Support
3:19-cv-05181

i

ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, Arizona 85260
(480) 444-0020

C.      The Statutes do not survive strict scrutiny.............................................17

    1.      The Statutes do not serve a rational, much less compelling,
            government interest....................................................................17

    2.      The Statutes are not narrowly tailored.....................................18

D.      SB 6219 violates the Free Exercise Clause because it requires Cedar Park to
        violate its religious beliefs. ..........................................................19

E.      The Statutes violate Cedar Park's hybrid Free Exercise rights because they
        violate additional fundamental rights............................................20

F.      *Smith* should be overruled..............................................................21

IV.     The Statutes' disparate treatment of religious organizations likely violates Equal
        Protection. ..................................................................................21

V.      The Statutes' interence with church internal affairs likely violates Church
        Autonomy. ..................................................................................22

VI.     The Statutes' hostility toward and disparate treatment of religious organizations
        likely violates the Establishment Clause........................................23

VII.    Cedar Park has fulfilled the remaining preliminary injunction factors..............23

CONCLUSION........................................................................................24

Certificate of Service ...............................................................................26

Plaintiff's Renewed Motion for Preliminary
Injunction and Memorandum in Support                    ii
3:19-cv-05181

ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, Arizona 85260
(480) 444-0020

## <u>Cases</u>

*ACLU v. Ashcroft*,
    322 F.3d 240 (3d Cir. 2003)................................................................24

*Alliance for the Wild Rockies v. Cottrell*,
    632 F.3d 1127 (9th Cir. 2011) ........................................................8, 24

*Angelotti Chiropractic, Inc. v. Baker*,
    791 F.3d 1075 (9th Cir. 2015) ..............................................................8

*Arizona Dream Act Coalition v. Brewer*,
    757 F.3d 1053 (9th Cir. 2014) ............................................................21

*Braunfeld v. Brown*,
    366 U.S. 599 (1961)............................................................................11

*Brown v. Entertainment Merchants Ass'n*,
    564 U.S. 786 (2011)............................................................................17

*Burwell v. Hobby Lobby*,
    573 U.S. 682 (2014)......................................................................11, 19

*Cantwell v. Connecticut*,
    310 U.S. 296 (1940) ...........................................................................24

*Canyon Ferry Road Baptist Church v. Unsworth*,
    556 F.3d 1021 (9th Cir. 2009) .............................................................12

*Church of Lukumi Babalu Aye v. City of Hialeah*,
    508 U.S. 520 (1993).......................................................................10–18

*Clark v. Jeter*,
    486 U.S. 456 (1988)............................................................................21

*Colorado Christian v. Weaver*,
    534 F.3d 1245 (10th Cir. 2008) ...........................................................15

*Comm. for Pub. Educ. & Religious Liberty v. Nyquist*,
    413 U.S. 756 (1973)............................................................................23

*Elrod v. Burns*,
    427 U.S. 347 (1976)............................................................................23

*Employment Division, Dep't of Human Resources of Oregon v. Smith*,
    494 U.S. 872 (1990)............................................................................10

Plaintiff's Renewed Motion for Preliminary
Injunction and Memorandum in Support
3:19-cv-05181

iii

ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, Arizona 85260
(480) 444-0020

*Forsyth County. v. Nationalist Movement,*
    505 U.S. 123 (1992)..........................................................................24

*Fraternal Order of Police Newark Lodge No. 12 v. City of Newark,*
    170 F.3d 359 (3d Cir. 1999).........................................11, 12, 14–15

*Frisby v. Schultz,*
    487 U.S. 474 (1988)..........................................................................18

*Gonzales v. O Centro Espirita Beneficente Uniao do Vogetal,*
    546 U.S. 418 (2006)......................................................................17–18

*Grutter v. Bollinger,*
    539 U.S. 306 (2003)..........................................................................19

*Heckler v. Mathews,*
    465 U.S. 728 (1984)............................................................................9

*Hosanna-Tabor Evangelical Lutheran Church & Sch. v. EEOC,*
    565 U.S. 171 (2012)..........................................................................19

*Kedroff v. St. Nicholas Cathedral,*
    344 U.S. 94 (1952)............................................................................22

*Kennedy v. Bremerton School District,*
    139 U.S. 634 (2019)..........................................................................21

*Larson v. Valente,*
    456 U.S. 228 (1982)..........................................................................15

*Lehman v. City of Shaker Heights,*
    418 U.S. 298 (1974)............................................................................9

*Masterpiece Cakeshop, Ltd. v. Colo. Civil Rights Comm'n,*
    138 S. Ct. 1719 (2018)..........................................................12, 16, 20

*Midrash Sephardi, Inc. v. Town of Surfside,*
    366 F.3d 1214 (11th Cir. 2004) .......................................................12

*Miller v. Reed,*
    176 F.3d 1202 (9th Cir. 1999) ....................................................1, 20

*NE. Fla. Chapter of the Associated Gen. Contractors of Am. v. Jacksonville,*
    508 U.S. 656, (1993)...........................................................................9

*Plyler v. Doe,*
    457 U.S. 202 (1982)..........................................................................21

Plaintiff's Renewed Motion for Preliminary
Injunction and Memorandum in Support
3:19-cv-05181

iv

ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, Arizona 85260
(480) 444-0020

*Presbyterian Church v. Mary Elizabeth Blue Hull Memorial Presbyterian Church*,
  393 U.S. 440 (1969) .................................................................................... 22

*Reed v. Town of Gilbert*,
  135 S. Ct. 2218 (2015) ................................................................................ 24

*Sammartano v. First Jud. Dist. Ct.*,
  303 F.3d 959 (9th Cir. 2002) ...................................................................... 23

*San Jose Christian College v. City of Morgan Hill*,
  360 F.3d 1024 (9th Cir. 2004) .................................................................... 16

*Serbian Eastern Orthodox Diocese v. Milivojevich*,
  426 U.S. 696 (1976) .................................................................................... 22

*Sherbert v. Verner*,
  374 U.S. 398 (1963) ...................................................................................... 1

*Stormans v. Wiesman*,
  794 F.3d 1080 (9th Cir. 2015) .................................................................... 13

*Susan B. Anthony List v. Driehaus*,
  573 U.S. 149 (2014) .................................................................................... 10

*Telescope Media Group v. Lucero*,
  -- F.3d. --, 2019 WL 397921 (8th Cir. Aug. 23, 2019) ............................. 10

*Thomas v. Review Bd. of the Ind. Employment Security Div.*,
  450 U.S. 707 (1981) .................................................................................... 18

*Trinity Lutheran Church of Columbia, Inc. v. Comer*,
  137 S. Ct. 2012 (2017) ................................................................................ 19

*United States v. Playboy Entm't Grp., Inc.*,
  529 U.S. 803 (2000) ................................................................................ 18, 19

*Watson v. Jones*,
  80 U.S. 679 (1871) ...................................................................................... 22

**Statutes**

RCW § 48.01.080 ................................................................................................ 7

RCW § 48.43.005 .......................................................................... 1, 5, 12, 19

RCW § 48.43.065 .................................................................................... *passim*

RCW § 48.43.072 ................................................................................................ 1

Plaintiff's Renewed Motion for Preliminary
Injunction and Memorandum in Support               v
3:19-cv-05181

ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, Arizona 85260
(480) 444-0020

**Other Authorities**

AGO 2002 No. 5 .................................................................................................5, 6

AGO 2006 No. 10 ..............................................................................................5, 7

Douglas Laycock, *Theology Scholarships, the Pledge of Allegiance, and Religious Liberty: Avoiding the Extremes but Missing the Liberty*, 118 Hav. L. Rev. 155, 210 (2004). ...........................................................11, 13

Matt Markovich, *Catholic Bishops of Wash. ask Gov. Inslee to Veto Abortion Insurance Bill*, KOMO News, March 5, 2018, https://bit.ly/2Uuu5Nf ....................................................16

Michael W. McConnell, *Free Exercise Revisionism and the* Smith *Decision*, 57 U. Chi. L. Rev. 1109 (1990) ...........................................................................21

Richard F. Duncan, *Free Exercise is Dead, Long Live Free Exercise*, 3 U. Pa. J. Const. 850, 883 (2001) ..........................................................12, 13

Plaintiff's Renewed Motion for Preliminary
Injunction and Memorandum in Support
3:19-cv-05181

vi

Alliance Defending Freedom
15100 N. 90th Street
Scottsdale, Arizona 85260
(480) 444-0020

Plaintiff Cedar Park Assembly of God of Kirkland, Washington, moves under Fed. R. Civ. P. 65 to preliminarily enjoin Defendants' enforcement of Senate Bill 6219 (codified as RCW § 48.43.072 and .073) and RCW § 48.43.065, facially and as-applied to Cedar Park, because the Statutes violate the First and Fourteenth Amendments to the United States Constitution.

## INTRODUCTION

This Court dismissed Cedar Park's First Amended Verified Complaint because there was no evidence demonstrating how insurance carriers had responded to SB 6219 and the limited religious exemption in RCW § 48.43.065. ECF No. 45 at 12. Cedar Park's insurance carrier recently informed Cedar Park that, because of SB 6219, its health insurance plan beginning September 1, 2019, must provide coverage for abortion, and the insurer will not allow Cedar Park to forego that coverage pursuant to the limited exemption in RCW § 48.43.065. Decl. of Jason "Jay" Smith at ¶¶ 3–4. Cedar Park is therefore currently suffering injury as a result of SB 6219.

The State of Washington cannot compel a church to affirm a practice repugnant to its beliefs without surviving strict scrutiny—the most demanding constitutional test. *See Sherbert v. Verner*, 374 U.S. 398, 402 (1963). The Statutes, SB 6219 and RCW § 48.43.065, cannot pass this exacting test and therefore violate numerous constitutional protections.

The Statutes are not neutral or generally applicable, making them subject to strict scrutiny under the Free Exercise Clause. *See Emp. Div. Dep't of Hum. Res. of Oregon v. Smith*, 494 U.S. 872 (1990). SB 6219 is also subject to strict scrutiny because it requires Cedar Park to violate long-established historical religious practices involving the sanctity of human life and opposition to abortion, and because it violates the church autonomy doctrine of the religion clauses of the First Amendment. The Statutes fail for many other reasons, including because they violate the hybrid-rights doctrine of *Smith* that the Ninth Circuit recognized in *Miller v. Reed*, 176 F.3d 1202, 1207 (9th Cir. 1999), the Equal Protection Clause, and the Establishment Clause.

Cedar Park is suffering irreparable harm because its employee insurance plan must cover abortion due to the challenged statutes. Cedar Park's insurer will remove coverage for abortion from Cedar Park's insurance plan if it is legally permitted to do so. Smith Decl. at ¶ 7. A

Plaintiff's Renewed Motion for Preliminary
Injunction and Memorandum in Support
3:19-cv-05181

1

ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, Arizona 85260
(480) 444-0020

preliminary injunction is therefore necessary to halt the ongoing discrimination the Church is facing.

**FACTUAL BACKGROUND**

**I.     Plaintiff Cedar Park Assembly of God of Kirkland, Washington**

Cedar Park Assembly of God has been serving Bothell and the greater Eastside of the Seattle area for nearly 50 years. Second Amended Verified Complaint ("V.C.") ¶ 18. Based on its teaching that all humankind has dignity and value because we are made in God's image, a substantial part of the Church's ministry is focused on preserving and celebrating life from its beginning until its natural end. V.C. ¶¶ 27–30. Cedar Park hosts an annual service known as "Presentation Sunday," where church leaders and members pray for and support couples experiencing infertility. *Id.* ¶ 34. It supports expectant mothers by partnering with a local pregnancy center and hosting an ultrasound unit on its campus. *Id.* at ¶ 35. And the Church hosts an annual free camp for about 75 children in foster care. *Id.* at ¶ 38. Cedar Park also cares for those at the end of life with its funeral home and chapel. *Id.* at 22. This pro-life focus is over and above the countless other ways the church serves the community through Cedar Park Christian Schools; a university-level ministry program; a counseling program; and various community groups and ministries that enhance the lives of women, men, young adults, and children. V.C. ¶¶ 22–23.

The Church operates according to its Constitution and Bylaws, including its "Position Regarding Sanctity of Human Life":

> Under the *Imago Dei* principle, all human life is sacred and made by God, in His image. Because all humans are image-bearers, human life is of immeasurable worth in all of its dimensions, including pre-born babies, the aged, the physically or mentally challenged, and every other stage or condition from conception through natural death. As such, we as Christians are called to defend, protect, and value all human life.

*Id.* at ¶ 25. The Church believes and teaches that abortion ends a human life, and is therefore a violation of the Bible's command against the intentional destruction of the innocent. *Id.* at ¶¶ 27–28. Accordingly, Cedar Park believes and teaches that participation in, facilitation of, or payment

Plaintiff's Renewed Motion for Preliminary
Injunction and Memorandum in Support
3:19-cv-05181

2

ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, Arizona 85260
(480) 444-0020

for abortion or abortifacient drugs and devices in any circumstance is a grave sin. *Id*. at ¶ 29.

Cedar Park expects its employees to abide by and agree with the Church's moral and ethical standards, including its religious beliefs and teachings on the sanctity of life, in both their work life and private life. V.C. ¶ 31. All employees are required to sign a statement agreeing to abide by Cedar Park's standards of conduct, which provides, in pertinent part:

> Cedar Park employees must conduct their professional and personal lives in a manner that provides clear evidence of a Christian life and character that commends the Gospel, strengthens the Church and honors God. *Cedar Park expects its employees to refrain from behavior that conflicts or appears inconsistent with evangelical Christian standards as determined in the sole and absolute discretion of Cedar Park*… Cedar Park expects all of its employees to strive toward living a life that reflects the values, mission, and faith of Cedar Park.

*Id*. at ¶ 32 (emphasis added).

The Church promotes the physical, emotional, and spiritual well-being of its employees and their families by offering health insurance to its employees. V.C. ¶ 39. Maternity care is an integral part of this commitment. *Id*. at ¶ 45. Cedar Park believes that it has a religious obligation to provide for the personal needs of its employees, which includes the provision of health insurance coverage. *Id*. at ¶ 41. Because of its religious beliefs, Cedar Park endeavors to offer health insurance coverage to its employees in a way that does not cause it to pay for abortions or abortifacient drugs and devices. *Id*. at ¶ 47. Paying premiums or fees for any plan that covers these procedures or items, whether expressly or surreptitiously under another label like "overhead expense," would violate Cedar Park's beliefs regarding the sanctity of life. Smith Decl. ¶ 6. 3. On August 13, 2019, Cedar Park's insurance provider, Kaiser Permanente, informed Cedar Park that its health care plan set to renew on September 1, 2019, must include coverage for abortion pursuant to SB 6219.[1] Kaiser has refused to remove the coverage pursuant to the limited exemption in RCW

---

[1] Kaiser is currently providing coverage for all FDA-approved contraceptives directly to those covered by Cedar Park's health care plan, which no longer provides coverage for contraceptives. Smith Decl. at ¶ 5. Cedar Park is not directly paying for this coverage, but access to such coverage is facilitated by Cedar Park's health care plan. *Id*. Apparently due to a flawed understanding of federal law not at issue here, Kaiser refuses to remove coverage for only abortifacient contraceptives, and has required Cedar Park to remove coverage for all contraceptives.

Plaintiff's Renewed Motion for Preliminary
Injunction and Memorandum in Support
3:19-cv-05181

3

ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, Arizona 85260
(480) 444-0020

§ 48.43.065. *Id.* at ¶ 4. Cedar Park is committed to provide for its employees' health, and in doing so requires continuity of insurance coverage for its employees. Smith Decl. ¶ 3; V.C. ¶ 39. As a result of the late notice of the effect of SB 6219, Cedar Park was forced to renew its insurance plan—which now includes abortion coverage—under protest. Smith Decl. ¶ 3. Kaiser has informed Cedar Park that it can remove abortion coverage from Cedar Park's insurance plan if there were a court order enjoining the Statutes in place. *Id.* at ¶ 7.

Contrary to Defendants' claim that Cedar Park should just change its type of insurance or its carrier, the answer to a Free Exercise violation is not for the plaintiff to change its behavior to eliminate the violation, but rather for the government to remove the violation. Moreover, Cedar Park has about 185 employees eligible for health insurance. V.C. ¶ 20. Group health insurance is the only viable way for the Church to provide coverage consistent with its call to care for its employees and its legal obligations under the Patient Protection and Affordable Care Act ("ACA"). *Id.* at ¶ 42. Cedar Park has evaluated becoming self-insured and determined that it is not a viable option. It would cost the Church roughly $243,125 annually, and that number is expected to double within the next several years due to increase in plan use. *Id.* at ¶ 43. More importantly, switching to a self-insurance plan is likely to have a catastrophic effect on employees and family members battling serious illness. Smith Decl. ¶¶ 9–10. Group health insurance is Cedar Park's only viable option to fulfill its religious commitment to its employees. V.C. ¶ 44.

## II.    Washington Senate Bill 6219 and RCW § 48.43.065.

### A.    SB 6219 requires churches to provide insurance coverage for abortion.

SB 6219 provides that "if a health plan issued or renewed on or after January 1, 2019, provides coverage for maternity care or services, the health plan must also provide a covered person with substantially equivalent coverage to permit the abortion of a pregnancy." V.C. Ex. A at § 3(1). A health plan "may not limit in any way a person's access to services related to the abortion of a pregnancy." *Id.* at § 3(2)(a). SB 6219 further requires all insurance plans issued or renewed on or after January 1, 2019, to provide coverage for "[a]ll contraceptive drugs, devices, and other products, approved by the federal food and drug administration, including over-the-

Plaintiff's Renewed Motion for Preliminary
Injunction and Memorandum in Support
3:19-cv-05181

4

ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, Arizona 85260
(480) 444-0020

counter contraceptive drugs, devices, and products, approved by the federal food and drug administration," and "[t]he consultations, examinations, procedures, and medical services that are necessary to prescribe, dispense, insert, deliver, distribute, administer, or remove the drugs, devices, and other services" related to the same. V.C. Ex. A at § 2(1), codified at RCW § 48.43.072.

**B.    There are numerous broad exemptions to SB 6219, but only a narrow religious exemption that discriminates against organizations like Cedar Park.**

SB 6219 and the other state laws informing its application contain numerous exemptions. Thirteen different types of insurance plans are exempted from the definition of "health plan," including plans for the disabled, self-funded plans, and student-only plans. RCW § 48.43.005(26). SB 6219 also exempts plans if compliance with the legislation might jeopardize federal funding to Washington. V.C. Ex. A at § 3(5). And the law does not apply to employer-sponsored plans that do not provide maternity-care coverage. *Id.* at 3(1).

Washington State law affords a comprehensive exemption for a select class of religious health care providers, carriers, and facilities. RCW § 48.43.065(2)(a). But it provides only a narrow, inadequate exemption for other religious organizations like Cedar Park that still allows them to be billed for objectionable coverage. RCW § 48.43.065(3)(a) states "[n]o individual or organization with a religious or moral tenet opposed to a specific service may be required to purchase coverage for that service or services if they object to doing so for reason of conscience or religion." But the next subsection states that "[t]he provisions of this section shall not result in an enrollee being denied coverage of, and timely access to, any service or services excluded from their benefits package as a result of their employer's …exercise of the conscience clause in (a) of this subsection." RCW § 48.43.065(3)(b). And an insurance carrier cannot be forced to pay for the additional coverage. RCW § 48.43.065(4).

The Washington Attorney General issued two opinions explaining how all of this works and demonstrating that this exemption provides no real protection for Cedar Park's religious beliefs.[2]

---

[2] AGO 2002 No. 5, Interpretation of "Conscientious Objection" Statute Allowing Employers to Refrain from Including Certain Items in the Employee Health Care Benefit Package (Aug. 8, 2002), https://www.atg.wa.gov/agoopinions/interpretation-conscientious-objection-statute-allowing-employers-refrain-including, and AGO 2006

Plaintiff's Renewed Motion for Preliminary
Injunction and Memorandum in Support
3:19-cv-05181

5

ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, Arizona 85260
(480) 444-0020

The 2002 opinion concludes that, under RCW § 48.43.065, "[t]he insurance commissioner has authority to require health care insurance carriers to include the cost of [the objectionable coverage] as a component in the rate setting actuarial analysis, where an employer raises a conscientious objection to paying these costs directly as part of that employer's employee health care benefit package." AGO 2002 No. 5. The opinion explains that RCW § 48.43.065(3)(b) "appears to preclude requiring an enrollee to pay an extra charge to receive such services, especially when read in conjunction with the Legislature's statement recognizing the right of individuals enrolled in such plans 'to receive the full range of services covered under the plan.'" *Id*. Therefore, the religious exemption "may *not* preclude all mechanisms whereby an employer would provide payments to others without direct purchase of the services to which the employer objects." *Id*.

Importantly, "nothing in the conscientious objection law requires health carriers to provide services 'without appropriate payment of premium or fee' as reflecting the overall principle that the provision of these services should be in accordance with recognized insurance principles." *Id*. The opinion noted that the phrase "'appropriate payment of premium or fee'" can be interpreted to mean that "[i]nclusion of the cost of [the objectionable] coverage as a component … in the actuarial analysis of a carrier's rates is therefore permissible under RCW 48.43.065." *Id*. So, Cedar Park can be forced to provide coverage, payment, and facilitation of the very services to which it objects on the basis of conscience.[3] The 2006 Attorney General opinion reaffirms the 2002 opinion's conclusion: "RCW 48.43.065 is designed to give certain 'conscience clause' rights to

---

No. 10, Extent of Employer's Option to Provide Employee Health Insurance Without Including Coverage of Prescription Contraceptives (May 3, 2006), https://www.atg.wa.gov/ago-opinions/extent-employer-s-option-provide-employee-health-insurance-without-including-coverage.

[3] Additionally, the Attorney General made clear that refusal to provide coverage for reproductive health services, while providing similar services, constitutes an unfair trade practice under RCW §§ 48.30.300 and .010, even when that refusal is "on the basis of the 'conscientious objector' statute, RCW § 48.43.065." AGO 2002 No. 5. If an *employer* or a carrier offers a health care plan that exempts reproductive health coverage (while providing similar, but not objectionable, coverage), it "would constitute an unfair practice [under the above statutes] and is not an option for either insurance carriers or employers." *Id*.

Plaintiff's Renewed Motion for Preliminary
Injunction and Memorandum in Support
3:19-cv-05181

6

ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, Arizona 85260
(480) 444-0020

employers and health carriers but *also to maintain access of individual employees to a full range of health care service*." AGO 2006 No. 10. (emphasis added).

A different religious exemption in RCW § 48.43.065 provides: "No individual health care provider, religiously sponsored health carrier, or health care facility may be required by law or contract in any circumstances to participate in the provision of or payment for a specific service if they object to so doing for reason of conscience or religion." RCW § 48.43.065(2)(a). This exemption does *not* allow the provider to charge the religious objector increased premiums to facilitate the objectionable procedure. *Id*. at § (2)(b). RCW § 48.43.065 therefore treats religious health care organizations more favorably than Cedar Park.

**C.      The penalties for violating SB 6219 include fines and jail time.**

Cedar Park, as well as its pastor, board members, and other leaders are subject to fines and even jail time of up to 364 days for failure to comply with SB 6219. RCW § 48.01.080.

**III.    The Effect of the Statutes on Cedar Park**

Because Cedar Park provides comprehensive maternity coverage in its employee health care plan, SB 6219 requires the Church to provide abortion coverage. V.C. ¶ 49. Defendants make no adequate allowance for the religious freedom of religious employers and churches, such as Cedar Park, who object to paying for, facilitating access to, or providing insurance coverage for abortion or abortifacient drugs under any circumstance. *Id.* at ¶ 51. Given the number of Cedar Park's full-time employees, the ACA requires the Church to provide health insurance to its employees, including full coverage for maternity care. *Id.* at ¶¶ 79–80. Failure to provide health insurance in accordance with ACA requirements subjects Cedar Park to crippling monetary penalties. *Id.* at ¶ 81. In sum, SB 6219 impermissibly forces Cedar Park to choose between violating state law and violating its deeply held religious beliefs by paying for abortion coverage.

And RCW § 48.43.065 discriminates against religious ogranizations such as Cedar Park because it provides a more favorable exemption for religious health care organizations, allowing such organizations to be completely exempt from compliance with SB 6219. Cedar Park could not

Plaintiff's Renewed Motion for Preliminary
Injunction and Memorandum in Support
3:19-cv-05181

7

ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, Arizona 85260
(480) 444-0020

be forced to pay for the objectionable coverage through increased premiums and fees if it were a Catholic hospital or religious doctor in private practice.

## ARGUMENT

In considering a preliminary injunction, the Court reviews whether a plaintiff is "'likely to succeed on the merits, . . . likely to suffer irreparable harm in the absence of preliminary relief,' whether 'the balance of equities tips in [its favor],' and whether "an injunction is in the public interest.'" *Angelotti Chiropractic, Inc. v. Baker*, 791 F.3d 1075, 1081 (9th Cir. 2015) (quoting *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011)). "Serious questions going to the merits and hardship balance that tips sharply towards plaintiff can also support issuance of a preliminary injunction, so long as there is a likelihood of irreparable injury and the injunction is in the public interest." *Id.* (quoting *Cottrell*, 632 F.3d at 1132).

## I. Cedar Park has standing to pursue its claims.

### A. Cedar Park is currently compelled to pay for abortion coverage in its employee health care plan.

A mere two weeks before its renewal date, Kaiser Permanente informed Cedar Park that SB 6219 requires abortion coverage in the Church's plan, and Kaiser will not remove the coverage under the limited exemption in RCW § 48.43.065. Smith Decl. at ¶¶ 3–4. Cedar Park's plan therefore currently contains coverage for abortion. *Id.* at ¶ 3. This Court previously held that Cedar Park lacked standing because "there is no evidence about how insurance carriers have responded to an employer's attempt to invoke its conscience objections under RCW 48.43.065(3)." ECF No. 45 at 12. But there is now and it shows Cedar Park has suffered injury-in-fact.

### B. Unequal treatment is sufficient injury to confer standing for Plaintiff's Free Exercise, Equal Protection, and Establishment Clause claims.

SB 6219 and its statutory scheme, especially RCW § 48.43.065, treat religious objectors unequally, establishing injury-in-fact for Cedar Park's Free Exercise, Equal Protection, and Establishment Clause claims. As this Court noted, "there is some conceivable set of facts under which Cedar Park could show as alleged that the health insurance which health care providers,

Plaintiff's Renewed Motion for Preliminary
Injunction and Memorandum in Support
3:19-cv-05181

8

ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, Arizona 85260
(480) 444-0020

health insurance carriers, and health care facilities purchase for their employees is exempt from SB 6219's requirements in a way that the health insurance which Cedar Park purchases for its employees is not and that this constitutes a cognizable injury." ECF No. 45 at 22.

Read together, SB 6219 and RCW § 48.43.065 treat similarly-situated religious organizations differently by granting health care providers like Catholic hospitals a more favorable religious exemption than churches. *See* Factual Background § II.B. This disparate treatment injures the Church by violating its rights under the Free Exercise, Establishment, and Equal Protection Clauses.

> When the government erects a barrier that makes it more difficult for members of one group to obtain a benefit than it is for members of another group, a member of the former group seeking to challenge the barrier need not allege that he would have obtained the benefit but for the barrier in order to establish standing. The "injury in fact" in an equal protection case of this variety is the denial of equal treatment resulting from the imposition of the barrier, not the ultimate inability to obtain the benefit.

*NE. Fla. Chapter of the Associated Gen. Contractors of Am. v. Jacksonville*, 508 U.S. 656, 666 (1993); *see also Heckler v. Mathews*, 465 U.S. 728, 739–40 (1984) ("discrimination itself…can cause serious non-economic injuries to those persons who are personally denied equal treatment solely because of their membership in a disfavored group.").

### C. Cedar Park's injury is due to Defendants' conduct.

Defendants have argued that any "injury" to Cedar Park is due to the actions of the insurance carrier. But Defendants created SB 6219 and its underlying statutory scheme to force Cedar Park—whether through insurance coverage or increased fees—to provide payment for abortion and abortifacients. And governments regularly delegate final decision-making to third parties, but the government remains constitutionally liable for those decisions. For example, when a private advertising company reviews advertisements to be placed on city property, it has some measure of its own discretion. *E.g., Lehman v. City of Shaker Heights*, 418 U.S. 298, 300 (1974). But the government must still have rules in place that comply with the First Amendment, despite

Plaintiff's Renewed Motion for Preliminary
Injunction and Memorandum in Support
3:19-cv-05181

9

the fact that a third party is managing the forum. *Id.* at 302–305. It cannot delegate its responsibility to comply with the Constitution to a private party. The fact that an insurance carrier charges Cedar Park for insurance coverage or fees is immaterial—Washington directs that financial transaction through its laws and therefore remains liable for any constitutional injury.

More importantly, the disparate treatment in RCW § 48.43.065 is currently occurring due to the differing religious exemptions contained in the statute. Defendants provide a complete exemption for religious health care organizations, but allow Cedar Park to be charged additional fees for objectionable items excluded from its plan.

## II. Cedar Park's claims are ripe.

SB 6219 requires Cedar Park's health care plan to cover abortion, despite Cedar Park's objections. Smith Decl. at ¶ 3. As a result, Cedar Park is suffering ongoing harm. Additionally, RCW § 48.43.065's disparate treatment of similarly-situated religious objectors is currently occurring. *See* Factual Background § II.B. "[A] plaintiff need not wait for an actual prosecution or enforcement action before challenging a law's constitutionality." *Telescope Media Group v. Lucero*, -- F.3d. --, 2019 WL 397921 (8th Cir. Aug. 23, 2019) (citing *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158–59 (2014)). For these reasons, Cedar Park's claims are ripe for review.

## III. Cedar Park is likely to succeed on the merits of its Free Exercise claim primarily because SB 6219 and RCW § 48.43.065 are not neutral and generally applicable.

Free exercise jurisprudence is largely governed by two Supreme Court cases: *Employment Division v. Smith* and *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*. An "across-the-board criminal prohibition" on possession of the hallucinogenic drug peyote was upheld in *Smith* because it was neutral and generally applicable. 494 U.S. at 879, 884. In *Lukumi*, the Court struck down a targeted ordinance prohibiting the killing of animals for religious reasons, but allowing it in almost all other circumstances. 508 U.S. 520, 543 (1993). Read together, these seminal cases and their progeny describe the outer limits of the constitutionality of government restrictions on religious liberty as well as the legal principles used to analyze all free exercise claims.

Plaintiff's Renewed Motion for Preliminary
Injunction and Memorandum in Support
3:19-cv-05181

10

ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, Arizona 85260
(480) 444-0020

The most important of these principles is laws targeting religion are only the baseline of what the Free Exercise Clause of the First Amendment protects. In other words, "[b]ad motive may be one way to pursue a violation, but first and foremost, *Smith-Lukumi* is about objectively unequal treatment of religion and analogous secular activities." Douglas Laycock, *Theology Scholarships, the Pledge of Allegiance, and Religious Liberty: Avoiding the Extremes but Missing the Liberty*, 118 Hav. L. Rev. 155, 210 (2004). Laws burdening religiously-motivated conduct are subject to the highest level of scrutiny under the Free Exercise Clause when they lack neutrality or general applicability. *Smith*, 494 U.S. at 879.

### A. The Statutes impose an impermissible burden on Cedar Park's exercise of religion.

Cedar Park believes that abortion ends a life and therefore teaches that participation in, facilitation of, or payment for abortion in any circumstance is a grave sin. This includes indirect payments. V.C. ¶ 29; Smith Decl. ¶ 6. SB 6219's requirement that the Church pay for abortion coverage violates Cedar Park's religious beliefs. The exemption in RCW § 48.43.065(3) does not alleviate this burden, but actually exacerbates it by discriminating among religious organizations. It authorizes the insurance carrier to increase Cedar Park's premiums to cover the cost of abortions not expressly included in the plan. *See* Section I.B. Accordingly, SB 6219 renders "unlawful the religious practice itself," by requiring Cedar Park to provide insurance coverage for abortion under threat of criminal liability and jail time. *See Braunfeld v. Brown*, 366 U.S. 599, 606 (1961).This is a prototypical substantial burden.[4]

### B. The Statutes are neither neutral nor generally applicable.

The network of exemptions and the intent to require religious organizations to provide insurance coverage for abortion despite religious objections to doing so, render SB 6219 and RCW § 48.43.065 neither neutral nor generally applicable. The Statutes fail this test because they: (1) Provide exemptions for secular conduct, but not for similar religious conduct. *Fraternal Order of*

---

[4] To trigger Free Exercise protection, Cedar Park Church need only show that its religion is burdened, not that it is substantially burdened. *Lukumi*, 508 U.S. at 531. Regardless, the Statutes substantially burden Cedar Park Church's free exercise of religion. *See Burwell v. Hobby Lobby Stores*, 134 S.Ct. 2751, 2775–77 (2014).

Plaintiff's Renewed Motion for Preliminary
Injunction and Memorandum in Support
3:19-cv-05181

11

ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, Arizona 85260
(480) 444-0020

*Police Newark Lodge No. 12 v. City of Newark*, 170 F.2d 359, 365 (3d Cir. 1999); (2) Are gerrymandered so as to single out religious conduct for disfavored treatment. *Lukumi*, 508 U.S at 532–40; (3) Apply differential treatment among religions or types of religious organizations. *Id.* at 536; and/or (4) Were enacted with discriminatory intent or hostility toward religious conduct, *Masterpiece Cakeshop, Ltd. v. Colo. Civil Rights Comm'n*, 138 S. Ct. 1719, 1729–31 (2018).

### 1. The Statutes provide exemptions that undermine the Defendants' stated interest in providing women access to health benefits.

SB 6219 is not generally applicable because it has many exemptions—all of which significantly undermine the Defendants' stated interest in providing women with better access to health benefits. "[S]elective laws that fail to pursue legislative ends with equal vigor against both religious practice and analogous secular conduct are not governed by *Smith*; such underinclusive laws are subject to surpassingly strict scrutiny under the Free Exercise Clause and *Lukumi*." Richard F. Duncan, *Free Exercise is Dead, Long Live Free Exercise*, 3 U. Pa. J. Const. 850, 883 (2001).

Even a single exemption undermining a state's asserted interest eliminates general applicability. *Canyon Ferry Road Baptist Church v. Unsworth*, 556 F.3d 1021, 1035 (9th Cir. 2009) (Noonan, J., concurring) (restrictions on church's speech on referendum issue were not neutral and generally applicable where there was an exception for newspapers); *Fraternal Order of Police Newark Lodge No. 12 v. City of Newark*, 170 F.3d 359, 366 (3d Cir. 1999) (Alito, J.) (striking down a prohibition on police officers growing beards because it allowed a medical exemption); *Midrash Sephardi, Inc. v. Town of Surfside,* 366 F.3d 1214, 1234-35 (11th Cir. 2004), (single exemption for clubs and lodges to zoning district limited to retail shopping "violates the principles of neutrality and general applicability because private clubs and lodges endanger [the town's] interest in retail synergy as much or more than churches and synagogues").

There are numerous exemptions here. Washington law exempts 13 different types of insurance plans from the definition of "health plans" including temporary plans, plans for the disabled, and student-only plans. RCW § 48.43.005(26). SB 6219 also allows for an exemption if

Plaintiff's Renewed Motion for Preliminary
Injunction and Memorandum in Support
3:19-cv-05181

12

ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, Arizona 85260
(480) 444-0020

necessary to avoid violating federal conditions on state funding, and exempts plans that do not provide comprehensive maternity care coverage. V.C. Ex. A. at § 3(1) & (5). Washington law also completely exempts insurance plans provided by religious health care organizations from the abortion insurance requirement. RCW § 48.43.065. These exemptions undermine Defendants' purpose of protecting women's access to benefits, especially for reproductive health. Defs.' Mot. to Dismiss, ECF No. 25 at 19. If exempting religious organizations like Cedar Park from paying for abortion undercuts that interest, so does exempting colleges and universities that have health insurance policies for their students. The same is true for plans that do not cover maternity care, may only exist for a year, solely cover people with disabilities, or are provided by religious health care organizations.

Importantly, any independent secular reasons for exempting these plans are not considered in this analysis. "In determining whether a particular law is underinclusive, the relevant governmental purposes are those that justify the scheme of restrictions, not those that justify the exemptions or selective coverage." Duncan, 3 U. Pa. J. Const. L. at 869. For example, the City of Hialeah had an independent, secular public health interest in regulating disposal of garbage from restaurants. Yet the Court held the ordinance's failure to restrict restaurant garbage the same way it did animal sacrifice rendered it underinclusive and therefore not generally applicable. *Lukumi*, 508 U.S. at 544–45. Otherwise, "the requirement to general applicability would be entirely vacuous…[because] every law is generally applicable to whatever it applies to." Laycock, 118 Hav. L. Rev. at 207.

The Ninth Circuit's holding in *Stormans v. Wiesman* confirms this point. It focused on whether the categorical exemptions there undermined the government's stated purpose for the law at issue. 794 F.3d 1080 (9th Cir. 2015). And for good reason. "[C]ategories of selection are of paramount concern when a law has the incidental effect of burdening religious practice." *Lukumi*, 508 U.S. at 542. "[T]he Court's concern [with] the prospect of the government's deciding that secular motivations are more important than religious motivations…is only further implicated when the government does not merely create a mechanism for individualized exemptions, but

Plaintiff's Renewed Motion for Preliminary
Injunction and Memorandum in Support
3:19-cv-05181

13

ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, Arizona 85260
(480) 444-0020

instead, actually creates a categorical exemption for individuals with a secular objection but not for individuals with a religious objection." *Fraternal Order of Police*, 170 F.3d at 365.

The same health interests Defendants use to justify SB 6219 are undermined by the plans that are categorically exempted. There is no reason why the state is any less interested in the access to healthcare for women who are students, disabled, only have access to plans for a limited amount of time, or work for an employer that does not cover maternity or a religious health care organization. By failing to adequately exempt religious plans like Cedar Park's, Defendants make the impermissible value judgment that secular reasons for not covering abortion are important enough to overcome the State's interest in women's health, but not religious motivations. *See Fraternal Order of Police*, 170 F.3d at 366.

### 2. The Statutes are not neutral in their operation.

"Neutrality and general applicability are interrelated, and…failure to satisfy one requirement is a likely indication that the other has not been satisfied." *Lukumi*, 508 U.S. at 531. SB 6219 and RCW § 48.43.065 are not neutral because they are gerrymandered to limit religious objections, treat religious health care related companies more favorably than churches like Cedar Park, and target conscientious objectors like Cedar Park.

#### a. SB 6219 is impermissibly gerrymandered.

SB 6219's numerous exemptions eliminate general applicability and indicate it is not neutral. An impermissible objective of suppressing religious belief is not only assessed facially, but also from "the effect of a law in its real operation." *Lukumi*, 508 U.S. at 535. A law is impermissibly gerrymandered against religious individuals like Cedar Park if it favors secular conduct, *id.* at 537, or "proscribe[s] more religious conduct than is necessary to achieve [its] stated ends." *Id.* at 538. SB 6219 suffers from both of these maladies.

By offering multiple secular exemptions, Washington has failed to pursue its proffered objectives "with respect to analogous non-religious conduct," *See Lukumi*, 508 U.S. at 546. The First Amendment prevents Cedar Park and other similarly-situated organizations from "being singled out for discriminatory treatment" by Defendants' refusal to grant them an exemption that

Plaintiff's Renewed Motion for Preliminary
Injunction and Memorandum in Support          14
3:19-cv-05181

ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, Arizona 85260
(480) 444-0020

would have no worse effects on the government's stated interest than those already approved. *Id.* at 538. This "devalues [Cedar Park's] religious reasons" for objecting to assisting in the destruction of unborn life. *See id.* at 537. Providing secular exemptions "while refusing religious exemptions is sufficiently suggestive of discriminatory intent so as to trigger heightened scrutiny under *Smith* and *Lukumi*." *Fraternal Order of Police*, 170 F.3d at 365.

SB 6219 also proscribes more conduct than is necessary to achieve its end of furthering women's access to healthcare. *Lukumi*, 508 U.S. at 542 (law hindering "much more religious conduct than is necessary in order to achieve the legitimate ends asserted in [its] defense," is "not neutral."). Exempting Cedar Park would only affect the church's employees, all of whom share the Church's beliefs about abortion. *See* V.C. ¶¶ 25–32. Forcing Cedar Park to provide abortion coverage that would not be used by its employees makes SB 6219 broader than necessary and further indicates it is impermissibly gerrymandered.

### b. RCW § 48.43.065 treats churches less favorably than other religious organizations.

A second way to prove a law is not neutral is to show that it produces "differential treatment of two religions." *Lukumi*, 508 U.S. at 536. Differential treatment of types of religious organizations is sufficient. There is no need to show the government favors one creed over another. *Larson v. Valente*, 456 U.S. 228, 246 (1982) (striking law treating "well-established churches" more favorably than "churches which are new"); *Colorado Christian v. Weaver*, 534 F.3d 1245, 1258 (10th Cir. 2008) (striking law treating "sectarian" universities more favorably than "pervasively sectarian universities").

SB 6219 is part of the same statutory scheme as Washington's exemption for religious organizations in RCW § 48.43.065. But this exemption allows the insurance provider to charge Cedar Park for abortion pursuant to SB 6219 via increased fees, while completely exempting health care related religious organizations. *See* Factual Background § II.B. Cedar Park objects to facilitating abortion both directly and indirectly, even if it is characterized as an administrative expense. Smith Decl. ¶ at 6. Because of this disparate treatment and SB 6219, Cedar Park's insurer

Plaintiff's Renewed Motion for Preliminary
Injunction and Memorandum in Support
3:19-cv-05181

15

ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, Arizona 85260
(480) 444-0020

has refused to exempt Cedar Park, and instead requires the Church to directly provide coverage for abortion. *Id.* at ¶¶ 3–4.

Health care providers, religiously sponsored health carriers, and health care facilities that have a conscientious or moral objection to providing insurance coverage for abortion are completely exempt without being subject to additional fees. Cedar Park is not, making the Statutes not neutral. *Masterpiece*, 138 S. Ct. at 1731 ("The Free Exercise Clause bars even subtle departures from neutrality on matters of religion." (cleaned up)).

### c. SB 6219 intentionally discriminates against religious organizations like Cedar Park.

Discriminatory intent is not necessary to show lack of neutrality, but it can be an indicator of an anti-religious objective. "[U]pon even slight suspicion that proposals for state intervention stem from animosity to religion or distrust of its practices, all officials must pause to remember their own high duty to the Constitution and the rights it secures." *Lukumi*, 508 U.S. at 547. "Factors relevant to the assessment of governmental neutrality include the historical background of the decision under challenge, the specific series of events leading to the enactment or official policy in question, and the legislative or administrative history, including contemporaneous statements made by members of the decisionmaking body." *Masterpiece*, 138 S. Ct. at 1731 (cleaned up); *San Jose Christian College v. City of Morgan Hill*, 360 F.3d 1024, 1030 n.4 (9th Cir. 2004).

Washington legislators requested that SB 6219 be amended to add exemptions for religious organizations like Cedar Park, but those requests were rejected.[5] Moreover, Washington State Senator Steve Hobbs, SB 6219's sponsor, stated that religious organizations can sue if they do not want to provide insurance coverage for abortion. Matt Markovich, *Catholic Bishops of Wash. ask Gov. Inslee to Veto Abortion Insurance Bill*, KOMO News, March 5, 2018, https://bit.ly/2Uuu5Nf. Responding to religious organizations' concern that SB 6219 would compel them to pay for

---

[5] *See* Proposed Amendment to Substitute Senate Bill 6219 by Senator O'Ban, *available at* https://bit.ly/2UtTAye (last accessed Sept. 11, 2019); Proposed Amendment to Substitute Senate Bill 6219 by Senator Shea, *available at* https://bit.ly/2G4krqE (last accessed Sept. 11, 2019). Both of these proposed amendments would have allowed Cedar Park and other similarly-situated employers to refuse to comply with the provisions of SB 6219 requiring abortion and contraceptive coverage if they object to compliance on the basis of conscience or religion.

Plaintiff's Renewed Motion for Preliminary
Injunction and Memorandum in Support
3:19-cv-05181

16

ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, Arizona 85260
(480) 444-0020

abortions, Senator Hobbs quipped: "Health care is about the individual, not about [religious organizations]." *Id.* These statements of a legislator, as well as the historical background of the statute, indicate SB 6219 was enacted to target organizations that have religious views requiring it to respect life. This lack of neutrality along with the numerous exemptions outlined above make SB 6219 neither neutral nor generally applicable. It is therefore subject to strict scrutiny.

### C. The Statutes do not survive strict scrutiny.

Under strict scrutiny, "a law restrictive of religious practice must advance interests of the highest order and must be narrowly tailored in pursuit of those interests." *Lukumi*, 508 U.S. at 546 (quotation marks omitted). In applying strict scrutiny, courts "look[ ] beyond broadly formulated interests" and instead "scrutinize [ ] the asserted harm of granting specific exemptions to particular religious claimants." *Gonzales v. O Centro Espirita Beneficente Uniao do Vogetal*, 546 U.S. 418, 431 (2006).

### 1. The Statutes do not serve a rational, much less compelling, government interest.

SB 6219's various exemptions demonstrate it "cannot be regarded as protecting an interest of the highest order" because the exemptions permit "appreciable damage to that supposedly vital interest." *Lukumi*, 508 U.S. at 547 (cleaned up). Stated differently, an interest is not compelling when the government "fails to enact feasible measures to restrict other conduct producing substantial harm or alleged harm of the same sort." *Id.* at 546–47. The underinclusiveness of SB 6219 demonstrated above "is alone enough to defeat" the asserted state interest. *Brown v. Entertainment Merchants Ass'n*, 564 U.S. 786, 802 (2011); *see also Lukumi*, 508 U.S. at 546–47.

In *O Centro*, the government's ban on hallucinogenic tea was not subject to an exception. But the existence of a *single* exemption for peyote in another part of the controlled substances law indicated no compelling interest. 546 U.S. 418. The exemptions to SB 6219 are far more vast than in *O Centro*, so the government must show that "granting the requested religious accommodations would seriously compromise its ability to administer the program." *Id.* at 435. It cannot do so because Washington itself has "seriously compromised" SB 6219's universality through multiple

Plaintiff's Renewed Motion for Preliminary
Injunction and Memorandum in Support
3:19-cv-05181

17

ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, Arizona 85260
(480) 444-0020

exemptions. Moreover, the only people affected by an exemption for Cedar Park would be its employees, all of whom share the Church's beliefs about abortion. *See* V.C. ¶¶ 25–32. The government does not have a *rational*—much less compelling—interest in forcing a pro-life church to provide insurance coverage for abortion to people who will not use it.

The government has offered no compelling interest to support the differential treatment of religious objectors in RCW § 48.43.065.[6] And it cannot, as the government has no interest in discriminating against similarly-situated religious organizations that do not wish to cover abortion in their employee benefit plans. There is no rational reason to allow providers to charge Cedar Park extra fees for the very coverage to which it objects while completely exempting the myriad religious health care providers in Washington from providing that same coverage.

### 2. The Statutes are not narrowly tailored.

"A statute is narrowly tailored if it targets and eliminates no more than the exact source of the evil it seeks to remedy." *Frisby v. Schultz*, 487 U.S. 474, 485 (1988) (cleaned up). Under strict scrutiny, the government must also show the law "is the least restrictive means of achieving" its interests. *Thomas v. Review Bd. of the Ind. Employment Security Div.*, 350 U.S. 707 at 718 (1981). If means less burdensome on religious freedom exist, the government "must use [them]." *United States v. Playboy Entm't Grp., Inc.*, 529 U.S. 803, 813 (2000).

Washington has many ways to accomplish its alleged interests without compelling churches to violate their beliefs. First, it could provide all religious organizations an exemption from the SB 6219 that does not permit them to be charged correspondingly higher premiums. This would allow the government to enforce the law against those who do not object on the basis of religion, while respecting the religious beliefs of churches like Cedar Park. The government has

---

[6] The only argument that Defendants have offered to support this differential treatment is that the religious exemptions apply differently based on whether the religious objector is an insurance carrier or an insurance purchaser, and thus differential treatment is justified. Defs.' Prelim. Inj. Opp., ECF No. 35 at 16. But the exemption for health care organizations contained in RCW § 48.43.065(2) and that for churches contained in RCW § 48.43.065(3) *both* apply to purchasers. While RCW 48.43.065(2) does apply to insurance carriers, it also applies to health care facilities and health care providers as employers and, therefore, insurance purchasers. As a result, SB 6219 treats similarly situated insurance *purchasers* differently.

Plaintiff's Renewed Motion for Preliminary
Injunction and Memorandum in Support
3:19-cv-05181

18

ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, Arizona 85260
(480) 444-0020

already demonstrated it can make such an exemption. Health care providers, religiously sponsored health carriers, and health care facilities are excused without having to pay anything to subsidize the conduct that violates their convictions. RCW § 48.43.065(2)(a); *accord Hobby Lobby*, 573 U.S. at 730–31 (noting that the government had demonstrated its ability to provide an exemption to the Petitioners because it had granted such an exemption to a different class of religious objectors). Allowing religious objectors like Cedar Park to assert the exemption afforded to religious health care providers would also eliminate the differential treatment inherent in RCW §48.43.065. Moreover, Washington law completely exempts 13 different types of health care plans by excluding them from the definition of "health plan". RCW § 48.43.005(26). This provision should be extended to Cedar Park and other similarly situated religious employers. Finally, the government itself could provide abortion coverage directly to employees whose health plans exclude coverage of abortion.

All these options are "workable," *Grutter v. Bollinger*, 539 U.S. 306, 339 (2003), and much "less restrictive" of religious freedom, *Playboy*, 529 U.S. at 824. The Statutes are not narrowly tailored. The Statutes therefore fail strict scrutiny.

### D. SB 6219 violates the Free Exercise Clause because it requires Cedar Park to violate its religious beliefs.

SB 6219 further violates the Free Exercise Clause because it requires Cedar Park to violate long-established historical religious practices involving the sanctity of human life and opposition to abortion. While satisfying the *Smith* test is necessary to survive Free Exercise Clause scrutiny, it is not always sufficient.[7] The Supreme Court has expressly rejected the idea "that any application of a valid and neutral law of general applicability is necessarily constitutional under the Free Exercise Clause." *Trinity Lutheran Church of Columbia, Inc. v. Comer*, 137 S. Ct. 2012, 2021 & n.2 (2017). There is "no merit" to the assertion that *Smith* neutrality is sufficient to exclude long-established historical religious practices from Free Exercise Clause protection. *Hosanna-Tabor*

---

[7] Moreover, *Smith* was an across-the-board criminal prohibition on the use of an illegal substance, which is different than here, where the State of Washington is forcing a religious organization to engage in a forbidden act. *See* 494 U.S. at 884.

Plaintiff's Renewed Motion for Preliminary
Injunction and Memorandum in Support
3:19-cv-05181

19

ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, Arizona 85260
(480) 444-0020

*Evangelical Lutheran Church & Sch. v. EEOC*, 565 U.S. 171, 190 (2012) (Unanimously barring application of employment discrimination laws against teacher in religious school on free exercise grounds, without application of *Smith* test). The Court explained that "*Smith* involved government regulation of only outward physical acts," whereas the case before it "concern[ed] government interference with an internal church decision that affects the faith and mission of the church itself." *Id.* at 190. "[A] church's selection of its ministers," in other words, "is unlike an individual's ingestion of peyote." *Id.* Making the same point, the Court recently noted that—notwithstanding what might be required of *secular* officiants through "neutral and generally applicable" laws—it would be unconstitutional to compel objecting clergy "to perform [a same-sex wedding] ceremony." *Masterpiece Cakeshop, Ltd. v. Colo. Civil Rights Comm'n*, 138 S. Ct. at 1727.

The Free Exercise Clause does not the permit government to require churches to violate their historical practice of conforming personnel policies to religious teaching. Defendants have done just that by coercing Cedar Park to participate in or facilitate abortion through their healthcare plan.

### E. The Statutes violate Cedar Park's hybrid Free Exercise rights because they violate additional fundamental rights.

SB 6219 and RCW §48.43.065 are also subject to strict scrutiny under the Ninth Circuit's recognition of the "hybrid" effect of the free exercise of religion and equal protection interests at issue in this case. Under *Smith*, "strict scrutiny [is] imposed in 'hybrid situation[s]' in which a law 'involve[s] not the Free Exercise Clause alone, but the Free Exercise Clause in conjunction with other constitutional protections," exempting such "hybrid rights" from *Smith's* general "rational basis test." *Miller*, 176 F.3d at 1207 (citing *Smith*, 494 U.S. at 881–82). To establish a hybrid-right claim, a "free exercise plaintiff must make out a colorable claim that a companion right has been violated." *Id.* at 1207. As discussed in Section IV, SB 6219 and RCW §48.43.065 violate the Equal Protection Clause, and are therefore subject to strict scrutiny.

Plaintiff's Renewed Motion for Preliminary
Injunction and Memorandum in Support
3:19-cv-05181

20

ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, Arizona 85260
(480) 444-0020

**F. *Smith* should be overruled.**

In *Kennedy v. Bremerton School District*, U.S. Supreme Court No. 18-12, four Justices concurring in the denial of a petition for certiorari opined that *Smith* "drastically cut back on the protection provided by the Free Exercise Clause" and implicitly suggested that a party in a future case should revisit that decision. 1/22/19 Statement respect the denial of certiorari (Alito, J., joined by Thomas, J., Gorsuch, J., and Kavanaugh, J.). Cedar Park acknowledges that this Court lacks the authority to overrule *Smith*, but Cedar Park preserves that argument for a future appeal, if necessary. *Smith* is contrary to the original understanding and logic of the First Amendment. *See generally* Michael W. McConnell, *Free Exercise Revisionism and the* Smith *Decision*, 57 U. CHI. L. REV. 1109 (1990).

## IV. The Statutes' disparate treatment of religious organizations likely violates Equal Protection.

The Statutes treat similarly situated organizations differently in violation of the Equal Protection Clause of the Fourteenth Amendment. "The Equal Protection Clause directs that all persons similarly circumstanced shall be treated alike." *Plyler v. Doe*, 457 U.S. 202, 216 (1982) (cleaned up). Cedar Park may "prevail on [its] equal protection claim by showing that a class that is similarly situated has been treated disparately." *Ariz. Dream Act Coalition v. Brewer*, 757 F.3d 1053, 1063 (9th Cir. 2014) (cleaned up). Distinctions among similarly-situated groups that affect fundamental rights "are given the most exacting scrutiny," *Clark v. Jeter*, 486 U.S. 456, 461 (1988), and discriminatory intent is presumed, *Plyler,* 457 U.S. at 216–17.

Washington State law exempts religious health care organizations from paying for objectionable procedures like abortion, and does not allow such organizations to be charged additional fees for objectionable services. RCW § 48.43.065(2)(a)(b); *see* Factual Background § II.B. Religious health care entities are treated more favorably than similarly-situated religious organizations like Cedar Park whose exemption is conditioned upon them being subject to a premium increase to pay for the very items to which they object. RCW § 48.43.065 (3) & (4). *See* Factual Background § II.B above.

Plaintiff's Renewed Motion for Preliminary
Injunction and Memorandum in Support
3:19-cv-05181

21

ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, Arizona 85260
(480) 444-0020

Because Washington treats similarly-situated organizations dissimilarly based on a fundamental right (religious freedom), it is subject to strict scrutiny, which it cannot meet. SB 6219 and RCW § 48.43.065 therefore violate the Equal Protection Clause.[8]

## V. The Statutes' interence with church internal affairs likely violates Church Autonomy.

SB 6219 impermissibly interferes with Cedar Park's internal operating procedures in violation of the Free Exercise and Establishment Clauses of the First Amendment. History teaches—and our Constitution recognizes—that religious freedom demands a government that does not interfere with the internal affairs of religious institutions. *Watson v. Jones*, 80 U.S. 679, 730 (1871). Indeed, in *Smith*, the Supreme Court acknowledged the continuing validity of earlier cases protecting a church's right to institutional autonomy—specifically, *Serbian Eastern Orthodox Diocese v. Milivojevich*, 426 U.S. 696 (1976); *Presbyterian Church v. Mary Elizabeth Blue Hull Memorial Presbyterian Church*, 393 U.S. 440 (1969); and *Kedroff v. St. Nicholas Cathedral*, 344 U.S. 94 (1952). *See Smith*, 494 U.S. at 877. These cases hold that First Amendment protection extends not only to matters of faith, but also to "church administration," *Serbian Eastern Orthodox Diocese*, 426 U.S. at 710, "internal organization," *id.* at 713, and "the operation of … churches," *Kedroff*, 344 U.S. at 107. In other words, church autonomy has a carefully defined scope that gives religious organizations and denominations independence from secular control. Churches have the power to decide for themselves matters of church governance as well as those of faith and doctrine. *Id.* at 116.

SB 6219 interferes with Cedar Park's internal administration and operations. Washington

---

[8] Washington State law also exempts 13 different types of insurance plans from the definition of "health plans" to which SB 6219 is applicable, RCW § 48.43.005(26). Some of these are comprehensive health care plans similar to Cedar Park's. For example, RCW § 48.43.005(26)(l) excludes "short-term limited purpose or duration" and "student only" health care plans approved by the insurance commissioner following a written request for exclusion from the definition of "health plan." So schools providing comprehensive health insurance to its students are not required to comply with SB 6219. There is no constitutionally relevant difference between a church employee benefit plan excluding abortion and a student benefit plan excluding abortion. The same is true for a plan that excludes maternity coverage or that is limited to a certain amount of time. Washington cannot treat these organizations differently absent a showing that SB 6219 meets strict scrutiny.

Plaintiff's Renewed Motion for Preliminary
Injunction and Memorandum in Support
3:19-cv-05181

22

ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, Arizona 85260
(480) 444-0020

orders the Church to provide specific employee benefits—insurance coverage for abortion and abortifacients—at odds with Cedar Park's religious beliefs. SB 6219 therefore violates the church autonomy doctrine and is unconstitutional.

## VI. The Statutes' hostility toward and disparate treatment of religious organizations likely violates the Establishment Clause.

The Establishment Clause prohibits the government from disapproving of or showing hostility toward a particular religion or religion in general. SB 6219 and RCW § 48.43.065 discriminate between religious organizations like Cedar Park and religious health care related organizations. Discrimination based on religious status is especially odious because a "proper respect for both the Free Exercise and the Establishment Clauses compels the State to pursue a course of 'neutrality' toward religion." *Comm. for Pub. Educ. & Religious Liberty v. Nyquist*, 413 U.S. 756, 792–793 (1973).

Defendants enacted SB 6219 with full knowledge that many religious organizations object to participating in, paying for, facilitating, or otherwise supporting abortion. Yet, no adequate exemption is available to non-health-care-related religious employers who, like Cedar Park, believe that paying for abortion or abortifacient contraceptives, directly or indirectly, is sinful. SB 6219 was designed to make it impossible for the Church and other similarly-situated religious employers to comply with their religious beliefs. As discussed in Section III.B, SB 6219 is not neutral toward religion because it contains a vast scheme of exemptions, treats religious organizations like Cedar Park differently, and was motivated by the suppression of religious expression. SB 6219 therefore violates the Establishment Clause.

## VII. Cedar Park has fulfilled the remaining preliminary injunction factors.

The loss of constitutional rights for even minimal periods of time is presumed to be irreparable injury. *Elrod v. Burns*, 427 U.S. 347, 373 (1976). "[T]he fact that a case raises serious First Amendment questions compels a finding that there exists the potential for irreparable injury, or that at the very least the balance of hardships tips sharply in [the movant's] favor." *Sammartano v. First Jud. Dist. Ct.*, 303 F.3d 959, 973 (9th Cir. 2002) (cleaned up). Because Cedar Park must

Plaintiff's Renewed Motion for Preliminary
Injunction and Memorandum in Support
3:19-cv-05181

23

ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, Arizona 85260
(480) 444-0020

provide insurance coverage for abortion due to SB 6219, it is suffering irreparable harm that will continue absent an injunction. It is also suffering irreparable harm because Cedar Park is treated less favorably than religious health care organizations under RCW § 48.43.065.

There should be no dispute about the balance of equities. A preliminary injunction will stop Washington's infringement of Cedar Park's constitutional rights during the pendency of this litigation. Conversely, such an injunction will not harm Washington at all, as it will merely prevent the State from imposing abortion coverage for Cedar Park employees, all of whom do not support abortion. An injunction will also stop the differential treatment among similarly-situated religious objectors in RCW §48.43.065.

Injunctive relief is in the public interest. There is no public "interest in the enforcement of an unconstitutional law." *ACLU v. Ashcroft*, 322 F.3d 240, 251 n. 11 (3d Cir. 2003). And accommodating Cedar Park does not undermine Washington's application of SB 6219 to the many other employers in the State who do not share the Church's religious objections.

Finally, when the balance of hardships tips sharply in the plaintiff's favor, as here, the plaintiff need not show a likelihood of success, only "serious questions going to the merits." *Cottrell*, 632 F.3d at1134–35 (cleaned up). The Church's Verified Complaint raises numerous serious constitutional questions about Washington forcing churches to provide abortion coverage in violation of their religious beliefs.

## CONCLUSION

For all of the foregoing reasons, Cedar Park respectfully requests that the Court preliminarily enjoin SB 6219 and RCW § 48.43.065, as-applied to Cedar Park. For the same reasons, the Statutes should be enjoined facially. *See Cantwell v. Connecticut*, 310 U.S. 296, 300–07 (1940) (facially invalidating a statute that restricted the free exercise of religion); *see also Forsyth Cnty. v. Nationalist Movemen*t, 505 U.S. 123, 130–33 (1992) (facially invalidating a statute that restricted First Amendment freedoms); *Reed v. Town of Gilbert*, 135 S. Ct. 2218, 2227–29 (2015) (same).

Respectfully submitted this 13th day of September 2019,

Plaintiff's Renewed Motion for Preliminary
Injunction and Memorandum in Support
3:19-cv-05181

24

ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, Arizona 85260
(480) 444-0020

By: *s/Kevin H. Theriot*
Kristen K. Waggoner (WSBA #27790)
Kevin H. Theriot (AZ Bar #030446)*
Elissa M. Graves (AZ Bar #030670)*
ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, Arizona 85260
Telephone: (480) 444-0020
Facsimile: (480) 444-0025
Email: kwaggoner@adflegal.org
        ktheriot@adflegal.org
        egraves@adflegal.org

David A. Cortman (GA Bar #188810)*
Alliance Defending Freedom
1000 Hurricane Shoals Rd. NE
Suite D-1100
Lawrenceville, GA 30040
Telephone: (770) 339-0774
Email: dcortman@adflegal.org
*Counsel for Plaintiff*

*Attorneys for Plaintiff Cedar Park Assembly of God of Kirkland, Washington*

* Admitted *pro hac vice*

Plaintiff's Renewed Motion for Preliminary
Injunction and Memorandum in Support
3:19-cv-05181

25

ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, Arizona 85260
(480) 444-0020

# CERTIFICATE OF SERVICE

I hereby certify that on September 13, 2019, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following:

Jeffrey Todd Sprung
Paul M. Crisalli
ATTORNEY GENERAL'S OFFICE
800 5th Ave
Ste 2000
Seattle, WA 98104

Joyce A Roper
ATTORNEY GENERAL'S OFFICE
PO Box 40109
Olympia, WA 98504

Marta U DeLeon
ATTORNEY GENERAL'S OFFICE
PO Box 40100
Olympia, WA 98504
*Counsel for Defendants*

DATED: September 13, 2019          *s/Kevin H. Theriot*
                                    Kristen K. Waggoner (WSBA #27790)
                                    Kevin H. Theriot (AZ Bar #030446)*
                                    Elissa M. Graves (AZ Bar #030670)*
                                    ALLIANCE DEFENDING FREEDOM
                                    15100 N. 90th Street
                                    Scottsdale, Arizona 85260
                                    Telephone: (480) 444-0020
                                    Facsimile: (480) 444-0025
                                    Email:    kwaggoner@adflegal.org
                                              ktheriot@adflegal.org
                                              egraves@adflegal.org

                                    David A. Cortman (GA Bar #188810)*
                                    ALLIANCE DEFENDING FREEDOM
                                    1000 Hurricane Shoals Rd. NE
                                    Suite D-1100
                                    Lawrenceville, GA 30040
                                    Telephone: (770) 339-0774
                                    Email:    dcortman@adflegal.org

Plaintiff's Renewed Motion for Preliminary
Injunction and Memorandum in Support
3:19-cv-05181

26

ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, Arizona 85260
(480) 444-0020

*Attorneys for Plaintiff Cedar Park Assembly of God of Kirkland, Washington*

*Admitted *pro hac vice*

Plaintiff's Renewed Motion for Preliminary
Injunction and Memorandum in Support
3:19-cv-05181

27

ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, Arizona 85260
(480) 444-0020