# Exhibit A

The Honorable Benjamin H. Settle

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT TACOMA**

| | |
|---|---|
| CEDAR PARK ASSEMBLY OF GOD OF KIRKLAND, WASHINGTON,<br><br>Plaintiff,<br><br>v.<br><br>MYRON "MIKE" KREIDLER, et al.,<br><br>Defendants. | NO. 3:19-cv-05181-BHS<br><br>DEFENDANTS' RESPONSE TO PLAINTIFF'S RENEWED MOTION FOR PRELIMINARY INJUNCTION AND DEFENDANTS' RENEWED MOTION TO DISMISS<br><br>NOTED: NOVEMBER 15, 2019 |

RESPONSE TO RENEWED MOTION FOR PRELIMINARY INJUNCTION AND RENEWED MOTION TO DISMISS
NO. 3:19-cv-05181

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue. Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

## TABLE OF CONTENTS


I. INTRODUCTION ........ 1

II. RELIEF REQUESTED ........ 1

III. FACTS ........ 2

A. This Court Allowed Cedar Park Leave to File Its Second Amended Complaint for a Narrow Purpose, Which Cedar Park's Motion Disregards ........ 2

B. Cedar Park's Renewed Motion for Preliminary Injunction Raises Allegations Unsupported by the Complaint or Facts ........ 3

IV. ARGUMENT ........ 5

A. Legal Standards ........ 5

B. The Court Should Dismiss the Renewed Claims Not Allowed by the Court's Order Granting Leave to Amend ........ 7

C. Even if the Court Considers the New Facts in Cedar Park's Renewed Motion, Those Facts Do Not Resurrect the Already Dismissed Claims ........ 7

D. The Court Should Dismiss the Narrow Remaining Claim ........ 8

E. In the Alternative, the Court Should Invoke the Primary Jurisdiction Doctrine to Allow the OIC to Address Confusion Through Rulemaking ........ 11

F. The Court Should Deny Cedar Park's Renewed Motion for Preliminary Injunction ........ 12

V. CONCLUSION ........ 13

DECLARATION OF SERVICE ........ 14




ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue. Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

## TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal*, 556 U S. 662 (2009) .... 5

*Bassett v. ABM Parking Servs., Inc.*, 883 F.3d 776 (9th Cir. 2018) .... 11

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) .... 5

*Cetacean Cmty. v. Bush*, 386 F.3d 1169 (9th Cir. 2004) .... 5

*Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115 (9th Cir. 2010). .... 5

*City & Cty. Of San Francisco*, 357 F. Supp. 3d 931(N.D. Cal. 2018) .... 11

*Clapper v. Amnesty Int'l USA*, 586 U.S. 398 (2013) .... 11

*Conservation Force v. Salazar*, 646 F.3d 1240 (9th Cir. 2011) .... 5

*Daniels-Hall v. Nat'l Educ. Ass'n*, F.3d 992 (9th Cir. 2010), .... 6

*Disney Enters., Inc. v. VidAngel, Inc.*, 869 F.3d 848 (9th Cir. 2017) .... 6

*Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073 (9th Cir. 2014) .... 6

*Foti v. Menlo Park*, 146 F.3d 629 (9th Cir. 1998) .... 6

*Glanton ex rel. Alcoa Prescription Drug Plan v.AdvancePCS, Inc.*, 465 F.3d 1123 (9th Cir. 2006) .... 11

*Hoye v. City of Oakland*, 653 F.3d 835 (9th Cir. 2011) .... 6

*Savage v. Glendale Union High Sch.*, 343 F.3d 1036 (9th Cir. 2003) .... 5

*See Thomas v. Bible*, 983 F.2d 152 (9th Cir. 1993) .... 7

*Telesaurus VPC, LLC v. Power*, 623 F.3d 998 (9th Cir. 2010) .... 6

*Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7 (2008). .... 6

**Statutes**

RCW 48.43.065 .... passim

RCW 48.43.073 .... 3

Substitute Senate Bill 6219 .... 2,12

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue. Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

**Rules**

FRCP 12(b)(1) .......... 5

FRCP 12(b)(6) .......... 5

**Regulations**

WAC 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 .......... 10

RESPONSE TO RENEWED MOTION FOR PRELIMINARY INJUNCTION AND RENEWED MOTION TO DISMISS
NO. 3:19-cv-05181

iii

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue. Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

## I. INTRODUCTION

This Court granted Cedar Park leave to amend its complaint to flesh out a narrow claim about whether Cedar Park, as a religious employer, is treated differently by reason of its religion as compared to religious health plan carriers, health care providers, or health care facilities. After providing lip service to the narrow claim that saved Cedar Park from complete dismissal, Cedar Park instead renews its motion for preliminary injunction for the same reasons as before but with new facts not contained anywhere in the second amended complaint. And those new facts do not show that Cedar Park is unable to purchase an insurance plan that covers services consistent with Cedar Park's religious beliefs. The reality is that the Office of Insurance Commissioner (OIC) has approved of such plans, meaning that the Defendants are not the ones preventing Cedar Park from obtaining the health insurance plan it seeks. Cedar Park's motion should be denied because the injury it alleges is not caused by Defendants and cannot be redressed by an order directed to Defendants.

Even on the remaining narrow claim, Cedar Park lacks standing to bring its suit. Cedar Park does not suffer an injury in fact because RCW 48.43.065 does not discriminate against religious employers as compared to religious providers, carriers, and facilities, so it suffers no injury in fact attributable to the Defendants. Any problems that Cedar Park might have result from market forces outside Defendants' control or acts, so its claim is not redressable. Assuming incorrectly that Cedar Park had standing, neither the facts alleged nor the law show that Cedar Park's remaining claim has any merit. The Court should dismiss Cedar Park's second amended complaint. For those same reasons and for those already explained in the first response, Dkt. # 35, Cedar Park fails to meet requirements for a preliminary injunction. The Court should deny Cedar Park's renewed motion.

## II. RELIEF REQUESTED

The Court should deny Cedar Park's Renewed Motion for Preliminary Injunction. The Court should dismiss Cedar Park's second amended complaint with prejudice.

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue. Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

## III. FACTS

### A. This Court Allowed Cedar Park Leave to File Its Second Amended Complaint for a Narrow Purpose, Which Cedar Park's Motion Disregards

This is not the first time this Court has been asked to address the constitutional challenges Cedar Park has raised regarding SB 6219. Dkts. # 1, 20. This Court dismissed Cedar Park's original complaint and first amended complaint, which both alleged numerous constitutional challenges to SB 6219 and Washington's conscience statute, RCW 48.43.065. Dkt. # 45. Among other things, the Court ruled that Cedar Park did not have standing to bring its claims because it could not establish an injury-in-fact and that Cedar Park's claims were not ripe because there was no showing of enforcement of SB 6219 against insurance purchasers like Cedar Park. Dkt. # 45. At the same time, in a ruling which should be determinative here as well, this Court denied Cedar Park's Motion for Preliminary Injunction. Dkt. # 45.

Recognizing the fatal flaws in Cedar Park's first two complaints, the Court granted Cedar Park leave to file its second amended complaint to flesh out a narrow issue. Dkt. # 45. The Court explained that given "the liberal standard for amended pleadings," "there is some conceivable set of facts" on the issue whether SB 6219 and Washington's conscience statute, RCW 48.43.065, treat Cedar Park differently than "health care providers, health insurance carriers, and health care facilities" in their respective purchases of health insurance, and that this difference could "constitute[] a cognizable injury."[1] The Court recognized that standing and ripeness problems could remain (and that the primary jurisdiction could be appropriate), but indicated that further briefing is necessary. Dkt. # 45.

Cedar Park then filed its renewed motion for preliminary injunction. Dkt. # 49. Cedar Park's motion devotes two sentences to RCW 48.43.065(2): a conclusory assertion that it is discriminatory and a recitation of the language of the statute. This statute is the alleged basis for the discrimination Cedar Park suffers as a religious employer as compared to a religious health care provider. Rather than put forth facts to show its claims under RCW 48.43.065(2), Cedar

[1] Dkt. # 45 at 22. Notably, Cedar Park first raised its argument of alleged disparate treatment in its Reply Memorandum in Support of Plaintiff's Motion for Preliminary Injunction. *Id.* at 19.

RESPONSE TO RENEWED MOTION FOR PRELIMINARY INJUNCTION AND RENEWED MOTION TO DISMISS
NO. 3:19-cv-05181

2

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue. Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

Park's renewed motion rehashes the same arguments it made, and this Court rejected, before. Instead of showing that Cedar Park is treated disparately compared to other religious employers, Cedar Park filed the a declaration of Jason Smith, alleging facts about Cedar Park's new health care plan that are not discussed in its second amended complaint. Dkts. # 49-50. The declaration also attached documents that purport to show communications with Cedar Park's current health care plan provider. Dkts. # 50, 50-1. Cedar Park posits that these communications show that it cannot purchase health care consistent with its religious beliefs.

**B. Cedar Park's Renewed Motion for Preliminary Injunction Raises Allegations Unsupported by the Complaint or Facts**

The new facts in the declaration and the new documents are improper, since they do not provide any facts showing that Cedar Park is treated worse because it is a religious employer purchasing health insurance as compared to a religious health carrier, provider, or facility. Also, neither the declaration nor the documents show that Cedar Park cannot purchase coverage for services to which it objects, particularly because of any actions by Defendants. Cedar Park's declarant, Jason Smith, claims that delays by Cedar Park's broker and Kaiser Permanente led to Kaiser Permanente (Cedar Park's current insurance provider) requiring that the health plan include coverage for the objected services. Dkt. # 50 at ¶ 3.[2] But the communications recognize Kaiser Permanente made the choice to provide abortion care, not that the Defendants required Kaiser Permanente to refuse to accommodate Cedar Park's religious objection. That is why Kaiser Permanente informed Cedar Park that it can either self-fund or seek a different carrier to accommodate its religious objection.[3] Dkt. # 50-1 at p. 4. Smith never states that Cedar Park attempted to find other health plans offered by other carriers or that the Defendants refused to allow other carriers to offer plans that would accommodate religious objections like those of Cedar Park. Dkt. # 50.

---

[2]It should be noted that both Cedar Park's motion and the documents show that Cedar Park can exclude coverage for contraceptives, and that its carrier will pay for the costs. Dkt. # 49 at 3 n.1; Dkt. # 50-1 at 6.

[3]The second amended complaint and Smith's declaration do not make it clear whether the costs for Cedar Park to "self-insure" mean the costs for covering all health services for the employees or only the costs for maternity services that would theoretically lead to the substantially equivalent abortion services required by RCW 48.43.073.

RESPONSE TO RENEWED MOTION FOR PRELIMINARY INJUNCTION AND RENEWED MOTION TO DISMISS
NO. 3:19-cv-05181

3

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue. Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

In fact, consistent with the allegations in Cedar Park's second amended complaint, the OIC recently *approved* a health insurance plan, offered in Washington, that "limit[s] coverage of abortion services to its enrollees."[4] Providence Health Plan (PHP) is a health insurer, who like Cedar Park, has religious objections to abortion. PHP's health plan, limiting coverage of abortion services of the plan's enrollees, has been approved the OIC. Cedar Park's allegations that Defendants prevented it from acquiring insurance that limits coverage of abortion are unfounded. The only fact Cedar Park has established is that one carrier declined to accommodate Cedar Park's objection. There is no evidence Cedar Park contacted, let alone was refused, by any other carrier offering health plans in the large group market.

The documents supplied by Cedar Park do not contradict the possibility that the OIC approves plans consistent with Cedar Park's religious beliefs. In an email where the sender and date have been removed, it appears that Kaiser Permanente will work with Cedar Park to change its plans mid-year to accommodate religious objections. Dkt. # 50-1 at p. 1.[5]

In sum, the facts show that the Court allowed Cedar Park to continue on a narrow claim that it raised late in a reply brief. Cedar Park has presented no facts related to that claim, but instead presents new facts showing that it did not timely seek or negotiate for a health plan consistent with its religious views. There remains no factual allegations that Cedar Park cannot purchase the plan it desires—if anything, there are further facts showing that the OIC has approved health insurance plans consistent with Cedar Park's religious beliefs. Further, Cedar Park has still yet to submit facts showing that the Defendants have refused to recognize Cedar Park's religious beliefs.

---

[4] September 19, 2019 Press Release of Washington's Office of Insurance (OIC). A copy of the Press Release is attached to the Declaration of Paul M. Crisalli (Crisalli Decl.) (Dkt. # 54) and marked as Exhibit A (Dkt. # 54-1).

[5]The date of the email might be relevant if it was near or after September 1, 2019, as this would have been the deadline for Kaiser Permanente to file its plan with the OIC for approval to be on the market in time for Cedar Park to purchase it. Cedar Park's request would have been far too late for Kaiser Permanent to comply with Cedar Park's wishes and still meet the OIC filing deadline. This would be a problem of Cedar Park's own making.

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue. Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

## IV. ARGUMENT

Cedar Park's second amended complaint and renewed motion for preliminary injunction rehash arguments already rejected by this Court. Cedar Park can only posit conclusory statements, void of any factual allegations, that support the narrow claim that the Court allowed Cedar Park to continue. Lacking such facts, Cedar Park cannot show that it has standing to bring its claim, that its claim is ripe, or that there are sufficient alleged facts to support a claim upon which relief can be granted. The Court should dismiss Cedar Park's second amended complaint and deny Cedar Park's renewed motion for preliminary injunction.

### A. Legal Standards

Having already ruled on the motion to dismiss and motion for preliminary injunction, the Court is familiar with the applicable standards, so they will be briefly summarized here. First, FRCP 12(b)(1) requires a court to dismiss a complaint that fails to allege facts establishing subject matter jurisdiction. *See Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003). Without standing, the Court lacks Article III subject matter jurisdiction and the case must be dismissed. *Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1174 (9th Cir. 2004). The plaintiff bears the burden to establish the Court's jurisdiction. *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010).

Courts must dismiss complaints under FRCP 12(b)(6) if "there is a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Conservation Force v. Salazar*, 646 F.3d 1240, 1242 (9th Cir. 2011). A complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible if it contains factual content that allows the court to draw a reasonable inference that the defendant may be liable. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Although the Court must accept as true all material allegations in the complaint, as well as reasonable inferences drawn from them, and the complaint must be read in the light most favorable to the nonmoving party, *Daniels-Hall v. Nat'l Educ. Ass'n*,

RESPONSE TO RENEWED MOTION FOR PRELIMINARY INJUNCTION AND RENEWED MOTION TO DISMISS
NO. 3:19-cv-05181

5

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue. Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

F.3d 992, 998 (9th Cir. 2010), the Court must not accept allegations that "are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Id.* In other words, the Court should "disregard '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements.' *Telesaurus VPC, LLC v. Power*, 623 F.3d 998, 1003, (9th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 678).

Cedar Park again alleges both a facial and as-applied challenge to SB 6219. "As a general matter, a facial challenge is a challenge to an entire legislative enactment or provision." *Hoye v. City of Oakland*, 653 F.3d 835, 857 (9th Cir. 2011). A statute is facially unconstitutional if "it is unconstitutional in every conceivable application, or it seeks to prohibit such a broad range of protected conduct that it is unconstitutionally overbroad." *Foti v. Menlo Park*, 146 F.3d 629, 635 (9th Cir. 1998) (internal quotations omitted). To prevail on a facial challenge, there must be no possible application of the law that could survive a legal challenge. *Id.* By contrast, an as-applied challenge contends that the law is unconstitutional as applied to the litigant, even though the law may be capable of valid application to others. *Id.* "A successful as-applied challenge does not render the law itself invalid but only the particular application of the law." *Id.* A plaintiff asserting an as-applied challenge must show only that the law as applied to the plaintiff's unique circumstances violates its constitutional rights. *Id.*

Turning to the preliminary injunction standards, a preliminary injunction is a matter of equitable discretion, but is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). A party can obtain a preliminary injunction only if can show that: (1) it is likely to succeed on the merits, (2) it is likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in its favor, and (4) an injunction is in the public interest. *Disney Enters., Inc. v. VidAngel, Inc.*, 869 F.3d 848, 856 (9th Cir. 2017). When the government is a party, the last two factors merge. *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014).

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue. Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

**B. The Court Should Dismiss the Renewed Claims Not Allowed by the Court's Order Granting Leave to Amend**

At the outset, this Court should again dismiss Cedar Park's claims that were already dismissed in this Court's August 2, 2019 order (Dkt. # 45). In that order, the Court ruled that it lacked jurisdiction because Cedar Park "has provided insufficient evidence to support a conclusion that it has been or will certainly be injured by the requirements of SB 6219." Dkt. #45 at 11. The Court also ruled that Cedar Park's claims were not justiciable because, "on the record before it, enforcement of SB 6219 against insurance purchasers like Cedar Park is only hypothetical." Dkt. # 45 at 17. The Court granted Cedar Park leave to amend its Complaint on the narrow ground that "there is some conceivable set of facts under which Cedar Park could show as alleged that the health insurance which health care providers, health insurance carriers, and health care facilities purchase for their employees is exempt from SB 6219's requirements in a way that the health insurance which Cedar Park purchases for its employees is not and that this constitutes a cognizable injury." Dkt. # 45 at 22.

In addition to the paragraph identified by the Court in the August 2 order, Cedar Park's second amended complaint alleges the same claims that were dismissed. Dkt. # 46. Continuing that trend, Cedar Park's renewed motion for preliminary injunction argues that it is likely to prevail on the same claims that this Court dismissed. Dkt. # 49. *See Thomas v. Bible*, 983 F.2d 152, 154 (9th Cir. 1993) (law of the case doctrine provides that a court generally cannot reconsider an issue by the same or higher court). For the reasons explained in this Court's August 2, 2019 Order, this Court should again dismiss the claims in the second amended complaint that this Court already rejected and deny Cedar's Park's motion for preliminary injunction as to them.

**C. Even if the Court Considers the New Facts in Cedar Park's Renewed Motion, Those Facts Do Not Resurrect the Already Dismissed Claims**

Even if the Court were to reanalyze those dismissed claims in light of the new facts provided by Cedar Park in the declaration and documents, which the Court should not, Cedar Park has still failed to show that it has suffered an injury-in-fact or that its claim is redressable by this Court. At best, the declaration and documents show that Cedar Park's current plan might

RESPONSE TO RENEWED MOTION
FOR PRELIMINARY INJUNCTION AND
RENEWED MOTION TO DISMISS
NO. 3:19-cv-05181

7

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue. Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

provide coverage for the services to which it objects and that the insurance carrier from whom Cedar Park purchased its health plan might not offer a plan that accommodates Cedar Park's objections. But the documents do not show that either of these facts resulted from the Defendants' actions. In fact, the OIC approved health plans for sale in the individual market filed by Providence Health Plan that would accommodate religious objections like Cedar Park's. The OIC approved this plan consistent with the requirements of RCW 48.43.065. Even considering the new facts in the renewed preliminary injunction motion (which were not alleged in Cedar Park's second amended complaint), Cedar Park has failed to show that it cannot purchase a health plan consistent with its religious beliefs because of the Defendants' actions or omissions. Cedar Park still lacks standing and its claims are still hypothetical and unripe.

**D. The Court Should Dismiss the Narrow Remaining Claim**

In an effort to squeeze its claims into the narrowest sliver of space allowed by this Court, Cedar Park's second amended complaint has alleged that "RCW § 48.43.065 is not neutral and generally applicable because it treats religious health care providers, carriers, and facilities more favorably than churches like Cedar Park."[6] There are at least three reasons, however, why this conclusory and unexplained allegation of disparate treatment demonstrates that Cedar Park is not treated differently than health care providers, health insurance carriers, and health care facilities in its purchase of health insurance, and that Cedar Park has not suffered a cognizable injury.

*First*, Cedar Park has misread the statute it relies upon when alleging that that "RCW 48 43 065(2)(a) provides a broad exemption for health care providers, religiously sponsored health carriers, and health care facilities that object for reason of conscience or religion to payment for a specific service." Dkt. # 46, ¶ 61. In fact, RCW 48.43 065(2)(a) provides, in relevant part, that "[n]o individual health care provider, religiously sponsored health carrier, or health care facility may be required by law or contract in any circumstances to

[6] Dkt. # 46, ¶ 107. Similar allegations of this alleged disparate treatment are set forth in ¶¶ 59-72, 98, 151, 154, and 158.

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue. Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

*participate in the provision of or payment for a specific service* if they object to so doing by reason of conscience or religion." (emphasis added). The italicized language makes clear that this exemption is based on the fact that an "individual health care provider, religiously sponsored health carrier, or health care facility"—unlike churches, such as Cedar Park—are in the business of either providing or paying for "a specific [health care] service". RCW 48.43.065(2)(a). If Cedar Park is treated disparately, it is because it does not "participate in the provision of or payment for a specific service", and not because it is a church.

*Second*, Cedar Park alleges that it is somehow treated less favorably because there "is no requirement that health care providers, health carriers, or health care facilities provide enrollees with the services not provided for reason of conscience or religion."[7] Dkt. 46, ¶ 63. This argument conflates the distinct roles that providers—including facilities, carriers, and employers—play in the health care system. It also fails to understand how RCW 48.43.065 works in its entirety. A health care provider or health care facility actually performs medical services, so they are licensed and heavily regulated. When the actual service is one a provider objects to, that provider is not required to provide that service. Cedar Park does not allege that it is licensed or authorized to provide medical services as an individual provider or facility. As such, it cannot lawfully be required (or permitted) to provide any medical services (objected to or not). Cedar Park, like providers and facilities, is not obligated to provide services it objects to for reason of conscience or religion.

Similarly, insurance carriers have a distinct, and highly regulated, role in the market. Carriers collect premiums from purchasers in order to cover the costs of all the particular services that carriers anticipate they ultimately will have to pay providers to render. Premiums are not a direct payment for specific service, as no actual services have been rendered when premiums are paid. Rather, premium payments secure the promise that all the services covered by a health plan will be paid, but premiums cannot be characterized as payments for specific services, where some of the services covered by a health plan will never be rendered to a particular group.

[7] Notably, Cedar Park has offered no factual, statutory, or legal basis to support this allegation.

RESPONSE TO RENEWED MOTION FOR PRELIMINARY INJUNCTION AND RENEWED MOTION TO DISMISS
NO. 3:19-cv-05181

9

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue. Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

Employers like Cedar Park purchase health plans that are intended to cover a multitude of different services, but employers purchasing health plans are not paying for a "specific service" when they pay premiums. As Cedar Park recognizes, it can create a self-funded program to directly pay for specific services, but it has declined that option. Cedar Park thus cannot claim that is being required to pay for particular services. Since religious employers like Cedar Park are not required to provide or pay for specific services, like the role of an insurance carrier, Cedar Park is not treated disparately under RCW 48.43.065(3).[8]

*Third*, Cedar Park mistakenly claims that its own conscience rights are more limited by mischaracterizing the constraining language in RCW 48.43.065(3)(b) as imposing an additional obligation on objecting employers, rather than on carriers choosing to accommodate those employers. Dkt. # 46, ¶ 64. The statutory scheme sets forth the opposite. Unlike employers, religious carriers are obligated to provide notice and information about how to access services to their enrollees. RCW 48.43.065(2)(b). There is no such similar obligation imposed on employers. RCW 48.43.065(3)(b). While enrollees are entitled to access to services and coverage for mandated services, RCW 48.43.065(3)(b), the Commissioner is authorized to promulgate rules to ensure enrollee coverage and access are protected as required by RCW 48.43 065(2) and (3). The Rule ensuring coverage and access rests the burden exclusively on the carrier. WAC 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. No such obligation exists on employers. RCW 48 43 065(3); WAC 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.

Cedar Park's mischaracterization continues by implying that since carriers cannot be required to forego payment for services that are objected to, all carriers will insist on charging Cedar Park a premium that includes payment for these services, either directly or indirectly, regardless whether Cedar Park chooses to assert its conscience rights. Dkt. # 46, ¶ 71. But Cedar Park has failed to allege a factual basis for that conclusory assumption. For the one carrier with a religious objection to abortion, the Washington State Department of Health Family Planning provides the necessary coverage and access for services to which the carrier objects. Cedar Park

[8] And absent legal authorization to provide medical services, they should not they do so.

RESPONSE TO RENEWED MOTION FOR PRELIMINARY INJUNCTION AND RENEWED MOTION TO DISMISS
NO. 3:19-cv-05181

10

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue. Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

has not alleged that this or a similar program would not be available for plans sold to objecting employers. Nor has Cedar Park alleged that all carriers necessarily will impose a direct or indirect fee on Cedar Park in order to account for the cost of covering the services Cedar objects to.

Thus, the Court should dismiss Cedar Park's Second Amended Complaint for lack of standing to bring the remaining narrow claim because it does not suffer an injury-in-fact because of the Defendants' acts. *See Clapper v. Amnesty Int'l USA*, 586 U.S. 398, 416-18 (2013) (ongoing injuries are not fairly traceable to defendants when plaintiffs inflict harm on themselves based on fears of hypothetical future harm); *Bassett v. ABM Parking Servs., Inc.*, 883 F.3d 776, 779 (9th Cir. 2018) (standing requires a concrete injury); *City & Cty. Of San Francisco*, 357 F. Supp. 3d 931, 944 (N.D. Cal. 2018) (uncertainty of agency position does not create standing unless there are concrete and particular burdensome requirements). Even if there were an injury in fact, it is caused by the market, not the Defendants, meaning that an order of this Court in favor of Cedar Park would not redress any possible harms. *See Glanton ex rel. Alcoa Prescription Drug Plan v. Advance PCS, Inc.*, 465 F.3d 1123, 1124-25 (9th Cir. 2006) (claims not redressable because any prospective relief "depends on an independent actor who retains broad and legitimate discretion the courts cannot presume either to control or predict."). A decision here cannot compel or ensure the existence of a private market that suits Cedar Park's desires. And Cedar Park fails to state a claim upon which relief can be granted because RCW 48.43.065 does not discriminate against religious employers and religious carriers, providers, and facilities based on religion.

**E. In the Alternative, the Court Should Invoke the Primary Jurisdiction Doctrine to Allow the OIC to Address Confusion Through Rulemaking**

Even if Cedar Park had standing (which it doesn't) and even if its claims are ripe (which they aren't) and even if Cedar Park alleged facts upon which it could be entitled to relief (which it didn't), an issue not resolved by this Court when it dismissed Cedar Park's earlier pleadings, but may be relevant now, is whether Cedar Park's claims were barred by the doctrine of primary jurisdiction. Given that the OIC had not yet completed its review or issued its Final Rule, in

RESPONSE TO RENEWED MOTION FOR PRELIMINARY INJUNCTION AND RENEWED MOTION TO DISMISS
NO. 3:19-cv-05181

11

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue. Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

granting Defendants' initial Motion to Dismiss, this Court found "that invoking primary jurisdiction would be superfluous at this point in the litigation." Dkt. # 45 at 17-19.

The OIC has still not yet completed its review or issued its Final Rule. But the OIC recently has announced that it has approved health insurance plans that "limit coverage of abortion services to its enrollees" in Washington.[9] Providence Health Plan (PHP) is a health insurer that, like Cedar Park, has religious objections to abortion. PHP's health plan, limiting coverage of abortion services of the health plan's enrollees, has been approved by the OIC. Cedar Park's allegations that it is unable to acquire insurance which limits coverage of abortion are unfounded—such coverage is available. The problem, then, appears to be not that such limited coverage is unavailable; but rather, that Cedar Park or its broker are not looking hard enough or are not considering (or, perhaps, not disclosing) all of the options that are available. In any event, the Court should allow the OIC to address in a published rule how it has decided to respect carriers' religious beliefs as it reconciles the Reproductive Parity Act (SSB 6219) and the State conscience clause (RCW 48.43.065).

**F.    The Court Should Deny Cedar Park's Renewed Motion for Preliminary Injunction**

For the above reasons, Cedar Park's renewed motion for preliminary injunction should be denied. Further, should the Court wish to reanalyze the arguments Cedar Park repeats from its earlier motion for preliminary injunction, the Defendants response to that first motion, Dkt. # 35, explains why those arguments fail on their merits. When looking at the other elements like irreparable harm and balancing the equities, Cedar Park's renewed motion adds nothing more than what was argued the first time around. As explained in the Defendants' response to that motion, Dkt. # 35, the Court should again reject those arguments.

---

[9] Crisalli Decl. (Dkt. # 54), Exhibit A (Dkt. # 54-1).

RESPONSE TO RENEWED MOTION
FOR PRELIMINARY INJUNCTION AND
RENEWED MOTION TO DISMISS
NO. 3:19-cv-05181

12

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue. Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

## V. CONCLUSION

Defendants request that this Court dismiss Cedar Park's second amended complaint and deny Cedar Park's Renewed Motion for Preliminary Injunction.

DATED this 4th day of October, 2019.

ROBERT W. FERGUSON
Attorney General

*/s/ Paul M. Crisalli*
JEFFREY T. SPRUNG, WSBA #23607
PAUL M. CRISALLI, WSBA #40681
MARTA DELEON, WSBA #35779
JOYCE A. ROPER, WSBA #11322
JEFFREY C. GRANT, WSBA #11046
Assistant Attorneys General
Attorneys for Defendants

RESPONSE TO RENEWED MOTION
FOR PRELIMINARY INJUNCTION AND
RENEWED MOTION TO DISMISS
NO. 3:19-cv-05181

13

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue. Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

**DECLARATION OF SERVICE**

I hereby declare that on this day I caused the foregoing document to be electronically filed with the Clerk of the Court using the Court's CM/ECF System which will send notification of such filing to the following:

Kristen K. Waggoner
Kevin H. Theriot
Elissa M. Graves
Alliance Defending Freedom
15100 N 90th Street
Scottsdale, AZ 85260
KWaggoner@adflegal.org
KTheriot@adflegal.org
EGraves@adflegal.org
*Attorneys for Plaintiff*

David A. Cortman
Alliance Defending Freedom
1000 Hurricane Shoals Rd. NE
Suite D-1100
Lawrenceville, GA 30040
DCortman@adflegal.org
*Attorney for Plaintiff*

DATED this 4th day of October, 2019, at Seattle, Washington.

*/s/ Paul M. Crisalli*
Paul M. Crisalli, WSBA #40681
Assistant Attorney General

RESPONSE TO RENEWED MOTION FOR PRELIMINARY INJUNCTION AND RENEWED MOTION TO DISMISS
NO. 3:19-cv-05181

14

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue. Suite 2000
Seattle, WA 98104-3188
(206) 464-7744