Honorable Benjamin H. Settle

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| CEDAR PARK ASSEMBLY OF GOD OF KIRKLAND, WASHINGTON,<br><br>   Plaintiff,<br><br> v.<br><br>MYRON "MIKE" KREIDLER, in his official capacity as Insurance Commissioner for the State of Washington; JAY INSLEE, in his official capacity as Governor of the State of Washington,<br><br>   Defendants. | Civil No. 3:19-cv-05181<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND REPLY IN SUPPORT OF PLAINTIFF'S RENEWED MOTION FOR PRELIMINARY INJUNCTION**<br><br>NOTE ON MOTION CALENDAR: Friday, November 15, 2019<br><br>ORAL ARGUMENT REQUESTED |

Plaintiff's Opposition to Defendant's Motion to Dismiss and Reply in Support of Plaintiff's Renewed Motion for Preliminary Injunction
3:19-cv-05181

ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, Arizona 85260
(480) 444-0020

# TABLE OF CONTENTS

Table of Authorities ........................................................................................................... iii

INTRODUCTION .................................................................................................................1

FACTUAL BACKGROUND.................................................................................................2

ARGUMENT ........................................................................................................................4

I.   Factual developments and the direct challenge to the conscience statute make Cedar Park's claims justiciable. ..................................................................................4

    a.   Cedar Park is currently suffering injury because it is being forced to provide insurance coverage for abortion and suffering unequal treatment..........................4

    b.   Cedar Park's claims are ripe because the Church's injury is currently occurring. ...................................................................................................6

    c.   Defendants' statutory scheme caused Cedar Park's injuries. ................................6

    d.   Cedar Park's Second Amended Verified Complaint properly raises both facial and as-applied claims. ......................................................................8

II.   None of Cedar Park's claims are precluded under this Court's previous order..................9

III.   The primary jurisdiction doctrine does not apply. .............................................................9

IV.   Cedar Park has stated a claim under the Free Exercise Clause.........................................11

    a.   The Statutes impose an impermissible burden on Cedar Park's exercise of religion. ...........................................................................................12

    b.   The Statutes are neither neutral nor generally applicable. ....................................12

        i.   The Statutes provide exemptions that undermine the Defendants' stated interest in providing women access to health benefits. ..................12

        ii.   The Statutes are not neutral in their operation. .........................................14

            1.   RCW § 48.43.065 treats churches less favorably than other religious organizations. ...............................................................15

            2.   SB 6219 is impermissibly gerrymandered. ....................................16

            3.   SB 6219 intentionally discriminates against religious organizations like Cedar Park. .......................................................17

    c.   The Statutes do not survive strict scrutiny............................................................18

Plaintiff's Opposition to Defendants' Motion to
Dismiss and Reply in Support of Plaintiff's
Renewed Motion for Preliminary Injunction
3:19-cv-05181

i

ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, Arizona 85260
(480) 444-0020

i.      The Statutes do not serve a compelling government interest. ...................18

ii.     The Statutes are not narrowly tailored. .......................................19

d.     The Statutes violate the Free Exercise Clause for additional reasons. .................20

V.     Cedar Park has stated an Equal Protection claim based on the disparate treatment inherent in the Statutes.......................................................21

VI.    Cedar Park has stated a church autonomy claim because mandated abortion coverage interferes with the Church's administration of its employees. ..........................22

VII.   The Statutes' discrimination among religious organizations is clear grounds for an Establishment Clause claim. .......................................................23

VIII.  This Court should grant Cedar Park's renewed Motion for Preliminary Injunction because there are serious questions going to the merits of the constitutionality of the Statutes. .......................................................23

Certificate of Service ...............................................................26

Plaintiff's Opposition to Defendants' Motion to
Dismiss and Reply in Support of Plaintiff's
Renewed Motion for Preliminary Injunction
3:19-cv-05181

ii

ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, Arizona 85260
(480) 444-0020

1

## **TABLE OF AUTHORITIES**

2

**Cases**

3

*ACLU v. Ashcroft*,
    322 F.3d 240 (3d Cir. 2003)..................................................................24

4

*Alliance for the Wild Rockies v. Cottrell*,
    632 F.3d 1127 (9th Cir. 2011) .......................................................2, 23

5

*Arizona Dream Act Coalition v. Brewer*,
    757 F.3d 1053 (9th Cir. 2014) ...........................................................21

6

7

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)................................................................................1

8

9

*Askins v. U.S. Dept. of Homeland Security*,
    899 F.3d 1035 (9th Cir. 2018) .............................................................9

10

*Baltimore & Ohio Chicago Terminal R. Co. v. Wisconsin Cent. Ltd.*,
    154 F.3d 404 (7th Cir. 1998) .............................................................10

11

12

*Bantam Books, Inc. v. Sullivan*,
    372 U.S. 58 (1963)................................................................................7

13

*Braunfeld v. Brown*,
    366 U.S. 599 (1961)............................................................................12

14

15

*Brown v. Entertainment Merchants Ass'n*,
    564 U.S. 786 (2011)............................................................................19

16

17

*Bruni v. City of Pittsburgh*,
    824 F.3d 353 (3d Cir. 2016)................................................................8

18

*Burwell v. Hobby Lobby*,
    573 U.S. 682 (2014)....................................................................12, 20

19

20

*C.A.B. v. Aeromatic Travel Corp.*,
    *489, F.*2d 251 (2d Cir. 1973) ...........................................................10

21

*Canyon Ferry Road Baptist Church v. Unsworth*,
    556 F.3d 1021 (9th Cir. 2009) ..........................................................13

22

23

*Church of Lukumi Babalu Aye v. City of Hialeah*,
    508 U.S. 520 (1993)..........................................................11–12, 14–19

24

*Citizens United. Federal Election Com'n*,
    558 U.S. 310 (2010)..............................................................................8

25

26

27

Plaintiff's Opposition to Defendants' Motion to
Dismiss and Reply in Support of Plaintiff's
Renewed Motion for Preliminary Injunction
3:19-cv-05181
      iii      ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, Arizona 85260
(480) 444-0020

*Clark v. Jeter*,
    486 U.S. 456 (1988)...........................................................................21

*Clark v. Time Warner Cable*,
    523 F.3d 1110 (9th Cir. 2008)............................................................10

*Comm. for Pub. Educ. & Religious Liberty v. Nyquist*,
    413 U.S. 756 (1973)...........................................................................23

*Doe v. City of Albuquerque*,
    667 F.3d 1111 (10th Cir. 2012) .......................................................8–9

*Elrod v. Burns*,
    427 U.S. 347 (1976)...........................................................................24

*Employment Division, Dep't of Human Resources of Oregon v. Smith*,
    494 U.S. 872 (1990)..................................................................1, 11–12, 22

*Fraternal Order of Police Newark Lodge No. 12 v. City of Newark*,
    170 F.3d 359 (3d Cir. 1999)......................................................13–14, 17

*Frisby v. Schultz*,
    487 U.S. 474 (1988)...........................................................................19

*Gonzales v. O Centro Espirita Beneficente Uniao do Vogetal*,
    546 U.S. 418 (2006)......................................................................18–19

*Grutter v. Bollinger*,
    539 U.S. 306 (2003)...........................................................................20

*Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*,
    896 F.2d 1542, 1555 & N.19 ................................................................6

*Kedroff v. St. Nicholas Cathedral*,
    344 U.S. 94 (1952).............................................................................22

*Kennedy v. Bremerton School District*,
    139 U.S. 634 (2019)...........................................................................20

*Larson v. Valente*,
    456 U.S. 228 (1982)...........................................................................15

*Lehman v. City of Shaker Heights*,
    418 U.S. 298 (1974).............................................................................7

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992).............................................................................7

Plaintiff's Opposition to Defendants' Motion to
Dismiss and Reply in Support of Plaintiff's
Renewed Motion for Preliminary Injunction
3:19-cv-05181

iv

ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, Arizona 85260
(480) 444-0020

*Masterpiece Cakeshop, Ltd. v. Colo. Civil Rights Comm'n*,
    138 S. Ct. 1719 (2018)..................................................................16–17

*Midrash Sephardi, Inc. v. Town of Surfside*,
    366 F.3d 1214 (11th Cir. 2004) ................................................................13

*NE. Fla. Chapter of the Associated Gen. Contractors of Am. v. Jacksonville*,
    508 U.S. 656, (1993)................................................................................5

*Plyler v. Doe*,
    457 U.S. 202 (1982)................................................................................21

*Presbyterian Church v. Mary Elizabeth Blue Hull Memorial Presbyterian Church*,
    393 U.S. 440 (1969)................................................................................22

*Renee v. Duncan*,
    686 F.3d 1002 (9th Cir. 2012) ................................................................8

*San Jose Christian College v. City of Morgan Hill*,
    360 F.3d 1024 (9th Cir. 2004) ................................................................17

*Serbian Eastern Orthodox Diocese v. Milivojevich*,
    426 U.S. 696 (1976)................................................................................22

*Stormans v. Wiesman*,
    794 F.3d 1080 (9th Cir. 2015) ................................................................14

*Thomas v. Review Bd. of the Ind. Employment Security Div.*,
    450 U.S. 707 (1981)................................................................................19

*United States v. Playboy Entm't Grp., Inc.*,
    529 U.S. 803 (2000)................................................................................19–20

*United States v. Stevens*,
    559 U.S. 460 (2010)................................................................................8

*Watson v. Jones*,
    80 U.S. 679 (1871)................................................................................22

**Statutes**

RCW § 48.43.005 ................................................................................13, 20, 22

RCW § 48.43.065 ................................................................................ *passim*

Plaintiff's Opposition to Defendants' Motion to
Dismiss and Reply in Support of Plaintiff's
Renewed Motion for Preliminary Injunction
3:19-cv-05181

v

ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, Arizona 85260
(480) 444-0020

## Other Authorities

AGO 2002 No. 5 ...........................................................................................................3

AGO 2006 No. 10 .........................................................................................................3

Douglas Laycock, *Theology Scholarships, the Pledge of Allegiance, and Religious Liberty: Avoiding the Extremes but Missing the Liberty*, 118 Harv. L. Rev. 155, 210 (2004). ..................................................................11, 14

James Hilliard, *Tapping Agency Expertise: The Doctrine of Primary Jurisdiction*, 96 Ill. B.J. 256 (May 2008) ...............................................................................10

Matt Markovich, *Catholic Bishops of Wash. ask Gov. Inslee to Veto Abortion Insurance Bill*, KOMO News, March 5, 2018, https://bit.ly/2Uuu5Nf ..................................................18

Michael W. McConnell, *Free Exercise Revisionism and the* Smith *Decision*, 57 U. Chi. L. Rev. 1109 (1990) ...........................................................................20

Office of the Insurance Commissioner, *Health Plan Coverage of Reproductive Health Care & Contraceptive Rulemaking*, July 22, 2019, https://bit.ly/32TR30E ............................................................................................11

Office of the Insurance Commissioner, *Health Plan Coverage of Reproductive Health Care & Contraception (R 2018-10) (R-2019-07)*, https://bit.ly/33ZPE8P.............................................................................................11

Richard F. Duncan, *Free Exercise is Dead, Long Live Free Exercise*, 3 U. Pa. J. Const. 850, 883 (2001)............................................................12–13

Plaintiff's Opposition to Defendants' Motion to Dismiss and Reply in Support of Plaintiff's Renewed Motion for Preliminary Injunction 3:19-cv-05181

vi

Alliance Defending Freedom
15100 N. 90th Street
Scottsdale, Arizona 85260
(480) 444-0020

**INTRODUCTION**

This Court dismissed Cedar Park's First Amended Verified Complaint because there was no evidence demonstrating how insurance carriers had responded to SB 6219 and how it interacts with the limited religious exemption in RCW § 48.43.065. ECF No. 45 at 12. Since then, Cedar Park's insurance carrier informed Cedar Park that, because of SB 6219, its health insurance plan beginning September 1, 2019, must provide coverage for abortion, and the insurer will not allow Cedar Park to forego that coverage pursuant to the limited exemption in RCW § 48.43.065. Ex. A to Pl.'s Mot. for Prelim. Inj., Decl. of Jason "Jay" Smith ("Smith Decl.") at ¶¶ 3–4, ECF No. 50; Pl.'s Proposed Suppl. Verified Compl. ("Supp. Compl.") at ¶¶ 48.1–48.2, ECF No. 51, Ex. A. Cedar Park therefore has standing to pursue its claims and those claims are ripe.

In order to survive Defendants' motion to dismiss, Cedar Park's complaint need only "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted). Cedar Park has stated a claim under the Free Exercise Clause. The Statutes are not neutral or generally applicable, making them subject to strict scrutiny under the Free Exercise Clause. *See Emp. Div. Dep't of Hum. Res. of Oregon v. Smith*, 494 U.S. 872 (1990). Furthermore, Defendants effectively concede that Washington treats religious health care organizations and religiously sponsored insurance carriers more favorably than Cedar Park by allowing entities such as Catholic hospitals to be completely exempt from SB 6219. Defendants conspicuously avoid mentioning that such entities are completely exempt, with no danger of having to pay any additional fees under RCW §48.43.065. SB 6219 is also subject to strict scrutiny because it requires Cedar Park to violate long-established historical religious practices involving the sanctity of human life and opposition to abortion, and because it violates the church autonomy doctrine of the First Amendment religion clauses. Cedar Park has also stated a claim under the Equal Protection Clause and the Establishment Clause because of the Statutes' disparate treatment of similar religious organizations. This Court should therefore deny Defendants' motion to dismiss.

Plaintiff's Opposition to Defendants' Motion to Dismiss and Reply in Support of Plaintiff's Renewed Motion for Preliminary Injunction 3:19-cv-05181

1

ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, Arizona 85260
(480) 444-0020

Cedar Park is entitled to a preliminary injunction, as there are "serious questions going to the merits" of the constitutionality of SB 6219 and RCW § 48.43.065. *See Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134–35 (9th Cir. 2011). This Court should preserve the status quo that existed prior to SB 6219 because of the confusion it has caused. That confusion is demonstrated by the inordinate time Cedar Park's carrier took to determine how to interpret the challenged Statutes and its eventual determination that Cedar Park's plan must cover abortion. Defendants have done nothing to alleviate that confusion and the proposed rule they say will bring clarity does not address religious exemptions.

## FACTUAL BACKGROUND[1]

Senate Bill 6219 requires Washington employers to cover abortion in their employee health care plans. Second Amended Verified Complaint ("VC") ¶ 48. SB 6219, codified at RCW § 48.43.073, provides that "if a health plan issued or renewed on or after January 1, 2019, provides coverage for maternity care or services, the health plan must also provide a covered person with substantially equivalent coverage to permit the abortion of a pregnancy." VC Ex. A at § 3(1).

Cedar Park teaches that all people have value because they are made in God's image. A substantial part of the church's ministry is focused on preserving and celebrating life from its beginning until its natural end. VC ¶¶ 27–30. Cedar Park believes and teaches that participation in, facilitation of, or payment for abortion or abortifacient drugs and devices in any circumstance is a grave sin. *Id*. at ¶ 29. Cedar Park expects its employees to abide by and agree with the Church's ethical standards, including its religious beliefs and teachings on the sanctity of life, in both their work life and private life. VC ¶ 31.

Washington law affords a comprehensive exemption from SB 6219 for religious health care related organizations. RCW § 48.43.065(2)(a). But it provides an inadequate exemption for other religious organizations like Cedar Park that still allows them to be billed for objectionable

---

[1] Cedar Park reiterates its Factual Background contained in its Renewed Motion for Preliminary Injunction. ECF No. 49 at 2–8.

Plaintiff's Opposition to Defendants' Motion to Dismiss and Reply in Support of Plaintiff's Renewed Motion for Preliminary Injunction 3:19-cv-05181

2

ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, Arizona 85260
(480) 444-0020

coverage. RCW § 48.43.065(3)(a) states "[n]o individual or organization with a religious or moral tenet opposed to a specific service may be required to purchase coverage for that service or services if they object to doing so for reason of conscience or religion." But the next subsection states that "[t]he provisions of this section shall not result in an enrollee being denied coverage of, and timely access to, any service or services excluded from their benefits package as a result of their employer's …exercise of the conscience clause in (a) of this subsection." RCW § 48.43.065(3)(b). An insurance carrier cannot be forced to pay for the additional coverage. RCW § 48.43.065(4).

The Washington Attorney General issued two opinions explaining how this works and demonstrating that this exemption provides no real protection for Cedar Park.[2] The 2002 opinion concludes that, under RCW § 48.43.065, "[t]he insurance commissioner has authority to require health care insurance carriers to include the cost of [the objectionable coverage] as a component in the rate setting actuarial analysis, where an employer raises a conscientious objection to paying these costs directly as part of that employer's employee health care benefit package." AGO 2002 No. 5. Importantly, "nothing in the conscientious objection law requires health carriers to provide services 'without appropriate payment of premium or fee…'" *Id*. The phrase "'appropriate payment of premium or fee'" can be interpreted to mean that "[i]nclusion of the cost of [the objectionable] coverage as a component … in the actuarial analysis of a carrier's rates is therefore permissible under RCW 48.43.065." *Id*. So, Cedar Park can be forced to provide coverage, payment, and facilitation of the very services to which it objects on the basis of conscience.

A different religious exemption in RCW § 48.43.065 provides: "No individual health care provider, religiously sponsored health carrier, or health care facility may be required by law or contract in any circumstances to participate in the provision of or payment for a specific service if they object to so doing for reason of conscience or religion."   RCW § 48.43.065(2)(a). This

---

[2] AGO 2002 No. 5, Interpretation of "Conscientious Objection" Statute Allowing Employers to Refrain from Including Certain Items in the Employee Health Care Benefit Package (Aug. 8, 2002), https://www.atg.wa.gov/ agoopinions/interpretation-conscientious-objection-statute-allowing-employers-refrain-including, and AGO 2006 No. 10, Extent of Employer's Option to Provide Employee Health Insurance Without Including Coverage of Prescription Contraceptives (May 3, 2006), https://www.atg.wa.gov/ago-opinions/extent-employer-s-option-provide-employee-health-insurance-without-including-coverage.

Plaintiff's Opposition to Defendants' Motion to Dismiss and Reply in Support of Plaintiff's Renewed Motion for Preliminary Injunction 3:19-cv-05181

3

exemption includes the ability of health care providers to exclude abortion and abortion causing drugs from their employee benefit plans. It does *not* allow the provider to charge the religious objector increased premiums to facilitate the objectionable procedure. *Id.* at § (2)(b). RCW § 48.43.065 therefore treats religious health care organizations more favorably than Cedar Park.

On August 14, 2019, Kaiser Permanented informed Cedar Park that it is required include abortion coverage in its health care plan. Due to the late notice from Kaiser and the Church's commitment to care for its employees through the continuity of health care coverage, Cedar Park made the decision to renew its insurance plan beginning September 1, 2019, and did so under protest. Kaiser further informed Cedar Park that it would not permit Cedar Park to invoke the limited religious exemption in RCW § 48.43.065, which allows Cedar Park to refuse to directly provide coverage for abortion or abortifacient contraceptives (but still allows the insurer to charge Cedar Park a separate fee for the objectionable coverage). Kaiser will change the Church's plan mid-year to eliminate coverage of abortion only if SB 6219 is enjoined or otherwise becomes inapplicable. Defendants mischaracterize Cedar Park's evidence from Kaiser Permanente, stating that "it appears that Kaiser Permanente will work with Cedar Park to change its plans mid-year to accommodate religious objections." Defs.' Mot. to Dismiss ("Defs.' MTD"), ECF No. 25 at 4. But Kaiser stated that it would accommodate the objection in the event of a court order allowing it to do so. Smith Decl. ¶ 7; Supp. Compl. at ¶ 48.3. Defendants admit this in their response to Cedar Park's motion for leave to file its supplemental verified complaint. ECF No. 56 at 2.

## ARGUMENT

I.  **Factual developments and the direct challenge to the conscience statute make Cedar Park's claims justiciable.**

a.  **Cedar Park is currently suffering injury because it is being forced to provide insurance coverage for abortion and suffering unequal treatment.**

The recently discovered facts clearly establish that Cedar Park has standing to pursue its claims. Kaiser Permanente recently informed Cedar Park that SB 6219 requires abortion coverage in the Church's plan, and Kaiser will not remove the coverage under the limited exemption in

Plaintiff's Opposition to Defendants' Motion to Dismiss and Reply in Support of Plaintiff's Renewed Motion for Preliminary Injunction 3:19-cv-05181

4

ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, Arizona 85260
(480) 444-0020

RCW § 48.43.065. Smith Decl. at ¶¶ 3–4; Supp. Compl. at ¶¶ 48.1–48.2. Cedar Park's plan therefore currently contains coverage for abortion. Smith Decl. at ¶ 3; Supp. Compl. at ¶ 48.1. According to the previous decision of this Court, Cedar Park lacked standing because "there is no evidence about how insurance carriers have responded to an employer's attempt to invoke its conscience objections under RCW 48.43.065(3)." ECF No. 45 at 12. But Cedar Park is clearly suffering cognizable injury and therefore has standing to pursue its claims.

Furthermore, unequal treatment is sufficient injury to confer standing. SB 6219 and its statutory scheme, especially RCW § 48.43.065, treat religious objectors unequally, establishing injury-in-fact for Cedar Park's Free Exercise, Equal Protection, and Establishment Clause claims. As this Court noted, "there is some conceivable set of facts under which Cedar Park could show as alleged that the health insurance which health care providers, health insurance carriers, and health care facilities purchase for their employees is exempt from SB 6219's requirements in a way that the health insurance which Cedar Park purchases for its employees is not and that this constitutes a cognizable injury." ECF No. 45 at 22.

Read together, SB 6219 and RCW § 48.43.065 treat similarly-situated religious organizations differently by granting health care providers like Catholic hospitals a more favorable religious exemption than churches. *Infra* at 2–4. This disparate treatment injures the Church by violating its rights under the Free Exercise, Establishment, and Equal Protection Clauses.

> When the government erects a barrier that makes it more difficult for members of one group to obtain a benefit than it is for members of another group, a member of the former group seeking to challenge the barrier need not allege that he would have obtained the benefit but for the barrier in order to establish standing. The "injury in fact" in an equal protection case of this variety is the denial of equal treatment resulting from the imposition of the barrier, not the ultimate inability to obtain the benefit.

*NE. Fla. Chapter of the Associated Gen. Contractors of Am. v. Jacksonville*, 508 U.S. 656, 666 (1993).

Plaintiff's Opposition to Defendants' Motion to Dismiss and Reply in Support of Plaintiff's Renewed Motion for Preliminary Injunction 3:19-cv-05181

5

ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, Arizona 85260
(480) 444-0020

Defendants argue that Cedar Park does not have standing because the Office of the Insurance Commissioner has exempted one insurance carrier from SB 6219 under RCW § 48.43.065. Defs.' MTD at 7. In ruling on a motion to dismiss, the Court cannot consider evidence outside of the pleadings. *Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc.*, 896 F.2d 1542, 1555 & n. 19 ("Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion."). Furthermore, the allegation that Defendants approved a single insurance carrier to offer a plan exempt from SB 6219 after the Church's renewal date does not alleviate Cedar Park's injury. Cedar Park is currently required to provide abortion coverage because of SB 6219, and its insurer will not allow Cedar Park to invoke the limited protections of RCW § 48.43.065. Cedar Park had to renew its insurance plan as of September 1, 2019 to avoid a lapse in coverage. Defendants' press release is dated September 19, 2019, so it would have been impossible for Cedar Park to theoretically obtain insurance coverage from this insurer in a timely manner, even if it had been aware of it. Moreover, there is no evidence that the insurer would provide adequate coverage for Cedar Park's employees. And Cedar Park cannot be forced to change its behavior because of the government's unconstitutional laws.

### b. Cedar Park's claims are ripe because the Church's injury is currently occurring.

SB 6219 requires Cedar Park's health care plan to cover abortion, despite Cedar Park's objections. Smith Decl. at ¶ 3; Supp. Compl. at 48.1. As a result, Cedar Park is suffering ongoing harm and its claims are ripe for review. Additionally, RCW § 48.43.065's disparate treatment of similarly-situated religious objectors is currently occurring.

### c. Defendants' statutory scheme caused Cedar Park's injuries.

Defendants argue that the "private market" is responsible for any injury suffered by Cedar Park. Defs.' MTD at 11. But Defendants created SB 6219 and its underlying statutory scheme to force Cedar Park—whether through insurance coverage or increased fees—to provide payment for abortion and abortifacients. Defendants cannot hide behind insurance carriers in attempt to excuse its unconstitutional behavior.

Plaintiff's Opposition to Defendants' Motion to Dismiss and Reply in Support of Plaintiff's Renewed Motion for Preliminary Injunction 3:19-cv-05181

6

ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, Arizona 85260
(480) 444-0020

The Supreme Court has long exercised jurisdiction in cases where the plaintiff's injury arises from a third party's compliance with a statute or rule. In *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58 (1963), the Court held that out-of-state book publishers had standing to challenge a state agency's practice of sending notices to book distributors informing them that certain books were objectionable and unfit for distribution. Even though the notices "were circulated only to distributors," and the agency "made no claim to having jurisdiction of out-of- state publishers," the Court concluded that the publishers' "standing has not been, nor could it be, successfully questioned." *Id*. at 64 n.6. Because the notices had impaired the sales of the publishers' books, the Court reasoned that the case would have presented a justiciable claim of "unlawful interference in advantageous business relations" had it been a private action. *Id*. It made "no difference" to the Court "that the allegedly unlawful interference" was "the product of state action." *Id*.[3]

More importantly, the disparate treatment in RCW § 48.43.065 is currently occurring due to the differing religious exemptions contained in the statute. Defendants provide a clear and complete exemption for religious health care organizations, but allow Cedar Park to be charged additional fees for objectionable items excluded from its plan. This disparate treatment is apparent on the face of the statute and as interpreted and applied by Defendants. Defendants are directly responsible for this injury.

Finally, Cedar Park's claims are redressable, contrary to Defendants' argument. Defs.' MTD at 7, 11. All that is required for redressability is that it "be likely, as opposed to merely speculative," that the Cedar Park's "injury will be redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). Cedar Park need not show that a favorable ruling will

---

[3] Furthermore, governments regularly delegate final decision-making to third parties, but the government itself remains constitutionally liable for those decisions. For example, when a private advertising company reviews advertisements to be placed on city property, it has some measure of its own discretion. *E.g., Lehman v. City of Shaker Heights*, 418 U.S. 298, 300 (1974). But the government must still have rules in place that comply with the First Amendment, despite a third party managing the forum. *Id*. at 302–305. The State cannot delegate its responsibility to comply with the Constitution to a private party. The fact that an insurance carrier charges Cedar Park for insurance coverage or fees is immaterial—Washington directs that financial transaction through its laws and therefore remains liable for any constitutional injury.

Plaintiff's Opposition to Defendants' Motion to
Dismiss and Reply in Support of Plaintiff's
Renewed Motion for Preliminary Injunction
3:19-cv-05181

7

ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, Arizona 85260
(480) 444-0020

immediately result in it getting its previous plan back. Rather, the Church must show only that a favorable decision would lead to a "change in legal status" that "would amount to a significant increase in the likelihood that [it] would obtain relief that directly redresses the injury suffered." *Renee v. Duncan*, 686 F.3d 1002, 1013 (9th Cir. 2012). Kaiser has made clear that it will offer Cedar Park a plan without abortion insurance if a court order allowed it to do so. Smith Decl. ¶ 7; Supp. Compl. at ¶ 48.3. Cedar Park's claims are therefore redressable.

### d. Cedar Park's Second Amended Verified Complaint properly raises both facial and as-applied claims.

Defendants do not challenge Cedar Park's ability to bring a facial claim, but urge application of an incorrect facial standard. Defs.' MTD. at 7–8. While the test in some contexts has traditionally been that Plaintiff is required "to establish that no set of circumstances exists under which [the law] would be valid," the analysis differs in the First Amendment context. *United States v. Stevens*, 559 U.S. 460, 472–73 (2010) (citing *United States v. Salerno*, 481 U.S. 739, 745 (1987)). Courts have decided First Amendment facial challenges by applying the appropriate constitutional test. In *Doe v. City of Albuquerque*, the Tenth Circuit held that "[t]he proper framework to apply in a facial challenge is not to require the challenger to disprove every possible hypothetical situation in which the restriction might be validly applied, but rather to apply the appropriate constitutional test to determine whether the challenged restriction is invalid on its face (and thus incapable of any valid application)." 667 F.3d 1111, 1122 (10th Cir. 2012). The Third Circuit has also applied the relevant constitutional test to First Amendment facial claims. *Bruni v. City of Pittsburgh*, 824 F.3d 353, 363 (3d Cir. 2016).

The Supreme Court has stated that "the distinction between facial and as-applied challenges is not so well defined that it has some automatic effect or that it must always control the pleadings and disposition in every case involving a constitutional challenge. The distinction is both instructive and necessary, for it goes to the breadth of the remedy employed by the Court, not what must be pleaded in a complaint." *Citizens United v. FEC,* 558 U.S. 310, 331 (2010).

Plaintiff's Opposition to Defendants' Motion to
Dismiss and Reply in Support of Plaintiff's
Renewed Motion for Preliminary Injunction
3:19-cv-05181

8

ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, Arizona 85260
(480) 444-0020

Furthermore, "[t]he idea that the Supreme Court applies the 'no set of circumstances' test to every facial challenge is simply a fiction…Following [*U.S. v.*] *Salerno*, the Court has repeatedly considered facial challenges simply by applying the relevant constitutional test to the challenged statute without attempting to conjure up whether or not there is a hypothetical situation in which application of the statute might be valid." *Doe*, 667 F.3d at 1124–25 (listing cases).

Therefore, in this facial challenge, it is appropriate to simply apply the relevant constitutional test to determine the constitutionality of SB 6219 and RCW §48.43.065.

## II. None of Cedar Park's claims are precluded under this Court's previous order.

Defendants misapply the law of the case doctrine to argue that, because this Court previously dismissed Cedar Park's First Amended Verified Complaint, it cannot consider the same claims contained in the Second Amended Verified Complaint. Def. Opp. at 7. The law of the case doctrine is inapplicable where the dismissal of Cedar Park's First Amended Verified Complaint was without prejudice and Cedar Park was permitted to file its Second Amended Verified Complaint:

> Once the plaintiff elects to file an amended complaint, the new complaint is the only operative complaint before the district court. Thus, when an original complaint is dismissed without prejudice, the filing of an amended complaint does not ask the court to reconsider its analysis of the initial complaint. The amended complaint is a new complaint, entitling the plaintiff to judgment on the complaint's own merits; we do not ask whether the plaintiff is "precluded" or "barred" by the prior ruling. When the defendant files a motion to dismiss the amended complaint, it may urge the district court to determine that the plaintiff's amended complaint did not cure the deficiencies of the initial complaint.

*Askins v. U.S. Dept. of Homeland Security*, 899 F.3d 1035, 1043 (9th Cir. 2018). The law of the case doctrine does not apply here.

## III. The primary jurisdiction doctrine does not apply.

The primary jurisdiction doctrine is not warranted in this case because the applicability of SB 6219 and any exemptions to it are an issue of law. Moreover, the Attorney General opinion cited above—which was solicited by Defendant Kreidler—demonstrates the Insurance

Plaintiff's Opposition to Defendants' Motion to Dismiss and Reply in Support of Plaintiff's Renewed Motion for Preliminary Injunction 3:19-cv-05181

9

ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, Arizona 85260
(480) 444-0020

Commissioner has no expertise in this area, and he would be issuing a rule regarding a case where he is actually a defendant.

"The primary jurisdiction doctrine allows courts to stay proceedings or to dismiss a complaint without prejudice pending the resolution of an issue within the special competence of an administrative agency."[4] *Clark v. Time Warner Cable*, 523 F.3d 1110, 1114 (9th Cir. 2008). "[T]he doctrine is a 'prudential' one, under which a court determines that an otherwise cognizable claim implicates technical and policy questions that should be addressed in the first instance by the agency with regulatory authority over the relevant industry rather than by the judicial branch." *Id*. (internal citations omitted). "[W]here the agency declines to provide guidance at all or in a timely way, the court may proceed with the litigation on its own." James Hilliard, *Tapping Agency Expertise: The Doctrine of Primary Jurisdiction*, 96 Ill. B.J. 256, 258 (May 2008).

The primary jurisdiction "doctrine does not apply when the agency itself is the [party]." *C.A.B. v. Aeromatic Travel Corp.*, 489 F.2d 251, 254 (2d Cir. 1973) (internal citations omitted). Because Defendant Kreidler is the Insurance Commissioner—the administrative agency with authority to promulgate regulations pursuant to SB 6219—the primary jurisdiction doctrine does not apply here. The doctrine also does not apply where the issue involves a question of law. *Baltimore & Ohio Chicago Terminal R. Co. v. Wisconsin Cent. Ltd.*, 154 Ill. 3d 404, 411 (7th Cir. 1998) (explaining that because the issue in that case was an "issue of law rather than a matter within the special expertise" of an administrative agency, it did not need to be "referred to the agency."). At issue here is the constitutionality of SB 6219, VC ¶¶ 90–172, and how it is affected by other Washington statutes like RCW § 48.43.065- an issue of law not within the technical expertise of the Insurance Commissioner. This is demonstrated by the fact that he previously requested the Attorney General opinion noted above involving a nearly identical issue.

Finally, invoking the doctrine here would be futile. The Insurance Commissioner's current

---

[4] Plaintiff would be prejudiced if the case were dismissed, rather than stayed with a preliminary injunction in place. Cedar Park's insurance plan now covers abortion because of SB 6219 and will continue to do so until this Court enjoins it. Dismissal would prejudice Cedar Park by precluding a timely resolution.

Plaintiff's Opposition to Defendants' Motion to
Dismiss and Reply in Support of Plaintiff's
Renewed Motion for Preliminary Injunction
3:19-cv-05181

10

ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, Arizona 85260
(480) 444-0020

proposed rule (most of which has been pending since October 2018) does not resolve Cedar Park's objections to SB 6219.[5] It only makes the unremarkable assertion that the proposed rule "does not diminish or affect any rights or responsibilities provided under RCW 48.43.065." *Id.* at 2. Defendants fail to mention that additional provisions were added to the proposed rule in July 2019, indicating a failure to satisfy the timeliness requirement of the primary jurisdiction doctrine. The proposed rule would do nothing to resolve Cedar Park's claims. It does not change the fact that RCW § 48.43.065 treats religious health care providers like Catholic hospitals more favorably than churches like Cedar Park. The Court should decline to apply the primary jurisdiction doctrine.

## IV.   Cedar Park has stated a claim under the Free Exercise Clause.

Free exercise jurisprudence is largely governed by two Supreme Court cases: *Employment Division v. Smith* and *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*. An "across-the-board criminal prohibition" on possession of the hallucinogenic drug peyote was upheld in *Smith* because it was neutral and generally applicable. 494 U.S. at 879, 884. In *Lukumi*, the Court struck down an ordinance prohibiting killing animals for religious reasons, but allowing it in almost all other circumstances. 508 U.S. 520, 543 (1993). These seminal cases and their progeny describe the legal principles used to analyze all free exercise claims.

The most important of these principles is laws targeting religion are only the baseline of what the Free Exercise Clause of the First Amendment protects. In other words, "[b]ad motive may be one way to prove a violation, but first and foremost, *Smith-Lukumi* is about objectively unequal treatment of religion and analogous secular activities." Douglas Laycock, *Theology Scholarships, the Pledge of Allegiance, and Religious Liberty: Avoiding the Extremes but Missing the Liberty*, 118 Harv. L. Rev. 155, 210 (2004). Laws burdening religiously-motivated conduct are subject to the highest level of scrutiny under the Free Exercise Clause when they lack neutrality

---

[5] Office of Insurance Commissioner, "Health Plan Coverage of Reproductive Health Care & Contraceptive Rulemaking," July 22, 2019, https://bit.ly/32TR30E (last accessed Oct. 17, 2019). The current proposed rule incorporates both the 2018 proposed rule and the 2019 proposed rule. Office of Insurance Commissioner, "Health plan coverage of reproductive health care and contraception (R 2018-10) (R 2019-07), https://bit.ly/33ZPE8P ("It is expected that this rulemaking will join with current rulemaking in Insurance Commissioner Matter R 2018-10 in the CR-102 stage, resulting in one rule.") (last accessed Oct. 21, 2019).

Plaintiff's Opposition to Defendants' Motion to Dismiss and Reply in Support of Plaintiff's Renewed Motion for Preliminary Injunction 3:19-cv-05181

11

Alliance Defending Freedom
15100 N. 90th Street
Scottsdale, Arizona 85260
(480) 444-0020

1    or general applicability. *Smith*, 494 U.S. at 879.

2    **a.   The Statutes impose an impermissible burden on Cedar Park's exercise of religion.**

3        Cedar Park believes that abortion ends a life and therefore teaches that participation in,

4    facilitation of, or payment for abortion in any circumstance is a grave sin. This includes indirect

5    payments. V.C. ¶ 29; Smith Decl. ¶ 6. SB 6219's requirement that the Church pay for abortion

6    coverage violates Cedar Park's religious beliefs. The exemption in RCW § 48.43.065(3) does not

7    alleviate this burden, but actually exacerbates it by discriminating among religious organizations.

8    It authorizes the insurance carrier to increase Cedar Park's premiums to cover the cost of abortions

9    not expressly included in the plan. *See* Section I.B. Accordingly, SB 6219 renders "unlawful the

10   religious practice itself," by requiring Cedar Park to provide insurance coverage for abortion under

11   threat of criminal liability and jail time. *See Braunfeld v. Brown*, 366 U.S. 599, 606 (1961).[6]

12   **b.   The Statutes are neither neutral nor generally applicable.**

13       The network of exemptions and the intent to require religious organizations to provide

14   insurance coverage for abortion despite religious objections to doing so, render SB 6219 and RCW

15   § 48.43.065 neither neutral nor generally applicable.

16              **i.    The Statutes provide exemptions that undermine the Defendants'**
17                      **stated interest in providing women access to health benefits.**

18       SB 6219 is not generally applicable because it has many exemptions—all of which

19   significantly undermine the Defendants' stated interest in providing women with better access to

20   health benefits. *See Lukumi*, 508 U.S. at 543–45 (numerous exemptions to a city's regulation of

21   animal sacrifice meant that the law was "underinclusive" to achieve the city's stated interests and

22   therefore "fail[ed] to prohibit nonreligious conduct that endangers these interests in a similar or

23   greater degree than Santeria sacrifice does). "[S]elective laws that fail to pursue legislative ends

24   with equal vigor against both religious practice and analogous secular conduct are not governed

25   by *Smith*; such underinclusive laws are subject to surpassingly strict scrutiny under the Free

26   _____

27   [6] To trigger Free Exercise protection, Cedar Park need only show that its religion is burdened, not that it is substantially burdened. *Lukumi*, 508 U.S. at 531. Regardless, the Statutes substantially burden Cedar Park's free exercise of religion. *See Burwell v. Hobby Lobby Stores*, 134 S.Ct. 2751, 2775–77 (2014).

Plaintiff's Opposition to Defendants' Motion to
Dismiss and Reply in Support of Plaintiff's
Renewed Motion for Preliminary Injunction
3:19-cv-05181

12

Exercise Clause and *Lukumi*." Richard F. Duncan, *Free Exercise is Dead, Long Live Free Exercise*, 3 U. PA. J. CONST. 850, 883 (2001).

Even a single exemption undermining a state's asserted interest eliminates general applicability. *Canyon Ferry Road Baptist Church v. Unsworth*, 556 F.3d 1021, 1035 (9th Cir. 2009) (Noonan, J., concurring) (restrictions on church's speech on referendum issue were not neutral and generally applicable where there was an exception for newspapers); *Fraternal Order of Police Newark Lodge No. 12 v. City of Newark*, 170 F.3d 359, 366 (3d Cir. 1999) (Alito, J.) (striking down a prohibition on police officers growing beards because it allowed a medical exemption); *Midrash Sephardi, Inc. v. Town of Surfside*, 366 F.3d 1214, 1234-35 (11th Cir. 2004), (single exemption for clubs and lodges to zoning district limited to retail shopping "violates the principles of neutrality and general applicability because private clubs and lodges endanger [the town's] interest in retail synergy as much or more than churches and synagogues").

There are numerous exemptions here. Washington law exempts 13 different types of insurance plans from the definition of "health plans" including temporary plans, plans for the disabled, and student-only plans. RCW § 48.43.005(27). SB 6219 also allows for an exemption if necessary to avoid violating federal conditions on state funding, and exempts plans that do not provide comprehensive maternity care coverage. V.C. Ex. A. at § 3(1) & (5). Washington law also completely exempts insurance plans provided by religious health care organizations from the abortion insurance requirement. RCW § 48.43.065. These exemptions undermine Defendants' purpose of protecting women's access to benefits, especially for reproductive health. Defs.' MTD at 19. If exempting religious organizations like Cedar Park from paying for abortion undercuts that interest, so does exempting colleges that have health insurance policies for their students. The same is true for plans that do not cover maternity care, may only exist for a year, solely cover people with disabilities, or are provided by religious health care organizations.

Importantly, any independent secular reasons for exempting these plans are not considered in this analysis. "In determining whether a particular law is underinclusive, the relevant governmental purposes are those that justify the scheme of restrictions, not those that justify the

Plaintiff's Opposition to Defendants' Motion to Dismiss and Reply in Support of Plaintiff's Renewed Motion for Preliminary Injunction 3:19-cv-05181

13

ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, Arizona 85260
(480) 444-0020

exemptions or selective coverage." Duncan, 3 U. PA. J. CONST. L. at 869. For example, Hialeah had an independent, secular public health interest in regulating disposal of garbage from restaurants. Yet the Court held the ordinance's failure to restrict restaurant garbage the same way it did animal sacrifice rendered it not generally applicable. *Lukumi*, 508 U.S. at 544–45. Otherwise, "the requirement to general applicability would be entirely vacuous…" because "every law is generally applicable to whatever it applies to." Laycock, 118 HARV. L. REV. at 207.

The Ninth Circuit's holding in *Stormans v. Wiesman* confirms this point. It focused on whether the categorical exemptions there undermined the government's stated purpose for the law at issue. 794 F.3d 1080 (9th Cir. 2015). And for good reason. "[C]ategories of selection are of paramount concern when a law has the incidental effect of burdening religious practice." *Lukumi*, 508 U.S. at 542. "[T]he Court's concern [with] the prospect of the government's deciding that secular motivations are more important than religious motivations…is only further implicated when the government does not merely create a mechanism for individualized exemptions, but instead, actually creates a categorical exemption for individuals with a secular objection but not for individuals with a religious objection." *Fraternal Order of Police*, 170 F.3d at 365.

The same health interests Defendants use to justify SB 6219 are undermined by the plans that are fully exempted. By failing to exempt religious plans like Cedar Park's, Defendants make the impermissible value judgment that secular reasons for not covering abortion are important enough to overcome the State's interest in women's health, but not religious motivations.

### ii.  The Statutes are not neutral in their operation.

"Neutrality and general applicability are interrelated, and…failure to satisfy one requirement is a likely indication that the other has not been satisfied." *Lukumi*, 508 U.S. at 531. SB 6219 and RCW § 48.43.065 are not neutral because they are gerrymandered to limit religious objections, treat religious health care related companies more favorably than churches like Cedar Park, and target conscientious objectors like Cedar Park.

---

Plaintiff's Opposition to Defendants' Motion to Dismiss and Reply in Support of Plaintiff's Renewed Motion for Preliminary Injunction 3:19-cv-05181

14

ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, Arizona 85260
(480) 444-0020

1

2

### 1. RCW § 48.43.065 treats churches less favorably than other religious organizations.

A law is not neutral if it produces "differential treatment of two religions." *Lukumi*, 508

U.S. at 536. Differential treatment of types of religious organizations is sufficient. There is no need

to show the government favors one creed over another. *Larson v. Valente*, 456 U.S. 228, 246

(1982) (striking law treating "well-established churches" more favorably than "churches which are

new").

SB 6219 is part of the same statutory scheme as Washington's exemption for religious

organizations in RCW § 48.43.065. But this exemption allows the insurance provider to charge

Cedar Park for abortion pursuant to SB 6219 via increased fees, while completely exempting health

care related religious organizations. *See infra* at 2–4. Because of this disparate treatment and SB

6219, Cedar Park's insurer has refused to exempt Cedar Park, and instead requires the Church to

directly provide coverage for abortion. Supp. Compl. at ¶¶ 48.1–48.2; Smith Decl. at ¶¶ 3–4.

Defendants do not dispute that the law allows religious health care organizations to refuse

to provide abortion insurance coverage to its employees. They carefully avoid the fact that they do

not have to include abortion in health plans for *their employees*, with no conditions. Defendants

effectively admit that RCW § 48.43.065 treats religious health care organizations—such as

Catholic hospitals—and religious insurance carriers more favorably than Cedar Park.

Defendants argue this discrimination is justified because exempt health care organizations

and insurance carriers are in "the business of either providing or paying for a specific health care

service," and therefore can be treated more favorably that other religious organizations like Cedar

Park. Defs.' MTD at 8–9 (cleaned up). But this fact is immaterial to the provision of employer-

sponsored insurance to employees of these fully exempt organizations. There is no difference

between the employees of churches and religious health care organizations when it comes to health

benefit plans. The State has irrationally chosen to allow only religious health care organizations

and insurance carriers to be clearly and completely exempt from providing that coverage. But

Cedar Park (or any other religious organization that does not happen to be a health care

Plaintiff's Opposition to Defendants' Motion to
Dismiss and Reply in Support of Plaintiff's
Renewed Motion for Preliminary Injunction
3:19-cv-05181

15

ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, Arizona 85260
(480) 444-0020

organization or insurance carrier) may be forced to pay increased premiums and fees if it asserted its religious objection under RCW § 48.43.065.

Defendants also argue that health care providers and insurance carriers perform a distinct role in the health care system and can therefore be treated differently. Defs.' MTD at 9. But this argument suffers from the same fatal flaw as the first: Defendants fail to explain how the employee benefit plans for religious health care employees are different than those for employees of other religious organizations. The fact that Cedar Park does not provide medical services or provide insurance is irrelevant.[7]

Health care providers, religiously sponsored health carriers, and health care facilities that have a conscientious objection to providing insurance coverage for abortion are exempt from SB 6219 without being subject to additional fees. Cedar Park is not, making the Statutes not neutral. *Masterpiece*, 138 S. Ct. at 1731 ("The Free Exercise Clause bars even subtle departures from neutrality on matters of religion." (cleaned up)).

### 2. SB 6219 is impermissibly gerrymandered.

SB 6219's numerous exemptions eliminate general applicability and indicate it is not neutral. An impermissible objective of suppressing religious belief is not only assessed facially, but also from "the effect of a law in its real operation." *Lukumi*, 508 U.S. at 535. A law is impermissibly gerrymandered against religious individuals like Cedar Park if it favors secular conduct, *id.* at 537, or "proscribe[s] more religious conduct than is necessary to achieve [its] stated ends." *Id.* at 538. SB 6219 suffers from both of these maladies.

By offering multiple secular exemptions, Washington has failed to pursue its proffered objectives "with respect to analogous non-religious conduct," *See Lukumi*, 508 U.S. at 546. The

---

[7] Defendants also argue fully exempt *insurance carriers* have an obligation that Cedar Park does not. Defs.' MTD at 10–11. RCW § 48.43.065(2) requires health carriers (*not* exempt health care organizations and providers) to give written notice to plan enrollees "listing services that the carrier refuses to cover for reason of conscience or religion" and "information describing how an enrollee may directly access services…." But this additional obligation on insurance carriers does not change the fact that RCW § 48.43.065(3) still allows insurers to charge extra premiums and fees for an objecting religious organization like Cedar Park. It also does nothing to alleviate the disparate treatment between churches and religious health care organizations and providers. Cedar Park is clearly treated less favorably.

Plaintiff's Opposition to Defendants' Motion to Dismiss and Reply in Support of Plaintiff's Renewed Motion for Preliminary Injunction 3:19-cv-05181

16

ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, Arizona 85260
(480) 444-0020

First Amendment prevents Cedar Park and other similarly-situated organizations from "being singled out for discriminatory treatment" by Defendants' refusal to grant them an exemption that would have no worse effects on the government's stated interest than those already approved. *Id.* at 538. This "devalues [Cedar Park's] religious reasons" for objecting to assisting in the destruction of unborn life. *See id.* at 537. Providing secular exemptions "while refusing religious exemptions is sufficiently suggestive of discriminatory intent so as to trigger heightened scrutiny under *Smith* and *Lukumi*." *Fraternal Order of Police*, 170 F.3d at 365.

SB 6219 also proscribes more conduct than is necessary to achieve its end of furthering women's access to health care. *Lukumi*, 508 U.S. at 542 (law hindering "much more religious conduct than is necessary in order to achieve the legitimate ends asserted in [its] defense," is "not neutral."). Exempting Cedar Park would only affect the church's employees, all of whom share the Church's beliefs about abortion. *See* V.C. ¶¶ 25–32. Forcing Cedar Park to provide abortion coverage that would not be used by its employees makes SB 6219 broader than necessary and further indicates it is impermissibly gerrymandered.

### 3. SB 6219 intentionally discriminates against religious organizations like Cedar Park.

Discriminatory intent is not necessary to show lack of neutrality, but it can be an indicator of an anti-religious objective. "[U]pon even slight suspicion that proposals for state intervention stem from animosity to religion or distrust of its practices, all officials must pause to remember their own high duty to the Constitution and the rights it secures." *Lukumi*, 508 U.S. at 547. "Factors relevant to the assessment of governmental neutrality include the historical background of the decision under challenge, the specific series of events leading to the enactment or official policy in question, and the legislative or administrative history, including contemporaneous statements made by members of the decisionmaking body." *Masterpiece*, 138 S. Ct. at 1731 (cleaned up); *San Jose Christian College v. City of Morgan Hill*, 360 F.3d 1024, 1030 n.4 (9th Cir. 2004).

Washington legislators requested that SB 6219 be amended to add exemptions for religious

Plaintiff's Opposition to Defendants' Motion to Dismiss and Reply in Support of Plaintiff's Renewed Motion for Preliminary Injunction 3:19-cv-05181

17

ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, Arizona 85260
(480) 444-0020

organizations like Cedar Park, but those requests were rejected.[8] Moreover, Washington Senator Steve Hobbs, SB 6219's sponsor, stated that religious organizations can sue if they do not want to provide insurance coverage for abortion. Matt Markovich, *Catholic Bishops of Wash. ask Gov. Inslee to Veto Abortion Insurance Bill*, KOMO News, March 5, 2018, https://bit.ly/2Uuu5Nf. Responding to religious organizations' concern that SB 6219 would compel them to pay for abortions, Senator Hobbs quipped: "Health care is about the individual, not about [religious organizations]." *Id.* These statements of a legislator, as well as the historical background of the statute, indicate SB 6219 was enacted to target organizations that have religious views requiring them to respect life. This lack of neutrality makes SB 6219 neither neutral nor generally applicable.

### c.  The Statutes do not survive strict scrutiny.[9]

Under strict scrutiny, "a law restrictive of religious practice must advance interests of the highest order and must be narrowly tailored in pursuit of those interests." *Lukumi*, 508 U.S. at 546 (quotation marks omitted). In applying strict scrutiny, courts "look[ ] beyond broadly formulated interests" and instead "scrutinize [ ] the asserted harm of granting specific exemptions to particular religious claimants." *Gonzales v. O Centro Espirita Beneficente Uniao do Vogetal*, 546 U.S. 418, 431 (2006).

### i.      The Statutes do not serve a compelling government interest.

SB 6219's various exemptions demonstrate it "cannot be regarded as protecting an interest of the highest order" because the exemptions permit "appreciable damage to that supposedly vital interest." *Lukumi*, 508 U.S. at 547 (cleaned up). Stated differently, an interest is not compelling when the government "fails to enact feasible measures to restrict other conduct producing substantial harm or alleged harm of the same sort." *Id.* at 546–47. The underinclusiveness of SB

---

[8] Proposed Amendment to Substitute Senate Bill 6219 by Senator O'Ban, *available at* https://bit.ly/2UtTAye (last accessed Oct. 24, 2019); Proposed Amendment to Substitute Senate Bill 6219 by Senator Shea, *available at* https://bit.ly/2G4krqE (last accessed Oct. 24, 2019). Both of these proposed amendments would have allowed Cedar Park and other similarly-situated employers to refuse to comply with the provisions of SB 6219 requiring abortion and contraceptive coverage if they object to compliance on the basis of conscience or religion.

[9] In order to survive Defendants' Motion to Dismiss, Cedar Park need only state a claim, and therefore need not demonstrate how the Statutes fail constitutional scrutiny. Regardless, the Statutes fail strict scrutiny.

Plaintiff's Opposition to Defendants' Motion to
Dismiss and Reply in Support of Plaintiff's
Renewed Motion for Preliminary Injunction
3:19-cv-05181

18

ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, Arizona 85260
(480) 444-0020

6219 demonstrated above "is alone enough to defeat" the asserted state interest. *Brown v. Entertainment Merchants Ass'n*, 564 U.S. 786, 802 (2011); *see also Lukumi*, 508 U.S. at 546–47.

In *O Centro*, the government's ban on hallucinogenic tea was not subject to an exception. But the existence of a *single* exemption for peyote in another part of the controlled substances law indicated no compelling interest. 546 U.S. 418. The multiple exemptions to SB 6219 are greater, so the government must show that "granting the requested religious accommodations would seriously compromise its ability to administer the program." *Id.* at 435. It cannot do so because Washington itself has "seriously compromised" SB 6219's universality through multiple exemptions. Moreover, the only people affected by an exemption for Cedar Park would be its employees, all of whom share the Church's beliefs about abortion. *See* V.C. ¶¶ 25–32. The government does not have a *rational* interest in forcing a pro-life church to provide insurance coverage for abortion to people who will not use it.

The government has offered no compelling interest to support the differential treatment of religious objectors in RCW § 48.43.065. And it cannot, as the government has no interest in discriminating against similarly situated religious organizations that do not wish to cover abortion in their employee benefit plans. There is no rational reason to allow carriers to charge Cedar Park extra fees for the very coverage to which it objects while completely exempting the myriad religious health care providers in Washington from providing that same coverage.

### ii.     The Statutes are not narrowly tailored.

"A statute is narrowly tailored if it targets and eliminates no more than the exact source of the evil it seeks to remedy." *Frisby v. Schultz*, 487 U.S. 474, 485 (1988) (cleaned up). Under strict scrutiny, the government must also show the law "is the least restrictive means of achieving" its interests. *Thomas v. Review Bd. of the Ind. Employment Security Div.*, 350 U.S. 707 at 718 (1981). If means less burdensome on religious freedom exist, the government "must use [them]." *United States v. Playboy Entm't Grp., Inc.*, 529 U.S. 803, 813 (2000).

Washington has demonstrated that it has a less restrictive alternative available to it: it created the Washington State Department of Health Family Planning in order to serve enrollees in

Plaintiff's Opposition to Defendants' Motion to
Dismiss and Reply in Support of Plaintiff's
Renewed Motion for Preliminary Injunction
3:19-cv-05181

19

ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, Arizona 85260
(480) 444-0020

1   plans provided by Providence, a conscientious objector that refuses to provide coverage for

2   abortion. Defs.' MTD. at 12. Washington has many other ways to accomplish its alleged interests

3   without compelling churches to violate their beliefs. First, it could provide all religious

4   organizations an exemption from the SB 6219 that does not permit them to be charged

5   correspondingly higher premiums. This would allow the government to enforce the law against

6   those who do not object on the basis of religion, while respecting the religious beliefs of churches

7   like Cedar Park. The government has already demonstrated it can make such an exemption. Health

8   care providers, religiously sponsored health carriers, and health care facilities are clearly and

9   completely excused without the possibility of having to pay anything to subsidize the conduct that

10  violates their convictions. RCW § 48.43.065(2)(a); *accord Hobby Lobby*, 573 U.S. at 730–31

11  (noting that the government had demonstrated its ability to provide an exemption to the Petitioners

12  because it had granted such an exemption to a different class of religious objectors). Allowing

13  religious objectors like Cedar Park to assert the exemption afforded to religious health care

14  providers would eliminate the differential treatment inherent in RCW §48.43.065. Washington law

15  also completely exempts 13 different types of health care plans by excluding them from the

16  definition of "health plan". RCW § 48.43.005(27). This provision should be extended to Cedar

17  Park and other similarly situated religious employers. Finally, the government itself could provide

18  abortion coverage directly to employees whose health plans exclude coverage of abortion. All

19  these options are "workable," *Grutter v. Bollinger*, 539 U.S. 306, 339 (2003), and much "less

20  restrictive" of religious freedom, *Playboy*, 529 U.S. at 824. The Statutes are not narrowly tailored.

21       **d. The Statutes violate the Free Exercise Clause for additional reasons.**

22       The Statutes further violate the Free Exercise Clause because they require Cedar Park to

23  violate long-established historical religious practices involving opposition to abortion. Cedar

24  Park's Renewed Mot. for Prelim. Inj. at 19–20 (ECF No. 49). The Statutes also violate the hybrid

25  rights doctrine because each statute violates additional fundamental rights. *Id*. at 20–21.[10]

26

27  ───────────────

[10] *Smith* should also be overruled. In *Kennedy v. Bremerton School District*, U.S. Supreme Court No. 18-12, four Justices concurring in the denial of a petition for certiorari opined that *Smith* "drastically cut back on the protection

Plaintiff's Opposition to Defendants' Motion to
Dismiss and Reply in Support of Plaintiff's
Renewed Motion for Preliminary Injunction
3:19-cv-05181

20

ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, Arizona 85260
(480) 444-0020

1
2

**V.      Cedar Park has stated an Equal Protection claim based on the disparate treatment inherent in the Statutes.**

3

4         The Statutes treat similarly situated organizations differently. Cedar Park has therefore stated

5    a claim under the Equal Protection Clause of the Fourteenth Amendment. "The Equal Protection

6    Clause directs that all persons similarly circumstanced shall be treated alike." *Plyler v. Doe*, 457

7    U.S. 202, 216 (1982) (cleaned up). Cedar Park may "prevail on [its] equal protection claim by

8    showing that a class that is similarly situated has been treated disparately." *Ariz. Dream Act*

9    *Coalition v. Brewer*, 757 F.3d 1053, 1063 (9th Cir. 2014) (cleaned up). Distinctions among

10   similarly-situated groups that affect fundamental rights "are given the most exacting scrutiny,"

11   *Clark v. Jeter*, 486 U.S. 456, 461 (1988), and discriminatory intent is presumed, *Plyler,* 457 U.S.

12   at 216–17.

13        Washington State law exempts religious health care organizations from paying for

14   objectionable procedures like abortion, and does not allow such organizations to be charged

15   additional fees for objectionable services. RCW § 48.43.065(2)(a)(b); *infra* at 2–4. Religious

16   health care entities are treated more favorably than similarly situated religious organizations like

17   Cedar Park whose exemption is conditioned upon them being subject to a premium increase to pay

18   for the very items to which they object. RCW § 48.43.065 (3) & (4). *infra* at 2–4.

19        Defendants argue this disparate treatment is justified because such organizations either

20   "provide or pay for specific services" and play a different role in the market.  As a threshold issue,

21   this is a merits argument inappropriate for a motion to dismiss. Regardless, as explained in more

22   detail at Section IV.b.ii.1, Defendants ignore the fact that there is no relevant difference between

23   the employees of providers, facilities, and carriers and the employees of the Church.  Defendants

24   effectively concede that RCW § 48.43.065 treats religious health care organizations—such as

25

---

provided by the Free Exercise Clause" and implicitly suggested that a party in a future case should revisit that decision.
1/22/19 Statement respect the denial of certiorari (Alito, J., joined by Thomas, J., Gorsuch, J., and Kavanaugh, J.).
26   Cedar Park acknowledges that this Court lacks the authority to overrule *Smith*, but Cedar Park preserves that argument
for a future appeal, if necessary. *Smith* is contrary to the original understanding and logic of the First Amendment. See
27   generally Michael W. McConnell, Free Exercise Revisionism and the Smith Decision, 57 U. CHI. L. REV. 1109
(1990).

Plaintiff's Opposition to Defendants' Motion to
Dismiss and Reply in Support of Plaintiff's
Renewed Motion for Preliminary Injunction
3:19-cv-05181

21

ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, Arizona 85260
(480) 444-0020

Catholic hospitals—and religious insurance carriers more favorably than Cedar Park. Because the Statutes treat similarly situated organizations dissimilarly based on a fundamental right they are subject to strict scrutiny. Cedar Park has stated a claim under the Equal Protection Clause.[11]

## VI.   Cedar Park has stated a church autonomy claim because mandated abortion coverage interferes with the Church's administration of its employees.

SB 6219 impermissibly interferes with Cedar Park's internal operating procedures. Cedar Park has therefore stated a claim under the church autonomy doctrine of the Free Exercise and Establishment Clauses of the First Amendment. History teaches—and our Constitution recognizes—that religious freedom demands a government that does not interfere with the internal affairs of religious institutions. *Watson v. Jones*, 80 U.S. 679, 730 (1871). Indeed, in *Smith*, the Supreme Court acknowledged the continuing validity of earlier cases protecting a church's right to institutional autonomy—specifically, *Serbian Eastern Orthodox Diocese v. Milivojevich*, 426 U.S. 696 (1976); *Presbyterian Church v. Mary Elizabeth Blue Hull Memorial Presbyterian Church*, 393 U.S. 440 (1969); and *Kedroff v. St. Nicholas Cathedral*, 344 U.S. 94 (1952). *See Smith*, 494 U.S. at 877. These cases hold that First Amendment protection extends not only to matters of faith, but also to "church administration," *Serbian Eastern Orthodox Diocese*, 426 U.S. at 710, "internal organization," *id.* at 713, and "the operation of … churches," *Kedroff*, 344 U.S. at 107. In other words, church autonomy has a carefully defined scope that gives religious organizations and denominations independence from secular control. Churches have the power to decide for themselves matters of church governance as well as those of faith and doctrine. *Id.* at 116. SB 6219 interferes with Cedar Park's internal administration and operations. Washington

---

[11] Washington law also exempts 13 different types of insurance plans from the definition of "health plans" to which SB 6219 is applicable, RCW § 48.43.005(27). Some of these are comprehensive health care plans like Cedar Park's. For example, RCW § 48.43.005(27)(l) excludes "short-term limited purpose or duration" and "student only" health care plans approved by the insurance commissioner following a written request for exclusion from the definition of "health plan." So schools providing comprehensive health insurance to its students are not required to comply with SB 6219. There is no constitutionally relevant difference between a church employee benefit plan excluding abortion and a student benefit plan excluding abortion. The same is true for a plan that excludes maternity coverage or that is limited to a certain amount of time. Washington cannot treat these organizations differently.

Plaintiff's Opposition to Defendants' Motion to
Dismiss and Reply in Support of Plaintiff's
Renewed Motion for Preliminary Injunction
3:19-cv-05181

22

ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, Arizona 85260
(480) 444-0020

1   orders the Church to provide specific employee benefits—insurance coverage for abortion and

2   abortifacients—at odds with Cedar Park's beliefs. Cedar Park has stated a church autonomy claim.

3   **VII.    The Statutes' discrimination among religious organizations is clear grounds for an Establishment Clause claim.**

4

5        The Establishment Clause prohibits the government from disapproving of or showing

6   hostility toward a particular religion or religion in general. SB 6219 and RCW § 48.43.065

7   discriminate between religious organizations like Cedar Park and religious health care

8   organizations. Discrimination based on religious status is especially odious because a "proper

9   respect for both the Free Exercise and the Establishment Clauses compels the State to pursue a

10  course of 'neutrality' toward religion." *Comm. for Pub. Educ. & Religious Liberty v. Nyquist*, 413

11  U.S. 756, 792–793 (1973). Defendants enacted SB 6219 with knowledge that many religious

12  organizations object to participating in, paying for, facilitating, or otherwise supporting abortion.

13  Yet no adequate exemption is available to non-health-care-related religious employers who, like

14  Cedar Park, believe that paying for abortion, directly or indirectly, is sinful. SB 6219 was designed

15  to make it impossible for the Church and other similar religious employers to comply with their

16  beliefs. SB 6219 is not neutral toward religion because it contains a vast scheme of exemptions,

17  treats religious organizations like Cedar Park differently, and was motivated by the suppression of

18  religious expression. Cedar Park has therefore stated an Establishment Clause claim.

19  **VIII.   This Court should grant Cedar Park's renewed Motion for Preliminary Injunction because there are serious questions going to the merits of the constitutionality of the Statutes.**

20

21       Defendants make no new argument in response to Cedar Park's renewed motion, and cite

22  to its prior briefing. Def. Opp. at 12. Cedar Park reiterates the arguments it made in its initial

23  preliminary injunction (ECF No. 29), its reply in support of its initial preliminary injunction (ECF

24  No. 38), and its renewed Motion for Preliminary Injunction (ECF No. 49).

25       When the balance of hardships tips sharply in the plaintiff's favor, as here, the plaintiff

26

27  need not show a likelihood of success, only "serious questions going to the merits." *Cottrell*, 632

Plaintiff's Opposition to Defendants' Motion to
Dismiss and Reply in Support of Plaintiff's
Renewed Motion for Preliminary Injunction
3:19-cv-05181

23

ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, Arizona 85260
(480) 444-0020

1

2

F.3d at 1134–35 (cleaned up). Cedar Park has demonstrated that there are serious questions as to the constitutionality of SB 6219 and RCW § 48.43.065. *See infra* Sections IV–VII. This Court should preliminary enjoin SB 6219 and RCW § 48.43.065.

The balance of hardships tips sharply in favor of Cedar Park. Defendants have delayed in issuing rules by over a year, and this lack of action has resulted in damage to the church. Cedar Park is currently being injured by SB 6219, and such injury will temporarily be halted if this Court issues the preliminary injunction. The enactment of SB 6219 caused great confusion. The legislature rejected amendments creating a clear religious exemption for Churches and the statute makes no reference to RCW § 48.43.065, which only provides limited protection to churches while broadly protecting religious health care providers. The proposed regulation merely refers to the exemption contained in RCW § 48.43.065 but does not explain how this exemption allows employers to refuse to provide payments for abortion coverage without being subject to increased fees. An injunction would preserve the status quo as it existed prior to SB 6219 to give this Court and the State time to eliminate the current violation and confusion caused by that statute.

Any constitutional injury is presumed to result in irreparable harm. *Elrod v. Burns*, 427 U.S. 347, 373 (1976).  Because RCW § 48.43.065 results in disparate treatment of Cedar Park, the Church is currently experiencing irreparable harm. The facts that Kaiser Permanente is requiring Cedar Park to provide abortion coverage (and refuses to allow Cedar Park to invoke the limited exemption under RCW § 48.43.065) is also causing irreparable harm to Cedar Park. Kaiser will remove the abortion coverage if this court issues an injunction. Smith Decl. at ¶ 7; Supp. Compl. ¶ 48.3. Injunctive relief is in the public interest. There is no public "interest in the enforcement of an unconstitutional law." *ACLU v. Ashcroft*, 322 F.3d 240, 251 n. 11 (3d Cir. 2003).

## CONCLUSION

For the foregoing reasons, Cedar Park respectfully requests this Court deny Defendants' Motion to Dismiss and grant Cedar Park's Motion for Preliminary Injunction.

Plaintiff's Opposition to Defendants' Motion to Dismiss and Reply in Support of Plaintiff's Renewed Motion for Preliminary Injunction 3:19-cv-05181

24

ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, Arizona 85260
(480) 444-0020

Respectfully submitted this 25th day of October 2019,

By: *s/Kevin H. Theriot*
Kristen K. Waggoner (WSBA #27790)
Kevin H. Theriot (AZ Bar #030446)*
Elissa M. Graves (AZ Bar #030670)*
ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, Arizona 85260
Telephone: (480) 444-0020
Facsimile:  (480) 444-0025
Email: kwaggoner@adflegal.org
      ktheriot@adflegal.org
      egraves@adflegal.org

David A. Cortman (GA Bar #188810)*
Alliance Defending Freedom
1000 Hurricane Shoals Rd. NE
Suite D-1100
Lawrenceville, GA 30040
Telephone: (770) 339-0774
Email: dcortman@adflegal.org
*Counsel for Plaintiff*

*Attorneys for Plaintiff Cedar Park Assembly of God of Kirkland, Washington*

* Admitted *pro hac vice*

Plaintiff's Opposition to Defendants' Motion to Dismiss and Reply in Support of Plaintiff's Renewed Motion for Preliminary Injunction 3:19-cv-05181

25

ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, Arizona 85260
(480) 444-0020

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 25, 2019, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following:

Jeffrey Todd Sprung
Paul M. Crisalli
ATTORNEY GENERAL'S OFFICE
800 5th Ave
Ste 2000
Seattle, WA 98104

Joyce A Roper
ATTORNEY GENERAL'S OFFICE
PO Box 40109
Olympia, WA 98504

Marta U DeLeon
ATTORNEY GENERAL'S OFFICE
PO Box 40100
Olympia, WA 98504
*Counsel for Defendants*

DATED: October 25, 2019      *s/Kevin H. Theriot*
Kristen K. Waggoner (WSBA #27790)
Kevin H. Theriot (AZ Bar #030446)*
Elissa M. Graves (AZ Bar #030670)*
ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, Arizona 85260
Telephone: (480) 444-0020
Facsimile:  (480) 444-0025
Email:      kwaggoner@adflegal.org
              ktheriot@adflegal.org
              egraves@adflegal.org

David A. Cortman (GA Bar #188810)*
ALLIANCE DEFENDING FREEDOM
1000 Hurricane Shoals Rd. NE
Suite D-1100
Lawrenceville, GA 30040
Telephone: (770) 339-0774
Email:      dcortman@adflegal.org

Plaintiff's Opposition to Defendants' Motion to
Dismiss and Reply in Support of Plaintiff's
Renewed Motion for Preliminary Injunction
3:19-cv-05181

26

ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, Arizona 85260
(480) 444-0020

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

*Attorneys for Plaintiff Cedar Park Assembly of God of Kirkland, Washington*

*Admitted pro hac vice

Plaintiff's Opposition to Defendants' Motion to Dismiss and Reply in Support of Plaintiff's Renewed Motion for Preliminary Injunction 3:19-cv-05181

27

ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, Arizona 85260
(480) 444-0020