The Honorable Benjamin H. Settle

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| CEDAR PARK ASSEMBLY OF GOD OF KIRKLAND, WASHINGTON,<br><br>Plaintiff,<br><br>v.<br><br>MYRON "MIKE" KREIDLER; *et al.*,<br><br>Defendants. | NO. 3:19-cv-05181-BHS<br><br>DEFENDANTS' REPLY IN SUPPORT OF RENEWED MOTION TO DISMISS<br><br>NOTED: NOVEMBER 15, 2019 |

## I.  INTRODUCTION

Cedar Park's newest Complaint raises the same arguments as before, while showing that it never searched for or purchased a plan providing coverage for services consistent with its religious beliefs. Cedar Park appears to blame the Defendants for this. Yet the Insurance Commissioner has approved a plan for the marketplace that would fit Cedar Park's religious beliefs.

Instead of recognizing those facts, Cedar Park pivots to a fleeting allegation that it is treated differently than insurance carriers. Cedar Park still fails to acknowledge that the reason it can be treated differently (and better) than a carrier is because of the different roles in the marketplace. Cedar Park is an Employer seeking to purchase an insurance plan (or to self-insure). Carriers offer the plans on the market. Any differences in applicability are not because of religious differences, but economics. What Cedar Park ultimately seeks is a governmental

DEFENDANTS' REPLY IN SUPPORT OF RENEWED MOTION TO DISMISS
NO. 3:19-cv-05181

1

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue. Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

mandate that private carriers comply with Cedar Park's religious beliefs. Such a mandate is not required by statute, case law, or the Constitution. Therefore, this Court should dismiss Cedar Park's newest claims.

## II.   ARGUMENT

### A. The Court Should Follow Its Earlier Reasoning and Dismiss the Renewed Claims Not Allowed by the Court's Order Granting Leave to Amend

As explained by Defendants in their Renewed Motion to Dismiss, this Court ruled on August 2, 2019, that it lacked jurisdiction because Cedar Park provided insufficient evidence to show that it has been or will be injured by the requirements of SB 6219." Dkt. # 45 at 11. The Court also ruled that the claims were nonjusticiable because enforcement of SB 6219 against insurance purchasers is only hypothetical. *Id.* at 17. The Court granted Cedar Park leave to amend its Complaint on a very narrow basis to address differences in religious insurance providers as compared to religious purchasers. *Id.* at 22.

Cedar Park's Second Amended Complaint, however, alleges the same facts and legal claims as the First Amended Complaint that this Court dismissed. Because they are so similar, the Court should "determine that the plaintiff's [second] amended complaint did not cure the deficiencies in the original complaint." *Askins v. U.S. Dep't of Homeland Security*, 899 F.1035, 1043 (9th Cir. 2018). The Court should "follow the same reasoning and hold that the amended claims suffer from the same legal insufficiencies." *Id.* There are no errors or misunderstandings in the August 2, 2019 decision that the Court needs to correct. *Id.*

Even if the Court were to reanalyze those dismissed claims, Cedar Park still cannot show that it suffered an injury-in-fact or that its claim is redressable by this Court. Washington initially highlighted the fatal problems with Cedar Park's allegations:

> Cedar Park nowhere alleges that: (1) it attempted to purchase a new health care plan or to renew its current plan in a way that excludes coverage of abortion or abortifacient contraceptives; (2) such a plan is unavailable because of SSB 6219; (3) the Insurance Commissioner denied health plans that exclude coverage of abortion or contraceptives it views as "abortifacient" on religious grounds; (4) a carrier in the Washington market refused to sell them a plan consistent with their

DEFENDANTS' REPLY IN SUPPORT OF
RENEWED MOTION TO DISMISS
NO. 3:19-cv-05181

2

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue. Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1 religious objections; and (5) the Insurance Commissioner or Governor directed carriers to ignore or reject religious objections to services required by SSB 6219.

2 Dkt. # 32 at 2.

While Cedar Park has addressed some of these defects, it has not addressed them all. Cedar Park can only make conclusory statements that its desired plan is unavailable because of SSB 6219. There is no allegation that the Insurance Commissioner has denied health plans that exclude coverage for abortion or contraceptives it views as "abortifacient" on religious grounds. And there are no facts showing the Insurance Commissioner or Governor directed carriers to ignore or reject religious objections to services required by SSB 6219. The public record shows to the contrary—the Insurance Commissioner approved health plans for sale in the individual market by Providence Health Plan that would accommodate religious objections like Cedar Park's.[1]

**B.  Cedar Park Misstates Insurance Law to Support Its Flawed Theory That Religious Employers Are Treated Worse Than Religious Providers, Carriers, or Facilities**

Cedar Park continues to push its flawed understanding of insurance law. First, it fails to recognize that insurance carriers, health care providers and health care facilities (collectively, Providers) have  distinct and highly regulated roles in the market. Second, Cedar Park imagines a separate scheme for employers who happen to also be carriers or providers that does not exist in the law. Finally, Cedar Park mischaracterizes the possible options outlined in an AG Opinion as mandatory obligations carriers must impose on employers.

Looking first at the distinct roles of carriers, providers and employers purchasing coverage, it is obvious that Cedar Park is not similarly situated to the role of carriers or providers, because they do not pay for or provide specific services. Employers and other premium-payers pay carriers in order to cover the costs of all the particular services that carriers anticipate they ultimately will have to pay providers to render. Premiums are not a direct payment for specific

---

[1] Cedar Park is wrong in challenging the Defendants' submission of a press release describing its approval of Providence Health Plan, a plan that would accommodate religious objections like Cedar Park's. In deciding a motion to dismiss, the court may take judicial notice of court filings and other matters of public record without converting a Fed. R. Civ. P. 12(b)(6) motion to dismiss into a summary judgment. *See Intri-Plex Techs., Inc. v. Crest Grp., Inc.*, 499 F.3d 1048, 1052 (9th Cir. 2007) (court may take judicial notice of matters of public record that are not subject to reasonable dispute).

DEFENDANTS' REPLY IN SUPPORT OF
RENEWED MOTION TO DISMISS
NO. 3:19-cv-05181

3

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue. Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

service, as no actual services have been rendered when premiums have been paid. In fact, premiums must be paid before the need for a specific service arises, or that service will not be covered by the plan. Unlike premium-payers, carriers provide "payment for a specific service" after services have been rendered. *See* RCW 48.43.065(2)(a). Also different from employers like Cedar Park, Providers participate in the actual "provision of . . . a specific service" when rendering health care to individual patients. Thus, in paying premiums, religious employers like Cedar Park are not required to "participate in the provision of or payment for a specific service" or make "payment for a specific service," like insurance carriers or providers.

As a result, any differences in how RCW 48.43.065 treats objecting carriers or providers, as compared to objecting employers, depends not on their religious similarities but on their different roles in the marketplace. *See Thornton v. City of St. Helens*, 425 F.3d 1158, 1167-68 (9th Cir. 2005) ("Evidence of different treatment of unlike groups does not support an equal protection claim"). In these distinct roles, objecting carriers are *not* treated better than objecting employers. Carriers have the burden to pay for and provide notice to enrollees about how to access the objectionable services, while employers do neither.

Next, Cedar Park cannot claim that it is treated differently than any other employer, including facilities, providers, and carriers. Carriers offering health plan coverage to any employer are obligated to provide notice to enrollees and information about how to access services to all enrollees, regardless of who the employer purchasing coverage is. RCW 48.43.065(3)(a). Further, the provision of RCW 48.43.065(4), that allows (but does not obligate) carriers to receive an appropriate payment applies to all employers purchasing "coverage," regardless of who the employer is. The "exception" Cedar Park imagines into RCW 48.43.065(2)(a) only applies when providers or carriers are rendering or paying for a specific service. It does not apply when carriers, providers, or any other employer is purchasing "coverage" for future potential services.

Finally, the options outlined in the AGO Opinions cited by Cedar Park do not establish an obligation to pay for coverage, or for a specific service. After misstating the 2002 AGO

DEFENDANTS' REPLY IN SUPPORT OF
RENEWED MOTION TO DISMISS
NO. 3:19-cv-05181

4

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue. Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

Opinion to fit its own narrative, Cedar Park again ignores the fact that the 2006 AGO Opinion rejects much of Cedar Park's theory of insurance law and how RCW 48.43.065 works. While Cedar park implies that the 2002 Opinion means that employers would violate the law by declining to pay for objectionable services for employees, the 2006 AGO Opinion explains that the 2002 Opinion "did not directly conclude that the employers would violate the law by declining to pay for contraceptives for their employees." Wash. Op. Att'y Gen. 10 (2006); Wash. Op. Att'y Gen. 5 (2002). And both opinions' reasoning do not lead to the conclusion that employers must pay higher premiums for objectionable services. Carriers have flexibility. They can use different insurance principles and actuarial tools to allocate risk caused by members to a group health plan that have objections. *Id.*

As explained throughout Defendants' briefs in this case, when there is objectionable coverage, carriers have options to pay for the services that do not rely on employers paying premiums that are directed to these services. Carriers could choose not to itemize these costs and just have a general overhead category that includes management costs, wages, rent, and costs for the services to which any large group employers object. Carriers could then distribute the cost of services that are objected to by some employers as overhead or administrative expenses across all large group health plans. Carriers could distribute the cost for objected to services to other non-objecting large groups, much like uninsured/underinsured insurance. Carriers could make the business decision to simply bear the cost of objected to services because they create cost savings in the long run. Or carriers could fund the services through third parties, like related foundations or grant funding sources.

The fact that Cedar Park's insurer, Kaiser Permanente elected for the time being[2] not to offer a plan that precisely fits Cedar Park's religious beliefs is of no moment. Nothing in RCW 48.43.065, any other RCW, case law, or principles of constitutional law mandates a private

---

[2] Cedar Park claims that Kaiser Permanente has indicated it will only change its coverage options if a court enjoins RCW 48.43.073. However, there is no statement or declaration from Kaiser indicating that the only basis upon which it will accommodate Cedar Park's religious objection is an injunction.

DEFENDANTS' REPLY IN SUPPORT OF
RENEWED MOTION TO DISMISS
NO. 3:19-cv-05181

5

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue. Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

company (i.e., a private health insurance carrier) to offer services (i.e., coverage for service) to perfectly match the religious beliefs of its consumers (i.e., Cedar Park).[3] Rather, market forces are left to determine whether private companies choose to offer such plans.

What matters is whether the government and its actors required employers to purchase plans that offer services that conflict with their religious beliefs. And here, RCW 48.43.065 makes clear employers are not required to purchase such plans, and public record shows that the Defendants do not prevent plans consistent with Cedar Park's religious objections from entering the marketplace. As Cedar Park's case now relies on the false premise that it is treated differently because it has to purchase coverage for services to which it objects—a premise erroneous as a matter of law and public record—Cedar Park's claims have no legal basis. The Court should dismiss them.

C. **Cedar Park Still Fails to Allege Sufficient Facts Demonstrating a Claim Upon Which Relief Can Be Granted**

Despite its multiple attempts to add allegations and correct its deficiencies, Cedar Park's claims here are no different than those alleged in its first complaint. For the reasons Defendants have repeatedly explained, Cedar Park has still failed to allege facts showing that it is entitled to relief under its free exercise claims, its equal protection claim, its "church autonomy" claim, or its establishment clause claim. For the reasons already developed on the record, the Court should dismiss Cedar Park's claims.

D. **In the Alternative, the Court Should Invoke the Primary Jurisdiction Doctrine**

As the Defendants have repeatedly shown, the ways in which the Insurance Commissioner views that carriers can follow both SSB 6219 and RCW 48.43.065 are exactly the type of "technical and policy questions that should be addressed in the first instance by the agency with relevant authority over the relevant industry." *Astiana v. Hain Celestrial Grp., Inc.*, 783 F.3d 753, 760 (9th Cir. 2015) (quotations omitted). The Court should allow the Insurance Commissioner to first pass on these issues.

---

[3] If anything, such a requirement would likely run afoul of the Free Exercise Clause, the Establishment Clause, or both.

DEFENDANTS' REPLY IN SUPPORT OF
RENEWED MOTION TO DISMISS
NO. 3:19-cv-05181

6

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue. Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

Cedar Park still plays loose with the case law. As already explained, *C.A.B. v. Aeromatic Travel Corp.*, 489 F.2d 251, 254 (2d Cir. 1973), states that the primary jurisdiction "doctrine does not apply when the agency itself is the plaintiff." Plaintiffs can cite no case holding that the primary jurisdiction doctrine does not apply because the agency is a defendant. For good reason, as defendants, agencies do not get to choose the claims raised against them, and some of those claims may be resolved by the agency providing its expertise.[4]

Cedar Park ignores that the Legislature specifically tasked the Insurance Commissioner to adopt rules regarding the implementation of SSB 6219 and the conscience objection statutes. RCW 48.02.060(3)(a); 48.43.065(3)(c). The Insurance Commissioner is working on a proposed rule that would make clear that SSB 6219 "does not diminish or affect any rights or responsibilities provided under RCW 48.43.065"[5] and would clearly provide that employers are not required to purchase coverage for services to which they object. If the Court concludes that Cedar Park has standing, that its claims are redressable, and that it alleges sufficient facts for a claim on which it could be entitled to relief, the Court should invoke the primary jurisdiction doctrine to allow the Insurance Commissioner to first pass on the issue.

### III.  CONCLUSION

The Court should dismiss Cedar Park's Second Amended Complaint.

DATED this 8th day of November, 2019.

> ROBERT W. FERGUSON
> Attorney General
>
> */s/ Paul M. Crisalli*
> JEFFREY T. SPRUNG, WSBA #23607
> PAUL M. CRISALLI, WSBA #40681
> MARTA DELEON, WSBA #35779
> JOYCE A. ROPER, WSBA #11322
> JEFFREY C. GRANT, WSBA #11046
> Assistant Attorneys General
> Attorneys for Defendants

---

[4] And in *Baltimore & Ohio Chicago Terminal R. Co. v. Wisconsin Cent. Ltd.*, 154 F.3d 404, 411 (7th Cir. 1998), it appears the parties agreed to arbitrate an issue rather than send it to an agency, which is not the case here.

[5] Office of Insurance Commissioner, "Health Plan Coverage of Reproductive Health Care & Contraceptive Rulemaking," July 22, 2019, https://bit.ly/32TR30E (last accessed Nov. 8, 2019).

DEFENDANTS' REPLY IN SUPPORT OF
RENEWED MOTION TO DISMISS
NO. 3:19-cv-05181

7

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue. Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

# **DECLARATION OF SERVICE**

I hereby declare that on this day I caused the foregoing document to be electronically filed with the Clerk of the Court using the Court's CM/ECF System which will send notification of such filing to the following:

Kristen K. Waggoner
Kevin H. Theriot
Elissa M. Graves
Alliance Defending Freedom
15100 N 90th Street
Scottsdale, AZ 85260
KWaggoner@adflegal.org
KTheriot@adflegal.org
EGraves@adflegal.org
*Attorneys for Plaintiff*

David A. Cortman
Alliance Defending Freedom
1000 Hurricane Shoals Rd. NE
Suite D-1100
Lawrenceville, GA 30040
DCortman@adflegal.org
*Attorney for Plaintiff*

DATED this 8th day of November, 2019, at Seattle, Washington.

*/s/ Paul M. Crisalli*
PAUL M. CRISALLI, WSBA # 40681
Assistant Attorney General

DEFENDANTS' REPLY IN SUPPORT OF
RENEWED MOTION TO DISMISS
NO. 3:19-cv-05181

8

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue. Suite 2000
Seattle, WA 98104-3188
(206) 464-7744