Honorable Benjamin H. Settle

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| CEDAR PARK ASSEMBLY OF GOD OF KIRKLAND, WASHINGTON, <br><br> Plaintiff, <br><br> v. <br><br> MYRON "MIKE" KREIDLER, in his official capacity as Insurance Commissioner for the State of Washington; JAY INSLEE, in his official capacity as Governor of the State of Washington, <br><br> Defendants. | Civil No. 3:10-cv-05181 <br><br> **PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO CLARIFY** <br><br> **NOTE ON MOTION CALENDAR:** **November 12, 2021** |

Defendants ask for clarification of the remaining claims after the Ninth Circuit's July 22, 2021 Order, contending that Plaintiff's Equal Protection, Establishment Clause, and Religious Autonomy claims are, or should be, dismissed. Both parties agree the Free Exercise Claim is still alive. They also agree that the Ninth Circuit affirmed this Court's ruling that Cedar Park lacks standing to pursue its Equal Protection Claim.

The parties do not agree on Cedar Park's Religious Autonomy claim, which the Ninth Circuit did not address. It was not waived since it primarily derives from the Free Exercise claim all parties agree is alive. And it is not waivable to the extent it is structural.

**I.     The Ninth Circuit appeal was limited to jurisdiction—not whether Cedar Park stated a claim.**

This Court held Cedar Park lacks standing and dismissed the supplemental complaint under Rule 12(b)(1) "for lack of jurisdiction." Dismissal Order 8-9, 13, ECF No. 60. That ruling assumed

Pl.'s Resp. to Defs.' Mot. to Clarify

1

ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, Arizona 85260
(480) 444-0020

an abortion-free plan for Cedar Park is permissible under SB 6219, and the inability of Cedar Park to purchase one was because of market forces, not state law. This Court held Cedar Park could not show injury-in-fact or causation but it did not consider or rule on whether Cedar Park failed to state a claim upon which relief could be granted under Rule 12(b)(6).

Cedar Park's appeal was, by necessity, solely about jurisdiction. The question Plaintiff-Appellant presented in its opening brief was: "Whether Cedar Park has Article III standing to challenge the application of Senate Bill 6219's abortion-coverage mandate to houses of worship." Pl.-Appellant's Opening Br. 2, CA9 ECF No. 19. Defendants did not cross-appeal, so the only issues relevant to that jurisdictional question were whether Cedar Park's allegations plausibly alleged injury, traceability, and redressability. If Cedar Park plausibly alleged an injury (any injury) caused by Defendants and redressable by a federal court, the Order dismissing the case should be reversed.

Whether phrased as a Free Exercise, Establishment Clause, or Religious Autonomy claim, Cedar Park's injury was exactly the same: the loss of its abortion-excluding health plan. This Court's analysis treated all three of those claims together, so Cedar Park took the same approach on appeal, as did Defendants. Defs.-Appellees' Answering Br. 18-28, CA9 ECF No. 28. Although Defendants argued Cedar Park's Equal Protection claim separately, *id.* at 29-35, for standing purposes, all parties were on the same page: all of the First Amendment claims rose or fell together.

Likewise, Defendants did not argue on appeal that Cedar Park waived its Establishment Clause or Religious Autonomy claims because it did not separately address standing for those claims. The only place where either party divided up the claims was for a Rule 12(b)(6) merits analysis. *Id.* at 35–49. But a rule 12(b)(6) merits analysis was improper, as Cedar Park explicitly argued in its opening brief. Pl.-Appellant's Opening Br. 50–53. Cedar Park responded to Defendants' improper Rule 12(b)(6) argument at the earliest opportunity, which was Plaintiff-Appellant's reply brief. And the reply brief separately addressed Cedar Park's Free Exercise, Establishment Clause, and Religious Autonomy claims. Pl.-Appellant's Reply Br. 31-36, CA9 ECF No. 36.

Pl.'s Resp. to Defs.' Mot. to Clarify

2

ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, Arizona 85260
(480) 444-0020

Yet the Ninth Circuit did not limit its consideration of the Equal Protection claim to standing and effectively issued a Rule 12(b)(6) ruling over Cedar Park's explicit objections (without addressing them). Order Mem. 4, CA9 ECF No. 51-1. It discussed standing and what Cedar Park "plausibly alleged" in the same breath, but the plausibility standard is a Rule 12(b)(6) principle, not a Rule 12(b)(1) consideration, *id.* at 2. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 546 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully.") The Ninth Circuit's equal protection analysis did not evaluate whether Plaintiff-Appellant plausibly alleged an injury. Instead, it considered whether Cedar Park plausibly alleged it is similarly situated to completely exempted entities. Order Mem. 4.

The Ninth Circuit then opined, in a brief footnote, that Cedar Park had somehow waived its Establishment Clause claim, *id.* at 5 n. 3, even though the merits of that or any other claim were not properly before the Court. In effect, the Ninth Circuit produced a merits ruling on Cedar Park's Equal Protection and Establishment Clause claims instead of a ruling limited to the sole procedural issue of standing.

The Ninth Circuit should have only decided the jurisdictional question and remanded. That the Ninth Circuit chose to effectively issue a Rule 12(b)(6) ruling on the Equal Protection and Establishment Clause claims was out of Plaintiff's control and outside the ability of Plaintiff to foresee. That mistake should inform this Court's analysis of the Ninth Circuit's opinion when deciding which claims remain.

**II.  Religious Autonomy primarily derives from the Free Exercise Clause and must be heard with that claim.**

Cedar Park did not waive its Religious Autonomy claim and nothing in the Ninth Circuit's opinion indicates otherwise. Moreover, religious autonomy primarily derives from the Free Exercise Clause which both parties agree is still at issue. For example, *Kedroff v. St. Nicholas Cathedral of Russian Orthodox Church in N. Am.*, 344 U.S. 94 (1952), is a classic religious autonomy case that relies only on the Free Exercise Clause to protect church control over

Pl.'s Resp. to Defs.' Mot. to Clarify

3

ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, Arizona 85260
(480) 444-0020

1   disposition of its property. *Id.* at 120–121.

2   Likewise, Judge Nelson's dissent in *Biel v. St. James School*, joined by eight other Ninth Circuit judges, noted religious autonomy primarily derives from the Free Exercise Clause, 926 F.3d 1238, 1245 (9th Cir. 2019) (R. Nelson, J., dissenting from the denial of reh'g en banc) ("Indeed, requiring a religious group to adopt a formal title or hold out its ministers in a specific way is the very encroachment into religious autonomy the Free Exercise Clause prohibits . . . ."). The Supreme Court later reversed and adopted the dissent's conclusion in *Our Lady of Guadalupe Sch. v. Morrissey-Berru*, 140 S. Ct. 2049, 2060 (2020).

And *Rweyemamu v. Cote* notes that "some courts have stressed the right to church autonomy [as] secured by the Free Exercise Clause," 520 F.3d 198, 205 (2d Cir. 2008) (citing *Petruska v. Gannon Univ.*, 462 F.3d 294, 306 (3d Cir.2006) ("The Free Exercise Clause protects not only the individual's right to believe and profess whatever religious doctrine one desires, but also a religious institution's right to decide matters of faith, doctrine, and church governance." (cleaned up)), *cert. denied*, 550 U.S. 903 (2007).

Similarly, in *Congregation Jeshuat Israel v. Congregation Shearith Israel*, the First Circuit linked the Free Exercise Clause directly to religious autonomy claims. 866 F.3d 53, 57–58 (1st Cir. 2017). The court noted the Supreme Court's efforts to limit judicial involvement in church affairs are aimed at "avoiding, or at least minimizing, the twin risks presupposed respectively by the Constitution's Free Exercise and Establishment Clauses: compromising the degree of religious autonomy guaranteed by the former, and placing government in the position of seeming to endorse the religious positions of the winners, forbidden by the latter." *Id.* (cleaned up).

Because Cedar Park's Free Exercise claim remains, so does its Church Autonomy claim.

**III.    Religious Autonomy is a structural restraint that litigants cannot waive.**

Religious autonomy "is a structural limitation imposed on the government by the Religion Clauses, a limitation that can never be waived." *Conlon v. InterVarsity Christian Fellowship*, 777 F.3d 829, 836 (6th Cir. 2015) (holding a religious organization cannot waive the ministerial exception, a church autonomy doctrine). The Sixth Circuit recognized "[t]his constitutional

Pl.'s Resp. to Defs.' Mot. to Clarify

4

protection is not only a personal one; it is a structural one that categorically prohibits federal and state governments from becoming involved in religious leadership disputes." *Id.*

Structural constitutional provisions ensure the government stays in its proper lane and apply to a case even if no party ever raises them. For example, the State of Arizona and a former employee that sued it could not concede Article III standing requirements for federal jurisdiction after the case was moot. *Arizonans for Official Eng. v. Arizona*, 520 U.S. 43, 72–73 (1997).

Similarly, religious organizations do not waive religious autonomy even if they do not raise it. *Lee v. Sixth Mount Zion Baptist Church of Pittsburgh*, 903 F.3d 113, 118 n.4 (3d Cir. 2018) ("Although the District Court, not the Church, first raised the ministerial exception, the Church is not deemed to have waived it because the exception is rooted in constitutional limits on judicial authority."); *E.E.O.C. v. R.G. & G.R. Harris Funeral Homes, Inc.*, 884 F.3d 560, 581–82 (6th Cir. 2018) (holding that a Title VII defendant "has not waived the ministerial-exception by failing to raise it ... because '[t]his constitutional protection is ... structural'" (citation omitted)).[1]

By contrast, all the cases cited by Defendants to support waiver considered non-structural claims or defenses like timeliness,[2] spot zoning,[3] failure to train,[4] selective application, and pretext.[5] Defs.' Mot. to Clarify Pl.'s Remaining Claims 3-4, ECF No. 69. Cedar Park's Religious Autonomy claim is a structural governmental restraint that cannot be waived.

**IV.   Conclusion**

The Religious Autonomy claim primarily derives from the Free Exercise Clause which all parties agree is still alive. Moreover, the Ninth Circuit did not rule religious autonomy was waived

---

[1] *See also Ark Encounter, LLC v. Parkinson*, 152 F. Supp. 3d 880, 915 n. 25 (E.D. Ky 2016) (stipulations in employment application could not waive ministerial exemption because it is "a structural limitation imposed on the government").

[2] *Smith v. Marsh*, 194 F.3d 1045 (9th Cir. 1999) (also cited by the Ninth Circuit, Order Mem. 5 n.3).

[3] *Maldonado v. Morales*, 556 F.3d 1037 (9th Cir. 2009).

[4] *Momox-Caselis v. Donohue*, 987 F.3d 835 (9th Cir. 2021).

[5] *Christian Legal Soc'y Chapter Of Univ. of Cal. v. Wu*, 626 F.3d 483 (9th Cir. 2010).

Pl.'s Resp. to Defs.' Mot. to Clarify

5

ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, Arizona 85260
(480) 444-0020

and it would have been a mistake to do so because the appeal was limited to standing under Rule 12(b)(1) and it is a structural claim that is not waivable.

This Court must consider the Religious Autonomy claim along with Cedar Park's Free Exercise claim.

Respectfully submitted this 8th day of November, 2021,

*s/Kevin H. Theriot*

Kevin H. Theriot (AZ Bar #030446)*
Elissa M. Graves (AZ Bar #030670)*
ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, Arizona 85260
Telephone: (480) 444-0020
Facsimile: (480) 444-0025
Email: ktheriot@adflegal.org
          egraves@adflegal.org

David A. Cortman (GA Bar #188810)*
ALLIANCE DEFENDING FREEDOM
1000 Hurricane Shoals Rd. NE
Suite D-1100
Lawrenceville, GA 30040
Telephone: (770) 339-0774
Email: dcortman@adflegal.org

*Attorneys for Plaintiff Cedar Park Assembly of God of Kirkland, Washington*
* Admitted *pro hac vice*

Pl.'s Resp. to Defs.' Mot. to Clarify

6

ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, Arizona 85260
(480) 444-0020

**CERTIFICATE OF SERVICE**

I hereby certify that on November 8, 2021, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following:

Jeffrey Todd Sprung
Paul M. Crisalli
ATTORNEY GENERAL'S OFFICE
800 5th Ave
Ste 2000
Seattle, WA 98104

Marta U. DeLeon
ATTORNEY GENERAL'S OFFICE
PO Box 40100
Olympia, WA 98504
*Counsel for Defendants*

DATED: November 8, 2021

*s/Kevin H. Theriot*
Kevin H. Theriot (AZ Bar #030446)*
ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, Arizona 85260
Telephone: (480) 444-0020
Facsimile: (480) 444-0025
Email: ktheriot@adflegal.org

*Attorneys for Plaintiff Cedar Park Assembly of God of Kirkland, Washington*

* Admitted *pro hac vice*

Pl.'s Resp. to Defs.' Mot. to Clarify

7

ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, Arizona 85260
(480) 444-0020