UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| CEDAR PARK ASSEMBLY OF GOD OF KIRKLAND, WASHINGTON,<br><br>    Plaintiff,<br><br>    v.<br><br>MYRON KREIDLER and JAY INSLEE,<br><br>    Defendants. | CASE NO. C19-5181 BHS<br><br>ORDER |

This matter comes before the Court on Defendants Myron Kreidler and Jay Inslee's Motion to Clarify Plaintiff's Remaining Claims. Dkt. 69. The Court has considered the briefing filed in support of and in opposition to the motion and the remainder of the file and rules as follows.

**I.    BACKGROUND**

This case revolves around the State of Washington's enactment of Senate Bill 6219 which requires, in relevant part, all health plans issued or renewed on or after January 1, 2019 that provide coverage for maternity care or services to provide the covered person "with substantially equivalent coverage to permit the abortion of a

1  pregnancy." RCW 48.43.073. The Court detailed the background of this bill and
2  Washington health care law and the procedural history of this dispute in its prior Order,
3  Dkt. 60, and need not repeat all of the history here. A summary of pertinent factual and
4  procedural background follows.
5        Plaintiff Cedar Park Assembly of God of Kirkland, Washingon sued Washington
6  Governor, Jay Inslee, and the Insurance Commissioner of Washington, Myron Kreidler,
7  alleging that SB 6219 violates the Free Exercise and Establishment Clauses of the First
8  Amendment, violates Cedar Park's right to religious autonomy guaranteed by those
9  clauses, and violates the Equal Protection Clause of the Fourteenth Amendment. Dkt. 46.
10  Cedar Park also sought a preliminary injunction. Dkt. 49. Defendants moved to dismiss
11  all of Cedar Park's claims in October 2019. Dkt. 53. The Court granted Defendant's
12  motion to dismiss and denied Cedar Park's motion for a preliminary injunction, holding
13  that Cedar Park failed to establish an injury in fact on any of its claims and therefore
14  lacked standing and that, because it was unlikely to succeed on the merits, a preliminary
15  injunction was not appropriate. Dkt. 60.
16        Cedar Park appealed that Order, focusing on two claims in its appeal: Equal
17  Protection and Free Exercise. *See* Dkt. 62; *see also* Plaintiff-Appellant's Opening Brief,
18  *Cedar Park Assembly of God*, 860 F. App'x 542 (9th Cir. 2021) (No. 20-35507), ECF
19  No. 19, 2020 WL 5496280 ("Opening Br.").[1] The Ninth Circuit affirmed this Court with
20  regard to the Equal Protection Clause claim, agreeing that Cedar Park had failed to

---

[1] The Court's citations to Cedar Park's opening brief reflect the PACER pagination.

establish an injury-in-fact. Dkt. 65; *Cedar Park Assembly of God of Kirkland, Wash. v. Kreidler*, 860 F. App'x 542, 543–44 (9th Cir. 2021). However, the Ninth Circuit disagreed with this Court's holding regarding Cedar Park's Free Exercise claim and remanded that claim. *Cedar Park*, 860 F. App'x at 543. The Ninth Circuit did not mention Cedar Park's religious autonomy claim but held that Cedar Park had waived its Establishment Clause claim by failing to raise it in its opening brief. *Id.* at 544 n.3.

After remand, the parties filed a Joint Status Report in which Cedar Park indicated it believed there were multiple remaining claims. Dkt. 67. Defendants then filed the instant motion, seeking clarification on what claims remain in this case and arguing that the only remaining claim is Cedar Park's Free Exercise claim. Dkt. 69. Cedar Park argues that this Court should also consider its religious autonomy claim because it was intertwined with its Free Exercise claim. Dkt. 72. Cedar Park also takes issue with the Ninth Circuit's holding that it waived its Establishment Clause claim and argues that its religious autonomy claim should be treated differently because it is a "structural" claim and therefore is not waivable. *Id.*

## II.  DISCUSSION

Cedar Park originally alleged violations of four constitutionally protected rights before this Court: Free Exercise Clause, Equal Protection Clause, Establishment Clause, and the religious autonomy guaranteed by the "Religion Clauses."[2] Dkt. 46. The parties agree that the Ninth Circuit affirmed this Court's dismissal of Cedar Park's Equal

---

[2] The term "Religion Clauses" refers to the Free Exercise and Establishment Clauses of the First Amendment.

Protection claim and that the Ninth Circuit reversed this Court's dismissal of Cedar Park's Free Exercise claim. While it is also largely undisputed that the Ninth Circuit affirmed this Court's dismissal of Cedar Park's Establishment Clause claim, the Court briefly addresses that claim, along with Cedar Park's religious autonomy claim, in turn.

**A.  Establishment Clause**

The Ninth Circuit will not consider issues "not specifically and distinctly raised and argued in the opening brief." *Momox-Caselis v. Donohue*, 987 F.3d 835, 842 (9th Cir. 2021) (citing *Padgett v. Wright*, 587 F.3d 983, 985 n.2 (9th Cir. 2009)). Cedar Park did not brief its Establishment Clause claim before the Ninth Circuit. The only time the Establishment Clause was even mentioned in Cedar Park's opening brief was in explaining the claims it had raised before the district court. *See* Opening Br. at 29. As such, the Ninth Circuit held Cedar Park "forfeited any argument that it has standing to pursue its Establishment Clause claim by failing to raise such an argument in its opening brief." *Cedar Park*, 860 F. App'x at 544 n.3 (9th Cir. 2021); Dkt. 65 at 5 n.3.

If a party disagrees with a decision of an appellate court, it can either petition the Ninth Circuit for panel rehearing or file a petition for a writ of certiorari with the United States Supreme Court. Cedar Park did not file a motion for reconsideration or a petition for a writ of certiorari but instead complains to this Court about the Ninth Circuit's ruling on its Establishment Clause claim. A district court cannot review the holding of an appellate court. Nevertheless, this Court agrees that Cedar Park failed to raise an Establishment Clause claim in its opening brief.

Therefore, the Ninth Circuit held that Cedar Park forfeited its Establishment Clause claim, and it is no longer a part of this litigation.

**B.     Religious Autonomy**

Cedar Park advances three arguments as to why the Court should consider its religious autonomy claim: (1) "all of [its] First Amendment claims rose or fell together"; (2) its religious autonomy claim was encompassed in its Free Exercise claim; and (3) its religious autonomy claim is not waivable because it is "structural." Dkt. 72 at 2–5. Defendants rebut each of Cedar Park's arguments, asserting that (1) Cedar Park waived its religious autonomy claim by failing to brief it; (2) both religion clauses underly the religious autonomy doctrine and thus it must be dismissed along with Cedar Park's Establishment Clause claim; and (3) the issue is not whether Cedar Park waived its religious autonomy, but rather whether Cedar Park "waived its right to pursue a claim based on an alleged incursion on that right," Dkt. 73 at 3. *See* Dkts. 69, 73.

Cedar Park's opening brief only addressed two issues: (1) standing for its Free Exercise claim and (2) standing for its Equal Protection claim. Cedar Park began its "injury-in-fact" argument by talking about Supreme Court precedent regarding free exercise harms. *See* Opening Br. at 42–43. Cedar Park followed that discussion by stating: "Cedar Park also pled a classic equal-protection injury . . . ." *Id.* at 46. It also concluded the injury-in-fact section of its brief with this statement: "Because Cedar Park alleged that Washington law deprives the church of fundamental free-exercise rights not to facilitate or pay for abortion guaranteed to other similarly situated entities, the church unquestionably has standing to press its equal protection claim." *Id.* (internal quotations

omitted). Like its Establishment Clause claim, Cedar Park's religious autonomy claim was only explicitly mentioned in its discussion of the case's procedural history. *See id.* at 29. In contrast, Cedar Park discussed its Free Exercise claim extensively. *See id.* at 42, 46, 47 n.14, 52–53.

Nevertheless, religious autonomy claims are not stand alone claims but are rooted in either the Establishment Clause, the Free Exercise Clause, or both. The parties dispute the basis of religious autonomy claims. Cedar Park asserts that its religious autonomy claim is encompassed in its Free Exercise claim, and the Ninth Circuit concluded that Cedar Park has standing for that claim. Dkt. 72 at 3–4. Defendants argue that "both Religion Clauses underlie the religious autonomy doctrine" and that Cedar Park acknowledged as much in its complaint. Dkt. 73 at 2–3; *see also* Dkt. 46 at 25–26 (Cedar Park arguing in relation to its religious autonomy argument that "Defendants' implementation and enforcement of SB 6219 and RCW § 48.43.065 violates the Free Exercise and Establishment Clauses . . . ."); *Hosanna-Tabor Evangelical Lutheran Church & Sch. v. E.E.O.C.*, 565 U.S. 171, 190 (2012).

*Hosanna-Tabor* was the first case in which the Supreme Court considered whether there was a "ministerial exception" which precludes the application of federal employment discrimination laws to "claims concerning the employment relationship between a religious institution and its ministers." 565 U.S. at 188. The ministerial exception is a subset of the religious autonomy doctrine. The Supreme Court held in *Hosanna-Tabor* that there was such a ministerial exception and that "[b]oth Religion Clauses bar the government from interfering with the decision of a religious group to fire

one of its ministers." *Id.* at 181. But *Hosanna-Tabor* does not say that every religious autonomy claim arises under both Religion Clauses. In fact, the Supreme Court clearly separated the religious autonomy claims in *Hosanna-Tabor*:

> By imposing an unwanted minister, the state infringes the Free Exercise Clause, which protects a religious group's right to shape its own faith and mission through its appointments. According the state the power to determine which individuals will minister to the faithful also violates the Establishment Clause, which prohibits government involvement in such ecclesiastical decisions.

*Id.* at 188–89; *see also id.* at 184 ("The Establishment Clause prevents the Government from appointing ministers, and the Free Exercise Clause prevents it from interfering with the freedom of religious groups to select their own."). The Supreme Court again discussed the Clauses separately in relation to religious autonomy in *Our Lady of Guadalupe School v. Morrissey-Berru*, 140 S. Ct. 2049, 2060 (2020) ("State interference in that sphere would obviously violate the free exercise of religion, and any attempt by government to dictate or even to influence such matters would constitute one of the central attributes of an establishment of religion.").

While it is true that religious autonomy claims normally raise issues implicating both Religion Clauses, that is not always the case. *See, e.g.*, *Kedroff v. St. Nicholas Cathedral of Russian Orthodox Church in N. Am.*, 344 U.S. 94 (1952)[3] (holding that a

---

[3] Defendants criticize Cedar Park's reliance on *Kedroff*. *See* Dkt. 73 at 2. While it is true that the religious autonomy doctrine has developed since *Kedroff* was decided in 1952, that decision has not been overturned. In fact, the Supreme Court continues to cite to *Kedroff*. *See, e.g.*, *Our Lady of Guadalupe School*, 140 S. Ct. at 2055, 2061; *Hosanna-Tabor*, 565 U.S. at 186, 195. As Defendants themselves point out, those more recent cases involve the ministerial exception, which is just one part of the religious autonomy doctrine. *Kedroff* is still instructive in that it applies the religious autonomy doctrine in another context—property disputes.

New York law that would have transferred control of Russian Orthodox churches from Russian authorities to American authorities violated the Free Exercise Clause because it infringed on the churches' religious autonomy). Cedar Park's religious autonomy claim is still at issue insofar as it falls under the Free Exercise Clause of the First Amendment. To the extent Cedar Park also intended to pursue a religious autonomy claim based on the Establishment Clause, that claim was deemed waived by the Ninth Circuit.

### III.  ORDER

Therefore, it is hereby **ORDERED** that the only remaining claims in this case are Cedar Park's Free Exercise claim and its religious autonomy claim to the extent it is based on the Free Exercise Clause of the First Amendment.

Dated this 22nd day of February, 2022.

BENJAMIN H. SETTLE
United States District Judge