The Honorable Benjamin H. Settle

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| CEDAR PARK ASSEMBLY OF GOD OF KIRKLAND, WASHINGTON,<br><br>Plaintiff,<br><br>v.<br><br>MYRON "MIKE" KREIDLER et al.,<br><br>Defendants. | NO. 3:19-cv-05181-BHS<br><br>DEFENDANTS' RENEWED MOTION TO DISMISS<br><br>NOTE ON MOTION CALENDAR:<br>JANUARY 27, 2023 |

## I. INTRODUCTION

At the same time that the parties in this case were litigating whether Cedar Park had alleged an injury in fact and while Cedar Park and its Pastor claimed under penalty of perjury that it would cost an additional $243,125 to exercise its religious objections, Cedar Park had received offers from at least six carriers for plans that would accommodate its religious beliefs. Two of those offers were *cheaper* than the plan offered by Cedar Park's existing carrier, Kaiser Permanente. But neither Cedar Park nor its Pastor disclosed any of these facts.

Instead, relying on Cedar Park's allegations and arguments, the Ninth Circuit held that Cedar Park had sufficiently alleged an injury in fact because it "could not procure comparable replacement coverage" and "there is no evidence in the record clearly demonstrating that Cedar Park could obtain acceptable coverage at the time it filed its complaint."

DEFENDANTS' RENEWED MOTION
TO DISMISS
NO. 3:19-cv-05181-BHS

1

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

The evidence now shows that not only were the allegations relied upon by the Ninth Circuit incorrect, but the allegations were wrong when Cedar Park made them. Looking at all the evidence, as the Court can do here to ensure it has subject matter jurisdiction, Cedar Park cannot meet its burden to demonstrate that it suffered an injury-in-fact traceable to the Defendants or that any injury would be redressable. Cedar Park had offers for plans that would accommodate its religious beliefs that were more cost effective, but for reasons unrelated to SB 6219 or the Defendants' conduct, it chose to stay with Kaiser's non-accommodating plan. Cedar Park lacks standing, so this Court lacks subject matter jurisdiction. The Court should dismiss with prejudice.[1]

## II. RELIEF REQUESTED

The Court should dismiss Cedar Park's second amended complaint and supplemental complaint with prejudice.

## III. FACTS

**A.   Washington Law Allows Individuals and Organizations to Refuse to Purchase Health Care Coverage to which They Have a Moral or Religious Objection**

Since at least 1995, Washington has recognized the need to strike a balance in health insurance so that individuals may exercise their right to religious beliefs and conscience while ensuring that enrollees receive the full range of services covered under their health plans. Wash. Rev. Code § 48.43.065. The Legislature "recognizes that every individual possesses a fundamental right to exercise their religious beliefs and conscience" and "that in developing public policy, conflicting religions and moral beliefs must be respected." Wash. Rev. Code § 48.43.065(1).

To strike that balance, the Legislature provided that no one with a religious belief opposed to a particular health care service had to purchase coverage for that service:

---

[1] Defendants may bring a separate motion for sanctions. If so, such motion would be brought separately after completing all prerequisite requirements under the civil rules. Also, because this motion addresses preliminary jurisdictional issues, the dispositive motion deadlines should be continued until disposition of this motion.

DEFENDANTS' RENEWED MOTION TO DISMISS
NO. 3:19-cv-05181-BHS

2

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

> No individual or organization with a religious or moral tenet opposed to a specific service may be required to purchase coverage for that service or services if they object to doing so for reason of conscience or religion.

Wash. Rev. Code § 48.43.065(3)(a). The Legislature also ensured that enrollees could not be denied coverage or access to coverage as a result of someone else's refusal to purchase coverage for such services because of conscience or religious belief. Wash. Rev. Code § 48.43.065(3)(b).

**B.   Washington Enacted a Law Requiring Health Plans to Cover Contraception and to Include Abortion Care if They Include Maternity Care Without Modifying Wash. Rev. Code § 48.43.065**

In 2018, the Legislature passed, and the Governor signed, SB 6219 (codified as Wash. Rev. Code §§ 48.43.072, .073), which requires that health plans provide contraceptive coverage and that a health plan providing coverage for maternity care or services also include coverage for equivalent abortion services. Relevant here, the law has two parts. First, health plans issued or renewed after January 1, 2019 must provide coverage for all contraceptives approved by the federal Food and Drug Administration, voluntary sterilization procedures, and any services necessary to provide contraceptives. Wash. Rev. Code § 48.43.072(1). This coverage cannot be subject to cost sharing or a deductible, unless the health plan is part of a health savings account. Wash. Rev. Code § 48.43.072(2)(a). Carriers cannot deny coverage when the contraceptive method changed within a 12-month period, and the health plan cannot impose any restrictions or delays on the enrollee's ability to receive this coverage. Wash. Rev. Code §§ 48.43.072(3), (4). These benefits must be offered to all enrollees, there enrolled spouses, and their enrolled dependents. Wash. Rev. Code § 48.43.072(5).

Second, health plans issued or renewed after January 1, 2019 that provide coverage for maternity care or services must "also provide a covered person with substantially equivalent coverage to permit the abortion of a pregnancy." Wash. Rev. Code § 48.43.073(1).

DEFENDANTS' RENEWED MOTION TO DISMISS
NO. 3:19-cv-05181-BHS

3

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

### C. Cedar Park's Complaints and Declarations Never Mentioned That It Had Received Offers for Insurance Plans Consistent with Its Religious Beliefs

Cedar Park is a church in Kirkland, Washington. In addition to church services, Cedar Park operates schools, a funeral home, a missionary car ministry, a Christian counseling network, and a Christian club sports program. Declaration of Paul M. Crisalli in Support of Defendants' Renewed Motion to Dismiss (Crisalli Decl.), Ex. A at 16–17. For its businesses, Cedar Park pays state business and organization (B&O) taxes and sales taxes. Crisalli Decl., Ex. A at 18. Cedar Park has estimated yearly revenues of between $25 million and $30 million. Crisalli Decl., Ex. A at 19.

For about six years, Cedar Park used Kaiser Permanente (Kaiser) as its health insurance carrier. Before using Kaiser, Cedar Park used Group Health, which Kaiser bought out. Crisalli Decl., Ex. A at 26–27. Cedar Park used Gallagher Benefits as its broker to search for and negotiate insurance plans. Crisalli Decl., Ex. A at 22–23. Each plan lasted a fiscal year from September 1 until August 31 of the following year. Cedar Park would either renew the plan at an updated rate or renegotiate for a different plan with Kaiser. *See* Crisalli Decl., Ex. A at 26. Until the 2019–2020 plan year, Cedar Park's health insurance plan excluded coverage for abortion services, though covered all contraceptives. Crisalli Decl., Ex. A at 27. Upon passage of SB 6219, Kaiser informed Cedar Park that it would not exclude coverage for abortion services in its plan, beginning in the 2019–2020 plan year. Crisalli Decl., Ex. A at 36.

On March 7, 2019, Cedar Park filed a complaint against Governor Jay Inslee and Insurance Commissioner Myron Kreidler challenging SB 6219, raising several constitutional challenges. Dkt. # 1. Cedar Park's Pastor Jason Smith signed a declaration under penalty of perjury that the allegations in the complaint were true and correct. *Id*. at 25. Cedar Park alleged SB 6219 "forces Cedar Park to choose between violating state law and violating its deeply held religious beliefs by paying for abortion coverage", (¶ 67); that it required churches and other religious employers to provide insurance coverage for abortion, against their religious beliefs (¶

DEFENDANTS' RENEWED MOTION
TO DISMISS
NO. 3:19-cv-05181-BHS

4

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

83); that it would cost $243,125 in additional costs to become self-insured to have a plan consistent with its beliefs, which "is not a viable option" (¶ 43); and that offering group health insurance is its only viable option. Dkt # 1.

Cedar Park amended its complaint on April 2, 2019, and Pastor Smith again signed a declaration under penalty of perjury confirming that the factual allegations were true and correct. Dkt. # 20 at p. 26. The first amended complaint raised the same factual allegations discussed above. Dkt. # 20.

The Defendants moved to dismiss, arguing in part that Cedar Park's claims were non-justiciable because there was no injury traceable to Defendants' conduct, where Wash. Rev. Code § 48.43.065(3) allows organizations like Cedar Park to refuse to purchase coverage for a service to which they have a religious objection. Dkt. # 25 at pp. 9–10. Cedar Park responded and moved for a preliminary injunction. In a declaration supporting Cedar Park's motion for preliminary injunction signed by Pastor Smith on May 13, 2019, he testified that it would cost Cedar Park an additional $243,145 per year to self-insure, and that number was expected to double within the next several years. Dkt. # 29-1, ¶ 5.

On July 3, 2019, while both motions were still pending, Cedar Park sought leave file a second amended complaint. Dkt. # 46. This Court granted the Defendants' motion to dismiss, denied the motion for preliminary injunction, and granted Cedar Park leave to amend. Dkt. # 45. The Court explained that, looking at the second amended complaint, "there is some conceivable set of facts" where health care providers, insurance carriers, and facilities are treated differently than employers, which was sufficient to allow Cedar Park leave to amend its complaint. *Id*. at 22.

D. **This Court Dismissed, But the Ninth Circuit Reversed Because It Believed Cedar Park Could Not Procure Comparable Replacement Coverage**

On August 15, 2019, Cedar Park filed its second amended complaint. Like the first two complaints, Cedar Park alleged SB 6219 "force[s] Cedar Park to choose between violating state

TO DISMISS
NO. 3:19-cv-05181-BHS

5

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

1  law and violating its deeply held religious beliefs by paying for abortion coverage" (¶¶ 82, 2),
2  that it required churches and other religious employers to provide insurance coverage for
3  abortion, against their religious beliefs (¶ 70), that it would cost $243,125 in additional costs to
4  become self-insured to have a plan consistent with its beliefs, which "is not a viable option"p.
5  (¶ 43), and that offering group health insurance is its only viable option. Dkt # 46. Pastor Smith
6  signed a verification that day under oath declaring under penalty of perjury that the allegations
7  were true and correct. Dkt. # 46 at p. 29. At no point does the second verified complaint mention
8  that Cedar Park had considered purchasing another health plan that would provide coverage for
9  services consistent with its beliefs.

10  Cedar Park renewed its motion for preliminary injunction and provided another
11  declaration from Pastor Smith. Dkt. # 50. This declaration stated that "Cedar Park has carefully
12  considered its insurance options. In doing so, the Church has determined that self-insurance is
13  not a viable option. If Cedar Park were to provide a self-insured plan, it would cost the Church
14  roughly $243,125 more in additional costs, and that number is expected to double within the
15  next several years due to increase in plan use." Dkt # 50 at ¶ 8. The declaration discusses Cedar
16  Park's use of Kaiser Permanente as its carrier and states that Kaiser was unwilling to provide a
17  plan for coverage of services consistent with Cedar Park's religious beliefs. Dkt. # 50. Pastor
18  Smith also attached emails with Kaiser stating that Kaiser's plan would not be consistent with
19  Cedar Park's religious beliefs. Dkt. # 50-1. At no point did Pastor Smith discuss any other efforts
20  by Cedar Park to attempt to purchase a health insurance plan consistent with its religious beliefs.

21  On October 3, 2019, before the Defendants responded, Cedar Park sought leave to file a
22  supplemental complaint. Dkt. # 51. The supplemental verified complaint adds allegations
23  regarding Cedar Park's communications with Kaiser, and Kaiser's refusal to provide a plan
24  excluding coverage for abortion services. Dkt. # 52-1. At no point does the supplemental verified
25  complaint mention any other efforts from Cedar Park to attempt to purchase a plan consistent
26  with its religious beliefs. Pastor Smith signed a verification on October 2, 2019, again verifying

DEFENDANTS' RENEWED MOTION
TO DISMISS
NO. 3:19-cv-05181-BHS

6

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1  under penalty of perjury that the factual allegations in the supplemental verified complaint were
2  true and correct. Dkt. # 52-1 at p. 8.

3  The Defendants responded and cross-moved that the Court dismiss. The Court granted
4  Cedar Park leave to supplement, denied the motion for preliminary injunction, and granted the
5  motion to dismiss. Dkt. # 60. In relevant part, the Court ruled that Cedar Park failed to establish
6  an injury of fact. Dkt. # 60 at p. 11.

7  Cedar Park appealed. In its briefing, Cedar Park repeated its assertion that it would cost
8  $243,125 annually to self-insure and that "no meaningful religious accommodation applies to
9  Cedar Park or its secular insurer . . . it is currently forced to cover and pay for abortion coverage
10 in its group health plan that violates its beliefs." Cedar Park Reply Br. (9th Cir. No. 20-35507,
11 Dkt. Entry No. 36) at p. 11; *see* Cedar Park Opening Br. (9th Cir. No. 20-35507, Dkt. Entry No.
12 19) at pp. 10, 19, 30. Cedar Park claimed that once it "received notice of this involuntary change
13 to its [Kaiser] plan, the church had only 18 days to act before its policy renewed" and that to
14 "ensure that Cedar Park employees did not experience a devastating lapse in health coverage,
15 the church was forced to renew its modified plan under protest." Cedar Park Opening Br. (9th
16 Cir. No. 20-35507, Dkt. Entry No. 19) at p. 30.

17 Although affirming many other aspects, the Ninth Circuit reversed. Dkt. # 65. The Ninth
18 Circuit held that Cedar Park plausibly alleged an injury in fact because of two critical allegations:
19 (1) Cedar Park's health insurer (Kaiser) "stopped offering a plan with abortion coverage
20 restrictions, and (2) "Cedar Park could not procure comparable replacement coverage." Dkt. # 65
21 at p. 2. Because of these two allegations, it was "sufficient to state an injury in fact that is fairly
22 traceable to SB 6219." *Id.* The Ninth Circuit held that the claims were redressible because the
23 fact that Kaiser had provided a plan consistent with its beliefs "is strong evidence that Cedar
24 Park could obtain a similar plan from Kaiser Permanente or another health insurer if the state is
25 enjoined from enforcing SB 6219." Dkt. # 65 at pp. 2–3. The Ninth Circuit rejected the State's
26 argument that SB 6219 did not prevent Kaiser from continuing to offer a plan that restricted

DEFENDANTS' RENEWED MOTION TO DISMISS
NO. 3:19-cv-05181-BHS
7
ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1  abortion coverage because "there is no evidence in the record clearly demonstrating that Cedar
2  Park could obtain acceptable coverage at the time it filed its complaint." Dkt. # 65 at pp. 3–4.

**E.     On Remand, Discovery Revealed That in 2019, While Litigating Whether Cedar Park Suffered an Injury in Fact, Cedar Park Received Two Bids for *Cheaper* Plans That Would Have Accommodated Its Religious Beliefs**

On remand, the parties have engaged in discovery, including producing documents and conducting Fed. R. Civ. P. 30(b)(6) depositions of both parties. Discovery revealed that in 2019, not only had Cedar Park received six or seven bids for plans that offered coverage for services consistent with Cedar Park's religious beliefs towards abortion and/or contraceptives, but that two different plans offered by Cigna would have been *cheaper* than the negotiated cost to renew with Kaiser. Crisalli Decl., Ex. A at 37; Ex. L.

Cedar Park's Rule 30(b)(6) designee, its Chief Financial Officer Steven Orcutt, testified that in 2019, Cedar Park learned that its plan with Kaiser that excluded coverage for abortion expired on August 31, 2019, so it contacted its broker to seek bids for plans that would exclude abortion and certain contraceptives. Crisalli Decl., Ex. A at 36–37. The designee testified that Cedar Park received at least seven bids for plans consistent with its beliefs that would take effect September 1, 2019. *Id.* Emails show that Cedar Park knew of these bids at least as late as June 10, 2019. Crisalli Decl., Exs. C, D, E, K .

Cedar Park received bids for two options from Cigna, one for a fully insured plan and one for a level-funded plan. Crisalli Decl., Ex. A at 40–44; Exs. E, K Both options accommodated Cedar Park's beliefs by excluding coverage for abortion. Crisalli Decl., Exs. E, K. Gallagher showed the proposals to Cedar Park. *See* Crisalli Decl., Ex. A at 40–44. The cost of both Cigna options was projected to be *cheaper* than the proposed plan the broker had negotiated with Kaiser. Crisalli Decl., Ex. A at 60–61; Ex. K at 2. The negotiated rate for the Kaiser plan was estimated to cost $916,314. Crisalli Decl., Ex. A at 61; Ex. K at 2. The fully insured plan from Cigna was estimated to cost $890,408. Crisalli Decl., Ex. A at 60; Ex. K at 2.

DEFENDANTS' RENEWED MOTION TO DISMISS
NO. 3:19-cv-05181-BHS

8

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1  The level-funded option from Cigna was estimated to cost $913,381. Crisalli Decl., Ex. A at 61; Ex. K at 2.

Emails between Cedar Park, its broker, and Cigna show that Cigna would accommodate Cedar Park's religious objection to providing coverage for certain contraceptives. Crisalli Decl., Ex. A at 43; Exs. E, F. Unlike Kaiser, which did not have the administrative ability to carve out certain contraceptives, Cigna told Cedar Park that its plan would exclude the specific contraceptives that Cedar Park believed were inconsistent with its religious beliefs. Crisalli Decl., Ex. A at 42–43; Ex. F.

Cedar Park chose to remain with Kaiser for the 2019–2020 plan year, paying the higher rates and not exercising its right to purchase a plan that contained coverage consistent with its religious beliefs. Crisalli Decl, Ex. A at 61; Ex. K. Cedar Park acknowledged that the price of the fully insured Cigna plan and the level-funded Cigna plan were lower than the cost for the renegotiated Kaiser plan. Crisalli Decl., Ex. A at 61. Cedar Park explained that the reasons it did not purchase the Cigna plan were (1) that it believed Cigna would likely increase the rates in later years; (2) switching to Cigna would require all Cedar Park employees using the Kaiser HMO to find new providers; and (3) there would be additional risks to Cedar Park in purchasing a level-funded plan. Crisalli Decl., Ex. A at 61–63. Cedar Park agrees that none of these reasons is based on Cedar Park's religious beliefs. Crisalli Decl., Ex. A at 64.

Pastor Smith also testified as a Rule 30(b)(6) designee for Cedar Park. He testified that he had ultimate decision-making authority for purchasing health insurance plans. Crisalli Decl., Ex. B at 108. He reviewed the proposed plans, including those from Cigna before deciding to remain with Kaiser for the 2019–2020 plan year. Crisalli Decl., Ex. B at 111. Pastor Smith testified that he reviewed each of the pleadings and declarations before signing them. Crisalli Decl, Ex. B at 113. He assisted in adding or providing facts that went into the pleadings. *Id.*

In 2020, Cedar Park again solicited bids for plans that included coverage consistent with its religious beliefs for the period between September 1, 2020, to August 31, 2021. Crisalli Decl.,

DEFENDANTS' RENEWED MOTION TO DISMISS
NO. 3:19-cv-05181-BHS

9

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1   Ex. A at 68–72. Cigna again offered a level-funded plan that would exclude coverage for
2   abortion services and not cover certain kinds of contraceptives. *Id.* The proposed Cigna plan was
3   cheaper than renewing the Kaiser plan, but more expensive than a renegotiated plan. Crisalli
4   Decl., Ex. A at 69–70; Ex. K. Like before, Kaiser's plan would not exclude coverage for abortion
5   services or exclude certain contraceptives. Cedar Park did not choose the Cigna plan for the same
6   reasons as before. Crisalli Decl, Ex. A at 75–76.

7   In 2021, Cedar Park did not receive any offers for other plans and renewed its plan with
8   Kaiser. *See* Crisalli Decl., Ex. A at 77.

## IV.   ARGUMENT

This Court lacks Article III standing to adjudicate what remains of this case because the undisputed facts show that Cedar Park did not suffer an injury in fact. While Cedar Park alleged in its complaints that it would cost an additional $243,145 to purchase a plan consistent with its religious beliefs by self-insuring, at the same time, Cedar Park had received multiple offers for plans that would accommodate its religious beliefs, at least two of which *cheaper* than the plan offered by Kaiser. As a result, these facts, discovered years into this litigation, disprove the Ninth Circuit's mistaken premise that "Cedar Park could not procure comparable replacement coverage." Because this premise is factually incorrect and Cedar had multiple options to procure comparable replacement coverage that accommodated its religious beliefs, at even a cheaper rate, there is no injury-in-fact traceable to the Defendants' conduct or SB 6219 and this Court should dismiss with prejudice.

### A.   Legal Standards

Federal courts are courts of limited jurisdiction, and are presumptively without jurisdiction over civil actions. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). The burden of establishing to contrary rests upon the plaintiff, and since subject matter jurisdiction involves a court's power to hear a case, it can never be forfeited or waived. *Id.*; *United States v. Cotton*, 535 U.S. 625, 630 (2002). Lack of subject may be raised by either party

DEFENDANTS' RENEWED MOTION
TO DISMISS
NO. 3:19-cv-05181-BHS

10

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

at any point during the litigation, through a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1). *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 506 (2006). "Court[s] have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party." *Id.* at 501.

There are two types of motions to dismiss for lack of subject matter jurisdiction: a facial attack and a factual attack. *Thornhill Publ'g Co. Inc. v. Gen. Tel. & Elec. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979). When a party makes a facial attack on a complaint, the attack is unaccompanied by supporting evidence, and it challenges the jurisdiction based solely on the pleadings, so the Court must consider the factual allegations in the complaint as true and determine whether they establish subject matter jurisdiction. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004); *Savage v. Glendale Union High Sch. Dist. No. 205*, 343 F.3d 1036, 1039 n.1 (9th Cir. 2003).

In the case of a factual attack, however, the Court "may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment." *Safe Air for Everyone*, 373 F.3d at 1039. "[N]o presumptive truthfulness attaches to plaintiff's allegations." *Thornhill*, 594 F.2d at 733 (internal citation omitted). The party opposing the motion has the burden to prove that subject matter jurisdiction exists and must present any necessary evidence to satisfy this burden. *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989). If the plaintiff's allegations of jurisdictional facts are challenged by a defendant, "the plaintiff 'cannot rest on the mere assertion that factual issues [may] exist.'" *Trentacosta v. Frontier Pac. Aircraft Ind., Inc.*, 813 F.2d 1553, 1558 (9th Cir. 1987) (quoting *Exch. Nat'l Bank of Chi. v. Touche Ross & Co.*, 544 F.2d 1126, 1131 (2d Cir. 1976). The Court "may review any evidence necessary, including affidavits and testimony, in order to determine whether subject matter jurisdiction exists." *S. Cal. Alliance of Publicly Owned Treatment Works v. E.P.A.*, 297 F.Supp.3d 1060 (E.D. Cal. 2018). If the plaintiff fails to meet its burden and there is a lack of subject matter jurisdiction, the Court must dismiss the action. Fed. R. Civ. P. 12(h)(3).

DEFENDANTS' RENEWED MOTION TO DISMISS
NO. 3:19-cv-05181-BHS

11

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

To satisfy Article III's "case or controversy" requirement, a plaintiff "must show that (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Sys. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000); *Bassett v. ABM Parking Servs., Inc.*, 883 F.3d 776, 779 (9th Cir. 2018). "Article III standing requires a concrete injury even in the context of a statutory violation." *Bassett*, 883 F.3d at 779. Ongoing injuries are not fairly traceable to defendants when plaintiffs inflict harm on themselves based on fears of a hypothetical future harm that is not certainly impending. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 416–18; *Nat'l Family Planning & Reprod. Health Ass'n, Inc. v. Gonzalez*, 468 F.3d 826, 831 (D.C. Cir. 2006) ("self-inflicted harm doesn't satisfy the basic requirements for standing").

**B.    New Facts Show that Cedar Park Suffered No Injury Traceable to the Defendants' Conduct, So the Court Lacks Article III Standing**

Cedar Park intentionally excluded material facts in its complaints and its Pastor's declarations, including that while Cedar Park was alleging it was cost-prohibitive to exercise its religious beliefs in purchasing a health insurance plan, it meanwhile already had received offers for plans that not only would accommodate its religious beliefs but were *cheaper* than keeping its plan with Kaiser. With these new facts, disclosed years later during discovery, Cedar Park cannot establish that it suffered an injury in fact traceable to the Defendants.

The Ninth Circuit held that Cedar Park's complaint sufficiently alleged standing by alleging that "due to the enactment of SB 6219, its health insurer (Kaiser Permanente) stopped offering a plan with abortion coverage restrictions and Cedar Park could not procure comparable replacement coverage." *Cedar Park*, 860 Fed. Appx. at 543. Relying on a recent Ninth Circuit decision, the Court held that these allegations were sufficient to state an injury in fact that is fairly traceable to SB 6219. *Id.* (citing *Skyline Wesleyan Church v. Cal. Dep't of Managed Health*

DEFENDANTS' RENEWED MOTION TO DISMISS
NO. 3:19-cv-05181-BHS

12

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

*Care*, 968 F.3d 738, 747 (9th Cir. 2020)). The Ninth Circuit held that the injury was redressable because the fact that Kaiser had provided a plan consistent with its beliefs "is strong evidence that Cedar Park could obtain a similar plan from Kaiser Permanente or another health insurer if the state is enjoined from enforcing SB 6219." *Id.* The Ninth Circuit also rejected the State's argument that SB 6219 did not prevent Kaiser from continuing to offer a plan that restricted abortion coverage, in part because "there is no evidence in the record clearly demonstrating that Cedar Park could obtain acceptable coverage at the time it filed its complaint." *Id.*

The evidence shows that Cedar Park's allegations not only were wrong, but that they were wrong when Cedar Park filed the operative complaints. As late as June 2019, Cedar Park had received offers from Cigna for plans that would accommodate its religious beliefs, and those plans were cheaper than the plans offered by Kaiser. Cedar Park never mentioned these facts when it sought leave to file a second amended complaint on July 3, 2019, during which time the parties were litigating whether Cedar Park had suffered an injury in fact. Thus, contrary to the allegations relied upon by the Ninth Circuit, Cedar Park could, in fact, "procure comparable replacement coverage." *Cedar Park*, 860 Fed. Appx. at 543. Other insurers interpreted SB 6219 to allow them to offer plans excluding abortion coverage and certain contraceptives, meaning that enjoining SB 6219 was not necessary for Cedar Park to obtain the relief it seeks. And there now is ample evidence "in the record clearly demonstrating that Cedar Park could obtain acceptable coverage at the time it filed its complaint." *Id.*

On these facts, which were not previously considered by this Court or the Ninth Circuit, Cedar Park cannot establish that there is Article III standing. Cedar Park did not suffer an injury if it had offers for plans that excluded coverage for services consistent with its beliefs and those plans were *cheaper* than Kaiser's.

At the very least, any injury to Cedar Park cannot be fairly traced to the Defendants (or SB 6219). Despite having the option to exercise its religious beliefs and save money, Cedar Park chose to stay with Kaiser and not exercise its religious beliefs. Cedar Park made this choice not

DEFENDANTS' RENEWED MOTION
TO DISMISS
NO. 3:19-cv-05181-BHS

13

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

because of Defendants but because of external reasons. As Cedar Park admitted in its deposition, the reasons why it rejected Cigna were unrelated to its religious beliefs.

And enjoining SB 6219 would serve no purpose, where it is undisputed that other insurance carriers already offer plans. Cedar Park can get what it wants, and it could have before filing the operative complaints.

Reviewing all the evidence, Cedar Park cannot satisfy its burden to demonstrate Article III standing. As such, this Court lacks subject matter jurisdiction and should dismiss.

## V.   CONCLUSION

Because Cedar Park cannot satisfy its burden to demonstrate standing, the Court should dismiss Cedar Park's complaint with prejudice.

DATED this 5th day of January 2023.

ROBERT W. FERGUSON
Attorney General

*/s/ Paul M. Crisalli*
PAUL M. CRISALLI, WSBA #40681
JEFFREY T. SPRUNG, WSBA #23607
Assistant Attorneys General
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744
jeff.sprung@atg.wa.gov
paul.crisalli@atg.wa.gov

MARTA DELEON, WSBA #35779
Senior Assistant Attorney General
Government Compliance & Enforcement Division
1125 Washington Street SE
Olympia, WA 98504-0100
(360) 664-9006
marta.deleon@atg.wa.gov

*Attorneys for Defendants*

DEFENDANTS' RENEWED MOTION
TO DISMISS
NO. 3:19-cv-05181-BHS

14

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

## DECLARATION OF SERVICE

I hereby declare that on this day I caused the foregoing document to be electronically filed with the Clerk of the Court using the Court's CM/ECF System which will send notification of such filing to the following:

Kevin H. Theriot, AZ Bar #030446*
Alliance Defending Freedom
15100 N 90th Street
Scottsdale, AZ 85260
(480) 444-0020
KTheriot@adflegal.org

David A. Cortman, GA Bar #188810*
Alliance Defending Freedom
1000 Hurricane Shoals Rd. NE
Suite D-1100
Lawrenceville, GA 30040
(770) 339-0774
DCortman@adflegal.org

*Attorneys for Plaintiff*
*Admitted *pro hac vice*

DATED this 5th day of January 2023, at Seattle, Washington.

*/s/ Paul M. Crisalli*
PAUL M. CRISALLI, WSBA #40681
Assistant Attorney General

DEFENDANTS' RENEWED MOTION TO DISMISS
NO. 3:19-cv-05181-BHS

15

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744