# Exhibit 5

Honorable Benjamin H. Settle

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

Civil Action No. 3:19-cv-05181

CEDAR PARK ASSEMBLY OF GOD OF
KIRLAND, WASHINGTON,

Plaintiff,

vs.

MYRON "MIKE" KREIDLER, in his official capacity as Insurance Commissioner for the State of Washington; JAY INSLEE, in his official capacity as Governor of the State of Washington,

Defendants.

---

VIDEOCONFERENCE and 30(b)(6) DEPOSITION of DEFENDANTS

MYRON "MIKE" KREIDLER and GOVERNOR JAY INSLEE

REPRESENTATIVE MOLLY NOLLETTE

---

PURSUANT TO NOTICE, the above-entitled videoconference deposition was taken on behalf of the Plaintiff on Thursday, November 17, 2022, at 10:01 a.m. PST, before Jana Mackelprang, Certified Realtime Reporter, Registered Professional Reporter, and Notary Public.



Electronically signed by Jana Mackelprang (001-409-517-3774) 5c7111a3-6b4c-4267-8d1e-db7b405b3ae7

APPEARANCES:

For the Plaintiff:

Kevin H. Theriot, Esq.
Julia Payne, Esq.
Alliance Defending Freedom
15100 N. 90th Street
Scottsdale, Arizona 85260
480.444-0020
ktheriot@adflegal.org

For the Defendants:

Paul M. Crisalli
Attorney General's Office
800 5th Avenue, Suite 2000
Seattle, Washington 98104
paul.crisalli@atg.wa.gov

Marta U. DeLeon
Attorney General's Office
PO Box 40100
Olympia, Washington 98504
marta.deleon@atg.wa.gov



Electronically signed by Jana Mackelprang (001-409-517-3774) 5c7111a3-6b4c-4267-8d1e-db7b405b3ae7

EXAMINATION INDEX

By Mr. Theriot Page 4

EXHIBIT INDEX


| FOR IDENTIFICATION | | INITIAL REFERENCE |
|---|---|---|
| Exhibit 8 | 10/19/2018 Memorandum from Philhower to Nollette, "Forms review standard for a carrier with a religious objection to providing contraception and abortion | 21 |
| Exhibit 9 | RCWA 48.44.035 | 49 |
| Exhibit 10 | 9/19/2019 Providence Health Plan Press Release | 65 |


PREVIOUSLY MARKED EXHIBIT INDEX


| FOR IDENTIFICATION | INITIAL REFERENCE |
|---|---|
| Exhibit 1 | 7 |
| Exhibit 2 | 39 |
| Exhibit 3 | 73 |
| Exhibit 4 | 27 |
| Exhibit 5 | 69 |
| Exhibit 6 | 37 |




Electronically signed by Jana Mackelprang (001-409-517-3774) 5c7111a3-6b4c-4267-8d1e-db7b405b3ae7

P R O C E E D I N G S

WHEREUPON, the following proceedings were taken pursuant to the Federal Rules of Civil Procedure.

* * * * *

THE COURT REPORTER: Will counsel please stipulate that the court reporter is authorized to administer the oath remotely; that no objection to admissibility of the deposition will be made based on validity of the oath; and that Ms. Nollette is who she says she is so that I may swear her in remotely?

MR. THERIOT: Counsel for Plaintiff stipulates.

MR. CRISALLI: The same for Defendants.

MOLLY NOLLETTE,

having been first duly sworn to state the whole truth, testified as follows:

EXAMINATION

BY MR. THERIOT:

**Q. Good morning, Ms. Nollette. My name is Kevin Theriot. I'm counsel for Cedar Park in the Cedar Park versus Kreidler case.**

**Could you please state your full name for the record?**

A. My full name is Molly Sevcik Foges



Electronically signed by Jana Mackelprang (001-409-517-3774) 5c7111a3-6b4c-4267-8d1e-db7b405b3ae7

Nollette.

MR. THERIOT: Do you need a spelling for that, Jana?

THE REPORTER: Yes, please.

THE DEPONENT: M-O-L-L-Y, S-E-V-C-I-K, F-O-G-E-S, N-O-L-L-E-T-T-E.

THE REPORTER: Thank you.

**Q. (By Mr. Theriot) Have you been deposed before, Ms. Nollette?**

A. Yes, I have.

**Q. How many times?**

A. Three times.

**Q. Can you tell me what kinds of cases those cases were with those two depositions?**

A. I was deposed on behalf of a former employer regarding retail sale tips.

**Q. Okay.**

A. I was deposed in my current position for a case involving network access requirements for health care services.

**Q. Do you remember the name of the case involving network access requirements?**

A. I think it was Seattle Children's Hospital. I don't remember the formal name.

**Q. Okay. And that case was filed against**



Electronically signed by Jana Mackelprang (001-409-517-3774) 5c7111a3-6b4c-4267-8d1e-db7b405b3ae7

**the Office of -- Office of the Insurance Commissioner?**

A. Yes.

**Q. Did you -- other than through a deposition, did you testify in court in either of those cases?**

A. No.

**Q. Have you testified in court before?**

A. Yes.

**Q. When did you testify in court?**

A. In the early '90s, I testified in a landlord-tenant case in the state of Louisiana.

**Q. What was the subject of your testimony in that case, just briefly?**

A. It was whether the property that was being rented by myself and another person had in fact been abandoned.

**Q. Okay. Was your testimony in either of those depositions or before that court ever challenged as being incorrect?**

A. No.

**Q. Have you ever been charged with anything other than a traffic violation?**

A. No.

**Q. And you understand today that, like in your previous depositions, you're under oath and this**



Electronically signed by Jana Mackelprang (001-409-517-3774) 5c7111a3-6b4c-4267-8d1e-db7b405b3ae7

**could be used in a court of law just as if you were testifying live? Do you understand that?**

A. Yes.

**Q. Is there anything that would prohibit you from thinking clearly or testifying truthfully today?**

A. No.

**Q. Are you on any kind of medication that would limit your ability to recall?**

A. No.

**Q. So I'm not going to do anything other than probably remind you of what you remember for your past depositions, except in a video deposition it's a little bit more necessary that we don't talk over each other. So if you would wait until I finish my question to answer, that would be great, and I will do my best to let you finish your answer before I ask a question.**

**Of course, all responses need to be verbal and not a shaking of the head, and try to avoid "uh-huh" and "huh-uh."**

**Of course, we can take a break at any time, as long as a question isn't pending.**

**So we're going to start with what we previously marked as Exhibit 1. And I'm going to put that in the chat so that you can see it, but this is the notice of deposition. Do you see that?**



Electronically signed by Jana Mackelprang (001-409-517-3774) 5c7111a3-6b4c-4267-8d1e-db7b405b3ae7

A. Yes.

**Q. So I think if you click on it, I think actually on your computer, you may have to download it in order to see it.**

A. Yes.

**Q. Can you take a look at that? And then I have a couple questions for you about it.**

A. I'm working on downloading it.

**Q. Okay.**

A. All right, it is open.

**Q. Okay. Do you recognize that document?**

A. Yes.

**Q. Do you understand that you've been designated by the Defendants to testify on their behalf for some of the topics listed in this deposition notice?**

A. Yes.

**Q. And based upon my understanding in speaking with your counsel, you are prepared today to testify as to Topic 1 -- I'll go slow here so you can kind of look at them -- is that correct?**

A. Yes.

**Q. Topic 2; is that correct?**

A. Yes.

**Q. Topic 3; is that correct?**



Electronically signed by Jana Mackelprang (001-409-517-3774) 5c7111a3-6b4c-4267-8d1e-db7b405b3ae7

A. Yes.
**Q. Topic 6; is that correct?**
A. Yes.
**Q. Topic 7; is that correct?**
A. Yes.
**Q. Topic 8; is that correct?**
A. Yes.
**Q. Topic 12; is that correct?**
A. Yes.
**Q. Topic 13; is that correct?**
A. Yes.
**Q. And Topic 14; is that correct?**
A. Yes.
**Q. What did you do to prepare for today's deposition?**
A. I reviewed the statutes or rules that were listed.
**Q. Okay. Which statutes and rules did you review?**
A. I reviewed the conscience clause statute.
**Q. That's the 065 statute?**
A. I believe so. I do not memorize statute or RCW numbers very well.
**Q. Well, good for you. It's better to go by what they actually do.**


Electronically signed by Jana Mackelprang (001-409-517-3774) 5c7111a3-6b4c-4267-8d1e-db7b405b3ae7

**So the conscience clause statute. What else?**

A. The equity fee statute.

**Q. Equity fee statute. Okay.**

A. I reviewed the definitions in 48.43.005 related to items that are not considered health plans.

**Q. Okay.**

A. I reviewed a rule that was about implementing the equity fee statute.

**Q. Okay.**

A. I reviewed Senate Bill 6219.

**Q. All right. So the rule implementing the equity fee statute, was that a Washington Administrative Code rule?**

A. Yes.

**Q. Do you happen to remember the number of that rule?**

A. No.

**Q. Was it 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?**

A. I do not know.

**Q. Okay. We can come back to that. All right.**

**Any other statutes or rules you reviewed in preparation for this deposition?**

A. I reviewed a statute about large group



Electronically signed by Jana Mackelprang (001-409-517-3774) 5c7111a3-6b4c-4267-8d1e-db7b405b3ae7

rate negotiations.

**Q. Do you remember what the number of that statute is?**

A. No. I don't want to make a guess.

**Q. Okay. Did you speak with anyone else besides your attorney about the subject matter of your deposition today?**

A. Yes, I did.

**Q. Was your attorney present when you spoke to them?**

A. No.

**Q. How many people did you speak to about the subject of your deposition today?**

A. Three people.

**Q. And what are their names?**

A. Kim Tocco, Lichiou Lee.

**Q. Could you spell that one?**

A. L-I-C-H-I-O-U, Lee, L-E-E.

**Q. And who else?**

A. Ned Gaines.

**Q. What was -- and the conversation with Kim Tocco, when did that occur?**

A. Within the last couple of weeks.

**Q. What did you say to her and what did she say to you in that conversation?**


Electronically signed by Jana Mackelprang (001-409-517-3774) 5c7111a3-6b4c-4267-8d1e-db7b405b3ae7

A. We discussed that we were both identified as people who were going to be deposed.

**Q. All right. Did you talk about any of the topics that you were going to be deposed about today?**

A. Not in any detail.

**Q. Which ones did you talk about in general?**

A. We talked about the general process for filings, and we talked about benefits.

**Q. The general process for filings, was that regarding filings of health care plans?**

A. Health care plans and other insurance products.

**Q. Besides health care plans, what other insurance products did you talk about in the process for filing?**

A. Standalone dental plans, standalone vision plans. Let's see. Short-term, limited duration plans.

**Q. And with regard to benefits, what did you speak about regarding your conversation with Kim Tocco on benefits?**

A. Required benefits.

**Q. Required benefits for which insurance products?**

A. For health plans and required benefits


Electronically signed by Jana Mackelprang (001-409-517-3774) 5c7111a3-6b4c-4267-8d1e-db7b405b3ae7

for short-term, limited duration plans.
**Q. Okay. So what did you say to Kim Tocco about required benefits for health plans?**
A. I think we just discussed that there are required benefits for health plans that are not required for nonhealth plans. That was the focus of that discussion.
**Q. And what did you discuss with -- what did you say to Kim Tocco and what did she say to you about short-term, limited duration plans?**
A. We discussed that short-term, limited duration plans were not health plans, and therefore were not subject to the requirements of health plans. They have a different set of requirements.
**Q. What are the requirements that apply to short-term, limited duration health plans?**
A. I would have to review the specific statute and WAC to go over those requirements.
**Q. So there's a statute that applies?**
A. I believe it's a statute. It might just be a rule.
**Q. And there's a Washington Administrative Code rule that may apply also?**
A. I believe it is in a rule and not in a statute that defines what's required for a short-term,


Electronically signed by Jana Mackelprang (001-409-517-3774) 5c7111a3-6b4c-4267-8d1e-db7b405b3ae7

limited duration health plan, for coverage and administration of the plan.

**Q. And because that's not a health plan, it's not subject to SB 6219?**

A. That is correct.

**Q. Did you just have one conversation with Kim Tocco about the subject matter of your testimony today?**

A. No, I think it was multiple conversations over weeks.

**Q. I'm sorry.**

**Have we spoken about the subject matter of all of those conversations that you've had with Kim Tocco?**

A. Yes.

**Q. So there's nothing else about the subject matter of this deposition that you discussed with Kim Tocco in the last couple weeks?**

A. No.

**Q. All right. Lichiou Lee, when did you speak with her?**

A. This week.

**Q. How many times?**

A. About the subject of the deposition?

**Q. Yes. I'm sorry. Yes.**



Electronically signed by Jana Mackelprang (001-409-517-3774) 5c7111a3-6b4c-4267-8d1e-db7b405b3ae7

A. Once.
**Q. Is Lichiou Lee employed by the Office of the Insurance Commissioner?**
A. Yes.
**Q. What is her position?**
A. Chief actuary.
**Q. What topics did you discuss with Lichiou Lee this week about the subject matter of your deposition today?**
A. I asked her if she knew the WAC number for the rule-making that was done to implement the equity fee statute.
**Q. And did she know that number?**
A. Not immediately. It took her five minutes to get back to me with it.
**Q. Did you speak to her about the substance of that WAC?**
A. No.
**Q. Okay. Did you speak with her -- other than asking for the number of that WAC, did you talk to her about anything else regarding the subject matter of this deposition?**
A. No.
**Q. I'm having a little trouble reading my writing. Ned Gaines, was that the third person?**


Electronically signed by Jana Mackelprang (001-409-517-3774) 5c7111a3-6b4c-4267-8d1e-db7b405b3ae7

A. Yes.
**Q. When did you speak with Ned Gaines?**
A. Yesterday.
**Q. And that was about the subject matter of this deposition?**
A. Yes.
**Q. What topics did you discuss yesterday with Ned Gaines about this deposition?**
A. I asked Ned for information regarding some of the excepted benefit plans, the nonhealth plans.
**Q. All right. And how did Ned respond to that request?**
A. He gave me additional information about the nature of those products, the ones that I asked him about.
**Q. All right. So we can -- I'm going to ask you about that in some detail later, but there's no sense getting into that just yet.**
**Was there anything else besides the products and the nature of the nonhealth care plans that you discussed with Ned Gaines that relate to this deposition?**
A. No.
**Q. And that was the only conversation you**


Electronically signed by Jana Mackelprang (001-409-517-3774) 5c7111a3-6b4c-4267-8d1e-db7b405b3ae7

**had with Ned Gaines about this deposition?**

A. Yes.

**Q. Okay. How much time did you spend preparing for today's deposition?**

A. Over the last couple of weeks, about four hours.

**Q. Let me make a real quick note here before I forget.**

**What's your position with the OIC?**

A. I am a deputy insurance commissioner.

**Q. What are your responsibilities as a deputy insurance commissioner?**

A. I'm responsible for managing and supervising a division, the division of rates, forms, and provider networks.

**Q. And can you just give me a brief description of what kinds of subject matters the rates, forms, and provider networks involves?**

A. The work is the review and approval of all fully insured insurance products that are required to be filed with the Office of the Insurance Commissioner. And for insurance products that include a provider network, the review of the provider network.

**Q. How do you -- I'm sorry, I interrupted you.**



Electronically signed by Jana Mackelprang (001-409-517-3774) 5c7111a3-6b4c-4267-8d1e-db7b405b3ae7

A. An insurance product can include a form that is about the benefits and administration of it; a rate, which is about the premium paid; and then the provider network, which is the grouping of health care providers.
**Q. Okay. How do you define all fully insured insurance products?**
A. By looking at Title 48 of the insurance code of Washington State.
**Q. Okay. How long have you been a deputy insurance commissioner?**
A. Since June of 2013.
**Q. What was your job before that?**
A. I was a Management Analyst 5 with the office.
**Q. How long were you a Management Analyst 5 with the OIC?**
A. I started in December of 2010.
**Q. And what was your job before December of 2010?**
A. I worked for Starbucks Coffee Company.
**Q. What position did you hold at Starbucks Coffee Company?**
A. When I left the company, I was a senior manager.


Electronically signed by Jana Mackelprang (001-409-517-3774) 5c7111a3-6b4c-4267-8d1e-db7b405b3ae7

**Q. I heard there are a lot of great perks to that kind of job.**

A. A lot of coffee.

**Q. I'm not a coffee drinker, but the people I know who are envy workers who work at Starbucks.**

**What's your education?**

A. I have a bachelor's degree, and I have a juris doctor.

**Q. What's your bachelor's degree in?**

A. English.

**Q. Are you familiar with the insurance products offered by Providence?**

MR. CRISALLI: Object to form. You may answer.

**Q. (By Mr. Theriot) You may answer. He's preserving his objections so he can -- if he has a concern about the question, he can bring that up later with the judge; but unless he instructs you not to answer, generally speaking, you should answer after he objects.**

A. Providence Health Plans, yes.

**Q. Okay. Are you familiar with the counties in which Providence Health Plans offers its services?**

A. I do not have that information at hand. I would look it up, if asked.



Electronically signed by Jana Mackelprang (001-409-517-3774) 5c7111a3-6b4c-4267-8d1e-db7b405b3ae7

**Q. Okay. Is there any law or regulation that influences whether a carrier offers health plans in certain counties or statewide?**

MR. CRISALLI: Object to the extent it calls for a legal conclusion and speculation.

THE DEPONENT: There are network access requirements for health plans that a carrier must meet to offer a health plan in a county.

**Q. (By Mr. Theriot) Okay. So by "network requirements," you mean they have to have a certain number of providers that can serve the clientele in that county in order to be able to offer the plan?**

MR. CRISALLI: The same objection.

THE DEPONENT: Yes.

**Q. (By Mr. Theriot) Do you know whether Providence offers a plan that does not cover all forms of birth control?**

A. Yes, Providence Health Plans offers -- well -- birth control. I think it covers all forms of birth control.

**Q. Okay. But it also offers a plan that does not cover abortion?**

A. Yes.

**Q. Okay. I am going to put -- I'm going to put a document that we're going to call Exhibit 8 in**



Electronically signed by Jana Mackelprang (001-409-517-3774) 5c7111a3-6b4c-4267-8d1e-db7b405b3ae7

**the chat that I'd like to discuss with you.**

**(Exhibit 8 was remotely introduced and provided electronically to the reporter.)**

**Q. (By Mr. Theriot) Let me make sure I've got it right before I do that.**

**I've placed in the chat, which I've marked as Exhibit 8, Jana. We're going to continue our numbering from yesterday.**

**If you would, take a moment to open that up, Ms. Nollette, and familiarize yourself with that, and then I have some questions about that when you're ready.**

A. Okay. I have general familiarity with it, yeah.

**Q. All right. What is this document?**

A. This is a document that was drafted by a former OIC employee on how to review health care forms, which are the documents that include the benefits, if a carrier had a religious objection to providing contraceptive or abortion benefits in a health plan.

**Q. So Ms. Philhower is no longer with OIC?**

A. That's correct.

**Q. What were her job responsibilities when she was there?**

A. She was the manager of the health forms



Electronically signed by Jana Mackelprang (001-409-517-3774) 5c7111a3-6b4c-4267-8d1e-db7b405b3ae7

compliance unit.

**Q. Did she report to you?**

A. She did.

**Q. Did you ask her to prepare this memorandum?**

A. I did.

**Q. What prompted you to ask her to prepare this memorandum?**

A. Providence Health Plans was indicating they were going to come into the market, and we wanted to be prepared to review a health plan, if they submitted one.

**Q. I'm not going to rush you here. I would like you to take the time to read it. I know it's extensive. And my question is going to be: Is there anything in this memorandum that you either disagree with or is not accurate? And I want you to take your time. I'm not rushing you at all.**

A. Okay.

MR. CRISALLI: When she's done reading, would you mind repeating the question for the record?

MR. THERIOT: Oh, sure. I may get Jana to do it. I don't know if I can do it.

THE DEPONENT: Okay.

MR. THERIOT: Okay, Jana, could you



Electronically signed by Jana Mackelprang (001-409-517-3774) 5c7111a3-6b4c-4267-8d1e-db7b405b3ae7

repeat that question for me?
(Whereupon, the record was read back by the court reporter.)
MR. CRISALLI: Object. Vague as to time, also to the extent it calls for a legal conclusion.
THE DEPONENT: I think the memo is accurate as of the time it was written.
**Q. (By Mr. Theriot) Since the time it was written, has anything changed so that there are portions that are not accurate?**
MR. CRISALLI: Objection. Vague.
THE DEPONENT: I'm looking for one sentence that says that no carrier has asked for it, which was true at the time when the memo was written, but it's no longer true because Providence asked to not cover abortion. I'm looking for that sentence.
**Q. (By Mr. Theriot) Let me see if I can help you find it.**
A. On page 4, the third paragraph, the last sentence, we have not seen this situation.
**Q. Okay. So you have not seen this situation where the carrier asserting a religious objection to providing contraceptive benefits is barred from selling plans without contraceptive benefits?**
**At that time, you had not seen one of**



Electronically signed by Jana Mackelprang (001-409-517-3774) 5c7111a3-6b4c-4267-8d1e-db7b405b3ae7

**those, but you have since?**
MR. CRISALLI: Objection. Vague and compound.
THE DEPONENT: Could I ask you to rephrase the question?
**Q. (By Mr. Theriot) Sure. Sure. "We have not yet seen this situation," what situation is that referring to?**
A. A situation where a plan was filed without contraceptive benefits, where the health forms analyst then sent an objection to the carrier asking how they would ensure employees in the plan had received the required notice and unimpaired access to contraceptive services -- well, that's just contraceptive services. So we haven't seen that yet. Contraceptive services, we haven't.
**Q. So I just wanted to be clear about that. And it sounds like to me that you may have been mistaken because you have received a plan that's asking for an exception to abortion services since this?**
A. Yes.
**Q. And you may have actually received one at this time, or at least you heard there was one coming, right?**
MR. CRISALLI: Object to form.


Electronically signed by Jana Mackelprang (001-409-517-3774) 5c7111a3-6b4c-4267-8d1e-db7b405b3ae7

THE DEPONENT: I'm sorry, I didn't realize that was a question.

**Q. (By Mr. Theriot) Well, I should have ended it more with a question tone of voice.**

**At the time this memo was written, had you received a request from a religious carrier to not include abortion?**

A. I don't know if we had received a request from it. A carrier had contacted us, as carriers do, to say that they were going to enter the market.

**Q. And that carrier was Providence?**

A. Providence Health Plans.

**Q. All right. And as I understand it, that's the only concern that you had with this memo; and actually that concern turned out not to be accurate, correct?**

MR. CRISALLI: Object to form. Misstates the testimony.

THE DEPONENT: I don't remember the exact year, but Providence Health Plan did enter the market.

**Q. (By Mr. Theriot) Okay.**

A. And did not include abortion coverage in their health plans.

**Q. Okay. Besides that sentence that we just spoke about on page 4 that says, "We have not yet seen**


Electronically signed by Jana Mackelprang (001-409-517-3774) 5c7111a3-6b4c-4267-8d1e-db7b405b3ae7

**this situation," is there anything else that is no longer accurate about this memo that is marked as Exhibit 8?**

MR. CRISALLI: Object to the extent it calls for a legal conclusion.

THE DEPONENT: Not that I'm aware of.

**Q. (By Mr. Theriot) Okay. On page 2 of the memorandum, you refer to -- I'm sorry -- the memo refers to three options. Do you see that? Options 1, 2, and 3.**

**"She concludes that OIC has three options."**

A. I see that section.

**Q. Do these options, or did these options apply to contraception?**

A. I'd have to look at the greater context of the section to answer that.

**Q. So let me -- I'll give you time to do that, but let me just say, my question is going to be: Do these three options apply to contraception or to an exception for abortion or to both?**

A. These sections apply to coverage of abortion services.

**Q. Okay. Did the Office of the Insurance Commissioner choose one of these options after this**



Electronically signed by Jana Mackelprang (001-409-517-3774) 5c7111a3-6b4c-4267-8d1e-db7b405b3ae7

**memorandum was written?**

MR. CRISALLI: Object to form.

THE DEPONENT: I would want to look at RCW 48.43.065 before answering that question to confirm it.

**Q. (By Mr. Theriot) Okay. Let me put that into the chat so you can take a look at it.**

A. Thank you.

**Q. Sorry I'm so slow.**

**Okay. Can you see what's been previously marked Exhibit 4, 48.43.065, Ms. Nollette?**

A. Yes.

**Q. Okay.**

A. Could you repeat the original question again?

**Q. Yes. Of those three options listed in Exhibit 8, did the Office of the Insurance Commissioner choose one of those options to implement?**

A. Yes.

**Q. Which option did it choose?**

A. Number 3.

**Q. Is there anything in writing that indicates that you chose Option Number 3 and that is how you are reviewing health care plans?**

MR. CRISALLI: Object to form.



Electronically signed by Jana Mackelprang (001-409-517-3774) 5c7111a3-6b4c-4267-8d1e-db7b405b3ae7

THE DEPONENT: The form filing review process.

**Q. (By Mr. Theriot) Okay. I'm sorry, I interrupted you.**

A. The record of the form filing review.

**Q. Can you explain to me what that is?**

A. The Office of the Insurance Commissioner uses an electronic web-based platform called the System for Electronic Rate and Form Filing. Carriers submit their insurance products electronically on it.

For a form filing, the forms team, the assigned analyst would review the filing. If they had questions about it or found things that needed to be addressed, they would, within that record, submit what we call an objection. That objection becomes part of the formal record within SERFF. The company then responds.

And that is how the final, if approved, product is created, including the record of all objections and responses, objections from the OIC and responses from the carrier. And that is the record of the implementation and approval or disapproval of a filing.

**Q. Does the public have access to that software or program that you just were speaking about?**



Electronically signed by Jana Mackelprang (001-409-517-3774) 5c7111a3-6b4c-4267-8d1e-db7b405b3ae7

MR. CRISALLI: Objection. Asked and answered. Another witness covered this.

THE DEPONENT: The record is a public document and is available on the OIC's website.

**Q. (By Mr. Theriot) Okay. On page 2 of Exhibit 8, I have a question about the Weldon Amendment.**

**I believe at the top of the -- it's an incomplete paragraph, but it begins with "One of the new laws, RCW 48.43.073, recognizes the applicability of the Weldon Amendment by exempting carriers from the abortion coverage mandate to the extent necessary to comply with federal law."**

**How is the determination made of whether the Weldon amendment would exempt a particular carrier's plan.**

MR. CRISALLI: Objection to the extent it calls for a legal conclusion, and vague.

THE DEPONENT: If the office were concerned about a possible Weldon Amendment issue, we would contact our attorney.

**Q. (By Mr. Theriot) So there's not an internal process within the office where you make that assessment?**

MR. CRISALLI: Object to form.



Electronically signed by Jana Mackelprang (001-409-517-3774) 5c7111a3-6b4c-4267-8d1e-db7b405b3ae7

THE DEPONENT: No.

**Q. (By Mr. Theriot) Does the carrier request an exemption pursuant to the Weldon Amendment, or is that automatically assessed by the OIC?**

MR. CRISALLI: Object to form. Speculation.

THE DEPONENT: I don't know.

**Q. (By Mr. Theriot) So forgive me if I already asked this question. Is there a process other than referring it to counsel that is used by the OIC when assessing whether there's a Weldon Amendment concern?**

MR. CRISALLI: Object to form. Speculation.

THE DEPONENT: I have not had a situation like that.

**Q. (By Mr. Theriot) Okay. So if you did, though, that would be assessed on a case-by-case basis?**

MR. CRISALLI: Object to form. Speculation.

THE DEPONENT: At this time, yes.

**Q. (By Mr. Theriot) On page 5 of Exhibit 8, in the first full paragraph, under the heading "Refusal to Cover Abortion," the last sentence says, "Plans are not required to cover abortions that would be unlawful**


Electronically signed by Jana Mackelprang (001-409-517-3774) 5c7111a3-6b4c-4267-8d1e-db7b405b3ae7

**under RCW 9.02.120, multistate plans under 42 U.S.C Section 18054(a)(6) are exempt."**

**What is a multistate plan?**

A. Under the ACA, a federal agency -- I can't remember which one right now -- was directed to create a multistate plan program. As part of that program, which no longer exists, a carrier participating in it was required to have one health plan that did not cover abortion.

**Q. So there's no longer a program involving multistate plans?**

A. The multistate plan program does not exist anymore.

**Q. Is there still a federal requirement that there be a plan that does not cover abortion?**

MR. CRISALLI: Object to form. Beyond the scope.

You have not identified any federal laws for purposes of discussion in the 30(b)(6) notice.

THE DEPONENT: Could you repeat --

**Q. (By Mr. Theriot) Are you aware of any other laws besides the one referenced there on page 5 that we're speaking about that would require that there be a plan available in a state that does not include abortion?**



Electronically signed by Jana Mackelprang (001-409-517-3774) 5c7111a3-6b4c-4267-8d1e-db7b405b3ae7

MR. CRISALLI: The same objections.

THE DEPONENT: No.

**Q. (By Mr. Theriot) And the next sentence there on page 5 of Exhibit 8 says -- I'm sorry, the next phrase there at the end of the first paragraph under "Refusal to Cover Abortion," it says, "and plans are exempt if the application of this section to a health plan results in noncompliance with federal requirements that are a prescribed condition to the allocation of federal funds."**

**Is that referring to the Weldon Amendment?**

MR. CRISALLI: Object to form. Speculation as well as beyond the scope.

THE DEPONENT: I'm not sure.

**Q. (By Mr. Theriot) Could it be referring to the Weldon Amendment?**

MR. CRISALLI: The same objection.

THE DEPONENT: Yes.

**Q. (By Mr. Theriot) I believe, at the bottom of that page, in footnote 8 of Exhibit 8 on page 5, it says, "Washington currently has no multistate plan filings."**

**Do you know if Washington ever had any multistate plan filings.**



Electronically signed by Jana Mackelprang (001-409-517-3774) 5c7111a3-6b4c-4267-8d1e-db7b405b3ae7

MR. CRISALLI: Objection. Beyond the scope.

THE DEPONENT: Yes.

**Q. (By Mr. Theriot) And did they?**

A. Yes.

**Q. How many?**

MR. CRISALLI: Object to form. Beyond the scope.

THE DEPONENT: One carrier participated in the multistate plan program.

**Q. (By Mr. Theriot) When was that discontinued? Do you know the answer to that?**

MR. CRISALLI: The same objection.

THE DEPONENT: I think it wound up in the 2016, 2017 range.

**Q. (By Mr. Theriot) Okay. Once again, on page 5 of Exhibit 8, the last full paragraph there says, "The phrase 'substantially equivalent' is not defined in RCW 48.43.073."**

**Was a rule adopted that eventually defined "substantially equivalent"?**

A. I don't recall.

MR. CRISALLI: Objection to the extent it calls for a legal conclusion.

**Q. (By Mr. Theriot) Is there a rule -- are**


Electronically signed by Jana Mackelprang (001-409-517-3774) 5c7111a3-6b4c-4267-8d1e-db7b405b3ae7

**you aware of a rule in existence now that defines "substantially equivalent"?**

A. I simply cannot remember right now.

**Q. Okay. So there play be?**

A. I would need to review the WAC on point to look for that.

**Q. On page 7 of Exhibit 8, in footnote 10, there's a reference to a memo, a companion memo to this one, meaning Exhibit 8.**

**Do you know if that companion memo was produced as a part of the documents produced by counsel?**

MR. CRISALLI: Object to form.

THE DEPONENT: I do not.

MR. THERIOT: And let me just say, Counsel, for the record, I haven't seen that form in the production. If it wasn't produced, I'm going to specifically ask for it, but with the caveat that I understand you've produced a lot of documents and I may have missed it. So I just want to reserve that as a request, if, when I go back and look for it again, I'm not able to find it.

MR. CRISALLI: Okay.

**Q. (By Mr. Theriot) All right. On page 8 of Exhibit 8, the last full paragraph before Option 3 says**



Electronically signed by Jana Mackelprang (001-409-517-3774) 5c7111a3-6b4c-4267-8d1e-db7b405b3ae7

**that "Marta mentioned the possibility that OIC might create its own materials informing consumers about abortion resources available to them."**

**Did the OIC ever create its own materials and inform consumers about abortion resources available to them?**

MR. CRISALLI: Object to form.

THE DEPONENT: Not as part of a form filing.

**Q. (By Mr. Theriot) What do you mean by "not as part of a form filing"?**

A. The OIC did not create any materials as described for a carrier to include in a form filing.

**Q. Okay. Did you create any materials that could be accessed by consumers regarding abortion resources available to them?**

A. Outside of my division, I do not know.

**Q. And as I understand your testimony, your division did not create those materials?**

A. No.

**Q. That was a poor question. Let me rephrase it.**

**Did your division create those materials?**

A. No.

**Q. On page 8 of Exhibit 8, there's a**



Electronically signed by Jana Mackelprang (001-409-517-3774) 5c7111a3-6b4c-4267-8d1e-db7b405b3ae7

**reference in the middle to WAC 284.43-5020. Do you see that?**
A. Yes.
**Q. In subsection (1), it states, "Enrollee access to all basic health plan services is not impaired in any way."**
**What does "not impaired in any way" mean?**
A. It means that there are no barriers to access those services for an enrollee.
**Q. Are there any factors that you consider when assessing whether there are any barriers to accessing those services?**
A. If a plan refused to cover a service, that would be a barrier.
**Q. Are you aware of any other barriers that you've seen in plans that could be -- could satisfy or could be an impairment to health plan services?**
A. Not having a single provider available to provide the service.
**Q. Any others that would be a barrier, as that term is used, in which it would be an impairment to health plan services?**
A. I would want to look at WAC 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 (3) for more information.
**Q. I can make that happen.**



Electronically signed by Jana Mackelprang (001-409-517-3774) 5c7111a3-6b4c-4267-8d1e-db7b405b3ae7

**Okay. I have put Exhibit 6, Washington Administrative Code 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, in the chat. Do you see that?**

A. I do. Thank you.

**Q. Okay. So other than the ones we've already discussed, are you aware of any other barriers that would be an impairment to basic health plan services as that is described in 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?**

A. Not covering it, not listing that it was not covered, not having a provider available to deliver the service.

**Q. Okay. Who makes the assessment as to whether something -- as to whether a plan does not impair health plan services in any way?**

MR. CRISALLI: Object to form.

THE DEPONENT: That is made by the staff in my division who review health plans.

**Q. (By Mr. Theriot) Okay. And other than the WAC, is there anything else that would guide them in making that determination?**

MR. CRISALLI: Object to form.

MR. THERIOT: Yes, that's a good objection.

**Q. (By Mr. Theriot) Other than WAC 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, is there anything else that would guide**


Electronically signed by Jana Mackelprang (001-409-517-3774) 5c7111a3-6b4c-4267-8d1e-db7b405b3ae7

**them in making that determination?**

MR. CRISALLI: Object to form. Also asked and answered. We've had a witness testify to this whole process.

THE DEPONENT: They would look to other statutes and WACs as to all of the services required.

**Q. (By Mr. Theriot) Okay. What other statutes and WACs are you referring to?**

MR. CRISALLI: Form. Calls for speculation and a legal conclusion. Sorry.

THE DEPONENT: The essential health benefits, for instance.

**Q. (By Mr. Theriot) And those are found in statute or in the administrative code?**

A. Administrative code.

**Q. I'm at a decent stopping point. Do you want to take a break now or push through to lunch?**

A. A break would be nice.

**Q. Okay. How long do you need, Ms. Nollette?**

A. Five minutes.

**Q. Five minutes. We'll go off the record and come back -- we'll make it at 11:20 Pacific time.**

A. Thank you.

///



Electronically signed by Jana Mackelprang (001-409-517-3774) 5c7111a3-6b4c-4267-8d1e-db7b405b3ae7

(A recess was taken 11:14 a.m. to 11:23 a.m. PST.)

**Q. (By Mr. Theriot) Ms. Nollette, you understand you're still under oath?**

A. Yes.

**Q. I've placed in the chat Exhibit 2, 48.43.005. Would you please open that up and review it?**

A. Okay. I'm familiar with this WAC.

**Q. Okay.**

MR. CRISALLI: Did you say WAC?

MR. THERIOT: Did I say WAC? That's not what I meant.

THE DEPONENT: I'm familiar with this statute.

**Q. (By Mr. Theriot) Great. I wasn't even paying attention. Okay.**

**I believe that you testified earlier that you're responsible -- as deputy insurance commissioner, you manage rates, forms, and provider networks for all fully insured insurance products. And I believe that you said that fully insured insurance product is defined in 48, in Article 48. Is it defined in the statute that's marked as Exhibit 2?**

A. I don't think so.



Electronically signed by Jana Mackelprang (001-409-517-3774) 5c7111a3-6b4c-4267-8d1e-db7b405b3ae7

**Q. Okay. So it would be defined in a different statute?**

A. Title 48, in its entirety, defines what the fully insured market is.

**Q. Okay. I see.**

**So the definitions in Exhibit 2 that say, for instance, "board," and there's a definition of the board, there's no -- excuse me -- there's no definition of "fully insured insurance product" in a succinct way?**

A. No.

**Q. All right. Thank you for clarifying that. I was a little confused.**

**Do you agree that "health plan," as defined in Exhibit 2, is the meaning of health plan as that's used in SB 6219?**

MR. CRISALLI: Object. Calls for a legal conclusion.

THE DEPONENT: Yes.

**Q. (By Mr. Theriot) And if you look at subsection (31) of Exhibit 2, the 005 statute -- I'll give you a second to scroll down to that.**

A. Okay.

**Q. It says that a "'health plan' or 'health benefit plan' means any policy, contract, or agreement offered by a health carrier to provide, arrange,**



Electronically signed by Jana Mackelprang (001-409-517-3774) 5c7111a3-6b4c-4267-8d1e-db7b405b3ae7

**reimburse, or pay for health care services except the following." And it lists several types of insurance after that as part of sub subparagraphs.**

**Is there any overarching reason these types of plans are not included in the definition of "health plan" or "health benefit plan"?**

MR. CRISALLI: Objection. Calls for speculation and legal conclusion.

THE DEPONENT: So the products listed under 31, some of which are not insurance, are listed there to clarify that they are not subject to the requirements of a health plan as described throughout Title 48.

**Q. (By Mr. Theriot) Okay. Are they related in any way other than they're not considered part of the definition for a health plan?**

MR. CRISALLI: The same objection.

THE DEPONENT: Not really.

**Q. (By Mr. Theriot) Okay. Could some of these plans cover health care services?**

MR. CRISALLI: Object. Calls for speculation and a legal conclusion. I think, also, I'm a little concerned with the term "could" because I think that's an improper question with respect to requiring such a legal analysis. I think the better



Electronically signed by Jana Mackelprang (001-409-517-3774) 5c7111a3-6b4c-4267-8d1e-db7b405b3ae7

question is: Do any of them?

MR. THERIOT: Well, I think there's nothing wrong with the question. I'm glad to ask both, but we can start with "do they?" And I can rephrase my question to that, but I think I'm also entitled to the answer of "could they?" And I can rephrase that question, maybe make it a little easier.

**Q. (By Mr. Theriot) Do some of these plans listed in 31 that are not considered part of the definition for "health plan" or "health benefit plan" cover some health care services?**

MR. CRISALLI: The same objection. Also -- excuse me -- I note for the record that some of these are outside the regulatory authority of the Defendants in this matter.

THE DEPONENT: Yes.

MR. THERIOT: Okay. So let's start with -- well, first I'd like to object to the testimony of counsel, first of all. Secondly, let's start with the plans that are within the set of those plans that are regulated by the Office of the Insurance Commissioner.

**Q. (By Mr. Theriot) Which of the plans listed in 31 are regulated by the Office of the Insurance Commissioner.**


Electronically signed by Jana Mackelprang (001-409-517-3774) 5c7111a3-6b4c-4267-8d1e-db7b405b3ae7

MR. CRISALLI: Objection. Asked and answered.

THE DEPONENT: "(a) Long-term care insurance governed by chapter 48.84 or 48.83 RCW;

"(b) Medicare supplemental health insurance governed by chapter 48.66 RCW;

"Coverage supplemental to the coverage" -- "(c) Coverage supplemental to the coverage under chapter 55, Title 10, United States Code;

"(d) Limited health care services offered by limited health care service contractors in accordance with RCW 48.44.035.

"(e) Disability income.

"(f) Coverage incidental to a property/casualty liability insurance policy such as automobile personal injury protection coverage and homeowner guest medical;

"(h) Accident only coverage.

"(i) Specified disease or illness-triggered fixed payment insurance, hospital confinement fixed payment insurance, or other fixed payment insurance offered as an independent, noncoordinated benefit;

"(k) Dental only and vision only coverage.



Electronically signed by Jana Mackelprang (001-409-517-3774) 5c7111a3-6b4c-4267-8d1e-db7b405b3ae7

"(l) Plans deemed by the insurance commissioner to have a short-term limited purpose or duration, or to be a student-only plan that is guaranteed renewable while the covered person is enrolled as a regular full-time undergraduate or graduate student at an accredited higher education institution, after a written request for such classification by the carrier and subsequent written approval by the insurance commissioner.

"(m) Civilian health and medical program for the veterans affairs administration (CHAMPVA; and

"(n) Stand-alone prescription drug coverage that exclusively supplements Medicare part D coverage provided through an employer group waiver plan under Federal Social Security Act regulation 42 C.F.R. Section 423.458(c)."

**Q. (By Mr. Theriot) Okay. Thank you.**

**So unless my calculations are wrong, the two that -- there are only two that aren't regulated by the OIC, and those are (g), "workers' compensation coverage"; and (j), "employer-sponsored self-funded health plans"; is that correct?**

A. Yes.

**Q. Thank you.**

**Okay. So let's start with (31)(a),**



Electronically signed by Jana Mackelprang (001-409-517-3774) 5c7111a3-6b4c-4267-8d1e-db7b405b3ae7

**"Long-term care insurance governed by chapter 48.84 or 48.83 RCW."**

**Could or do -- so let's start with do -- do those plans pay for health care services?**

MR. CRISALLI: Object to form.

THE DEPONENT: No.

**Q. (By Mr. Theriot) What do they pay for?**

MR. CRISALLI: Objection. Beyond the scope.

THE DEPONENT: Long-term care insurance policies pay out amounts based upon the terms of the contract when the older can no longer do certain activities of daily living. So the money is based upon the terms of the contract. It could be a fixed amount, a daily amount, something like that.

**Q. (By Mr. Theriot) So as I understand your testimony, they don't reimburse specific health care services?**

A. They do not.

**Q. But those moneys could be used to pay for health care services?**

A. In some policies, yes. In some policies, the money can be used for anything.

**Q. Okay. Let's move to subsection (b), "Medicare supplemental health care insurance governed**



Electronically signed by Jana Mackelprang (001-409-517-3774) 5c7111a3-6b4c-4267-8d1e-db7b405b3ae7

**by chapter 48.66." Do these plans or could these -- no, I'm sorry -- do these plans cover health care services?**

MR. CRISALLI: Object to form. Beyond the scope.

THE DEPONENT: So these are supplemental plans. The base plan is Medicare. That's where the benefits are. So these are plans that supplement the coverage, but they do not add benefits.

**Q. (By Mr. Theriot) So they do not add benefits?**

A. No.

**Q. But they could be used to pay for health care services to supplement, as a supplement to what Medicare covers, correct?**

MR. CRISALLI: Object to form. Beyond the scope.

THE DEPONENT: Yes.

**Q. (By Mr. Theriot) Do those supplemental health insurance plans cover contraception?**

MR. CRISALLI: Object to form. Beyond the scope.

THE DEPONENT: As a supplemental plan, they cover whatever is in the base plan of Medicare.

**Q. (By Mr. Theriot) So if the base plan of**


Electronically signed by Jana Mackelprang (001-409-517-3774) 5c7111a3-6b4c-4267-8d1e-db7b405b3ae7

**Medicare covers contraception, then it would cover contraception?**

MR. CRISALLI: Object to form. Beyond the scope. Calls for a legal conclusion.

THE DEPONENT: Yes.

**Q. (By Mr. Theriot) If the Medicare base plan covers maternity, then the supplemental health insurance plan could cover maternity, correct?**

MR. CRISALLI: Object to form. Beyond the scope.

THE DEPONENT: Yes.

**Q. (By Mr. Theriot) Let's move to 31(c), "Coverage supplemental to the coverage provided under chapter 55, Title 10, United States Code." What kind of health care services does this supplemental coverage cover?**

MR. CRISALLI: Object to form. Beyond the scope.

THE DEPONENT: Chapter 55, Title 10, USC, refers to TRICARE, which is coverage related to the VA. So this is another supplemental coverage option. So the coverage would be supplemental to the base product that we don't regulate.

**Q. (By Mr. Theriot) Okay. So it would be supplemental to -- it would provide coverage for health**



Electronically signed by Jana Mackelprang (001-409-517-3774) 5c7111a3-6b4c-4267-8d1e-db7b405b3ae7

**services -- strike that.**

**So the supplemental coverage would provide health services for -- man, I'm having trouble articulating that. Let me strike that too.**

**The supplemental plan would cover any health services that the TRICARE government plan covers?**

MR. CRISALLI: Objection. Outside the scope. Calls for a legal conclusion.

THE DEPONENT: As a supplemental plan, it does not expand that coverage. It provides additional financial insurance for those existing benefits.

**Q. (By Mr. Theriot) Okay. And so could the existing -- or do the existing TRICARE benefits include contraception?**

MR. CRISALLI: Objection. Beyond the scope.

THE DEPONENT: I do not know.

**Q. (By Mr. Theriot) Do the existing TRICARE benefits cover maternity?**

MR. CRISALLI: Objection. Beyond the scope.

THE DEPONENT: I do not know.

**Q. (By Mr. Theriot) Let's move to subsection (d), "Limited health care services offered by limited**



Electronically signed by Jana Mackelprang (001-409-517-3774) 5c7111a3-6b4c-4267-8d1e-db7b405b3ae7

**health care service contractors in accordance with RCW 48.44.035."**

**Which types of health care services is subsection (d) referring to?**

MR. CRISALLI: Objection. Calls for a legal conclusion.

**Q. (By Mr. Theriot) That's a bad question. Let me rephrase it.**

**What types of health care services does the plan in subsection 31(d) cover?**

MR. CRISALLI: Objection. Calls for a legal conclusion and speculation, beyond the scope.

THE DEPONENT: A dental-only plan, a vision-only plan.

MR. THERIOT: I am going to put -- I'm going to put Statute 48.44.035 in the chat as Exhibit 9.

(Exhibit 9 was remotely introduced and provided electronically to the reporter.)

**Q. (By Mr. Theriot) Do you see that, Ms. Nollette?**

A. Yes.

**Q. Would you open that up and just briefly familiarize yourself with it?**

A. Okay.



Electronically signed by Jana Mackelprang (001-409-517-3774) 5c7111a3-6b4c-4267-8d1e-db7b405b3ae7

**Q. In the first paragraph, subsection (1), it says, towards the end of that paragraph, "but does not include hospital, medical, surgical, emergency, or out-of-area services except as those services are provided incidentally to the limited health services set forth in this subsection."**

**What does "services are provided incidentally to the limited health services" include?**

MR. CRISALLI: Objection. Beyond the scope. Calls for a legal conclusion.

THE DEPONENT: For a dental-only plan?

**Q. (By Mr. Theriot) Yes.**

A. I'm using that as an example.

**Q. Yes. I'm sorry, I interrupted you.**

A. An incidental service as described in the section you were reading could be a prescription for an antibiotic at an out-of-network pharmacy.

**Q. Okay. For a pharmaceutical service, what does "incidentally to the limited health services set forth" mean?**

MR. CRISALLI: Objection. Beyond the scope, calls for a legal conclusion, and misstates the testimony.

THE DEPONENT: I am not familiar with a limited health care service pharmaceutical services



Electronically signed by Jana Mackelprang (001-409-517-3774) 5c7111a3-6b4c-4267-8d1e-db7b405b3ae7

plan having ever been requested or offered.

**Q. (By Mr. Theriot) Are you familiar with any of the other plans listed in subsection (1) besides dental care?**

A. Vision care.

**Q. Vision care. Okay. Any others besides vision care?**

A. No.

**Q. Is there any individual that would be familiar with pharmaceutical services and what plans are incidental to those --**

MR. CRISALLI: Objection. Misstates --

**Q. (By Mr. Theriot) I'm sorry.**

**Are there pharmaceutical services in which services are provided incidental to those?**

MR. CRISALLI: Hold on. Objection. Beyond the scope. Thank you. Speculation. Calls for a legal conclusion.

She testified it doesn't exist.

MR. THERIOT: I object to your characterization of her testimony. That's not what she said. She said she's never seen one.

THE DEPONENT: There is not currently or within the entire time that I have been deputy commissioner a pharmaceutical services limited health



Electronically signed by Jana Mackelprang (001-409-517-3774) 5c7111a3-6b4c-4267-8d1e-db7b405b3ae7

care service plan.

**Q. (By Mr. Theriot) Okay. So you don't know what incidentally -- what "services are provided incidentally to those limited health services" might be?**

A. That is --

MR. CRISALLI: Objection. Speculation. Calls for a legal conclusion. Beyond the scope.

**Q. (By Mr. Theriot) Can you repeat your answer, please?**

A. That is correct.

**Q. All right. Let's move to subsection (31)(e) of Exhibit 2, "Disability Income."**

**What health care services does a disability income plan -- well, strike that.**

**Do disability income plans cover any health care services?**

MR. CRISALLI: Objection. Calls for speculation. Legal conclusion. Misstates the law.

THE DEPONENT: Disability income insurance products do not cover health care services.

**Q. (By Mr. Theriot) Okay.**

A. They are income replacement products.

**Q. Subsection (f) -- and I think I can get through this before we break for lunch. Is that okay**



Electronically signed by Jana Mackelprang (001-409-517-3774) 5c7111a3-6b4c-4267-8d1e-db7b405b3ae7

**with everybody? It will probably take me 10 to 15 minutes, if I don't lose my place.**

**Subsection (f) of Exhibit 2, subsection (31)(f) of Exhibit 2 says, "Coverage incidental to a property/casualty liability insurance policy such as automobile personal injury protection coverage and homeowner guest medical."**

**Do the plans referenced in subsection (31)(f) cover health care services?**

MR. CRISALLI: Objection. Beyond the scope. Calls for a legal conclusion. Speculation.

THE DEPONENT: The plans cover costs associated with health care services, but not the health care services themselves.

**Q. (By Mr. Theriot) Can you give me an example of that?**

MR. CRISALLI: Objection. Calls for speculation and a legal conclusion. Also beyond the scope.

THE DEPONENT: If I'm in a car accident and my leg is broken, my personal injury protection coverage will allow me to submit a claim for reimbursement for costs incurred in treating the leg.

**Q. (By Mr. Theriot) And those costs are limited to health care services that are needed as a**


Electronically signed by Jana Mackelprang (001-409-517-3774) 5c7111a3-6b4c-4267-8d1e-db7b405b3ae7

**result of the accident?**

MR. CRISALLI: The same objection. Also vague.

THE DEPONENT: It would depend on the specific terms of the personal injury protection language in the personal passenger auto policy. For instance, it could include time lost at work.

**Q. (By Mr. Theriot) Could it include reimbursement for medical services resulting from the birth of a child?**

MR. CRISALLI: Objection. The same objection as before. I fail to see the relevance of how an auto insurance policy relates to this case.

THE DEPONENT: If an auto accident was somehow determined to be the cause of the birth of the child, I suppose those costs could be submitted for reimbursement under the terms of the personal injury protection language.

**Q. (By Mr. Theriot) Thank you. Subsection (g) -- wait, that's the one that you don't regulate, right?**

A. That is correct.

**Q. All right. So we're going to skip subsection (g) and go to "accident only coverage," subsection H of Exhibit 2, so subsection 31(h).**



Electronically signed by Jana Mackelprang (001-409-517-3774) 5c7111a3-6b4c-4267-8d1e-db7b405b3ae7

**Do the policies or the types of policies referenced in 31(h) cover health care services?**

A. No.

MR. CRISALLI: Objection. Calls for a legal conclusion. Speculation. Beyond the scope.

**Q. (By Mr. Theriot) What do the policies referenced in subsection 31(h) cover?**

MR. CRISALLI: The same objection.

THE DEPONENT: Costs of accidents.

Let me go back to my prior answer. An accident-only coverage policy could allow somebody to ask to be reimbursed for health care costs due to an accident.

**Q. (By Mr. Theriot) Okay. Could those health care services covered by accident-only coverage cover the birth of a child if the birth of a child is the result of the accident?**

MR. CRISALLI: The same objection.

THE DEPONENT: I would have to look at the specific language of the insurance policy to answer that accurately.

**Q. (By Mr. Theriot) So it would depend upon the insurance policy?**

MR. CRISALLI: The same objection.

THE DEPONENT: I would have to understand


Electronically signed by Jana Mackelprang (001-409-517-3774) 5c7111a3-6b4c-4267-8d1e-db7b405b3ae7

better how the accident -- there was causation, that the accident caused it.

**Q. (By Mr. Theriot) Let's move to subsection (i), (31)(i) of Exhibit 2, "Specified disease and illness-triggered fixed payment insurance, hospital confinement fixed payment insurance, or other fixed payment insurance offered as an independent, noncoordinated benefit."**

**Could the -- or do the policies referenced in (31)(i) cover health care services?**

MR. CRISALLI: The same objection as before.

THE DEPONENT: No.

**Q. (By Mr. Theriot) What do the plans in subsection (31)(i) cover?**

MR. CRISALLI: The same objections.

THE DEPONENT: Any fixed payment upon something happening, a specific disease, a specific illness, being hospitalized for any reason.

**Q. (By Mr. Theriot) Okay. So I understand, there's not a reimbursement of medical expenses; it's just that if you're hospitalized for a particular reason, you get a certain chunk of money? It goes directly to you?**

MR. CRISALLI: Objection. Compound,


Electronically signed by Jana Mackelprang (001-409-517-3774) 5c7111a3-6b4c-4267-8d1e-db7b405b3ae7

speculation, and legal conclusion.

THE DEPONENT: It's not hospitalized for a reason. It's hospitalized.

**Q. (By Mr. Theriot) Okay. So can you give me an example of how that would work in a particular situation?**

MR. CRISALLI: The same objection. Speculation.

THE DEPONENT: Generically?

**Q. (By Mr. Theriot) Yes.**

A. The requirement of the policy could be that you are admitted to the hospital and you're in the hospital for 48 hours. At 48 hours, you get $1,000.

**Q. That helps. Thank you.**

**Let's move to subsection (l), (31)(l) of Exhibit 2, "Plans deemed by the insurance commissioner to have a short-term limited purpose or duration, or to be a student-only plan that is guaranteed renewable while the covered person is enrolled as a regular full-time undergraduate or graduate student at an accredited higher education institution, after a written request for such classification by the carrier and subsequent written approval by the insurance commissioner."**

**Do the plans -- do the plans referenced**



Electronically signed by Jana Mackelprang (001-409-517-3774) 5c7111a3-6b4c-4267-8d1e-db7b405b3ae7

**in subsection (31)(l) only apply to student-only plans?**

MR. CRISALLI: Object. Speculation. Calls for a legal conclusion. Beyond the scope.

THE DEPONENT: The student-only plans referenced under (l) are now regulated under the Affordable Care Act as individual market health plans and are no longer considered excepted from the health plan definition.

**Q. (By Mr. Theriot) Okay. But regarding the first part of that sentence, "Plans deemed by the insurance commissioner to have a short-term limited purpose or duration," could those types of plans that aren't student-only plans, could they cover health care services?**

MR. CRISALLI: Objection. Speculation. Calls for a legal conclusion. Beyond the scope.

THE DEPONENT: If a carrier chose to offer a short-term, limited purpose or duration plan, they would have to follow the requirements of the Washington Administrative Code rule that provides further requirements, and such a plan could include a maternity benefit for the three-month duration of the plan.

**Q. (By Mr. Theriot) Okay. Is that plan what you referred to earlier in your conversation with**



Electronically signed by Jana Mackelprang (001-409-517-3774) 5c7111a3-6b4c-4267-8d1e-db7b405b3ae7

**Ms. Tocco as a short-term, limited duration plan?**
A. Yes.
**Q. And is that sometimes referred to by the acronym STLD?**
A. Yes.
**Q. Let's move to subsection (31)(m), "Civilian health and medical program for the veterans affairs administration," what you referred to as CHAMPVA?**
A. Yes.
**Q. Do the plans referenced in subsection (31)(m) cover health care services?**
MR. CRISALLI: Objection. Speculation. Calls for a legal conclusion. Beyond the scope.
THE DEPONENT: If we had one in the state, it would have the benefits as required under the Veterans Administration. We do not regulate what those benefits are, and I do not know what those benefits are.
**Q. (By Mr. Theriot) Okay. So what aspect of CHAMPVA would you regulate if you had one of those plans in the state?**
MR. CRISALLI: Objection. Calls for speculation. Legal conclusion. Beyond the scope.
THE DEPONENT: There are requirements as


Electronically signed by Jana Mackelprang (001-409-517-3774) 5c7111a3-6b4c-4267-8d1e-db7b405b3ae7

to the entity that the carrier contracts with. It's not an employer group, but it's an entity that has to have certain papers defining its existence, kind of like documents of incorporation. So we would review those documents of incorporation and that piece of it met our requirements. And we would look to make sure that it met any other requirements under CHAMPVA for this civilian and health and medical program, if one were to be filed with us.

**Q. (By Mr. Theriot) All right. Let's go to the last one, subsection (31)(n) of Exhibit 2. It says, "Stand-alone prescription drug coverage that exclusively supplements Medicare part D coverage provided through an employer group waiver plan under Federal Social Security Act regulation 42 C.F.R. Section 423.458(c)."**

**What do the medical -- what medical services or, I guess, drugs are covered by the plan referenced in (31)(n)?**

A. I do not know what is on the drug list for Medicare part D.

**Q. But the supplemental -- the supplemental plan referenced in (31)(n) would cover whatever is covered in supplement -- in Medicare part D?**

MR. CRISALLI: The same objection as



Electronically signed by Jana Mackelprang (001-409-517-3774) 5c7111a3-6b4c-4267-8d1e-db7b405b3ae7

before.

THE DEPONENT: It would -- it doesn't expand the coverage at all. It merely provides additional financial insurance protections, like all the supplemental plans.

**Q. (By Mr. Theriot) Okay. So it would be similar to the other supplemental plans that we discussed?**

A. Yes.

MR. CRISALLI: The same objection.

**Q. (By Mr. Theriot) All right. One more question before we take a break. I apologize, I'm going backwards a little bit.**

**I neglected to ask you: In subsection (31)(l) of Exhibit 2, "Plans deemed by the insurance commissioner to have a short-term limited purpose or duration," the coverages in those plans do include contraception?**

MR. CRISALLI: Objection. Calls for a legal conclusion. Speculation. Beyond the scope.

THE DEPONENT: There is not currently such a plan on the market.

MR. THERIOT: Okay. I think we're ready to take a break. So this will be our lunch break. Yesterday we took 30 minutes. Let me see. Let's talk



Electronically signed by Jana Mackelprang (001-409-517-3774) 5c7111a3-6b4c-4267-8d1e-db7b405b3ae7

about how much time I have. Off the record.

(The luncheon recess was taken from 12:08 p.m. to 12:43 p.m. PST.)

**Q. (By Mr. Theriot) Ms. Nollette, you understand you're still under oath?**

A. Yes.

**Q. Let me make sure I know where I'm at here.**

**I've put Exhibit 4, 48.43.065, in the chat. Would you pull that up, please, Ms. Nollette.**

A. Okay.

**Q. Oh, it was already in there.**

**So I just have a couple questions I want to ask you, some follow-up to what I asked yesterday.**

**If you'll look at subsection (2)(a) and (b) of Exhibit 4, how does the exemption for religious health care protect providers and facilities in subsection (2)(a) and (2)(b)? We're not talking about carriers, just about medical providers and medical facilities.**

MR. CRISALLI: Objection. Calls for speculation. Legal conclusion.

THE DEPONENT: The Office of the Insurance Commissioner doesn't regulate health care facilities or providers. So we don't have any


Electronically signed by Jana Mackelprang (001-409-517-3774) 5c7111a3-6b4c-4267-8d1e-db7b405b3ae7

jurisdiction in that area.
**Q. (By Mr. Theriot) Okay. Does -- so you don't have any opinion about how that protects -- whether or not that requires medical -- or exempts -- excuse me. Do you have an opinion -- let me start over again.**
**Do you know whether subsection (2)(a) protects health care providers and health care facilities from being required to purchase or pay for insurance policies that cover items that they object to?**
MR. CRISALLI: Apologies. Objection. Vague.
THE DEPONENT: I apologize, could I hear that again?
**Q. (By Mr. Theriot) Yes. So does the provision in (2)(a) protect health care providers and health care -- and religiously sponsored health carriers from -- I'm sorry, that's wrong.**
**Does the provision in (2)(a) protect health providers and health care facilities who have religious convictions against certain -- providing certain services like abortion from having to pay for health care coverage that covers abortion?**
MR. CRISALLI: Objection. Compound,


Electronically signed by Jana Mackelprang (001-409-517-3774) 5c7111a3-6b4c-4267-8d1e-db7b405b3ae7

vague, and calls for speculation. The statute speaks for itself.

THE DEPONENT: I think that the statute speaks for itself.

MR. THERIOT: Well, once again, I'm going to object to counsel coaching the witness.

**Q. (By Mr. Theriot) What provisions of Exhibit 4 protect religious health care providers and religious health care facilities from having to pay for an objectionable health care service like abortion and contraception?**

MR. CRISALLI: Objection. Foundation vague. Calls for a legal conclusion.

THE DEPONENT: I apologize, can I hear the question again?

MR. THERIOT: Yes. Can you repeat that question for me, Jana?

(Whereupon, the record was read back by the court reporter.)

MR. CRISALLI: The same objection.

THE DEPONENT: Subsection (2) and subsection (3) do.

**Q. (By Mr. Theriot) If you look at subsection (2)(c), it says, "The insurance commissioner shall establish by rule a mechanism or mechanisms to**



Electronically signed by Jana Mackelprang (001-409-517-3774) 5c7111a3-6b4c-4267-8d1e-db7b405b3ae7

**recognize the right to exercise conscience while ensuring enrollees timely access to services and to assure prompt payment to service providers."**
**Has the insurance commissioner established such a rule?**
A. I think so. I don't know the WAC off the top of my head, the number.
**Q. Okay. But it's your understanding that there is a Washington Administrative Code provision that satisfies that?**
A. Yes.
**Q. Okay. I'm going to -- can you -- so you don't know what number of that WAC is. Can you describe it?**
A. Well, it's possible I'm thinking of two WACs, one of them that goes a little bit further on the conscience clause and one of them that is more about implementing the equity fee.
(Exhibit 10 was remotely introduced and provided electronically to the reporter.)
**Q. (By Mr. Theriot) I've placed in the chat what's been marked as Exhibit 10, a Providence press release. Can you open that and review it, please?**
A. I have opened it.
**Q. Paragraph four says, "The Office of the**



Electronically signed by Jana Mackelprang (001-409-517-3774) 5c7111a3-6b4c-4267-8d1e-db7b405b3ae7

**Insurance Commissioner is requiring Providence to inform enrollees who need abortion services not covered by their plan that they can access the services through the Washington Department of Health Family Planning Program by calling 1-800-525-0127."**

**Do you see that?**

A. Yes, I do.

**Q. Okay. So the enrollees who call that number, what information are they provided?**

MR. CRISALLI: Objection. Beyond the scope and calls for speculation.

THE DEPONENT: They are provided with information about how to access abortion services.

**Q. (By Mr. Theriot) And who pays for those abortion services?**

MR. CRISALLI: The same objection.

THE DEPONENT: The State of Washington.

**Q. (By Mr. Theriot) Are -- is there a process or a policy in place that provides for that ability to get the State of Washington to pay for the abortion services?**

MR. CRISALLI: The same objection.

THE DEPONENT: I'm sorry, could you repeat the question?

MR. THERIOT: Could you read it back


Electronically signed by Jana Mackelprang (001-409-517-3774) 5c7111a3-6b4c-4267-8d1e-db7b405b3ae7

please, Jana.

(Whereupon, the record was read back by the court reporter.)

MR. CRISALLI: The same objection.

THE DEPONENT: You're asking me to answer the question as of today?

**Q. (By Mr. Theriot) Sure, let's start with today.**

A. So today, a carrier offering such a plan, their rate filing would have provided documentation that would constitute a health equity fee that they would pay through the Washington State Department of Insurance that we would then put in the State General Fund that would be used to fund the services.

**Q. And what was the status -- was that in place in 2019 when this press release in Exhibit 10 was released?**

MR. CRISALLI: The same objection.

THE DEPONENT: No.

**Q. (By Mr. Theriot) When did that fee -- when was that fee put into place?**

A. I would have to look at the date when the statute with the health equity fee passed. It was after this.

**Q. So -- I think I can ask this question**


Electronically signed by Jana Mackelprang (001-409-517-3774) 5c7111a3-6b4c-4267-8d1e-db7b405b3ae7

**before we talk about that statute. Did any carrier who did not provide abortion coverage in their plan at the time of this press release, were they able to refer people to the Department of Health so that they could obtain abortion services?**

MR. CRISALLI: Objection. Vague. Calls for speculation.

THE DEPONENT: I believe that some carriers chose to use -- who were not -- I'm not saying that the carrier was religious, but they were selling to a company that didn't want to cover an abortion benefit. They used a workaround process where the benefit was not a covered benefit in the plan, but information was provided in the plan, and the carrier provided access and paid for it.

**Q. (By Mr. Theriot) Okay. And as of today, can any carrier, whether it's religious or not, refer enrollees to the Department of Health for provision of abortion services?**

MR. CRISALLI: Object. Beyond the scope. Speculation.

THE DEPONENT: Only a carrier who was refusing to provide abortion under the conscience clause. And I'm not sure if this would be the process right now, the process in this press release from


Electronically signed by Jana Mackelprang (001-409-517-3774) 5c7111a3-6b4c-4267-8d1e-db7b405b3ae7

several years ago.
**Q. (By Mr. Theriot) Okay. So what's the process now?**
MR. CRISALLI: Object to form. Beyond the scope.
THE DEPONENT: It would be detailed in the actual form filing as approved by our office. I believe there is a phone number. There may also be a website.
**Q. (By Mr. Theriot) All right. Before we leave 065, do you see the reference to the Commissioner creating a rule in (3)(c)?**
A. Yes.
**Q. Was that rule ever created?**
A. I don't recall.
**Q. I put Exhibit 5, 48.43.725, in the chat. Do you see that?**
A. Yes, I do.
**Q. Could you please open it up and familiarize yourself with it, please?**
A. Yes.
**Q. So what was your understanding of the reason why this statute was put into place?**
MR. CRISALLI: Object. Speculation. Calls for a legal conclusion.


Electronically signed by Jana Mackelprang (001-409-517-3774) 5c7111a3-6b4c-4267-8d1e-db7b405b3ae7

THE DEPONENT: To mitigate inequality in the health insurance market.

**Q. (By Mr. Theriot) And it only applies to carriers that exclude a mandated health benefit?**

MR. CRISALLI: Calls for a legal conclusion.

THE DEPONENT: Yes.

**Q. (By Mr. Theriot) Do you know how much the fee is?**

A. I do not.

**Q. Is that assessed differently for each carrier and each plan?**

MR. CRISALLI: Objection. Calls for a legal conclusion.

THE DEPONENT: It's assessed at the plan level. So each plan would have a rate filing, except in the small group market where there's one rate filing for all the plans in the market because it is a single-risk pool. And so it is calculated at the rate filing level for a carrier.

**Q. (By Mr. Theriot) Can you explain a bit what "at the rate filing level" means?**

A. Yes. So a health plan generally covers a group of people that is a defined group. That is the risk pool for the plan. And so when calculating an


Electronically signed by Jana Mackelprang (001-409-517-3774) 5c7111a3-6b4c-4267-8d1e-db7b405b3ae7

equity fee, the carrier, as part of their rate filing, must include information about the cost of the administration and the provision of that benefit, if they were to provide it, based upon the size of the risk pool and the likelihood of that size of a risk pool needing that particular benefit.

**Q. So the carrier makes that calculation or an OIC actuary does?**

MR. CRISALLI: Calls for a legal conclusion. Go ahead.

THE DEPONENT: The carrier is required to provide it in the filing. The OIC actuary reviews what's provided to make sure it meets requirements.

**Q. (By Mr. Theriot) Subsection (2)(c) of Exhibit 5 says that "the commissioner may waive the fee assessed under subsection (2) if he or she finds that the carrier excluding a mandated benefit for a health plan or student health plan provides health plan enrollees or student health plan enrollees alternative access to all" included "mandated benefits."**

**Do you see that?**

A. Yes, I do.

MR. CRISALLI: Objection. Misstates the statute. I believe you said "all included," which should be "all excluded benefits."



Electronically signed by Jana Mackelprang (001-409-517-3774) 5c7111a3-6b4c-4267-8d1e-db7b405b3ae7

MR. THERIOT: Oh.

**Q. (By Mr. Theriot) As it reads there in (2)(c), have there been any requests for waivers pursuant to this provision?**

A. No, the Commissioner has not been requested to waive the fee.

**Q. What factors would be considered when determining whether to waive the fee outside of what's in (2)(c)?**

MR. CRISALLI: Objection. Calls for speculation.

This is an area I'm a little concerned about the testimony in that it basically is asking for a policy that doesn't yet exist and it's under oath and the testimony is the OIC. I don't want the witness to indicate what a policy will be that could later be held against the OIC.

**Q. (By Mr. Theriot) So is there a policy for determining how the waiver works in (2)(c) of Exhibit 5 -- no -- yes, Exhibit 5?**

A. There is no policy beyond the plain language of the statute at this time.

**Q. And the person who decides whether to grant a waiver is the Commissioner?**

A. Yes.


Electronically signed by Jana Mackelprang (001-409-517-3774) 5c7111a3-6b4c-4267-8d1e-db7b405b3ae7

**Q. Okay. I've placed what's previously been marked as Exhibit 3 into the chat. It's SB 6219. Could you open that up and look at it briefly?**

A. Okay.

**Q. I can show it to you, if you'd like, but I'll represent to you that in the interrogatories that you signed, you referred us to this provision, to Section 1 of 6219 for the interest of the State.**

**Are there any other interests besides those listed in Section 1 of Exhibit 3 that the State asserts justifies SB 6219?**

MR. CRISALLI: Objection to the extent it calls for speculation and is beyond the scope.

THE DEPONENT: All sections.

**Q. (By Mr. Theriot) I'm sorry?**

A. You asked if there were any other sections besides Section 1(1). Did you mean the sub (1) or -- I'm sorry, it's got highlighting on it, so it's hard --

**Q. I do have weird highlighting on it. That's my fault. I should have put one in there that was cleaner. Let me tell you what I'm referring to.**

**All right. So I mean "New Section, Section 1," beginning with line 4 on page 2. Are there any other interests in that section that the State**


Electronically signed by Jana Mackelprang (001-409-517-3774) 5c7111a3-6b4c-4267-8d1e-db7b405b3ae7

**relies upon to justify SB 6219?**

MR. CRISALLI: Objection. Vague. Calls for speculation.

And I apologize because I'm a little confused with the question myself. Are you asking only lines 5 and 6 at subsection (1), or are you saying all of Section 1 that starts on line 4 and extends into the next page?

MR. THERIOT: I'm asking for all of Section 1 that starts on line 4 and extends into the next page.

MR. CRISALLI: Thank you.

MR. THERIOT: And a little bit into the following page.

THE DEPONENT: Now I'm going to ask for the original question again. I'm sorry.

**Q. (By Mr. Theriot) Other than the -- are there any other interests besides those in that section we just referenced that justify -- that the State relies upon to justify SB 6219?**

MR. CRISALLI: The same objection.

THE DEPONENT: Not that I recall.

**Q. (By Mr. Theriot) Before SB 6219 was enacted, are you aware of any other efforts the OIC made to further the interests listed in Section 1 of SB**



Electronically signed by Jana Mackelprang (001-409-517-3774) 5c7111a3-6b4c-4267-8d1e-db7b405b3ae7

**6219?**

A. The OIC has always attempted to fully enforce all of the protections in Title 48.

**Q. Were there any specific actions taken by the OIC to further the interest in (4) on page -- it's page 2 of the exhibit, but page 1 of SB 6219? "Neither a woman's income level nor her type of insurance prevent her from having full access to a full range of reproductive health care, including contraception and abortion services."**

MR. CRISALLI: Objection. Vague.

THE DEPONENT: I don't -- I don't know what you're referring to.

**Q. (By Mr. Theriot) I'm asking you if there were any specific policies or actions taken by the OIC to further the interest that's listed there in (4) of Section 1 of Exhibit 3?**

MR. CRISALLI: The same objection.

THE DEPONENT: The OIC has always attempted to ensure that all people have full access to all covered benefits.

**Q. (By Mr. Theriot) So you're not aware of any specific program or policy that was put in place to further that interest?**

MR. CRISALLI: Object to form.



Electronically signed by Jana Mackelprang (001-409-517-3774) 5c7111a3-6b4c-4267-8d1e-db7b405b3ae7

THE DEPONENT: No.

**Q. (By Mr. Theriot) Okay. Are you aware of any specific policy or practice that was put into place by the OIC prior to SB 6219 to further the interests listed in sub (5) of that section in Exhibit 3?**

MR. CRISALLI: Object to form.

THE DEPONENT: No.

MR. THERIOT: All right. I think that's all I have.

THE DEPONENT: Thank you.

MR. CRISALLI: I have nothing at this time. We'll reserve signature.

(WHEREUPON, the deposition was concluded at 1:13 p.m. PST.)



Electronically signed by Jana Mackelprang (001-409-517-3774) 5c7111a3-6b4c-4267-8d1e-db7b405b3ae7

I have read the foregoing transcript of my testimony and have indicated the same by my signature.

_____________________________
MOLLY NOLLETTE

STATE OF _____________________

CITY OF _______________ COUNTY OF _____________________

Subscribed and sworn to before me by MOLLY NOLLETTE, on this ________________________, 2022.

My commission expires:________________.

____________________________
Notary Public

_____________________________
Address

Reporter: JM
Trial/hearing date: None



Electronically signed by Jana Mackelprang (001-409-517-3774) 5c7111a3-6b4c-4267-8d1e-db7b405b3ae7

CERTIFICATE

STATE OF COLORADO )
)ss.
CITY AND COUNTY OF DENVER )

I, Jana Mackelprang, Certified Realtime Reporter, Registered Professional Reporter, and Notary Public for the State of Colorado, do hereby certify that previous to the commencement of the examination, the said MOLLY NOLLETTE was duly sworn by me to testify the truth in relation to the matters in controversy between the said parties.

I further certify that said deposition was taken in shorthand by me and was reduced to typewritten form by computer-aided transcription, that the foregoing is a true transcript of the questions asked, testimony given, and proceedings had.

I further certify that I am not an attorney nor counsel nor in any way connected with any attorney or counsel for any of the parties to said action or otherwise interested in its event.

I further certify that, pursuant to Rule 30(e)(1), review of the transcript was requested.

IN WITNESS WHEREOF, I hereunto affix my hand and notarial seal this 12th day of December, 2022. My commission expires January 24, 2024.

NDTCA Signed Electronic Transcript

______________________________
Jana Mackelprang
CRR, RPR, Notary Public
Calderwood-Mackelprang, Inc.



Electronically signed by Jana Mackelprang (001-409-517-3774) 5c7111a3-6b4c-4267-8d1e-db7b405b3ae7

CALDERWOOD-MACKELPRANG, INC.
9745 East Hampden Avenue, Suite 220
Denver, Colorado 80231
(303) 477-3500

December 5, 2022

Paul M. Crisalli
Jeffrey Todd Sprung
Attorney General's Office
800 5th Avenue, Suite 2000
Seattle, Washington 98104

Re: Cedar Park Assembly of God of Kirkland, WA v. Kreidler and Inslee
Deposition of: MOLLY NOLLETTE

The deposition in the above-entitled matter is ready for reading and signing. Please attend to this matter by complying with ALL blanks checked below:

______ arranging with us at the number listed below to read and sign the deposition in our office.

XXX having deponent read your copy and sign amendment sheets, if any (original signature page enclosed.)

______ reading enclosed deposition, signing signature page and correction sheets, if any.

XXX within 30 days of the date of this letter.

______ by__________due to trial/hearing date of ______________________________.

Please be sure that the signature page and amendment sheets, if any, are signed before a notary public and returned to our office. If this matter has not been taken care of within said period of time, the deposition will be filed unsigned pursuant to the Rules of Civil Procedure.

JANA MACKELPRANG, CRR, CSR, RPR
cc: Counsel of Record



Electronically signed by Jana Mackelprang (001-409-517-3774) 5c7111a3-6b4c-4267-8d1e-db7b405b3ae7

CALDERWOOD-MACKELPRANG, INC.
9745 East Hampden Avenue, Suite 220
Denver, Colorado 80231
(303) 477-3500

Kevin H. Theriot, Esq.
Alliance Defending Freedom
15100 N. 90th Street
Scottsdale, Arizona 85260

Re: Cedar Park Assembly of God of Kirkland, WA v. Kreidler and Inslee

Dear Mr. Theriot:

Enclosed is the deposition of: MOLLY NOLLETTE

______ Previously filed. Forwarding signature page and amendment sheets.

______ Signed, no changes.

______ Signed, with changes, copy enclosed.

______ Unsigned, notice duly given ________________, pursuant to the Rules of Civil Procedure.

______ Not signed, notice duly given ______________, since trial is set for _____________________.

______ No signature required.

______ Signature waived.

______ To be signed in court.

______ Signature pages/amendment sheets to be returned to court on date of trial.

______ Mailed by Priority Mail on ________________.

______ Hand-delivered on approximately ____________.

JANA MACKELPRANG, CRR, CSR, RPR

cc: Counsel of Record



Electronically signed by Jana Mackelprang (001-409-517-3774) 5c7111a3-6b4c-4267-8d1e-db7b405b3ae7