The Honorable Benjamin H. Settle

**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA**

| | |
|---|---|
| CEDAR PARK ASSEMBLY OF GOD OF KIRKLAND, WASHINGTON,<br><br>Plaintiff,<br><br>v.<br><br>MYRON "MIKE" KREIDLER, et al.,<br><br>Defendants. | NO. 3:19-cv-05181-BHS<br><br>DEFENDANTS' REPLY IN SUPPORT OF RENEWED MOTION TO DISMISS<br><br>NOTE ON MOTION CALENDAR: FEBRUARY 17, 2023 |

## I.   INTRODUCTION

Until now, Cedar Park alleged that it suffered an injury because Washington law purportedly forced Cedar Park to purchase insurance coverage for services to which it objects. After Defendants pointed out that Cedar Park received bids for plans that excluded abortion and certain contraceptives, Cedar Park shifts to arguing that Cigna's plan needed to be identical to Kaiser's (as well as cheaper), and despite only complaining in this lawsuit about *paying* for coverage, attempts to reinvent its injury. Cedar Park now complains that it is injured by its employees' ability to learn about access to abortion care and contraception through third parties, independent of Cedar Park or its coverage plan.

Despite amending its complaint multiple times, Cedar Park never pleaded that it suffered injury merely because its employees had access to information about obtaining the services to

DEFENDANTS' REPLY IN SUPPORT OF
RENEWED MOTION TO DISMISS --
NO. 3:19-cv-05181-BHS

1

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

which Cedar Park objected. There were at least two available options that excluded *coverage* of those services. Emails between Cedar Park and its broker show that Cigna expressly stated that both its fully insured and level-funded options would exclude coverage for abortion and the contraceptives to which Cedar Park objected. Cigna confirmed that such services would be provided "outside" the plan. Cedar Park's newly claimed injury is not justiciable, as it is was never pled—nor could it be. Cedar Park cannot claim injury from its employees learning about access to the services outside of the plan offered to Cedar Park. The Court should dismiss with prejudice.

## II.   ARGUMENT

### A.   Cedar Park Omits and Mischaracterizes Material Facts

Cedar Park ignores the operative complaint and the multiple pleadings where it alleged that injury occurred because it was forced to purchase coverage for abortion and certain contraceptives. Cedar Park ignored the occasions when Cigna told Cedar Park that both the fully insured option and the level-funded option would exclude coverage for abortion and certain contraceptives, and that Cedar Park's enrollees could access to those services "outside the plan."

#### 1.   Cedar Park repeatedly alleged that it was "forced" to purchase "coverage" for abortion care and contraception

Cedar Park's initial complaint alleged that SB 6219 "forces Cedar Park to choose between violating state law and violating its deeply held religious beliefs by paying for abortion coverage" (¶67); that the law required churches and other religious employers to provide insurance coverage for abortion, against their religious beliefs (¶83); that it would cost $243,125 in additional costs to become self-insured to have a plan consistent with its beliefs, which "is not a viable option" (¶43); and that offering group health insurance is its only viable option. Dkt. # 1 (emphasis added). Cedar Park's first amended complaint raised these same factual allegations. Dkt. # 20.

DEFENDANTS' REPLY IN SUPPORT OF
RENEWED MOTION TO DISMISS --
NO. 3:19-cv-05181-BHS

2

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

Despite receiving two offered options that would exclude abortion coverage (and were cheaper than Kaiser's negotiated plan), Cedar Park argued that because of the law, Cedar Park "can be forced to <u>pay for</u> abortion," making no mention of the Cigna options. Dkt. # 38 at 1 (emphasis added).

Cedar Park filed its second amended complaint alleging that SB 6219 "force[s] Cedar Park to choose between violating state law and violating its deeply held religious beliefs by <u>paying for abortion coverage</u>" (¶82); that it required churches and other religious employers to provide insurance coverage for abortion, against their religious beliefs (¶70); that it would cost $243,125 in additional costs to become self-insured to have a plan consistent with its beliefs, which is not a viable option (¶43); and that offering group health insurance is its only viable option. Dkt. # 46 (emphasis added).

Cedar Park's renewed motion for preliminary injunction argued (incorrectly) that the law "requires churches to provide <u>insurance coverage for abortion</u>" and that "Cedar Park is currently compelled to <u>pay for abortion coverage</u> in its employee health care plan." Dkt. # 49 at 4, 8 (emphasis added). Cedar Park stated that it could not purchase an insurance plan consistent with its religious beliefs. Dkts. # 49, 50, 50-1. Cedar Park did *not* argue or allege that its religious rights were violated because its employees could have access to abortion services *outside* of its health care plan.

The State moved to dismiss, arguing that Cedar Park could purchase a plan consistent with its religious beliefs against paying for abortion and contraception coverage, pointing out that the Office of Insurance Commissioner (OIC) had approved plans that exclude such coverage.[1] Dkt. # 53, at pp. 1, 4. Defendants pointed out that "[t]here [wa]s no evidence

---

[1] Contrary to Cedar Park's misleading argument, Defendants never argued that Cedar Park could purchase the precise plans approved by the OIC. Rather, Defendants argued that Cedar Park could negotiate for a plan consistent with its alleged religious beliefs, and that Defendants would not reject such a plan, as OIC had approved similar plans.

DEFENDANTS' REPLY IN SUPPORT OF
RENEWED MOTION TO DISMISS --
NO. 3:19-cv-05181-BHS

3

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

Cedar Park contacted, let alone was refused, by any other carrier offering health plans in the large group market." *Id.* at 4.[2]

Cedar Park responded that "it is being forced to provide <u>insurance coverage for abortion</u>" and that "Cedar Park can be forced to provide coverage, payment, and facilitation of the very services to which it objects on the basis of conscience." Dkt. # 58 at 3-5 (emphasis added). Cedar Park posited that while this Court ruled that "there is no evidence about how insurance carriers have responded to an employer's attempt to invoke its conscience objections under RCW 48.43.065(3)," "Cedar Park is clearly suffering cognizable injury and therefore has standing to pursue its claims" because Cedar Park's then-current plan included coverage for abortion care. *Id.* at 5. Cedar Park argued that OIC's approval of a plan exempt from SB 6219 did not alleviate the injury, as "it would have been impossible for Cedar Park to theoretically obtain insurance coverage from this insurer in a timely manner, even if it had been aware of it" and that there was no evidence the insurer would provide adequate coverage. *Id.* at 6. Cedar Park never mentioned Cigna's options, which it had already received by that point.

On appeal, Cedar Park focused on costs and reiterated—again, without referencing Cigna's plans—that it "is currently forced to <u>cover and pay for abortion coverage</u> in its group health plan that violates its beliefs." *Cedar Park Assembly of God v. Kreidler*, No. 20-35507, 2021 WL 400029, at *11 (9th Cir. Jan. 26, 2021) (emphasis added). It wrongly submitted that it "had only 18 days to act before its policy renewed" and that it was "forced to renew its modified plan under protest." *Id.*, 2020 WL 5496280, at *19 (9th Cir. Sept. 2, 2020).[3] Cedar Park knew for months that Kaiser would not offer a plan with an exclusion for abortion care.[4]

---

[2]Cedar Park filed a supplemental complaint, adding its interactions with Kaiser, but including no information about Cigna. Dkt. # 52-1. Cedar replied y that it would pay increased costs to exercise its conscience objection, stating "important facts have arisen since the filing" of the second amended complaint. Dkt. # 57 at 3.
[3]Cedar Park misstates that Defendants omitted the depositions' errata. Dkt. # 93 at 1 n.2. The errata is Exhibit Q to the first Crisalli declaration.
[4]Cedar Park incorrectly stated it received late notice on August 14, 2019, from Kaiser that the plan would include abortion coverage. Dkt. # 58 at 4. The evidence shows that Cedar Park knew by June 11, 2019 that Kaiser would not offer a plan with such exclusion. Second Crisalli Decl., Ex. C.

DEFENDANTS' REPLY IN SUPPORT OF
RENEWED MOTION TO DISMISS --
NO. 3:19-cv-05181-BHS

4

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

Cedar Park's operative complaint and arguments to this Court and the Ninth Circuit focused on its incorrect claim that it suffered injury because Washington law forced it to purchase a plan including coverage for abortion and certain contraceptives, violating its religious beliefs. Its effort to rewrite its allegations is unavailing now that they have been proven false.

Cedar Park mischaracterizes the Ninth Circuit's decision, which reversed because (1) Kaiser "stopped offering a plan with abortion coverage restrictions," and (2) "Cedar Park could not procure comparable replacement coverage." Dkt. # 65 at 2. The Ninth Circuit explained, "there is no evidence in the record clearly demonstrating that Cedar Park could obtain acceptable coverage at the time it filed its complaint." *Id.* at 3-4. Such evidence *would* have been in the record if Cedar Park had disclosed Cigna's options.

### 2.   Cigna made clear that any abortion services and objected-to contraception would be provided *outside* Cedar Park's plan

During this litigation, Cedar Park received offers for plans excluding coverage for abortion and the contraceptives to which Cedar Park objected, and any such services would not be covered by Cedar Park's plan. The first known instance is a presentation dated June 10, 2019, informing Cedar Park about the bid options. Dkt. # 92, Ex. K. Kaiser's negotiated plan for the 2019-2020 plan year would cost $916,314, while Cigna's fully insured option would cost $890,408, and Cigna's level-funded plan would cost $913,381. Dkt. # 92, Ex. K at 227. The presentation made clear abortion would not be covered in either Cigna plan: "**Elective abortions are not covered** *for both the Cigna Fully Insured and Cigna Level-Funded plans*." *Id.* (emphasis added).

On June 12, 2019, the insurance broker emailed Cedar Park's CFO, stating that one Cigna plan would lead to a 1.5% rate reduction. Dkt. # 92, Ex. C. The broker incorrectly stated the fully insured Cigna rates would have the same issue as Kaiser if the abortion law passes but the level-funded plan could exclude abortion coverage. *Id.*

DEFENDANTS' REPLY IN SUPPORT OF
RENEWED MOTION TO DISMISS --
NO. 3:19-cv-05181-BHS

5

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

The broker incorrectly believed that all fully insured plans must follow SB 6219 and that there is no religious objection exemption and that the law had not yet passed (SB 6219 was in effect). Washington's religious objection statute plainly allows plans to exclude coverage for services to which an employer has a religious objection. RCW 48.43.065(3).

Despite the broker's mistaken statements, Cigna shortly thereafter made clear that it could provide either a fully-funded or a level-funded plan that excluded coverage for abortion and contraception to which Cedar Park objected. On June 25, 2019, the broker forwarded Cigna's legal explanation that both plan options would accommodate Cedar Park's religious objections to coverage for contraceptives and abortion. Dkt. # 92, Ex. E. The email breaks down the analysis between self-funded plans and fully insured plans. For self-funded plans, Cigna explained both that "an organization that objects to coverage of contraceptives based on religious beliefs or moral objections cannot be required to provide coverage for contraceptives" and that "[f]or abortion coverage . . . [u]pon request of a church plan, coverage of these benefits can be excluded." *Id.*

For insured plans, the email recited Washington law that plans including coverage for maternity care must also include abortion care and that plans must cover contraceptives. The email correctly described the religious objection statute, stating: "**[i]n other words, an employer may exclude coverage for contraceptives and abortion if that employer objects to providing that coverage due to religious or other beliefs**." *Id.* (emphasis added). The email correctly explained that enrollees cannot be denied coverage for "any service excluded from their benefit package." *Id.* Cigna made clear that the religious objection removes coverage from the benefit package. Cigna clarified that enrollees' access to the objected services would occur *outside* the plan: "Cigna will send a letter to enrollees notifying them of their rights to access these excluded services **outside of their plan**." *Id.* (emphasis added).

Cigna clearly confirmed that its plans would exclude coverage for abortion and certain contraceptives, so Cedar Park's argument that employees would use the same insurance card to

DEFENDANTS' REPLY IN SUPPORT OF
RENEWED MOTION TO DISMISS --
NO. 3:19-cv-05181-BHS

6

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

receive objected-to services falls flat. Dkt. # 93 at 5. Even assuming that presenting an insurance card somehow meant that excluded services would become part of Cigna's coverage plan, nothing in the email on which Cedar Park relies describes *Cigna's* procedures: by this time, Cedar Park's emails discussed only Kaiser and not Cigna. Second Decl. of Paul Crisalli, ¶4.

### 3. Cedar Park knew both Cigna options complied with its alleged beliefs

To the extent that any confusion remained about what Cedar Park understood Cigna to offer, an email exchange on July 8, 2019 entitled "Direct Answers" states that Cigna would exclude contraceptives and abortion in its plan options. Dkt. # 92, Ex. F. Cedar Park's response to this motion and Orcutt's declaration never mention this exchange.

Melissa Knauss, Cedar Park's human resources head, emailed the broker asking for clear and unequivocal answers: "Steve and I are trying to read between the carriers' mumbo-jumbo, legaleese [sic], and just get really clear unequivocal answers. Please ask the carrier(s) to answer the following by selecting Yes or No and providing the details if they select Yes." *Id.* The email asked point-blank whether Cigna would exclude coverage for abortion and certain contraceptives, which was Cedar Park's concern:

> FOR KAISER AND CIGNA
> Will Cedar Park Assembly of God be able to exclude abortions and abortifacients, including Copper IUDs, while still providing non-abortifacient contraceptives, at renewal for the 2019-2020 plan year?
> [ ] YES, this is what must be done: _____
> [ ] No, at renewal for the plan effective 9/2019 you will not be able to exclude abortions and abortifacients, including Copper IUDs, while still providing non-abortifacient contraceptives based on the information we have at this time.

*Id.*

About a half hour later, the broker forwarded Cigna's response affirming that Cigna would accommodate those exclusions: "Yes. Legal and administrative approval from CIGNA." *Id.*

There was no question whether these answers applied to both Cigna's fully insured option and level-funded option—Cedar Park learned that the answers applied to both. Second Crisalli

DEFENDANTS' REPLY IN SUPPORT OF
RENEWED MOTION TO DISMISS --
NO. 3:19-cv-05181-BHS

7

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

Decl., Ex. A. On July 16, 2019, the broker emailed the same Cigna employee asking if the answers applied only to the level funded option: "All the questions I've asked you would only apply to level funded correct? I need to know how it would apply to your fully insured plan." *Id.* A few minutes later, Cigna responded that all the answers would apply to both options: "All of the answers provided apply to both Level and Fully insured with the exception of transgender services which can only be excluded on Level." *Id.* The broker forwarded that email string to Cedar Park on July 18, 2019. *Id.* Cedar Park never mentions this exchange.

That same day, the broker also forwarded "an updated proposal with the lower Cigna rates." Second Crisalli Decl., Ex. B. Cedar Park did not produce the actual proposal with lower rates in its discovery responses. *Id.* at ¶3.

Cedar Park stated it rejected the Cigna options because of speculated increased costs, potential complaints from employees about changing, and Cigna's different method of providing services. Dkt. # 92 at 64-65. Cedar Park agrees that none of these reasons relate to its religious beliefs regarding abortion. Dkt. # 92 at 65-67.

In sum, by June 10, 2019, Cedar Park had received offers for plans that would exclude coverage for abortion and certain contraceptives. Cedar Park knew with certainty on July 18, 2019, that Cigna would provide the exclusion with either the fully insured or level-funded option. Second Crisalli Decl., Ex. A. Cedar Park never disclosed this—not in the second amended complaint or supplemental complaint, not in any brief to this Court where the issue whether Cedar Park could obtain a plan consistent with its alleged beliefs was squarely before the Court, and not in any brief to the Ninth Circuit. Cedar Park continued to allege and argue that no such plan was available and that it was "forced" to pay for "coverage" for services to which it objected—even though Cigna's available plans excluded such coverage. As a result, the Ninth Circuit issued an opinion relying on the false allegation that Cedar Park could not obtain a plan consistent with its alleged beliefs.

DEFENDANTS' REPLY IN SUPPORT OF
RENEWED MOTION TO DISMISS --
NO. 3:19-cv-05181-BHS

8

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

**4.      For the 2020-2021 plan year, Cigna offered an option cheaper than renewing with Kaiser**

Cedar Park is wrong in stating that Cigna became more expensive than Kaiser when offering a plan for the 2020-2021 plan year. The cost to renew Kaiser's plan for 2020-2021 was $964,972, while the cost for Cigna's level-funded plan was $956,513. Dkt. # 92 at 261. Only through a renegotiated plan with Kaiser was it cheaper, at $914,679. *Id.* Cedar Park renegotiated and changed its plan with Kaiser to find a plan cheaper than the one offered by Cigna.

**B.     Cedar Park Misstates the Law: Washington Law Does Not Require Religious Employers to Pay for Coverage of Health Care That Violates Their Beliefs**

In addition to misstating the facts, Cedar Park's response includes misleading and incorrect assertions about Washington insurance law. Dkt. # 93 at 3 (asserting "even with the claimed opt-out for religious objections, the health plans available to Cedar Park will include abortions and abortifacient coverage as part of Cedar Park's plan"); *id.* (asserting SB 6219 made Cedar Park's plan "illegal"); *id.* at 5 (asserting "the health plan must also provide a covered person with substantially equivalent coverage to permit the abortion of a pregnancy" when exercising religious objection). SB 6219 provides that health plans issued or renewed after January 1, 2019 must provide coverage for all contraceptives, including to the enrollees, their spouses and dependents. RCW 48.43.072. If health plans provide coverage for maternity care or services, they must "also provide a covered person with substantially equivalent coverage to permit the abortion of a pregnancy." RCW 48.43.073(1). However, Washington's religious objection statute—which Cedar Park repeatedly ignores and selectively cuts out quotations from the State's briefing—provides that "[n]o individual or organization with a religious or moral tenet opposed to a specific service may be required to purchase coverage for that service or services if they object to doing so for reason of conscience or religion." RCW 48.43.065(3)(a). At the same time, "[t]he provisions of this section shall not result in an enrollee being denied coverage of, and timely access to, any service or services excluded from their benefits package

DEFENDANTS' REPLY IN SUPPORT OF
RENEWED MOTION TO DISMISS --
NO. 3:19-cv-05181-BHS

9

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

as a result of their employer's or another individual's exercise of the conscience clause in (a) of this subsection." RCW 48.43.065(3)(b).

This does not mean the objecting employer somehow pays for coverage of such services. By using the phrase "excluded from their benefits package," the statute makes clear that the coverage for objected services is outside the benefits package purchased by the employer. In other words, the employer doesn't pay for the coverage, but the enrollee will receive the coverage outside of the plan. There are many different ways in which carriers can provide coverage for services excluded from an enrollee's plan due to their employer's religious objection, as explained by the two opinions by the Washington Office of the Attorney General that this Court already reviewed on the earlier motions to dismiss. Wash. Op. Att'y Gen. 5 (2002); Wash. Op. Att'y Gen. 10 (2006). For instance, carriers could choose not to itemize the costs and just have a general overhead category that includes management costs, wages, rent, and costs for the services to which employers object. Carriers could distribute the risk caused by the objections to all members of the plan, where the overhead is a generally applicable cost spread among all members of the group health plan. Carriers could distribute the risk caused by the objectors to the other non-objecting members of the plan, much like uninsured/underinsured insurance. Or carriers could fund the services through third parties, like related foundations or grant funding sources. Whichever method is used, the enrollees (employees) are informed by the carrier about how to obtain access to the services outside of the plan because of the objection—and the objecting employer does not pay for the coverage for such services.

Here, Cedar Park has not alleged or shown that Cigna's plans would entail Cedar Park paying for coverage of services to which it objected, or would otherwise be inconsistent with any of the options listed above. It does not and cannot even make conclusory allegations that it would pay for abortion services with Cigna. *See Telesaurus VPC, LLC v. Power*, 623 F.3d 998, 1003 (9th Cir. 2010) (Courts disregard threadbare recitals supported by mere conclusory statements). Cigna told Cedar Park that it would provide notice to the employees about how to

DEFENDANTS' REPLY IN SUPPORT OF
RENEWED MOTION TO DISMISS --
NO. 3:19-cv-05181-BHS

10

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

access the services *outside* the plan: "Cigna will send a letter to enrollees notifying them of their rights to access these excluded services outside of their plan." Dkt. # 92, Ex. E. Cedar Park's emails disprove that Cigna would provide the objected-to services as "part of" Cedar Park's plan.

### C. Cedar Park's Newest Theory on Injury Lacks Merit

Cedar Park's alleged injury has been a moving target. Cedar Park now argues that its injury occurs anytime a *carrier* provides access to coverage for contraceptives or abortion to which Cedar Park objects. Cedar Park appears to want the ability to purchase a plan from a carrier that does not mention abortion or contraception, nor permit an enrollee to be advised of the manner in which they can receive those services outside the plan. Cedar Park's argument is logically and legally deficient. This new theory of injury should be disregarded, as it is unpleaded. *Schneider v. Cal. Dep't of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) (Courts won't reach into and beyond the opposition brief to sustain an unpleaded claim). Even if the Court considers this new theory, Cedar Park points to no case going so far as to say that a religious employer demonstrates an injury-in-fact because its employees receive access or information about access to services to which the employer objects outside of the employer's purchased health plan. *See TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2205 (2021) (an injury is not concrete if plaintiff does not suffer any actual harm); *Bassett v. ABM Parking Servs., Inc.*, 883 F.3d 776, 779 (9th Cir. 2018) ("standing requires a concrete injury"); *see also Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 416-18 (2013). Cedar Park might object to paying for abortion coverage, but it does not have a legal claim that its religious rights are violated because its employees are able to receive abortion care *outside* of the insurance plan Cedar Park pays for.

If this were so, any insurance carrier that provides coverage for abortion services would violate Cedar Park's First Amendment religious expression rights. For example, following Cedar Park's argument, even if Kaiser agreed to provide an exclusion to Cedar Park, Cedar Park's religious expression rights would be violated if its employees learned about access

DEFENDANTS' REPLY IN SUPPORT OF
RENEWED MOTION TO DISMISS --
NO. 3:19-cv-05181-BHS

11

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

to abortion services outside that plan, like through general overhead or a third-party. Cedar Park is wrong as a matter of logic and law, so the Court should reject this new argument.

D.   **The Constitution Does Not Require Kaiser to Tailor Its Business to Cedar Park's Religious Beliefs**

According to Cedar Park, the only way to comply with the First Amendment is to force Kaiser to provide the same plan with all exclusions desired by Cedar Park. But no case holds that a secular company has to offer a product merely to accommodate the purchaser's religious beliefs. This is unworkable at best and would lead to absurd results.

Cedar Park complains that Cigna's plans might increase in cost, that Cigna provides services in a different manner than Kaiser, and that changing plans would be disruptive to Cedar Park's employees. These complaints are unrelated to Cedar Park's asserted religious beliefs. Instead, they are considerations every purchaser (individual or organization) has to evaluate when purchasing a health insurance plan. Cedar Park nowhere argues that Cigna's offered plans would have been cost-prohibitive, like it believes self-insurance would be. Even based on the Ninth Circuit's decision, the test is not, and cannot be, whether Cedar Park can get the exact same plan with the exclusions. The analysis turns to whether there is a plan in the marketplace Cedar Park could purchase, as that objectively disproves that SB 6219 caused an injury fairly traceable to the defendants. *See* Dkt. # 65 at 4; *Skyline Wesleyan Church v. Cal. Dep't of Managed Health Care*, 968 F.3d 738, 751 (9th Cir. 2020) (courts analyze whether governments action prevents the plaintiffs' "ability to obtain a health plan that comports with its beliefs").

If anything, *Skyline* supports Defendants' position. There, although one plan for "religious employers" was available on the market after the enactment of California's coverage parity law, that plan did not comport with Skyline's religious beliefs because it covered abortion care for victims of rape and incest. The Court "construe[d] Skyline's Complaint as seeking relief that would ensure that the Coverage Requirement does not affect Skyline's ability to obtain a

DEFENDANTS' REPLY IN SUPPORT OF
RENEWED MOTION TO DISMISS --
NO. 3:19-cv-05181-BHS

12

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

health plan that comports with its beliefs." *Id.* at 751. The focus was not on whether the church could get its specific plan, but whether it could get "a plan" from any regulated insurer. *Id.* Here, by contrast, the evidence shows that Cigna *did* offer a plan that was consistent with Cedar Park's alleged religious beliefs prohibiting it from "provid[ing] coverage for abortion or abortifacient contraceptives in its employee health insurance plan." Dkt. # 46 at 3. Cedar Park's allegations of injury have been disproved, and its lawsuit must be dismissed for lack of standing and subject-matter jurisdiction.

### III.  CONCLUSION

The Court should dismiss this case with prejudice.

DATED this 17th day of February 2023.

ROBERT W. FERGUSON
Attorney General

*/s/ Paul M. Crisalli*
PAUL M. CRISALLI, WSBA #40681
JEFFREY T. SPRUNG, WSBA #23607
Assistant Attorneys General
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744
Paul.Crisalli@atg.wa.gov
Jeff.Sprung@atg.wa.gov

MARTA DELEON, WSBA #35779
Senior Assistant Attorney General
Government Compliance & Enforcement Division
1125 Washington Street SE
Olympia, WA  98504-0100
(360) 664-9006
Marta.Deleon@atg.wa.gov
*Attorneys for Defendants*

DEFENDANTS' REPLY IN SUPPORT OF
RENEWED MOTION TO DISMISS --
NO. 3:19-cv-05181-BHS

13

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744