Honorable Benjamin H. Settle

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| CEDAR PARK ASSEMBLY OF GOD OF KIRKLAND, WASHINGTON,<br><br>Plaintiff,<br><br>v.<br><br>MYRON "MIKE" KREIDLER, in his official capacity as Insurance Commissioner for the State of Washington; JAY INSLEE, in his official capacity as Governor of the State of Washington,<br><br>Defendants. | Civil No. 3:19-cv-05181<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO EXTEND THE DISPOSITIVE MOTION DEADLINE** |

# TABLE OF CONTENTS

Table of Authorities .................................................................................................................. ii

Introduction ............................................................................................................................... 1

Argument ................................................................................................................................... 2

I.    Defendants' renewed motion to dismiss is unfounded and provides no ground for delaying summary judgment briefing. ............................................................................... 2

    A.    Defendants misunderstand Cedar Park's religious beliefs. ..................................... 3

    B.    Defendants' renewed motion to dismiss ignores the injury Cedar Park sustained when it lost its pre-SB 6219 policy. ......................................................... 6

    C.    The renewed motion to dismiss ignores that potential alternative plan coverage would facilitate abortion in violation of Cedar Park's religious beliefs. .................................................................................................................. 6

II.    Defendants' 11th-hour request for a document that they have known about for over six months and that is virtually identical to one previously produced does not justify delaying summary judgment. ............................................................................................ 10

III.    This motion to delay dispositive motions is part of an ongoing effort to needlessly prolong the case. ............................................................................................................. 11

Conclusion .............................................................................................................................. 12

Certificate of Service ............................................................................................................... 14

# TABLE OF AUTHORITIES

**Cases**

*Bennett v. Spear*,
　520 U.S. 154 (1997) ................................................................................................ 2

*Burwell v. Hobby Lobby Stores*,
　573 U.S. 682 (2014) ................................................................................................ 5

*Catholic League for Religious & Civil Rights v. City & County of San Francisco*,
　624 F.3d 1043 (9th Cir. 2010) ................................................................................. 3

*Cedar Park Assembly of God of Kirkland v. Kreidler*,
　860 Fed. App'x 542 (9th Cir. 2021) ........................................................................ 6

*Monsanto Co. v. Geertson Seed Farms*,
　561 U.S. 139 (2010) ................................................................................................ 3

*Sharpe Holdings, Inc. v. United States Department of Health and Human Services*,
　801 F.3d 927 (8th Cir. 2015) ................................................................................... 5

*Skyline Wesleyan Church v. California Deparment of Managed Health Care*,
　968 F.3d 738 (9th Cir. 2020) ............................................................................ 6, 10

*Warth v. Seldin*,
　422 U.S. 490 (1975) ................................................................................................ 3

**Statutes**

RCW § 48.43.065 ............................................................................................................. 7

RCW § 48.43.073 ............................................................................................................. 7

PLAINTIFF'S OPPOSITION TO MOTION TO EXTEND DISPOSITIVE MOTION FILING DEADLINE

ii

ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, Arizona 85260
(480) 444-0020

# INTRODUCTION

Defendants created more work for themselves (and for the court and plaintiff) by filing a baseless renewed motion to dismiss that attempts to shoehorn merits arguments into a jurisdictional brief based on characterizations of the Complaint and certain evidence that does not accurately reflect the content of those documents. That choice should not buy Defendants more time on summary judgment in this case, which is now four years old. The best approach for judicial efficiency would be for the Court to consider and rule on the renewed motion to dismiss and summary judgment motions together, since they involve indistinguishable legal issues.

This Court should deny Defendants' motion to extend the dispositive motions deadline for four reasons: (1) in an effort to bolster the motion, Defendants have made representations about the pleadings and the record that those documents cannot sustain; (2) the renewed 12(b)(1) motion to dismiss lacks merit; (3) any dispute Defendants have relates to the merits of the case, more appropriate for summary judgment; and (4) even though the dispositive motion deadline has been scheduled for six weeks, Defendants waited until a little over a week was left to file this motion when Plaintiff's summary judgment brief is near complete. Decl. of Kevin Theriot ¶ 14.

The lynchpin of Defendants' "new evidence" argument relates to health plans that purportedly would not have required Cedar Park's plan to directly pay for abortions. What Defendants omit is that Cedar Park's Complaint and its witnesses' testimony make clear that the Church's beliefs prohibit it from paying for *or facilitating* abortion in any circumstance—directly or indirectly, and it is uncontroverted that those policies still would have facilitated abortion and abortifacient coverage. In fact, the Cigna policies would directly facilitate access to abortion *as part of Cedar Park's plan*.

Defendants also suggest that Plaintiff purposefully withheld discovery about another acceptable health plan. Motion to Extend 3, ECF No. 98. Not so. Defendants take issue with one document that was an attachment to a produced email that they have known about for six months but did not request until last week. That document is virtually identical to one Plaintiff produced

many months ago, on August 8, 2022, and contains no new information on available plans, much less plans that do not facilitate abortion.  Theriot Decl. ¶¶ 7-9. Nor do any of these plans negate the injury Cedar Park incurred when Washington declared Cedar Park's existing policy illegal.

In sum, there is no reason to extend the dispositive motions deadline to resolve a meritless motion to dismiss (rooted in thinly disguised merits arguments that this Court will consider on cross-motions for summary judgment) or a belatedly requested document that contains no new information. By considering simultaneously Defendants' motion to dismiss and both parties' cross-motions for summary judgment, this Court can ensure the most expeditious and efficient disposition of the case. Doing so also frames the appeal such that the Ninth Circuit can resolve the case too, rather than remand for yet more proceedings. The motion should be denied.

## ARGUMENT

I. **Defendants' renewed motion to dismiss is unfounded and provides no ground for delaying summary judgment briefing.**

Defendants ask to extend the dispositive motions deadline because they filed a renewed motion to dismiss alleging the Church has not been injured. But that motion ignores the Church's beliefs about not facilitating abortion, ignores how alternative plans facilitate abortion, and ignores the higher cost of those plans over the long term. *See* Opp'n to Mot. to Dismiss 6-7, ECF No. 93. The operative complaint alleges, and all discovery supports, the facts that (1) Cedar Park's religious beliefs prohibit any facilitation of abortion, (2) SB 6219 requires violation of those beliefs or purchasing a cost-prohibitive, less desirable self-insurance policy, and (3) RCW § 48.43.065 does not alleviate that First Amendment violation but compounds it. And that satisfies Article III's "relatively modest" injury requirement. *Bennett v. Spear*, 520 U.S. 154, 171 (1997).

Defendants' renewed motion to dismiss is based on a *merits* issue: whether the alleged availability of insurance policies that might not *directly* cover (but would still facilitate) abortion and abortifacients negates the substantial burden on the Church's beliefs under the Free Exercise

Clause. But "standing in no way depends on the merits of [Cedar Park's] contention that particular conduct is illegal." *Warth v. Seldin*, 422 U.S. 490, 500 (1975). "Standing is not about who wins the lawsuit; it is about who is allowed to have their case heard in court." *Cath. League for Religious & C.R. v. City & Cnty. of S.F.*, 624 F.3d 1043, 1048 (9th Cir. 2010), *rev'd en banc*. Whether the Church is "entitled to the relief that [it] seek[s] goes to the merits, not to standing." *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 151 n.1 (2010).

The renewed motion to dismiss should be summarily denied. It provides no grounds for extending the dispositive motion deadline.

### A.  Defendants misunderstand Cedar Park's religious beliefs.

Defendants say that "despite only complaining in this lawsuit about *paying* for coverage, …Cedar Park now complains that it is injured by its employees' ability to learn about access to abortion care and contraception through third parties, independent of Cedar Park or its coverage plan." Reply in Supp. of Renewed Mot. to Dismiss 1, ECF No. 95 (MTD Reply). But from the outset, the Complaint no less than four times asserted that Cedar Park's beliefs broadly prohibit even indirectly facilitating abortion, not just paying for it.

For instance, Cedar Park consistently alleged that it "believes and teaches that participation in, facilitation of, or payment for abortion in any circumstance is a grave sin." Verified Compl. ¶ 29, ECF No. 1 (VC); Second Am. Verified Compl. ¶ 29 (Sec. Am. VC), ECF No. 46. And the Church alleged that "Defendants have made no allowance for the religious freedom of religious employers and churches, such as Cedar Park, who object to paying for, facilitating access to, or providing insurance coverage for abortion or abortifacient contraceptives under any circumstance." VC ¶ 63; Sec. Am. VC ¶ 78. *Accord, e.g.*, VC ¶ 131; Sec. Am. VC ¶ 153 ("Defendants implemented and enforce SB 6219 with full knowledge that some religions and

denominations object to participating in, paying for, facilitating, or otherwise supporting abortion, while others do not."); VC ¶ 142; Sec. Am. VC ¶ 165 ("Cedar Park cannot provide insurance coverage for abortion or abortifacient contraceptives in its employee health plan.").

The Church's briefing reiterated its religious beliefs prohibiting *facilitation* of (not just direct payment for) abortion in any circumstance. For example, the Church's renewed preliminary injunction motion noted that "[p]aying premiums or fees for any plan that covers these procedures or items, whether expressly or surreptitiously under another label like 'overhead expense,' would violate Cedar Park's beliefs." Renewed Mot. for Prelim. Inj. 3, ECF No. 49. That motion also noted that, as a result of SB 6219, even when Cedar Park does not directly pay for objectionable coverage, "access to such coverage is facilitated by Cedar Park's health care plan." *Id*. at n.1.

Defendants' renewed motion for preliminary injunction relies on Pastor Smith's September 13, 2019, Declaration which states:

> It violates the religious beliefs of Cedar Park to provide any sort of payment, premium, or fee for a health care plan that provides coverage of or facilitates access to abortion or arbortifacient drugs, either directly or indirectly. Accordingly, it would violate Cedar Park's beliefs to pay an extra premium, fee, or any payment to its insurer for the payment of abortions and abortifacient contraceptives for plan beneficiaries, *even in an instance where Cedar Park's health insurance plan did not directly provide coverage of abortion or abortifacient drugs*.

Smith Decl. ¶ 6, ECF No. 50 (emphasis added).[1]

---

[1] So Defendants' assertion that "Cedar Park did *not* argue or allege [in its renewed MPI] that its religious rights were violated because its employees could have access to abortion services *outside* of its health care plan," MTD Reply 3, is inaccurate. Indeed, that inaccuracy—along with many others in Defendants' Renewed Motion to Dismiss and their motion for sanctions briefing—make those pleadings frivolous, forcing Plaintiff to reluctantly to file their own Rule 11 sanctions request for having to respond to Defendants' frivolous sanctions motion. Defendants' gamesmanship is unnecessary and is wasting everyone's time, including the Court's.

PLAINTIFF'S OPPOSITION TO MOTION TO EXTEND DISPOSITIVE MOTION FILING DEADLINE

4

ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, Arizona 85260
(480) 444-0020

On appeal, Cedar Park explained that SB 6219 and RCW § 48.43.065 are problematic because while churches "are not *directly* required to purchase coverage for" abortion, "the conscience law requires a church's provider to provide *indirect* coverage" of objectionable services like abortion. Appellant's Opening Br. at 13-16, *Cedar Park Assembly of God of Kirkland v. Kreidler*, 860 Fed. App'x 542 (9th Cir. 2021) (No. 20-35507), 2020 WL 5496280 at *13.

The Constitution protects Cedar Park's religious belief against being complicit in abortion. And Defendants cannot change where Plaintiff draws the line of complicity and moral culpability. Caselaw makes this clear. For example, even submitting an accommodation request—which is much less than Cedar Park's involvement here—substantially burdened religious business owners' beliefs because it "trigger[ed] the provision of objectionable coverage by their [third party administrators], making them complicit in conduct that violates their religious beliefs." *Sharpe Holdings, Inc. v. U.S. Dep't of Health and Hum. Services*, 801 F.3d 927, 938-41 (8th Cir. 2015), *vacated on other grounds,* 2016 WL 2842448 (May 16, 2016). "That they themselves do not have to arrange for or pay for objectionable coverage is not determinative of whether the required or forbidden act is not religiously offensive." *Id*. at 942. Cedar Park's beliefs "implicate[ ] a difficult and important question of religion and moral philosophy, namely, the circumstances under which it is immoral for a person to perform an act that is innocent in itself but that has the effect of enabling or facilitating the commission of an immoral act by another. … it is not for [a court] to say that the line [they draw is] an unreasonable one." *Burwell v. Hobby Lobby Stores*, 573 U.S. 682, 724-25 (2014). Nor may Defendants make that call.

Defendants attempt to limit Cedar Park's religious beliefs to paying for insurance that *directly* covers abortion and abortifacients, but that contradicts the pleadings and caselaw. Because the State's renewed motion to dismiss is attempting to litigate a payment issue when Cedar Park's

Complaint and testimony relates as well to facilitation issues, the motion lacks merit and is no reason to further delay dispositive motions.

### B. Defendants' renewed motion to dismiss ignores the injury Cedar Park sustained when it lost its pre-SB 6219 policy.

Defendants' renewed motion to dismiss also does not justify delaying the dispositive motions deadline because it does not address the injury Cedar Park *already incurred* when it "lost something it previously had." *Skyline Wesleyan Church v. Cal. Dep't of Managed Health Care*, 968 F.3d 738, 748 (9th Cir. 2020). The Church suffered an injury in fact when Washington mandated that Cedar Park cover elective abortion in violation of its beliefs, causing Cedar Park to lose its health plan that accommodated those beliefs. *Cedar Park Assembly of God of Kirkland v. Kreidler*, 860 Fed. App'x 542, 543 (9th Cir. 2021). Cedar Park's injury was complete once SB 6219 removed Cedar Park's plan that complied with its religious beliefs. The Church's effort to replace the plan it lost goes to *mitigation* of the injury, not to standing. None of the plans that Defendants wrongly say would accommodate Cedar Park's religious beliefs could eliminate the Church's injury and none of the comparable plans satisfied Cedar Park's religious objections in any event. After SB 6219 took effect, Cedar Park was coerced to pay for an abortion-including health plan. That irreparable harm can never be erased.

### C. The renewed motion to dismiss ignores that potential alternative plan coverage would facilitate abortion in violation of Cedar Park's religious beliefs.

Defendants' argue that within several months after this lawsuit was filed, "Cedar Park had received offers from at least six carriers for plans that would accommodate its religious beliefs." Renewed Mot. to Dismiss 1, ECF No. 88 (Renewed MTD). This statement has no support in the record. Cedar Park's CFO Steven Orcutt's declaration explains:

> [W]e did not receive six or seven bids from insurance companies offering health insurance plans consistent with Cedar Park's religious beliefs. Instead, eight carriers were invited to bid fully insured plans. Three chose not to bid, and 3 were uncompetitive—leaving only Kaiser Permanente and Cigna. Excepting only self-insurance, *none of the plans we were aware of for the 2019-20 plan year and none since that time accommodate Cedar Park's religious beliefs. All others would have facilitated access to abortion and abortion causing drugs through, or as a result of, the Church's plan which would violate Cedar Park's religious beliefs.*"

Orcutt Decl. ¶¶ 8-9, ECF No. 94-1 (emphasis added). And self-insurance is not a viable option because it is too expensive and does not provide comparable benefits. *Id.* at ¶¶ 18-28.

Importantly, Defendants ignore their own admission that the proposed plans would provide statutorily required abortion coverage as a result of Cedar Park purchasing the plan. Defendants' renewed motion to dismiss admits that "health plans issued or renewed after January 1, 2019 that provide coverage for maternity care or services must also provide a covered person with substantially equivalent coverage to permit the abortion of a pregnancy," and "health plans issued or renewed after January 1, 2019 must provide coverage for all contraceptives approved by the federal Food and Drug Administration." Renewed MTD at 3 (cleaned up). In fact, this is precisely what SB 6219 requires: that "the health plan must also provide a covered person with substantially equivalent coverage to permit the abortion of a pregnancy," RCW § 48.43.073(1). Similarly, SB 6219's Conscience Clause requires that "[t]he provisions of this section shall not result in an enrollee being denied coverage of, and timely access to, any service or services excluded from their benefits package as a result of their employer's or another individual's exercise of the conscience clause." RCW § 48.43.065(3)(b). The record supports Cedar Park's allegations many times over. In fact, from 2019 till now, Defendants are "not aware of any negotiated large group health plan" "that exclude[s] abortion" in the counties where Cedar Park is located. Tocco Dep. 22-25, ECF No. 93-4. Again, Defendants' arguments go to the merits and are improper for a motion to dismiss.

| PLAINTIFF'S OPPOSITION TO MOTION TO EXTEND DISPOSITIVE MOTION FILING DEADLINE | 7 | ALLIANCE DEFENDING FREEDOM<br>15100 N. 90th Street<br>Scottsdale, Arizona 85260<br>(480) 444-0020 |
|---|---|---|

Defendants describe various ways carriers could facilitate objectionable coverage as a result of Cedar Park's health plan. *See* MTD Reply 10 (stating a carrier could provide the objectionable items through overhead, distributing the risk to all or some members of the group health plan, or through a third party). But *all* those ways violate Cedar Park's religious beliefs, as the result is the same: the Church's purchase of group or level-funded health insurance facilitates providing abortion services to plan participants that they otherwise would lack, which violates the Church's religious beliefs. VC ¶¶ 29, 63, 131; Smith Decl. ¶ 6.

In fact, the State's 30(b)(6) witness confirmed that even if the employer chooses to exclude abortion in group or level funded insurance, "the plan actually provides for [abortion] access." Tocco Dep. 105. *See* Opp'n to Mot. to Dismiss 3-5. Under Cigna's plans, for example, enrollees in Cedar Park's health plan would use the *same* insurance card to obtain abortifacients as non-objectionable drugs. Orcutt Decl. ¶ 12 (citing August 8, 2010, email from Hansen to Orcutt, ECF No. 92 at 216).[2] This is why the Court should deny Defendants' motion to dismiss, which provides no ground for extension. It also supports granting Cedar Park's forthcoming motion for summary judgment.

Ignoring the sworn testimony of their own witness, Defendants rely on confusing emails. MTD Reply 6-8. First, they cite a June 25, 2019, Cigna email that says Cigna policies "must cover maternity care including abortions" and "may exclude coverage," in the same breath. *Id*. at 6 (Citing Ex. E to Renewed MTD, ECF No. 92 at 137.). That email also clarifies that "enrollees shall

---

[2] Defendants say that "Nothing in the email on which Cedar Park relies describes *Cigna's* procedures: by this time, Cedar Park's emails discussed only Kaiser and not Cigna." MTD Reply 7. But the email specifically asks for information about "companies." It doesn't mention Kaiser, Cigna, or any other carrier. August 8, 2019 email from Hansen to Orcutt, ECF No. 92 at 216. Moreover, Cedar Park still had not decided whether to go with Kaiser and didn't do so until on or about August 14, 2019. ECF No. 92 at 185.

| PLAINTIFF'S OPPOSITION TO MOTION TO EXTEND DISPOSITIVE MOTION FILING DEADLINE | 8 | ALLIANCE DEFENDING FREEDOM<br>15100 N. 90th Street<br>Scottsdale, Arizona 85260<br>(480) 444-0020 |

not be denied coverage to any service excluded from their benefit package as a result of the employer's opposition to providing a specific service." *Id*. Defendants next cite a July 8, 2019, email where Cedar Park asked Cigna and Kaiser if they will be able to exclude abortions and abortifacients and "provide the details if they select Yes." Ex. F to Renewed MTD, ECF No. 92 at 145. Cigna responded with, "Yes. Legal and administrative approval from CIGNA," but it did not provide any details as requested. *Id*. Moreover, a week later Cedar Park's broker investigated and confirmed that "The only reason Cigna is confirming [exclusion of objectionable coverage], is because it's a self funded plan." Ex. G to Renewed MTD, ECF No. 92 at 152-155. And the self-funded plan was neither affordable or comparable to the plan that SB 6219 took away from the Church. Orcutt Decl. ¶¶ 18-28.

Finally, Defendants contend a July 16, 2019 email exchange between Cedar Park's broker and Cigna vaguely stating that "[a]ll of the answers provided apply to both Level and Fully insured with exception of transgender services" proves Cigna's fully insured plan allowed for excluding abortion coverage. MTD Reply 8 (citing Ex. A to Second Crissali Decl. 2, ECF No. 96-1). But it is unclear what "answers" that email refers to. The emails between the broker and Cedar Park immediately preceding that exchange don't contain any answers to questions about coverage of abortion and abortifacients. Theriot Decl. Ex. 3, Cedar Park Bates No. 221-3, 232. The only answers were about administrative matters like decision dates, deductibles, and COBRA. *Id*. And if Cigna *were* providing a health plan that did not provide abortion coverage, then Cigna would be in facial violation of Washington law. No one believes that Cigna was making such an offer.

In short, Cedar Park understood, correctly, as shown by the evidence, that the Cigna plans would have facilitated access to abortion and abortion-causing drugs through, or as a result of, the Church's plan—either of which violates Cedar Park's religious beliefs. Accordingly, Defendants'

motion to dismiss does not provide grounds for extending the dispositive motions deadline. Instead, all issues should be promptly resolved at summary judgment.

## II. Defendants' 11th-hour request for a document that they have known about for over six months and that is virtually identical to one previously produced does not justify delaying summary judgment.

Defendants exaggerate the production of a single document, implying that Plaintiff has failed to disclose evidence. Mot. to Extend 3. But Defendants' alleged need for more discovery based on a single belatedly requested document that is virtually identical to a document previously produced is hypothetical and meritless. Cedar Park produced the email referencing the missing attachment on July 8, 2022. Theriot Decl. ¶ 4. So Defendants have had notice of the document's existence for almost seven months but did not request the attachment until just last week. Moreover, the document contains the exact same information about available alternative plans to Kaiser as one Plaintiff produced on August 8, 2022. Theriot Decl. ¶ 8. The primary difference is some highlighting and the word "sold" on the first page. *Id.* at ¶ 9. None of these plans satisfy Cedar Park's religious objection or negate the injury Cedar Park incurred when it "lost something it previously had." *Skyline Wesleyan Church*, 968 F.3d at 748 (finding church stated a claim by alleging "it was injured once the [government] directed its insurer to immediately amend Skyline's coverage to eliminate the previous abortion exclusion, and its insurer complied").

The parties conducted extensive discovery commencing with Plaintiff submitting written discovery in December, 2021, and Defendants doing so last April. Theriot Decl. ¶¶ 10-11. Thousands of documents were exchanged and the parties took six depositions in November, 2022, just before the discovery cut-off deadline. *Id.* at ¶¶ 12-13. Defendants' request for a single document four months later that contains the identical Cigna plan alternatives discussed in a document they have had since last August does nothing to obviate the injury Cedar Park incurred

when SB 6219 caused the loss of its abortion-excluding plan. Nor does it support Defendants' motion to dismiss or justify extending the dispositive motions deadline.

### III. This motion to delay dispositive motions is part of an ongoing effort to needlessly prolong the case.

This is the third Rule 12(b)(1) motion to dismiss Defendants have filed and follows the Ninth Circuit's ruling that Cedar Park has alleged sufficient injury to state a claim. Indeed, the Ninth Circuit rejected the Defendants' argument that "[a]t best, Cedar Park's injury amounts to a complaint that it cannot cover its employees at its preferred price. That is not a cognizable injury." Appellees' Answering Br. at 20, Cedar Park Assembly of God of Kirkland v. Kreidler, 860 Fed. App'x 542(9th Cir. 2021) (No. 20-35507), 2020 WL 7266146 at *20. Defendants moved to dismiss on April 17, 2019 (ECF No. 25), October 4, 2019 (ECF No. 53), and January 5, 2023 (ECF No. 88). The most recent motion was filed just 26 days before the dispositive motions deadline of January 31, 2023, set by the Court on November 10, 2022, ECF No. 87. Despite all this, in view of the latest belated and groundless motion to dismiss, Cedar Park agreed to extend the deadline for dispositive motions till March 9, and this Court did so in its January 12, 2023 Order, ECF No. 91.

Now, in an effort to further delay this Court reaching the merits of Cedar Park's claims, Defendants are asking for an extension of the dispositive motion deadline until the Court resolves Defendants' latest motion to dismiss. The Court should reject that dilatory tactic and instead decide the motion to dismiss together with the parties' cross-motions for summary judgment. That is the only way to ensure global resolution of the dispute and a procedural posture that will allow the Ninth Circuit to rule for one side or the other, once and for all. Any other approach would be inefficient and wasteful.

## CONCLUSION

Defendants' motion to extend the dispositive motion filing deadline should be denied because it relies on a meritless motion to dismiss and belated request for a document that is virtually identical to one Plaintiff produced seven months ago. Summary judgment is the proper vehicle to resolve the parties' disputes, and the Court should consider and resolve the renewed motion to dismiss and summary judgment motions at the same time. It should do so without delay and without penalizing Cedar Park for its diligent adherence to the dispositive motions deadline.

Respectfully submitted this 3rd day of March, 2023,

*s/Kevin H. Theriot*
Kevin H. Theriot (AZ Bar #030446)*
ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, Arizona 85260
Telephone: (480) 444-0020
Facsimile:  (480) 444-0025
Email: ktheriot@adflegal.org

David A. Cortman (GA Bar #188810)*
ALLIANCE DEFENDING FREEDOM
1000 Hurricane Shoals Rd. NE
Suite D-1100
Lawrenceville, GA 30040
Telephone: (770) 339-0774
Email: dcortman@adflegal.org

*Attorneys for Plaintiff Cedar Park Assembly of God of Kirkland, Washington*
* Admitted *pro hac vice*

## CERTIFICATE OF SERVICE

I hereby certify that on March 3, 2023, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following:

Paul M. Crisalli
ATTORNEY GENERAL'S OFFICE
800 5th Ave
Ste 2000
Seattle, WA 98104

Marta U. DeLeon
ATTORNEY GENERAL'S OFFICE
PO Box 40100
Olympia, WA 98504
*Counsel for Defendants*

DATED: March 3, 2023

s/Kevin H. Theriot
Kevin H. Theriot (AZ Bar #030446)*
ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, Arizona 85260
Telephone: (480) 444-0020
Facsimile: (480) 444-0025
Email: ktheriot@adflegal.org

*Attorney for Plaintiff Cedar Park Assembly of God of Kirkland, Washington*

* Admitted *pro hac vice*