Honorable Benjamin H. Settle

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

CEDAR PARK ASSEMBLY OF GOD OF
KIRKLAND, WASHINGTON,

        Plaintiff,

    v.

MYRON "MIKE" KREIDLER, in his official
capacity as Insurance Commissioner for the State
of Washington; JAY INSLEE, in his official
capacity as Governor of the State of Washington,

        Defendants.

Civil No. 3:19-cv-05181

**PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT**

**NOTING DATE: APRIL 7, 2023**

# TABLE OF CONTENTS

Table of Authorities ...................................................................................................iii

Introduction ................................................................................................................ 1

Statement of Undisputed Facts .................................................................................. 2

    A.    Cedar Park's religious beliefs prohibit facilitating abortion, directly or indirectly. ........................................................................................... 2

    B.    Cedar Park requires a health plan that respects the sanctity of life. ....................... 3

    C.    Cedar Park's health plan was made illegal by SB 6219. ......................... 4

    D.    Washington's abortion-coverage mandate. ............................................ 4

    E.    SB 6219's abortion mandate was not prompted by any complaints about a lack of abortion coverage. .......................................................... 6

    F.    Washington's Conscience Clause does not effectively protect, but discriminates against, Cedar Park's religious beliefs prohibiting facilitating abortion. ......................................................................... 6

    G.    Washington's abortion-coverage mandate compels Cedar Park's health plan to facilitate abortion. ......................................................... 9

Argument .................................................................................................................. 10

I.    The Statutes violate Free Exercise because it is undisputed that they facilitate abortion access and contain exceptions eliminating neutrality and general applicability, subjecting them to strict scrutiny. ...................................................... 11

    A.    The Statutes impose an impermissible burden on Cedar Park's exercise of religion by coercing the Church to facilitate access to abortion and abortifacients. ..................................................................... 11

    B.    The Statutes are subject to strict scrutiny because they are neither neutral nor generally applicable. ...................................................... 13

        1.    The Statutes provide exemptions that undermine the Defendants' stated interest in providing women access to health benefits. .................. 13

            a.    Categorical exemptions ................................................................ 13

            b.    Individualized exemptions ........................................................... 16

        2.    The Statutes are not neutral in their operation. ......................................... 17

PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT

i

ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, Arizona 85260
(480) 444-0020

a.   SB 6219 is impermissibly gerrymandered. ................................... 17

b.   RCW § 48.43.065 treats churches less favorably than other
     religious organizations. ................................................ 18

c.   SB 6219 intentionally discriminates against religious
     organizations like Cedar Park. ....................................... 19

C.   The Statutes fail strict scrutiny. .......................................................... 20

1.   The Statutes do not serve a rational, much less compelling,
     government interest. ................................................................... 20

2.   The Statutes are not narrowly tailored. ....................................... 21

D.   SB 6219 fails to respect rights of conscience rooted in the Religion Clauses. ...... 23

II.  The undisputed facts show the Statutes violate Cedar Park's religious autonomy ........... 23

Conclusion ................................................................................................ 24

Certificate of Service ................................................................................ 26

PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT

ii

ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, Arizona 85260
(480) 444-0020

# TABLE OF AUTHORITIES

**Cases**

*Braunfeld v. Brown,*
 366 U.S. 599 (1961)...................................................................................... 13

*Brown v. Entertainment Merchants Association,*
 564 U.S. 786 (2011)...................................................................................... 20

*Burwell v. Hobby Lobby Stores,*
 573 U.S. 682 (2014)............................................................................... 11, 22

*Cedar Park Assembly of God of Kirkland v. Kreidler,*
 860 Fed. App'x 542 (2021).......................................................................... 12

*Church of the Lukumi Babalu v. City of Hialeah,*
 508 U.S. 520 (1993)............................................................................. passim

*Employment Division, Department of Human Resources of Oregon v. Smith,*
 494 U.S. 872 (1990).............................................................................. 11, 24

*Espinoza v. Montana Department of Revenue,*
 140 S.Ct. 2246 (2020).................................................................................. 20

*Foothill v. Watanabe,*
 __ F.Supp.3d___ (2022), 2022 WL 3684900 (E.D. Cal. 2022)............... 17, 22

*Fraternal Order of Police Newark Lodge No. 12 v. City of Newark,*
 170 F.3d 359 (3d Cir. 1999) .................................................................. 14, 18

*Frisby v. Schultz,*
 487 U.S. 474 (1988)...................................................................................... 21

*Fulton v. City of Philadelphia, Pennsylvania,*
 141 S. Ct. 1868 (2021).................................................................................. 11

*Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal,*
 546 U.S. 418 (2006).............................................................................. 20, 21

*Grutter v. Bollinger,*
 539 U.S. 306 (2003)...................................................................................... 22

*Hosanna-Tabor Evangelical Lutheran Church & School v. E.E.O.C.,*
 565 U.S. 171 (2012)...................................................................................... 23

ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, Arizona 85260
(480) 444-0020

*Kedroff v. St. Nicholas Cathedral of Russian Orthodox Church in North America*,
    344 U.S. 94 (1952)......................................................................................... 1, 24

*Larson v. Valente*,
    456 U.S. 228 (1982)............................................................................................. 18

*Masterpiece Cakeshop, Ltd. v. Colorado Civil Rights Commission*,
    138 S.Ct. 1719 (2018).................................................................................... 13, 19

*Midrash Sephardi, Inc. v. Town of Surfside*,
    366 F.3d 1214 (11th Cir. 2004) ......................................................................... 14

*Roman Catholic Diocese of Brooklyn v. Cuomo*,
    141 S.Ct. 63 (2020)....................................................................................... 14, 18

*Serbian Eastern Orthodox Diocese v. Milivojevich*,
    426 U.S. 696 (1976)............................................................................................ 24

*Sharpe Holdings, Inc. v. U.S. Department of Health and Human Services*,
    801 F.3d 927 (8th Cir. 2015) ............................................................................. 12

*Skyline Wesleyan Church v. California Department of Managed Health Care*,
    968 F.3d 738 (9th Cir. 2020) ............................................................................. 12

*T.W. Electrical Service, Inc. v. Pacific Electrical Contractors Association*,
    809 F.2d 626 (9th Cir. 1987) ............................................................................. 10

*Tandon v. Newsom*,
    141 S.Ct. 1294 (2021).................................................................................. 13, 14

*Thomas v. Review Board of the Indiana Employment Security Division*,
    450 U.S. 707 (1981).................................................................................... 21, 23

*Thrifty Oil Company v. Bank of America National Trust & Savings Association*,
    322 F.3d 1039 (9th Cir. 2003) ........................................................................... 11

*Trinity Lutheran Church of Columbia, Inc. v. Comer*,
    137 S.Ct. 2012 (2017)........................................................................................ 24

*United States v. Playboy Entertainment Group, Inc.*,
    529 U.S. 803 (2000)..................................................................................... 21, 22

*Watson v. Jones*,
    80 U.S. 679 (1871)............................................................................................. 24

**Statutes**

26 U.S.C. § 4980....................................................................................................... 9

ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, Arizona 85260
(480) 444-0020

RCW § 48.43.005 ..................................................................................... 6, 14, 22

RCW § 48.43.065 ..................................................................................... passim

RCW § 48.43.072 ......................................................................................... 1, 5, 12

RCW § 48.43.073 ..................................................................................... passim

**Other Authorities**

*Does Medicare Cover Pregnancy?*, MEDICARE.ORG, http://bit.ly/3ZPS5HJ ............................. 14

Douglas Laycock, *Theology Scholarships, the Pledge of Allegiance, and Religious Liberty: Avoiding the Extremes but Missing the Liberty*, 118 HARV. L. REV. 155 (2004) ............... 11, 15

*Maternity (Pregnancy) Care, Covered Services*, TRICARE.MIL, http://bit.ly/3IYMV5z ............... 14

Matt Markovich, *Catholic Bishops of Wash. ask Gov. Inslee to Veto Abortion Insurance Bill*, KOMO NEWS (March 5, 2018), https://bit.ly/2Uuu5Nf ..................................... 19

*Over-the-Counter Drugs and Supplies, Covered Services,* TRICARE.MIL, http://bit.ly/3ymtTBo ........................................................................... 14

REP. SHEA, H AMD 1311, available at https://bit.ly/41XVwy7 ................................. 5, 19

SEN. O'BAN, S AMD 380, available at https://bit.ly/3YzAfIi .................................. 5, 19

SEN. RIVERS, S. Doc. No. S-3824.1/18, available at https://bit.ly/3IXJGew ...................... 5, 19

Wash. Att'y Gen. Op. 2002 No. 5, Interpretation of "Conscientious Objection" Statute Allowing Employers to Refrain from Including Certain Items in the Employee Health Care Benefit Package (Aug. 8, 2002), https://bit.ly/3fzu14B .......................................... 8

**Rules**

FED. R. CIV. P. 56 ....................................................................................... 10

PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT

v

ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, Arizona 85260
(480) 444-0020

**INTRODUCTION**

This case is about whether churches may operate according to their religious beliefs on the sanctity of human life—"free from state interference." *Kedroff v. St. Nicholas Cathedral of Russian Orthodox Church in N. Am.*, 344 U.S. 94, 116 (1952). Cedar Park was free to do so; the Church had a health care plan that provided necessary medical coverage to its employees and their families while excluding elective abortion and abortifacients consistent with its beliefs. SB 6219 changed that.[1] The law requires most Washington employers to include abortion and abortifacient-contraceptive coverage in their health plans. And it purposefully contains no religious exception. When churches protested based on their religious belief in the sanctity of human life, the bill's sponsor did not say that their beliefs were accommodated. The sponsor told churches to sue—indicating SB 6219 *intentionally violated* their beliefs. SB 6219's real-world effect was exactly what the bill's sponsor intended. It injured Cedar Park by causing it to lose its conscience-conforming health insurance and forcing it to choose between paying significantly more for an inferior health plan or violating its deeply-held religious convictions.

Cedar Park took the only sensible path forward and sued. Now Cedar Park is entitled to judgment as a matter of law under the Free Exercise Clause because the undisputed facts show: (a) the mandated abortion coverage substantially burdens the Church's religious beliefs by causing it to participate in, facilitate, or pay for abortion (Defendants concede even if the employer chooses to "exclude" services like abortion, "the plan actually provides for access");[2] (b) the mandate is neither neutral nor generally applicable, and involves a system of "individualized assessments;" and (c) it interferes with the Church's ability to conduct its internal affairs consistently with its religious beliefs about abortion, violating the church-autonomy doctrine. As a result, SB 6219, and

---

[1] SB 6219, codified at RCW §§ 48.43.072 & .073, states, "if a health *plan* provides coverage for maternity care or services, the health *plan* must also provide a covered person with substantially equivalent coverage to permit the abortion of a pregnancy." (emphasis added).

[2] Sec. Am. Verified Compl. ¶ 46-48, ECF No. 46, as supplemented by ECF No. 52-1 ("VC"); Tocco Dep., 102 & 105, ECF No. 93-4.

PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT

1

ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, Arizona 85260
(480) 444-0020

Washington's ineffective and discriminatory Conscience Clause, RCW § 48.45.065 (the "Statutes"), are subject to strict scrutiny—which they cannot survive.

STATEMENT OF UNDISPUTED FACTS

**A.    Cedar Park's religious beliefs prohibit facilitating abortion, directly or indirectly.**

Cedar Park has served the Bothell and greater Eastside communities of Washington for nearly half a century. Sec. Am. Verified Compl. ¶ 18, ECF No. 46, as supplemented by ECF No. 52-1 ("VC"). The Church is associated with the Assemblies of God, has over 600 members, and hosts about 1,500 people at its weekly services. *Id.* ¶ 19. To serve its congregation and the community, Cedar Park employs a sizeable team and provides health coverage to roughly 140 people. Orcutt Decl. ¶ 7, ECF No. 94-1.

Like many churches worldwide, Cedar Park holds and teaches the belief that each human life is sacred from the moment of conception because God formed that life in His own likeness. VC ¶ 24. Cedar Park's governing documents—its Constitution and Bylaws—enshrine this religious belief:

> Under the *Imago Dei* principle, all human life is sacred and made by God, in His image. Because all humans are image-bearers, human life is of immeasurable worth in all of its dimensions, including pre-born babies, the aged, the physically or mentally challenged, and every other stage or condition from conception through natural death. As such, we as Christians are called to defend, protect, and value all human life. *Id.* ¶ 25.

Abortion violates Cedar Park's religious belief about the sanctity of human life in several ways. *Id.* ¶ 26. First, Cedar Park believes and teaches that *participating in, facilitating, or paying for abortion is a grave sin*. *Id.* ¶ 29. The Church reads the Bible as prohibiting the "intentional destruction of innocent human life," including abortion. *Id.* ¶ 27. Second, the Church views abortion as incompatible with the dignity God conferred on humankind by making individuals in His image. *Id.* ¶ 28. And third, the Church believes any facilitation of abortion, directly or indirectly, injures its religious mission of recognizing and preserving human life from conception until natural death. *Id.* ¶ 30; Smith Decl. ¶ 6, ECF No. 50.

PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT

2

ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, Arizona 85260
(480) 444-0020

Cedar Park does not simply believe in the importance of human life—it puts those beliefs into practice. The Church hosts an annual service known as "Presentation Sunday" in which the congregation prays for and supports couples experiencing infertility. *Id.* ¶ 34. Cedar Park has also facilitated about 1,000 embryo adoptions in recent years. *Id.* ¶ 36. To serve the larger community, the Church partners with a local pregnancy center that supports women experiencing unplanned pregnancies. *Id.* ¶ 35. Cedar Park even hosted a mobile ultrasound unit on campus so that women considering abortion could see the unique individual growing inside them. *Id.*

Cedar Park only hires employees who agree with and live by the Church's religious teachings—including those about the sanctity of human life—at work and in their private lives. *Id.* ¶ 32. To that end, each church employee signs an agreement to "liv[e] a life that reflects the values, mission, and faith of Cedar Park." *Id.* Church employees are barred from engaging in "behavior that conflicts or appears inconsistent with evangelical Christian standards as determined in the sole and absolute discretion of Cedar Park." *Id.*

**B.    Cedar Park requires a health plan that respects the sanctity of life.**

Like all its other programs, Cedar Park's health plan (prior to SB 6219) affirmed the Church's religious belief in the sanctity of human life. VC ¶¶ 39-41. Cedar Park's group health plan included comprehensive maternity care (as federal law requires) but excluded abortion coverage. *Id.* ¶¶ 45-47.[3]  It seriously violates Cedar Park's religious beliefs to provide health coverage that contradicts the Church's biblical teachings. *Id.* ¶ 41.

Health coverage is not just a vital employment benefit, but also one way that Cedar Park performs its religious duty to care for church employees. *Id.* ¶¶ 40, 83-86. This religious obligation extends past furthering employees' spiritual and emotional well-being to protecting their physical health. *Id.* ¶ 39. A group health insurance plan is Cedar Park's only viable way to safeguard its

---

[3] Despite its brokers' assurances to the contrary, Cedar Park learned its health plan actually included abortifacients just before filing this lawsuit. But it took steps to change that as soon as possible. VC ¶ 48.

PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT

3

employees' health, which is not just a religious calling but a legal obligation under the federal Patient Protection and Affordable Care Act ("ACA"). *Id*. ¶¶ 40-42.

### C.    Cedar Park's health plan was made illegal by SB 6219.

After SB 6219 took effect, Cedar Park's group health insurance plan accommodating its beliefs was no longer legal; self-insurance was and is the only available plan that could comply with Cedar Park's religious beliefs about protecting employees and declining to facilitate abortion. Orcutt Decl. ¶ 9; VC ¶ 43; Orcutt Dep. 39-41, ECF No. 92 at 42-44. But after evaluating self-insurance, Cedar Park discovered that it would cost roughly $243,125 more annually to become self-insured and that this number was expected to double within a few years due to increased plan use. *Id.* And self-insurance does not provide comparable benefits. It requires Cedar Park to assume 100% of the risk of claims exceeding premiums, unlike fully insured plans, which place all risk on the carrier. Orcutt Decl. ¶¶ 19, 21. Moreover, a self-insured plan requires purchasing stop-loss insurance, and Cedar Park would have had trouble being eligible for it after several years of an employee making extremely high claims because of a severely ill child. *Id.* ¶¶ 26-28.

The additional cost of hundreds of thousands of dollars more each year for health insurance was unaffordable and would require the church to significantly reduce its other ministries, thus creating an additional free exercise violation. *Id.* Purchasing group health insurance regulated by the Washington State Office of the Insurance Commissioner is the only sustainable way for Cedar Park to keep its religious ministries intact. *Id.*

### D.    Washington's abortion-coverage mandate.

"Historically, Washington law has not mandated abortion coverage." AG DeLeon May 8, 2018, Memo, 2, attached as Ex. 1. But Washington Senate Bill 6219, which was signed into law on June 7, 2018, established new rules for group health plans issued or renewed in 2019 or later by requiring them to include coverage for abortions and abortifacients. *Id.* A health plan that "provides coverage for maternity care or services . . . must also provide a covered person with substantially equivalent coverage to permit the abortion of a pregnancy." VC ¶ 49; RCW §

48.43.073(1); Wash. Admin. Code § 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(2). What's more, such a health plan generally "may not limit in any way a person's access to services related to the abortion of a pregnancy." *Id.*; RCW § 48.43.073(2)(a).

Group health plans also must cover (1) "[a]ll contraceptive drugs, devices, and other products, approved by the federal food and drug administration, including over-the-counter contraceptive drugs, devices, and products, approved by the federal food and drug administration," (2) "[v]oluntary sterilization procedures," and (3) related "consultations, examinations, procedures, and medical services that are necessary to prescribe, dispense, insert, deliver, distribute, administer, or remove" those items. VC ¶ 50; RCW § 48.43.072(1).

Defendants admit that anyone who violates Washington's abortion-coverage mandate is guilty of a gross misdemeanor and may be fined up to $1,000 and imprisoned up to 364 days, besides other potential penalties. VC ¶ 73; Answer ¶ 73, ECF No. 77; RCW § 48.01.080. Yet Senate Bill 6219 itself contains no exemption for houses of worship or other religious ministries who object to facilitating abortion and abortifacient contraceptives with their health plans. VC ¶ 51.

Disdaining this crisis of conscience, the bill's sponsor, Senator Steve Hobbs, publicly stated that churches can sue if they do not wish to provide insurance coverage for abortion. *Id.* ¶ 54. And on three separate occasions, the legislature specifically refused to amend SB 6219 to include protection for religious organizations.[4] State officials thus deliberately targeted houses of worship for mandatory abortion coverage and, in so doing, intentionally violated their religious beliefs about the sanctity of human life. *Id*.

At the same time, state officials provided explicit secular exemptions to the abortion-coverage mandate. First, Senate Bill 6219 does not apply to all insurance plans, even if they may cover maternity. It excludes short-term, limited-purpose plans; property/casualty liability plans;

---

[4] SEN. RIVERS, S. Doc. No. S-3824.1/18, available at https://bit.ly/3IXJGew; SEN. O'BAN, S AMD 380, available at https://bit.ly/3YzAfIi; REP. SHEA, H AMD 1311, available at https://bit.ly/41XVwy7.

ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, Arizona 85260
(480) 444-0020

supplemental Medicare; and supplemental Tricare. Molly Nollette Dep., 46-61, ECF No. 93-5; RCW § 48.43.005(29); Beyer Sep. 21, 2018, email to Weeks-Green, attached as Ex. 2 (confirming that SB 6219 does not apply to disability and short term, limited purpose plans). The Office of the Insurance Commissioner ("OIC") regulates all these plans. Nollette Dep., 42-44. Second, the bill's abortion-coverage mandate does not apply "to the minimum extent necessary for the state to be in compliance" with "federal requirements" that are a "condition to the allocation of federal funds to the state." VC ¶ 56; RCW § 48.43.073(5). In other words, if federal dollars are at stake, Washington's abortion-coverage requirement gives way.

### E. SB 6219's abortion mandate was not prompted by any complaints about a lack of abortion coverage.

The OIC received no complaints about health care plans not covering abortion before Washington enacted SB 6219. Daniel Dep. 13, attached as Ex. 3. The only pre-SB 6219 complaints it received about health care plans not covering contraception concerned birth control pills and vasectomies. *Id*. at 14. Moreover, the state attorney tasked with enforcing insurance regulations is unaware of any enforcement actions against carriers for failure to cover contraception when SB 6219 was enacted in 2018. Pasarow Dep. 14-15, attached as Ex. 4.

Washington's only interest in passing SB 6219 is "protecting gender equity and women's reproductive health," as explained in the statute's preamble. Nollette Dep. 74. This interest generally includes access to reproductive health care regardless of "a woman's income level" or "type of insurance." Ex. A to VC, ECF No. 46-1. Defendants made no attempt to further those interests through less restrictive means before implementing the abortion-coverage mandate. Nollette Dep. at 75-76.

### F. Washington's Conscience Clause does not effectively protect, but discriminates against, Cedar Park's religious beliefs prohibiting facilitating abortion.

Another Washington law, called the Conscience Clause, purports to safeguard conscience rights in the insurance context. But the protection it affords to houses of worship—and most other conscientious objectors—is superficial and ineffective. VC ¶ 62; RCW § 48.43.065. From the

beginning, § 48.43.065(1) makes clear that conscientious objectors enjoy protection only to the extent there is no impact on employees' ability "to receive the full range of services covered under the [basic health] plan," including abortion services.

The only accommodation § 48.43.065 gives houses of worship with religious objections to covering "a specific service" (like abortion) is that they are not required to directly "purchase coverage for that service" from an insurance provider. RCW § 48.43.065(3)(a); *accord* VC ¶ 66. But the Conscience Clause requires a church's insurance carrier to provide indirect "coverage of, and timely access to, any service or services excluded from [an individual's] benefits package [like abortion] as a result of their employer's . . . exercise of the conscience clause." RCW § 48.43.065(3)(b); *accord* VC ¶ 67. In effect, Cedar Park's purchase of a health plan triggers abortion coverage, facilitates abortion, and thus violates the Church's religious beliefs. Cedar Park—like many religious organizations—objects "to paying for, facilitating access to, or providing insurance coverage for abortion or abortifacient contraceptives *under any circumstance*." VC ¶ 78 (emphasis added). It does not matter whether the payment or facilitation of abortion is direct or indirect: if abortion coverage results from the Church's health plan as it does in this case, it violates Cedar Park's religious beliefs. Smith Decl. ¶ 6.

Even worse, abortion coverage is *actually part* of Cedar Park's plan. The government official in charge of reviewing health plan filings for legal compliance testified that notice of how to obtain abortion or abortifacients is contained "in the *plan* documents," and even if the employer chooses to "exclude" services like abortion, "the *plan* actually provides for access." Tocco Dep., 12, 102 & 105 (emphasis added); *see also* Orcutt Dep. 42-43 ("It is my understanding from my discussions with Jami [our insurance broker] that even if we—if we expressed our desire to not cover abortions or specific contraceptives, they would be included in our plan."). Tellingly, enrollees in group or level-funded health plans use *the same insurance card* to obtain abortifacients as non-objectionable drugs. Orcutt Decl. ¶ 12 (citing August 8, 2010, email from Hansen to Orcutt, ECF No. 92 at 216).

ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, Arizona 85260
(480) 444-0020

1       Moreover, § 48.43.065 allows insurance providers to charge churches for abortion

2   coverage even if those costs are purportedly excluded, as "[n]othing in this section requires a health

3   carrier . . . to provide any health care services without appropriate payment of premium or fee."

4   RCW § 48.43.065(4); *accord* VC ¶ 63. In other words, Washington's Conscience Clause is a fig

5   leaf that magnifies—rather than mitigates—Cedar Park's religious harm. It requires insurance

6   providers to provide objectionable abortion and abortifacient-contraceptive coverage either as a

7   part of, or a result of, Cedar Park's group health plan, then authorizes insurance providers to charge

8   Cedar Park for that abortion coverage. VC ¶¶ 70-71; Tocco Dep., 111 (carriers can still charge a

9   premium for services an employer objects to but the carrier provides). Adding insult to injury,

10  Defendants admit that insurance providers may pull off this sleight of hand by increasing Cedar

11  Park's premiums through characterizing the cost of objectional services (like abortion) as

12  "overhead." VC ¶ 71; Answer ¶ 71; *see also* Wash. Att'y Gen. Op. 2002 No. 5, Interpretation of

13  "Conscientious Objection" Statute Allowing Employers to Refrain from Including Certain Items

14  in the Employee Health Care Benefit Package (Aug. 8, 2002), https://bit.ly/3fzu14B. Defendants

15  also concede the carrier could facilitate that coverage by distributing the risk to all or some

16  members of the group health plan, or through a third party. *See* MTD Reply 10, ECF No. 95. Any

17  of these ways violate Cedar Park's religious beliefs, as the result is the same: the Church's purchase

18  of a group health plan facilitates the provision of objectionable abortion services to plan

19  participants they otherwise would lack.

20      But Washington law does not deprive every employer of true conscience protection.

21  Section 48.43.065(2)(a) safeguards health care providers, religiously sponsored health carriers,

22  and health care facilities from being "required by law or contract in any circumstances to

23  participate in the *provision of or payment of* a specific service [like abortion] if they object to so

24  doing for reason of conscience or religion." (emphasis added); *accord* VC ¶ 104; Tocco Dep. 74-

25  75 (§ 48.43.065(2)(a) protects health care providers from having to pay for care they object to);

26  Nollette Dep. 64 (Both subsections 2 and 3 of § 48.43.065 protect religious health care providers

27

28

PLAINTIFF'S MOTION FOR              8
SUMMARY JUDGMENT

1   and facilities from having to pay for objectionable health care service like abortion and

2   contraception). Religious health care providers, health carriers, and health care facilities are thus

3   completely exempt from including abortion coverage in their employee health plans. VC ¶ 104.

4   Neither must religiously sponsored health carriers include abortion coverage in the plans they offer

5   to others. All they must do is inform enrollees of the services they refuse to cover and ensure those

6   enrollees have prompt access to written information about how they may directly access those

7   services in an expeditious manner. *Id.*; RCW § 48.43.065(2)(b).

8       In sum, Washington offers real conscience protection to health care providers, religiously

9   sponsored health carriers, and health care facilities. These religious entities need not include

10  objectionable services like abortion in their own employee health plans or otherwise facilitate

11  objectionable abortion coverage in any circumstance. VC ¶ 66. Yet because Cedar Park is a church

12  and not a health care entity, Washington forces it to (at best) indirectly facilitate abortion as a result

13  of its health plan, and authorizes insurance providers to charge Cedar Park for this abortion

14  coverage, in violation of the Church's beliefs. VC ¶ 70.

15      **G.    Washington's abortion-coverage mandate compels Cedar Park's
16              health plan to facilitate abortion.**

17      Cedar Park offers its employees a health plan with comprehensive maternity coverage for

18  religious reasons and because the ACA requires the Church to do so. VC ¶¶ 77-80; *accord* 26

19  U.S.C. § 4980H; 42 U.S.C. § 18022(b)(1)(D). Otherwise, Cedar Park faces crippling fines of up

20  to $100 per plan participant for each day it fails to comply. VC ¶ 81; 26 U.S.C. § 4980D. Just as

21  the Washington Legislature anticipated, the Church's group health plan automatically triggers

22  Senate Bill 6219's abortion-coverage requirement. *Id.*

23      As a result, Cedar Park's insurance provider, Kaiser Permanente, informed the Church on

24  August 14, 2019, that due to SB 6219 it would directly include abortion coverage in the Church's

25  health plan, set to renew on September 1, 2019. Suppl. VC ¶ 48.1. In fact, because of SB 6219,

26  Kaiser offers no abortion exclusions to fully insured groups like Cedar Park, whether under §

27  48.43.065 or otherwise. *Id.* ¶ 48.2.

28

PLAINTIFF'S MOTION FOR                  9          ALLIANCE DEFENDING FREEDOM
SUMMARY JUDGMENT                                   15100 N. 90th Street
                                                   Scottsdale, Arizona 85260
                                                   (480) 444-0020

But that does not mean Kaiser Permanente objects to the kind of policy Cedar Park needs to reflect its religious beliefs. To the contrary, Kaiser expressed its willingness to eliminate abortion coverage from Cedar Park's health plan mid-year if this court enjoins Senate Bill 6219's application to houses of worship. *Id*. ¶ 48.3. Without an injunction, accommodating Cedar Park's religious beliefs about the sanctity of human life poses too great a risk to Kaiser and other nonreligious health insurers, subjecting them to SB 6219's harsh penalties.

In short, as a direct result of Washington enacting SB 6219, Kaiser Permanente inserted abortion coverage into Cedar Park's health plan. *Id*. ¶ 48.2. That insertion violated Cedar Park's religious beliefs. Cedar Park unsuccessfully tried to mitigate this violation by searching for replacement coverage. Orcutt Decl. ¶¶ 9, 19, 21. But to ensure that Cedar Park's employees did not experience a devastating lapse in health coverage, the Church was forced to renew its modified plan under protest. Suppl. VC ¶ 48.2.

## ARGUMENT

Summary judgment is required when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The party moving for summary judgment bears the initial burden of identifying evidence in the record that shows no genuine issue of material fact exists. *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

As shown above, it is undisputed that (1) the Church's religious beliefs prohibit facilitating abortion or abortifacients in any circumstance, (2) SB 6219 resulted in Cedar Park losing its health plan that accommodated those beliefs, (3) Cedar Park no longer has access to a comparable health plan that meets its religious convictions, and (4) the Conscience Clause's limited protection also requires abortion facilitation and discriminates against churches. So Defendants must now put forth "*specific facts* showing that there is a genuine issue for trial." *Id*. If the case involves a "mixed question of fact and law and the only disputes relate to the legal significance of undisputed facts,

PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT

10

ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, Arizona 85260
(480) 444-0020

the controversy collapses into a question of law suitable to disposition on summary judgment." *Thrifty Oil Co. v. Bank of Am. Nat'l Tr. & Sav. Ass'n*, 322 F.3d 1039, 1046 (9th Cir. 2003).

I.      **The Statutes violate Free Exercise because it is undisputed that they facilitate abortion access and contain exceptions eliminating neutrality and general applicability, subjecting them to strict scrutiny.**

The Free Exercise Clause forbids the government from imposing "special disabilities on the basis of religious views or religious status." *Emp. Div., Dep't of Hum. Res. of Or. v. Smith*, 494 U.S. 872, 877 (1990). [5] "Bad motive may be one way to pursue a violation, but first and foremost, *Smith-Lukumi* is about objectively unequal treatment of religion and analogous secular activities." Douglas Laycock, *Theology Scholarships, the Pledge of Allegiance, and Religious Liberty: Avoiding the Extremes but Missing the Liberty*, 118 HARV. L. REV. 155, 210 (2004). Laws that burden religiously motivated conduct are subject to strict scrutiny if they are not generally applicable or not religiously neutral. *Church of the Lukumi Babalu v. City of Hialeah*, 508 U.S. 520, 546 (1993). The Statutes fail both tests.

A.      **The Statutes impose an impermissible burden on Cedar Park's exercise of religion by coercing the Church to facilitate access to abortion and abortifacients.**

To trigger Free Exercise Clause protection, Cedar Park need only show that the Statutes burden its religion. *Lukumi*, 508 U.S. at 531. SB 6219 burdens Cedar Park's free exercise of religion by coercing it to facilitate abortion as a result of offering a group health plan. This is a prototypical substantial burden. *E.g., Burwell v. Hobby Lobby Stores*, 573 U.S. 682, 720-22 (2014) (requiring companies to cover abortifacients in their employee health insurance plans substantially burdened their religious beliefs not to facilitate abortion); *Skyline Wesleyan Church*

---

[5] *Smith* should be overruled. *See Fulton v. City of Phila., Pa.,* 141 S.Ct. 1868, 1882 (2021) (Barrett, J., joined by Kavanaugh, J., concurring) and *id.* at 1924 (Alito, J., joined by Thomas, J., and Gorsuch, J.). Cedar Park acknowledges that this Court lacks the authority to overrule *Smith*, but preserves that argument for a future appeal, if necessary.

ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, Arizona 85260
(480) 444-0020

1   *v. Cal. Dep't of Managed Health Care*, 968 F.3d 738, 747 (9th Cir. 2020) (church "suffered an

2   injury in fact" when California mandated "immediate[]" coverage of elective abortion in violation

3   of the church's beliefs); *Cedar Park Assembly of God of Kirkland v. Kreidler*, 860 Fed. App'x

4   542, 543 (2021) (same).

5        Because Cedar Park believes that abortion ends a life, the Church teaches that participating

6   in, facilitating, or paying for abortion in any circumstance is a grave sin. This includes indirect

7   payments such as increased premiums, or abortion coverage triggered by the Church's plan, even

8   if it is not included within the plan. VC ¶ 29; Smith Decl. ¶ 6. That belief is constitutionally

9   protected. For example, even submitting an accommodation request substantially burdened

10  religious business owners' beliefs because it "trigger[ed] the provision of objectionable coverage

11  by their [third party administrator], making them complicit in conduct that violates their religious

12  beliefs." *Sharpe Holdings, Inc. v. U.S. Dep't of Health and Hum. Services*, 801 F.3d 927, 938-41

13  (8th Cir. 2015), *vacated on other grounds*, 2016 WL 2842448 (May 16, 2016). "That they

14  themselves do not have to arrange for or pay for objectionable contraceptive coverage is not

15  determinative of whether the required or forbidden act is not religiously offensive." *Id.* at 942.

16       Moreover, the undisputed facts show that, unless they self-insure with a more expensive

17  yet inferior policy, SB 6219 requires Cedar Park's group health plan to cover abortion and

18  abortion causing drugs. The statute itself dictates: "A health *plan* issued or renewed on or after

19  January 1, 2019, shall provide coverage for all contraceptive drugs," including arbortifacients,

20  and "if a health *plan* provides coverage for maternity care or services, the health *plan* must also

21  provide a covered person with substantially equivalent coverage to permit the abortion of a

22  pregnancy." RCW §§ 48.43.072(1)(a) and .073(1) (cleaned up & emphasis added). Defendants'

23  30(b)(6) witness and the insight provided by Cedar Park's insurance broker confirm the statute is

24  applied so that abortion is included in its plan, even if Cedar Park objects. Tocco Dep., 102 & 105

25  ("the plan actually provides for access"); Orcutt Dep. 42-43; Orcutt Decl. ¶ 12.

26

27

28

The exemption in RCW § 48.43.065(3) does not alleviate this burden because it specifically provides that "[t]he provisions of this section shall not result in an enrollee being denied coverage of, and timely access to, any service or services excluded from their benefits package as a result of their employer's or another individual's exercise of the conscience clause." *Id.* at 3(b). It also intensifies the religious burden by discriminating among religious organizations, as the Conscience Clause completely exempts religious health care providers and entities. *Supra* Facts § F. Worse still, the Conscience Clause authorizes insurance carriers to increase Cedar Park's premiums to cover the cost of abortions even if abortion coverage is not expressly included in the Church's plan. *Id.* Accordingly, SB 6219 renders "unlawful the religious practice itself," by requiring Cedar Park to facilitate insurance coverage for abortion under threat of criminal liability and jail time. *See Braunfeld v. Brown*, 366 U.S. 599, 606 (1961). That is a substantial burden.

**B.    The Statutes are subject to strict scrutiny because they are neither neutral nor generally applicable.**

The Statutes violate the Free Exercise Clause under the *Smith* test because they: (1) exempt secular conduct, but not similar religious conduct, *Tandon v. Newsom*, 141 S.Ct. 1294, 1296 (2021); (2) are gerrymandered to single out religious conduct for disfavored treatment, *Lukumi*, 508 U.S. at 532-40; (3) discriminate among religions or types of religious organizations, *Id.* at 536; and/or (4) were enacted with discriminatory intent or hostility toward religious conduct, *Masterpiece Cakeshop, Ltd. v. Colo. C.R. Comm'n*, 138 S.Ct. 1719, 1729-31 (2018).

**1.    The Statutes provide exemptions that undermine the Defendants' stated interest in providing women access to health benefits.**

**a.    Categorical exemptions**

SB 6219 is not generally applicable because it has secular exemptions that significantly undermine the Defendants' stated interest in providing women better access to health benefits. Even a single exemption that undermines a state's asserted interest eliminates general applicability. "Government regulations are not neutral and generally applicable, and therefore

trigger strict scrutiny under the Free Exercise Clause, whenever they treat *any* comparable secular activity more favorably than religious exercise." *Tandon*, 141 S.Ct. at 1296 (California's restriction on at-home religious worship services was not neutral and generally applicable because it had exemptions for comparable secular activities like hair salons, movie theaters, and restaurants); *accord Roman Cath. Diocese of Brooklyn v. Cuomo*, 141 S.Ct. 63, 66-67 (2020) (New York's attendance cap on houses of worship was not neutral and generally applicable because it treated schools and factories more favorably); *Fraternal Ord. of Police Newark Lodge No. 12 v. City of Newark*, 170 F.3d 359, 366 (3d Cir. 1999) (Alito, J.) (striking down a prohibition on police officers growing beards for religious reasons because a medical exemption was allowed); *Midrash Sephardi, Inc. v. Town of Surfside*, 366 F.3d 1214, 1234-35 (11th Cir. 2004) (single exemption for clubs and lodges to zoning district limited to retail shopping "violates the principles of neutrality and general applicability because private clubs and lodges endanger [the town's] interest in retail synergy as much or more than churches and synagogues").

There are numerous secular exemptions here. Washington law exempts 13 different types of insurance plans from the definition of "health plans." RCW § 48.43.005(31). These include plans that the abortion mandate would otherwise govern because they cover maternity and abortifacients like short term, limited purpose plans; property/casualty liability plans; supplemental Medicare; and supplemental Tricare. Nollette Dep., 46-61.[6] SB 6219 also allows

---

[6] Nollette testified that the short term, limited purpose plans, and property/casualty liability plans could cover maternity. Nollette Dep., 53-54; 58-59. She also testified that the supplemental plans cover maternity and contraception if it is covered by "the base plan." *Id.* at 46-48; 60-61. Medicare covers maternity and Tricare covers both maternity and contraception. *Does Medicare Cover Pregnancy?*, MEDICARE.ORG, http://bit.ly/3ZPS5HJ (last visited March 9, 2023) (noting "All pregnancy-related care you get when you are formally admitted into the hospital is covered by Original Medicare Part A hospital insurance. Medicare Part B covers all doctors' visits and other outpatient services and tests related to your pregnancy."); *Maternity (Pregnancy) Care, Covered Services*, TRICARE.MIL, http://bit.ly/3IYMV5z (last visited March 9, 2023) (noting "TRICARE covers all medically-necessary pregnancy care"); *Over-the-Counter Drugs and Supplies, Covered Services*, TRICARE.MIL, http://bit.ly/3ymtTBo (last visited Feb. 16, 2023) (noting "TRICARE covers some over-the-counter (OTC) drugs and supplies. . . . Levonorgestrel (Plan B One-Step Emergency Contraceptive) is covered without a prescription from your doctor.").

for an exemption to the abortion mandate if necessary to avoid violating federal conditions on state funding, and exempts plans that do not provide comprehensive maternity care coverage. RCW § 48.43.073(1) & (5). And Washington law completely exempts insurance plans provided by religious health care organizations from the abortion insurance requirement. RCW § 48.43.065(2)(a); Tocco Dep. 74-75; Nollette Dep. 64. These exemptions undermine Defendants' purpose of protecting women's access to reproductive health care. SB 6219, ECF No. 46-1; Nollette Dep. 73 (SB 6219 preamble contains all the state interests for the law). If exempting religious organizations like Cedar Park from paying for abortion undercuts that purpose, so does exempting other plans that cover maternity and contraception. The same is true for plans that do not cover maternity care or are provided by religious health care organizations.

Importantly, any independent secular reasons for exempting these plans are irrelevant. The City of Hialeah had an independent, secular public-health interest in regulating disposal of garbage from restaurants. Yet the Court held the city ordinance's failure to restrict restaurant garbage the same way it did animal sacrifice rendered it underinclusive and not generally applicable. *Lukumi*, 508 U.S. at 544-45. Otherwise, "the requirement of general applicability [would be] entirely vacuous…[because] every law is generally applicable to whatever it applies to." Laycock, 118 Hav. L. Rev. at 207.

"[C]ategories of selection are of paramount concern when a law has the incidental effect of burdening religious practice." *Lukumi*, 508 U.S. at 542. That is because a law "lacks general applicability if it prohibits religious conduct while permitting secular conduct that undermines the government's asserted interest in a similar way." *Fulton*, 141 S.Ct. at 1878. SB 6219's asserted health interests are undermined by the plans cited above, which are categorically exempted. There is no reason why the State is any less interested in access to health care for women who only have plans for a limited purpose or amount of time, have a supplemental plan, or work for an employer that does not cover maternity or for a religious health care organization. By failing to offer the same exemption to religious plans like Cedar Park's, whose plan participations are much less

ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, Arizona 85260
(480) 444-0020

likely to seek a surgical abortion or use abortifacients, Defendants make the unconstitutional value judgment that secular reasons for not covering abortion are important enough to overcome the State's interest in women's health, but religious beliefs are not.

### b.  Individualized exemptions

The government may not withhold a religious exemption without compelling reason "where the State has in place a system of individual exemptions." *Fulton*, 141 S.Ct. at 1877. In *Fulton*, the City of Philadelphia had refused to contract with Catholic Social Services (CSS) for foster care services unless the organization agreed to certify same-sex couples as foster parents in violation of its beliefs. *Id*. at 1875-76. The city invoked the contract's nondiscrimination provision, claiming that it categorically prohibited CSS from declining to certify same-sex couples based on its religious beliefs. *Id*. at 1875. But exceptions from the nondiscrimination provision were available at the city's "sole discretion." *Id*. at 1878. That discretion, the Court held, created "a system of individual exemptions," making the nondiscrimination provision not generally applicable. *Id*.

SB 6219 exempts plans from the abortion mandate if necessary to avoid violating federal conditions on state funding, and in doing so allows for individualized exemptions like Philadelphia did in *Fulton*. RCW § 48.43.073(5). For example, the Weldon Amendment restricts federal funding to states that discriminate against health plans refusing to cover abortion. Philhower Memorandum to Nollette at 2, attached as Ex. 5. So Defendants exempt plans from SB 6219's abortion mandate if there is a Weldon Amendment problem, but they have no process governing that determination. Nollette Dep. at 29-30 ("If the office were concerned about a possible Weldon Amendment issue, we would contact our attorney"). That dilemma is assessed on a case-by-case basis at the sole discretion of Defendants. *Id.* at 30; Ex. 1 at 7 ("because the language of the savings clause in SB 6219 requires an exemption 'to the minimum extent possible,' the OIC has authority and *discretion* to choose how to implement this exemption" (emphasis added)).

PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT

16

ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, Arizona 85260
(480) 444-0020

Similarly, the State of California's abortion mandate was subject to strict scrutiny under the Free Exercise Clause because the director's "discretion" to allow exemptions was not governed by "any written rules, policies, or procedures for requesting an exemption." *Foothill v. Watanabe*, __ F.Supp.3d___ (2022), 2022 WL 3684900 at *4 (E.D. Cal. 2022). And just like the OIC official here, when asked about whether she would approve a plan without abortion, the California state official said "she would need to consult with DMHC attorneys." *Id.* at *8. That discretion makes SB 6219 subject to strict scrutiny, just as the court held in *Foothill*.

### 2.     The Statutes are not neutral in their operation.

"Neutrality and general applicability are interrelated, and . . . failure to satisfy one requirement is a likely indication that the other has not been satisfied." *Lukumi*, 508 U.S. at 531. SB 6219 and RCW § 48.43.065 are not neutral because they are gerrymandered to limit religious objections, treat religious health care related companies more favorably than churches, or target conscientious objectors like Cedar Park.

### a.     SB 6219 is impermissibly gerrymandered.

Whether a law has the impermissible objective of suppressing religious belief is not assessed only facially, but also from "the effect of a law in its real operation." *Lukumi*, 508 U.S. at 535. A law is impermissibly gerrymandered against religious organizations like Cedar Park if it favors secular conduct, *id*. at 537, or "proscribe[s] more religious conduct than is necessary to achieve [its] stated ends." *Id*. at 538. SB 6219 suffers from both fatal flaws.

By offering multiple secular exemptions, Washington has failed to pursue its proffered objectives "with respect to analogous non-religious conduct," *See Id.* at 546. The First Amendment prevents Cedar Park and other similarly situated organizations from "being singled out for discriminatory treatment," including Defendants' refusal to grant them an exemption that would not adversely affect the government's stated interest more than the secular exemptions the state already gives. *Id*. at 538. Providing secular exemptions "while refusing religious exemptions

PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT

17

ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, Arizona 85260
(480) 444-0020

is sufficiently suggestive of discriminatory intent so as to trigger heightened scrutiny under *Smith*

and *Lukumi*." *Fraternal Ord. of Police*, 170 F.3d at 365.

SB 6219 also proscribes more conduct than is necessary to achieve its end of furthering women's access to abortion. *Lukumi*, 508 U.S. at 542 (law hindering "much more religious conduct than is necessary in order to achieve the legitimate ends asserted in [its] defense," is "not neutral."). Exempting Cedar Park would primarily affect the church's employees, all of whom share the Church's beliefs about abortion. *See* VC ¶¶ 25-32. Forcing Cedar Park to provide abortion coverage that its employees will not use makes SB 6219 broader than necessary and impermissibly gerrymandered. And it lacks any (non-discriminatory) rational basis.

### b.   RCW § 48.43.065 treats churches less favorably than other religious organizations.

A second way to prove a law is not neutral is to show that it produces "differential treatment of two religions." *Lukumi*, 508 U.S. at 536. Treating different types of religious organizations disparately is sufficient. There is no need to show the government favors one creed over another. *E.g.*, *Larson v. Valente*, 456 U.S. 228, 246 n.23 (1982) (striking law treating "well-established churches" more favorably than "churches which are new").

SB 6219 is part of the same statutory scheme as Washington's Conscience Clause, RCW § 48.43.065. Together, these laws require insurance carriers to cover abortion pursuant to SB 6219 even if Cedar Park objects, while completely exempting health care related religious organizations. And, worse still, the statute authorizes the carrier to charge Cedar Park for abortion coverage indirectly. *Supra* Facts § F. Cedar Park objects to facilitating abortion both directly and indirectly, even if it is not technically part of the plan it purchased. Smith Decl. ¶ 6. Because of this disparate treatment, Cedar Park's insurer has refused to exempt Cedar Park, and instead requires the Church to *directly cover* abortion. *Id.* ¶¶ 3-4.

This "disparate treatment" is "striking." *Roman Cath. Diocese of Brooklyn*, 141 S.Ct. at 66. Religious health care providers, health carriers, and health care facilities that have a conscientious or moral objection to providing insurance coverage for abortion are completely

PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT

18

ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, Arizona 85260
(480) 444-0020

exempt and not subject to possible indirect fees. *Supra* Facts § F. Cedar Park is not, eliminating RCW § 48.43.065's neutrality. *Masterpiece*, 138 S.Ct. at 1731 ("The Free Exercise Clause bars even subtle departures from neutrality on matters of religion." (cleaned up)).

### c. SB 6219 intentionally discriminates against religious organizations like Cedar Park.

Discriminatory intent is not necessary to show lack of neutrality, but it can show an anti-religious objective. "[U]pon even slight suspicion that proposals for state intervention stem from animosity to religion or distrust of its practices, all officials must pause to remember their own high duty to the Constitution and the rights it secures." *Lukumi*, 508 U.S. at 547. "Factors relevant to the assessment of governmental neutrality include the historical background of the decision under challenge, the specific series of events leading to the enactment or official policy in question, and the legislative or administrative history, including contemporaneous statements made by members of the decisionmaking body." *Masterpiece*, 138 S.Ct. at 1731 (cleaned up).

Washington legislators attempted to amend SB 6219 to add exemptions for religious organizations like Cedar Park, but those three separate proposals were rejected.[7] Moreover, Washington State Senator Steve Hobbs, SB 6219's sponsor, stated that religious organizations can sue if they do not want to provide insurance coverage for abortion.[8] Responding to religious organizations' concern that SB 6219 would compel them to pay for abortions, Senator Hobbs quipped: "Health care is about the individual, not about [religious organizations]." *Id*. The legislative history rejecting religious exemptions shows SB 6219 targets religious organizations that believe in the sanctity of life.

This lack of neutrality along with the numerous exemptions outlined above make SB 6219 neither neutral nor generally applicable. It is thus subject to strict scrutiny.

---

[7] *Supra* n.4.

[8] Matt Markovich, *Catholic Bishops of Wash. ask Gov. Inslee to Veto Abortion Insurance Bill*, KOMO NEWS (March 5, 2018), https://bit.ly/2Uuu5Nf.

ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, Arizona 85260
(480) 444-0020

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

C.      **The Statutes fail strict scrutiny.**

Under strict scrutiny, "a law restrictive of religious practice must advance interests of the highest order and must be narrowly tailored in pursuit of those interests." *Lukumi*, 508 U.S. at 546 (cleaned up). "Rather than rely on broadly formulated interests, courts must scrutinize the asserted harm of granting specific exemptions to particular religious claimants. The question, then, is not whether the [government] has a compelling interest in enforcing its . . . policies generally, but whether it has such an interest in denying an exception to" Cedar Park. *Fulton*, 141 S.Ct. at 1881 (cleaned up).

        1.      **The Statutes do not serve a rational, much less compelling, government interest.**

First, Washington must "identify an 'actual problem' in need of solving." *Brown v. Ent. Merchs. Ass'n*, 564 U.S. 786, 799 (2011). It has not done so. The OIC received no complaints about health care plans not covering abortion before the State enacted SB 6219. Daniel Dep. 13. And the only pre-SB 6219 complaints it received about health care plans not covering contraception concerned birth control pills and vasectomies. Daniel Dep. 14. Cedar Park does not object to covering either of these.

Moreover, SB 6219's variety of secular exemptions prove it "does not advance an interest of the highest order [because] it leaves appreciable damage to that supposedly vital interest unprohibited." *Espinoza v. Mont. Dep't of Revenue*, 140 S.Ct. 2246, 2261 (2020). (cleaned up). An interest is not compelling when the government "fails to enact feasible measures to restrict other conduct producing substantial harm or alleged harm of the same sort." *Lukumi*, 508 U.S. at 546-47. The underinclusiveness of SB 6219 demonstrated above in § I.B "is alone enough to defeat" the state's asserted interest. *Brown*, 564 U.S. at 802; *see also Lukumi*, 508 U.S. at 546-47.

For example, in *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418 (2006), there was no exception to the government's ban on hallucinogenic tea. But a single exemption for peyote in another part of the controlled substances law showed no compelling interest in banning hallucinogenic tea because both substances undermined the government's

PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT

20

ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, Arizona 85260
(480) 444-0020

asserted interest. The many exemptions to SB 6219 far exceed the one exception in *O Centro*. So the state must show that "granting the requested religious accommodations would seriously compromise its ability to administer the program." *Id*. at 435. It cannot do so because Washington itself has "seriously compromised" SB 6219's universality through multiple exemptions. And the only people affected by an exemption for Cedar Park would be its employees, all of whom share the Church's beliefs about abortion. *See* VC ¶¶ 25-32. The government does not have a rational—much less compelling—interest in forcing a pro-life church to provide insurance coverage for abortion to people who will not use it.

The government has no compelling interest to support the differential treatment of religious objectors in RCW § 48.43.065 either. There is no valid interest in exempting religious hospitals but discriminating against non-health care religious organizations like Cedar Park. Both types of religious organizations have employees covered by insurance and there is no logical difference between them. There is no rational reason to allow carriers to charge Cedar Park extra fees for the very coverage to which it objects while totally exempting the myriad religious health care providers in Washington from providing that same coverage with no risk of the carrier charging them.

### 2.     The Statutes are not narrowly tailored.

"A statute is narrowly tailored if it targets and eliminates no more than the exact source of the evil it seeks to remedy." *Frisby v. Schultz*, 487 U.S. 474, 485 (1988) (cleaned up). Under strict scrutiny, the government must also show the law "is the least restrictive means of achieving" its interests. *Thomas v. Rev. Bd. of the Ind. Emp. Sec. Div.*, 450 U.S. 707, 718 (1981). If means less burdensome on religious freedom exist, the government "must use [them]." *United States v. Playboy Ent. Grp., Inc.*, 529 U.S. 803, 813 (2000).

Washington has many ways to accomplish its asserted interests without compelling churches to violate their beliefs. First, it could provide all religious organizations an exemption from SB 6219 that does not require their carriers to provide objectionable coverage or permit

charging them higher premiums. This would allow the government to enforce the law against those who do not object based on religion, while respecting the religious beliefs of churches like Cedar Park. The government has already demonstrated it can do this. Washington excuses religious health care providers, religiously sponsored health carriers, and religious health care facilities from the possibility of facilitating abortion coverage in any way. RCW § 48.43.065(2)(a); *accord Hobby Lobby*, 573 U.S. at 730-31 (noting that the government had shown its ability to provide an exemption to the Petitioners because it had granted such an exemption to a different class of religious objectors). Allowing religious objectors like Cedar Park to assert the exemption afforded to religious health care providers would also eliminate the differential treatment in RCW § 48.43.065.

Moreover, Washington law completely exempts 13 different types of health care plans by excluding them from the definition of "health plan." RCW § 48.43.005(31). Defendants could extend this provision to Cedar Park and other similarly situated religious employers. *See Foothill*, 2022 WL 3684900 at *11 (holding California could more narrowly further its interest in its abortion mandate by creating an exemption for "employers who provide coverage to employees who share their religious beliefs"). Finally, the government itself could provide abortion coverage directly to employees whose health plans exclude coverage of abortion. Washington already has a fund to cover the costs of abortion for insureds with religious insurance carrier policies that exempt that procedure. *See* Nollette Dep. at 65-72 (describing Department of Health process for paying for abortions of individuals with insurance plans that do not cover abortion, using state money funded by a "health equity fee" paid by the objecting carrier).

All these options are "workable," *Grutter v. Bollinger*, 539 U.S. 306, 339 (2003), and much "less restrictive" of religious freedom, *Playboy*, 529 U.S. at 824. The Statutes therefore are not narrowly tailored or the least restrictive means, and they fail strict scrutiny.

PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT
22
ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, Arizona 85260
(480) 444-0020

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**D.     SB 6219 fails to respect rights of conscience rooted in the Religion Clauses.**

SB 6219 does not respect the rights of conscience rooted in the Religion Clauses and repeatedly affirmed by the Supreme Court. In *Thomas*, the Court protected an employee's religious conviction not to participate in taking human life by making weapons of war. 450 U.S. at 714. That holding furthered First Amendment protection of religious liberty and government neutrality. *Id*. at 718-20.

*Smith* did not overrule *Thomas* but distinguished it because the regulation challenged was not "an across-the-board criminal prohibition on a particular form of conduct." 494 U.S. at 884. The Free Exercise Clause does not permit the government to require churches to violate their deeply rooted practice of conforming personnel policies to religious teaching. For example, "[t]he contention that *Smith* forecloses recognition of a ministerial exception rooted in the Religion Clauses has no merit." *Hosanna-Tabor Evangelical Lutheran Church & Sch. v. E.E.O.C.*, 565 U.S. 171, 190 (2012). Likewise, Defendants cannot coerce Cedar Park to facilitate abortion through its health care plan.

**II.     The undisputed facts show the Statutes violate Cedar Park's religious autonomy.**

Religious organizations' fundamental right to autonomy predates our nation's founding. The very reason Puritans fled to America was to establish their own religious autonomy and free themselves from the control of the Church of England. *Hosanna-Tabor,* 565 U.S. at 182-83. James Madison, "the leading architect of the religion clauses," explained those First Amendment provisions were designed and adopted, in part, to thwart "political interference with religious affairs." *Id.* at 184 (cleaned up).

SB 6219 impermissibly interferes with Cedar Park's internal operations in violation of the First Amendment doctrine of church autonomy. History teaches—and our Constitution

ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, Arizona 85260
(480) 444-0020

recognizes—that religious liberty demands freedom from government interference with the internal affairs of religious institutions. *Watson v. Jones*, 80 U.S. 679, 730 (1871). *Smith* acknowledged the continuing validity of earlier cases protecting a church's right to institutional autonomy. *Smith*, 494 U.S. at 877 (1990). And *Hosanna-Tabor* did the same. 565 U.S. at 190; *accord Trinity Lutheran Church of Columbia, Inc. v. Comer*, 137 S.Ct. 2012, 2021 n.2 (2017). First Amendment protection includes "church administration," *Serbian E. Orthodox Diocese v. Milivojevich*, 426 U.S. 696, 710 (1976), "internal organization," *id*. at 713, and "the operation of . . . churches," *Kedroff,* 344 U.S. at 107-108. In sum, churches have the power to decide for themselves matters of church governance as well as those of faith and doctrine. *Id.* at 116."[C]ivil courts exercise no jurisdiction" in matters affecting church autonomy which spans issues involving "theological controversy, church discipline, ecclesiastical government, or the conformity of the members of the church to the standard of morals required of them." *Watson*, 80 U.S. at 733. In other words, the First Amendment broadly protects religious institutions "from secular control or manipulation." *Kedroff*, 344 U.S. at 116.

SB 6219's abortion mandate interferes with the ability of Washington churches like Cedar Park to teach their members, live by, and govern their employees according to their religious doctrine. Before SB 6219, churches and religious organizations could freely ensure the integrity of their teaching and practice by declining to facilitate abortion insurance coverage. After SB 6219, churches must choose between their legal obligations and their faith. They cannot meet both without spending more money for inferior health protection that will also limit its ministry.

This blatantly and seriously interferes with Cedar Park's internal administration and operations. SB 6219 therefore violates the church autonomy doctrine and is unconstitutional.

**CONCLUSION**

The undisputed facts show SB 6219's abortion mandate and the Conscience Clause violate Cedar Park's free exercise rights. The Court should grant the Church's motion for summary

1   judgment, declare SB 6219 and the Conscience Clause unconstitutional, and enjoin Defendants

2   from applying those statutes to Cedar Park and others similarly situated.

3

4                    Respectfully submitted this 9th day of March, 2023,

5                              *s/Kevin H. Theriot*
                               Kevin H. Theriot (AZ Bar #030446)*
6                              ALLIANCE DEFENDING FREEDOM
                               15100 N. 90th Street
7                              Scottsdale, Arizona 85260
                               Telephone: (480) 444-0020
8                              Facsimile:  (480) 444-0025
                               Email: ktheriot@adflegal.org
9

10                             David A. Cortman (GA Bar #188810)*
                               ALLIANCE DEFENDING FREEDOM
11                             1000 Hurricane Shoals Rd. NE
                               Suite D-1100
12                             Lawrenceville, GA 30040
                               Telephone: (770) 339-0774
13                             Email: dcortman@adflegal.org

14
15                             *Attorneys for Plaintiff Cedar Park Assembly of*
                               *God of Kirkland, Washington*
16                             * Admitted *pro hac vice*

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S MOTION FOR              25              ALLIANCE DEFENDING FREEDOM
SUMMARY JUDGMENT                                       15100 N. 90th Street
                                                      Scottsdale, Arizona 85260
                                                          (480) 444-0020

1

### CERTIFICATE OF SERVICE

2

   I hereby certify that on March 9, 2023, I electronically filed the foregoing

3

document with the Clerk of Court using the CM/ECF system, which will send

4

notification of such filing to the following:

5

Paul M. Crisalli

6

ATTORNEY GENERAL'S OFFICE
800 5th Ave

7

Ste 2000
Seattle, WA 98104

8

9

Marta U. DeLeon
ATTORNEY GENERAL'S OFFICE

10

PO Box 40100
Olympia, WA 98504

11

*Counsel for Defendants*

12

DATED: March 9, 2023        *s/Kevin H. Theriot*
                            Kevin H. Theriot (AZ Bar #030446)*

13

                            ALLIANCE DEFENDING FREEDOM

14

                            15100 N. 90th Street
                            Scottsdale, Arizona 85260

15

                            Telephone: (480) 444-0020
                            Facsimile: (480) 444-0025

16

                            Email: ktheriot@adflegal.org

17

                            *Attorney for Plaintiff Cedar Park Assembly of*

18

                            *God of Kirkland, Washington*

19

                            * Admitted *pro hac vice*

20

21

22

23

24

25

26

27

28

PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT

26