# EXHIBIT 1



# Bob Ferguson
## ATTORNEY GENERAL OF WASHINGTON
Government Compliance & Enforcement Division
PO Box 40100  ●  Olympia, WA  98504-0100  ●  (360) 664-9006

**M E M O R A N D U M**

| | |
|---|---|
| DATE: | May 8, 2018 |
| TO: | Molly Nollette, Deputy Insurance Commissioner for Rates and Forms |
| FROM: | Marta DeLeon, AAG |
| SUBJECT: | **Carrier Moral Objections to the New Abortion Mandate** |

You asked whether a health carrier can be excused or exempted, on religious grounds, from including abortion services in an individual health plan in 2019.  The conscience clause found in RCW 48.43.065 plainly allows a carrier to object to providing abortion coverage on religious grounds.  In addition, SB 6219 allows carriers to be excused from the abortion coverage mandate to the extent necessary to comply with federal law.  If RCW 48.43.065 is read as requiring objecting carriers to provide payment or referrals for abortion services, this would likely trigger the Weldon amendment, with significant legal, and potential financial risks to the OIC and the state as a whole.

**BACKGROUND**

In early April, Providence Health Plan (Providence) notified the OIC that for the 2019 plan year, it intends to offer at least one health plan in the individual market.  It is my understanding that Providence has been offering negotiated large group health plans in Washington, but to date has not offered any individual health plans.  Providence is owned by a religious organization, and operates in accordance with the religious principles of its parent organization.  Many religiously operated providers and carriers across the country have raised religious objections to certain types of contraceptive coverage, and to abortion services.

Providence informed the OIC that for its individual health plan, it intends to provide contraceptive coverage, and has not announced an objection to any particular type of FDA approved contraception.  Providence also plans to cover some medically necessary abortion services when "there is a severe threat to the mother, or if the life of the fetus cannot be sustained."[1]  However, Providence objects, on religious grounds, to providing coverage for most abortion services[2].  Therefore, Providence has requested an exemption from the new requirement that health carriers

---

[1] Email from Brian Landon to Molly Nollette dated April 12, 2018.
[2] It is not clear whether Providence objects to other abortion services that are "medically necessary," or in cases of rape and incest.  But it is clear Providence objects to any elective abortion services.

**CONFIDENTIAL ATTORNEY/CLIENT PRIVILEGED COMMUNICATION**
**DO NOT DISCLOSE**

ATTORNEY GENERAL OF WASHINGTON

May 8, 2018
Page 2

provide coverage for abortion services under the Washington State Conscience Clause, and the Weldon amendment.

This memo will look at three questions:

1. What abortion services are mandated under SB 6219?
2. What is required to qualify for an exemption under RCW 48.43.065?
3. What impacts could the Weldon Amendment have if the OIC refuses an exemption under RCW 48.43.065?.

**ANALYSIS**

**A.    What Abortion Services Are Mandated Under SB 6219?**

Historically, Washington law has not mandated abortion coverage.  Even so, the majority of health plans offered in Washington voluntarily cover medically necessary and elective abortions.  But this year, the Legislature enacted SB 6219, which requires in part that all health plans offering maternity coverage must also provide "substantially equivalent coverage to permit the abortion of a pregnancy."  Laws 2018, ch. 119, section 3(1).[3]  In addition, SB 6219 also prohibits limiting, "in any way a person's access to services related to the abortion of a pregnancy."  Laws 2018, ch. 119, section 3(2)(a).  However, coverage of abortions "may be subject to terms and conditions generally applicable to the health plan's coverage of maternity care or services, including applicable cost sharing."  Laws 2018, ch. 119, section 3(2)(b)(i).

The phrase, "substantially equivalent" is not defined in SB 6219.  Unlike some other mandates, SB 6219 does not include a clear set of services that carriers are compelled in to provide.  Instead, the plain language of SB 6219 leaves carriers with a great deal of discretion in how to design their maternity and abortion benefits.  It is important to note, however, that in the context of maternity coverage, a great deal of discretion is reserved to patients and treating physicians.  *See* RCW 48.43.115.  In addition, the essential health benefits rules outline services that must be included in maternity and newborn coverage.  WAC 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(4).  Even so, the language of the new law allows carriers to apply generally applicable requirements to abortion services.  This means carriers could impose a medical necessity requirement to abortion services, to the extent the same medical necessity definition is generally applicable to maternity care and services that are covered by the plan.  In fact, under the essential health benefits rule, maternity care is defined in part at "medically necessary care and services."  WAC 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(4).  It is possible to read SB6219 as allowing carriers to limit coverage for elective abortions by limiting both their maternity coverage and their abortion coverage to "medically necessary services."

---

[3] SB 6219 also requires coverage of all FDA approved methods of contraception without cost sharing. But because Providence has not objected to providing contraception coverage, this memo will not address those provisions of SB 6219.

**CONFIDENTIAL ATTORNEY/CLIENT PRIVILEGED COMMUNICATION
DO NOT DISCLOSE**

ATTORNEY GENERAL OF WASHINGTON

May 8, 2018
Page 3

However, it appears that for Providence, even this flexibility would likely be insufficient. Providence has stated it intends to cover abortions only where "there is a severe threat to the mother, or if the life of the fetus cannot be sustained." This appears to be a far more restrictive definition of "medical necessity" than is likely to be used for maternity services. If Providence intends to use a different measure for medical necessity for abortion services than it uses for maternity services, then they would not be offering "substantially equivalent coverage."

**B.      What Is Required To Qualify For An Exemption Under RCW 48.43.065?**

Assuming that Providence objects to offering "substantially equivalent" abortion coverage, even if it is limited by medical necessity, the next question is whether Providence can qualify for an exemption under the conscience clause, found in RCW 48.43.065. Although the bill reports for SB 6219 explicitly refer to the conscience clause, the actual language of the bill does not amend RCW 48.43.065. Enacted in 1995, the conscience clause provides in part that a carrier may not be required "to participate in the provision of or payment for a specific service if they object to so doing for reason of conscience or religion." RCW 48.43.065(2)(a).

However, the conscience clause does not only provide protection to objectors. The conscience clause recognizes a need to balance the rights of the objectors, with the rights of enrollees to receive certain services. Specifically, the conscience clause provides:

> The provisions of this section are not intended to result in an enrollee being denied timely access to any service included in the basic health plan services. Each health carrier shall:
>
> (i) Provide written notice to enrollees, upon enrollment with the plan, listing services that the carrier refuses to cover for reason of conscience or religion;
> (ii) Provide written information describing how an enrollee may directly access services in an expeditious manner; and
> (iii) Ensure that enrollees refused services under this section have prompt access to the information developed pursuant to (b)(ii) of this subsection.

RCW 48.43.065(2)(b).

By rule, the OIC has placed the burden on objecting carriers to demonstrate how enrollees will be provided with timely access to all services covered by the "model plan". WAC 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.

The conscience clause, which has not been amended or updated since 1995, refers to services included in the basic health plan. Similarly, the OIC's rule refers to the basic health plan services model plan. However, since the expansion of Medicaid under the Patient Protection and Affordable Care Act (Affordable Care Act) in 2014, Washington State no longer has a basic health plan, or model plan.

CONFIDENTIAL ATTORNEY/CLIENT PRIVILEGED COMMUNICATION
DO NOT DISCLOSE

ATTORNEY GENERAL OF WASHINGTON

May 8, 2018
Page 4

Because the basic health plan no longer exists, the OIC has generally interpreted this statute by substituting the "basic health plan" requirements with the essential health benefits required under the Affordable Care Act. These essential health benefits are outlined in WAC 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. This interpretation has been in place since the 2014 plan year, when carriers and employers began objecting to providing certain types of contraceptives required by federal law to be covered under the preventive services essential health benefits category. Under RCW 48.43.065 and WAC 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, the OIC requires that carriers selling to employers that object to certain contraceptives, or carriers that object to providing contraceptive coverage themselves, submit to the OIC a plan of how to provide access to the services mandated under the essential health benefits to enrollees. This interpretation has not yet been challenged.

The courts will generally defer to the OIC in interpreting insurance statutes. However, the OIC's interpretation is not binding on the courts. It is possible a court would look at the plain language of RCW 48.43.065 and conclude that because there is no basic health plan any longer, there are no longer any services that carriers are required to ensure access to. Therefore, a religious carrier need not provide enrollees notice about the particular services that are being refused, and information about how to access services directly.

However, the courts will generally give effect to all the language in the statute. Interpreting the notice and access provisions of RCW 48.43.065(2) as void would fail to do so. This strict interpretation would also assume the notice provisions have been impliedly repealed by the elimination of the basic health plan. However, the legislative history of SB 6219 clearly indicates that the Legislature believes that carriers are still required to provide notice and access when services are objected to by the carrier. The OIC's interpretation of RCW 48.43.065 that applies the essential health benefits requirements where the basic health plan used to apply, gives effect to all the terms of the statute, and is consistent with recent indicia of the Legislature's intent to keep the notice and access provisions of RCW 48.43.065 effective and meaningful.

Assuming the notice and access provisions of RCW 48.43.065 and WAC 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 apply to essential health benefits, the next issue is whether abortion services under SB 6219 are properly considered mandated essential health benefits. Under WAC 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(4)(a)(vii), abortion services are already a permitted benefit, but are not considered mandatory. This is in part because at the time the benchmark plan used to establish the essential health benefits was selected, there was no state mandate to provide abortion coverage. However, it was also because federal law prohibits the inclusion of abortion services as essential health benefits. 42 U.S.C. 18023 (b)(1)(A)(i). SB 6219 does not, and cannot, change the fact the abortion services may not be considered essential health benefits.

In fact, under federal law, most state mandates adopted after 2011 cannot be considered essential health benefits. Under federal law, the essential health benefits aren't just the minimum benefits plans are required to offer. They are the basis for numerous calculations including metal levels, and premium subsidies. Therefore the federal government chose to limit its potential liability

CONFIDENTIAL ATTORNEY/CLIENT PRIVILEGED COMMUNICATION
DO NOT DISCLOSE

ATTORNEY GENERAL OF WASHINGTON

May 8, 2018
Page 5

under the Affordable Care Act by limiting state based expansion of essential health benefits. To the extent the OIC has interpreted RCW 48.43.065 as applying only to the essential health benefits established in WAC 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, the OIC can take the position that SB6219 does not create a new essential health benefit for which carriers must provide notice and access under RCW 48.43.065.

If abortion services under SB 6219 are not essential health benefits, then arguably the notice and access requirements in RCW 48.43.065(2)(b) do not apply to Providence's objection. In that case, the OIC could permit Providence to provide notice of its objection, without any additional requirements. Under this interpretation, it would also be permissible for the OIC to require that Providence provide clear notice to consumers and enrollees that it only provides very limited abortion services, to ensure that consumers are fully informed of their coverages under their policies.

Alternatively, the OIC could interpret RCW 48.43.065 as applying to all essential health benefits, and any other state mandated benefits. In that case, Providence would have to, among other things, "provide written information describing how an enrollee may directly access services in an expeditious manner" RCW 48.43.065(2)(b)(ii). In addition, under WAC 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, Providence would have to submit a plan to the OIC that describes "the process by which enrollees will have timely access to all services."

Although the term "access" is not defined, in the insurance context, access typically means services will be paid for, in keeping with any cost sharing requirements. It is difficult to see how access to a service can be provided if a carrier is not willing to pay for coverage. Even if the OIC were willing to stretch the definition of access to mean simply providing information about where and how to access services, and public programs that offer financial assistance for these services, it is possible Providence would likely consider providing that information as akin to providing referrals.

Previous advice from our office concerning group policies and contraceptive coverage had indicated that if a religious carrier is objecting to contraceptive coverage, and the employer also objects to providing information about how to access care to their employees, then the requirements of the conscience clause cannot be satisfied, and the carrier would be barred from selling to the objecting employer because the notice and access provisions of RCW 48.43.065(2)(b) and WAC 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 could not be satisfied.

In this case, Providence is proposing to sell individual health plans. Therefore, there is no secular or non-objecting employer to provide notice and direct access to services for employees. There currently is no alternative mechanism I am aware of for providing individual market enrollees with access to, and payment for, abortion services. If Providence objects to providing any payments and any referral information that would assist enrollees in obtaining abortions, they would not be able to satisfy the requirements of RCW 48.43.065 and WAC 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. This scenario would create the greatest legal risk for the OIC, as discussed below.

**CONFIDENTIAL ATTORNEY/CLIENT PRIVILEGED COMMUNICATION**
**DO NOT DISCLOSE**

ATTORNEY GENERAL OF WASHINGTON

May 8, 2018
Page 6

 

**C.     What impacts could the Weldon Amendment have if the OIC refuses an exemption under RCW 48.43.065?**.

The biggest risk with refusing to grant an exception to Providence under RCW 48.43.065, is that the Department of Health and Human Services' Office of Civil Rights (OCR) would find that the OIC has discriminated against Providence on the basis of their objection to provide abortion services, which could result in the OIC, and potentially the State of Washington as a whole, not receiving federal funds under the Weldon Amendment.

The Weldon Amendment is a provision that has been attached to the Health and Human Services appropriations bill since 2005.  It provides:

> None of the funds made available in this Act may be made available to a Federal agency or program, or to a State or local government, if such agency, program, or government subjects any institutional or individual health care entity to discrimination on the basis that the health care entity does not provide, pay for, provide coverage of, or refer for abortions.

Consolidated Appropriations Act, Public Law 115-31, Div. H, Tit. V, sec. 507(d)(1), 131 Stat. at 562.

The amendment further defines a health care entity to include a health maintenance organization, insurer, or other health facility, organization, or plan.  Public Law 115-31, Div. H, Tit. V, sec. 507(d)(2), 131 Stat. at 562.  Providence falls under this definition.

As discussed above, RCW 48.43.065 and WAC 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 require that enrollees receive access to required service even in light of a carrier's objection.  Requiring payment, coverage, or referrals for abortions could all be grounds for triggering the Weldon amendment.

If the OIC rejects Providence's health plan filings because Providence has failed to comply with the notice and access requirements of RCW 48.43.065 and WAC 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, Providence would have at least a colorable argument that it is being discriminated against for failure to pay for or refer for abortion services.  This may be sufficient to trigger an investigation by OCR.  These issues are currently being given a high priority by that agency.  If OCR finds a discrimination has occurred, this could trigger the Weldon Amendment's limitation of federal funding to the state of Washington.

It is entirely possible that the breadth of the Weldon Amendment is overreaching.  The OCR has already indicated, in correspondence concerning California's abortion mandate, that applying the Weldon Amendment to eliminate previously received federal funds could be an unconstitutional

ATTORNEY GENERAL OF WASHINGTON

May 8, 2018
Page 7

imposition on state sovereignty by the federal government.[4]  But even if the Weldon amendment were applied only to funds received by the OIC, the financial impact could be significant.

However, SB 6219, section 3(5) provides that:

> If the application of this section to a health plan results in noncompliance with federal requirements that are a prescribed condition to the allocation of federal funds to the state, this section is inapplicable to the plan to the minimum extent necessary for the state to be in compliance. The inapplicability of this section to a specific health plan under this subsection does not affect the operation of this section in other circumstances.

The Weldon amendment is clearly a prescribed condition for the allocation of federal funds to the state, and to the OIC.  Therefore, SB 6219 excuses compliance to the minimum extent necessary to comply with the federal requirements.  Under this savings clause, the OIC could excuse Providence from compliance with the abortion coverage mandate, and thus the conscience clause access provisions, to the minimum extent necessary to avoid triggering the Weldon amendment.

**CONCLUSION AND OPTIONS**

Under RCW 48.43.065 and the savings clause in SB 6219, there are avenues for allowing Providence to be exempt from providing abortion coverage, being required to provide payments for access to coverage, and from providing information that may be akin to referrals for abortion coverage.  However, because the language of the savings clause in SB 6219 requires an exemption "to the minimum extent possible," the OIC has authority and discretion to choose how to implement this exemption.  Given the OIC's overarching duty to protect consumers and ensure consumers are fully informed, the OIC can impose the notice requirements in RCW 48.43.065 to ensure consumers are fully aware of the limited benefits in Providence's health plans.

Additionally, in lieu of requiring Providence to provide referral information, the OIC may want to consider putting together information about where consumers can access services Providence objects to providing, and require Providence to provide their enrollees with the OIC's contact information.  The OIC may want to consider reaching out to the Department of Health to find ways to provide consumers with useful provider information.

However, the OIC also has the option to impose both the notice and access requirements found in RCW 48.43.065.  To the extent that results in a denial of Providence's health plans, this could have significant legal and financial risks to the OIC, and potentially the state.  For this reason, the OIC should strongly consider discussing this matter with other potentially affected agencies before engaging in that course of action.

---

[4] Letter from Jocelyn Samuels to Catherine Short, et al., dated July 21, 2016, pp. 4-5.

**CONFIDENTIAL ATTORNEY/CLIENT PRIVILEGED COMMUNICATION**
**DO NOT DISCLOSE**