1

2

3

4

5

6

7                                                          The Honorable Benjamin H. Settle

8                          **UNITED STATES DISTRICT COURT**
                          **WESTERN DISTRICT OF WASHINGTON**
9                                        **AT TACOMA**

10   CEDAR PARK ASSEMBLY OF GOD OF          NO. 3:19-cv-05181-BHS
     KIRKLAND, WASHINGTON,
11                                          DEFENDANTS' MOTION FOR
                          Plaintiff,        SUMMARY JUDGMENT
12
             v.                             NOTE ON MOTION CALENDAR:
13                                          MARCH 31, 2023
     MYRON "MIKE" KREIDLER, et al.,
14
                          Defendants.
15

16

17

18

19

20

21

22

23

24

25

26

DEFENDANTS' MOTION FOR                              ATTORNEY GENERAL OF WASHINGTON
SUMMARY JUDGMENT --                                     Complex Litigation Division
NO. 3:19-cv-05181-BHS                                   800 Fifth Avenue, Suite 2000
                                                        Seattle, WA  98104-3188
                                                           (206) 464-7744

# TABLE OF CONTENTS

I.      INTRODUCTION ............................................................................................... 1

II.     RELIEF REQUESTED ...................................................................................... 2

III.    EVIDENCE RELIED UPON ............................................................................ 2

IV.     FACTS ............................................................................................................... 2

    A.   Washington Law Allows Religious Organizations to Refuse to Purchase
       Health Care Coverage to Which They Have a Moral or Religious Objection ......... 2

    B.   Two Opinions by the Washington State Attorney General Explain How
       Employers and Insurance Carriers Can Implement the Conscience Objection
       Statute ................................................................................................................... 3

    C.   Washington Law Requires Health Plans to Cover Contraception and Abortion
       Care if They Include Maternity Care, Without Modifying the Conscience
       Laws ..................................................................................................................... 4

    D.   In Practice, Employers and Carriers Negotiate for Plans That Can Contain
       Objections to Coverage of Services by Reason of Religion ................................... 5

    E.   While Claiming That Washington Law Forced Cedar Park to Purchase Plans
       Inconsistent with Its Religious Beliefs, Cedar Park Negotiated for Plans that
       Excluded Coverage for Abortion and Certain Contraceptives ............................... 7

    F.   Cedar Park's Complaint Is Now Limited to Its Free Exercise Claim and a
       Related Religious Autonomy Claim ...................................................................... 10

V.      ARGUMENT ..................................................................................................... 13

    A.   Legal Standards ................................................................................................... 13

    B.   Cedar Park's Free Exercise Claim Fails as a Matter of Law ................................. 13

       1.   The text and operation of SB 6219 are neutral .................................................. 14

       2.   SB 6219 is generally applicable ....................................................................... 15

       3.   SB 6219 is rationally related to a legitimate governmental purpose ................ 18

       4.   Cedar Park's argument that its expression rights are violated when third
           parties provide information about access to services to enrollees is
           factually and legally deficient .......................................................................... 19

    C.   Cedar Park's "Religious Autonomy" Claim Fails ................................................ 21

VI.     CONCLUSION .................................................................................................. 22

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT --
NO. 3:19-cv-05181-BHS

i

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

# TABLE OF AUTHORITIES

## Cases

*Albino v. Baca*,
747 F.3d 1162 (9th Cir. 2014) (en banc) .......................................................... 13

*Am. Bankers Ass'n v. Gould*,
412 F.3d 1081 (9th Cir. 2005) .......................................................................... 18

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ......................................................................................... 14

*Baker v. Tchrs. Ins. & Annuities Ass'n Coll. Ret. Equity Funds (TIAA-CREF)*,
588 P.2d 1164 (Wash. 1979) ............................................................................ 16

*Bollard v. Cal. Province of Soc'y of Jesus*,
196 F.3d 940 (9th Cir. 1999) ........................................................................... 22

*Bollard v. Cal. Province of Soc'y of Jesus*,
211 F.3d 1331 (9th Cir. 2000) ......................................................................... 21

*British Airways Bd. v. Boeing Co.*,
585 F.2d 946 (9th Cir. 1978) ........................................................................... 20

*Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*,
508 U.S. 520 (1993) ................................................................................... 14, 15

*Emp. Div., Dep't of Hum. Res. of Or. v. Smith*,
494 U.S. 872 (1990) ......................................................................................... 13

*Five Corners Fam. Farmers v. Washington*,
268 P.3d 892 (Wash. 2011) ................................................................................ 3

*Frlekin v. Apple, Inc.*,
979 F.3d 639 (9th Cir. 2020) ........................................................................... 13

*Fulton v. City of Philadelphia, Pa.*,
141 S. Ct. 1868 (2021) ............................................................................... 16, 17

*Hosanna-Tabor Evangelical Lutheran Church & Sch. v. E.E.O.C.*,
565 U.S. 171 (2012) ......................................................................................... 21

*In re First T.D. & Inv., Inc.*,
253 F.3d 520 (9th Cir. 2001) ........................................................................... 18

*Jones v. Wolf*,
443 U.S. 595 (1979) ......................................................................................... 21

*Kreisner v. City of San Diego*,
1 F.3d 775 (9th Cir. 1993) ............................................................................... 14

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT --
NO. 3:19-cv-05181-BHS

ii

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

*Miller v. Reed*,
　176 F.3d 1202 (9th Cir. 1999) ........................................................................ 13

*Our Lady of Guadalupe Sch. v. Morrissey-Berru*,
　140 S. Ct. 2049 (2020)................................................................................... 21

*Quadrant Corp. v. State Growth Mgmt. Hearings Bd.*,
　110 P.3d 1132 (Wash. 2005) (en banc) ......................................................... 19

*Stormans, Inc. v. Weisman* (*Stormans II*),
　794 F.3d 1064 (9th Cir. 2015) ................................................................. passim

*Tingley v. Ferguson*,
　47 F.4th 1055 (9th Cir. 2022) ....................................................... 14, 15, 17, 21

*Zubik v. Burwell*,
　578 U.S. 403 (2016).................................................................................. 21

## Statutes

2018 Wash. Sess. Laws, ch. 119, § 1 ............................................................... passim

Wash. Rev. Code § 48.43.005(26) ....................................................................... 16

Wash. Rev. Code § 48.43.065 .......................................................................... passim

Wash. Rev. Code § 48.43.065(1) ............................................................................ 2

Wash. Rev. Code § 48.43.065(3) ...................................................................... 16, 17

Wash. Rev. Code § 48.43.065(3)(a) ........................................................................ 2

Wash. Rev. Code § 48.43.065(3)(c) ........................................................................ 2

Wash. Rev. Code § 49.43.065(3)(1) ...................................................................... 18

Wash. Rev. Code § 48.43.072 .......................................................................... 1, 15

Wash. Rev. Code § 48.43.072(1) ............................................................................ 4

Wash. Rev. Code § 48.43.072(2)(a) ........................................................................ 4

Wash. Rev. Code § 48.43.072(3) ............................................................................ 5

Wash. Rev. Code § 48.43.072(4) ............................................................................ 5

Wash. Rev. Code § 48.43.072(5) ............................................................................ 5

Wash. Rev. Code § 48.43.073 .......................................................................... 1, 15

Wash. Rev. Code § 48.43.073(1) ............................................................................ 5

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT --
NO. 3:19-cv-05181-BHS

iii

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

| | |
|---|---|
| Wash. Rev. Code § 48.43.073(5) | 5 |
| Wash. Rev. Code Title 48.43 | 17 |

### Rules

| | |
|---|---|
| Fed. R. Civ. P. 56(a) | 13 |

### Regulations

| | |
|---|---|
| Wash. Admin. Code § 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 | 2 |
| Wash. Admin. Code §§ 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 *et seq.* | 5 |
| Wash. Admin. Code § 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(3) | 5 |

### Other Authorities

| | |
|---|---|
| S.B. Rep. No. SB 6219 (Wash. 2018) | 5 |
| Wash. House Health Care & Wellness Committee, *Public Hearing: SB 5722, SSB 6219*, TVW at 33:12-39.30 (Feb. 7, 2018, 8:00 AM), https://www.tvw.org/watch/?eventID=2018021058 | 5 |
| Wash. Op. Att'y Gen. 5 (2002) | 3 |
| Wash. Op. Att'y Gen. 10 (2006) | 3, 4 |

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT --
NO. 3:19-cv-05181-BHS

iv

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

# I.    INTRODUCTION

To further its policy objectives of improving the health, safety, and economic well-being of its citizens, Washington enacted Senate Bill (SB) 6219, the Reproductive Parity Act, Wash. Rev. Code §§ 48.43.072, .073, which requires insurance carriers to provide coverage for contraceptives and, if the plan includes maternity coverage, to provide equivalent abortion coverage. In enacting the law, Washington also recognized that this policy choice was balanced against the fact that some employers may disagree with such coverage by reason of religion or conscience, so Washington's conscience objection statute allows employers to refuse to purchase coverage of services to which they object. Read together, these provisions ensure enrollees receive access to services that promote health, safety and economic well-being, balanced against employers' right to refuse to purchase coverage for services that violate their religious beliefs.

Cedar Park's remaining claims are that SB 6219 violates its freedom to exercise its religion and its "religious autonomy" right. Cedar Park's free expression claim fails because, as a religiously neutral and generally applicable law, SB 6219 is rationally related to the many government interests it addresses. SB 6219 similarly does not interfere with Cedar Park's ecclesiastical decision-making.

Cedar Park has shifted its argument to be that it is forced to facilitate abortions, contrary to its beliefs, when a third party provides access to services to which Cedar Park objects. This claim is nothing but speculation, as there is no evidence in the record about how Cedar Park's employees would receive access to the objected services, let alone that anyone on Cedar Park's insurance plan would seek such services. Nor is there any evidence that Kaiser (or Cigna) refused to provide any abortions or certain contraceptives to *all* of its enrollees, either before passage of SB 6219 or after, so that Cedar Park did not indirectly engage in facilitating abortions. And even if there were such facts, the scenario satisfies rational review, as the Defendants are fulfilling the legislative purpose to ensure its citizens have access to health care services. The Court should grant summary judgment to the Defendants and dismiss the operative complaint with prejudice.

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT --
NO. 3:19-cv-05181-BHS

1

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

## II.     RELIEF REQUESTED

The Court should grant summary judgment to Defendants and dismiss Cedar Park's operative complaint with prejudice.

## III.     EVIDENCE RELIED UPON

Defendants rely upon the Declaration of Paul M. Crisalli, and exhibits attached thereto, as well as the pleadings and transcripts already filed in this matter.

## IV.     FACTS

**A.     Washington Law Allows Religious Organizations to Refuse to Purchase Health Care Coverage to Which They Have a Moral or Religious Objection**

Since at least 1995, Washington has recognized a balance in health insurance to preserve the individual right to free exercise of religion while ensuring that enrollees receive the full range of services covered under their health plans. Wash. Rev. Code § 48.43.065. The Legislature "recognizes that every individual possesses a fundamental right to exercise their religious beliefs and conscience" and "that in developing public policy, conflicting religious and moral beliefs must be respected." Wash. Rev. Code § 48.43.065(1).

To that end, no one with a religious belief opposed to particular health care service must purchase coverage for that service:

> No individual or organization with a religious or moral tenet opposed to a specific service may be required to purchase coverage for that service or services if they object to doing so for reason of conscience or religion.

Wash. Rev. Code § 48.43.065(3)(a). The Legislature directed the Insurance Commissioner to adopt rules establishing a process where health carriers can offer the required basic health plan services to individuals and organizations to implement this statute. Wash. Rev. Code § 48.43.065(3)(c). The Insurance Commissioner thus adopted a rule that protects the conscience rights of health insurance purchasers. Wash. Admin. Code § 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.

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT --
NO. 3:19-cv-05181-BHS

2

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

**B.     Two Opinions by the Washington State Attorney General Explain How Employers and Insurance Carriers Can Implement the Conscience Objection Statute**

Washington State's Attorney General issued formal opinions analyzing the conscience objection statute.[1] In a 2002 opinion, the Attorney General addressed (1) whether a carrier can charge enrollees for the costs caused when an employer objects to coverage of services because of a conscience objection; and (2) whether a carrier can include the cost of objectionable services in the actuarial analysis of the carrier's rates (such as an administrative, overhead, contingency, or other expense or allowance) where employers do not directly purchase those services. Wash. Op. Att'y Gen. 5 (2002). The opinion concludes that it would be an unfair practice for a carrier to charge enrollees for the costs caused when the carrier provides a generally comprehensive prescription drug plan that excludes prescription contraceptives. *Id.* The opinion makes clear, however, that it was not addressing any options carriers could use to absorb the costs when objecting employers purchase coverage. *Id.*

The opinion explains that subsection four of the conscience statute, which provides that the statutes do not require carriers, facilities, or providers to provide health care services without appropriate payment of premium or fee, "reflect[s] the overall principle that the provision of these services should be in accordance with recognized insurance principles." *Id.* Subsection four does not impose "any additional restrictions over and above the insurance principles that govern premiums and rates." *Id.* The opinion would "not attempt to analyze the details of particular concepts or proposals." *Id.*

A 2006 AGO opinion clarified that the 2002 opinion addressed how carriers dealt with the conscience objection. Wash. Op. Att'y Gen. 10 (2006). The 2006 opinion explained that the 2002 opinion "concluded that it would be an unfair practice for the *carrier to charge the employees to recoup the additional cost of including contraceptive coverage.*" *Id.* The

---

[1] Formal attorney general opinions "are generally 'entitled to great weight' " in Washington courts. *Five Corners Fam. Farmers v. Washington*, 268 P.3d 892, 899 (Wash. 2011) (quoting *Seattle Bldg. & Constr. Trades Council v. Apprenticeship & Training Council*, 920 P.2d 581, 588 (Wash. 1996)).

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT --
NO. 3:19-cv-05181-BHS

3

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

2002 opinion "did not directly conclude that the employers would violate the law by declining to pay for contraceptives for their employees." *Id.* The 2006 opinion reiterated that employers have other lawful ways to exercise their conscience clause rights, but an AGO opinion "is not an appropriate vehicle to examine how that might be done as a matter of employment and insurance practices, or whether there would be legal pitfalls in any particular approach." *Id.*

**C.    Washington Law Requires Health Plans to Cover Contraception and Abortion Care if They Include Maternity Care, Without Modifying the Conscience Laws**

In 2018, the Legislature passed, and the Governor signed, SB 6219, which requires that health plans provide contraceptive coverage and that a health plan providing coverage for maternity care or services also include coverage for equivalent abortion services. The Legislature found that access to a full range of health benefits and preventative services "provides all Washingtonians with the opportunity to lead healthier and more productive lives;" that "[n]either a woman's income level nor her type of insurance should prevent her from having access to a full range of reproductive health care, including contraception and abortion services;" that "[a]ccess to contraception has been directly connected to the economic success of women and the ability of women to participate in society equally;" and that restricting "abortion coverage interfere[s] with a woman's personal, private pregnancy decision making, with his or her health and well-being, and with his or her constitutionally protected right to safe and legal medical abortion care." 2018 Wash. Sess. Laws, ch. 119, § 1.

Relevant here, the law has two parts, First, health plans issued or renewed after January 1, 2019, must provide coverage for all contraceptives approved by the federal Food and Drug Administration, voluntary sterilization procedures, and any services necessary to provide the contraceptives. Wash. Rev. Code § 48.43.072(1). This coverage cannot be subject to cost sharing or a deductible, unless the health plan is part of a health savings account. Wash. Rev. Code § 48.43.072(2)(a). Carriers cannot deny coverage when the contraceptive methods change within a 12-month period, and the health plan cannot impose any restrictions or delays on the

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT --
NO. 3:19-cv-05181-BHS

4

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

enrollee's ability to receive this coverage. Wash. Rev. Code §§ 48.43.072(3), (4). These benefits must be offered to all enrollees, their enrolled spouses, and their enrolled dependents. Wash. Rev. Code § 48.43.072(5).

Second, health plans issued or renewed after January 1, 2019 that "provide[] coverage for maternity care or services" must "also provide a covered person with substantially equivalent coverage to permit the abortion of a pregnancy." Wash. Rev. Code § 48.43.073(1).[2]

Legislators intended that SB 6219 did not supersede the conscience objection statute. Opponents argued that SB 6219 "would violate the constitutionally protected conscious rights of religious organizations and individuals." S.B. Rep. No. SB 6219, at 5 (Wash. 2018). Proponents responded that the bill "is a compromise bill that protects religious organizations but still protects women's reproductive health." *Id.* Those with conscience or religious objections could still utilize the protections of Wash. Rev. Code § 48.43.065 to avoid purchasing services with which they object. Wash. House Health Care & Wellness Committee, *Public Hearing: SB 5722, SSB 6219*, TVW at 33:12-39.30 (Feb. 7, 2018, 8:00 AM), https://www.tvw.org/watch/?eventID=2018021058.

During this litigation, the Insurance Commissioner engaged in rulemaking and ultimately promulgated rules implementing the statutes. Wash. Admin. Code §§ 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 *et seq.* The Rule makes clear that SB 6219 "does not diminish or affect any rights or responsibilities provided under [Washington's conscience statute]." Wash. Admin. Code § 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(3).

**D.    In Practice, Employers and Carriers Negotiate for Plans That Can Contain Objections to Coverage of Services by Reason of Religion**

The Insurance Commissioner regulates insurance health plans. The Insurance Commissioner does not regulate employers. Decl. of Paul M. Crisalli in Supp. of Defs.' Mot. for Summ. J. (Crisalli Decl.), Ex. A at 28. For large health plans, which are for more than 50

---

[2]This requirement does not apply to multistate plans, or if it would lead to violating federal requirements attached to federal funds to states. Wash. Rev. Code § 48.43.073(5). The "inapplicability of this section to a specific health plan . . . under this subsection does not affect the operation of this section in other circumstances." *Id.*

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT --
NO. 3:19-cv-05181-BHS

5

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

employees, like Cedar Park, employers and carriers can negotiate about the contents of the health plan. *Id.*, Ex. A at 26, 115. After the plan form has been filed electronically, the Insurance Commissioner reviews to determine whether the plan includes all the statutory and regulatory requirements. *Id.*, Ex. A at 115; Ex. B at 28. The Insurance Commissioner does not review anything on behalf of an individual or an organization. *Id.*, Ex. A at 96. Compliance with the conscience objection statute is the responsibility of the health carrier. *Id.*, Ex. A at 98. The Insurance Commissioner "does not have involvement in a given employer's decision to purchase health insurance for its employees." *Id.*, Ex. A at 99.

If there is an objection based on religion, the Insurance Commissioner will determine if the plan form follows the conscience objection statute, and would usually expect to see notification that "your employer has chosen not to provide such and such a benefit. You still have a right to access this benefit, and here's how you go about doing that." *Id.*, Ex. A at 102. In such a situation, the carrier will provide written notice in the plan documents, stating what services are not covered. *Id.* The carrier usually provides a direct contact number to get information about how to access them, and the associated cost shares. *Id.* The Insurance Commissioner does not know the mechanism for who pays for objected services, but that the employer does not pay for the objected services. *Id.* The mechanism for providing access differs based on the carrier and depends on the business models. *Id.*, Ex. A at 106, 109. Any entity, including carriers, as part of its business model, can choose to offer a product tailored towards employers that have objections to certain services. *Id.*, Ex. A at 109.[3]

---

[3]To ensure that plans containing objections do not create a competitive advantage to such carriers, the Legislature established a health equity fee to the State's General Fund based on an actuarial calculation. *Id.*, Ex. B at 67, 70. The State's General Fund can pay for the objected services, but the fee charged to such carriers is not connected to the services paid for by other State agencies.

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT --
NO. 3:19-cv-05181-BHS

6

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

**E.   While Claiming That Washington Law Forced Cedar Park to Purchase Plans Inconsistent with Its Religious Beliefs, Cedar Park Negotiated for Plans that Excluded Coverage for Abortion and Certain Contraceptives**

Cedar Park is a Christian church in Kirkland, Washington, affiliated with the Assemblies of God and part of the Northwest Ministry Network. Dkt. # 20 ¶ 19. Cedar Park operates schools, a funeral home, a missionary car ministry, a Christian counseling network, and a Christian club sports program. Crisalli Decl., Ex. C at 16-17. For its businesses, Cedar Park pays state business and organization (B&O) taxes and sales taxes. *Id.* at 18. Cedar Park has estimated yearly revenues of between $25 million and $30 million. *Id.* at 19.

For about six years, Cedar Park used Kaiser Permanente (Kaiser) as its health insurance carrier. Before Kaiser, Cedar Park used Group Health, which Kaiser bought out. *Id.* at 26-27. Cedar Park used Gallagher Benefits as its broker to search for and negotiate insurance plans. *Id.* at 8-9. Each plan lasted a fiscal year from September 1 until August 31 of the following year. Kaiser's plan excluded coverage for abortion services, though covered all contraceptives. *Id.* at 27. After passage of SB 6219, Kaiser informed Cedar Park that it would not exclude coverage for abortion services in its plan, beginning in the 2019-2020 plan year. *Id.* at 36.

In early 2019, Cedar Park contacted its broker to seek bids for plans that would exclude abortion and certain contraceptives. *Id.* at 36-37. Cedar Park solicited at least seven bids (which we now know to be eight) for plans consistent with its beliefs that would take effect September 1, 2019. *Id.* Cedar Park received several offers that were not competitive, but it received two options from Cigna. Dkt. # 93-6 at p. 2. Cedar Park knew of these bids as late as June 10, 2019. Crisalli Decl., Exs. D, E, F.

Cigna's bid gave Cedar Park two options, one for a fully insured plan and one for a level-funded plan. *Id.*, Ex. C at 40-44; Exs. D, E. Both options accommodated Cedar Park's beliefs by excluding coverage for abortion. *Id.*, Exs. D, E. The cost of both Cigna options was *cheaper* than the proposed plan the broker had negotiated with Kaiser for the same plan year. *Id.*, Ex. C at 60-61. The negotiated rate for the Kaiser plan was estimated to cost $916,314. *Id.*,

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT --
NO. 3:19-cv-05181-BHS

7

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

Ex. C at 61; Ex. D at 2. The fully insured plan from Cigna was estimated to cost $890,408. *Id.*, Ex. C at 60; Ex. D at 2. The level-funded option from Cigna was estimated to cost $913,381. *Id.*, Ex. C at 61; Ex. D at 2.

Emails between Cedar Park, its broker, and Cigna show that Cigna would accommodate Cedar Park's religious objection to providing coverage for certain contraceptives. *Id.*, Ex. C at 43; Exs. E-F. Unlike Kaiser, which did not have the administrative ability to carve out certain contraceptives, Cigna told Cedar Park that its plan would exclude specific contraceptives that Cedar Park believed were inconsistent with its religious beliefs. *Id.*, Ex. C at 42-43; Ex. F.

Cigna's plans excluded abortion coverage, as multiple communications confirmed that. The June 10, 2019 presentation made clear that "Elective abortions are not covered for both the Cigna Fully Insured and Cigna Level-Funded plans." *Id.*, Ex. D at 2. Cigna shortly thereafter made clear that it could provide either a fully-funded or a level-funded plan that excluded coverage for abortion and contraception to which Cedar Park objected. On June 25, 2019, the broker forwarded Cigna's legal explanation that both plan options would accommodate Cedar Park's religious objections to coverage for contraceptives and abortion. *Id.*, Ex. E. For self-funded plans, Cigna explained both that "an organization that objects to coverage of contraceptives based on religious beliefs or moral objections cannot be required to provide coverage for contraceptives" and that "[f]or abortion coverage . . . [u]pon request of a church plan, coverage of these benefits can be excluded." *Id.*

For insured plans, the email recited Washington law that plans including coverage for maternity care must also include abortion care and that plans must cover contraceptives. The email correctly described the conscience objection statute, stating "[i]n other words, an employer may exclude coverage for contraceptives and abortion if that employer objects to providing that coverage due to religious or other beliefs." *Id.* The email correctly explained that enrollees can still receive coverage for "any service excluded from their benefit package." *Id.* The religious objection removes coverage from the benefit package. *Id.* Cigna clarified that enrollees' access

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT --
NO. 3:19-cv-05181-BHS

8

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

1   to the objected services would occur outside the plan: "Cigna will send a letter to enrollees

2   notifying them of their rights to access these excluded services outside of their plan." *Id.*

3       An email exchange on July 8, 2019 entitled "Direct Answers" concluded that Cigna

4   would exclude contraceptives and abortion in its plan options. *Id.*, Ex. F. Melissa Knauss, Cedar

5   Park's human resources head, asked the broker for clear and unequivocal answers: "Steve and I

6   are trying to read between the carriers' mumbo-jumbo, legaleese [sic], and just get really clear

7   unequivocal answers. Please ask the carrier(s) to answer the following by selecting Yes or No

8   and providing the details if they select Yes." *Id.* Knauss asked point-blank whether Cigna

9   excluded coverage for abortion and certain contraceptives, which was Cedar Park's concern:

10      FOR KAISER AND CIGNA
        Will Cedar Park Assembly of God be able to exclude abortions and abortifacients,
11      including Copper IUDs, while still providing non-abortifacient contraceptives, at
        renewal for the 2019-2020 plan year?
12      [ ] YES, this is what must be done: _____
        [ ] No, at renewal for the plan effective 9/2019 you will not be able to exclude
13      abortions and abortifacients, including Copper IUDs, while still providing non-
        abortifacient contraceptives based on the information we have at this time.
14  *Id.*

15      A half hour later, the broker forwarded Cigna's response affirming that Cigna would

16  accommodate those exclusions: "Yes. Legal and administrative approval from CIGNA." *Id.*

17      There was no question whether these answers applied to both Cigna's fully insured option

18  and level-funded option—Cedar Park learned that the answers applied to both. *Id.*, Ex. G. On

19  July 18, 2019, the broker emailed the same Cigna employee asking if the answers applied only

20  to the level funded option: "All the questions I've asked you would only apply to level funded

21  correct? I need to know how it would apply to your fully insured plan." *Id.* A few minutes later,

22  Cigna responded that all the answers would apply to both options: "All of the answers provided

23  apply to both Level and Fully insured with the exception of transgender services which can only

24  be excluded on Level." *Id.*

25

26

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT --
NO. 3:19-cv-05181-BHS

9

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

That same day, the broker forwarded "an updated proposal with the lower Cigna rates." *Id.*, Ex. H. The attachment included four plan options from Cigna, with two level-funded options and two fully insured options. *Id.*, Ex. I. Like before, the proposal includes a negotiated Kaiser bid for $916,314, a Fully Insured Cigna bid for $890,408, and a Level-Funded Cigna bid for $913,381. *Id.* The other two alternatives assume that a "PPO plan is the only plan offered with Cigna. Rates are estimated at 1.5% below dual plan rates." *Id.* With that assumption, the Fully Insured Cigna bid was for $884,776 and the Level-Funded Cigna bid was for $907,575. *Id.* Again, "[e]lective abortions are not covered for both the Cigna Fully Insured and Cigna Level-Funded plans." *Id.*

**F.    Cedar Park's Complaint Is Now Limited to Its Free Exercise Claim and a Related Religious Autonomy Claim**

On March 8, 2019, Cedar Park sued Governor Jay Inslee and Insurance Commissioner Myron Kreidler challenging SB 6219, raising several constitutional challenges. Dkt. # 1. Cedar Park alleged SB 6219 "forces Cedar Park to choose between violating state law and violating its deeply held religious beliefs by paying for abortion coverage," (¶ 67); that it required churches and other religious employers to provide insurance coverage for abortion, against their religious beliefs (¶ 83); that it would cost $243,125 in additional costs to become self-insured to have a plan consistent with its beliefs, which "is not a viable option" (¶ 43); and that offering group health insurance is its only viable option. *Id.*

The Defendants moved to dismiss, and Cedar Park responded and moved for a preliminary injunction. Dkts. # 25, # 28, # 29. On July 3, 2019, while both motions were still pending, Cedar Park sought leave to file a second amended complaint. Dkt. # 42. This Court granted the Defendants' motion to dismiss, denied the motion for preliminary injunction, and granted Cedar Park leave to amend. Dkt. # 45. The Court explained that "there is some conceivable set of facts" where health care providers, insurance carriers, and facilities are treated

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT --
NO. 3:19-cv-05181-BHS

10

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

differently than employers, which was sufficient to allow Cedar Park leave to amend its complaint. *Id.* at 22.

On August 15, 2019, Cedar Park filed its second amended complaint. Dkt. # 46. Like the first two complaints, Cedar Park alleged SB 6219 "force[s] Cedar Park to choose between violating state law and violating its deeply held religious beliefs by paying for abortion coverage" (¶¶ 82, 2), that it required churches and other religious employers to provide insurance coverage for abortion, against their religious beliefs (¶ 70), that it would cost $243,125 in additional costs to become self-insured to have a plan consistent with its beliefs, which "is not a viable option" (¶ 43); and that offering group health plans is its only viable option. *Id.* Cedar Park renewed its motion for preliminary injunction and provided a declaration from its pastor stating that "Cedar Park has carefully considered its insurance options. In doing so, the Church has determined that self-insurance is not a viable option. If Cedar Park were to provide a self-insured plan, it would cost the Church roughly $243,125 more in additional annual costs, and that number is expected to double within the next several years due to increase in plan use." Dkt. # 50 ¶ 8.

On October 3, 2019, before the Defendants responded, Cedar Park sought leave to file a supplemental complaint. Dkt. # 51. The supplemental verified complaint adds allegations regarding Cedar Park's communications with Kaiser, and Kaiser's refusal to provide a plan excluding coverage for abortion services. Dkt. # 52-1. The Defendants responded and cross-moved that the Court dismiss.

The Court granted Cedar Park leave to supplement, denied the motion for preliminary injunction, and granted the motion to dismiss. Dkt. # 60. The Court ruled that Cedar Park failed to establish an injury in fact and that Cedar Park failed to allege sufficient facts demonstrating that Washington law treated religious employers different than religious carriers or providers, based on their religious views. Dkt. # 60 at p. 11.

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT --
NO. 3:19-cv-05181-BHS

11

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

Cedar Park appealed. Affirming much of this Court's dismissal order, the Ninth Circuit reversed on injury-in-fact, holding that Cedar Park plausibly alleged an injury in fact because of two critical allegations: (1) Cedar Park's health insurer (Kaiser) "stopped offering a plan with abortion coverage restrictions," and (2) "Cedar Park could not procure comparable replacement coverage." Dkt. # 65 at p. 2. Because of these two allegations, it was "sufficient to state an injury in fact that is fairly traceable to SB 6219." *Id.* The Ninth Circuit held that the claims were redressable because the fact that Kaiser had provided a plan consistent with its beliefs "is strong evidence that Cedar Park could obtain a similar plan from Kaiser Permanente or another health insurer if the state is enjoined from enforcing SB 6219." *Id.* at pp. 2-3. The Ninth Circuit rejected the Defendants' argument that SB 6219 did not prevent Kaiser from continuing to offer a plan that restricted abortion coverage because "there is no evidence in the record clearly demonstrating that Cedar Park could obtain acceptable coverage at the time it filed its complaint." *Id.* at pp. 3-4.

The Ninth Circuit affirmed this Court's ruling dismissing Cedar Park's equal protection claim because Cedar Park did not suffer a denial of equal treatment due to SB 6219's interaction with Washington's conscience objection statute. *Id.* at 4. The Court explained that "[t]o the extent the conscience objection statute treats religious organizations like Cedar Park differently than individual health care providers . . . such differential treatment does not constitute discrimination because the providers are not similarly situated to religious organizations." *Id.* "[P]roviders are in the business of providing health services, while religious organizations merely purchase health coverage." *Id.* On remand, this Court clarified that the only remaining claims to resolve are Cedar Park's Free Exercise claim and its religious autonomy claim to the extent it relates to Cedar Park's freedom to exercise. Dkt. # 75.

During discovery, Cedar Park disclosed for the first time that it had negotiated with Cigna for multiple plans that would exclude coverage for abortion and contraceptives and that information about access to those services would occur outside Cedar Park's plan. Crisalli Decl.,

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT --
NO. 3:19-cv-05181-BHS

12

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

Ex. G. Defendants renewed their motion to dismiss, and Cedar Park responded that even if they did not have to pay for the coverage, any scenario in which its enrollees would receive access or information about access would violate its religious beliefs. Dkt. # 93 at p. 9. In response to a motion to extend the dispositive motions deadline, Cedar Park reiterated this theory. Dkt. # 102 at pp. 1, 8.

## V.     ARGUMENT

### A.     Legal Standards

"The court shall grant summary judgment if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Frlekin v. Apple, Inc.*, 979 F.3d 639, 643 (9th Cir. 2020). The Court views the evidence "in the light most favorable to the non-moving party." *Albino v. Baca*, 747 F.3d 1162, 1168 (9th Cir. 2014) (en banc).

### B.     Cedar Park's Free Exercise Claim Fails as a Matter of Law

An individual's religious beliefs do not "excuse him from compliance with an otherwise valid law prohibiting conduct that the State is free to regulate." *Emp. Div., Dep't of Hum. Res. of Or. v. Smith*, 494 U.S. 872, 878-79 (1990). Even if a law incidentally burdens a particular religion or practice, the law can be upheld if it is a "valid and neutral law of general applicability" and is rationally related to a legitimate government interest. *Stormans, Inc. v. Weisman* (*Stormans II*), 794 F.3d 1064, 1075-76 (9th Cir. 2015) (cleaned up); *see Miller v. Reed*, 176 F.3d 1202, 1207 (9th Cir. 1999) (DMV can require applicant to divulge social security number in conflict with plaintiff's religious beliefs). Laws that are not neutral or are not generally applicable are subject to strict scrutiny. *Stormans II*, 794 F.3d at 1076. The test for neutrality and general applicability are interrelated, and failure to satisfy one requirement likely indicates that the other has not been satisfied. *Id.* (citing *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 531 (1993)).

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT --
NO. 3:19-cv-05181-BHS

13

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

### 1. The text and operation of SB 6219 are neutral

Courts examine the object, the text, and the operation of the law to assess whether it is neutral to religion. *Lukumi*, 508 U.S. at 533-34; *Tingley v. Ferguson*, 47 F.4th 1055, 1085 (9th Cir. 2022); *Stormans II*, 794 F.3d at 1075-76. "If the purpose of the law is to restrict practices *because of* the religious motivations of those performing the practices, the law is not neutral." *Tingley*, 47 F.4th at 1085. A law is not facially neutral when, looking at its language or context, it refers to a religious practice without a secular purpose. *Lukumi*, 508 U.S. at 533. A law operates neutrally so long as it does not target a religious tenet or practice while appearing neutral on its face. *Id.* at 534. Courts must be "'reluctant to attribute unconstitutional motives' to government actors in the face of a plausible secular purpose." *Kreisner v. City of San Diego*, 1 F.3d 775, 782 (9th Cir. 1993) (quoting *Mueller v. Allen*, 463 U.S. 388, 394-95 (1983)).

Even if a facially neutral law disproportionately burdens a religious entity, it does not automatically lose its neutrality. *Stormans II*, 794 F.3d at 1077. "The Free Exercise Clause is not violated even if a particular group, motivated by religion, may be more likely to engage in the proscribed conduct." *Id.* (citing *Reynolds v. United States*, 98 U.S. 145, 166-67 (1878)); *see also Tingley*, 47 F.4th at 1084-85. A law is not neutral if it operates as a "covert suppression of particular religious beliefs." *Lukumi*, 508 U.S. at 534 (quoting *Bowen v. Roy*, 476 U.S. 693, 703 (1986)). A plaintiff must show more than "awareness of consequences;" it must prove that the law was enacted "because of, not merely in spite of," its impacts on a particular religion or religious belief or practice. *Ashcroft v. Iqbal*, 556 U.S. 662, 676-77 (2009) (cleaned up); *see also Lukumi*, 508 U.S. at 540.

Here, the legislative findings show that the object of SB 6219 is neutral. The purposes of SB 6219 include promoting gender equity and women's reproductive health; ensuring that a woman's income level does not prevent her from receiving the full range of care; reducing negative health and social outcomes from unintended pregnancies, such as delayed prenatal care, maternal depression, increased risk of physical violence during pregnancy, low birth weight,

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT --
NO. 3:19-cv-05181-BHS

14

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

decreased mental and physical health during childhood, and lower education attainment for the child; ensuring women obtain access to contraceptive methods that are most effective for their health; and ensuring women maintain their rights to personal, private pregnancy decision-making. 2018 Wash. Sess. Laws, ch. 119, § 1. These are SB 6219's express purposes and what the operative language seeks to achieve. Neither the purpose nor the language focuses on religion—they both focus on public health, economic inefficiencies and preventing long-term harms. These are not uniquely applicable to a particular religious view—they apply to the secular and religious like.[4]

SB 6219's text is neutral. SB 6219 does not facially target a particular religion. Rather, the law deals with ensuring health plans include certain preventative services, such as contraception, and if they provide coverage for maternity care, they also provide equivalent coverage to permit an abortion. Wash. Rev. Code §§ 48.43.072, .073. SB 6219 does not reference any religious practice, conduct, or motivation.

SB 6219 operates neutrally. In practice, individuals and organizations, like Cedar Park, can refuse to purchase health plans that cover services that conflict with their conscience or religious beliefs. It is for this reason that Cigna offered multiple options to Cedar Park that would exclude abortion and the contraceptives to which Cedar Park objects.

### 2.   SB 6219 is generally applicable

Whether a law is generally applicable turns on whether the law selectively imposes "burdens only on conduct motivated by religious belief . . . ." *Lukumi*, 508 U.S. at 543. The general applicability inquiry examines whether the law selectively prohibits religiously motivated conduct while allowing "substantial, comparable secular conduct" that is just as harmful to the law's purpose. *Stormans II*, 794 F.3d at 1079; *see Lukumi*, 508 U.S. at 543. If a law pursues the government's interest only against conduct motivated by religious belief but

---

[4]Cedar Park has previously referenced statements by legislators about the law, but these offhand remarks are not relevant to the Court's analysis, nor do they reflect a hostility towards religion. *See Tingley*, 47 F.4th at 1086 (stray, out context statements by Washington legislatures are not relevant to concluding law was not neutral).

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT --
NO. 3:19-cv-05181-BHS

15

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

1  fails to include in its prohibitions substantial, comparable secular conduct that would similarly

2  threaten the government's interest, the law is not generally applicable. *Stormans II*, 794 F.3d at

3  1080. If a statute exempts conduct, the courts examine whether the exemptions are tailored to

4  specific, secular purposes so as to not impair the general applicability of a law. *Id.* A law is not

5  generally applicable if a governmental agency exerts discretion whether to make individualized

6  exemptions so as to deny an entity the ability to avoid conduct it believes to be objectionable.

7  *Fulton v. City of Philadelphia, Pa.*, 141 S. Ct. 1868, 1877 (2021).

8     Here, SB 6219 applies to all health plans in Washington, so it does not target health plans

9  only for religious entities. If a purchaser wishes to express religious beliefs by refusing to

10  purchase a plan containing coverage for services with which it disagrees, it may do so under

11  Wash. Rev. Code § 48.43.065(3). SB 6219 is generally applicable to all plans, and all plan

12  purchasers may invoke their free exercise rights set forth in Wash. Rev. Code § 48.43.065. The

13  Legislature, which is presumed to be familiar with prior enactments, passed SB 6219 within the

14  existing regulatory context, specifically Wash. Rev. Code § 48.43.065, recognizing that

15  Washington's health insurance laws included a religious accommodation. *Baker v. Tchrs. Ins. &*

16  *Annuities Ass'n Coll. Ret. Equity Funds (TIAA-CREF)*, 588 P.2d 1164, 1167 (Wash. 1979)

17  (Legislature is presumed to be familiar with its prior enactments).

18     Cedar Park has previously identified some insurance or insurance-like products that are

19  exempt from the definition of a "health plan" found in Wash. Rev. Code § 48.43.005(26). But

20  those exemptions, all of which predate SB 6219, relate to (1) specific types of insurance products

21  that only incidentally include health care services; (2) are not designed to be comprehensive

22  health plans due to duration or very limited benefits; or (3) are particular health care options

23  funded by entities the Insurance Commissioner does not have jurisdiction over (like Medicare).

24  Contrary to Cedar Park's implications otherwise, SB 6219's requirements apply to all health

25  plans, as defined by Wash. Rev. Code § 48.43.005(26). And, like in *Stormans II*, any exemption

26  is "tied directly to limited, particularized, business-related, objective criteria," so they do not

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT --
NO. 3:19-cv-05181-BHS

16

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

give the Insurance Commissioner unfettered discretion to discriminate. 794 F.3d at 1082. Whether SB 6219 includes a religious exemption is irrelevant because one exists in Wash. Rev. Code § 48.43.065. Cedar Park fails to show a dispute of material act that SB 6219 was enacted to target a particular religion or belief system.[5]

Further, the Insurance Commissioner does not make discretionary decisions about approving exemptions so as to implicate strict scrutny. *Contra Fulton*, 141 S. Ct. at 1878-79. Instead, the conscience objection statute requires the Insurance Commissioner to approve plans that exclude coverage for services by reason of religion or conscience objection. Wash. Rev. Code § 48.43.065(3). That law prohibits the Insurance Commissioner from compelling employers to pay for coverage of services to which they object, which is a mandatory obligation on the Insurance Commissioner. *Id.* The Insurance Commissioner thus simply reviews proposed health plans to ensure compliance with all the statutory requirements, including conscience objection requirements. "There is no provision in the Washington law for individual exceptions that would allow secular exemptions but not religious ones." *Tingley*, 47 F.4th at 1088. To the extent there is any discretion, such discretion is held by the carrier and the employer to negotiate a plan consistent with their beliefs and business models.[6]

Cedar Park appears to argue that its religious rights are violated if there is any indirect involvement with a carrier that would lead to an abortion, so the law cannot be generally applicable. Putting aside that Wash. Rev. Code § 48.43.065 provides protections to insurance issuers, health providers, and individuals or organizations on the basis of a conscience or religious objection, the "mere existence of an exemption that affords some minimal governmental discretion does not destroy a law's general applicability." *Stormans II*, 794 F.3d

---

[5]Following Cedar Park's logic, since there are exemptions, any statute with the term "health plan" in Wash. Rev. Code Title 48.43 is not neutral or generally applicable, but subject to strict scrutiny. Nothing indicates SB 6219 was motivated by religious discrimination. The chapter's requirements extend to specific health plans and are not gerrymandered to burden religion.

[6]Further, if the Court applied strict scrutiny in this case, it would likely have to apply strict scrutiny to every health plan and health plan law, as the conscience objection could apply to any of those.

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT --
NO. 3:19-cv-05181-BHS

17

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

at 1082. Cedar Park must show that any exemption resulted from religious animus, which is not the case here. *Id.* (quoting *Lighthouse Inst. for Evangelism, Inc. v. City of Long Branch*, 510 F.3d 253, 276 (3d Cir. 2007)). Contrary to Cedar Park's allegations, the exemptions in section 48.43.065 apply to all individuals or entities with conscience or religious objections.

### 3.     SB 6219 is rationally related to a legitimate governmental purpose

A neutral and generally applicable law must be upheld against a free exercise challenge if it is "rationally related to a legitimate governmental purpose." *Stormans II*, 794 F.3d at 1084. Here, the legislative findings identify at least 14 different governmental purposes in enacting SB 6219, which include:

- better access to health benefits, which provides all Washingtonians the opportunity to lead healthier and more productive lives;

- protecting gender equity and women's reproductive health;

- providing essential primary care to women and teens, particularly since reproductive health issues are the primary reason they seek routine medical care;

- access to contraceptives, which is connected to economic success of women and the ability to participate in society equally; and

- minimizing restrictions on abortion coverage that would interfere with a woman's personal, private pregnancy decision-making and her constitutionally protected right to safe and legal abortion care.

2018 Wash. Sess. Laws, ch. 119, § 1.

SB 6219 rationally implements those purposes by requiring health plans to provide contraceptive care, and if the plan includes maternity care, to provide equivalent coverage for abortion services. The requirements of SB 6219 are tied directly to the purposes the Legislature identified. SB 6219 does not change Wash. Rev. Code § 49.43.065(3)(1), but the two are read together in concert. *See Am. Bankers Ass'n v. Gould*, 412 F.3d 1081, 1086 (9th Cir. 2005) (a court's "goal in interpreting a statute is to understand the statute as a symmetrical and coherent regulatory scheme and to fit, if possible, all parts into a . . . harmonious whole") (cleaned up); *In re First T.D. & Inv., Inc.*, 253 F.3d 520, 527 (9th Cir. 2001) (when interpreting state statute,

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT --
NO. 3:19-cv-05181-BHS

18

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

1    courts apply state rules of statutory construction); *Quadrant Corp. v. State Growth Mgmt.*

2    *Hearings Bd.*, 110 P.3d 1132, 1139-40 (Wash. 2005) (en banc) ("the court begins with the

3    statute's plain language and ordinary meaning, but also looks to the applicable legislative

4    enactment as a whole, harmonizing its provisions by reading them in context with related

5    provisions and the statute as a whole") (cleaned up).

6         Cedar Park argues that it is irrational to force it and its employees to pay for abortion

7    coverage, even indirectly, since they share the belief that abortion is wrong. But Cedar Park

8    might not pay indirectly for coverage at all, as it is possible that funds to cover the objectionable

9    services might come from third parties or grants. And it is possible that family members who are

10   on the insurance plan might have different religious views.

11        Even if strict scrutiny applied, SB 6219 serves the compelling state interest in promoting

12   public health caused by unintended pregnancies. The legislative findings bear out the benefits

13   from that governmental interest, including better health care for the citizens at reduced costs.

14   The law is narrowly tailored to achieve those ends while respecting religion, particularly where

15   the law allows churches and religious organizations to refuse to purchase health plans that cover

16   services that they object. The law ensures that women (and men) receive the services that make

17   a healthier Washington and reduce health costs while ensuring those with religious objections

18   can exercise their rights.

19        **4.    Cedar Park's argument that its expression rights are violated when third parties provide information about access to services to enrollees is factually and legally deficient**

20

21        Over the course of litigation, Cedar Park's claims evolved from arguing that it was forced

22   to pay for abortion and certain contraceptives to be that its freedom to exercise is violated when

23   it exercises its objection under Wash. Rev. Code § 48.43.065 but the enrollees can still learn

24

25

26

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT --
NO. 3:19-cv-05181-BHS

19

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

1   about access to such services outside the insurance plan.[7] Cedar Park's argument boils down to

2   be that their religious freedom is violated unless they have a right to prohibit a third party from

3   facilitating coverage for abortion or certain contraceptives. There are fatal flaws with this claim.

4       First, Cedar Park cannot show that, prior to this case, it had a plan that did not facilitate

5   abortion or contraceptives, as defined by Cedar Park. *British Airways Bd. v. Boeing Co.*,

6   585 F.2d 946, 952 (9th Cir. 1978) (nonmoving party cannot rely on speculation or conjecture

7   when responding on summary judgment motion). As long as Cedar Park used Kaiser and

8   Group Health for its carrier, it paid "overhead" to carriers that have facilitated access to abortion

9   (as they describe). Cedar Park can present no evidence that Kaiser ever agreed to prevent any of

10  the funds Cedar Park paid from paying for abortion services. There is no evidence that Kaiser

11  (or any other carrier) was previously prohibited from providing or facilitating abortion services

12  for previous Cedar Park enrollees in the previous plans.

13      Second, there is no evidence that Cedar Park facilitates abortion by exercising its

14  religious objection to abortion or contraception. Any facilitation or discussion of access occurs

15  between the enrollee and either the carrier or another third party (possibly including the

16  Department of Health). There is no evidence that Cedar Park would even be notified when

17  enrollees seek this coverage (which would likely violate the privacy rights of the enrollees) or

18  that any enrollee through Cedar Park has or will seek such abortion services. Cedar Park has to

19  speculate that a third party (either a Cedar Park employee or family member of an employee)

20  seeks abortion services or contraceptives, and the carriers coordinate those services on behalf of

21  the enrollee. There is no evidence to show that this has or will occur. At most, Cedar Park has to

22  rely on some sort of speculation, which is not appropriate.

23      Third, Cedar Park cannot show that providing information about access to abortion is not

24  _____

25  [7]Cedar Park argues that Cigna's plans provide access to abortion and contraceptives within the plan, but
    there is no evidence to support that statement, either in this record or by the law. The only evidence is that Cigna
26  offered a plan that excluded coverage for abortion and contraceptives, and that access to those services would be
    outside the plan. Crisalli Decl., Ex. G.

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT --
NO. 3:19-cv-05181-BHS

20

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

1  a neutral or generally applicable application of Washington's conscience objection statute.

2  *See Tingley*, 47 F.4th at 1086-88; *Stormans II*, 794 F.3d at 1082 (exemption must not result from

3  religious animus). In fact, the *Stormans II* Court held that general laws focusing on providing

4  access to contraceptives to patients, while also allowing individuals to exercise their religious

5  beliefs, was generally applicable, neutral, and was rationally related to the government's interest

6  in providing its citizens access to health care. 794 F.3d at 1076-1079. The Supreme Court has

7  similarly recognized the balance of exercising religious objections to certain health care services,

8  particularly contraceptives, while expressly noting that "[n]othing in this opinion . . . is to affect

9  the ability of the Government to ensure that women covered by [the religious objectors'] health

10  plans 'obtain, without cost, the full range of FDA approved contraceptives.'" *Zubik v. Burwell*,

11  578 U.S. 403, 409 (2016) (quoting *Wheaton College v. Burwell*, 573 U.S. 958 (2014)). Having

12  a third party provide information about access ensures the neutrality and general applicability of

13  the law, as Cedar Park does not pay for the coverage nor the access to coverage.

14  **C.      Cedar Park's "Religious Autonomy" Claim Fails**

15      The religion clauses of the First Amendment together protect church autonomy in

16  internal religious matters, which means that religious bodies have the power to decide for

17  themselves, free from state interference, matters of church governance as well as those of faith

18  and doctrine. *See Bollard v. Cal. Province of Soc'y of Jesus*, 211 F.3d 1331, 1332 (9th Cir. 2000).

19  While this doctrine bars courts from wading into cases involving a church's governance of

20  "religious" or "ecclesiastical" matters, including the hiring and firing decisions of its employees,

21  courts can adjudicate matters dealing with churches if the dispute requires "neutral principles of

22  law, developed for use" in those kinds of disputes. *Jones v. Wolf*, 443 U.S. 595, 599-605 (1979);

23  *see Hosanna-Tabor Evangelical Lutheran Church & Sch. v. E.E.O.C.*, 565 U.S. 171 (2012)

24  (firing of a teacher at a religious school was not subject to employment discrimination suit under

25  ministerial exception). Generally applicable laws are not subject to the religious autonomy

26  doctrine. *Our Lady of Guadalupe Sch. v. Morrissey-Berru*, 140 S. Ct. 2049, 2060 (2020);

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT --
NO. 3:19-cv-05181-BHS

21

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

*Bollard v. Cal. Province of Soc'y of Jesus*, 196 F.3d 940, 948 (9th Cir. 1999).

The religious autonomy claim fails as a matter of law, as the purchase of a health plan is not an ecclesiastical decision. It is the choice to enter the marketplace for health care. As discussed above, SB 6219 is a generally applicable law that does not force a particular religious belief, but sets forth what must be included in a health plan subject to the State's conscience law. That religious organizations can object to purchasing health plans containing services with which they disagree shows that SB 6219 does not affect religious organizations' ecclesiastical and doctrinal decisions. Those organizations can still choose to practice and maintain their beliefs as they wish. But the church cannot dictate to the State what private companies make available on the market when the church chooses to purchase a health plan. No case dictates that private parties outside the church must comply with the church's religious views. Cedar Park's religious autonomy claim fails.

## VI.    CONCLUSION

The Court should dismiss this case with prejudice.

DATED this 9th day of March 2023.

ROBERT W. FERGUSON
Attorney General

*/s/ Paul M. Crisalli*
PAUL M. CRISALLI, WSBA #40681
Assistant Attorney General
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744
Paul.Crisalli@atg.wa.gov

MARTA DELEON, WSBA #35779
Senior Assistant Attorney General
Government Compliance & Enforcement Division
1125 Washington Street SE
Olympia, WA  98504-0100
(360) 664-9006
Marta.Deleon@atg.wa.gov
*Attorneys for Defendants*

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT --
NO. 3:19-cv-05181-BHS

22

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744