Honorable Benjamin H. Settle

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

CEDAR PARK ASSEMBLY OF GOD OF
KIRKLAND, WASHINGTON,

        Plaintiff,

     v.

MYRON "MIKE" KREIDLER, in his official
capacity as Insurance Commissioner for the State
of Washington; JAY INSLEE, in his official
capacity as Governor of the State of Washington,

        Defendants.

Civil No. 3:19-cv-05181

**PLAINTIFF'S MOTION FOR RULE 11 SANCTIONS**

NOTING DATE: APRIL 14, 2023

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**TABLE OF CONTENTS**

Table of Authorities ...................................................................................................... ii

Introduction .................................................................................................................... 1

Argument ......................................................................................................................... 2

    I.       Defendants misstate the requirements for jurisdiction by mischaracterizing the Ninth Circuit's rulings in this case and in *Skyline*. ........................................................ 3

    II.     Defendants misstate Cedar Park's religious beliefs. ............................................ 5

    III.    Defendants wrongly assert that the Cigna plans would accommodate Cedar Park's religious beliefs despite admitting they would facilitate abortion. .............................. 7

    IV.    Defendants selectively cite the record to mislead the Court into believing that the Cigna plans were cheaper. ........................................................................................ 10

    V.     Defendants misstate the number of plans that indicated they could exclude abortion. ............................................................................................................................ 11

    VI.    Defendants falsely assert that Cedar Park is asking for an injunction requiring Kaiser to issue a plan that accommodates the Church's beliefs. ................................. 11

    VII.   Defendants falsely accuse Cedar Park of misleading the Court about when it knew Kaiser would not accommodate its religious beliefs. ............................................... 12

Conclusion ...................................................................................................................... 12

Certificate of Service ..................................................................................................... 15

ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, Arizona 85260
(480) 444-0020

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Bradshaw v. City of Los Angeles*,
   No. 2:19-cv-06661-VAP-JCx, 2022 WL 18163432 (C.D. Cal. Sept. 28, 2022) .............. 1, 2, 13

*Cedar Park Assembly of God v. Kreidler*,
   860 Fed. App'x 542 (9th Cir. 2021) ....................................................................... 3

*Evanston Insurance Company v. Winstar Properties, Inc.*,
   No. 2:18-cv-07740-RGK-KES, 2021 WL 8314460 (C.D. Cal. Dec. 14, 2021) ........................ 2

*Skyline Wesleyan Church v. California Department of Managed Health Care*,
   968 F.3d 738 (9th Cir. 2020) ........................................................................... 1, 4

**Statutes**

RCW § 48.43.065 ........................................................................................ 8

RCW § 48.43.073 ........................................................................................ 7

**Rules**

Fed. R. Civ. P. 11 ..................................................................................... 1

ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, Arizona 85260
(480) 444-0020

# INTRODUCTION

Defendants filed a frivolous motion for sanctions asserting "facts" that contradict the record and misstating Ninth Circuit law. Demonstrating peak irony, Defendants' Motion for Sanctions Under Rule 11 makes numerous assertions that violate Rule 11(b)(3)'s requirement that "the factual contentions have evidentiary support." Defendants' statements of fact are so at odds with the record that they indicate an intent "to harass, cause unnecessary delay, or needlessly increase the costs of litigation." Fed. R. Civ. P. 11(b)(1). Defendants also make affirmative statements about the Ninth Circuit's controlling opinions in this case that cannot be reconciled with what those opinions say, another ground for sanctions. Accordingly, Defendants leave Cedar Park no choice but to request that the Court sanction Defendants and their counsel and order them to compensate Cedar Park's attorneys for the costs and fees associated with responding to Defendants' frivolous motion for sanctions.

Defendants' Motion for Sanctions incorporates its motion to dismiss briefing. Defs.' Sanctions Mot. at 3. That's appropriate because both documents reflect a failed attack on the merits of Cedar Park's claims. Rather than argue in a summary judgment motion that the facts fail to prove SB 6219 burdens Cedar Park's religious convictions, Defendants try to short-circuit the usual litigation process. This contradicts the purpose of "Rule 11 motions [which] 'should not be employed … to test the legal sufficiency or efficacy of allegations in the pleadings.'" *Bradshaw v. City of L.A.*, No. 2:19-cv-06661-VAP-JCx, 2022 WL 18163432, *2 (C.D. Cal. Sept. 28, 2022) (quoting Fed. R. Civ. P. 11, advisory committee's note to 1993 amend).

Moreover, Defendants' Motion makes a plethora of statements that conflict with the documents those statements summarize, including the Ninth Circuit's holding in this case and in *Skyline Wesleyan Church v. California Department of Managed Health Care*, 968 F.3d 738 (9th Cir. 2020). Most egregious, Defendants represent to the Court that Cedar Park's religious beliefs are limited to "paying for abortion and contraception," when, in fact, all the Church's pleadings consistently explain that its religious beliefs also prohibit facilitating abortion in any

ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, Arizona 85260
(480) 444-0020

circumstance—directly or indirectly. Relatedly, Defendants say that Cigna's offer to provide plans that purportedly "exclude" abortion and abortifacients satisfies Cedar Park's religious beliefs, even though Defendants concede the plans would still facilitate abortion. Discovery confirmed as much.

The facts from discovery also show that, contrary to Defendants' assertion, Cigna's policies would not have been cheaper when viewed over a period of years, and the coverage was not comparable to the plan the Church had in place before SB 6219 took effect. Defendants even inflate the number of alternative plans Cedar Park's broker presented, misstate when the Church knew Kaiser would not accommodate its religious beliefs, and wrongly accuse the Church of asking the Court to force Kaiser to provide it with a plan that accommodates its religious beliefs.

These false assertions render Defendants' motion frivolous. The Motion is baseless and made without reasonable competent inquiry, violating the very rule the Motion invokes.

## ARGUMENT

This Court has discretion to sanction Defendants because their motion for sanctions is a "frivolous filing that is *both* baseless *and* made without reasonable and competent inquiry." *Bradshaw*, 2022 WL 18163432 at *4 (cleaned up). In *Bradshaw* the Court gave two primary reasons for sanctioning the original party moving for sanctions: (1) he "chose to ignore" one of the legal requirements for jurisdiction, and (2) he relied on "disputed" evidence in the motion. *Id.* Similarly, another court sanctioned defendants for filing a spurious motion for sanctions, mainly because the motion mischaracterized a Ninth Circuit order, accused the plaintiff of misleading the Court "when it only gave evidence and arguments in its own favor," and wrongly asserted that "Plaintiff's motion for summary judgment was supported by zero actual evidence." *Evanston Ins. Co. v. Winstar Properties, Inc.*, No. 2:18-cv-07740-RGK-KES, 2021 WL 8314460, *2 (C.D. Cal. Dec. 14, 2021) (cleaned up).

Defendants' Motion for Sanctions contains similar conduct—and more—and therefore violates Rule 11.

ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, Arizona 85260
(480) 444-0020

1

2

### I.   Defendants misstate the requirements for jurisdiction by mischaracterizing the Ninth Circuit's rulings in this case and in *Skyline*.

Defendants argue that Cedar Park lacks standing and this Court lacks jurisdiction by mischaracterizing the Ninth Circuit's decision in this case, claiming the Ninth Circuit would not have found standing "if Cedar Park had disclosed Cigna's options." Reply in Supp. of Renewed Mot. to Dismiss 5, ECF No. 95 (MTD Reply).  But that is false. The Ninth Circuit indicated that the Church was injured *the moment SB 6219 caused Cedar Park to lose its plan*: "Given that it is undisputed that Cedar Park sought, and Kaiser Permanente agreed to provide, health insurance that contained abortion restrictions, Kaiser Permanente's decision to stop providing such coverage due to the enactment of SB 6219 constituted an injury in fact to Cedar Park." *Cedar Park Assembly of God v. Kreidler*, 860 Fed. App'x 542, 543 n.2 (9th Cir. 2021) (noting that Kaiser's erroneous inclusion of abortion services in the Church's previous policy was irrelevant). The Church's effort to replace the plan it lost goes to mitigation of the injury, not to standing.

And the Ninth Circuit explicitly *rejected* Defendants' argument that the availability of other plans eliminated the Church's injury:[1] "Although the state argues that Cedar Park did not suffer an injury caused by SB 6219 because other health insurers offered plans that would meet Cedar Park's requirements, this argument also fails given that Kaiser Permanente dropped Cedar Park's abortion coverage restrictions due to SB 6219, and there is no evidence in the record clearly demonstrating that Cedar Park could obtain acceptable coverage at the time it filed its complaint." *Id.* at 543. The Court inferred that the availability of the Providence Plan Defendants relied on was "unnecessary to decide this case." *Id.* at n. 1 (denying Cedar Park's motion to supplement the

---

[1] *See* Appellees' Answering Br. at 20-21, Cedar Park Assembly of God of Kirkland v. Kreidler, 860 Fed. App'x 542 (9th Cir. 2021) (No. 20-35507), 2020 WL 7266146 at *20 ("the very fact that Providence offers a plan in six different counties within Washington but declined to expand suggests that the private market—not public policy—is the source of Cedar Park's grievance.").

ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, Arizona 85260
(480) 444-0020

record with more information about the Providence plan's availability "because the information is already in the record or is otherwise unnecessary to decide this case").

In addition, the Ninth Circuit held that *Skyline* was controlling. That published opinion rejected the argument that the possible availability of other plans eliminated a church's injury when state action causes the church to lose the abortion-excluding health plan it already had. There, a California church sued the state because its insurance company had changed the church's plan (which previously reflected its religious beliefs) after the state directed all insurance companies to cover legal abortion. 968 F.3d at 742. The state there, as here, argued that the church lacked standing because another insurance company offered a special plan for "religious employers." *Id.* at 745, 752. Even so, the court held that the church "suffered an injury in fact" because it "had insurance that excluded abortion coverage in a way that was consistent with its religious beliefs," but "did not have that coverage" after the Department's new directive. *Id.* at 747. "Article III does not require Skyline to have taken further steps before seeking redress in court for its injury." *Id.*

Defendants try to distinguish *Skyline* because the available alternative plan there supposedly "did not comport with Skyline's religious beliefs." MTD Reply 12. But, as here, "there [wa]s no need [for the Ninth Circuit] to make an uncertain prediction [about Skyline's ability to obtain a plan that complied with its religious beliefs] because Skyline has already lost something it previously had." 968 F.3d at 748. The Ninth Circuit knew that Skyline could have purchased an inferior plan that comported with its beliefs and was not subject to California's abortion mandate, but still held that the church stated a claim because "resorting to such alternatives would be a worse fit for its needs than having a DMHC-regulated plan." 968 F.3d at 748-49.

Likewise here, the Ninth Circuit knew there may be other plans that purported to accommodate Cedar Park's religious beliefs. The Defendants argued the plans like Providence's

PLAINTIFF'S MOTION FOR SANCTIONS          4

could be available to Cedar Park (though they still would likely facilitate abortion), and Cedar Park's pleadings repeatedly noted the availability of self-insurance–though it was neither affordable nor comparable to the Church's pre-SB 6219 plan. The Ninth Circuit considered those plans irrelevant. So Defendants' claim that the Ninth Circuit's ruling would have changed had it known about Cigna's equally irrelevant incomparable plans is unfounded and contrary to what the Ninth Circuit has said *in this case*.

## II.    Defendants misstate Cedar Park's religious beliefs.

Defendants should know by now what Cedar Park's religious beliefs are when it comes to abortion—Cedar Park has stated those beliefs repeatedly and consistently through four years of litigation. But, once again, the State's Motion turns the State's contention that Cedar Park only cares about paying for abortion coverage: "Despite only complaining in this lawsuit about *paying* for coverage for abortion and contraception, Cedar Park now claims that its case is actually about Cedar Park's injury from its employees learning about access to the objected services through third parties regardless of whether Cedar Park paid for coverage of these services." Sanctions Mot. 2. That is false. From the outset, the Complaint no less than four times asserted that Cedar Park's beliefs broadly prohibit even indirectly facilitating abortion, payment aside.

For instance, Cedar Park consistently alleged that it "believes and teaches that participation in, facilitation of, or payment for abortion in any circumstance is a grave sin." Verified Compl. ¶ 29, ECF No. 1 (VC); Second Am. Verified Compl. ¶ 29 (Sec. Am. VC), ECF No. 46. And the Church alleged that "Defendants have made no allowance for the religious freedom of religious employers and churches, such as Cedar Park, who object to paying for, facilitating access to, or providing insurance coverage for abortion or abortifacient contraceptives under any circumstance." VC ¶ 63; Sec. Am. VC ¶ 78; *accord*, *e.g.*, VC ¶ 131; Sec. Am. VC ¶ 153

ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, Arizona 85260
(480) 444-0020

("Defendants implemented and enforce SB 6219 with full knowledge that some religions and denominations object to participating in, paying for, facilitating, or otherwise supporting abortion, while others do not."); VC ¶ 142; Sec. Am. VC ¶ 165 ("Cedar Park cannot provide insurance coverage for abortion or abortifacient contraceptives in its employee health plan.").

The Church's briefing reiterated its religious beliefs prohibiting facilitation of, not just direct payment for, abortion in any circumstance. For example, the Church's renewed preliminary injunction motion noted that "[p]aying premiums or fees for any plan that covers these procedures or items, whether expressly or surreptitiously under another label like 'overhead expense,' would violate Cedar Park's beliefs." Renewed Mot. for Prelim. Inj. 3, ECF No. 49. That motion also noted that, as a result of SB 6219, even when Cedar Park does not directly pay for objectionable coverage, "access to such coverage is facilitated by Cedar Park's health care plan." *Id*. at n.1. So Defendants' assertion that "Cedar Park did not argue or allege [in its renewed MPI] that its religious rights were violated because its employees could have access to abortion services *outside* of its health care plan," MTD Reply 3, is blatantly false.

Defendants' Renewed Motion for Preliminary Injunction relies on Pastor Smith's September 13, 2019, Declaration which states:

> It violates the religious beliefs of Cedar Park to provide any sort of payment, premium, or fee for a health care plan that provides coverage of or facilitates access to abortion or arbortifacient drugs, either directly or indirectly. Accordingly, it would violate Cedar Park's beliefs to pay an extra premium, fee, or any payment to its insurer for the payment of abortions and abortifacient contraceptives for plan beneficiaries, *even in an instance where Cedar Park's health insurance plan did not directly provide coverage of abortion or abortifacient drugs*.

Smith Decl. ¶ 6, ECF No. 50 (emphasis added).

On appeal, Cedar Park explained that SB 6219 and RCW § 48.43.065 are problematic because while churches "are not directly required to purchase coverage for" abortion, "the

conscience law requires a church's provider to provide indirect coverage" of objectionable services like abortion. Appellant's Opening Br. at 13-16, Cedar Park Assembly of God of Kirkland v. Kreidler, 860 Fed. App'x 542 (9th Cir. 2021) (No. 20-35507), 2020 WL 5496280 at *13.

Defendants' attempt to truncate Cedar Park's religious beliefs in order to seek sanctions is baseless and sanctionable itself.

### III.    Defendants wrongly assert that the Cigna plans would accommodate Cedar Park's religious beliefs despite admitting they would facilitate abortion.

Defendants build on their mischaracterization of the Church's religious beliefs by next alleging that "Cedar Park received a benefits analysis and recommendation presentation providing two plans offered by Cigna *that would accommodate Cedar Park's religious beliefs*, a fully insured option and a level-funded option. The presentation expressly stated that both would exclude abortion coverage." Sanctions Mot. 4 (emphasis added, cleaned up). This, too, is false.

Defendants ignore their own concession that the proposed Cigna plans *would provide statutorily required abortion coverage* once Cedar Park purchased the plan. Defendants' renewed motion to dismiss admits that "health plans issued or renewed after January 1, 2019 that provide coverage for maternity care or services must also provide a covered person with substantially equivalent coverage to permit the abortion of a pregnancy," and "health plans issued or renewed after January 1, 2019 must provide coverage for all contraceptives approved by the federal Food and Drug Administration." Renewed Mot. to Dismiss 3, ECF No. 88 (Renewed MTD) (cleaned up). In fact, this is precisely what SB 6219 requires: that "the health plan must also provide a covered person with substantially equivalent coverage to permit the abortion of a pregnancy," RCW § 48.43.073(1). Similarly, the Conscience Clause stipulates "[t]he provisions of this section shall not result in an enrollee being denied coverage of, and timely access to, any service or services excluded from their benefits package as a result of their employer's or another individual's

ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, Arizona 85260
(480) 444-0020

exercise of the conscience clause." RCW § 48.43.065(3)(b). The record supports Cedar Park's allegations over and again. From 2019 till now, Defendants' 30(b)(6) witness admitted they are "not aware of any negotiated large group health plan" "that exclude[s] abortion" in the counties where Cedar Park is located. Tocco Dep. 22-25, ECF No. 93-4.

Defendants describe various ways carriers *could* facilitate objectionable coverage because of Cedar Park's health plan. *See* MTD Reply 10 (stating a carrier could provide the objectionable items through overhead, distributing the risk to all or some members of the group health plan, or through a third party). But all those ways violate Cedar Park's religious beliefs, as the result is the same: the Church's purchase of group or level-funded health insurance facilitates providing abortion services to plan participants that they otherwise would lack, which violates the Church's religious beliefs. VC ¶¶ 29, 63, 131; Smith Decl. ¶ 6.

In fact, the State's 30(b)(6) witness also confirmed that even if the employer chooses to exclude abortion in group or level funded insurance, "the plan actually provides for [abortion] access." Tocco Dep. 105. *See* Opp'n to Mot. to Dismiss 3-5, ECF No. 93. Under Cigna's plans, for example, enrollees in Cedar Park's health plan would use the same insurance card to obtain abortifacients as non-objectionable drugs. Orcutt Decl. ¶ 12, ECF No. 94-1 (citing August 8, 2010, email from Hansen to Orcutt, ECF No. 92 at 216). In yet another misstatement of the facts, Defendants assert that "nothing in the email on which Cedar Park relies describes *Cigna's* procedures: by this time, Cedar Park's emails discussed only Kaiser and not Cigna." MTD Reply 7. But the email specifically asks for information about "companies." It doesn't limit the information provided to Kaiser or any other carrier. August 8, 2019 email from Hansen to Orcutt, ECF No. 92 at 216. And Cedar Park still had not decided whether to go with Kaiser and didn't do so until on or about August 14, 2019. ECF No. 92 at 185.

Ignoring these facts and the sworn testimony of their own witness, Defendants rely on conflicting email statements. MTD Reply 6-8. First, they cite a June 25, 2019, Cigna email that says Cigna policies "including coverage for maternity care must also include abortion care" *and* "may exclude coverage," in the same breath. *Id*. at 6 (Citing Ex. E to Renewed MTD, ECF No. 92 at 139). That email also states that "enrollees cannot be denied coverage for any service excluded from their benefit package" as a result of the employer's opposition to providing a specific service. *Id*. Defendants next cite a July 8, 2019, email where Cedar Park asked Cigna and Kaiser if they will be able to exclude abortions and abortifacients and "provide the details if they select Yes." Ex. F to Renewed MTD, ECF No. 92 at 147. Cigna responded with, "Yes. Legal and administrative approval from CIGNA," but it did not provide any details as requested. *Id*. A week later Cedar Park's broker confirmed that, "The only reason Cigna is confirming [exclusion of objectionable coverage], is because it's a self funded plan." Ex. G to Renewed MTD, ECF No. 92 at 152-155. Self-funded plans are neither affordable nor comparable to the plan that SB 6219 took away from the Church. Orcutt Decl. ¶¶ 18-28.

Finally, Defendants contend a July 16, 2019 email exchange between Cedar Park's broker and Cigna vaguely stating that "[a]ll of the answers provided apply to both Level and Fully insured with exception of transgender services" indicates that Cigna's fully insured plan allowed for excluding abortion coverage. MTD Reply 8 (citing Ex. A to Second Crissali Decl. 2, ECF No. 96-1). But it is unclear what "answers" that email refers to. The emails between the broker and Cedar Park immediately preceding that exchange don't contain any answers to questions about coverage of abortion and abortifacients. Theriot Decl. Ex. 3, ECF No. 102-4, Cedar Park Bates No. 221-3, 232. The only answers were about administrative matters like decision dates, deductibles, and COBRA. *Id*.

ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, Arizona 85260
(480) 444-0020

In short, Cedar Park understood, correctly and as required by law, that the Cigna plans would have facilitated access to abortion and abortion-causing drugs through, or as a result of, the Church's plan—either of which violates Cedar Park's religious beliefs. Defendants do not dispute that Cedar Park's purchase of a plan from Cigna would still have facilitated abortion coverage for its employees as required by Washington law. And in response to the evidence that coverage would have actually been part of Cedar Park's plan, Defendants rely on selective readings of confusing and ultimately unhelpful emails, while ignoring contradictory emails and sworn testimony.

Defendants' allegation that the Cigna plans would have accommodated the Church's religious beliefs ignores their own admissions and relevant evidence, and that makes Defendants' motion for sanctions frivolous.

### IV.   Defendants selectively cite the record to mislead the Court into believing that the Cigna plans were cheaper.

Defendants repeatedly assert that the Cigna plans were cheaper than any plan the Church could obtain from Kaiser. Sanctions Mot. 4. Defendants ignore the fact that although the Cigna plan premiums may have been cheaper the first year, rates would have gone up—and in fact did go up significantly—in later years, which is hardly a "comparable" alternative. Orcutt Dep., ECF No. 92 at 64. ("Our broker had advised us that Cigna generally brings in a low rate in the first year and then significantly increases rates in future years, so the ability for Cedar Park in future years to provide high-quality health plans for our employees would've been in question because of increased costs among other things."). And that's exactly what happened: the very next year, Cigna did not even quote a fully insured plan, Orcutt Decl. ¶ 17, or a plan without an HMO option, and its level-funded, first-year 2020–21 cost was more expensive than Kaiser's fully insured plan. MTD Ex. L, ECF No. 92 at 260–87. Cigna raised the level-funded cost in its 2020-21 bid by $227,544 (24.9%). That made it $41,833 more expensive than Kaiser's 2020-21 fully insured bid. Orcutt Decl. ¶ 25. This is all clear from the evidentiary record.

### V.   Defendants misstate the number of plans that indicated they could exclude abortion.

Defendants allege that "Cedar Park had received offers from at least five carriers for plans that excluded coverage for abortion and contraceptives." Sanctions Mot. 1. They initially claimed "Cedar Park had received offers from at least six carriers for plans that would accommodate its religious beliefs." Renewed MTD 1. In that same brief, Defendants alleged that "Cedar Park received six or seven bids for plans that offered coverage for services consistent with Cedar Park's religious beliefs." *Id.* at 8. None of these evolving statements is supported by the evidence.

The truth is found in a document from Cedar Park's broker that Defendants have had for months (and is attached to their motion to dismiss as Exhibit K, ECF No. 92 at 227-258). It explains the number of carriers invited to bid, which ones actually bid, and which were not competitive. As Cedar Park's CFO Steven Orcutt's declaration explains:

> [W]e did not receive six or seven bids from insurance companies offering health insurance plans consistent with Cedar Park's religious beliefs. Instead, eight carriers were invited to bid fully insured plans. Three chose not to bid, and 3 were uncompetitive—leaving only Kaiser Permanente and Cigna. Excepting only self-insurance, none of the plans we were aware of for the 2019-20 plan year and none since that time accommodate Cedar Park's religious beliefs. All others *would have facilitated access to abortion and abortion causing drugs through, or as a result of, the Church's plan which would violate Cedar Park's religious beliefs.*

Orcutt Decl. ¶¶ 8-9 (emphasis added).

Parties moving for sanctions must get their facts right and Defendants failed to do so.

### VI.   Defendants falsely assert that Cedar Park is asking for an injunction requiring Kaiser to issue a plan that accommodates the Church's beliefs.

Defendants incorrectly assert that "[a]ccording to Cedar Park, the only way to comply with the First Amendment is to force Kaiser to provide the same plan with all exclusions desired by Cedar Park." MTD Reply 12. They cite no pleadings making this claim because there are none. Kaiser said as early as September 2019 that it would provide coverage excluding abortion if a court enjoins SB 6219, Suppl. Verified Compl. ¶ 48.3, ECF No. 52-1, which is all the Church has ever requested. None of the Church's complaints requested an injunction to force Kaiser to do

ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, Arizona 85260
(480) 444-0020

anything—only to allow it to accommodate Cedar Park's religious beliefs like it did before SB 6219.

## VII.    Defendants falsely accuse Cedar Park of misleading the Court about when it knew Kaiser would not accommodate its religious beliefs.

Defendants claim that "Cedar Park knew for months that Kaiser would not offer a plan with an exclusion for abortion care," instead of several weeks as alleged in the complaint. MTD Reply 4; Suppl. Verified Compl. ¶ 48.1. Defendants' sole ground for this assertion is a June 11, 2019, email relating to abortion causing-drugs: "Can you put into words for me how Cigna is able to <u>not</u> include abortion drugs and why Kaiser can't make that same allowance." Second Crissali Decl. Ex. C, ECF No. 96-1. That email likely addresses Cedar Park's belated realization that its pre-SB 6219 plan actually included abortifacients. Sec. Am. VC ¶ 48.

Defendants ignore emails showing that, as late as August 13, 2019, the Church thought Kaiser may be able to accommodate its religious convictions about abortion. Melinda Hansen email to Nicole Gomez, ECF No. 92 at 197 ("So, the group (not Melissa) thought their rider and current exclusions would continue until Kaiser had more information about the new laws."). Cedar Park's broker did not send the email confirming the Church would continue with Kaiser until that same day. ECF No. 92 at 202. Moreover, Defendants ignore the broker's August 14, 2019, email to the Church stating, "We just received an update from Kaiser… KP will not be accommodating any abortion exclusions for fully insured groups." Smith Decl. Ex. A, ECF No. 50.

## CONCLUSION

Defendants' unsupported motion for sanctions was unnecessary and improper. Defendants' motion, and the facts and arguments it incorporates, make merits arguments that will be made in

ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, Arizona 85260
(480) 444-0020

the summary judgment motions.  Because of this, Plaintiff reluctantly files this motion for having to respond to Defendants' motion for sanctions.

As in *Bradshaw* and *Evanston*, Defendant's Motion misstates controlling decisions, relies on disputed and contradicted evidence, complains Plaintiff didn't include evidence to support *Defendants* arguments, and falsely claims opposing arguments are unsupported by the evidence. Cedar Park advised Defendants of their analytical and evidentiary errors in a January 17, 2023 letter (Exhibit A). Accordingly, the Court should award Cedar Park costs and attorney fees for responding to Defendants' frivolous motion for sanctions. The Attorney General's Office should not be allowed to get away with filing pleadings not based in the record or the law, made only to harass private parties and force them to incur unnecessary attorney fees.

Alliance Defending Freedom
15100 N. 90th Street
Scottsdale, Arizona 85260
(480) 444-0020

1

Respectfully submitted this 8th day of March, 2023,

2

_s/Kevin H. Theriot_
Kevin H. Theriot (AZ Bar #030446)*

3

ALLIANCE DEFENDING FREEDOM

4

15100 N. 90th Street
Scottsdale, Arizona 85260

5

Telephone: (480) 444-0020
Facsimile:  (480) 444-0025

6

Email: ktheriot@adflegal.org

7

David A. Cortman (GA Bar #188810)*

8

ALLIANCE DEFENDING FREEDOM
1000 Hurricane Shoals Rd. NE

9

Suite D-1100
Lawrenceville, GA 30040

10

Telephone: (770) 339-0774
Email:  dcortman@adflegal.org

11

12

*Attorneys for Plaintiff Cedar Park Assembly of God of Kirkland, Washington*

13

* Admitted *pro hac vice*

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S MOTION FOR SANCTIONS          14

**CERTIFICATE OF SERVICE**

I hereby certify that on March 8, 2023, in conformance with Fed. R. Civ. P. 5(b)(2)(C) and 11(c)(2), I sent the foregoing document via certified mail and electronic mail to:

Paul M. Crisalli
ATTORNEY GENERAL'S OFFICE
800 5th Ave
Ste 2000
Seattle, WA 98104

Marta U. DeLeon
ATTORNEY GENERAL'S OFFICE
PO Box 40100
Olympia, WA 98504
*Counsel for Defendants*

DATED: March  8, 2023          *s/Kevin H. Theriot*
                              Kevin H. Theriot (AZ Bar #030446)*
                              ALLIANCE DEFENDING FREEDOM
                              15100 N. 90th Street
                              Scottsdale, Arizona 85260
                              Telephone: (480) 444-0020
                              Facsimile: (480) 444-0025
                              Email: ktheriot@adflegal.org

                              *Attorney for Plaintiff Cedar Park Assembly of God of Kirkland, Washington*

                              * Admitted *pro hac vice*

PLAINTIFF'S MOTION FOR SANCTIONS          15          ALLIANCE DEFENDING FREEDOM
                                                       15100 N. 90th Street
                                                       Scottsdale, Arizona 85260
                                                       (480) 444-0020