1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

The Honorable Benjamin H. Settle

**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA**

CEDAR PARK ASSEMBLY OF GOD OF
KIRKLAND, WASHINGTON,

                     Plaintiff,

    v.

MYRON "MIKE" KREIDLER, et al.,

                    Defendants.

NO. 3:19-cv-05181-BHS

DEFENDANTS' RESPONSE TO
PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT

NOTE ON MOTION CALENDAR:
APRIL 7, 2023

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

# TABLE OF CONTENTS

I.  INTRODUCTION ................................................................................................. 1

II.  RELIEF REQUESTED ....................................................................................... 2

III.  EVIDENCE RELIED UPON .............................................................................. 2

IV.  FACTS ................................................................................................................ 2

    A.  Washington Law Allows Religious Organizations to Refuse to Purchase Health Care Coverage to Which They Have a Moral or Religious Objection ......... 2

    B.  In Practice, Religious Employers—Including Cedar Park—Could Negotiate for Plans That Excluded Services to Which They Object ........................................ 4

    C.  Cedar Park in Fact Negotiated for a Plan That Excluded Services to Which It Objects ................................................................................................................. 5

V.  ARGUMENT ...................................................................................................... 6

    A.  Summary Judgment Standard ...................................................................... 6

    B.  Cedar Park's Free Exercise Claim Fails as a Matter of Law ...................... 8

        1.  The statutes do not impermissibly burden religion ........................... 8

        2.  The statutes are neutral ................................................................... 12

        3.  The statutes are generally applicable ............................................. 14

        4.  The statutes are rationally related to legitimate governmental purposes ........ 17

    C.  Cedar Park's "Religious Autonomy" Claim Fails .................................... 19

VI.  CONCLUSION ................................................................................................. 20

DEFENDANTS' RESPONSE TO
PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT -- NO. 3:19-cv-05181-BHS

i

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

# TABLE OF AUTHORITIES

## Cases

*Albino v. Baca*,
747 F.3d 1162 (9th Cir. 2014) ............................................................................ 6

*Bollard v. Cal. Province of Soc'y of Jesus*,
211 F.3d 1331 (9th Cir. 2000) .......................................................................... 19

*Braunfeld v. Brown*,
366 U.S. 599 (1961) ......................................................................................... 12

*Burch v. Regents of Univ. of Cal.*,
433 F. Supp. 2d 1110 (E.D. Cal. 2006) ............................................................ 10

*Burwell v. Hobby Lobby Stores, Inc.*,
573 U.S. 682 (2014) ......................................................................................... 11

*Califano v. Webster*,
430 U.S. 313 (1977) ......................................................................................... 17

*Cedar Park Assembly of God of Kirkland, Wash. v. Kreidler*,
860 Fed. App'x 542 (9th Cir. 2021) ................................................... 1, 11, 13, 18

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) ........................................................................................... 7

*Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*,
508 U.S. 520 (1993) ......................................................................................... 12

*Dep't of Health & Hum. Servs. v. CNS Int'l Ministries*,
No. 15-775, 2016 WL 2842448 (U.S. May 16, 2016) ........................................ 11

*Emp. Div., Dep't of Hum. Res. of Or. v. Smith*,
494 U.S. 872 (1990) ....................................................................................... 8, 17

*FDIC v. N.H. Ins. Co.*,
953 F.2d 478 (9th Cir. 1991) .............................................................................. 7

*Fraser v. Goodale*,
342 F.3d 1032 (9th Cir. 2003) ............................................................................ 7

*Fraternal Ord. of Police Newark Lodge No. 12 v. City of Newark*,
170 F.3d 359 (3d Cir. 1999) ............................................................................. 15

*Frlekin v. Apple, Inc.*,
979 F.3d 639 (9th Cir. 2020) .............................................................................. 6

*Fulton v. City of Phila., Pa.*,
141 S. Ct. 1868 (2021) ..................................................................................... 16

DEFENDANTS' RESPONSE TO
PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT -- NO. 3:19-cv-05181-BHS

ii

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

*Garcia v. San Antonio Metro. Transit Auth.*,
    469 U.S. 528 (1985) ............................................................................................... 17

*Hector v. Wiens*,
    533 F.2d 429 (9th Cir. 1976) ................................................................................. 7

*Hernandez v. Spacelabs Med., Inc.*,
    343 F.3d 1107 (9th Cir. 2003) .......................................................................... 7, 10

*Hosanna-Tabor Evangelical Lutheran Church & Sch. v. E.E.O.C.*,
    565 U.S. 171 (2012) ............................................................................................... 19

*Jacobson v. Massachusetts*,
    197 U.S. 11 (1905) ................................................................................................. 17

*JL Beverage Co., LLC v. Jim Beam Brands Co.*,
    828 F.3d 1098 (9th Cir. 2016) .............................................................................. 7

*Jones v. Wolf*,
    443 U.S. 595 (1979) ............................................................................................... 19

*Kennedy v. Bremerton Sch. Dist.*,
    142 S. Ct. 2407 (2022) ........................................................................................... 8

*Lew v. Kona Hosp.*,
    754 F.2d 1420 (9th Cir. 1985) .............................................................................. 7

*Marshall v. United States*,
    414 U.S. 417 (1974) ............................................................................................... 17

*Midrash Sephardi, Inc. v. Town of Surfside*,
    366 F.3d 1214 (11th Cir. 2004) ............................................................................ 15

*Miller v. Reed*,
    176 F.3d 1202 (9th Cir. 1999) .............................................................................. 8

*Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*,
    210 F.3d 1099 (9th Cir. 2000) .............................................................................. 7

*Orr v. Bank of Am., NT & SA*,
    285 F.3d 764 (9th Cir. 2002) ................................................................................. 7

*Our Lady of Guadalupe Sch. v. Morrissey-Berru*,
    140 S. Ct. 2049 (2020) ........................................................................................... 19

*Roberts v. U.S. Jaycees*,
    468 U.S. 609 (1984) ............................................................................................... 17

*Roman Catholic Diocese of Brooklyn v. Cuomo*,
    141 S. Ct. 63 (2020) ............................................................................................... 15

DEFENDANTS' RESPONSE TO
PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT -- NO. 3:19-cv-05181-BHS

iii

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

*Sharpe Holdings, Inc. v. U.S. Dep't of Health & Hum. Servs.*,
   801 F.3d 927 (8th Cir. 2015) ............................................................... 11

*Skyline Wesleyan Church v. Cal. Dep't of Managed Health Care*,
   968 F.3d 738 (9th Cir. 2020) .............................................................. 11

*Stormans, Inc. v. Weisman*,
   794 F.3d 1064 (9th Cir. 2015) ............................................. 8, 12, 13, 17

*Tandon v. Newsom*,
   141 S. Ct. 1294 (2021) ........................................................................ 15

*Tingley v. Ferguson*,
   47 F.4th 1055 (9th Cir. 2022) ...................................................... passim

*United States v. Lee*,
   455 U.S. 252 (1982) .................................................................. 9, 10, 18

**Statutes**

2018 Wash. Sess. Laws, ch. 119, § 1 ......................................................... 3

RCW 48.43.005 ......................................................................................... 12

RCW 48.43.005(31) ................................................................................... 12

RCW 48.43.065(3) ......................................................................... 1, 16, 18

RCW 48.43.065(3)(a) .................................................................................. 3

RCW 48.43.065(3)(b) .................................................................................. 3

RCW 48.43.072 ..................................................................................... 2, 12

RCW 48.43.072(1) ....................................................................................... 2

RCW 48.43.073 ........................................................................................... 2

RCW 48.43.073(1) ....................................................................................... 2

RCW 48.43.073(5) ..................................................................................... 16

**Rules**

Fed. R. Civ. P. 56(a) ................................................................................... 6

**Regulations**

WAC 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 ...................................................................................... 3

DEFENDANTS' RESPONSE TO
PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT -- NO. 3:19-cv-05181-BHS

iv

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

1

**<u>Other Authorities</u>**

2   Wash. Op. Att'y Gen. 5 (2002) .................................................................................. 3

3   Wash. Op. Att'y Gen. 10 (2006) ................................................................................ 3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

# I.  INTRODUCTION

Washington statutes plainly allow employers, like Cedar Park, to refuse to purchase coverage for services to which it has a religious or conscience objection. RCW 48.43.065(3). This statute is known to Cedar Park—the undisputed evidence shows that Cedar Park negotiated with carriers who offered plans that would exclude abortion and certain contraceptives, as Cedar Park desired. Once that evidence was finally disclosed, Cedar Park shifted its argument in this case yet again. Cedar Park now claims that it is forced to facilitate abortions because it would indirectly pay for abortion or because its enrollees would still have access to abortions. Cedar Park has no factual basis for this argument, and thus cannot meet its burden on summary judgment.

There is no evidence in the record that Cedar Park would indirectly pay for abortion services—the only evidence is that coverage would occur outside the plan, but Cedar Park has no evidence as to how this would occur. Further, Cedar Park has no standing to claim injury if its enrollees receive services through third parties.

The undisputed record shows that Cedar Park cannot meet its burden to show that Washington's statutes burden Cedar Park's religion, that the laws are not neutral or generally applicable, and that the Washington statutes further legitimate governmental interests. This Court and the Ninth Circuit in ruling on the equal protection claim held that, "[t]o the extent the conscience objection statute treats religious organizations like Cedar Park differently than individual health care providers, religiously sponsored health carriers, and health care facilities . . . , such differential treatment does not constitute discrimination because the providers are not similarly situated to religious organizations." *Cedar Park Assembly of God of Kirkland, Wash. v. Kreidler*, 860 Fed. App'x 542, 543-544 (9th Cir. 2021). "This is because the providers are in the business of providing health services, while religious organizations merely purchase health coverage." *Id.* at 544.

DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT -- NO. 3:19-cv-05181-BHS

1

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

The Court should grant summary judgment to the Defendants and dismiss the operative complaint with prejudice.

## II.   RELIEF REQUESTED

The Court should deny Cedar Park's motion for summary judgment, grant summary judgment to Defendants, and dismiss Cedar Park's operative complaint with prejudice.

## III.   EVIDENCE RELIED UPON

Defendants rely upon the Declaration of Paul M. Crisalli, filed in support of Defendants' Motion for Summary Judgment, and exhibits attached thereto (*see* Dkts. # 105, # 105-1), as well as the pleadings and transcripts already filed in this matter.

## IV.   FACTS

### A.   Washington Law Allows Religious Organizations to Refuse to Purchase Health Care Coverage to Which They Have a Moral or Religious Objection

The Court is well aware of the statutory landscape, and Defendants' motion for summary judgment (Dkt. # 104) provides an explanation. For context, this brief will summarize the relevant statutes.

In 2018, Washington enacted the Reproductive Parity Act, SB 6219, codified at RCW 48.43.072 and 48.43.073. This law provides that health insurance plans must provide coverage for all contraceptives approved by the federal Food and Drug Association.[1] RCW 48.43.072(1). The law also provides that insurance plans that provide coverage for maternity care or services must also provide substantially equivalent coverage to permit the abortion of a pregnancy. RCW 48.43.073(1).

When passing the Reproductive Parity Act, the Legislature detailed 14 findings explaining the reasoning for the law, including that health benefits and preventative services leads Washingtonians to lead healthier and more productive lives, that neither a woman's income

---

[1]The Affordable Care Act (ACA) includes similar contraceptive coverage requirements, and that the ACA includes a mechanism for religious objections. Cedar Park does not challenge those provisions, which are outside Defendants' control.

DEFENDANTS' RESPONSE TO
PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT -- NO. 3:19-cv-05181-BHS

2

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

level nor her type of insurance should prevent her from having a full range of reproductive health care, that access to contraception is directly connected to the economic success of women and their ability to participate in society equally, and that restricting abortion coverage interferes with women's personal, private pregnancy decision making. 2018 Wash. Sess. Laws, ch. 119, § 1.[2]

For decades, Washington has had a conscience objection statute that provides that no individual or organization can be required to purchase coverage for a service to which they have a religious objection. RCW 48.43.065(3)(a). But enrollees cannot be denied coverage of or timely access to the services excluded from the benefits package as a result of their employer's exercise of the conscience objection. RCW 48.43.065(3)(b). Nothing in this law prevents a health carrier from providing services without payment of a premium or fee.[3] It is undisputed that the conscience objection statute is read together with the Reproductive Parity Act, and the Insurance Commissioner promulgated an administrative rule making that clear. WAC 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.

Washington law does not direct how carriers, providers, employers, or enrollees implement the conscience objection, so they are free to negotiate as to the best mechanism to comply with the statutes. For example, carriers can choose not to itemize the costs and just have a general overhead category that includes management costs, wages, rent, and costs for the services to which employers object. Carriers could distribute the risk caused by the objections to all members of the plan, where the overhead is a generally applicable cost spread among all members of the group health plan. Carriers could distribute the risk caused by objectors to the other non-objecting members of the plan, much like uninsured/underinsured insurance.

---

[2]Cedar Park cites as support that the Office of the Insurance Commissioner (OIC) received no complaints about health care plans not covering abortion and that a "state attorney tasked with enforcing insurance regulations" was unaware of any enforcement actions against carriers for failing to cover contraceptives. Dkt. # 103 at 6. Neither person can speak for the legislative purpose of SB 6219. The legislative findings make clear the many purposes served by the legislation.

[3]Attorney General Opinions have explained that carriers cannot simply forward the costs for objected services to enrollees when an employer exercises a conscience objection, but the carrier can utilize recognized insurance principles to handle those costs. Wash. Op. Att'y Gen. 5 (2002); Wash. Op. Att'y Gen. 10 (2006).

DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT -- NO. 3:19-cv-05181-BHS

3

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

Or carriers could fund the services through third parties, like related foundations or grant funding sources.

**B.    In Practice, Religious Employers—Including Cedar Park—Could Negotiate for Plans That Excluded Services to Which They Object**

Cedar Park's "Statement of Undisputed Facts" contains misleading, incorrect statements. Cedar Park makes assertions that are not in the record or derive from inadmissible testimony (largely hearsay and speculation). Here are the undisputed facts supported by admissible evidence.

The Insurance Commissioner regulates insurance health plans, not employers. Dkt. # 105-1, Ex. A at 28. For large health plans, like Cedar Park's, employers and carriers can negotiate about the contents of the plan. *Id.* at 23-24. The Insurance Commissioner reviews whether the statutory and regulatory requirements have been met after the plan has been agreed, but does not review on behalf of an individual or organization. *Id.* at 96, 115-116; Dkt. # 105-1, Ex. B at 28. Compliance with the conscience objection statute is the responsibility of the health carrier, not the employer, and the Insurance Commissioner "does not have involvement in a given employer's decision to purchase health insurance for its employees." *Id.*, Ex. A at 98-99.

If a health plan contains a conscience objection, the Insurance Commissioner will determine if the plan form follows the statutes and usually expects to see a notification to enrollees about the exclusion of the service from the benefit plan, but notifying the enrollee about their rights to access the benefit elsewhere. *Id.* at 102. Usually carriers simply provide a direct contact number for enrollees to get information about how to access the benefit and the associated cost sharing amounts. *Id.* The Insurance Commissioner does not learn the mechanism for who pays for objected services from the form filing submitted by the carrier, but only that the employer is not paying for the objected services. *Id.* at 103. The mechanism for providing access differs based on the carrier and depends on the business models, as any entity, as part of its business model, can choose to offer a product tailored towards employers that have

DEFENDANTS' RESPONSE TO
PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT -- NO. 3:19-cv-05181-BHS

4

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

objections. *Id.* at 106-109. The Insurance Commissioner can ask the *carrier* to identify how it will comply with the access requirements of the conscience clause. Cedar Park presents no admissible evidence disputing these facts.

**C.     Cedar Park in Fact Negotiated for a Plan That Excluded Services to Which It Objects**

Cedar Park is a Christian church in Kirkland, Washington, affiliated with the Assemblies of God, and operates schools, a funeral home, a missionary car ministry, a Christian counseling network, and a Christian club sports program, which collectively yield estimated yearly revenues between $25 million and $30 million. Dkt. # 105-1, Ex. C at 16-17, 19. Cedar Park's businesses pay state business and organization (B&O) taxes and sales taxes. *Id.* at 18.

It is undisputed that Cedar Park is opposed to abortion and use of certain contraceptives because of its religious beliefs, though as explained in the argument section below, Cedar Park's opposition to "any facilitation" of abortion is inconsistent and not legally cognizable.

For about the last six years, Cedar Park used Kaiser Permanente (Kaiser) as its health insurance carrier (and Group Health before that). *Id.* at 26-27. Each plan lasted a fiscal year from September 1 until August 31 of the following year. It is undisputed that before 2019, Kaiser's plan excluded coverage for abortion, though covered all contraceptives. *Id.* at 27.

In early 2019, Kaiser informed Cedar Park that it would not exclude coverage for abortion services in its plan, beginning in the 2019-2020 plan year. *Id.* at 36. Cedar Park submits no testimony or evidence from Kaiser about the rationale for its decision to no longer offer the exclusion.[4]

Defendants' motion and supporting exhibits detail Cedar Park's 2019 negotiations for plan excluding abortion and certain contraceptives. It is undisputed that, in 2019, Cedar Park solicited for and received an offer from Cigna for two plan options that would exclude coverage

---

[4] Cedar Park posits that "because of SB 6219, Kaiser offers no abortion exclusions to fully insured groups like Cedar Park." Dkt. # 103 at 9. Citing only its own complaint, Cedar Park alleges that "as a direct result of Washington enacting SB 6219, Kaiser Permanente inserted abortion coverage into Cedar Park's health plan." *Id.* at 10. There is no admissible testimony supporting either of these statements.

DEFENDANTS' RESPONSE TO
PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT -- NO. 3:19-cv-05181-BHS

5

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

for abortion and certain contraceptives (as determined by Cedar Park) and which were cheaper than the negotiated plan offered by Kaiser. Dkt. # 93-6 at 2; Dkt. # 105-1, Exs. D, E, F. During negotiations, there were two even cheaper options submitted by Cigna, which also excluded coverage for abortions. Dkt. # 105-1, Ex. I. It is undisputed that Cigna's offered plans did not include abortion coverage in the benefits package but would provide information (expressly by a separate letter) to enrollees "notifying them of their rights to access these excluded services outside of their plan." *Id.*, Ex. E. There is no evidence as to how enrollees under a Cigna plan would obtain access to the objected services nor who would provide those services.

Despite the availability of multiple Cigna plans, Cedar Park decided to stay with Kaiser. Cedar Park rejected the Cigna options because of speculated increased costs, potential complaints from employees about changing, and Cigna's different method of providing services. Dkt. # 92 at 64-65. Cedar Park agrees that none of these reasons are based on its religious beliefs. *Id.* at 65-67.

Cedar Park again solicited for bids for the 2020-2021 plan year, and received an offer from Cigna for a level-funded plan. Dkt. # 92 at 261. It is undisputed that Cigna's offered plan was cheaper than renewing Kaiser's plan. *Id.* Only through a renegotiated plan with Kaiser, that altered the terms of the plan, was a Kaiser plan cheaper. *Id.* Cedar Park purchased that renegotiated Kaiser plan. *Id.*

## V.     ARGUMENT

### A.     Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Frlekin v. Apple, Inc.*, 979 F.3d 639, 643 (9th Cir. 2020). The Court views the evidence "in the light most favorable to the non-moving party." *Albino v. Baca*, 747 F.3d 1162, 1168 (9th Cir. 2014) (en banc). All reasonable doubt as to the existence of a

DEFENDANTS' RESPONSE TO
PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT -- NO. 3:19-cv-05181-BHS

6

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1    genuine issue of fact should be resolved against the moving party. *Hector v. Wiens*,

2    533 F.2d 429, 432 (9th Cir. 1976).

3    A "moving party must either produce evidence negating an essential element of the

4    nonmoving party's claim or defense or show that the nonmoving party does not have enough

5    evidence of an essential element to carry its ultimate burden of persuasion at trial."

6    *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). A

7    moving party cannot simply rely on assertions in its operative complaint to establish undisputed

8    material facts. *Lew v. Kona Hosp.*, 754 F.2d 1420, 1423-1424 (9th Cir. 1985). Although a

9    verified complaint can be treated as an affidavit, that is only "to the extent that the complaint is

10   based on personal knowledge and sets forth facts admissible in evidence and to which the affiant

11   is competent to testify." *Id.* at 1423. Summary judgment should be entered against "a party who

12   fails to make a showing sufficient to establish the existence of an element essential to that party's

13   case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*,

14   477 U.S. 317, 322 (1986).

15   This Court can only consider admissible evidence in ruling on a motion for summary

16   judgment. *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773-774 (9th Cir. 2002). A party cannot

17   rely on unsupported conjecture or conclusory statements. *Hernandez v. Spacelabs Med., Inc.*,

18   343 F.3d 1107, 1112 (9th Cir. 2003). When evidence is not presented in an admissible form in

19   the context of a motion for summary judgment, but it may be presented in an admissible form at

20   trial, a court may still consider that evidence. *Fraser v. Goodale*, 342 F.3d 1032, 1037

21   (9th Cir. 2003). The party proposing the evidence needs to demonstrate, at a minimum, that the

22   hearsay declarants would be available to testify at trial and that its hearsay evidence would be

23   admissible at trial in some other form. *JL Beverage Co., LLC v. Jim Beam Brands Co.*,

24   828 F.3d 1098, 1110 (9th Cir. 2016). Objections can be waived by the opposing parties. *Orr*, ,

25   285 F.3d at 776; *FDIC v. N.H. Ins. Co.*, 953 F.2d 478, 484 (9th Cir. 1991) ("[d]efects in evidence

26

DEFENDANTS' RESPONSE TO
PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT -- NO. 3:19-cv-05181-BHS

7

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1  submitted in opposition to a motion for a summary judgment are waived absent a motion to strike
2  or other objection.") (cleaned up).

3      Here, much of Cedar Park's argument relies on inadmissible speculation and hearsay
4  about the conduct of third parties, which cannot be the basis for any factual assertion relied on
5  in deciding summary judgment.

6  **B.    Cedar Park's Free Exercise Claim Fails as a Matter of Law**

7      Cedar Park cannot meet its burden to demonstrate that Washington's statutes are not
8  neutral or generally applicable and thus subject to strict scrutiny. It is well settled that on a
9  Free Exercise claim, the plaintiff bears the burden to demonstrate an infringement of its rights.
10  *See Kennedy v. Bremerton Sch. Dist.*, 142 S. Ct. 2407, 2421 (2022) (collecting cases). This
11  includes the burden to show that a government entity has burdened plaintiff's sincere religious
12  practice pursuant to a policy that is not neutral or generally applicable. *Id.*; *See Emp. Div.,*
13  *Dep't of Hum. Res. of Or. v. Smith*, 494 U.S. 872, 878-79 (1990). Even when a law incidentally
14  burdens a particular religion or practice, it can be upheld if it is a "valid and neutral law of general
15  applicability" and is rationally related to a legitimate governmental interest. *Stormans, Inc. v.*
16  *Weisman* (*Stormans* II), 794 F.3d 1064, 1075-1076 (9th Cir. 2015) (cleaned up); *see Miller v.*
17  *Reed*, 176 F.3d 1202, 1207 (9th Cir. 1999) (DMV can require applicant to divulge social security
18  number in conflict with plaintiff's religious beliefs); *Tingley v. Ferguson*, 47 F.4th 1055, 1085,
19  1088 (9th Cir. 2022) (availability of religious exemption does not destroy neutrality or general
20  applicability). Cedar Park's strained and speculative arguments cannot establish any part of a
21  free exercise or religious autonomy claim, so its motion should be denied and summary judgment
22  should be granted to the Defendants.

23      **1.    The statutes do not impermissibly burden religion**

24      Cedar Park fails to show that Washington's Reproductive Parity Act, read alongside the
25  conscience objection statute, burdens its religious exercise. As Defendants have maintained
26  throughout this case, Washington law allows Cedar Park to purchase a health insurance plan that

1    excludes coverage of services to which Cedar Park objects. Cedar Park negotiated with Cigna

2    for such a plan, but decided against purchasing that plan for reasons unrelated to its religious

3    beliefs. Because the statutes allow Cedar Park to negotiate and purchase a plan that excludes

4    services consistent with its beliefs, the statutes do not impermissibly burden religion.

5        Throughout its brief (and in other briefs), Cedar Park misstates Defendants' 30(b)(6)

6    testimony to imply that even when exercising the conscience objection, Cedar Park could

7    indirectly pay for abortion services. However, Cedar Park reads Kim Tocco's testimony out of

8    context. *E.g.*, Dkt. # 103 at 12. Kim Tocco never testified that when a plan provides an exclusion

9    for abortion, the services are still included in the plan or that the carrier still *has* to provide the

10   services. Dkt. # 105-1, Ex. A at 102-105. Instead, she testified that, when a plan excludes

11   coverage for services, the plan documents need to notify the enrollees that the employer has

12   chosen not to provide such benefits but that the enrollee still has a right to access benefits. *Id.* at

13   102. Thus, the benefits might be provided by the carrier but they also might be provided by

14   someone else. *Id.* And the quote "plan actually provides for access" refers to a specific Kaiser

15   plan that excludes coverage for abortion, not a mandate as to how all carriers must handle the

16   exclusions. *Id.* at 105.

17       Even assuming Cedar Park were correct that the law requires the carrier to provide

18   "access" to the services, there is nothing that requires Cedar Park to indirectly pay for those

19   services, and there is no evidence here that Cedar Park would indirectly pay for the services.

20   Even if Kaiser, or Cigna, or some other private carrier used a portion of the monies paid by Cedar

21   Park to pay for services they found objectionable, this does not violate Cedar Park's free exercise

22   rights. "When followers of a particular sect enter into commercial activity as a matter of choice,

23   the limits they accept on their own conduct as a matter of conscience and faith are not to be

24   superimposed on the statutory schemes which are binding on others in that activity." *United*

25   *States v. Lee*, 455 U.S. 252, 261 (1982) (payment of social security taxes does not violate Free

26   Exercise Clause). The Free Exercise Clause does not permit religious objectors to impose their

DEFENDANTS' RESPONSE TO
PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT -- NO. 3:19-cv-05181-BHS

9

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

beliefs on private companies, or their employees and employees' families. *See id.* The fact that a carrier will provide access to services does not mean that Cedar Park will be paying indirectly for anything. Carriers can utilize other methods for enrollees to receive the services, including through third parties.

Cedar Park speculates as to the reasons why Kaiser will not offer a plan that excludes coverage for abortion services, notwithstanding the conscience objection statute. *See Burch v. Regents of Univ. of Cal.*, 433 F. Supp. 2d 1110, 1119 (E.D. Cal. 2006); *Hernandez*, 343 F.3d at 1112. While the record includes some email communications, there is no testimony explaining Kaiser's reasoning and position. Cedar Park has to ask the Court to speculate that Kaiser is not offering an exclusion because of its failure to understand the conscience objection statute and not some business reason. There is no evidence showing that Cedar Park has the knowledge to make assertions about Kaiser's decision-making process.

The Court should similarly disregard Cedar Park's assertions that Cigna's offered plans would require Cedar Park to pay for coverage for abortion, that its enrollees would use the same insurance card to receive abortion benefits, and that Cigna's plans would become more expensive after the passage of years. Dkt. # 103 at 7. Cedar Park has no personal knowledge to make these assertions, and there is no indication from the communications with Cedar Park's broker or Cigna that support Cedar Park's assertions.

Likewise, the Court should disregard Cedar Park's attempt to cherry-pick statements out of context and out of chronological order. For example, Cedar Park relies on emails from its broker that Cigna only offered the abortion coverage exclusion for the level-funded plan, yet later emails from Cigna confirmed that the exclusion would apply to all plans. Dkt. # 105-1 at 334, 349. And Cedar Park relies on an unrelated email about insurance cards to say that because enrollees would use their insurance cards when obtaining abortion services, the services are part of the plan. Particularly on summary judgment, the Court should not rely on

DEFENDANTS' RESPONSE TO
PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT -- NO. 3:19-cv-05181-BHS

10

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1    these speculative, out-of-context statements, where all reasonable inferences should be viewed

2    in the light most favorable to the non-moving party.

3         The cases cited by Cedar Park are inapposite. Unlike the circumstance in *Burwell v.*

4    *Hobby Lobby Stores, Inc.*, 573 U.S. 682 (2014), Cedar Park is expressly permitted to exclude

5    coverage for services to which it objects, so it is not required to purchase coverage of services

6    that violate its religion. Cedar Park was not mandated to provide immediate coverage of elective

7    abortion in violation of its beliefs, and in fact, it actually negotiated for plans consistent with its

8    beliefs, unlike the circumstances in *Skyline Wesleyan Church v. California Department of*

9    *Managed Health Care*, 968 F.3d 738, 747 (9th Cir. 2020). The *Skyline* Court never addressed

10   the scenario where an employer can negotiate for a plan that excludes coverage for services to

11   which it objects. *Id.* While Cedar Park relies on the Ninth Circuit's decision in this case, Cedar

12   Park misses the part where it held that a predicate to Cedar Park's standing was that there were

13   no comparable plans available to Cedar Park, which the Court and Defendants now know to be

14   incorrect (and Cedar Park knew that fact to be incorrect at the time). *Cedar Park*, 860 Fed. App'x

15   at 543. In fact, Cedar Park could purchase a plan that excluded abortion services in 2019, as

16   evidenced by its negotiations with Cigna.

17        Cedar Park does not have to submit an accommodation request to the

18   Insurance Commissioner or any government agency, unlike in *Sharpe Holdings, Inc. v.*

19   *United States Department of Health and Human Services*, 801 F.3d 927, 938-941 (8th Cir. 2015),

20   which was overturned by the Supreme Court, pointing out that the case did not affect the

21   government's ability to ensure that women subject to a religious plan be able to obtain, without

22   cost, the full range of FDA approved contraceptives. *Dep't of Health & Hum. Servs. v. CNS Int'l*

23   *Ministries*, No. 15-775, 2016 WL 2842448 (U.S. May 16, 2016). Cedar Park doesn't even have

24   to file the insurance plan—that obligation is on its carrier. All health plans have to be filed,

25   regardless of whether there is a conscious objection. There has never been any evidence that

26   Cedar Park would be subject to criminal liability, and the Insurance Commissioner doesn't even

DEFENDANTS' RESPONSE TO
PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT -- NO. 3:19-cv-05181-BHS

11

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

1    regulate employers. *Contra Braunfeld v. Brown*, 366 U.S. 599, 606 (1961). Cedar Park thus fails

2    to show the statutes burden its religious exercise.

3         **2.    The statutes are neutral**

4         As discussed in Defendants' motion for summary judgment, Washington's Reproductive

5    Parity Act, read alongside the conscience objection statute, are neutral towards religion.

6    *See Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 531 (1993); *Tingley*,

7    47 F.4th at 1085; *Stormans* II, 794 F.3d at 1075-1076. The object of the statutes is neutral: none

8    of the express legislative findings target religion, but instead focus on the purpose of improving

9    the health and welfare of Washington citizens and in promoting equal economic opportunity for

10   women. The text of the laws is neutral: the law does not reference any religious practice, conduct,

11   or motivation. The statutes operate neutrally. Cedar Park can exercise its rights to refuse to

12   purchase coverage for services to which it objects and enrollees can maintain their rights to still

13   have access to the services outside the plan.

14        First, Cedar Park's argument that SB 6219 is impermissibly gerrymandered is baseless.

15   Dkt. # 103 at 17-18. Cedar Park can refuse to purchase coverage for abortion in its health plan,

16   and in fact, engaged in negotiations to do so. That fact alone defeats the argument. But Cedar

17   Park's premise is wrong too. Cedar Park bases its argument on the definition of "health plan",

18   which excludes different types of insurance that are separately regulated or subject to different

19   statutory requirements (sometimes federal requirements). *See* RCW 48.43.005(31);

20   RCW 48.43.072. These exemptions are not comparable. All of them predate SB 6219, and relate

21   to (1) specific types of insurance products that only incidentally include health care services; (2)

22   are not designed to be comprehensive health plans due to duration or very limited benefits; or

23   (3) are particular health care options funded by entities that the Insurance Commissioner does

24   not have jurisdiction over (like Medicare or Workers' Compensation).

25        There is nothing about the definition of "health plan" that evidences treating religious

26   views differently. Most of the specific insurance coverages listed in RCW 48.43.005, such as

DEFENDANTS' RESPONSE TO
PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT -- NO. 3:19-cv-05181-BHS

12

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

auto insurance, long term care insurance, and vision and dental only insurance do not provide for maternity coverage, and therefore do not have to provide coverage triggered by the Reproductive Parity Act. Other insurance coverages are regulated by other agencies and were created for different purposes than simply providing health care coverage. It is not discriminatory on the basis of religion to permit specific types of insurance coverages that do not cover reproductive care from the definition of "health plan."

Cedar Park also argues the Reproductive Parity Act proscribes more conduct than is necessary because "[e]xempting Cedar Park would primarily affect the church's employees, all of whom share the Church's beliefs about abortion." Dkt. # 103 at 18. This is unsupported by the record. While some employees likely share Cedar Park's views, there is no evidence in the record that all employees share those beliefs. Nor is there is any evidence in the record that the employees' family members, who are also enrollees on Cedar Park's plan, share the same beliefs as Cedar Park.

<u>Second</u>, Cedar Park's already-rejected argument that the conscience objection statute treats religious health providers, health carriers, and health facilities differently than employers does not demonstrate that the conscience objection statute is not religiously neutral. Dkt. # 103 at 18-19. As this Court ruled and the Ninth Circuit affirmed, "[t]o the extent the conscience objection statute treats religious organizations like Cedar Park differently than individual health care providers, religiously sponsored health carriers, and health care facilities . . . , such differential treatment does not constitute discrimination because the providers are not similarly situated to religious organizations." *Cedar Park*, 860 Fed. App'x at 543-544. "This is because the providers are in the business of providing health services, while religious organizations merely purchase health coverage." *Id.* Although this holding was in the context of Cedar Park's equal protection argument, that analysis is coextensive to the neutrality argument. *Stormans* II, 794 F.3d at 1085 (equal protection claim analysis is coextensive with free exercise claim).

DEFENDANTS' RESPONSE TO
PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT -- NO. 3:19-cv-05181-BHS

13

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1        __Third__, SB 6219 does not intentionally discriminate against religious organizations like

2  Cedar Park. The legislative findings made clear that SB 6219 would be read alongside the

3  already-existing conscience objection statute, and the Insurance Commissioner promulgated a

4  rule confirming that fact. It is irrelevant that the Legislature rejected proposals to add

5  exemptions, where the conscience objection statute was already in force. Further, one legislator's

6  statement that religious organizations can sue if they do not want to provide insurance coverage

7  for abortion proves nothing except that religious organizations can still seek a remedy in courts

8  if their religious rights are violated. *See Tingley*, 47 F.4th at 1086 (stray, out of context statements

9  by a legislator not relevant to concluding law was not neutral). And a legislator stating that

10 "[h]ealth care is about the individual, not about [religious organizations]" actually shows the

11 neutrality of the rule. Dkt. # 103 at 19. The focus of the law is on individual access in an effort

12 to improve the health and welfare of individuals, not to benefit or harm a religion. Cedar Park

13 cannot meet its burden to show that the statutes are not neutral.

14       **3.**      **The statutes are generally applicable**

15       Defendants' motion for summary judgment amply explains why the statutes are generally

16 applicable. SB 6219 applies to all health plans in Washington and does not target health plans

17 only for religious entities. The Insurance Commissioner does not make discretionary decisions

18 about approving exemptions for religious reasons.

19       __First__, Cedar Park argues that the existence of categorical exemptions in the definition of

20 "health plan" defeat the general applicability of SB 6219. As explained previously, this argument

21 is wrong because the statutes permit Cedar Park to purchase a plan that excludes coverage for

22 services to which it objects. Also, SB 6219 does not create secular exemptions—it simply applies

23 to health plans. That the preexisting statute defining health plans excludes certain types of

24 specific insurance products from its definition—Worker's Compensation, auto accident

25 coverage, dental only or vision only coverage, etc.—does not mean that SB 6219 contains secular

26 exemptions that undermine the interests in providing women better access to health benefits. The

DEFENDANTS' RESPONSE TO
PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT -- NO. 3:19-cv-05181-BHS

14

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

purpose of SB 6219 is to improve access to reproductive care through health plans, and it does not need to apply to every conceivable type of insurance product to do so.

Second, as explained above, Cedar Park is wrong in arguing that Washington law completely exempts insurance plans provided by religious health care organizations from the abortion insurance requirement so as to undermine the Defendants' purpose of protecting women's access to reproductive health care. Dkt. # 103 at 15. While religious providers and carriers can exercise a conscience objection, the enrollees still need to be provided information about how to access services outside of the objection. In practice, there is a government fund used to provide the abortion services. Dkt. # 105-1, Ex. B at 194.

The cases cited by Cedar Park show that Washington's law is generally applicable. Dkt. # 103 at 13-14. Unlike the law at issue in *Tandon v. Newsom*, which expressly restricted religious services while exempting comparable secular activity like hair salons, movie theaters, and restaurants, Washington's laws do not expressly restrict religious expression, and in fact ensure religious employers can refuse to purchase coverage for services to which they object. 141 S. Ct. 1294, 1296 (2021). Similarly, in *Roman Catholic Diocese of Brooklyn v. Cuomo*, the attendance cap on houses of worship focused on religious worship while treating secular schools and factories more favorably. 141 S. Ct. 63, 66-67 (2020). Cedar Park is not restricted because of its religion compared to other employers purchasing health plans. In *Fraternal Order of Police Newark Lodge No. 12 v. City of Newark*, 170 F.3d 359, 366 (3d Cir. 1999), there was no exemption for religion, while there is an exemption here. And *Midrash Sephardi, Inc. v. Town of Surfside*, 366 F.3d 1214, 1234-1235 (11th Cir. 2004), deals with focused zoning restrictions that exclude religious organizations, not health plans. All of these cases either expressly limited religious worship or did not include exemptions for religious organizations. Neither of those pitfalls are present here.

Third, Cedar Park's argument about individualized exemptions shows the futility of its claim. As Cedar Park points out, a law is not generally applicable if a governmental agency

DEFENDANTS' RESPONSE TO
PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT -- NO. 3:19-cv-05181-BHS

15

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

exerts discretion whether to make individualized exemptions so as to deny an entity the ability to avoid conduct it believes to be objectionable. *Fulton v. City of Phila., Pa.*, 141 S. Ct. 1868, 1877 (2021). Here, nothing in the conscience objection statute nor do any facts show that the Insurance Commissioner makes discretionary decisions about approving exemptions for employers exercising a conscience objection. The conscience objection statute requires the Insurance Commissioner to approve plans that exclude coverage for services by reason of religion or conscience objection. RCW 48.43.065(3). It is a mandatory obligation on the Insurance Commissioner not to compel employers to pay for services to which they object. The Insurance Commissioner thus reviews health plans to ensure compliance with the laws, including the conscience objection. To the extent there is any discretion, such discretion is held by the carrier and the employer to negotiate a plan consistent with its beliefs. "There is no provision in the Washington law for individual exceptions that would allow secular exemptions but not religious ones." *Tingley*, 47 F.4th at 1088.

Cedar Park's reference to an unrelated provision requiring the Insurance Commissioner to interpret SB 6219 in a manner that would not violate an applicable federal law, the Weldon Amendment, is baffling. There is no evidence that the Weldon Amendment is at issue here. There is no allegation that Cedar Park, Kaiser, Cigna, or any other part of this case implicates RCW 48.43.073(5). There is no evidence that the Insurance Commissioner has ever had to address a situation involving RCW 48.43.073(5). Cedar Park's references to testimony about implementing the Weldon Amendment is out of place. Moreover, there is a difference between giving the Insurance Commissioner discretion to promulgate policies to ensure compliance with the Weldon Amendment and exercising discretion over whether specific health plans or religious organizations are able to be exempt from SB 6219 or the conscience objection statute. Cedar Park again asks the Court to speculate about an unrelated provision that has not been used and which has no factual or legal basis.

DEFENDANTS' RESPONSE TO
PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT -- NO. 3:19-cv-05181-BHS

16

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

In sum, Cedar Park fails to meet its burden to demonstrate that the statutes are not neutral or generally applicable. As a result, it must show that the statutes are not rationally related to their purpose, which it similarly fails.

### 4.      The statutes are rationally related to legitimate governmental purposes

As explained in Defendants' motion for summary judgment, SB 6219 is "rationally related to a legitimate governmental purpose." *Stormans* II, 794 F.3d at 1084. Looking <u>first</u> at the governmental purposes, the legislative findings detail at least 14 different governmental purposes served by the law, including improving health benefits for Washingtonians so they can lead healthier, more productive lives, providing essential care for women, and promoting opportunities for women to participate in society equally.

These purposes are not only legitimate public purposes but are compelling state interests. The State has a compelling state interest in providing better access to health benefits. *See, e.g.*, *Garcia v. San Antonio Metro. Transit Auth.*, 469 U.S. 528, 545 (1985); *Marshall v. United States*, 414 U.S. 417, 427 (1974); *Jacobson v. Massachusetts*, 197 U.S. 11, 38 (1905); *Tingley*, 47 F.4th at 1077-1078; *see also Smith*, 494 U.S. at 885-887. The State also has a compelling state interest in ensuring that equal economic opportunities for women and their ability to participate in society. "Assuring women equal access to such goods, privileges, and advantages clearly furthers compelling state interests." *Roberts v. U.S. Jaycees*, 468 U.S. 609, 626 (1984); *see also Califano v. Webster*, 430 U.S. 313, 317 (1977).

Cedar Park argues that there is no problem to solve because OIC received no complaints about health care plans not covering abortion before SB 6219 existed. Dkt. # 103 at 20. This is a red herring. The Legislature didn't enact SB 6219 because of complaints to the OIC but for the reasons set forth in the legislative findings. Nothing in Cedar Park's argument disputes the legislative findings.

Cedar Park argues that the exemptions in the definition of "health plan" somehow show that no governmental interest is served. But those exclusions exist for separate policy reasons—

DEFENDANTS' RESPONSE TO
PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT -- NO. 3:19-cv-05181-BHS

17

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

like they are areas of insurance that do not focus on health care, or are health plans not regulated by the State or OIC. Cedar Park again ignores the conscience objection statute by arguing that this situation is the government exercising an "interest in forcing a pro-life church to provide insurance coverage for abortion to people who will not use it." Dkt. # 103 at 21. Cedar Park is not forced to purchase a plan that covers services to which it objects. RCW 48.43.065(3).

Second, SB 6219 not only rationally implements its purposes but is narrowly tailored to satisfy strict scrutiny. SB 6219 requires health plans to provide contraceptive care, and if the plan includes maternity care to provide substantially equivalent coverage for abortion services. These provisions inherently promote access to health services for women. And as the legislative findings make clear, access to contraceptives and abortion services not only can help women lead healthier and more productive lives, but providing these services is tied to increasing their opportunities for economic success and equal participation in society.

SB 6219 read alongside with the conscience objection are narrowly tailored. The statutes balance the important governmental interest in providing health care with a religious employer's right to exercise with an enrollee's right to receive services notwithstanding that objection with a secular carrier's right to offer services in a regulated market. And the statutes do not require Cedar Park to do anything special to exercise its rights—it simply needs to negotiate for a health plan in keeping with its rights, like any other large employer purchasing health insurance.

In arguing that SB 6219 is not narrowly tailored, Cedar Park lobbies for several policy alternatives that Washington did not enact. Dkt. # 103 at 21-22. Providing all religious organizations a blanket exemption ignores the realities of different parties in the market. As this Court and the Ninth Circuit recognized, employers, carriers, and providers all serve different roles in the health insurance market, so tailoring the objections for those market purposes is necessary. *Cedar Park*, 860 Fed. App'x at 543-544; *see Lee*, 455 U.S. at 261. Cedar Park already

DEFENDANTS' RESPONSE TO
PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT -- NO. 3:19-cv-05181-BHS

18

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

has an exemption because of its role as an employer in the market.[5] SB 6219 and the conscience objection statute read together are narrowly tailored to serve compelling state interests, so thus satisfy strict scrutiny.

**C.     Cedar Park's "Religious Autonomy" Claim Fails**

Cedar Park's right to decide for itself, free from state interference, matters of church governance as well as those of faith and doctrine, is not implicated here. *See Bollard v. Cal. Province of Soc'y of Jesus*, 211 F.3d 1331, 1332 (9th Cir. 2000) (Wardlaw, C.J. dissenting). While courts cannot wade into governance of "religious" or "ecclesiastical" matters, courts can adjudicate matters dealing with churches if the dispute requires "neutral principles of law, developed for use" in those kinds of disputes, which includes generally applicable laws. *Jones v. Wolf*, 443 U.S. 595, 599-605 (1979); *see Our Lady of Guadalupe Sch. v. Morrissey-Berru*, 140 S. Ct. 2049, 2060 (2020); *Hosanna-Tabor Evangelical Lutheran Church & Sch. v. E.E.O.C.*, 565 U.S. 171 (2012).

The purchase of a health insurance plan is not an ecclesiastical decision but a choice to enter the marketplace for health care. As explained already, the statutes are generally applicable and do not force a particular religious beliefs. Religious organizations, like churches, can refuse to purchase coverage for services to which they object, so they can still choose to practice and maintain their beliefs. But Cedar Park cannot use the religious autonomy claim to make the State force other private companies to create products on a market simply because Cedar Park desires it so.

Cedar Park wrongly argues that it has to choose between purchasing coverage for abortion or purchase inferior health care services. This is a choice that does not exist under Washington law, and it is not the choice Cedar Park was exercising. Cedar Park negotiated with Cigna for a plan that excluded abortion. Defendants didn't even know about these negotiations

---

[5]Cedar Park's argument that the government could pay for the services is equally unavailing. Cedar Park pays taxes, so under its own theory, it would indirectly "facilitate" abortions through the government.

DEFENDANTS' RESPONSE TO
PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT -- NO. 3:19-cv-05181-BHS

19

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

until after the fact, late in discovery, undisputedly proving that Defendants were not involved in Cedar Park's internal administration. Cedar Park chose, for reasons that it admits had nothing to do with its religious beliefs, to select and pay for a health plan that included abortion services, despite an offer that would be less expensive, for a health plan that excluded abortion and specific contraceptives. Cedar Park cannot claim a decision that they hid from the Defendants was somehow dictated by them. The religious autonomy claim lacks any merit.

## VI.    CONCLUSION

The Court should dismiss this case with prejudice.

DATED this 31st day of March 2023.

ROBERT W. FERGUSON
Attorney General

*/s/ Paul M. Crisalli*
PAUL M. CRISALLI, WSBA #40681
Assistant Attorney General
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744
Paul.Crisalli@atg.wa.gov

MARTA DELEON, WSBA #35779
Senior Assistant Attorney General
Government Compliance & Enforcement Division
1125 Washington Street SE
Olympia, WA  98504-0100
(360) 664-9006
Marta.Deleon@atg.wa.gov
*Attorneys for Defendants*

DEFENDANTS' RESPONSE TO
PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT -- NO. 3:19-cv-05181-BHS

20

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744