1
2
3
4
5
6
7
The Honorable Benjamin H. Settle

8
**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
9
**AT TACOMA**

10
CEDAR PARK ASSEMBLY OF GOD OF
KIRKLAND, WASHINGTON,

NO. 3:19-cv-05181-BHS

11
                            Plaintiff,

DEFENDANTS' REPLY IN
SUPPORT OF MOTION FOR
SUMMARY JUDGMENT

12
        v.

13
MYRON "MIKE" KREIDLER, et al.,

NOTE ON MOTION CALENDAR:
APRIL 7, 2023

14
                            Defendants.

15
16
17
18
19
20
21
22
23
24
25
26

DEFENDANTS' REPLY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT --
NO. 3:19-cv-05181-BHS

**TABLE OF CONTENTS**

I.    INTRODUCTION .................................................................................................. 1

II.   ARGUMENT ....................................................................................................... 1

    A.   Cedar Park Relies on Speculation and Inadmissible Hearsay ................... 1

    B.   Cedar Park's Free Exercise Claim Fails as a Matter of Law .................... 3

         1.   The statutes do not impermissibly burden religion ........................... 4

         2.   The statutes are neutral .................................................................... 6

         3.   The statutes are generally applicable ............................................... 9

         4.   The statutes are rationally related to legitimate governmental purposes ......... 10

    C.   Cedar Park's "Religious Autonomy" Claim Fails ................................. 11

III.  CONCLUSION ................................................................................................ 12

DEFENDANTS' REPLY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT --
NO. 3:19-cv-05181-BHS

i

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

**TABLE OF AUTHORITIES**

<u>**Cases**</u>

*Bollard v. Cal. Province of Soc'y of Jesus,*
196 F.3d 940 (9th Cir. 1999) ............................................................. 11

*Burwell v. Hobby Lobby Stores, Inc.,*
573 U.S. 682 (2014) ........................................................................... 5

*Cedar Park Assembly of God. v. Kreidler,*
860 Fed. App'x 542 (9th Cir. 2021) ........................................... 8, 11

*Church of Lukumi Babalu Aye, Inc. v. City of Hialeah,*
508 U.S. 520 (1993) ...................................................................... 6, 7, 9

*Dep't of Health & Hum. Servs. v. CNS Int'l Ministries,*
No. 15-775, 2016 WL 2842448 (U.S. May 16, 2016) ...................... 6

*Elk Grove Unified Sch. Dist. v. Newdow,*
542 U.S. 1 (2004) ............................................................................... 6

*Fulton v. City of Philadelphia,*
141 S. Ct. 1868 (2021) .................................................................... 5, 9

*Garcia v. San Antonio Metro. Transit Auth.,*
469 U.S. 528 (1985) .......................................................................... 10

*Hernandez v. Spacelabs Med. Inc.,*
343 F.3d 1107 (9th Cir. 2003) ........................................................... 1

*JL Beverage Co., LLC v. Jim Beam Brands Co.,*
828 F.3d 1098 (9th Cir. 2016) ........................................................... 1

*Jones v. Wolf,*
443 U.S. 595 (1979) .......................................................................... 12

*Kennedy v. Bremerton Sch. Dist.,*
142 S. Ct. 2407 (2022) ....................................................................... 3

*Lyng v. Nw. Indian Cemetery Protective Ass'n,*
485 U.S. 439 (1988) ............................................................................ 6

*Marshall v. United States,*
414 U.S. 417 (1974) .......................................................................... 10

*Orr v. Bank of Am., NT & SA,*
285 F.3d 764 (9th Cir. 2002) ............................................................. 1

*Our Lady of Guadalupe Sch. v. Morrissey-Berru,*
140 S. Ct. 2049 (2020) ..................................................................... 12

DEFENDANTS' REPLY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT --
NO. 3:19-cv-05181-BHS

ii

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

*Religious Sisters of Mercy v. Azar*,
   513 F. Supp. 3d 1113 (D. N.D. 2021)..................................................................... 10

*Roberts v. U.S. Jaycees*,
   468 U.S. 609 (1984).............................................................................................. 10

*Sharpe Holdings, Inc. v. U.S. Dep't of Health & Hum. Servs.*,
   801 F.3d 927 (8th Cir. 2015) ................................................................................. 6

*Skyline Wesleyan Church v. Cal. Dep't of Managed Health Care*,
   968 F.3d 738 (9th Cir. 2020) ................................................................................. 5

*Spokeo, Inc. v. Robins*,
   578 U.S. 330 (2016).............................................................................................. 6

*Stormans, Inc. v. Wiesman*,
   794 F.3d 1064 (9th Cir. 2015) ........................................................................... 6, 7

*Tandon v. Newsom*,
   141 S. Ct. 1294 (2021)......................................................................................... 5

*Tingley v. Ferguson*,
   47 F.4th 1055 (9th Cir. 2022) ........................................................................ 6, 8, 9

*United States v. Lee*,
   455 U.S. 252 (1982)......................................................................................... 4, 11

*Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*,
   454 U.S. 464 (1982).............................................................................................. 6

*Zubik v. Burwell*,
   578 U.S. 403 (2016).............................................................................................. 6

## **Statutes**

2018 Wash. Sess. Laws, ch. 119, § 1 ............................................................................ 7

RCW 48.43.005(31).................................................................................................... 7

RCW 48.43.065(2)(b) ................................................................................................ 11

RCW 48.43.065(3)...................................................................................................... 9

RCW 48.43.073(5)................................................................................................. 8, 10

DEFENDANTS' REPLY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT --
NO. 3:19-cv-05181-BHS

iii

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

# I.   INTRODUCTION

This case has been extensively briefed, and Cedar Park's Response to Defendants' Summary Judgment Motion offers purely speculative and blatantly inconsistent arguments that are not well taken. The Court should dismiss Cedar Park's claims with prejudice. The statutes are neutral and generally applicable because they do not target religion and because religious employers like Cedar Park can refuse to purchase coverage for services to which they object. The statutes are not only rationally related to legitimate government purposes, but satisfy strict scrutiny because they are narrowly tailored to achieve the compelling state interests.

# II.   ARGUMENT

## A.   Cedar Park Relies on Speculation and Inadmissible Hearsay

There are a few points worth emphasizing when analyzing the cross-motions for summary judgment. <u>First</u>, Cedar Park's claims rely on speculation and inadmissible hearsay. The Court can only consider admissible evidence in ruling on a motion for summary judgment and cannot rely on unsupported conjecture or conclusory statements. *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773-774 (9th Cir. 2002); *Hernandez v. Spacelabs Med. Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003). To consider some forms of hearsay, the proponent needs to demonstrate that the hearsay declarants would be available to testify at trial and that its evidence would be admissible at trial in some other form. *JL Beverage Co., LLC v. Jim Beam Brands Co.*, 828 F.3d 1098, 1110 (9th Cir. 2016).

Here, Cedar Park speculates or relies on hearsay. There is no evidence supporting the following facts, among others:

- No evidence that Kaiser's plan preceding SB 6219's enactment forbade providing abortion services to Cedar Park's enrollees outside of Cedar Park's plan;

- No evidence that Kaiser's plan preceding SB 6219's enactment did not "facilitate" abortion to other enrollees;

- No evidence that Cigna's level-funded or fully funded plans required Cedar Park to indirectly pay for abortion or certain contraceptives;

DEFENDANTS' REPLY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT --
NO. 3:19-cv-05181-BHS

1

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

- No evidence how Cigna would provide access to the excluded services "outside the plan;"

- No evidence that Cigna offered a self-funded plan;

- No evidence that all Cedar Park enrollees, including employees and their family members, share Cedar Park's views towards abortion and certain contraceptives;

- No evidence that Cedar Park had to pay an extra premium, fee, or payment because of its objection to abortion, either when using Kaiser or using a Cigna plan;

- No evidence that Cedar Park would actually facilitate access to abortion through Kaiser's or Cigna's plans; and

- No evidence that any Cedar Park enrollee obtained access to abortion or contraceptives through Cedar Park's health plans.

Cedar Park incorrectly relies on inadmissible hearsay and speculation. This testimony largely consists of statements by Cedar Park's CFO and its broker. The CFO speculates about how insurance companies offered and implemented their plans and impermissibly relays his understandings of the broker's understandings of what insurance carriers were willing to offer Cedar Park. This includes the inadmissible testimony about using insurance cards to obtain excluded services and testimony about Kaiser's refusal to offer a plan. Dkt. # 113 at 4. There is no indication that this hearsay testimony would be admitted at trial.

<u>Second</u>, Cedar Park again argues that Cigna did not offer a plan that excluded abortion and certain contraceptives. The emails and broker presentations undisputedly show that Cigna offered plans that excluded abortion and certain contraceptives, through unequivocal answers to Cedar Park's questions. This is an undisputed fact.

<u>Third</u>, Cedar Park ignores undisputed facts in arguing that the Cigna plans were not cheaper. The June 10, 2019, presentation offered two options from Cigna that are cheaper than Kaiser's plan options. Dkt. # 105-1, Ex. C at 60-61. The July 18, 2019 bid included two additional options that were cheaper. *Id.*, Ex. I.

Regarding Cedar Park's argument that the Cigna prices went up, for 2020, the initial presentation was that it would cost $1,149,384 to renew the Kaiser plan. *Id.*, Ex. C at 69-70.

DEFENDANTS' REPLY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT --
NO. 3:19-cv-05181-BHS

2

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

There was a negotiated rate from Kaiser for $1,099,092. *Id.* Cigna offered a level-funded option with an exclusion that cost $1,140,925. *Id.* at 70. Cigna's option is cheaper than renewing Kaiser's plan. Only by renegotiating Kaiser's plan (through increased deductibles), was it cheaper than Cigna's.

Cedar Park's argument that Cigna raised its rates in 2020 lacks context. Kaiser increased its rates for renewing its plan more than Cigna's increase. It would cost $233,070 more to renew with Kaiser, while Cigna increased its rates only $227,544. Cedar Park negotiated with Kaiser in 2020 to obtain worse coverage, despite an initially cheaper Cigna bid that excluded coverage of abortion and certain contraceptives, which shows Cedar Park did not base its insurance decisions on its views about abortion.

Fourth, without any support, Cedar Park states that Cigna's fully insured plan options did not exclude abortion. Dkt. # 113 at 4-5. This ignores the repeated assertions *from Cigna* that all plans have the exclusion. Just because Cedar Park says something doesn't mean it's true.

Fifth, without any support, Cedar Park posits that Cigna's plans are not comparable. But Cedar Park only discusses Cigna's level-funded plan. *Id.* at 6-7. That Cigna structures its plans differently than Kaiser does not mean that it is not comparable. Cigna offers health plans that provide coverage for services (while excluding abortion and certain contraceptives). Like all employers purchasing large group health plans, Cedar Park can determine what structure works best for its business model. But Cedar Park admits it made that decision not because of its religion.

## B.     Cedar Park's Free Exercise Claim Fails as a Matter of Law

Cedar Park fails its burden to show that Washington's statutes are not neutral or generally applicable and thus subject to strict scrutiny. *See Kennedy v. Bremerton Sch. Dist.*, 142 S. Ct. 2407, 2421 (2022) (describing burden on plaintiff).

DEFENDANTS' REPLY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT --
NO. 3:19-cv-05181-BHS

3

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

### 1.      The statutes do not impermissibly burden religion

Washington law allows Cedar Park to purchase a health insurance plan that excludes coverage to which Cedar Park objects. Cedar Park negotiated with Cigna for such a plan, but purchased the more expensive with no exclusion. Because the statutes allow Cedar Park to purchase a plan that excludes services consistent with its beliefs, the statutes do not impermissibly burden religion.

Cedar Park repeatedly misstated Defendants' 30(b)(6) testimony to imply that, even when exercising the conscience objection, Cedar Park could indirectly pay for abortion services. Kim Tocco never testified that when a plan provides an abortion exclusion, the services are still included in the plan or that the carrier still has to provide the services. Dkt. # 105-1, Ex. A at 102-105. Rather, when a plan excludes coverage, the plan documents need to notify enrollees that the employer chose not to provide benefits but that the enrollee still can access benefits. *Id.* at 102. The carrier might provide the benefits, but they might be provided by someone else. *Id.* And Tocco stating "[the] plan actually provides for access" refers to a specific Kaiser plan. *Id.* at 105.

Even if carriers provide "access" to services, nothing requires Cedar Park to indirectly pay for the services, and no evidence shows that Cedar Park would indirectly pay for them. Even if Kaiser, Cigna, or another carrier used a portion of the monies paid by Cedar Park to pay for services it found objectionable, that does not violate Cedar Park's free exercise rights. Money is fungible and cannot have a "no abortion services" label on it. Cedar Park chose to engage in commercial activity, so it cannot dictate what others do in the market. *See United States v. Lee*, 455 U.S. 252, 261 (1982). The Free Exercise Clause is not a sword to permit religious objectors to impose their beliefs on private companies, or their employees' families. *See id.* Even if a carrier provides access to services does not mean that Cedar Park pays indirectly for anything. Carriers utilize other methods for enrollees to receive the services, including through third parties.

DEFENDANTS' REPLY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT --
NO. 3:19-cv-05181-BHS

4

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

Cedar Park argues that this nonetheless violates its exercise rights. Kaiser and Cigna can provide abortion services to its enrollees regardless of an employer's religious objection. Cedar Park essentially seeks an enforceable ban from its enrollees being able to receive abortion in any form, or a ban on any carrier contracted with Cedar Park from offering any abortions or certain contraceptives to any person, as it would cause Cedar Park to "facilitate" abortions. There is no legally cognizable claim that a church's free exercise rights are violated when a third party provides information and access to its enrollees or a carrier provides services to other enrollees.

The cases cited by Cedar Park prove that its claims are not legally supported. In *Fulton v. City of Philadelphia*, the law required religious organizations to provide a certification of same-sex couples as foster couples. 141 S. Ct. 1868, 1876-1877 (2021). Here, Cedar Park provides no certification. It exercises its religion by finding a plan consistent with its beliefs. It negotiates for a health plan, just like every other employer purchasing a large group plan. Any additional obligation is on the carrier to confirm at filing what will occur in the absence of coverage for the objected services. In *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682 (2014), the law mandated employers cover the contraceptives, violating the employers' beliefs. Cedar Park expressly can refuse to purchase coverage, so it is not required to violate its religion. Nor did SB 6219 immediately remove Cedar Park's exclusion, and in fact, it actually negotiated for plans consistent with its beliefs, unlike the circumstances in *Skyline Wesleyan Church v. California Department of Managed Health Care*, 968 F.3d 738, 747 (9th Cir. 2020). The *Skyline* Court didn't address the scenario where an employer can negotiate for a plan that excludes coverage to which it objects. *Id.*

Cedar Park is wrong in arguing *Tandon v. Newsom*, 141 S. Ct. 1294, 1296 (2021), changes the burdens analysis. Dkt. # 113 at 10-11. The law expressly restricted religious services while exempting comparable secular activity. *Tandon*, 141 S. Ct. at 1296. The case does not address the situation where, as here, the laws do not restrict religious expression, but, in fact, ensure religious employers can refuse to purchase coverage.

DEFENDANTS' REPLY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT --
NO. 3:19-cv-05181-BHS

5

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

Cedar Park does not have to submit an accommodation request to the Insurance Commissioner, or any government agency, unlike in *Sharpe Holdings, Inc. v. United States Department of Health and Human Services*, 801 F.3d 927, 938-941 (8th Cir. 2015). In fact, the Supreme Court reversed *Sharpe*, pointing to precedence requiring that nothing affects the government's ability to ensure that women subject to a religious plan be able to obtain, without cost, the full range of contraceptives. *Dep't of Health & Hum. Servs. v. CNS Int'l Ministries*, No. 15-775, 2016 WL 2842448 (U.S. May 16, 2016); *see also Zubik v. Burwell*, 578 U.S. 403 (2016).

No case confers standing on a church to invalidate enrollees' individual rights to a medical procedure or contraceptives. *See, e.g.*, *Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016); *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 9, 15 n.7 (2004); *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 471-473 (1982). No free exercise case has been used as a sword to deny third parties of their rights in favor of a church. "The Free Exercise Clause simply cannot be understood to require the Government to conduct its own internal affairs in ways that comport with the religious beliefs of particular citizens." *Lyng v. Nw. Indian Cemetery Protective Ass'n*, 485 U.S. 439, 448 (1988) (quoting *Bowen v. Roy*, 476 U.S. 693, 699-700 (1986)). Following Cedar Park's argument, even an order requiring Kaiser to provide a plan excluding abortion would violate its beliefs, as Kaiser still offers plans covering abortion. This claim is patently legally baseless. Cedar Park's operative complaint did not make this strange argument. If anything, this argument shows the mental gymnastics this Court must undergo to exercise to grant relief.

### 2. The statutes are neutral

The statutes, read together, are neutral towards religion. *See Church of Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 531 (1993); *Tingley v. Ferguson*, 47 F.4th 1055, 1085 (9th Cir. 2022); *Stormans, Inc. v. Wiesman* (*Stormans* II), 794 F.3d 1064, 1075-1076 (9th Cir. 2015). The object of the statutes is neutral—none of the legislative purposes target religion, but

DEFENDANTS' REPLY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT --
NO. 3:19-cv-05181-BHS

6

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

focus on improving the health and welfare of Washington citizens and improving equal economic opportunity for women. 2018 Wash. Sess. Laws, ch. 119, § 1. The text is neutral—it doesn't reference any religious practice, conduct, or motivation. The statutes operate neutrally— Cedar Park can refuse to purchase coverage for services to which it objects, and enrollees can access the services outside the plan.[1]

Cedar Park again wrongly argues that SB 6219 is impermissibly gerrymandered. Cedar Park can refuse to purchase abortion coverage and in fact, engaged in negotiations to do so. Since Cedar Park can exercise its beliefs, the statutes are neutral towards religion. Cedar Park makes the nonsensical argument the exemption shows the law is not neutral to religion. But statutes are neutral towards religion if they allow religious employers to exercise their beliefs. *Lukumi*, 508 U.S. at 533 ("if the object of a law is to infringe upon or restrict practices because of their religious motivation, the law is not neutral[.]").

Cedar Park tries to point to seven "exemptions" to SB 6219 to show the law is not neutral. Four "exemptions" apply to the "health plan" definition and aren't in SB 6219. *See* RCW 48.43.005(31). This definition preexists SB 6219, focusing on which insurance constitutes a "health plan" and, thus, is subject to all health plan requirements. That other insurance forms are subject to other legal requirements (and thus don't include maternity coverage requirements or corresponding abortion coverage requirements) says nothing about the law's neutrality. These other insurance forms are (1) specific types of insurance products that only incidentally include health care services (but are not health plans); (2) are not designed to be comprehensive health plans due to duration or very limited benefits; or (3) are particular healthcare options funded by entities that the Insurance Commissioner does not have jurisdiction over (like Medicare). These exemptions are "tied directly to limited, particularized, business-related, objective criteria." *Stormans* II, 794 F.3d at 1082. Just because those insurance types

---

[1]Cedar Park is mistaken arguing that Defendants never argued that the statutes operated neutrally—they did so expressly. Dkt. # 104 at 15; Dkt. # 112 at 12.

7

1    might incidentally relate to maternity services does not mean that the laws are not neutral towards

2    religion.

3          Cedar Park asks this Court to disregard the Supremacy Clause in saying that the law is

4    discriminates on the basis of religion because SB 6219 is inapplicable to the minimum extent

5    necessary if a plan that would result in noncompliance with federal requirements that are a

6    precondition to the allocation of federal funds. RCW 48.43.073(5). The statute makes clear that

7    the applicable federal laws govern, consistent with the Supremacy Clause. This does not mean

8    that neutrality has been destroyed, lest any time a state statute provides that it is interpreted to

9    comply with the Supremacy Clause would destroy neutrality towards religion.

10         This Court and the Ninth Circuit confirmed that the conscience objection statute's

11   treatment of religious providers, carriers, and facilities does not render the conscience objection

12   statute discriminatory. "To the extent the conscience objection statute treats religious

13   organizations like Cedar Park differently than individual health care providers, religiously

14   sponsored health carriers, and health care facilities . . . , such differential treatment does not

15   constitute discrimination because the providers are not similarly situated to religious

16   organizations." *Cedar Park Assembly of God. v. Kreidler*, 860 Fed. App'x 542, 543-544 (9th Cir.

17   2021). "This is because the providers are in the business of providing health services, while

18   religious organizations merely purchase health coverage." *Id.*

19         Cedar Park misreads the legislative history to argue that SB 6219 discriminates against

20   religion. The legislative findings made clear that SB 6219 is read alongside the already-existing

21   conscience objection statute, and which the Insurance Commissioner promulgated by rule. It is

22   irrelevant that the Legislature rejected proposals to add exemptions, where the conscience

23   objection statute already existed. One legislator's statement that religious organizations can sue

24   if they do not want to provide insurance coverage for abortion proves only that religious

25   organizations can still seek a remedy in court. *See Tingley*, 47 F.4th at 1086 (stray, out of context

26   statements by a legislator not relevant to assess law's neutrality). And a legislator stating

DEFENDANTS' REPLY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT --
NO. 3:19-cv-05181-BHS

8

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

1    "[h]ealth care is about the individual, not about [religious organizations]" shows the neutrality

2    of the law. Dkt. # 113 at 18-19. The focus is on individual access to health care to improve health

3    and welfare, not to benefit or harm religion.

4         **3.       The statutes are generally applicable**

5         General applicability turns on whether the law selectively imposes "burdens only on

6    conduct motivated by religious belief." *Lukumi*, 508 U.S. at 543. SB 6219 applies to all health

7    plans and does not target health plans only for religious entities. The Insurance Commissioner

8    does not make discretionary decisions approving exemptions for religious reasons.

9         As explained above, the existence of categorical "exemptions" do not defeat general

10   applicability. The statutes permit Cedar Park to purchase a plan that excludes coverage for

11   services to which it objects. SB 6219 does not create secular exemptions to the detriment of

12   religious organizations.

13        Cedar Park points to individualized exemptions, relying on *Fulton*. But *Fulton* proves

14   the Defendants' point, because that law was not generally applicable when a governmental

15   agency exerts discretion whether to make individualized exemptions so as to deny an entity the

16   ability to avoid objectionable conduct. 141 S. Ct. at 1877. Nothing in the conscience objection

17   statute nor do any facts show that the Insurance Commissioner makes discretionary decisions

18   approving exemptions for employers exercising a conscience objection. The Insurance

19   Commissioner has to approve plans excluding coverage for services by reason of religion or

20   conscience. RCW 48.43.065(3). The Insurance Commissioner only reviews health plans to

21   ensure compliance with the laws, including the conscience objection. Any discretion is by the

22   carrier and the employer to negotiate a plan consistent with their beliefs and business models.

23   Here, there is no "individual exceptions that would allow secular exemptions but not religious

24   ones." *Tingley*, 47 F.4th at 1088. The statutes here clearly satisfy *Fulton*.

25        Cedar Park's discussion of a nonbinding legal memorandum analyzing the Weldon

26   Amendment is a red herring. There is no evidence that the Weldon Amendment is at issue here.

DEFENDANTS' REPLY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT --
NO. 3:19-cv-05181-BHS

9

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

Nothing shows that this case implicates RCW 48.43.073(5). The Insurance Commissioner has discretion to promulgate policies to ensure compliance with the Weldon Amendment, not *individualized* discretion over whether specific health plans or religious organizations are able to be exempt from SB 6219 or the conscience objection statute.

### 4.     The statutes are rationally related to legitimate governmental purposes

The briefing amply shows not only that the statutes are rationally related to legitimate governmental purposes but also that they satisfy strict scrutiny. The legislative findings detail 14 different governmental purposes served by the law—any is sufficient. Many of those interests are recognized compelling state interests, like providing better access to health benefits and "[a]ssuring women equal access to such goods, privileges, and advantages." *Roberts v. U.S. Jaycees*, 468 U.S. 609, 626 (1984); *see Garcia v. San Antonio Metro. Transit Auth.*, 469 U.S. 528, 545 (1985); *Marshall v. United States*, 414 U.S. 417, 427 (1974).

Cedar Park argues that because OIC received no complaints about health care plans not covering abortions before SB 6219, the law is unnecessary. Complaints to OIC have nothing to do with the law, but the legislative findings do. They show the purposes of the law.

The "exemptions" posited by Cedar Park actually show the careful balance and care the Legislature exerted when enacting SB 6219—it ensured that the legislation fit within the many interests Washington has for its citizens, from protecting the health and welfare of its citizens, ensuring women have opportunities to participate equally in society, protecting religious beliefs, and regulating different insurance markets, to name a few. These are not broadly stated interests "in ensuring nondiscriminatory access to healthcare" but specific interests in women's access to contraceptives and reproductive health services and their opportunity for equal access to participate in society. *Contra Religious Sisters of Mercy v. Azar*, 513 F. Supp. 3d 1113, 1148 (D. N.D. 2021).

SB 6219 not only rationally implements its purposes but is narrowly tailored to satisfy strict scrutiny. It implements the purposes set out by the legislative findings. Read along with

DEFENDANTS' REPLY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT --
NO. 3:19-cv-05181-BHS                                    10                   ATTORNEY GENERAL OF WASHINGTON
                                                                              Complex Litigation Division
                                                                              800 Fifth Avenue, Suite 2000
                                                                              Seattle, WA  98104-3188
                                                                              (206) 464-7744

the conscience objection statute, they balance the compelling interest in providing health care and opportunities for women to have access to an equal share in society with a religious employer's right to exercise with an enrollee's right to receive services notwithstanding that objection with a secular carrier's right to offer services in a regulated market.

Cedar Park repeats its own policy options it claims would avoid this problem. Defendants have already addressed these arguments, but Cedar Park's first option demonstrates the fatal flaws in its entire case. Cedar Park proposes that it should be excused like religious health care providers, religiously sponsored health carriers, and religious health care facilities from "the possibility of facilitating abortion coverage in any way." Dkt. # 103 at 22. But the undisputed facts are that those entities (1) provide notification about the exclusion of coverage of those services; and (2) provide contact information for enrollees to learn from third parties how to receive those services. RCW 48.43.065(2)(b). This is exactly what Cedar Park could get from a carrier like Cigna. For Cedar Park to hale this as the preferred method while simultaneously arguing that its exercise rights are violated if its enrollees received information about access outside Cedar Park's plan shows the weakness of Cedar Park's position. The Court should reject Cedar Park's arguments.

Further, as this Court and the Ninth Circuit recognized, employers, carriers, and providers all serve different roles in the health insurance market, so tailoring the objections and mechanisms for those market purposes is necessary. *Cedar Park*, 860 Fed. App'x at 543-544; *see Lee*, 455 U.S. at 261. The statutes are narrowly tailored to serve compelling state interests, so they satisfy strict scrutiny.

## C.    Cedar Park's "Religious Autonomy" Claim Fails

SB 6219 and the conscience objection statute together do not interfere with Cedar Park's right to decide for itself, free from state interference, matters of church governance as well as those of faith and doctrine. *See Bollard v. Cal. Province of Soc'y of Jesus*, 196 F.3d 940, 945 (9th Cir. 1999); *see also Our Lady of Guadalupe Sch. v. Morrissey-Berru*, 140 S. Ct. 2049, 2060

DEFENDANTS' REPLY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT --
NO. 3:19-cv-05181-BHS

11

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

(2020). Courts can adjudicate matters dealing with churches if the dispute requires "neutral principles of law, developed for use" in those kinds of disputes, which includes generally applicable laws. *Jones v. Wolf*, 443 U.S. 595, 599-605 (1979); *Our Lady of Guadalupe*, 140 S. Ct. at 2060.

As explained, purchasing a health insurance plan is not an ecclesiastical decision but one about the involvement in the marketplace for health care, so the laws are generally applicable. Churches can refuse to purchase coverage for services to which they object, so they can still choose to practice and maintain their beliefs. Nothing prevents the negotiation for those services either. But Cedar Park cannot use this claim to make the State force private companies to create products on the market simply because it's what Cedar Park wants.

Nor does the law force Cedar Park to choose between purchasing coverage for abortion or purchase inferior health care services. Cedar Park clearly exercised a different choice when negotiating with Cigna. Defendants didn't even know about those negotiations until discovery, showing that they had no role in regulating Cedar Park's internal administration. Cedar Park cannot claim that a decision that they hid from the Defendants was somehow dictated by the Defendants. This claim fails.

Cedar Park argues that Defendants' summary judgment motion did not address a claim that the conscience clause violates the Free Exercise Clause and religious autonomy by interfering with internal operations and treating religious health care entities more favorably than churches. Dkt. # 113 at 1 n.2. Not so. That motion, the Defendants' response to Cedar Park's summary judgment motion, and this brief expressly argued that those statutes read together do not violate the Free Exercise Clause and religious autonomy, and they make clear that the end result is that all claims should be dismissed with prejudice. *See, e.g.*, Dkt. # 104 at 2, 21-22. Simply reading the motion defeats the argument.

### III.    CONCLUSION

The Court should dismiss this case with prejudice.

DEFENDANTS' REPLY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT --
NO. 3:19-cv-05181-BHS

12

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

1    DATED this 7th day of April 2023.

2                                    ROBERT W. FERGUSON
                                     Attorney General
3
                                     */s/ Paul M. Crisalli*
4                                    PAUL M. CRISALLI, WSBA #40681
                                     Assistant Attorney General
5                                    Complex Litigation Division
                                     800 Fifth Avenue, Suite 2000
6                                    Seattle, WA  98104-3188
                                     (206) 464-7744
7                                    Paul.Crisalli@atg.wa.gov

8                                    MARTA DELEON, WSBA #35779
                                     Senior Assistant Attorney General
9                                    Government Compliance & Enforcement Division
                                     1125 Washington Street SE
10                                   Olympia, WA  98504-0100
                                     (360) 664-9006
11                                   Marta.Deleon@atg.wa.gov
                                     *Attorneys for Defendants*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26