Honorable Benjamin H. Settle

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

CEDAR PARK ASSEMBLY OF GOD OF KIRKLAND, WASHINGTON,

　　　　Plaintiff,

　　v.

MYRON "MIKE" KREIDLER, in his official capacity as Insurance Commissioner for the State of Washington; JAY INSLEE, in his official capacity as Governor of the State of Washington,

　　　　Defendants.

Civil No. 3:19-cv-05181

**PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

**NOTING DATE: APRIL 7, 2023**

# TABLE OF CONTENTS

Table of Authorities ................................................................................................................ ii

Introduction .............................................................................................................................. 1

Argument .................................................................................................................................. 2

I.    The conceded facts show the abortion mandate restricts the Church's freedom, and has exemptions that undermine Defendants' asserted purposes. ....................... 3

    A.    SB 6219 burdens the Church's religious beliefs. ..................................................... 3

        1.    All the ways carriers may provide access to abortion and abortifacients violate Cedar Park's religious beliefs. ..................................... 3

        2.    Non-religious carriers cover objectionable items as part of religious objectors' plan. ................................................................................................ 5

        3.    The alternative plans aren't comparable. .................................................... 5

        4.    Kaiser's willingness to offer a plan excluding abortion is supported by the record. ................................................................................................... 6

    B.    Defendants concede SB 6219 has exemptions but misstate the law on general applicability in a failed attempt to excuse them. ..................................... 7

        1.    SB 6219's exemptions undermine its purposes. .......................................... 7

        2.    The Conscience Clause is not generally applicable. ................................... 9

    C.    Defendants misstate the law on neutrality. ............................................................ 10

II.    Defendants misstate the law on Church Autonomy. .......................................................... 11

III.    Seven exemptions undermine Defendants' asserted compelling interest, and the abortion mandate is not the least restrictive means of accomplishing its purported interest. ................................................................................................................................... 12

Conclusion ................................................................................................................................ 13

Certificate of Service ............................................................................................................... 14

# TABLE OF AUTHORITIES

**Cases**

*Black Hawk v. Pennsylvania*,
  225 F.Supp.2d 465 (D. Pa. 2002) .................................................................................. 8

*Burwell v. Hobby Lobby*,
  573 U.S. 682 (2014) ................................................................................................. 3, 12

*Church of the Lukumi Babalu v. City of Hialeah*,
  508 U.S. 520 (1993) ....................................................................................................... 12

*Fraternal Order of Police Newark Lodge No. 12 v. City of Newark*,
  170 F.3d 359 (1999) ....................................................................................................... 8

*Fulton v. City of Philadelphia*,
  141 S. Ct. 1868 (2021) ......................................................................................... 3, 10, 12

*Hosanna-Tabor Evangelical Lutheran Church and School v. EEOC*,
  565 U.S. 171 (2012) ..................................................................................................... 11

*Jones v. Wolf*,
  443 U.S. 595 (1979) ..................................................................................................... 11

*McElyea v. Babbit*,
  833 F.2d 196 (9th Cir. 1987) ......................................................................................... 3

*Our Lady of Guadalupe School v. Morrissey-Berru*,
  140 S. Ct. 2049 (2020) ............................................................................................. 2, 11

*Radar v. Johnston*,
  924 F.Supp. 1540 (D. Neb. 1996) .................................................................................. 8

*Roman Catholic Diocese of Brooklyn v. Cuomo*,
  141 S. Ct. 63 (2020) ........................................................................................................ 8

*Sharpe Holdings, Inc. v. United States Department of Health and Human Services*,
  801 F.3d 927 (8th Cir. 2015) ......................................................................................... 4

*Skyline Wesleyan Church v. Cal. Dep't of Managed Health Care*,
  968 F.3d 738 (9th Cir. 2020) ..................................................................................... 4, 6

*Tandon v. Newsom*,
  141 S. Ct. 1294 (2021) ............................................................................................... 2, 7

*Thomas v. Review Board of the Indiana Employment Security Division*,
  450 U.S. 707 (1981) ..................................................................................................... 13

PLAINTIFF'S REPLY IN SUPPORT
OF PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT

ii

ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, Arizona 85260
(480) 444-0020

*Trinity Lutheran Church of Columbia, Inc. v. Comer*,
  137 S. Ct. 2012 (2017) .................................................................................................. 11

*Ward v. Polite*
  667 F.3d 727 (6th Cir. 2012) ........................................................................................... 8

**Other Authorities**

Wash. Op. Att'y Gen. 5 (2002) ................................................................................................ 4, 10

PLAINTIFF'S REPLY IN SUPPORT
OF PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT

iii

ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, Arizona 85260
(480) 444-0020

## INTRODUCTION

After multiple rounds of briefing, Defendants don't dispute or have conceded the following operative facts:

(1) Cedar Park's religious beliefs prohibit it from facilitating abortion through its insurance plan; Opp'n to Pl.'s MSJ 5, ECF No. 112 (Opp'n) ("It is undisputed that Cedar Park is opposed to abortion and use of certain contraceptives because of its religious beliefs, though…Cedar Park's opposition to 'any facilitation' of abortion is inconsistent"); *Id.* at 1 ("Cedar Park now claims that it is forced to facilitate abortions because it would indirectly pay for abortion or because its enrollees would still have access to abortions."); Sec. Am. Verified Compl. ¶¶ 29, 63, 131, ECF No. 46, as supplemented by ECF No. 52-1 ("VC"); Smith Decl. ¶ 6, ECF No. 50;

(2) SB 6219 and RCW § 48.43.065 ("Conscience Clause") require Cedar Park employees to receive access to abortion and abortifacients as a result of any suitable group or level-funded insurance plan the church purchases. Opp'n 10 ("The fact that a carrier will provide access to services does not mean that Cedar Park will be paying indirectly for anything."), Defs.' MSJ 20, ECF No. 104 ("Any facilitation or discussion of access occurs between the enrollee and either the carrier or another third party."); *Id.* at 1 (SB 6219 leads to Cedar Park's employees getting "access to services to which Cedar Park objects."); Tocco Dep. 105, ECF No. 93-4 ("the plan actually provides for [abortion] access.");

(3) SB 6219 exempts health plans that provide maternity coverage. Opp'n 12–13 ("These exemptions are not comparable [and] . . . *[m]ost* . . . do not provide for maternity coverage." (emphasis added)); Nollette Dep., 53–54; 58–59, ECF No. 93-5; and

(4) The Conscience Clause contains an exemption for only religious health care organizations, which does not require their employees to receive access to objectionable items as a result of the organizations' health plans. *Id.* at 15 ("While religious providers and carriers can exercise a conscience objection, the enrollees still need to be provided information about how to access services" (but not actual access)).

PLAINTIFF'S REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

1

Defendants also effectively concede that requiring the Church's carrier to provide Cedar Park employees access to abortion and abortifacients is not the least restrictive way the State can accomplish its purpose of increasing women's access to health care. Opp'n 18 (arguing the alternatives the Church suggests are not as effective but not contending SB 6219 is the least restrictive alternative).

These facts are all that are required to show SB 6219 and the Conscience Clause ("Statutes") are unconstitutional under the Free Exercise Clause and the Church Autonomy Doctrine. Defendants attempt to distinguish *Tandon v. Newsom*, 141 S.Ct. 1294, 1296 (2021), by arguing the law there specifically mentions religious organizations, wrongly inferring there must be an intent to discriminate to show lack of general applicability. Opp'n 15. But Defendants cite no language in *Tandon* or any other case supporting their reading and multiple cases have held a law was not generally applicable even though it did not specifically regulate religion. Defendants also mischaracterize *Our Lady of Guadalupe School v. Morrissey-Berru*, 140 S.Ct. 2049, 2055 (2020), as holding the Church Autonomy Doctrine does not apply to generally applicable laws. *Id.* at 19. But only the dissent made that assertion and SB 6219 and the Conscience Clause aren't neutral and generally applicable because they have exemptions and discriminate against religious organizations that aren't in the health care industry.

The undisputed facts and caselaw show the Statutes are unconstitutional as a matter of law under the Free Exercise Clause and the Church Autonomy Doctrine. Plaintiff's Motion for Summary Judgment should be granted.

**ARGUMENT**

While the parties differ on the legal implications of the undisputed facts, binding Supreme Court precedent shows Defendants violated Cedar Park's free exercise and church autonomy rights as a matter of law.

PLAINTIFF'S REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

2

ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, Arizona 85260
(480) 444-0020

I. **The conceded facts show the abortion mandate restricts the Church's freedom, and has exemptions that undermine Defendants' asserted purposes.**

   A. **SB 6219 burdens the Church's religious beliefs.**

      1. **All the ways carriers may provide access to abortion and abortifacients violate Cedar Park's religious beliefs.**

Defendants contend "[t]he fact that a carrier will provide access to services [a crucial concession showing facilitation] does not mean that Cedar Park will be paying indirectly for anything. Carriers can utilize other methods for enrollees to receive the services." Opp'n 10. Those other methods include payment through overhead, distributing the risk to all or some members of the group health plan, or payment through a third party. *Id.* at 3. All those violate Cedar Park's religious beliefs, as the result is still the same: the Church's purchase of group or level-funded health insurance facilitates providing abortion services to plan participants that they otherwise would lack. VC ¶¶ 29, 63, 131; Smith Decl. ¶ 6.[1]

Defendants also contend that "[e]ven if Kaiser, or Cigna, or some other private carrier used a portion of the monies paid by Cedar Park to pay for services they found objectionable, this does not violate Cedar Park's rights" because it entered into the health insurance market "as a matter of choice." Opp'n 9. But the Church had a plan that complied with its convictions for years and it has no choice because the Affordable Care Act requires it to have health insurance for its more than 50 employees, *Burwell v. Hobby Lobby*, 573 U.S. 682, 696 (2014). And the Church's beliefs require it to provide maternity coverage. VC ¶ 45. Moreover, the Church, not the State, determines whether particular conduct violates its beliefs. The Supreme Court rejected the government's similar argument in *Fulton v. City of Philadelphia*: "[R]eligious beliefs need not be acceptable, logical, consistent, or comprehensible to others in order to merit First Amendment protection." 141 S.Ct. 1868, 1876 (2021). The Attorney General acknowledged the inability to determine the Church's beliefs in this context in a 2002 opinion: "direct participation in purchasing coverage for

---

[1] Contrary to Defendants' implications, verified complaints are admissible as evidence in summary judgment briefing. *McElyea v. Babbit*, 833 F.2d 196, 197 (9th Cir. 1987).

objectionable services dilutes their ability to deliver strong messages on their religious or moral views by giving the appearance that the objecting institution does not consistently follow its own announced principles. *We cannot easily assess whether a more indirect payment system would reduce or eliminate these objections*." Wash. Op. Att'y Gen. 5 (2002) (emphasis added).

Yet Defendants say *Hobby Lobby*'s finding that requiring companies to cover abortifacients substantially burdened religious beliefs is distinguishable because Cedar Park "is not required to purchase coverage of services that violate its religion." Opp'n 11. But SB 6219's injury commenced when it took away Cedar Park's religiously-complying health plan. And Defendants concede that all the insurance alternatives they say are comparable provide Cedar Park's employees with access to abortion, at least indirectly. That facilitation violates the Church's beliefs which is all that is required to show a burden under *Skyline Wesleyan Church v. California. Department of Managed Health Care*, 968 F.3d 738, 747 (9th Cir. 2020). That facilitation also neutralizes Defendants' attempt to distinguish *Skyline* because it "never addressed the scenario where an employer can negotiate for a plan that excludes coverage for services to which it objects." Opp'n 11. There is no comparable plan available to Cedar Park that doesn't facilitate abortion.

Defendants claim Cedar Park's beliefs prohibiting facilitation of abortion are unlike those protected in *Sharpe Holdings, Inc. v. United States Department of Health and Human Services*, 801 F.3d 927 (8th Cir. 2015), *vacated on other grounds*, 2016 WL 2842448 (May 16, 2016), because "Cedar Park does not have to submit an accommodation request to the Insurance commissioner or any other government agency." Opp'n 11. But *Sharpe* held that the mandated notice by the religious employer "trigger[ed] the provision of objectionable coverage by their [third party administrators], making them complicit in conduct that violates their religious beliefs." *Sharpe*, 801 F.3d at 939. Likewise, Cedar Park's coerced purchase of a health plan covering abortion triggers the provision of the objectionable coverage.[2]

---

[2] The one-paragraph opinion that granted, vacated, and remanded *Sharpe*, 2016 WL 2842448, merely said the Government could not fine the plaintiff even though it never provided the required notice of its religious beliefs because the government had constructive notice. And the factual

| PLAINTIFF'S REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT | 4 | ALLIANCE DEFENDING FREEDOM<br>15100 N. 90th Street<br>Scottsdale, Arizona 85260<br>(480) 444-0020 |
|---|---|---|

### 2. Non-religious carriers cover objectionable items as part of religious objectors' plan.

Defendants mischaracterize Ms. Tocco's testimony that "the plan actually provides for access" as being limited to Kaiser's plan. Opp'n 9. That answer was part of a line of questions that started with, "When you're reviewing a plan that excludes an objectionable service, are there specific ways that you've seen that the plan can comply with subsection (3)(b) [of § 48.46.065]?" Tocco Dep. 100. Answer: "(3)(b) is designed to ensure that even if a given benefit isn't included in their benefits package, they can still have access to it." *Id.* at 101. Tocco then testified that employees receive notice that they "still have a right to access this benefit, and here's how you go about doing that….[T]hey provide written notice in the plan documents." *Id.* at 102. That testimony alone shows SB 6219 requires health plans to facilitate abortion coverage through the plan documents in violation of the Church's beliefs. Several questions later, Tocco confirmed that Kaiser is "an example of a health carrier that offers a plan that doesn't cover abortion," but then corrected herself to say, "whose employer doesn't cover. The plan actually provides for access." *Id.* at 105. She did not limit that correction to Kaiser and the context of her statement makes clear that a non-religious carrier's plan must provide access to abortion even if the employer objects to covering it. Regardless, that's what the plain language of the conscience statute requires.

Defendants also summarily argue the Court should disregard other evidence showing the Cigna alternatives would have included abortion and abortifacients as part of the plans it offered for purchase because "Cedar Park has no personal knowledge to make those assertions." Opp'n 10. Yet Defendants acknowledge there is email evidence from Cedar Park's broker supporting these assertions, *see* Defs.' MSJ 8–9. And the broker has now provided sworn testimony confirming that evidence. *See* Hansen Decl.

### 3. The alternative plans aren't comparable.

Defendants don't dispute Cedar Park's contention that self-insurance is not comparable to

---

premise underlying that statement eventually changed. *See* Pl.'s Opp'n to Defs.' MSJ 9 n.7, ECF No. 113.

PLAINTIFF'S REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

5

its pre-SB 6219 plan, Pl.'s MSJ 4, ECF No. 103, and concede that Cedar Park determined the Cigna plans were not comparable "because of speculated increased costs, potential complaints from employees about changing, and Cigna's different method of providing services." Opp'n 6. While a helpful concession, this description of the inadequacies of the Cigna plans is incomplete. The Cigna plans had higher future premiums, and forced employees to find new providers. *See* Orcutt Dep. 64–67, ECF No. 92; Orcutt Decl. ¶¶ 20–22, 29, ECF No. 94-1. And Kaiser had better coinsurance, lower deductibles, and better access to preventive care. Orcutt Decl. ¶¶ 15–17.

Defendants ignore these disadvantages except they attempt to dismiss the cost increase as "speculated." But sworn testimony and the broker's proposals (that Defendants rely on) prove that the very next year, Cigna did not even quote Cedar Park a fully insured plan and the price for a level-funded plan exceeded Kaiser's fully insured bid. Orcutt Decl. ¶¶ 17, 25. Defendants try to explain away this inferior coverage by simply stating it was "unrelated to [Cedar Park's] religious beliefs." Opp'n 9. But that is irrelevant since all Cedar Park needs to show to establish an injury is that it was "worse off than it had been before the" state's abortion mandate. *Skyline*, 968 F.3d at 748–49.

### 4. Kaiser's willingness to offer a plan excluding abortion is supported by the record.

Defendants don't dispute Kaiser excluded abortion from the Church's plan but began including it after SB 6219 took effect in 2019. Opp'n 5 n.4. This shows SB 6219 caused the plan loss and it is confirmed by an August 2014, 2019, email from the Church's Broker describing an "update from Kaiser": "KP will not be accommodating any abortion exclusions for fully insured groups. Upon review of SB 6219, fully insured health plans issued after 1/1/2019 that cover maternity care or services must cover substantially equivalent coverage for abortion." Hansen Decl. ¶ 16.

The Statutes' burden on the Church's religious freedom is undisputed.

| PLAINTIFF'S REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT | 6 | ALLIANCE DEFENDING FREEDOM<br>15100 N. 90th Street<br>Scottsdale, Arizona 85260<br>(480) 444-0020 |
|---|---|---|

**B.    Defendants concede SB 6219 has exemptions but misstate the law on general applicability in a failed attempt to excuse them.**

**1.    SB 6219's exemptions undermine its purposes.**

Cedar Park's motion for summary judgment shows that at least seven exemptions to SB 6219 include insurance policies that cover maternity, contraception, or both. Pl.'s MSJ 14–15. Defendants don't mention the exemptions for federal funding or policies that don't cover maternity. And they concede the Conscience Clause gives a more favorable exemption to religious health care entities than other religious organizations. Opp'n 15.

Defendants also concede SB 6219 exempts some insurance plans that provide maternity coverage. *Id*. at 12–13 ("*Most*. . .do not provide for maternity coverage."). But they argue that the fact "[t]hat the preexisting statute defining health plans excludes certain types of specific insurance products from its definition…does not mean that SB 6219 contains secular exemptions that undermine the interests in providing women better access to health benefits." *Id*. at 14. That sophistry contradicts the facts. The definition of health plans in RCW § 48.43.005 must be read with SB 6219 because, in Defendants' words, "[t]he Legislature…is presumed to be familiar with prior enactments." Defs.' MSJ 16. And Defendants' 30(b)(6) witness testified that SB 6219's reference to "health plan" is defined by RCW § 48.43.005(31). Tocco Dep. 35–36.

Defendants argue a law only fails general applicability if it "target[s] health plans only for religious entities." Opp'n 14. But the test isn't that narrow. The Supreme Court recently clarified that laws "are not neutral and generally applicable. . .whenever they treat *any* comparable secular activity more favorably than religious exercise. *It is no answer that a State treats some comparable secular businesses or other activities as poorly as or even less favorably than the religious exercise at issue.*" *Tandon,* 141 S.Ct. at 1296 (emphasis added).

Citing no authority, Defendants say *Tandon* is distinguishable because the law struck down there "expressly restricted religious services." Opp'n 15. But this is just another way to read a non-existent religious targeting requirement into the general applicability test. *Tandon* makes clear that

no such requirement exists by citing with approval Justice Kavanaugh's concurrence in *Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S.Ct. 63, 73 (2020), which explained that "once a State creates a favored class of businesses. . . the State must justify why houses of worship are excluded from that favored class." *Id. See* Pl.'s Opp'n 11 (showing singling out religion is not part of the general applicability test).

There is no case holding that a law is generally applicable so long as it doesn't expressly restrict religion. But there are cases showing otherwise. *Fraternal Order of Police Newark Lodge No. 12 v. City of Newark,* 170 F.3d 359 (1999) (Alito, J.) struck down the City of Newark's policy prohibiting Muslim police officers from growing beards for religious reasons even though the policy didn't expressly limit religious facial hair. 170 F.3d at 360.[3]

Similarly, a university's policy that did not mention religion was not generally applicable because it allowed students in the counseling program to refer practicum clients for various reasons but not for religious convictions. *Ward v. Polite*, 667 F.3d 727, 740 (6th Cir. 2012). And in *Waln v. Dysart School District*, 54 F.4th 1152, 1157–59 (9th Cir. 2022), a school district's policy prohibiting students from decorating their graduation caps was not generally applicable because it wouldn't allow the Native American plaintiff to wear a religious eagle feather, but allowed a student in another school to wear a breast cancer awareness sticker on his cap. The policy did not mention religion. *See also Radar v. Johnston*, 924 F.Supp. 1540, 1551–52 (D. Neb. 1996) (requirement that freshman live on campus did not expressly regulate religious students who objected, but was not generally applicable because it allowed, *inter alia*, three categorical secular exemptions); *Black Hawk v. Penn.*, 225 F.Supp.2d 465, 474–75 (D. Pa. 2002) (state law requiring the payment of a fee for keeping bears did not expressly restrict religious conduct but was still not

---

[3] Defendants try to distinguish *Fraternal Order of Police* because "there was no exemption for religion, while there is an exemption here." Opp'n 15. But Defendants' "exemption" still requires health plans to facilitate abortion in violation of Cedar Park's religious beliefs. And under Defendants' theory, the City of Newark would have prevailed if it had some sort of religious exemption, even if it didn't allow Muslims to wear beards.

PLAINTIFF'S REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

8

generally applicable because it allowed various secular exemptions).

In their neutrality argument Defendants also argue that the exemptions do not undermine general applicability because they "relate to … specific types of insurance products that only incidentally include health care services." Opp'n 12. But that consideration is not implicated by the plans exempted because they affect federal funding, do not cover maternity, or are purchased by religious employers in the health care business. Moreover, one of SB 6219's asserted interests is that "a woman's …type of insurance should [not] prevent her from having access to a full range of reproductive care, including contraception and abortion." Defs.' MSJ 4. All of the seven types of exempted insurance policies implicate the Statute's purported interest in "better access to health benefits."[4]

Defendants next argue that the insurance products exempted "are not designed to be comprehensive health plans due to duration or very limited benefits." Opp'n 12. Once again, this consideration does not apply to religious medical provider plans or those that might affect federal funding and don't cover maternity. And Defendants don't explain how their asserted interest in promoting women's reproductive health is unaffected by policies covering only certain types of women's health care or that are limited in duration. No insurance policy covers everything indefinitely.

Finally, Defendants claim some of the exemptions "are particular health care options funded by entities the Insurance Commissioner does not have jurisdiction over (like Medicare)." Defs.' MSJ 16. But all of the seven exemptions apply to plans that *are* regulated by the Commissioner, including the *supplemental* plans. Nollette Dep. 42–43.

**2.     The Conscience Clause is not generally applicable.**

The Conscience Clause exempts religious health care organization employee health plans from facilitating abortion coverage. Defendants concede all they must do is inform employees that

---

[4] The exempted plans also compromise SB 6219's other asserted purposes which Defendants summarize as "providing essential care for women and promoting opportunities for women to participate in society equally." Opp'n 17.

PLAINTIFF'S REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

9

ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, Arizona 85260
(480) 444-0020

1  objectionable items like abortion are not covered. Opp'n 15. That's markedly less coercive than

2  the provision partially protecting churches which requires the carrier to actually ensure employees

3  can access the objectionable services. *See* § I(A)(1).

4       C.   **Defendants misstate the law on neutrality.**

5       Defendants contend SB 6219's multiple secular exemptions do not show it favors secular

6  conduct in violation of the Free Exercise Clause, because the exemptions only incidentally include

7  health care services, are not comprehensive because of limited duration or very limited benefits,

8  or are options the Insurance Commissioner lacks jurisdiction over. Opp'n 12. But as shown above,

9  these excuses do not eliminate the fact that the exemptions favor secular conduct, which is all that

10 matters.

11      And Defendants claim there's no evidence that SB 6219 proscribes more conduct than

12 necessary in violation of the Free Exercise Clause, speculating that Cedar Park employees don't

13 necessarily share its beliefs about abortion. Defs.' Opp. 13. But all employees must sign an

14 agreement that they share the Church's beliefs, VC ¶¶ 25–32, and Defendants' speculation isn't

15 sufficient to negate that fact.

16      Defendants concede the Conscience Statute's more favorable treatment of "religious health

17 providers, health carriers, and health facilities" but argue it doesn't affect neutrality because the

18 Ninth Circuit held that discrimination doesn't violate Equal Protection. Opp'n 13. But

19 "[g]overnment fails to act neutrally when it proceeds in a manner *intolerant of religious beliefs*."

20 *Fulton*, 141 S.Ct. at 1877 (emphasis added). The AG's office previously confirmed the Conscience

21 Clause's lack of tolerance when it conceded that "[w]hile some employers may object to even

22 indirect participation, the Legislature balanced the competing values of religious and moral

23 autonomy on the one hand and access to care on the other by providing a limited right of

24 conscientious objection" in RCW § 48.43.065. Wash. Op. Att'y Gen. 5 (2002). And Defendants

25 still haven't explained how a religious hospital's employee health plan is any different than a

26 church's.

27

28 PLAINTIFF'S REPLY IN SUPPORT   10   ALLIANCE DEFENDING FREEDOM
   OF PLAINTIFF'S MOTION FOR         15100 N. 90th Street
   SUMMARY JUDGMENT                  Scottsdale, Arizona 85260
                                     (480) 444-0020

1    The Washington Legislature was intolerant of Cedar Park's religious beliefs because it refused to exempt them from SB 6219 several times. Ignoring the authority Plaintiff cites indicating SB 6219's legislative history shows intentional discrimination (Pl.'s MSJ 19) and citing none of their own, Defendants baldly contend the fact that the legislature specifically refused to amend SB 6219 to include protection for religious organizations three times is "irrelevant." Opp'n 14.

SB S219 is not neutral so it is subject to strict scrutiny.

**II.    Defendants misstate the law on Church Autonomy.**

Defendants assert that generally applicable laws are not subject to the Religious Autonomy Doctrine. Opp'n 19. But the Supreme Court held just the opposite: "This is not to say that any application of a valid and neutral law of general applicability is necessarily constitutional under the Free Exercise Clause." *Trinity Lutheran Church of Columbia, Inc. v. Comer*, 137 S.Ct. 2012, 2021 n.2 (2017) (citing *Hosanna-Tabor Evangelical Lutheran Church and Sch. v. EEOC*, 565 U.S. 171, 190 (2012)).

None of the cases Defendants cite support their assertion. In *Our Lady of Guadalupe,* that was the position of Justice Sotomayor's dissent. 140 S.Ct. at 2076. General applicability was not even mentioned by the majority opinion. And *Jones v. Wolf*, 443 U.S. 595, 602 (1979), merely held that courts can apply neutral principles of law to resolve church property disputes "so long as it involves no consideration of doctrinal matters." *Jones* doesn't mention generally applicable laws either.

Defendants also make the unsupported assertion that "the purchase of a health plan is not an ecclesiastical decision." Opp'n 19. But the Church's testimony, VC ¶¶ 29–41 and the many cases protecting religious employers' right to provide employee health plans consistent with their pro-life beliefs show it is indeed a "matter[ ] of faith and doctrine…closely linked [to] matters of internal government." *Our Lady of Guadalupe*, 140 S.Ct. at 2061. *See*, Pls.' Opp'n 20.

PLAINTIFF'S REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

11

ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, Arizona 85260
(480) 444-0020

1  **III.   Seven exemptions undermine Defendants' asserted compelling interest, and the abortion mandate is not the least restrictive means of accomplishing its purported interest.**

Defendants claim that "[t]he State has a compelling . . . interest in providing better access to health benefits." Opp'n 17. But "broadly formulated interests" are not compelling and Defendants cannot just show they have "a compelling interest in enforcing [their] . . . policies generally, but [must also have] such an interest in denying an exception to [Cedar Park]." *Fulton*, 141 S.Ct. at 1881 (cleaned up). Defendants do not even attempt to show why exempting Cedar Park's health insurance plan will jeopardize its interest in "promoting public health caused by unintended pregnancies" any more than the exemptions it already provides do.

Defendants insist the admitted lack of complaints about abortion and abortifacient coverage before SB 6219 is a "red herring." Opp'n 17. But that lack of complaints makes it impossible for Defendants to carry their burden of proving an actual problem exists, that it is caused by "the particular claimant[s] whose sincere exercise of religion is being substantially burdened," and that the law will solve it. *Hobby Lobby*, 573 U.S. at 726. Nothing in the legislative record or elsewhere suggests churches exempting abortion and abortifacients from health plans led to their employees not getting access to the medical care they wanted or needed.

Defendants also argue the "exemptions in the definition of 'health plan'" do not undermine their asserted compelling interest because they "exist for separate policy reasons—like they are areas of insurance that do not focus on health care, or are health plans not regulated by the State or OIC." Opp'n 17–18. But Plaintiff has already demonstrated those reasons don't hold water. *See* § I(B)(1). An interest is not compelling when the government "fails to enact feasible measures to restrict other conduct producing substantial harm or alleged harm of the same sort." *Church of the Lukumi Babalu v. City of Hialeah*, 508 U.S. 520, 546–47 (1993).

Finally, Washington has many ways to accomplish its asserted interests without compelling churches to violate their beliefs. Pl.'s MSJ 21–22. Defendants acknowledge these options yet make no attempt to show the Statutes employ the least restrictive means. Opp'n 18. *See Thomas v. Rev.*

| PLAINTIFF'S REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT | 12 | ALLIANCE DEFENDING FREEDOM<br>15100 N. 90th Street<br>Scottsdale, Arizona 85260<br>(480) 444-0020 |
|---|---|---|

*Bd. of the Ind. Emp. Sec. Div.*, 450 U.S. 707, 718 (1981) (the government must also show the law "is the least restrictive means of achieving" its interests).

The Statutes fail strict scrutiny.

## **CONCLUSION**

Cedar Park's motion for summary judgment should be granted.

Respectfully submitted this 7th day of April, 2023,

*s/Kevin H. Theriot*
Kevin H. Theriot (AZ Bar #030446)*
ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, Arizona 85260
Telephone: (480) 444-0020
Facsimile: (480) 444-0025
Email: ktheriot@adflegal.org

David A. Cortman (GA Bar #188810)*
ALLIANCE DEFENDING FREEDOM
1000 Hurricane Shoals Rd. NE
Suite D-1100
Lawrenceville, GA 30040
Telephone: (770) 339-0774
Email: dcortman@adflegal.org

*Attorneys for Plaintiff Cedar Park Assembly of God of Kirkland, Washington*
* Admitted *pro hac vice*

# CERTIFICATE OF SERVICE

I hereby certify that on April 7, 2023, I electronically filed the above document with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following:

Paul M. Crisalli
ATTORNEY GENERAL'S OFFICE
800 5th Ave
Ste 2000
Seattle, WA 98104

Marta U. DeLeon
ATTORNEY GENERAL'S OFFICE
PO Box 40100
Olympia, WA 98504
*Counsel for Defendants*

DATED: April 7, 2023         *s/Kevin H. Theriot*
Kevin H. Theriot (AZ Bar #030446)*
ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, Arizona 85260
Telephone: (480) 444-0020
Facsimile: (480) 444-0025
Email: ktheriot@adflegal.org

*Attorney for Plaintiff Cedar Park Assembly of God of Kirkland, Washington*

* Admitted *pro hac vice*

PLAINTIFF'S REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT      14

ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, Arizona 85260
(480) 444-0020