Honorable Benjamin H. Settle

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| CEDAR PARK ASSEMBLY OF GOD OF KIRKLAND, WASHINGTON,<br><br>Plaintiff,<br><br>v.<br><br>MYRON "MIKE" KREIDLER, in his official capacity as Insurance Commissioner for the State of Washington; JAY INSLEE, in his official capacity as Governor of the State of Washington,<br><br>Defendants. | Civil No. 3:19-cv-05181<br><br>**DECLARATION OF**<br>**JAMI M. HANSEN** |

Jami M. Hansen, upon oath and affirmation, hereby deposes and says:

1. I have personal knowledge of all the facts in this declaration and I submit them as a supplement to my June 13, 2020 declaration for this case.

2. I have consulted with Cedar Park to implement and manage its employee benefits program for 14 years and have extensive knowledge of their health care insurance plan needs and coverages.

3. For the 2019–20 plan year, eight carriers were invited to bid fully insured plans. Three chose not to bid, and 3 were uncompetitive—leaving only Kaiser Permanente and Cigna.

4. Excepting only self-insurance, all of the plans available to and suitable for Cedar Park that I was aware of for the 2019–20 plan year would have provided Cedar Park employees

DECLARATION OF
JAMI M. HANSEN

1

ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, Arizona 85260
(480) 444-0020

access to abortion and abortion causing drugs through, or as a result of, the Church's plan.

5. Since the 2019–20 plan year, excepting only self-insurance, all of the plans available to and suitable for Cedar Park that I was and am aware of provide Cedar Park employees access to abortion and abortion causing drugs through, or as a result of, the Church's plan.

6. Employer-sponsored self-funded insurance is the only possible option available to Cedar Park that completely exempts abortion and abortifacients and does not provide abortion and abortion causing drugs through, or as a result of, the Church's plan.

7. In 2019 I advised Cedar Park that Cigna could not in fact completely exclude abortion and abortifacients in their group and level-funded plans like it could for self-insurance. They would still be part of Cedar Park's health insurance plan because of SB 6219's requirements.

8. For example, if abortifacients were excluded, enrollees in Cedar Park's health plan would use the same insurance card to obtain abortifacients as non-objectionable drugs. *See* August 8, 2010 email from Hansen to Orcutt, attached as Exhibit 1.

9. In group and level-funded plans, health plan documents would include notice to Cedar Park employees of how to obtain abortion and abortifacients as part of their coverage.

10. Before SB 6219 went into effect, Kaiser Permanente and most other carriers were willing and able to completely exclude abortions and abortifacients for churches.

11. With a level-funded plan like Cigna's, Cedar Park would pay more over time because Cigna typically raises the second year premiums to make up for the prior year's loss. For example, Cigna's 2020–21 bid increased the level-funded premiums because of Cedar Park's high utilization of insurance during 2019–20.

12. With a self-insured plan, Cedar Park would have had to purchase a Stop Loss Insurance Policy to cover any insurance costs for an individual Cedar Park employee during a given calendar over a set amount—usually $100,000. After a year like 2019–20, when Cedar Park had a covered person spend upwards of $1,000,000, the Stop Loss Insurance Company would raise the premiums significantly the next year.

13. A self-insured plan's second year costs for 2020–21 would have likely been at least an additional $200,000 more than the $243,125 estimated 2019-20 cost. And by year three (2021–22) an additional $200,000 because of claims exceeding $1,840,000 for one of Cedar Park's employee's children in plan years from 2019 through 2021.

14. I was concerned that Cedar Park would not even be able to get the Stop Loss Insurance needed for a self-insured plan after a 2019–20 plan year $1,000,000 claim for that child.

15. SB 6219's abortion mandate caused much confusion among health insurance carriers, brokers, and purchasers. In 2019 it was nearly impossible, and even since then it's been difficult, to get clear answers on whether plans exclude abortion and abortifacients.

16. My August 14, 2019 email to the Church, attached as Exhibit 2, was an "update from Kaiser" taken directly from my correspondence with that carrier's representative whose exact words were: "KP will not be accommodating any abortion exclusions for fully insured groups. Upon review of SSB 6219, fully insured health plans issued after 1/1/2019 that cover maternity care or services must cover substantially equivalent coverage for abortion."

I hereby declare under penalty of perjury, including pursuant to 28 U.S.C. § 1746, that the foregoing factual allegations are true and correct.

Executed on this 4th day of April, 2023 in Bellevue, Washington.

*s/ Jami M. Hansen*
Jami M. Hansen