The Honorable Benjamin H. Settle

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| CEDAR PARK ASSEMBLY OF GOD OF KIRKLAND, WASHINGTON,<br><br>Plaintiff,<br><br>v.<br><br>MYRON "MIKE" KREIDLER, et al.,<br><br>Defendants. | NO. 3:19-cv-05181-BHS<br><br>DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION FOR RULE 11 SANCTIONS<br><br>NOTE ON MOTION CALENDAR: APRIL 14, 2023 |

I.   INTRODUCTION

Cedar Park's motion for Rule 11 sanctions is an attempt to add yet another round of briefing on the merits to argue the well-established record. It raises no new points, but if anything, demonstrates why Defendants brought the Rule 11 motion in the first place.

In 2019, while litigating this case, Cedar Park negotiated with Cigna for plans that excluded coverage for abortion and certain contraceptives, and those plans were cheaper than the ones offered by Kaiser (that did not exclude the coverage). Cedar Park never mentioned these facts in the operative pleadings filed after these negotiations occurred, but instead alleged that there was "no viable option." Those allegations led the Ninth Circuit to incorrectly believe that, in 2019, "Cedar Park could not procure comparable replacement coverage." *Cedar Park Assembly of God of Kirkland, Wash. v. Kreidler*, 860 F. App'x 542, 543 (9th Cir. 2021). And

DEFENDANTS' RESPONSE TO
PLAINTIFF'S MOTION FOR RULE 11
SANCTIONS -- NO. 3:19-cv-05181-BHS

1

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

Cedar Park never corrected the record, but doubled-down, over and over, as if these negotiations meant nothing. It is because of these undisputed facts that Defendants moved for sanctions.

The Court should deny Cedar Park's motion. Defendants' motion was not frivolous, and its arguments were supported by the facts and the law.

## II.    RELIEF REQUESTED

The Court should deny Cedar Park's motion for Rule 11 sanctions and award sanctions as set forth in Defendants' motion for Rule 11 sanctions, Dkt. # 107.

## III.    FACTS

By this time, the Court knows the facts well and will be briefly summarized. In 2019, Cedar Park filed a suit alleging that Washington's Reproductive Parity Act, Senate Bill 6219, was unconstitutional. Dkt. # 1. Cedar Park's complaint focused on allegations that SB 6219 "forces Cedar Park to choose between violating state law and violating its deeply held religious beliefs by paying for abortion coverage;" that SB 6219 required churches and other religious employers to provide insurance coverage for abortion, against their religious beliefs; that it would cost $243,125 in additional costs to become self-insured to exclude coverage of abortion and certain contraceptives, which "is not a viable option;" and that offering group health insurance is Cedar Park's only viable option." *Id.*

Defendants have maintained throughout that SB 6219 did not prohibit Cedar Park from purchasing a plan that excluded coverage for abortion and certain contraceptives, and that Cedar Park could negotiate for a plan excluding coverage for services that Cedar Park believed to be contrary to its religious beliefs. But through subsequent complaints and pleadings here and before the Ninth Circuit, Cedar Park repeated that it was forced to choose between violating the law and purchasing a plan that provided coverage for abortion and certain contraceptives, contrary to its religious beliefs.

By at least June 10, 2019, Cedar Park knew that it had solicited eight bids for 2019-2020 plans, and that of the five who responded, two were competitive: Kaiser and Cigna. Dkt. # 92,

DEFENDANTS' RESPONSE TO
PLAINTIFF'S MOTION FOR RULE 11
SANCTIONS -- NO. 3:19-cv-05181-BHS

2

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

Ex. K at 227; Dkt. # 93-6 ¶ 8. That same day, Cedar Park received a benefits analysis and recommendation presentation providing two plans offered by Cigna that would accommodate Cedar Park's religious beliefs, a fully insured option and a level-funded option. Dkt. # 92, Ex. K. The presentation expressly stated that both would exclude abortion coverage. *Id.* Both options were cheaper than the negotiated rates for Kaiser's plan. *Id.*, Ex. A at 60-61.

Despite initial confusion, Cedar Park received multiple confirmations that both Cigna options excluded coverage for abortion and certain contraceptives. This includes emails from Cigna detailing how both self-funded and insured plans in Washington would exclude coverage for abortion for religious objections and an email responding to Cedar Park's point-blank question whether Cigna would exclude abortion and certain contraceptives with a "Yes." *Id.*, Ex. F. Cigna also informed Cedar Park that both the fully insured option and the level-funded would provide the exclusion.[1] Dkt. # 96-1 at 2.

Cedar Park knew this information. Its Pastor and CFO testified about reviewing the information before deciding to remain with Kaiser. *See* Dkt. # 92, Ex. B at 111, 113. In fact, Cedar Park, Pastor Smith, and its attorneys not only repeated the earlier incorrect facts but added under oath more misleading facts to imply that Kaiser was Cedar Park's only viable option.

When Defendants brought a renewed motion to dismiss in February 2023, pointing out these uncontroverted facts, Cedar Park argued that the case was not about it being forced to pay for abortion, but rather was about its employees learning about access to the objected services through third parties regardless whether Cedar Park paid for coverage for these services. This is unsupported by the record. Further, the CFO testified that his broker and others advised that Cigna could not in fact completely exclude abortion and contraceptives: "[o]ur broker and other professional advisers advised us that Cigna could not in fact completely exclude them and they would still be part of our health insurance plan because of SB 6219's requirements." Dkt. # 93-6

---

[1] Cedar Park did not initially produce another, cheaper offer from Cigna that was made in July 2019. Cedar Park produced that document after the Defendants served Cedar Park their motion for Rule 11 sanctions.

DEFENDANTS' RESPONSE TO
PLAINTIFF'S MOTION FOR RULE 11
SANCTIONS -- NO. 3:19-cv-05181-BHS

3

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

at 2. This statement is flatly contradicted by Cigna's emails, which the CFO received, stating that they would provide an exclusion for coverage of these services in both the fully insured and the level-funded options.

Defendants filed a motion for Rule 11 sanctions based on the uncontroverted fact that Cedar Park filed pleadings stating that it had no viable alternative but Kaiser and that it would cost an additional $243,125 to obtain a plan that excluded coverage for abortion and contraceptives. In truth, Cedar Park knew when it filed those pleadings that Cigna had offered multiple plans that excluded coverage for abortion and certain contraceptives and were cheaper than Kaiser's plan. Cedar Park never corrected this information. The Ninth Circuit ultimately relied on Cedar Park's false allegations as its core reasoning to hold that Cedar Park had sufficiently allege that it suffered an injury in fact traceable to the Defendants, which we now know to be wrong. It was not until discovery that Defendants learned about this information.

## IV.   ARGUMENT

### A.   Legal Standards

In the Ninth Circuit, Rule 11 sanctions can be imposed only when (1) a paper is filed with the court for an improper purpose; or (2) the paper is "frivolous." *CreAgri, Inc. v. Pinnaclife, Inc.*, No. 11-cv-6635-LHK, 2014 WL 2508386, at *5 (N.D. Cal. June 3, 2014) (citing *Intamin Ltd. v. Magnetar Techs., Corp.*, 483 F.3d 1328, 1338 (Fed. Cir. 2007)). "A 'frivolous' argument or claim is one that is 'both baseless and made without a reasonable and competent inquiry.'" *S. Bravo Sys., Inc. v. Containment Techs. Corp.*, 96 F.3d 1372, 1375 (Fed. Cir. 1996) (quoting *Townsend v. Holman Consulting Corp.*, 929 F.2d 1358, 1362 (9th Cir. 1990)).

When Rule 11 sanctions are party-initiated, the burden is on the moving party to demonstrate why sanctions are justified. *Tom Growney Equip., Inc. v. Shelley Irrigation Dev., Inc.*, 834 F.2d 833, 837 (9th Cir. 1987). Rule 11 sanctions are "an extraordinary remedy, one to be exercised with extreme caution," reserved for "rare and exceptional case[s] where the action is clearly frivolous, legally unreasonable or without legal foundation, or brought for an improper

DEFENDANTS' RESPONSE TO
PLAINTIFF'S MOTION FOR RULE 11
SANCTIONS -- NO. 3:19-cv-05181-BHS

4

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

purpose." *Operating Eng'rs Pension Tr. v. A-C Co.*, 859 F.2d 1336, 1344-45 (9th Cir. 1988). Nothing in Rule 11 or its history "supports the view that the Rule empowers the district court to impose sanctions on lawyers simply because a particular argument or ground for relief contained in a non-frivolous motion is found by the district court to be unjustified." *Golden Eagle Distrib. Corp. v. Burroughs Corp.*, 801 F.2d 1531, 1540-1541 (9th Cir. 1986). "[T]he fact that the court concludes that one argument or sub-argument in support of an otherwise valid motion, pleading, or other paper is unmeritorious does not warrant a finding that the motion or pleading is frivolous or that the Rule has been violated. *Id.* at 1541.

A "court must consider factual questions regarding the nature of the attorney's prefiling inquiry and the factual basis of the pleading." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 399 (1990). "[T]he imposition of a Rule 11 sanction is not a judgment on the merits of an action. Rather, it requires the determination of a collateral issue: whether the attorney has abused the judicial process, and, if so, what sanction would be appropriate." *Id.* at 396; *see Mogan v. Sacks, Ricketts & Case LLP*, No. 21-cv-08431-TSH, 2022 WL 119212, at *2 (N.D. Cal. Jan. 12, 2022). "Rule 11 should not be used to raise issues of legal sufficiency that more properly can be disposed of by a motion to dismiss or a motion for more definite statement or a motion for summary judgment." *Smith & Green Corp. v. Trs. of Constr. Indus. & Laborers Health & Welfare Tr.*, 244 F. Supp. 2d 1098, 1103-04 (D. Nev. 2003) (citing 5A Wright & Miller, *Federal Practice & Procedure* § 1336, at 97 (2d ed. 1990)); *see also Safe-Strap Co., Inc. v. Koala Corp.*, 270 F. Supp. 2d 407, 416 (S.D. N.Y. 2003).

This case is not analogous to the two cases Cedar Park cites for the legal standard. *Bradshaw v. City of Los Angeles*, No. 2:19-cv-06661-VAP-JCx, 2022 WL 18163432 (C.D. Cal. Sept. 28, 2022); *Evanston Ins. Co. v. Winstar Properties, Inc.*, No. 2:18-cv-07740-RGK-KES, 2021 WL 8314460, *2 (C.D. Cal. Dec. 14, 2021). In *Bradshaw*, the Defendants were sanctioned after doing little, if any investigation into the law, before bringing a frivolous motion for sanctions. 2022 WL 18163432, at *4-5. Defendants here obviously conducted such

DEFENDANTS' RESPONSE TO
PLAINTIFF'S MOTION FOR RULE 11
SANCTIONS -- NO. 3:19-cv-05181-BHS

5

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

investigation. And as explained below, any confusion resulted from Cedar Park's conflicting positions and late disclosures. In *Winstar*, the Defendants raised spurious arguments in its motion for sanctions and failed to comply with the "safe harbor" rule. 2021 WL 8314460, at *3. Neither of those circumstances occurred here.

**B.    The Court Should Deny This Motion if It Grants Defendants' Rule 11 Motion**

To begin, the Court should deny this motion after it grants Defendants' Rule 11 motion, as the motion is obviously not frivolous if it is granted. *See Mogan*, 2022 WL 119212, at *4 n.5 (because sanctions motion was granted, it was not frivolous and thus subject to Rule 11 sanctions); *Brown v. Chinen*, No. 07-00556 ACK-LEK, 2010 WL 1783571 (D. Haw. May 3, 2010) (same).

**C.    The Ninth Circuit Clearly Believed That There Was No Evidence of Comparable Plans Available to Cedar Park**

Cedar Park starts by incorrectly disputing that the Ninth Circuit's analysis depended on its understanding that there were no comparable plans on the market. Cedar Park asks the Court to sanction Defendants for making a legal argument based on the express text of the decision. The Ninth Circuit expressly held that Cedar Park alleged sufficient injury in fact by alleging that "due to the enactment of SB 6219, its health insurer (Kaiser Permanente) stopped offering a plan with abortion coverage restrictions *and Cedar Park could not procure comparable replacement coverage*." *Cedar Park*, 860 F. App'x at 543 (emphasis added). The Court added, "there is no evidence in the record clearly demonstrating that Cedar Park could obtain acceptable coverage at the time it filed its complaint." *Id.* The Ninth Circuit clearly held that no record of a comparable plan was a predicate fact to establish an injury in fact.

Cedar Park instead quotes an incomplete sentence in a footnote to argue that the only concern to the Ninth Circuit was that Kaiser did not offer a plan excluding coverage for abortion when Cedar Park sought to renew its plan. Dkt. # 109 at 3. Read in proper context, the full footnote addresses that Kaiser incorrectly covered abortion services, and the Ninth Circuit

DEFENDANTS' RESPONSE TO
PLAINTIFF'S MOTION FOR RULE 11
SANCTIONS -- NO. 3:19-cv-05181-BHS

6

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

explained that did not defeat standing: "[g]iven that it is undisputed that Cedar Park sought, and Kaiser Permanente agreed to provide, health insurance that contained abortion restrictions, Kaiser Permanente's decision to stop providing such coverage due to the enactment of SB 6219 constituted an injury in fact to Cedar Park, regardless of any past error on Kaiser Permanente's part." *Cedar Park*, 860 F. App'x at 543 n.2. The footnote addresses whether Kaiser actually stopped offering a plan with abortion coverage restrictions, not whether that stoppage was the only fact that needed to be alleged to establish standing.

Cedar Park adds confusion by arguing that "the Ninth Circuit explicitly *rejected* Defendants' argument that the availability of other plans eliminated the Church's injury" and then quoting a sentence where the Ninth Circuit held that Kaiser dropped Cedar Park's abortion coverage restrictions "and there is no evidence in the record clearly demonstrating that Cedar Park could obtain acceptable coverage at the time it filed its complaint." Dkt. # 109 at 3 (quoting *Cedar Park*, 860 Fed. App'x at 543). The reality is that, when analyzing standing on a motion to dismiss, the Ninth Circuit was concerned about whether there were plans with abortion restrictions available to Cedar Park at the time of the filing of the operative complaint, not whether it was hypothetical that Cedar Park could obtain such a plan.[2] There was no evidence in the record that Cedar Park had available such a plan, because at the time, Cedar Park failed to disclose the Cigna options. Cedar Park ignores the full text and context of the opinion.

Cedar Park's discussion of *Skyline Wesleyan Church v. California Department of Managed Health Care*, 968 F.3d 738, 748 (9th Cir. 2020), is out of place. In that case, the agency letters immediately altered the religious organization's insurance to eliminate the restrictions. *Id*. The Court thus only addressed the situation where it was hypothetical that a church could obtain an exemption for a plan consistent with its beliefs. *Id*. at 747. Here, Kaiser's plan expired, so it was through a renewal/renegotiation process that Kaiser removed the abortion restrictions. And

---

[2] This is also why the Ninth Circuit denied Cedar Park's request to supplement the record with information about the Providence Health Plan. Dkt. # 109 at 3. That plan was undisputedly not available to Cedar Park because of Cedar Park's location.

DEFENDANTS' RESPONSE TO
PLAINTIFF'S MOTION FOR RULE 11
SANCTIONS -- NO. 3:19-cv-05181-BHS

7

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

Cedar Park in fact negotiated for a plan that excluded coverage for abortion and certain contraceptives that was cheaper than Kaiser's. Cedar Park had to and did renegotiate and only through that process remained with Kaiser.

In short, it is impossible to believe that the Ninth Circuit would have made the same holding if it had known that Cedar Park had received multiple offers for a health plan that excluded abortion coverage and was cheaper than Kaiser's. Despite knowing those facts, Cedar Park never mentioned them, and argued the opposite. Defendants did not make a frivolous argument in pointing this out.

**D.     Defendants Correctly Described the History of the Claims**

Cedar Park contorts the Defendants' arguments to make it sound like Defendants misrepresented Cedar Park's religious beliefs. Dkt. # 109 at 5-7. Defendants' argument is not that Cedar Park's religious beliefs changed but that the focus of its claims is a moving target. Looking at the operative complaint, the claim Defendants, this Court, and the Ninth Circuit understood was that before SB 6219, Cedar Park had a Kaiser plan that excluded coverage for abortion because Cedar Park opposes paying for abortion. There has never been an allegation that Cedar Park's enrollees were legally prohibited from receiving abortions from Kaiser (or anyone else) before SB 6219. Cedar Park then alleged that after SB 6219, Kaiser no longer offered a plan with the exclusion, so Cedar Park filed this suit to enjoin SB 6219 and allow Kaiser to again offer a plan that excluded coverage for abortion. Up through the Ninth Circuit's decision, the critical point was that the violation occurs from any "extra premium, fee, or any payment to its insurer for the payment of abortions and abortifacient contraceptives for plan beneficiaries." Dkt. # 50 ¶ 6. It is about the extra payment for the abortion coverage that Cedar Park alleged violated its beliefs.

After discovery, Defendants learned about the Cigna plans, which excluded abortion coverage while providing information to enrollees about access to the services "outside the plan," and which had no provision for an "extra premium, fee, or any payment to [Cigna] for the

DEFENDANTS' RESPONSE TO
PLAINTIFF'S MOTION FOR RULE 11
SANCTIONS -- NO. 3:19-cv-05181-BHS

8

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

payment of abortions and abortifacient contraceptives for plan beneficiaries." *Id.* After pointing this out and that multiple options exist where Cedar Park would not pay for abortion services while services are still accessible to enrollees, Cedar Park started arguing that any of these options still violated its religious beliefs. Dkt. # 93 at 4-5; Dkt. # 102 at 8. Thus, according to Cedar Park, even if a third party pays for and provides abortion services, it contends a violation of its Free Exercise rights. In that case, there would not be an extra payment or fee.[3]

Paradoxically, Cedar Park asks to be treated like a health provider and refuse providing all coverage. But providers have to provide information about access to the excluded services. RCW 48.43.065(2)(b). This is exactly what would occur with the Cigna option.

The real confusion here is a result of Cedar Park's shifting claims and its articulation that any "facilitation" violates its beliefs. Cedar Park's arguments here highlight why Defendants made these points in its motions.

E.   **Cigna Offered Options That Would Exclude Coverage for Abortion**

Defendants do not know how Cigna could have made it more clear to Cedar Park. From the June 10, 2019 presentation, to Cigna directly answering Cedar Park's questions, to the July 18, 2019 bid with additional offers, every communication from Cigna made clear that the plans excluded coverage for abortion—meaning Cedar Park would not be paying for abortion coverage as part of its benefits package.

Cedar Park repeats its incorrect statutory analysis to say that when an employer objects to coverage, the plan still includes the coverage. As Defendants have continuously pointed out, not only do the statutes provide that the services occur outside the plan, but Cigna also made clear that access to services would occur "outside of their plan." Dkt. # 105-1, Ex. E.

Cedar Park again misleads in stating that the 30(b)(6) witness admitted that they were unaware of a negotiated large group plan that excluded abortion in counties where Cedar Park is

---

[3] Defendants also dispute that indirectly paying for abortion services violates the Free Exercise Clause, but that is not the basis of Defendants' motion for Rdsule 11 sanctions.

DEFENDANTS' RESPONSE TO
PLAINTIFF'S MOTION FOR RULE 11
SANCTIONS -- NO. 3:19-cv-05181-BHS

9

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

located. Dkt. # 93-4 at 22-25. No plan with those exclusions in those counties had been filed with the Insurance Commissioner, but that does not mean that carriers had not offered plans with those exclusions. If Cedar Park had gone with Cigna, there would have been a plan with the abortion exclusion, and it would have been Cedar Park's.

Defendants have already disproved Cedar Park's arguments about testimony that plans provide access to abortion, where the designee described how enrollees can obtain access while ensuring that employers do not purchase coverage for the services to which they object. Dkt. # 109 at 8; Dkt. # 105-1, Ex. A at 102-105. There is no evidence that Cigna would require the same insurance cards for enrollees to obtain access to the services, and in any event, simply providing an insurance card does not mean that Cedar Park directly or indirectly paid for the abortion services. Dkt. # 109 at 8.

Cedar Park still fails to confront the core, uncontroverted facts that led to Defendants' Rule 11 motion. Cigna offered a plan that excluded coverage for abortion and certain contraceptives, which is what Cedar Park desired (and wanted from Kaiser). Despite knowing of these facts, Cedar Park omitted them from operative pleadings and took positions to the contrary. The Court should not buy Cedar Park's subterfuge.

F.   **The Cigna Options Were Undisputedly Cheaper**

For Cedar Park to argue that the Cigna options were not cheaper defies math and time. Defendants will not repeat the formulas here as they are set out in multiple briefs, but point out that for the 2019 plans, which offered before Cedar Park filed the 2019 operative pleadings, Cedar Park's own CFO admitted that the Cigna plans were cheaper than Kaiser's. Dkt. # 105-1, Ex. C at 60-61. The Court should not let Cedar Park defy math.

Even if the 2020 negotiations were relevant to the motion for sanctions, which they are not, Cedar Park fails to include necessary context. Cigna's 2020 bid was cheaper than simply renewing with Kaiser. Both Kaiser's renewal and renegotiated bids were higher than the previous year, and Kaiser raised its renewal by more than Cigna. Dkt. # 105-1, Ex. C at 69-70. Only by

DEFENDANTS' RESPONSE TO
PLAINTIFF'S MOTION FOR RULE 11
SANCTIONS -- NO. 3:19-cv-05181-BHS

10

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

renegotiating for a plan with a higher deductible was Kaiser cheaper than Cigna. Cedar Park fails to provide the full picture to justify its faulty math.

### G. Cigna Offered Plans That Excluded Abortion

The only reason why there is confusion about the number of plans that exclude abortion is because Cedar Park's testimony evolved during the course of the case. Further, Cedar Park did not produce additional offers from Cigna until after the discovery cutoff, after Defendants filed their renewed motion to dismiss and after Defendants had served upon Cedar Park the motion for Rule 11 sanctions.[4] Dkt. # 105-1, Ex. I. It is disingenuous to argue that Defendants got the number of offers wrong, when Cedar Park had failed to disclose all the offers.

The actual number doesn't really matter for purposes of the Court's analysis. What matters is that Cigna offered at least one (but apparently four) options for health plans that excluded coverage for abortion and certain contraceptives. The Court should put aside Cedar Park's side show.

### H. Kaiser Can Offer a Plan Consistent with Cedar Park's Beliefs Now, but Chooses Not to

Cedar Park faults Defendants for arguing that according to Cedar Park "the only way to comply with the First Amendment is to force Kaiser to provide the same plan with all exclusions desired by Cedar Park." Dkt. # 109 at 11. To the extent that there is any confusion, it is because of the contradictory positions taken by Cedar Park.

To be clear, Defendants have maintained that after passage of SB 6219, any carrier, including Kaiser, can offer and file with the Insurance Commissioner a plan that excludes coverage for services to which Cedar Park objects, including coverage for abortion and certain contraceptives. Cigna offered this plan. All of this is consistent with SB 6219 and the conscience objection statute.

---

[4] Defendants served their Rule 11 motion on Cedar Park on February 17, 2023. Cedar Park supplemented its discovery on February 27, 2023, which produced the July 18, 2019 offer from Cigna with two additional alternative options that excluded abortion coverage. Consistent with Rule 11's safe harbor rule, Defendants filed the Rule 11 sanction motion on March 16, 2023

DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION FOR RULE 11 SANCTIONS -- NO. 3:19-cv-05181-BHS

11

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

There is no evidence explaining why Kaiser will not offer such a plan to Cedar Park aside possibly from some inadmissible hearsay testimony. It might have been an incorrect legal analysis or it might have been a business decision.

That Cedar Park still brings this case and makes the arguments that this is still inconsistent with its beliefs indicates it believes some other remedy is necessary. One such remedy is to order Kaiser to provide a plan with all the exclusions desired by Cedar Park, such that Cedar Park dictates that Kaiser offers the plan that will be consistent with its beliefs.

Further, because Cedar Park claims that none of the third party options will comply with Cedar Park's religious beliefs because they will still "facilitate" abortions, Cedar Park seeks more than simply a plan that excludes abortion coverage. According to Cedar Park's argument, if any enrollee with its carrier can seek an abortion, it violates its Free Exercise rights. Thus, the remedy would have to be some order precluding all of its enrollees from receiving abortion services, otherwise Cedar Park would be "facilitating" by having a plan with that carrier, regardless of the exclusion of coverage.

## I. Cedar Park Expected Kaiser to Refuse to Provide a Plan That Would Accommodate Its Religious Beliefs

Cedar Park incorrectly argues about the timing for when it learned that Kaiser would not accommodate Cedar Park's beliefs. First, as Cedar Park admits in its pleadings, it expected in June 2019 that Kaiser did not provide the exclusion. Dkt. # 109 at 12 (citing Dkt. # 96-1, Ex. C).

Second, the statements from Kaiser are inadmissible hearsay, which should not be considered, at least on a motion for summary judgment.

Third, in any event, there is no indication ever from Kaiser that it *would* accommodate Cedar Park's beliefs. There is some indication that Kaiser needed to conduct research and analysis internally to determine whether it might provide the exclusion, which was the end decision.

DEFENDANTS' RESPONSE TO
PLAINTIFF'S MOTION FOR RULE 11
SANCTIONS -- NO. 3:19-cv-05181-BHS

12

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

The real point is that while the assumption was that Kaiser would not provide the exclusion and never indicated that it would, Cigna offered multiple options that excluded coverage for abortion and certain contraceptives. Cedar Park hid that fact, leading to needless litigation.

## V. CONCLUSION

The Court should deny Cedar Park's Rule 11 sanctions motion.

DATED this 10th day of April 2023.

ROBERT W. FERGUSON
Attorney General

*/s/ Paul M. Crisalli*
PAUL M. CRISALLI, WSBA #40681
Assistant Attorney General
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744
Paul.Crisalli@atg.wa.gov

MARTA DELEON, WSBA #35779
Senior Assistant Attorney General
Government Compliance & Enforcement Division
1125 Washington Street SE
Olympia, WA  98504-0100
(360) 664-9006
Marta.Deleon@atg.wa.gov
*Attorneys for Defendants*

DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION FOR RULE 11 SANCTIONS -- NO. 3:19-cv-05181-BHS

13

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744