1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

CEDAR PARK ASSEMBLY OF GOD
OF KIRKLAND, WASHINGTON,

                 Plaintiff,

    v.

MYRON KREIDLER and JAY
INSLEE,

                Defendants.

CASE NO. C19-5181 BHS

ORDER

This matter comes before the Court on the parties' cross Motions for Summary

Judgment, Dkts. 103, 104.

Plaintiff Cedar Park Assembly of God asserts that a 2018 Washington State law

requiring all health insurance plans that provide maternity coverage to provide

substantially equivalent abortion coverage violates its First Amendment rights because

facilitating abortion is against its religious beliefs. Defendants Jay Inslee and Myron

Kreidler ("the State") argue that the law is neutral, and that Cedar Park falls under an

exception to the law such that it is not required to purchase abortion coverage.

# I.   FACTUAL BACKGROUND

In 2018, the State enacted SB 6219,[1] codified as RCW 48.43.072 and RCW 48.43.073. Dkt. 20, ¶ 4. RCW 48.43.072 requires all health plans issued or renewed on or after January 1, 2019, to cover all FDA-approved prescription and over-the-counter contraceptive drugs, devices, and products. RCW 48.43.073 requires all health plans issued or renewed on or after January 1, 2019, that provide coverage for maternity care or services to provide the covered person "with substantially equivalent coverage to permit the abortion of a pregnancy."

Under the Affordable Care Act, employers with over fifty employees are required to provide health insurance for their employees. 26 U.S.C. § 4980H. That health insurance plan must include access to maternity care services. 42 U.S.C. § 18022(b)(1)(D). The effect of SB 6219 is therefore to require all non-exempt employers in Washington who are covered by the Affordable Care Act to provide their employees health insurance coverage for abortion services. Washington law exempts certain employers and health insurance plans from SB 6219. RCW 48.43.005(31), 48.43.065(2).

One of those exemptions is for "[e]mployer-sponsored self-funded health plans." RCW 48.43.005(31)(j). This type of insurance is frequently referred to in this case as "self-insurance." *See, e.g.*, Dkt. 93 at 5. A self-funded plan differs from a fully-insured plan in that it requires the employer to take on more risk and to purchase a stop-loss

---

[1] Cedar Park initiated this suit as a pre-enforcement action, before SB 6219 went into effect. The parties continue to refer to the law as SB 6219 and, for clarity and consistency, the Court does the same.

insurance policy to cover any costs over a set amount. Dkt. 93-6, ¶¶ 18–28. Similarly, the parties frequently discuss "level-funded plans," which again require the employer to take on more risk. *Id.* This Court has already held that self-funded and level-funded plans are not comparable to fully-insured plans. *See* Dkt. 118 (order denying the State's motion to dismiss). Most of the other exemptions in RCW 48.43.005(31) are for plans with non-comprehensive coverage or plans sponsored by the federal government, such as Medicare and TRICARE.

For employers purchasing health insurance, Washington law provides that "[n]o individual or organization with a religious or moral tenet opposed to a specific service may be required to purchase coverage for that service or services if they object to doing so for reasons of conscience or religion." RCW 48.43.065(3)(a). While individuals and organizations do not have to purchase that coverage, enrollees must still be able to access it: "The provisions of this section shall not result in an enrollee being denied coverage of, and timely access to, any service or services excluded from their benefits package as a result of their employer's or another individual's exercise of the conscience clause in (a)." RCW 48.43.065(3)(b). The statute also provides that the health insurance carrier, facility, or provider is not required "to provide any health care services without appropriate payment of premium or fee." RCW 48.43.065(4).

In contrast, "[n]o individual health care provider, religiously sponsored health carrier, or health care facility may be required by law or contract in any circumstances to participate in the provision of or payment for a specific service if they object to doing so for reasons of conscience or religion." RCW 48.43.065(2)(a). This exemption,

specifically for health care providers, religiously sponsored health carriers, and health care facilities, does not have the same language disallowing denial of coverage of excluded services. Rather, it states that "[t]he provisions of this section are not intended to result in an enrollee being denied timely access to any service included in the basic health plan services." RCW 48.43.065(2)(b). The parties, and the Court, refer to the entirety of RCW 48.43.065 as the "conscience statute."

Cedar Park is a Christian church in Kirkland, Washington, that also provides other faith-based services in the community. Dkt. 20, ¶ 5. Cedar Park asserts that, prior to SB 6219, it did not provide coverage for abortion or abortifacient contraceptives in its employee health insurance plan. *Id*. Cedar Park also asserts that it "offer[ed] health insurance coverage to its employees in a way that does not also cause it to pay for abortions or abortifacient contraceptives, including, *inter alia*, emergency contraception and intrauterine devices" and that its pre-SB 6219 plan "exclude[d] coverage for abortions or abortifacient contraceptives." *Id.* ¶¶ 46–47. Approximately 185 of Cedar Park's employees are eligible for its health insurance coverage. *Id.* ¶ 20. Employees are required to sign a statement agreeing to follow Cedar Park's standards of conduct, which includes its teachings on the sanctity of life both at work and outside of work. *Id.* ¶¶ 31–32.

As an employer of over fifty employees, Cedar Park is required under federal law to purchase health insurance for its employees that includes maternity services. Under SB 6219, it is therefore also required to provide "substantially equivalent coverage to permit

1   the abortion of a pregnancy" unless it qualifies for an exemption. Prior to SB 6219, Cedar

2   Park was not required to, and did not, provide such coverage.

3         Cedar Park sued the State seeking to enjoin enforcement of the bill prior to it

4   taking effect. *See* Dkt. 1. Prior to SB 6219's enactment, Cedar Park purchased a Kaiser

5   health insurance plan that excluded abortion services. Dkt. 88 at 4. Kaiser informed

6   Cedar Park that, if the church renewed its plan with Kaiser, coverage for abortion

7   services would be included in the plan. *See, e.g.*, Dkt. 89-1 at 195.

8         Cedar Park was engaged in negotiations with health insurance providers regarding

9   the availability of health insurance plans excluding abortion coverage until July or

10  August of 2019. *See generally* Dkt. 89-1 at 132–224. The parties disagree about whether

11  Cedar Park was offered any plans that accommodated its religious objections. The State

12  asserts that "Cedar Park solicited at least [eight] bids," "received several offers that were

13  not competitive," and "received two options from Cigna" that "accommodated Cedar

14  Park's beliefs by excluding coverage for abortion." Dkt. 104 at 12. Cedar Park asserts

15  that the Cigna plans were not comparable to its pre-SB 6219 Kaiser plan and that they

16  still facilitated abortion. Dkt. 113 at 10–11.

17        The Court previously ruled that self-funded and level-funded plans are not

18  comparable to the Kaiser fully-insured plan. *See* Dkt. 118. While SB 6219 would not

19  have applied to Cigna's self-funded plan, it would have applied to Cigna's level-funded

20  plan. The State argues that email evidence shows that Cigna agreed that both Cigna plans

21  would exclude abortion coverage. Dkt. 104 at 13. But, as Cedar Park points out, later

22  clarification confirms that only the self-funded plan would fully exclude abortion

coverage. Dkt. 113 at 11. This makes logical sense because self-funded plans are

explicitly excluded from SB 6219. *See* RCW 48.43.005(31)(j).

In the provided email evidence, Cigna never specified to Cedar Park how the costs

of any abortion-related services would be distributed in the level-funded plan, leaving

open the possibility that Cedar Park would be paying for those services, just not under the

"abortion" label. Moreover, even if Cedar Park was not paying for those services, its

employees would still have had access to them under the plan—something Cedar Park

objects to as "facilitating" access to abortion. Dkt. 93 at 7–8.

In sum, Cedar Park asserts that, because of SB 6219, it had two general options:

(1) renew its plan with Kaiser in violation of its own religious tenets; or (2) purchase self-

insurance which would allow it to exclude abortion services completely. According to

Cedar Park, self-insurance was not a viable option from a financial standpoint. It

therefore renewed its coverage with Kaiser, reluctantly providing abortion coverage to its

employees.

## II.   PROCEDURAL HISTORY

Cedar Park sued on March 8, 2019, alleging that SB 6219[2] violates the Free

Exercise and Establishment Clauses of the First Amendment, Cedar Park's right to

---

[2] Cedar Park asserts that the State failed to move for summary judgment on its claims that Washington's conscience statute violates the Free Exercise Clause and the religious autonomy doctrine. Dkt. 113 at 7–8 n.2. The State argues that its motion and its subsequent filings all address Cedar Park's arguments regarding the conscience statute. Dkt. 114 at 16. The State does, in fact, address Washington's conscience statute, arguing that it does not violate the First Amendment. *See, e.g.*, Dkt. 104 at 22. Moreover, Cedar Park groups its conscience statute argument with its argument regarding SB 6219 in its complaint. *See* Dkt. 46. Cedar Park argues that one way SB 6219 violates the First Amendment is through its incorporation of the conscience statute. Thus, it is proper to address what Cedar Park now classifies as separate

1   religious autonomy guaranteed by those clauses, and the Equal Protection Clause of the

2   Fourteenth Amendment. Dkt. 1. Cedar Park seeks declaratory and injunctive relief. *Id.*

3         The State moved to dismiss in 2019, Dkt. 25, and the Court granted that motion,

4   concluding that Cedar Park lacked standing and that its claims were not ripe. Dkt. 45. The

5   Court permitted Cedar Park to amend its complaint, however, concluding that there was a

6   conceivable set of facts under which Cedar Park could allege a cognizable injury. *Id.* at

7   22. Cedar Park amended its complaint, Dkt. 46, the State again moved to dismiss, Dkt.

8   53, and the Court again dismissed Cedar Park's complaint for lack of standing, Dkt. 60.

9         Cedar Park appealed, and the Ninth Circuit reversed in part, concluding that Cedar

10   Park had standing to assert its Free Exercise claims because it "plausibly alleged that, due

11   to the enactment of SB 6219, its health insurer (Kaiser Permanente) stopped offering a

12   plan with abortion coverage restrictions and Cedar Park could not procure comparable

13   replacement coverage." Dkt. 65. It affirmed the Court's holding that Cedar Park lacked

14   standing to assert its Equal Protection Clause claim. *Id.* Cedar Park failed to appeal the

15   Court's dismissal of its Establishment Clause claim, and the Ninth Circuit therefore held

16   that it forfeited argument on that claim. *Id.*

17         On remand, the parties disagreed about what claims remained. *See* Dkt. 67 at 1–2;

18   Dkt. 69; Dkt. 72; Dkt. 73. The Court clarified that the only remaining claims were Cedar

19

20

21   "claims" together. The Court addresses the "claims" together in this Order and mostly refers to
    the statutes as SB 6219, recognizing the bill's incorporation of the conscience statute where

22   applicable.

1 Park's Free Exercise claim and its religious autonomy claim, to the extent that claim was

2 based on the Free Exercise Clause of the First Amendment. Dkt. 75.

3      The State again moved to dismiss Cedar Park's complaint for lack of standing,

4 alleging that Cedar Park failed to disclose the Cigna plans, which it asserts were

5 comparable health insurance policies that would have excluded abortion services and

6 abortifacients, consistent with Cedar Park's religious beliefs. Dkt. 88. The State also

7 asked the Court to sanction Cedar Park for lying in its filings to the Court regarding the

8 existence, or lack thereof, of a comparable plan that excluded abortion services. Dkt. 107.

9 Cedar Park cross-moved for sanctions against the State for having to defend what it

10 termed a frivolous motion for sanctions. Dkt. 109.

11      The Court denied both parties' motions for sanctions, concluding that while the

12 State was rightfully concerned by Cedar Park's failure to disclose the Cigna plans, the

13 conduct was not sanctionable. Dkt. 118. It concluded that the Cigna plans were not

14 comparable and would not have changed the Ninth Circuit's adjudication of the case. *Id.*

15 It therefore also denied the State's motion to dismiss in light of that conclusion and the

16 Ninth Circuit's mandate. *Id.*

17      The parties now move for summary judgment. Dkts. 103, 104. Cedar Park argues

18 it is entitled to summary judgment on its two remaining claims: (1) SB 6219 and the

19 conscience statute violate the Free Exercise Clause of the First Amendment; and (2) SB

20 6219 and the conscience statute violate its First Amendment right to religious autonomy.

21 Dkt. 103. It argues that SB 6219, read alongside the conscience statute, violates the

22 fundamental right of freedom of religion, that it is not generally applicable or neutral, and

1   that it is not narrowly tailored to serve a compelling government interest. *Id.* Further, it

2   argues that SB 6219, read alongside the conscience statute, interferes with its internal

3   operations because the law interferes with its ability "to teach [its] members, live by, and

4   govern [its] employees according to [its] religious doctrine." *Id.* at 30.

5        The State argues that Cedar Park's Free Exercise claims fail as a matter of law

6   because SB 6219 and the conscience statute are neutral and generally applicable, and the

7   laws are rationally related to multiple legitimate government interests, including

8   protecting women's health and economic stability. Dkt. 104. It also argues that Cedar

9   Park's religious autonomy claim fails as a matter of law because purchasing a health

10  insurance plan is not an ecclesiastical decision. *Id.*

11       Cedar Park's Free Exercise claim and its religious autonomy claim are addressed

12  in turn.

### III.   DISCUSSION

**A.   Legal Standard**

15       Summary judgment is proper if the pleadings, the discovery and disclosure

16  materials on file, and any affidavits show that "there is no genuine dispute as to any

17  material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

18  56(a). In determining whether an issue of fact exists, the Court must view all evidence in

19  the light most favorable to the nonmoving party and draw all reasonable inferences in that

20  party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986); *Bagdadi v.*

21  *Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996). A genuine issue of material fact exists where

22

there is sufficient evidence for a reasonable factfinder to find for the nonmoving party. *Anderson*, 477 U.S. at 248.

On cross-motions, the defendant bears the burden of showing that there is no evidence which supports an element essential to the plaintiff's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Conversely, the plaintiff "must prove each essential element by undisputed facts." *McNertney v. Marshall*, No. C-91-2605-DLJ, 1994 WL 118276, at *2 (N.D. Cal. Mar. 4, 1994) (citing *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986)). Either party may defeat summary judgment by showing there is a genuine issue of material fact for trial. *Id.*; *Anderson*, 477 U.S. at 250. Although the parties may assert that there are no contested factual issues, this is ultimately the Court's responsibility to determine. *Fair Hous. Council of Riverside Cnty., Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001).

**B.     SB 6219 does not violate the Free Exercise Clause.**

Under the First Amendment of the United States Constitution, which applies to the states under the Fourteenth Amendment, a state "shall make no law . . . prohibiting the free exercise [of religion]." U.S. Const. amend. I. Nevertheless, the so-called Free Exercise Clause "does not relieve an individual of the obligation to comply with a valid and neutral law of general applicability on the ground that the law proscribes (or prescribes) conduct that his religion prescribes (or proscribes)." *Emp. Div., Dep't of Hum. Res. of Or. v. Smith*, 494 U.S. 872, 879 (1990) (internal quotation omitted), *superseded by statute on other grounds*, Religious Freedom Restoration Act of 1993, 42 U.S.C. 2000bb *et seq.*

A law that burdens religion and which is not neutral or generally applicable must survive strict scrutiny—i.e., the burden on religion "must be justified by a compelling governmental interest and must be narrowly tailored to advance that interest." *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 531–32 (1993). If a law is neutral and generally applicable, however, the law need only survive rational basis review. *Stormans, Inc. v. Wiesman*, 794 F.3d 1064, 1075–76 (9th Cir. 2015) (citing *Miller v. Reed*, 176 F.3d 1202, 1206 (9th Cir. 1999)). "Neutrality and general applicability are interrelated, and . . . failure to satisfy one requirement is a likely indication that the other has not been satisfied." *Lukumi*, 508 U.S. at 531.

### 1.     SB 6219's burden on religion.

Cedar Park argues that "SB 6219 burdens [its] free exercise of religion by coercing it to facilitate abortion as a result of offering a group health plan." Dkt. 103 at 17. In Cedar Park's view, the law does so in two ways. The narrower argument is that SB 6219, even when read alongside the conscience statute, "authorizes insurance carriers to increase Cedar Park's premiums to cover the cost of abortions even if abortion coverage is not expressly included in the Church's plan." *Id.* at 19. More broadly, Cedar Park argues that SB 6219 requires it to "facilitate" abortion because, even if the church objects, its insureds would still be covered for abortion services. *Id.* at 18; Dkt. 113 at 9 ("In sum, the Church's beliefs prohibit purchasing a plan that results in its employees having access to abortion and abortifacients they otherwise would not have."). According to Cedar Park, this amounts to a First Amendment violation even if Cedar Park is not required to directly pay for those services or to itself inform its insureds of their ability to

procure coverage for those services. This is because, in Cedar Park's view, the fact that its insureds gain coverage to the services under the insurance plan Cedar Park provides means that Cedar Park is "facilitating" that abortion coverage.

The State argues first that Cedar Park, under the text of the law, is not required to pay for its employees' abortion coverage. Dkt. 104 at 12–15. It explains that Cedar Park can negotiate for a plan that does not require it to pay for abortion coverage and, to the extent such a plan is unavailable, it is a product of market forces, not SB 6219. *Id.* Somewhat confoundingly, the State seems to concede that Cedar Park may indirectly pay for such services, however: "Cedar Park *might not* pay indirectly for coverage at all, as it is *possible* that funds to cover the objectionable services might come from third parties or grants." *Id.* at 24. The State also explains that it does not know who pays for objected services, but that it knows "the employer does not pay for the objected services."[3] *Id.* at 11.

The State asserts that the Court should give "great weight" to two Washington State Attorney General opinions regarding the conscience objection statute, arguing they

---

[3]The State does not explain exactly who *would* pay for abortion services provided to an insured under Cedar Park's policy, other than to assure the Court that it would not be Cedar Park. Nor is it clear how or by whom that cost would be paid while complying with the statute's requirement that an insurer cannot be forced to cover that service "without appropriate payment of premium or fee." RCW 48.43.065(4).

Nevertheless, Cedar Park carries the burden of demonstrating that, despite its objections and the statute's language, it will facilitate the provision of abortion services by paying for them in some fashion, and it has not met that burden. Nor has Cedar Park asserted a claim related to the statute's apparent vagueness, or argued that it is unenforceable because of its internal inconsistencies or, at least, its lack of clarity as to how these costs are paid. The Court, therefore, cannot pass judgment on such a claim.

1  show that employers are not required to pay for abortion coverage. *Id.* at 8–9. Those

2  opinions address the conscience objection statute in relation to contraception coverage.

3  As the State acknowledges, however, those opinions do not address how employers can

4  exercise their conscience clause rights or "any options carriers could use to absorb the

5  costs when objecting employers purchase coverage." *Id.* The Attorney General opinions

6  are therefore unhelpful in answering the question of whether any costs can be charged to

7  the objecting employer.

8       As to Cedar Park's broader "facilitation" argument, the State argues that Cedar

9  Park is not the one who would be "facilitating" abortion, but rather, the insurance carrier

10  or another third party tasked with the duty to inform Cedar Park's insureds of their ability

11  to access covered abortion services would be the party "facilitating" abortion. *Id.* at 25.

12  Further, the State argues that, to the extent Cedar Park's complaint is about indirectly

13  paying for abortion services, it was already doing so under its pre-SB 6219 group plan

14  with Kaiser because it paid overhead to Kaiser who provided abortion coverage to other

15  insureds. *Id.*

16       None of the State's arguments seem to fully address the crux of Cedar Park's

17  facilitation complaint: that its employees would not have access to covered abortion

18  services absent Cedar Park's post-SB 6219 plan. This fact is undisputed and undoubtedly

19  true. Because of SB 6219, Cedar Park's employees gained coverage for abortion services

20  under their employer-sponsored health insurance plan that they would not otherwise

21

22

have.[4] Even if the "facilitation" is somewhat minimal, SB 6219 requires Cedar Park to facilitate access to covered abortion services contrary to Cedar Park's religious beliefs. Thus, SB 6219, under certain circumstances, could burden religion.

### 2. SB 6219 is neutral and generally applicable.

### a. Neutrality

A law is not neutral if its object "is to infringe upon or restrict practices because of their religious motivation." *Lukumi*, 508 U.S. at 533. In determining the object of a law, the court begins by looking at its text. *Id.* "A law lacks facial neutrality if it refers to a religious practice without a secular meaning discernable from the language or context." *Id.*

The State argues that the statute is facially neutral because it does not target a particular religion but instead aims to "ensur[e] health plans include certain preventative services." Dkt. 104 at 20. It points out that "SB 6219 does not reference any religious practice, conduct, or motivation." *Id.*

---

[4] This is notably, and importantly, different from the State's imagined argument that Cedar Park "facilitates" abortion by paying overhead as part of a group plan or that Cedar Park "facilitates" abortion by paying taxes. Dkt. 104 at 25 (overhead); Dkt. 112 at 25 n.5 (taxation). Cedar Park does not advance those arguments, but the Court acknowledges that there is a point where a "facilitation" argument would become too tenuous, abstract, or remote. The Court does not pass judgment on where that point is except to say that case law is clear that the taxation theory would fail. *See generally, e.g.*, *United States v. Lee*, 455 U.S. 252 (1982) (requiring Amish plaintiffs to pay social security taxes despite their religious objection because it was essential to accomplish the governmental interest of assuring universal participation in the social security system). Neither party addresses the fact that Cedar Park employees could pay for uninsured abortion services using the funds Cedar Park paid them for working there, and that that sort of "facilitation" is less remote than is purchasing an insurance policy that covers such services.

1    SB 6219 is facially neutral. Its stated intent is "to ensure that all enrollees in

2 managed care settings have access to adequate information regarding health care services

3 covered by health carriers' health plans, and provided by health care providers and health

4 care facilities." RCW 48.43.001. It further states its goal is to make sure Washington

5 citizens are "fully informed as to the extent of health insurance coverage, availability of

6 health care service options, and necessary treatment . . . [such that they] are able to make

7 knowledgeable decisions regarding their health care." *Id.* The law makes no reference to

8 religion except in the conscience exemption section. *See* RCW 48.43.065.

9    Nevertheless, "[f]acial neutrality is not determinative"; the Establishment Clause

10 "forbids subtle departures from neutrality and covert suppression of particular religious

11 beliefs." *Lukumi*, 508 U.S. at 534 (internal quotations and citations omitted). Courts may

12 look beyond the text at the effect of the challenged law. *Id.* at 535. This more indirect

13 targeting is known as "religious gerrymandering"—that is, "an impermissible attempt to

14 target religious practices through careful legislative drafting." *Stormans*, 794 F.3d at

15 1076. While adverse impact can lead to a finding of impermissible targeting, that is not

16 always the case. *Lukumi*, 508 U.S. at 534. "[A] social harm may have been a legitimate

17 concern of government for reasons quite apart from discrimination." *Id.*

18    The Court can also consider the legislature's object "from both direct and

19 circumstantial evidence" such as "the historical background of the [challenged law], the

20 specific series of events leading to the enactment or official policy in question, and the

21 legislative or administrative history, including contemporaneous statements made by

22 members of the decisionmaking body." *Id.* at 540.

Cedar Park argues that SB 6219 amounts to impermissible religious gerrymandering because the law favors secular conduct and proscribes more religious conduct than necessary to achieve its stated ends. Dkt. 103 at 23. It also cites to a contemporaneous public statement by the bill's sponsor, Senator Steve Hobbs, proclaiming that churches could sue to challenge the law. *Id.* at 25. The statement was apparently made in response to three legislative proposals to exclude religious organizations from SB 6219's abortion coverage requirements. *Id.* Cedar Park argues that this statement suggests that the legislature intended to target religious organizations like Cedar Park. *Id.*

The State argues there is no impermissible targeting because Cedar Park can bargain with insurance providers to omit abortion coverage and because the law does not proscribe more conduct than necessary given that Cedar Park's insureds may use the coverage despite Cedar Park's objection. Dkt. 104 at 20. It also asserts that Senator Hobbs's comments about the law "are not relevant to the Court's analysis, nor do they reflect a hostility towards religion." *Id.* at 20 n.4 (citing *Tingley v. Ferguson*, 47 F.4th 1055, 1086 (9th Cir. 2022)).

First, SB 6219 does not favor secular conduct. The law does not, for example, exempt non-religious organizations while targeting religious organizations. There is no evidence that SB 6219 was enacted to burden or target religion. Second, Cedar Park's argument that SB 6219 proscribes more conduct than necessary is better directed to whether the law is narrowly tailored and/or rationally related to a governmental interest, depending on the level of scrutiny applied. It is not a religious gerrymandering argument.

1       Third, Senator Hobbs's comments do not support the assertion that the

2   Washington legislature impermissibly targeted religion. Before Governor Inslee signed

3   SB 6219, a local news outlet reported that "Hobbs said employers have the right to file a

4   lawsuit if they don't like the bill."[5] He was also quoted as stating: "Health care is about

5   the individual, not about [employers]."[6] The context of Hobbs's statements is largely

6   unclear from the article, however. For example, it is not clear what question he was

7   responding to in making those statements. The statements also do not necessarily indicate

8   that the bill was targeting religious organizations. Stating that employers have the right to

9   sue if they disagree with a law is simply a fact, not necessarily an indication of animus.

10      Moreover, "[s]tray remarks of individual legislators are among the weakest

11  evidence of legislative intent." *Tingley*, 47 F.4th at 1087. Courts are rightfully "reluctant

12  to attribute [one legislator's] motives to the legislative body as a whole because what

13  motivates one legislator to make a speech about a statute is not necessarily what

14  motivates scores of others to enact it." *Id.* (internal quotations and alterations omitted).

15  Thus, even if this Court were to consider Hobbs's statement as indicative of religious

16  animus, it would be a weak indication of legislative intent and insufficient to amount to

17  religious gerrymandering.

18      SB 6219 is neutral and is not the result of "religious gerrymandering."

19

20  _____

    [5] KOMO News, *Catholic Bishops of Wash. Ask Gov. Inslee to Veto Abortion Insurance
21  Bill* (Mar. 5, 2018), https://komonews.com/news/local/catholic-bishops-of-wash-ask-gov-inlsee-
    to-veto-abortion-insurance-bill.

22      [6] *Id.*

### b.    General Applicability

A law is not generally applicable if it "treat[s] *any* comparable secular activity more favorably than religious exercise." *Tandon v. Newsom*, 141 S. Ct. 1294, 1296 (2021). A law violates the general applicability requirement if it "prohibits religious conduct while permitting secular conduct that undermines the government's asserted interests in a similar way, or if it provides a mechanism for individualized exemptions." *Kennedy v. Bremerton School Dist.*, 142 S. Ct. 2407, 2422 (2022) (internal quotations omitted).

Cedar Park argues that SB 6219 violates the general applicability requirement in four ways. First, it argues that the law excludes thirteen types of insurance plans from the definition of "health plans" such that the plans are not required to include abortion coverage. Dkt. 103 at 20 (citing RCW 48.43.005(31)); Dkt. 113 at 18. Cedar Park asserts that four of those exempted plan types would otherwise be governed by SB 6219:

> (b) Medicare supplemental health insurance governed by chapter 48.66 RCW;
> (c) Coverage supplemental to the coverage provided under chapter 55, Title 10, United States Code;
> . . .
> (f) Coverage incidental to a property/casualty liability insurance policy such as automobile personal injury protection coverage and homeowner guest medical;
> . . .
> (l) Plans deemed by the insurance commissioner to have a short-term limited purpose or duration, or to be a student-only plan that is guaranteed renewable while the covered person is enrolled as a regular full-time undergraduate or graduate student at an accredited higher education institution, after a written request for such classification by the carrier and subsequent written approval by the insurance commissioner;

RCW 48.43.005(31).

The State argues that none of these plan types are comparable to Cedar Park's plan because they fall into three categories: (1) specific types of insurance that only incidentally include health care services; (2) insurance plans that are not designed to be comprehensive; or (3) particular health care options funded by entities over which OIC does not have jurisdiction. Dkt. 104 at 21; Dkt. 114 at 11. The State also points out that this definition of "health plan" predates SB 6219. Dkt. 104 at 21. The State reiterates that Cedar Park can bargain for an insurance plan that does not include abortion coverage. *Id.* at 22.

While it is true that the statutory definition of "health plan" containing these exemptions is not part of SB 6219 (but rather predates that statute), SB 6219 incorporates the definition of health plan and Cedar Park's challenge of the definition in the context of SB 6219 is therefore appropriate. Nevertheless, the Court agrees with the State that none of these plan types are comparable and they therefore do not defeat SB 6219's general applicability.

Cedar Park next argues that SB 6219 is not generally applicable because it provides an exemption for insurance plans provided by religious health care organizations. Dkt. 103 at 21 (citing RCW 48.43.065(2)(a)); Dkt. 113 at 18. The State argues that this Court and the Ninth Circuit both already determined that the exempted religious health care organizations are not "similarly situated" to Cedar Park and that the exemption therefore does not defeat the law's general applicability. Dkt. 112 at 19.

"The law of the case doctrine requires a district court to follow the appellate court's resolution of an issue of law in all subsequent proceedings in the same case." *U.S.*

1   *ex rel. Lujan v. Hughes Aircraft Co.*, 243 F.3d 1181, 1186 (9th Cir. 2001). The appellate

2   court must have decided the issue "explicitly or by necessary implication." *United States*

3   *v. Jingles*, 702 F.3d 494, 499 (9th Cir. 2012). When the appellate court makes an

4   assumption for the purpose of resolving another issue, that assumption is not the law of

5   the case. *See Lucas Auto. Eng'g Inc. v. Bridgestone/Firestone Inc.*, 275 F.3d 762, 766–67

6   (9th Cir. 2001); *Cont'l Ins. Co. v. Fed. Express Corp.*, 454 F.3d 951, 954 (9th Cir. 2006).

7   The doctrine does not extend to issues the appellate court did not "consider[] and actually

8   decide[]." *Andrews Farms v. Calcot, Ltd.*, 693 F. Supp. 2d 1154, 1164 (E.D. Cal. 2010)

9   (citing *Hegler v. Borg*, 50 F.3d 1472, 1475 (9th Cir. 1995)).

10       The related rule of mandate requires a district court to "act on the mandate of an

11  appellate court, without variance." *United States v. Garcia-Beltran*, 443 F.3d 1126, 1130

12  (9th Cir. 2006). However, the rule of mandate allows a district court to "decide anything

13  not foreclosed by the mandate." *Stacy v. Colvin*, 825 F.3d 563, 568 (9th Cir. 2016) (citing

14  *Hall v. City of Los Angeles*, 697 F.3d 1059, 1067 (9th Cir. 2012)). A district court is

15  limited by the appellate court's remand only "when the scope of the remand is clear."

16  *Hall*, 697 F.3d at 1067 (citing *Mendez-Gutierrez v. Gonzales*, 444 F.3d 1168, 1172 (9th

17  Cir. 2006)).

18       This Court and the Ninth Circuit both previously held that, for the purposes of

19  Cedar Park's Equal Protection Clause claim, individual health care providers, religiously

20  sponsored health carriers, and health care facilities "are not similarly situated to religious

21  organizations." Dkt. 65 at 4; *see also* Dkt. 60 at 12–13 ("Cedar Park has failed to

22  establish that it is similarly situated to health care providers."). The "similarly situated"

1   question is the same for Cedar Park's Free Exercise claim. Thus, under both the law of

2   the case and the rule of the mandate, this Court is bound by those previous decisions. The

3   exemption for individual health care providers, religiously sponsored health carriers, and

4   health care facilities does not defeat SB 6219's general applicability.

5         Cedar Park further argues that SB 6219 is not generally applicable because it

6   allows for individualized exemptions by exempting plans if necessary to avoid violating

7   federal conditions on state funding. Dkt. 103 at 22 (citing RCW 48.43.073); Dkt. 113 at

8   18. The State argues that OIC does not make discretionary decisions about approving

9   exemptions for employers exercising the conscience objection and that the law therefore

10   does not provide for "individualized exemptions" as characterized by Cedar Park. Dkt.

11   112 at 21–23. The State further argues that ensuring compliance with federal law does

12   not defeat the statute's general applicability. Dkt. 114 at 12. The Court agrees that

13   ensuring compliance with federal law does not defeat SB 6219's general applicability.

14         Cedar Park finally argues that SB 6219 is not generally applicable because it

15   exempts plans that do not provide comprehensive maternity care coverage. Dkt. 113 at

16   (citing RCW 48.43.073(1), (5)). This requirement, however, is the same for religious and

17   non-religious organizations. If either type of organization chooses to provide maternity

18   care coverage, it must also provide abortion coverage.[7] It therefore does not defeat SB

19   6219's general applicability.

20

21         [7] The Court recognizes that, because of Cedar Park's size, it is required under the
Affordable Care Act to provide maternity care services. Cedar Park does not challenge that

22   requirement.

1    Because the Court concludes that SB 6219 is neutral and generally applicable, the

2    law is valid if it is rationally related to a legitimate governmental purpose. *See Stormans*,

3    794 F.3d at 1075–76.

4    **3.      SB 6219 is rationally related to a legitimate governmental purpose.**

5    Rational basis review "is not a license for courts to judge the wisdom, fairness, or

6    logic of legislative choices." *FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313 (1993).

7    "[A] classification neither involving fundamental rights nor proceeding along suspect

8    lines is accorded a strong presumption of validity." *Heller v. Doe by Doe*, 509 U.S. 312,

9    319 (1993). "Such a classification cannot run afoul of the [First Amendment] if there is a

10   rational relationship between the disparity of treatment and some legitimate governmental

11   purpose." *Id.* at 320. To survive rational basis review, the legislature need not provide the

12   purpose or rationale supporting the classification, but rather "a classification must be

13   upheld . . . if there is any reasonably conceivable state of facts that could provide a

14   rational basis for the classification." *Id.* (internal quotation omitted).

15   The State argues SB 6219 is rationally related to a legitimate governmental

16   purpose, specifically citing to four of fourteen governmental purposes in the legislative

17   findings:

18   - better access to health benefits, which provides all Washingtonians
        the opportunity to lead healthier and more productive lives;

19

20   - protecting gender equity and women's reproductive health;

21   - providing essential primary care to women and teens, particularly
        since reproductive health issues are the primary reason they seek
        routine medical care;

22

- access to contraceptives, which is connected to economic success of women and the ability to participate in society equally; and

- minimizing restriction on abortion coverage that would interfere with a woman's personal, private pregnancy decision-making and her constitutionally protected right to safe and legal abortion care.

Dkt. 104 at 23 (citing 2018 Wash. Sess. Laws, ch. 119, § 1). It argues that SB 6219 is rationally related to these legitimate purposes "by requiring health plans to provide contraceptive care, and if the plan includes maternity care, to provide equivalent coverage for abortion services." *Id.*

Cedar Park argues that "[t]he government does not have a rational . . . interest in forcing a pro-life church to provide insurance coverage for abortion to people who will not use it." Dkt. 103 at 27; Dkt. 113 at 29. It argues that SB 6219's exemptions defeat the State's stated purposes for enacting the law and that there is no rational reason for treating churches like Cedar Park differently from religious hospitals and insurance carriers. Dkt. 103 at 27; Dkt. 113 at 29. This is the same argument Cedar Park advanced, and the Court disposed of, above. As explained, it is both the law of the case and rule of mandate that religious organizations like Cedar Park are not similarly situated to religious hospitals and insurance carriers.

Cedar Park also argues that the State failed to "identify an actual problem in need of solving" because no complaints regarding abortion coverage were ever filed with OIC. Dkt. 103 at 26 (quoting *Brown v. Ent. Merchs. Ass'n*, 564 U.S. 786, 799 (2011)); Dkt. 113 at 28.

1    SB 6219 is rationally related to a legitimate governmental purpose. It is not

2    necessary for the State to present evidence of citizen complaints to survive rational basis

3    review. Rather, a statute can survive rational basis review if "there is any reasonably

4    conceivable state of facts that could provide a rational basis for the [challenged]

5    classification." *Heller*, 509 U.S. at 319 (internal quotation omitted). The Washington

6    legislature identified multiple legitimate governmental purposes for enacting SB 6219,

7    including promoting gender equity, promoting economic success of women, improving

8    women's health, and protecting privacy. These are all legitimate governmental purposes.

9    The State has also shown that SB 6219 is rationally related to those legitimate purposes.

10    The State's motion for summary judgment on Cedar Park's Free Exercise claim is

11    therefore GRANTED and that claim is DISMISSED with prejudice.

12    **C.     SB 6219 does not violate Cedar Park's religious autonomy.**

13    Cedar Park argues that SB 6219 violates Cedar Park's religious autonomy because

14    it interferes with its internal affairs. Dkt. 103 at 29–30. Specifically, Cedar Park asserts

15    that SB 6219 "interferes with the ability of Washington churches like Cedar Park to teach

16    their members, live by, and govern their employees according to their religious doctrine."

17    *Id.* The State argues that Cedar Park's religious autonomy claim fails as a matter of law

18    because purchasing a health insurance plan is not an ecclesiastical decision. Dkt. 104 at

19    26–27.

20    Under the religious autonomy doctrine, religious organizations have the freedom

21    "to decide for themselves, free from state interference, matters of church government as

1  well as those of faith and doctrine." *Kedroff v. St. Nicholas Cathedral of Russian*

2  *Orthodox Church in N. Am.*, 344 U.S. 94, 116 (1952).

3       The Court agrees with the State that purchasing a health insurance plan is not an

4  ecclesiastical decision and thus the religious autonomy doctrine does not apply. Cedar

5  Park's religious autonomy claim therefore fails as a matter of law. The State's motion for

6  summary judgment on Cedar Park's religious autonomy claim is therefore GRANTED

7  and that claim is DISMISSED with prejudice.

8                          **IV.  ORDER**

9       Therefore, it is hereby **ORDERED** that Defendants Myron Kreidler and Jay

10  Inslee's Motion for Summary Judgment, Dkt. 104, is **GRANTED**, Plaintiff Cedar Park

11  Assembly of God of Kirkland's Motion for Summary Judgment, Dkt. 103, is **DENIED**,

12  and Cedar Park's case is **DISMISSED with prejudice**.

13       The Clerk shall enter a JUDGMENT and close the case.

14       Dated this 25th day of July, 2023.

15

16

17       BENJAMIN H. SETTLE
         United States District Judge

18

19

20

21

22